# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMUEL I. HYLAND, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>        vs.<br><br>WILLIAM B. HARRISON, JR., HANS W. BECHERER, RILEY P. BECHTEL, FRANK A. BENNACK, JR., JOHN H. BIGGS, LAWRENCE A. BOSSIDY, M. ANTHONY BURNS, ELLEN V. FUTTER, WILLIAM H. GRAY, III, HELENE L. KAPLAN, LEE R. RAYMOND, JOHN R. STAFFORD, JPMORGAN CHASE & CO., and JAMES DIMON,<br><br>    Defendants. | Case No.  **1:05-cv-162** |


## OPENING BRIEF IN SUPPORT OF
## PLAINTIFF HYLAND'S MOTION FOR AN INJUNCTION BARRING
## THE PROSECUTION OF RELATED STATE COURT CLASS ACTIONS

Dated:  March 21, 2005

                                          Joseph N. Gielata (DSB # 4338)
                                          Attorney at Law
                                          501 Silverside Road, Suite 90
                                          Wilmington, DE 19809
                                          (302) 798-1096

                                          ***Attorney for Plaintiff Samuel Hyland***

# **TABLE OF CONTENTS**

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING . . . . . . . . . 4

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.      FEDERAL LAW MANDATES THAT THE
LITIGATION BELONGS IN FEDERAL COURT . . . . . . . . . . . . . . . . . . . . . . . 8

      A.      The PSLRA and the All Writs Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

      B.      The SLUSA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

      C.      The CAFA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

II.     THE CHANCERY ACTION DEPRIVES CLASS MEMBERS OF
THEIR SEVENTH AMENDMENT RIGHT TO TRIAL BY JURY . . . . . . . . . .13

# TABLE OF AUTHORITIES

**Cases:**                                                     **Page**

*Baltimore & Carolina Line v. Redman*, 295 U.S. 654 (1935) . . . . . . . . . . . . . . . . . . . . . . 13

*In re BankAmerica Corp. Securities Litigation*, 95 F. Supp. 2d 1044 (E.D. Mo. 2000), *aff'd*, 263 F.3d 795 (8th Cir. 2001), *cert. denied*, 535 U.S. 970 (2002) . . . . . . . . . . . . 8-12

*Clark v. Teeven Holding Co.*, 625 A.2d 869 (Del. Ch. 1992) . . . . . . . . . . . . . . . . . . . . . . .13

*Dice v. Akron, C. & Y. R.R.*, 342 U.S. 359 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Diet Drugs Products Liability Litigation*, 282 F.3d 220 (3d Cir. 2002) . . . . . . . . . 10

*In re Markel*, 254 A.2d 236 (Del. Supr. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Ross v. Bernhard*, 396 U.S. 531 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438 (1976) . . . . . . . . . . . . . . . . . . . . . .14

*United States v. Gaudin*, 515 U.S. 506 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14


**Statutes and Rules:**

United States Constitution Amendment VII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

All Writs Act, 28 U.S.C. § 1651(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 10

Anti-Injunction Act, 28 U.S.C. § 2283. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 n.1

Sections 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78aa, 78j(b), 78n(a) and 78t(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Rules 10b-5 and 14a-9 promulgated by the Securities and Exchange Commission, 17 C.F.R. §§ 240.l0b-5 and 240.14a-9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l(a)(2) and 77o. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77z-1, 78u-4. . . . . . . . .9

Securities Litigation Uniform Standards Act, 15 U.S.C. §§ 77p(b)-(c), 78bb(f)(1)-(2). . 11

Class Action Fairness Act of 2005, 28 U.S.C. § 1712 *et seq*. . . . . . . . . . . . . . . . . . . . . .12

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Plaintiff Samuel I. Hyland ("Plaintiff") filed a comprehensive class action complaint in this Court on March 17, 2005 (the "Securities Action"). Presently pending in the Court of Chancery of the State of Delaware is a consolidated action styled *In re J.P. Morgan Chase & Co. Shareholder Litigation*, consolidated civil action number 531-N (consolidated with case numbers 533-N and 534-N) (the "Chancery Action"). Both the Securities Action and Chancery Action arise from the same core set of facts. No class has been certified in the Chancery Action, no discovery has been taken, and a motion to dismiss the Chancery Action remains pending.

