# Joseph N. Gielata

**ATTORNEY AT LAW**

501 Silverside Road, Suite 90
Wilmington, Delaware 19809
www.gielatalaw.com
tel (302) 798-1096
fax (302) 792-0777

March 17, 2005

**BY HAND**

The Honorable Stephen P. Lamb
Vice Chancellor
Court of Chancery
New Castle County Courthouse
500 North King Street, Suite 11400
Wilmington, DE 19801

          Re:   *In re J.P. Morgan Chase & Co. Shareholder Litigation*

Vice Chancellor Lamb,

      I represent a JPMorgan Chase & Co. ("JPMC") investor who has today filed in the District Court of Delaware a class action complaint, attached hereto as exhibit A, seeking damages for violations of federal securities laws and breaches of fiduciary duty (the "Federal Action"). For the reasons set forth below, I urge Your Honor to consider whether the Court of Chancery has any jurisdiction at all over the pending action captioned as *In re J.P. Morgan Chase & Co. Shareholder Litigation*, consolidated civil action number 531-N (the "State Action"). Even if Your Honor ultimately decides that the Court of Chancery has some jurisdiction over the State Action, I respectfully request that any decision on the pending motion to dismiss the State Action be deferred until the District Court of Delaware decides my client's forthcoming request for an injunction restricting proceedings in the State Action.

*The Seventh Amendment Guarantees a Trial by Jury*

      The Federal Action demands a trial by jury, as guaranteed by the Seventh Amendment to the United States Constitution, which provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

Vice Chancellor Lamb
March 17, 2005, page 2

*See also In re Markel*, 254 A.2d 236, 239 (Del. Supr. 1969) (noting that Article I, § 4 of the Delaware Constitution also guarantees the right to a trial by jury).

The primary purpose of this Amendment is the preservation of "the common law distinction between the province of the court and that of the jury, whereby, in the absence of express or implied consent to the contrary, issues of law are resolved by the court and issues of fact are to be determined by the jury under appropriate instructions by the court." *Baltimore & Carolina Line v. Redman*, 295 U.S. 654, 657 (1935). In enforcing a federally created right, such as the rights under federal securities laws, the states may not eliminate trial by jury as to one or more elements. *See Dice v. Akron, C. & Y. R.R.*, 342 U.S. 359 (1952).

In *Ross v. Bernhard*, 396 U.S. 531 (1970), involving a stockholder derivative action, the Court agreed that the action was equitable but asserted that it involved two separable claims. The first, the stockholder's standing to sue for a corporation is an equitable issue; the second, the corporation's claim asserted by the stockholder, may be either equitable or legal. *Id.* at 534-35. Because the 1938 merger of law and equity in the federal courts eliminated any procedural obstacles to transferring jurisdiction to the law side once the equitable issue of standing was decided, the Court continued, if the corporation's claim being asserted by the stockholder was legal in nature, it should be heard on the law side and before a jury. *Id.* at 539.

Although the claims in the Federal Action and State Action are not derivative, *Ross* affirms the importance of presenting claims at law before a jury even if a case contains some equitable feature. In particular, evaluations of materiality, involving as they do "delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him ... are peculiarly ones for the trier of fact." *TSC Industries, Inc. v. Northway, Inc.*, 426 US 438 (1976); *see also United States v. Gaudin*, 515 U.S. 506 (1995) (holding that failure to present the question of materiality to a jury violates the Fifth and Sixth Amendments). Both the Federal Action and the State Action attack JPMC's materially misleading proxy statement, and it is for a jury to evaluate whether the alleged omissions are material. Thus, the State Action must be dismissed, stayed or enjoined to avoid any violation of the constitutional rights of the thousands of members of not only the Federal Action class, but also unnamed members of the State Action class.

*Federal Law Mandates That The*
*Litigation Belongs In District Court*

Even if the State Action could somehow overcome the constitutional violation described above, several federal statutes make clear that this litigation cannot be maintained in state court.

*PSLRA*

In *In re BankAmerica Corp. Securities Litigation*, 95 F. Supp. 2d 1044 (E.D. Mo. 2000) (attached hereto as exhibit B), *aff'd*, 263 F.3d 795 (8th Cir. 2001) (attached hereto as exhibit C), *cert. denied*, 535 U.S. 970 (2002), District Judge John F. Nangle enjoined the law firm of Milberg Weiss from prosecuting any claims arising out of or relating to

Vice Chancellor Lamb
March 17, 2005, page 3

the merger between BankAmerica Corporation and NationsBank Corporation and related non-disclosures or misrepresentations. Further, the District Court enjoined a California state court from certifying any class(es), or ordering any mediation, arbitration, or other alternative dispute resolution, in a state court action filed by Milberg Weiss.