## SUMMARY OF THE ARGUMENT

1.  This litigation seeks to recover damages perpetrated on thousands of stockholders across the country due to federally-mandated and federally-regulated documents that were materially misleading and incomplete. An injunction of the Chancery Action is necessary because numerous federal rights which can only be asserted in and adjudicated by federal courts will be impaired if a parallel class action continues to be heard in a state court of equity where no jury can ever hear the case and no federal remedies can be asserted.

2.  In order to preserve the rights of aggrieved class members under the Seventh Amendment to the Constitution as well as under applicable federal statutes, this Court must enjoin related actions in state court which threaten not only to balkanize the litigation but also to impair federal rights and irreparably harm members of the class. Given the important constitutional and federal rights that may be impaired by the Chancery Action, it is crucial that this Court establish itself as the exclusive forum to adjudicate this controversy.

## **STATEMENT OF FACTS**

Defendant JPMorgan Chase & Co. ("JPMC" or "the Company") is a global financial services firm involved in investment banking, financial services for consumers and businesses, financial transaction processing, investment management, private banking, and private equity.  Defendant William B. Harrison, Jr. has served as Chief Executive Officer ("CEO") and Chairman of the Board of Directors of JPMC since 1999. However, by late 2003, after years of poor business decisions, costly acquisitions, and financial scandals, numerous public reports denounced Harrison's leadership and predicted that he would soon lose his job. This situation forced Harrison to conjure yet another massive deal to protect his lucrative and prestigious CEO title.  Accordingly, Harrison commenced discussions with defendant James Dimon, Chairman and CEO of Bank One Corporation ("Bank One"), concerning the possibility of a business combination between JPMC and Bank One.

As a result of these discussions, on January 14, 2004, JPMC and Bank One issued a joint press release announcing their agreement to merge (the "Merger").  When the Merger was announced, the acquisition premium for Bank One shares amounted to approximately 14 percent, based on that day's closing prices.  In other words, to merge with Bank One, JPMC shareholders paid an acquisition premium of more than $7 billion in stock, which substantially diluted their individual holdings.  The total value of the deal was approximately $57 billion.

The proposed acquisition of Bank One in a stock-for-stock transaction required the approval of a majority of JPMC's shareholders, as an amendment to JPMC's certificate of incorporation was necessary for JPMC to have the corporate authority to issue the shares necessary for the exchange.  Thus, the defendants issued a Joint Proxy

Statement-Prospectus, dated April 19, 2004 (the "Proxy/Prospectus"), to gain shareholder approval of the Merger. Unaware that the Proxy/Prospectus contained materially false and misleading statements and failed to disclose material facts, shareholders of JPMC overwhelmingly approved the Merger,

However, months later, it was revealed that, in the course of the secretive negotiations between Dimon and Harrison, Dimon had been willing to agree to a ***no-premium deal*** if he could be CEO of the combined company immediately. A June 27, 2004 article in The New York Times entitled "The Yin, the Yang and the Deal" shocked the market with the following stunning revelations:

> During the negotiations with Mr. Dimon, [Harrison] fought hard to give himself the two extra years, to secure a smooth transition, although he may have cost J.P. Morgan shareholders extra money in doing so. ***Mr. Dimon, always the tough deal maker, offered to do the deal for no premium if he could become chief executive immediately***, according to two people close to the deal.
>
> ***When Mr. Harrison resisted, Mr. Dimon insisted on a premium***, which Mr. Harrison was able to push down to 14 percent. The two men declined to comment on the specifics of their negotiations. [Emphasis added.]