Judge Nangle granted this sweeping injunction in favor of a federal securities litigation concerning the same merger and misrepresentations after reviewing applicable federal statutes. Noting that the Private Securities Litigation Reform Act of 1995 requires federal courts to appoint a lead plaintiff, Judge Nangle observed that:

> When it became clear that the firm's clients lacked the financial stake to become lead plaintiffs in the federal case, and thereby select Milberg Weiss as lead counsel, Milberg Weiss dismissed the federal case to focus on the California cases where no financial stake rules govern the selection of lead plaintiffs and lead counsel.

95 F. Supp. 2d at 1046.

The PSLRA provides that the most adequate plaintiffs, those with the largest financial interest in the relief sought by the class, shall be appointed lead plaintiffs. 15 U.S.C. §§ 77z-1(a)(3)(B), 78u-4(a)(3)(B). Plaintiffs seeking to be lead plaintiff must certify that they did not purchase the security at the direction of counsel or in order to participate in any private action arising under the securities laws. 15 U.S.C. §§ 77z-1(a)(2)(A)(ii), 78u-4(a)(2)(A)(ii). Further, no person may serve as lead plaintiff in more than five securities class actions in any three-year period unless the court permits otherwise. 15 U.S.C. §§ 77z-1(a)(3)(B)(vi), 78u-4(a)(3)(B)(vi). Finally, the plaintiff selected as most adequate plaintiff has the right to select class counsel subject to the approval of the court. 15 U.S.C. §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v).

*All Writs Act*

The All Writs Act provides that "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). *See In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220 (3d Cir. 2002) (affirming the grant of an injunction of a pending state court class action under the All Writs Act).

In *BankAmerica*, Judge Nangle held that:

> Clearly, the PSLRA creates rights in plaintiffs possessing the greatest financial stake in the litigation. They have the right to be appointed lead plaintiffs, to control the course of the class action litigation, and to select class counsel of their choice. This federal right cannot be given its intended scope if competing state court plaintiffs, representing a significantly smaller number of shares, can institute premature settlement negotiations which threaten the orderly conduct of the federal case and which could result in the release of the federal claims.

Vice Chancellor Lamb
March 17, 2005, page 4

95 F. Supp. 2d at 1049.  An injunction of the state court action under the All Writs Act became necessary to protect these rights and because "Milberg Weiss's behavior in these cases are precisely the sort of lawyer-driven machinations the PSLRA was designed to prevent." *Id.* at 1050.  The appellate court affirmed the injunction, noting that:

> We think it plain that the lead-plaintiff provisions of the PSLRA create significant federal rights that previously did not exist. It can hardly be gainsaid that the right to steer litigation of this magnitude is an important privilege. The lead plaintiff's control over aspects of litigation such as discovery, choice of counsel, assertion of legal theories, retention of consultants and experts, and settlement negotiations gives the lead plaintiff decisional muscle that other members of the class lack. The very fact of the [state court] plaintiffs' flight to state court bespeaks the significance of this position.

263 F.3d at 801.  Thus, the appellate court "agree[d] with the district court that the rights created by [the PSLRA's lead plaintiff appointment provision] § 77z-1(a)(3)(B) are meaningless if a state-court plaintiff who has won the race to the state courthouse may seize control of the litigation of the federal claims." *Id.* at 803.

My client intends to pursue an injunction consistent with *BankAmerica*'s clear (and affirmed) holding.  Accordingly, on behalf of my client as well as the entire Federal Action class, I respectfully request that Your Honor briefly defer ruling on the pending motion to dismiss the State Action until the federal court rules on the injunction.

*SLUSA*

According to Judge Nangle, "Congress noted that after the passage of the PSLRA, plaintiffs' lawyers sought to circumvent the requirements of the PSLRA by filing securities suits in state courts in record numbers" and that "[t]his type of attempt to avoid the requirements of the PSLRA was the impetus behind the Securities Litigation Uniform Standards Act, 15 U.S.C. §§ 77p(b)-(c), 78bb(f)(1)-(2)." *BankAmerica*, 95 F. Supp. 2d at 1046 n.2.  "To stop such practices, the SLUSA bars securities suits filed in state court and requires that all such suits be removed to federal court." *Id.* (citing 15 U.S.C. §§ 77p(b)-(c), 78bb(f)(1)-(2)).  The appellate court observed that the *BankAmerica* litigation was initiated prior to the passage of SLUSA, and that "[u]nder SLUSA, [the state court action] would be preempted altogether, obviating the need for injunctive power of the sort invoked by the district court under the PSLRA." 263 F.3d at 802.

This Court considered the impact of SLUSA in *Zoren v. Genesis Energy, L.P.*, _ _ n.4 (Del. Ch. 2003) ("It must be noted at the outset that this court has grave reservations regarding whether it even has jurisdiction to hear the [state action]."). In *Zoren*, Your Honor noted that the plaintiff had previously filed suit in the Court of Chancery, but "[b]ecause the [c]omplaint alleged factual matters that could support a claim under the federal securities laws, the action was removed to the U.S. District Court for the District of Delaware." *Id.* at _.  Following *Zoren*, this Court should consider whether the SLUSA mandates automatic removal or dismissal of the State Action.