This article revealed that the Proxy/Prospectus, a document mandated and regulated by federal statutes, was incomplete and materially misleading. The $7 billion premium paid by JPMC stockholders in the Merger was completely unnecessary. Moreover, the enormous acquisition premium paid for Bank One was a betrayal of the interests of JPMC shareholders, as it served only to entrench Harrison in the CEO position. The Merger exchange ratio represented an acquisition premium of billions of dollars, at the expense of JPMC's shareholders, based only on Harrison's desire to retain his CEO title for another two years even though under his leadership JPMC's stock price has fallen significantly and JPMC's reputation has suffered. At no time did any of the

defendants ever disclose the secret pact between Dimon and Harrion or that Dimon had offered to merge Bank One into JPMC without requiring an exchange ratio providing a premium.

After <u>The New York Times</u> revealed Harrison's secret deal, three lawsuits were filed in the Court of Chancery and subsequently consolidated as the Chancery Action. A copy of the Consolidated Complaint in the Chancery Action is attached hereto as Exhibit A. The Chancery Action seeks relief based on breaches of fiduciary duty by JPMC's pre-Merger directors. No class has been certified in the Chancery Action, no discovery has been taken, and a motion to dismiss the Chancery Action remains pending.

In addition to every class claim asserted in the Chancery Action, the Securities Action asserts claims under Sections 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"),15 U.S.C. §§ 78j(b), 78n(a) and 78t(a), Rules 10b-5 and 14a-9 promulgated thereunder by the SEC, 17 C.F.R. §§ 240.10b-5 and 240.14a-9, and Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77l(a)(2) and 77o. Unlike the Chancery Action, the Securities Action names Dimon as a defendant. The Securities Action demands a trial by jury, which the Chancery Action does not. Further, the 70-page Securities Action complaint alleges numerous facts not alleged in the 26-page Chancery Action complaint.

Whereas the Chancery Action defines the class for whom relief is sought as all persons who owned JPMC common stock when the Merger was announced *and* who continued to own such stock when the Merger closed, the Securities Action seeks to recover damages on behalf of a class including, *inter alia*, every investor who was entitled to vote on the Merger. By definition, every member of the Chancery Action class was a shareholder of record of JPMC on the record date set in connection with the

shareholder vote and, as such, was entitled to vote on the merger. Accordingly, the Securities Action class is larger than, and completely subsumes, the Chancery Action class.

## ARGUMENT

### I. FEDERAL LAW MANDATES THAT THE LITIGATION BELONGS IN FEDERAL COURT

In recent years, the federal government has enacted several statutes requiring securities class actions to be brought and maintained in federal court. It is necessary and appropriate to enjoin class action lawyers from evading these statutes, especially where, as here, absent such an injunction, inviolable and valuable rights of class members will be irreparably harmed.

#### *A.  The PSLRA and the All Writs Act*

In circumstances substantially identical to those present here, the law firm of Milberg Weiss, co-lead counsel for plaintiffs in the Chancery Action, was previously enjoined from prosecuting a state court securities class action once a federal court securities class action was pending. In *In re BankAmerica Corp. Securities Litigation*, 95 F. Supp. 2d 1044 (E.D. Mo. 2000), *aff'd*, 263 F.3d 795 (8th Cir. 2001), *cert. denied*, 535 U.S. 970 (2002), District Judge John F. Nangle enjoined Milberg Weiss from prosecuting any claims arising out of or relating to the merger between BankAmerica Corporation and NationsBank Corporation and related non-disclosures or misrepresentations. Further, the District Court enjoined a California state court from certifying any class(es), or ordering any mediation, arbitration, or other alternative dispute resolution, in a state court action filed by Milberg Weiss.

Judge Nangle granted this sweeping injunction in favor of a federal securities class action concerning the same merger and misrepresentations after reviewing the same

federal statutes applicable to this case. In particular, noting that the Private Securities Litigation Reform Act of 1995 (the "PSLRA") requires federal courts to appoint a lead plaintiff, Judge Nangle observed that:

> When it became clear that the firm's clients lacked the financial stake to become lead plaintiffs in the federal case, and thereby select Milberg Weiss as lead counsel, Milberg Weiss dismissed the federal case to focus on the California cases where no financial stake rules govern the selection of lead plaintiffs and lead counsel.