Vice Chancellor Lamb
March 17, 2005, page 5

*The Litigation Cannot Be Maintained in the Court*
*of Chancery Because It Seeks No Equitable Relief*
*And There Is An Adequate Remedy at Law*

      The merger between JPMC and Bank One was consummated months ago. No one can seriously contend that rescission of the merger is either feasible or desirable. *See Clark v. Teeven Holding Co.*, 625 A.2d 869, 880 (Del. Ch. 1992) ("This Court will take a practical view of the complaint and will not permit a suit to be brought in the Court where a complete legal remedy otherwise exists but where the claimant has prayed for some traditional equitable relief as an 'open sesame' to the Court."). Once the merger was approved and consummated as a result of the incomplete and materially misleading proxy statement, the fraud was accomplished, the damage to aggrieved stockholders was perfected, and such damage is presently ascertainable. At this point, only monetary damages will redress the losses sustained by the Federal Action class. Thus, equitable relief no longer has any place in this litigation. Lacking any basis in equity to exercise jurisdiction, the Court of Chancery has no authority to adjudicate this controversy.

      Although no equitable remedy can make whole defrauded JPMC stockholders, monetary damages can provide an adequate remedy. *See* 10 Del. C. § 342 (the Court of Chancery "shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State."). Damages are completely ascertainable because the following facts are known or knowable: (1) what the exchange ratio should have been, (2) the number of shares outstanding of both companies at all relevant times, and (3) the value per share of JPMC common stock at all relevant times. Accordingly, even if this controversy presently contains some equitable feature (which it does not), this Court should refrain from exercising its discretionary jurisdiction over claims where an adequate remedy at law is available. *Clark*, 625 A.2d at 882 ("This Court should also consider whether the claims are primarily the type that are usually tried before a jury and that depriving the law courts of jurisdiction would also deprive a party of a jury trial.").

*The Rights of State Action Class Members Will*
*Be Adequately Protected In the Federal Action*

      The Federal Action includes every class claim asserted in the State Action (and several more), names every defendant named in the State Action (and more), and alleges numerous facts not alleged in the State Action.[1] Whereas the State Action defines the class for whom relief is sought as all persons who owned JPMC common stock when the Merger was announced *and* continued to own when the Merger closed, the Federal Action seeks to recover damages on behalf of a class including, inter alia, every investor who was entitled to vote on the merger. By definition, every member of the State Action class was a shareholder of record of JPMC on the record date set in connection with the

---

[1] For instance, unlike the State Action, the Federal Action alleges that one JPMC director was beholden to JPMC's CEO because of her position with Skadden, Arps, Slate, Meagher & Flom, which earns substantial legal fees from JPMC in connection with the WorldCom securities litigation and several other engagements.

Vice Chancellor Lamb
March 17, 2005, page 6

shareholder vote and, as such, was entitled to vote on the merger.  Accordingly, the Federal Action class is larger than, and completely subsumes, the State Action class.

As a result of the federal court's exclusive jurisdiction over some claims and ancillary jurisdiction over the rest, only through the Federal Action can the entire controversy be adjudicated, including every claim asserted in the State Action.  On the other hand, as the State Action alleges at ¶ 27, if the State Action continues in spite of the Federal Action:

> The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members or substantially impair or impede their ability to protect their interests.

In particular, the issue of materiality presents the risk of prejudice to Federal Action class members.  Whereas the question of materiality in the Federal Action will be decided by a jury evaluating testimony and other evidence, in the State Action the issue may be decided on the pleadings alone, in the absence of any jury.  Thus, as discussed above, the Seventh Amendment right of every unnamed State Action class member will be set aside as to the crucial question of materiality.  More troubling yet is the possibility that a bench ruling on materiality in the State Action may prejudice members of the Federal Action class.

Federal Action class members should not be presumed to have waived their constitutional rights merely because certain litigants sought to evade applicable federal statutes requiring that this litigation be maintained in federal court.  Refraining from adjudicating a controversy such as this case is proper to permit a jury to decide questions of fact, to afford complete relief in one action, to avoid a multiplicity of suits, and, ultimately, to do full justice. *See Clark*, 625 A.2d at 882.  In order to conserve the resources of the courts, the class and the defendants, and to avoid the risk of inconsistent verdicts, this Court should dismiss the State Action sua sponte for lack of equity jurisdiction, *see id.* at 883, or, in the alternative, stay the State Action in favor of the Federal Action.  Of course, the plaintiffs in the State Action are free to move to be appointed lead plaintiff in the Federal Action.

Sincerely,

Joseph N. Gielata

Enclosures
cc:   Jesse A. Finkelstein, Esq. (by hand, w/enc.)
      Seth D. Rigrodsky, Esq. (by hand, w/enc.)