95 F. Supp. 2d at 1046.

The PSLRA provides that the most adequate plaintiffs, those with the largest financial interest in the relief sought by the class, shall be appointed lead plaintiffs. 15 U.S.C. §§ 77z-1(a)(3)(B), 78u-4(a)(3)(B). Plaintiffs seeking to be lead plaintiff must certify that they did not purchase the security at the direction of counsel or in order to participate in any private action arising under the securities laws. 15 U.S.C. §§ 77z-1(a)(2)(A)(ii), 78u-4(a)(2)(A)(ii). Further, no person may serve as lead plaintiff in more than five securities class actions in any three-year period unless the court permits otherwise. 15 U.S.C. §§ 77z-1(a)(3)(B)(vi), 78u-4(a)(3)(B)(vi). Finally, the plaintiff selected as most adequate plaintiff has the right to select class counsel subject to the approval of the court. 15 U.S.C. §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v). Thus, by empowering the lead plaintiff to select class counsel and oversee the litigation, the PSLRA created new federal rights for certain plaintiffs in securities class action suits. *See* 95 F. Supp. 2d at 1049.

The All Writs Act provides that "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). *See*

*In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 235 (3d Cir. 2002) (affirming the grant of an injunction of a pending state court class action under the All Writs Act).

In *BankAmerica*, Judge Nangle held that:

> Clearly, the PSLRA creates rights in plaintiffs possessing the greatest financial stake in the litigation. They have the right to be appointed lead plaintiffs, to control the course of the class action litigation, and to select class counsel of their choice. This federal right cannot be given its intended scope if competing state court plaintiffs, representing a significantly smaller number of shares, can institute premature settlement negotiations which threaten the orderly conduct of the federal case and which could result in the release of the federal claims.

95 F. Supp. 2d at 1049. An injunction of the state court action under the All Writs Act became necessary to protect these rights and because "Milberg Weiss's behavior in these cases are precisely the sort of lawyer-driven machinations the PSLRA was designed to prevent." *Id.* at 1050. Even though Milberg Weiss's clients were not parties to the federal litigation, the All Writs Act clearly provided jurisdiction for the injunction. *Id.* at 1048.

The Eighth Circuit affirmed the injunction, noting that:

> We think it plain that the lead-plaintiff provisions of the PSLRA create significant federal rights that previously did not exist. It can hardly be gainsaid that the right to steer litigation of this magnitude is an important privilege. The lead plaintiff's control over aspects of litigation such as discovery, choice of counsel, assertion of legal theories, retention of consultants and experts, and settlement negotiations gives the lead plaintiff decisional muscle that other members of the class lack. The very fact of the [state court] plaintiffs' flight to state court bespeaks the significance of this position.

263 F.3d at 801. Thus, the appellate court "agree[d] with the district court that the rights created by [the PSLRA's lead plaintiff appointment provision] § 77z-1(a)(3)(B) are meaningless if a state-court plaintiff who has won the race to the state courthouse may seize control of the litigation of the federal claims." *Id.* at 803. Both the district court and

- 10 -

appellate court also agreed that the injunction fell within the "expressly-authorized" exception to the Anti-Injunction Act.[1] *See* 263 F.3d at 801; 95 F. Supp. 2d at 1050.

*BankAmerica*'s clear (and affirmed) holding necessitates the granting of the injunction sought herein. The injunction will not impair in any way the rights of named plaintiffs in the Chancery Action to recover their losses ***individually***. Further, once a class is certified in the Securities Action, any member of the class will have the opportunity to opt out and proceed individually. But to the extent that this litigation purports to recover damages on behalf of a class, the PSLRA, among other statutes, mandates that a securities class action asserting claims under federal securities laws must be prosecuted in federal court exclusively.

### B.   The SLUSA

After the enactment of the PSLRA, Congress enacted another statute to curb securities class actions filed in state court. As Judge Nangle observed in *BankAmerica*, "Congress noted that after the passage of the PSLRA, plaintiffs' lawyers sought to circumvent the requirements of the PSLRA by filing securities suits in state courts in record numbers" and that "[t]his type of attempt to avoid the requirements of the PSLRA was the impetus behind the Securities Litigation Uniform Standards Act, 15 U.S.C. §§ 77p(b)-(c), 78bb(f)(1)-(2)." *BankAmerica*, 95 F. Supp. 2d at 1046 n.2. "To stop such practices, the SLUSA bars securities suits filed in state court and requires that all such suits be removed to federal court." *Id.* (citing 15 U.S.C. §§ 77p(b)-(c), 78bb(f)(1)-(2)). The Eighth Circuit observed that the *BankAmerica* litigation was initiated prior to the

---

[1] The Anti-Injunction Act, 28 U.S.C. § 2283, bars a federal court from granting an injunction staying state-court proceedings unless such an injunction is (1) expressly provided for in a federal statute, (2) necessary in aid of the federal court's jurisdiction, or (3) necessary to protect or effectuate the federal court's judgments. 263 F.3d at 800.

passage of SLUSA, and that "[u]nder SLUSA, [the state court action] would be preempted altogether[.]" 263 F.3d at 802.

The SLUSA provides, in relevant part:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging--
>
> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

§ 78bb(f)(1). Under the SLUSA, it is *impossible* for the Chancery Action to seek recovery for class members damaged by "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." However, the Securities Action asserts such a claim under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, for which federal courts have exclusive jurisdiction. *See* 15 U.S.C. §78aa. In addition, the Securities Action asserts every state common law class claim asserted in the Chancery Action, pursuant to the federal courts' ancillary jurisdiction. Thus, only the Securities Action can assert every remedy, both under federal statutes and state common law, available to members of the class. Accordingly, the SLUSA further confirms that this class action litigation must be maintained exclusively in federal court, where *all* claims of *all* class members can be adjudicated.

### C. The CAFA

On February 18, 2005, President Bush signed into law the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1712 *et seq.*, intended to ensure that class action lawsuits having national importance are heard by federal courts rather than by local state

- 12 -

courts. Underlying this purpose are Congress's findings that local state courts are "making judgments that impose their view of the law on other States and bind the rights of the residents of those States." CAFA, § 2(a)(4)(C). Although the CAFA does not appear to expand existing federal jurisdiction over class action lawsuits involving securities covered by the Securities Act or the Exchange Act, it leaves no doubt as to the desire of Congress to strengthen federal court jurisdiction over class action lawsuits.

## II.     THE CHANCERY ACTION DEPRIVES CLASS MEMBERS OF THEIR SEVENTH AMENDMENT RIGHT TO TRIAL BY JURY

The Securities Action demands a trial by jury, as guaranteed by the Seventh Amendment to the United States Constitution, which provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

However, a trial by jury is not available in the Delaware Court of Chancery. *See Clark v. Teeven Holding Co.*, 625 A.2d 869, 880 (Del. Ch. 1992) (the Court of Chancery should "consider whether the claims are primarily the type that are usually tried before a jury and that depriving the law courts of jurisdiction would also deprive a party of a jury trial.").

The primary purpose of the Seventh Amendment is the preservation of "the common law distinction between the province of the court and that of the jury, whereby, in the absence of express or implied consent to the contrary, issues of law are resolved by the court and issues of fact are to be determined by the jury under appropriate instructions by the court." *Baltimore & Carolina Line v. Redman*, 295 U.S. 654, 657 (1935). In enforcing a federally created right, such as the rights under federal securities laws, the

states may not eliminate trial by jury as to one or more elements. *See Dice v. Akron, C. & Y. R.R.*, 342 U.S. 359, 363 (1952) (maybe a parenthetical).

In *Ross v. Bernhard*, 396 U.S. 531 (1970), the Court agreed that a stockholder derivative action was equitable but reasoned that it involved two separable claims. The first, the stockholder's standing to sue for a corporation is an equitable issue; the second, the corporation's claim asserted by the stockholder, may be either equitable or legal. *Id.* at 534-35. The 1938 merger of law and equity in the federal courts eliminated any procedural obstacles to transferring jurisdiction to the law side once the equitable issue of standing was decided. *Id.* at 539. However, the Court continued, if the corporation's claim being asserted by the stockholder was legal in nature, it should be heard on the law side and before a jury. *Id.* Although the claims in the Securities Action and Chancery Action are not derivative, *Ross* affirms the importance of presenting claims at law before a jury even if a case contains an equitable component.

Of particular relevance to the instant proceedings, determinations of materiality, involving as they do "delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him ... are peculiarly ones for the trier of fact." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438 (1976); *see also United States v. Gaudin*, 515 U.S. 506 (1995) (holding that failure to present the question of materiality to a jury violates the Fifth and Sixth Amendments). Both the Securities Action and the Chancery Action attack JPMC's materially misleading Proxy/Prospectus, and the Constitution guarantees that a jury, not a judge, evaluate whether the alleged omissions are material. In the Chancery Action, where trial by jury is unavailable, there is presently a motion to dismiss pending, and the Vice Chancellor may rule upon the materiality of some of the omissions and misleading statements at the

center of this litigation. Unless the Chancery Action is enjoined, it will deprive thousands of members of not only the Securities Action class, but also unnamed members of the Chancery Action class, of their constitutional right to a jury trial.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that this Court issue an Order: (1) barring the prosecution of related state court class actions; (2) enjoining all named plaintiffs (and all persons, agents, representatives or employees acting in concert with them or on their behalf) in the Chancery Action from prosecuting (including but not limited to participating in mediation, arbitration, or any other alternative dispute resolution in the Chancery Action, whether court-ordered or otherwise) any class (or otherwise representative) claims (including without limitation claims held to be derivative in nature) arising out of or relating to (a) the Merger and (b) alleged nondisclosures or misrepresentations concerning the arrangement between defendants William B. Harrison Jr. and James Dimon to grant Harrison two more years as CEO of the combined Company in exchange for paying a premium in connection with the Merger; (3) enjoining the Court of Chancery of the State of Delaware in and for New Castle County from ruling on, or otherwise adjudicating, the pending motion to dismiss the Chancery Action; (4) enjoining the Court of Chancery of the State of Delaware in and for New Castle County from certifying any class(es) in the Chancery Action consisting of shareholders in the Company or any of its predecessors in relation to any of the above-described claims; (5) enjoining the Court of Chancery of the State of Delaware in and for New Castle County from ordering any mediation, arbitration, or other alternative dispute resolution in the Chancery Action; (6) directing the Clerk of the Court to serve copies of the order upon the law firms of Milberg Weiss Bershad & Schulman LLP, and Bull &

Lifshitz LLP, co-lead counsel in the Chancery Action, and upon the Court of Chancery of the State of Delaware in and for New Castle County; and (7) ordering counsel in the Chancery Action to promptly provide copies of the order to each client named as a plaintiff in the Chancery Action.

DATED:   March 21, 2005

Respectfully submitted,

/s/ Joseph N. Gielata
Joseph N. Gielata (DSB # 4338)
Attorney at Law
501 Silverside Road, Suite 90
Wilmington, DE 19809
(302) 798-1096

***Attorney for Plaintiff Samuel Hyland***

## **CERTIFICATE OF SERVICE**

I hereby certify that copies of the foregoing document were served by hand on March 21, 2005, on the following:

>Seth D. Rigrodsky, Esq.
>Ralph N. Sianni, Esq.
>**MILBERG WEISS BERSHAD & SCHULMAN LLP**
>919 North Market Street Suite 411
>Wilmington, DE 19801
>*Co-Lead Counsel for Chancery Action Plaintiffs*
>
>Jesse A. Finkelstein, Esq.
>**RICHARDS LAYTON & FINGER, P.A.**
>One Rodney Square
>Wilmington, DE 19801
>*Counsel for Defendants*
>
>The Honorable Stephen P. Lamb
>**Vice Chancellor of the Court of Chancery**
>New Castle County Courthouse
>500 North King Street, Suite 11400
>Wilmington, DE 19801

           /s/ Joseph N. Gielata
           Joseph N. Gielata (DSB # 4338)