## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
SAMUEL I  HYLAND, individually and on         :
behalf of all others similarly situated,      :
                                              :
        Plaintiff,                            :
                                              :
                v                             :   Case No  1:05-cv-162 (JFF)
                                              :
WILLIAM B  HARRISON, JR , HANS W              :
BECHERER, RILEY P  BECHTEL, FRANK             :
A  BENNACK, JR , JOHN H  BIGGS,               :
LAWRENCE A  BOSSIDY, M  ANTHONY               :
BURNS, ELLEN V  FUTTER, WILLIAM H             :
GRAY, III, HELENE L  KAPLAN, LEE R            :
RAYMOND, JOHN R  STAFFORD, J P                :
MORGAN CHASE & CO , and JAMES                 :
DIMON,                                        :
                                              :
        Defendants                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
```

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO
### PLAINTIFF'S MOTION FOR AN INJUNCTION BARRING
### THE PROSECUTION OF RELATED STATE COURT ACTIONS

**OF COUNSEL:**

Nancy E  Schwarzkopf
JPMORGAN CHASE LEGAL DEPARTMENT
1 Chase Manhattan Plaza, 26th Floor
New York, New York  10081
(212) 552-3585
*Counsel for J.P. Morgan Chase & Co.*

Michael A  Cooper
Sharon L  Nelles
Keith Levenberg
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-3712
*Counsel for the Individual Defendants*
*(except Riley P. Bechtel)*

Jesse A  Finkelstein (#1090)
Michael R  Robinson (#4452)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
(302) 651-7700
finkelstein@rlf.com
robinson@rlf.com
*Counsel for Defendants*
*(except Riley P. Bechtel)*

DATED: April 7, 2005

# TABLE OF CONTENTS

Page

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ............... 1

SUMMARY OF ARGUMENT ................................................................................ 2

PRELIMINARY STATEMENT OF FACTS ........................................................ 2

ARGUMENT ........................................................................................................... 4

I.    An Injunction in This Case Is Not Authorized by Act of Congress ............... 5

    A.    The PSLRA Does Not Authorize an Injunction Against the Court of
        Chancery ..................................................................................................... 5

    B.    SLUSA Does Not Authorize an Injunction Against the Court of
        Chancery ..................................................................................................... 9

    C.    CAFA Does Not Authorize an Injunction Against the Court of
        Chancery ..................................................................................................... 11

    D.    There Is No Implied Seventh Amendment Exception to the
        Anti-Injunction Act ................................................................................... 11

II.    An Injunction in This Case Is Not Necessary to Aid This Court's
    Jurisdiction ....................................................................................................... 14

CONCLUSION ...................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re Adelphia Comms. Corp.*,
  293 B.R. 337 (Bankr. S.D.N.Y. 2003) ................................................................ 8

*Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*,
  398 U.S. 281 (1970) ............................................................................................ 4

*In re BankAmerica Corp. Securities Litigation*,
  95 F. Supp. 2d 1044 (E.D. Mo. 2000),
  *aff'd*, 263 F.3d 795 (8th Cir. 2001) ............................................................ 5,6,7,8

*In re Baldwin-United Corp.*,
  770 F.2d 328 (2d Cir. 1985) ............................................................................. 15

*Beaumont v. American Can Co.*,
  797 F.2d 79 (2d Cir. 1986) ............................................................................... 13

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ........................................................................... 13

*In re Cardinal Health Sec. Litig.*,
  No. 04-0575, 2005 U.S. Dist. LEXIS 3042 (S.D. Ohio Mar. 1, 2005) .............. 8

*Carlough v. Amchem Products, Inc.*,
  10 F.3d 189 (3d Cir. 1993) ............................................................................... 14

*Choo v. Exxon Corp.*,
  486 U.S. 140 (1988) ............................................................................................ 4

*In re Cinematronics, Inc.*,
  916 F.2d 1444 (9th Cir. 1990) ..................................................................... 11, 12

*City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*,
  No. 04-0380, 2005 U.S. Dist. LEXIS 1646 (S.D. Ind. Feb. 2, 2005) ......... 10, 11

*In re Diet Drugs Products Liability Litig.*,
  282 F.3d 220 (3d Cir. 2002) ....................................................................... 12, 15

*In re DPL Sec. Litig.*,
  247 F. Supp. 2d 946 (S.D. Ohio 2003) ............................................................... 8

*Gasperini v. Center for Humanities*,
  518 U.S. 415 (1996) .......................................................................................... 12

*Klein* v *Southwest Gas Corp* ,
No. 99-1004, 1999 U.S. Dist. LEXIS 22979 (S.D. Cal. Aug. 4, 1999) ............ 10

*Kline* v. *Burke Constr. Co.*,
260 U.S. 226 (1922) ............................................................................. 12

*Mitchell* v. *Foster*,
407 U.S. 225 (1972) ............................................................................. 5

*Minneapolis & St. Louis R.R. Co.* v. *Bombolis*,
241 U.S. 211 (1916) ............................................................................. 12

*Newby* v *Enron Corp.*,
338 F.3d 467 (5th Cir. 2003) ................................................................. 8

*Oklahoma Packing Co.* v *Oklahoma Gas & Elec. Co.*,
309 U.S. 4 (1940) ................................................................................ 4

*In re Rockefeller Ctr. Props. Sec. Litig* ,
184 F.3d 280 (3d Cir. 1999) ................................................................. 13

*TSC Indus.* v. *Northway, Inc.*,
426 U.S. 438 (1976) ............................................................................. 13

## STATUTES AND OTHER AUTHORITIES

15 U.S.C. § 78u-4 ................................................................................. 5

15 U.S.C. § 78bb ............................................................................. 5, 9, 10

22 U.S.C. § 2283 ............................................................................. *passim*

28 U.S.C. § 1651 ............................................................................. 6, 14

28 U.S.C. § 1711 ................................................................................. 5

## TREATISE

20 Charles A. Wright & Mary K. Kane,
*Federal Practice and Procedure: Federal Practice Deskbook* § 49 (2002) ........4-5

Defendants J.P. Morgan Chase & Co. ("JPMC") and those of its present and former directors named above other than Riley P. Bechtel (the "Director Defendants") submit this memorandum in opposition to Plaintiff's Motion for an Injunction Barring the Prosecution of Related State Court Actions.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff asserts purported class claims against JPMC and certain present and former JPMC directors for alleged violations of the Delaware common law duties of loyalty and full and fair disclosure and the federal securities laws in connection with the merger of JPMC and Bank One. Plaintiff contends that defendants (i) wrongfully turned down an alleged "offer" by the CEO of Bank One to merge with JPMC with no premium to Bank One shareholders if he could become CEO of the merged company immediately and (ii) failed to disclose the "offer" in the Joint Proxy Statement for the merger.

The gravamen of plaintiff's allegations is identical to those made in consolidated proceedings commenced in June 2004 in the Delaware Court of Chancery. In that action, the same alleged rejection of a merger "offer" and the same Joint Proxy Statement are similarly alleged to have violated the Director Defendants' fiduciary duties of loyalty and full and fair disclosure under Delaware common law. A motion to dismiss the consolidated complaint in the Court of Chancery action has been *sub judice* since January 13, 2005. On March 21, 2005, four days after filing (but not serving) the instant complaint, plaintiff moved for an injunction to bar prosecution of the Court of Chancery

action  Plaintiff's motion seeks an order prohibiting the Delaware Court of Chancery (Vice Chancellor Stephen P. Lamb) from deciding the pending motion to dismiss.[1]

## SUMMARY OF ARGUMENT

1.    The Anti-Injunction Act compels the denial of plaintiff's motion because that motion seeks "to stay proceedings in a state court" when such a stay is not "expressly authorized by Act of Congress, or . . . necessary in aid of [this Court's] jurisdiction, or to protect or effectuate its judgments." 22 U.S.C. § 2283 (2005).

2.    There is no implied Seventh Amendment exception to the ban imposed by the Anti-Injunction Act.

3.    The All Writs Act, 28 U.S.C. § 1651 (2005), does not authorize this Court to issue an injunction against the Court of Chancery.

## PRELIMINARY STATEMENT OF FACTS

The merger of JPMC and Bank One was announced on January 14, 2004. (Affidavit of Michael A. Cooper sworn to April 5, 2005 ("Cooper Aff.") ¶ 2.) A Joint Proxy Statement was filed with the Securities and Exchange Commission ("SEC") on April 19, 2004, and the following month the merger was approved by an overwhelming majority (99.18%) of the votes cast. *Id.*

On June 27, 2004, shortly before the merger was to become effective, the *New York Times* published an article in which a statement was made, based on unidentified sources, that during the merger negotiations the CEO of Bank One, Jamie

---

[1]    Defendants do not intend to waive any defenses available to them relating to jurisdiction, sufficiency of service, or otherwise by responding to the instant motion.

Dimon, "offered to do the deal for no premium if he could become Chief Executive immediately," but the "offer" was turned down. (Cooper Aff. ¶ 3 and Exh. A.)

JPMC is a Delaware corporation. Within three days of the publication of the *New York Times* article, three lawsuits had been brought in the Delaware Court of Chancery on behalf of separate JPMC shareholders alleging that JPMC directors had violated their duty of loyalty by turning down the "offer" and violated their duty of full and fair disclosure to shareholders by not disclosing the "offer" in the Joint Proxy Statement. (Cooper Aff. ¶ 4.)

After the three actions had been consolidated and a consolidated complaint filed, defendants moved to dismiss under Delaware Court of Chancery Rule 12(b)(6). The motion, filed September 22, 2004 and argued on January 13, 2005, has been *sub judice* for nearly three months. (*Id.* ¶ 6.)

There matters stood until Thursday, March 17, when plaintiff's counsel, Joseph N. Gielata, filed the complaint in this action and wrote a letter to Vice Chancellor Lamb of the Delaware Court of Chancery. Mr. Gielata was, until mid-February, associated with the law firm Milberg Weiss Bershad & Schulman LLP, the firm representing plaintiffs in the Court of Chancery action, and actively prosecuted that action until his departure from the firm. (*See* Cooper Aff. ¶ 10 and Exh. D.)

Mr. Gielata initially requested that the Vice Chancellor defer deciding the dismissal motion before him "until the District Court of Delaware decides my client's forthcoming request for an injunction restricting proceedings in the State Action." (Cooper Aff. ¶ 9 and Exh. C at 1.) The letter concludes, however, with the broader request that the Vice Chancellor "dismiss the State Action sua sponte for lack of equity

- 3 -

jurisdiction, or, in the alternative, stay the State Action in favor of the Federal Action."
(*Id.* at 6 (citation omitted).)

Plaintiff's motion for an injunction was filed four days later on March 21.

## ARGUMENT

"For almost as long as there have been federal courts, there has been a statutory prohibition against issuance of a writ of injunction 'to stay proceedings in any court of a state.'" 20 Charles A. Wright & Mary K. Kane, *Federal Practice and Procedure: Federal Practice Deskbook* § 49 at 402 (2002). The current version of the Anti-Injunction Act is brief and precise:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283 (2005).

"[T]he statute has an important role in a federal system since it is well calculated 'to prevent needless friction between state and federal courts' and 'represents Congress' considered judgment as to how to balance the tensions inherent in a 'dual system of courts.'" 20 Wright & Kane, *supra*, § 49 at 403 (*quoting Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co.*, 309 U.S. 4, 9 (1940); *Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988)). Because of the importance of avoiding undue interference with state-court proceedings, the exceptions to the broad ban against federal court injunctions "are narrow and are 'not [to] be enlarged by loose statutory construction.'" *Choo*, 486 U.S. at 146 (*quoting Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281 287 (1970)). For the same reason, "any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the

- 4 -

state court to proceed in an orderly fashion to finally determine the controversy." *Id.* at 296.

There is no question that this Court is being asked to "stay proceedings in a state court" within the meaning of the Anti-Injunction Act. Plaintiff's attempt to invoke one of the exceptions to the statutory bar fails utterly, as do plaintiff's attempt to fashion an implied, open-ended exception based on the Seventh Amendment and plaintiff's passing invocation of the All Writs Act.

## I.    An Injunction in This Case Is Not Authorized by Act of Congress.

The test for determining whether an Act of Congress expressly authorizes an injunction against a state court is whether a statute "clearly creating a federal right or remedy enforceable in a federal court of equity[] could be given its intended scope only by the stay of a state court proceeding." *Mitchell* v. *Foster*, 407 U.S. 225, 238 (1972). None of the statutes cited by plaintiff creates such a right.[2]

### A.    The PSLRA Does Not Authorize an Injunction Against the Court of Chancery.

Plaintiff purports to find in the "lead plaintiff" provisions of the PSLRA a federal right that cannot be enforced without enjoining Vice Chancellor Lamb from deciding the motion to dismiss pending before him. (*See* Pl. Mem. 9.) The sole authority plaintiff cites for this proposition is *In re BankAmerica Corp. Sec. Litig.*, 95 F. Supp. 2d 1044 (E.D. Mo. 2000), *aff'd*, 263 F.3d 795 (8th Cir. 2001). Although plaintiff confidently describes the "circumstances" of the *BankAmerica* case as "substantially

---

[2]    Plaintiff relies on the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4 (2005); the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb (2005), and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711 *et seq.* (2005).

identical to those present here" (Pl. Mem. at 8), a brief recitation of the procedural setting of *BankAmerica* demonstrates the stark differences between the two cases.

In *BankAmerica*, following the announcement that BankAmerica, after a merger with NationsBank, would take a $392 million charge-off for a bad loan, the share price "dropped precipitously." 263 F.3d at 798. Multiple federal class action cases were brought, one by the law firm of Milberg Weiss Bershad Hynes & Lerach ("Milberg Weiss"), which also filed five class actions in California state court. After the District Court in the consolidated federal-court litigation appointed other lead counsel, the plaintiff represented by Milberg Weiss sought, and was granted, a dismissal from the federal litigation. The firm proceeded, however, with the California state litigation, in which it made three unsuccessful class-certification motions. The second such motion, which proposed to add new class representatives, prompted the defendants to remove the litigation to federal court, invoking SLUSA (discussed further below). After the District Court remanded on the ground that removal was premature, Milberg Weiss advised the California court of "plaintiffs' intent to structure the classes to avoid removal of the case to federal court." 95 F. Supp. at 1048. The ensuing motion for class certification (the third) was taken off calendar by agreement "so that the case could be submitted to mediation." *Id.* It was at this point that the plaintiffs in the federal litigation sought an injunction against further prosecution of the California case.

There are three striking differences between *BankAmerica* and this action.

*First*, the federal right at issue in *BankAmerica* was the right of "plaintiffs possessing the greatest financial stake in the litigation . . . to be appointed lead plaintiffs, to control the course of the class action litigation, and to select class counsel of their

- 6 -

choice." *Id.* at 1049. The federal plaintiffs in *BankAmerica* "represent[ed] 2,583,505 shares of stock in new BankAmerica or its predecessors. The [state] plaintiffs represent[ed] 98,678 shares" (3.8% as many shares as those owned by the federal plaintiffs). *Id.* Here, the named plaintiff has certified that he holds 300 shares and that his total loss was $1,659.25. (Pl. Cert. ¶ 3.) While the shareholdings of the three plaintiffs in the Court of Chancery proceedings are as yet undisclosed, the instant plaintiff's financial stake clearly is not substantially larger.

> *Second*, the Court in *BankAmerica* acted because "[t]he [state] plaintiffs, with one-twenty-sixth the financial stake of the federal plaintiffs, have succeeded in having premature settlement negotiations ordered by the [state] court. . . . [T]he [state] plaintiffs are in the position to begin negotiating a settlement of all class claims on behalf of all class members, including the federal plaintiffs herein." *Id.* at 1050. Here, in contrast, there have been no settlement negotiations in the Court of Chancery proceedings plaintiff seeks to enjoin, nor are any settlement discussions planned. (Cooper Aff. ¶ 10.)

> *Third*, *BankAmerica* noted that "[h]indsight now reveals that the simultaneous filing of suits in state and federal court was a blatant attempt at forum shopping. When the federal forum proved unattractive because Milberg Weiss would not be able to control that case, the firm simply took its marbles and went to play in the state court." *Id.* at 1050. As further evidence of this forum-shopping strategy, "[w]hen faced with the possibility that" adding nonparty plaintiffs as class representatives "would result in removal of the case to federal court, [Milberg Weiss] indicated their intent to structure the classes, not in the best interests of the class members, but to avoid federal court at all costs." *Id.* Here, there is no evidence of forum shopping by plaintiffs' counsel in the

Court of Chancery proceedings, who brought suit only in that court. If there has been any forum-shopping, it has been by Mr. Gielata, plaintiff's counsel, who brought this action one month after leaving the firm representing the Court of Chancery plaintiffs and who now seeks an injunction barring *his former clients* from prosecuting the action *on which he worked until his departure from the firm*. (*See* Cooper Aff. ¶ 9 and Exh. D.) The Court should not countenance this conduct.

Other than *BankAmerica*, the only federal courts that have invoked the PSLRA to support enjoining an action in state court have done so "to prevent plaintiffs from utilizing state court actions to circumvent the stay of discovery imposed by [the PSLRA]." *In re Cardinal Health Sec. Litig.*, No. 04-0575, 2005 U.S. Dist. LEXIS 3042 (S.D. Ohio Mar. 1, 2005); *see also Newby* v *Enron Corp.*, 338 F.3d 467 (5th Cir. 2003); *In re DPL Sec. Litig.*, 247 F. Supp. 2d 946 (S.D. Ohio 2003); *In re Adelphia Comms. Corp.*, 293 B.R. 337 (Bankr. S.D.N.Y. 2003). There is no such concern here. Discovery has been stayed by the Court of Chancery until the motion to dismiss is decided. (*See* Cooper Aff. ¶ 6).

**B.     SLUSA Does Not Authorize an Injunction Against the Court of Chancery.**

Plaintiff contends that "SLUSA further confirms that this class action litigation must be maintained exclusively in federal court" and quotes the provisions of the statute that federally preempt "covered class action[s] " (Pl. Mem. at 12 (*quoting* 15 U.S.C. § 78bb(f)(1)).) The gravamen of the Court of Chancery proceedings—and of this action as well—are charges that (i) JPMC's Directors breached their duty of loyalty in turning down an "offer" to merge with Bank One at no premium if the latter's CEO, Mr. Dimon, could become chief executive immediately, and (ii) the Joint Proxy Statement for the merger was false and misleading in failing to disclose the "offer" and its rejection. These purely state-law claims are expressly carved out from the preemptive provisions of SLUSA

A state action that might otherwise be preempted may be maintained if it is "based upon the statutory or common law of the State in which the issuer is incorporated (in the case of a corporation) " 15 U.S.C. § 78bb(f)(3)(A)(i). Such actions "may be maintained in a State or Federal court by a private party." *Id.* JPMC is a Delaware corporation and the Court of Chancery is a Delaware court Moreover, SLUSA specifically exempts actions arising from "any recommendation, position, or other communication with respect to the sale of securities of the issuer that    concerns decisions of those equity holders with respect to voting their securities." 15 U.S.C. § 78bb(f)(3)(A)(ii)(II)(bb); *see also* S. Rep. No. 105-182, at 404 (1998) ("It is not the intent of the Committee in adopting this legislation to interfere with state law regarding the duties and performance of an issuer's directors or officers" in "communicating with existing shareholders with respect to voting their shares") Those descriptions fit

perfectly the common-law breach-of-fiduciary-duty and proxy claims asserted in the Court of Chancery proceedings. *See Klein* v. *Southwest Gas Corp.*, 1999 U.S. Dist. LEXIS 22979 at *19 (S.D. Cal. Aug. 4, 1999) (holding that an action alleging that "defendants breached their duty of candor to [a company's] shareholders" by promulgating "alleged omissions and misrepresentations relat[ing] directly to the decisions of [the company's] shareholders with respect to the voting of their shares" was "precisely the kind of shareholder class action that Congress provided would not be made removable [to federal court] under the SLUSA").

Indeed, the claims asserted in the present action do not even fall within SLUSA's definition of actions entitled to preemptive effect because the claims are not based on conduct "in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A). Here, plaintiff is alleged to have "owned JPMC common stock throughout the Class Period and at all relevant times." (Compl. ¶ 20.) He "did not purchase or sell any shares" of JPMC stock during the relevant period. (Pl. Cert. ¶ 3.)

Finally, it is immaterial that plaintiff has padded his complaint with frivolous claims under statutory provisions such as §§ 11 and 12(a)(2) of the Securities Act of 1933 and § 10(b) of the Securities Exchange Act of 1934. These claims are fatally flawed in view of the fact that plaintiff neither purchased nor sold JPMC common stock.[3] Even if these claims were meritorious, "[t]he pendency of the [state] action does not threaten or undermine this court's ability to decide the claims properly before it." *City of Austin Police Ret. Sys.* v. *ITT Educ. Servs., Inc.*, 2005 U.S. Dist. LEXIS 1646 at *33

---

[3]     Both §§ 11 and 12(a)(2) create rights of action in favor of purchasers of securities; § 10(b) may be invoked by a purchaser or seller. Plaintiff's failure to fit within

(S.D. Ind. Feb. 2, 2005). There is thus no need for a federal court to "order[] a state court not to decide questions properly before it pursuant to that state's corporation law." *Id.* at *32-*33.

### C. CAFA Does Not Authorize an Injunction Against the Court of Chancery.

Plaintiff acknowledges that CAFA "does not appear to expand existing federal jurisdiction over class action lawsuits involving securities covered by the Securities Act or the Exchange Act." (Pl. Mem. at 13.) It is equally true that nowhere in CAFA is there language "expressly authoriz[ing]" a federal court injunction against state court proceedings. 22 U.S.C. § 2283.

### D. There Is No Implied Seventh Amendment Exception to the Anti-Injunction Act.

Plaintiff argues that if the Court of Chancery proceedings are not enjoined, "thousands of members of not only the [instant] Securities Action class, but also unnamed members of the [Court of] Chancery Action class," will be "depriv[ed]" of their "constitutional right to a jury trial." (Pl. Mem. at 15.) The argument has no merit other than novelty.

To the extent plaintiff refers to the purported class in the Court of Chancery proceedings, plaintiff has no standing to assert the Seventh Amendment rights of another person or class of persons. *See In re Cinematronics, Inc.*, 916 F.2d 1444, 1448

---

either category will be elaborated in a motion to dismiss that defendants will file in due course.

(9th Cir. 1990) [4] To the extent plaintiff refers to the classes defined in the complaint in this action, plaintiff's argument fails for two reasons.

*First*, the possibility that the Vice Chancellor "may rule upon the materiality of some of the omissions and misleading statements at the center of this litigation" (Pl. Mem. at 14-15) is inherent in a dual system of federal and state courts and has been accepted by the United States Supreme Court, which reasoned in *Kline* v. *Burke Constr. Co.*, 260 U.S. 226, 230 (1922), that when two *in personam* actions are proceeding concurrently, as they are here,

> [e]ach court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of res adjudicata by the court in which the action is still pending in the orderly exercise of its jurisdiction.

To justify an injunction, "the state court action must not simply threaten to reach judgment first, it must interfere with the federal court's own path to judgment." *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 234 (3d Cir. 2002). No such interference is threatened by the proceedings before Vice Chancellor Lamb.

*Second*, plaintiff argues that the Court of Chancery proceedings must be stayed to preserve the purported class members' right to a trial by jury, because "the Constitution guarantees that a jury, not a judge, evaluate whether the alleged omissions

---

[4]       In any event, "the Seventh Amendment[] governs proceedings in federal court, but not in state court." *Gasperini* v. *Center for Humanities*, 518 U.S. 415, 418 (1996); *see also Minneapolis & St. Louis R.R. Co.* v. *Bombolis*, 241 U.S. 211, 219 (1916). Plaintiff's motion argues that the Seventh Amendment prohibits states from "eliminat[ing] trial by jury as to one or more elements" of "a federally created right" (Pl. Mem. at 13-14), but there is no federal right or federal question in the Delaware proceeding.

are material." (Pl. Mem. at 14.) No authority is cited for this proposition, and it is demonstrably incorrect. In proxy-statement litigation, "[t]he issue of materiality may be characterized as a mixed question of law and fact, involving as it does the application of a legal standard to a particular set of facts," and that issue in certain cases is "appropriately resolved 'as a matter of law' by summary judgment." *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 450 (1976). Materiality is often determined by a court as a matter of law on a motion to dismiss or for summary judgment. *See, e.g., In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 290 (3d Cir. 1999); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1427 (3d Cir. 1997).

In *Beaumont v. American Can Co.*, 797 F.2d 79 (2d Cir. 1986), under facts very similar to those alleged in the present complaint, the Second Circuit affirmed the dismissal on motion of a § 14(a) federal proxy claim alleging that shareholders should have been informed that parties to a merger previously entertained a more favorable price-per-share, reasoning:

> [W]hat was important for the Associated shareholders to know was the actual terms of the proposed merger, not the preliminary terms subsequently amended. Much discussion necessarily takes place in the course of any merger negotiation, and some of it may explore the possibility of a higher price for the shareholders than that offered in the final proposal. But if companies were forced to disclose all preliminary negotiations, proxy statements would become longer and more obtuse than they already are.

*Id.* at 85. Even if the Seventh Amendment applied to a state-court action, the Delaware Court of Chancery's potential ruling on the state proxy claim as a matter of law is no more a violation of the Seventh Amendment than these federal precedents.

*Finally*, the implications of plaintiff's Seventh Amendment argument for the jurisdiction and jurisprudence of the Delaware Court of Chancery are staggering. It is

common for derivative suits in the Court of Chancery alleging director and officer

misconduct to be accompanied by class actions in federal court by individuals either

challenging the adequacy of proxy-statement disclosure or claiming that they would not

have purchased securities of the corporation in question (or would have purchased them

at a lower price) if that alleged misconduct had been known publicly. If the federal

courts were authorized to enjoin the Court of Chancery proceedings in such cases, the

development by the Court of Chancery of the law of directors' and officers' fiduciary

duties would be stunted.

## II.    An Injunction in This Case Is Not Necessary to Aid This Court's Jurisdiction.

Plaintiff contends that the issuance of an injunction against prosecution of

the Court of Chancery proceedings is authorized by the All Writs Act, which provides:

"The Supreme Court and all courts established by Acts of Congress may issue all writs

necessary or appropriate in aid of their respective jurisdictions and agreeable to the

usages and principles of law." 28 U.S.C. § 1651(a) (2005). The interrelationship of the

All Writs Act and the Anti-Injunction Act has been explained by the Court of Appeals for

the Third Circuit as follows:

> The two statutes act in concert to permit the issuance of an
> injunction. While the Anti-Injunction Act does not provide
> positive authority for issuance of injunctions, it describes
> those situations where injunctions are not permitted. The
> All-Writs Act, by contrast, grants the federal courts the
> authority to issue injunctions where necessary in aid of
> their jurisdiction. The parallel "necessary in aid of
> jurisdiction" language is construed similarly in both the
> All-Writs Act and the Anti-Injunction Act.

*Carlough* v. *Amchem Products, Inc.*, 10 F.3d 189, 201-02 n. 9 (3d Cir. 1993). The

"necessary in aid of jurisdiction" rationale for an injunction has traditionally been

invoked in proceedings *in rem* or in complex litigation that that is "so far advanced" that it is "the virtual equivalent of a res over which the district court require[s] full control." *In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985) (*quoted with approval in Diet Drugs*, 282 F.3d at 235 n.12).

In *Diet Drugs*, the Court of Appeals affirmed a District Court order enjoining a state court order directing that a state-certified statewide class opt out of a settlement reached in federal court after two years in a complex multidistrict litigation involving a class of six million members and the consolidation of more than 2,000 cases. *Id.* at 236. *Diet Drugs*, though cited by plaintiff (Pl. Mem. at 9-10), is hardly authority for this Court, in an action commenced less than three weeks ago, to enjoin Court of Chancery proceedings that have been pending nine months and in which a dispositive motion is *sub judice*.

## CONCLUSION

The only threat of interference with the orderly conduct of judicial proceedings is posed here, not by the pendency of the Court of Chancery consolidated action, but by plaintiff's motion to enjoin the further prosecution of that action. For the reasons stated above, this Court should deny the motion.

**OF COUNSEL:**

Nancy E. Schwarzkopf
JPMORGAN CHASE LEGAL DEPARTMENT
1 Chase Manhattan Plaza, 26th Floor
New York, New York 10081
(212) 552-3585
*Counsel for J.P. Morgan Chase & Co.*

Michael A. Cooper
Sharon L. Nelles
Keith Levenberg
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-3712
*Counsel for the Individual Defendants
(except Riley P. Bechtel)*

DATED: April 7, 2005

Jesse A. Finkelstein (#1090)
Michael R. Robinson (#4452)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square, 920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
finkelstein@rlf.com
robinson@rlf.com
*Counsel for Defendants
(except Riley P. Bechtel)*

- 16 -

# EXHIBIT A

# TO

# DEFENDANTS' MEMORANDUM

# IN OPPOSITION TO

# PLAINTIFF'S MOTION FOR AN

# INJUNCTION BARRING THE

# PROSECUTION OF RELATED

# STATE COURT ACTIONS

2005 U.S. Dist. LEXIS 3042, *

LEXSEE 2005 US DIST LEXIS 3042

**IN RE CARDINAL HEALTH, INC. SECURITIES LITIGATION, THIS DOCUMENT RELATES TO: All Securities Actions**

**Case No./Master File C2-04-575**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION**

**2005 U.S. Dist. LEXIS 3042**

**March 1, 2005, Decided**

**PRIOR HISTORY:** In re Cardinal Health, Inc. Sec. Litig., 2005 U.S. Dist. LEXIS 1431 (S.D. Ohio, Jan. 26, 2005)

**DISPOSITION:** [*1] Defendants' motion to stay all discovery in state court proceedings granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Gerald Burger, Individually and On Behalf of All Others Similiarly Situated, Plaintiff: John R Climaco, Scott D Simpkins, Climaco Lefkowitz Peca Wilcox & Garofoli LPA - 1, Cleveland, OH; David J Worley, Stuart J Gube, Chitwood & Harley LLP, Atlanta, GA; Marc A Topaz, Schiffrin & Barroway LLP - 1, Bala Cynwyd, PA; Martin D Chitwood, Chitwood & Harley, Atlanta, GA; Daniel Richard Karon, Weinstein Kitchenoff Scarlato Karon & Goldman Ltd, Cleveland, OH; Patrick G Warner, David P Meyer & Associates Co LPA, Columbus, OH.

For First New York Securities, LLC, Plaintiff: Melvyn I Weiss, Steven G Schulman, Milberg, Weiss, Bershad, Hynes & Lerach, New York, NY; David Bershad, Peter E Seidman, Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY; David J Worley, Stuart J Gube, Chitwood & Harley LLP, Atlanta, GA; Martin D Chitwood, Chitwood & Harley, Atlanta, GA; Robert N Cappucci, Stephen D Oestreich, Vincent R Cappucci, William W Wickersham, Entwistle & Cappucci LLP, New York, NY; Richard Stuart Wayne, Strauss & Troy - 1, Cincinnati, OH.

For Pension Fund Group, Plaintiff: Darren J Robbins, Lerach Coughlin Stoia Rudman & Robbins, San Diego, CA; David [*2] J Worley, Stuart J Gube, Chitwood & Harley LLP, Atlanta, GA; Jeffrey W Lawrence, Ramzi Abadou, Lerach Coughlin Stoia Geller Rudman & Robbins, San Diego, CA; Martin D Chitwood, Chitwood & Harley, Atlanta, GA; William S Lerach, Lerach Coughlin Storia Geller Rudman & Robbins LLP, San Diego, CA; Joseph F Murray, Murray Murphy Moul & Basil - 2, Columbus, OH.

For Wood Asset Management, Inc., Plaintiff: Daniel Richard Karon, Weinstein Kitchenoff Scarlato Karon & Goldman Ltd, Cleveland, OH; Daniel N Abraham, Colley Shroyer & Abraham Co., L.P.A., Columbus, OH; David P Meyer, David P Meyer & Associates Co LPA, Columbus, OH; Jack Landskroner, Landskroner - Grieco - Madden, Ltd., Cleveland, OH; John R Climaco, Scott D Simpkins, Climaco Lefkowitz Peca Wilcox & Garofoli LPA - 1, Cleveland, OH; Joseph J Braun, Richard Stuart Wayne, Strauss & Troy - 1, Cincinnati, OH; Joseph F Murray, Murray Murphy Moul & Basil - 2, Columbus, OH; Scott E Smith, Smith Phillips & Associates Co LPA, Worthington, OH; Solomon B Cera, Gold, Bennett, Cera & Sidener, LLP, San Francisco, CA.

For Cardinal Health Inc, Robert D Walter, Richard J Miller, Defendants: Geoffrey J Ritts, Jones Day Reavis & Pogue, Cleveland, [*3] OH; John M Newman, Jr, Jones, Day, Reavis, & Pogue, Cleveland, OH; Brian G Selden, J Todd Kennard, John Kevin Cogan, Shawn J Organ, Jones Day, Columbus, OH; Mark Alan Johnson, Baker & Hostetler - 2, Columbus, OH; Paul P Eyre, Baker & Hostetler, Cleveland, OH.

**JUDGES:** ALGENON L. MARBLEY, UNITED STATES DISTRICT JUDGE. Magistrate Judge King.

**OPINIONBY:** ALGENON L. MARBLEY

**OPINION:**

### ORDER

#### I. INTRODUCTION

This matter comes before the Court on Defendants' Motion For Partial Stay of Overlapping State Court Proceedings. [Docket No. 123]. Specifically, Defendants request a stay of all proceedings and/or discovery in the state-court derivative action relating to the accounting issues raised in the federal securities complaints. The Court **GRANTS** Defendants' Motion to stay all discovery in the state court case relating to the accounting issues raised in the federal securities complaints. This stay shall remain in effect pending this Court's disposition of any motion to dismiss the ongoing consolidated federal securities case, *In re Cardinal Health Securities Litigation*, No. C2-04-575 (S.D. Ohio filed July 2, 2004).

#### II. BACKGROUND and PROCEDURAL HISTORY

The consolidated federal [*4] securities case pending in this Court consists of putative class actions against Cardinal Health, Inc. ("Cardinal" or "the Company"), its officers, and related parties. The claims arise from announcements in July 2004 that the Company was the subject of a federal criminal investigation and that its Chief Financial Officer had resigned. After these announcements, the price of the Company's stock fell, and several class actions were filed alleging various violations of the federal securities laws, including Section 11 of the Securities Exchange Act of 1933, 15 U.S.C. § 77k, Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. n1

> n1 As a consolidated complaint has not yet been filed, the Court recognizes that this list of claims is only a preliminary one.

Pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 104-67, 109 Stat. 737, [*5] this Court consolidated all securities class actions filed against Cardinal and related Defendants on December 16, 2004

n2 and appointed Lead Plaintiff and Lead Plaintiff's Counsel on January 26, 2005. The PSLRA provides for a stay of discovery in federal securities fraud lawsuits during the pendency of any motion to dismiss:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of the motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 78u-4(b)(3)(B). Thus, any discovery in *In re Cardinal Health Securities Litigation* is presumptively stayed during "the pendency of a motion to dismiss." n3 *Id.*

> n2 The Court consolidated the following securities actions: *Burger v. Cardinal Health, Inc.*, No. C2-04-575; *Fener v. Cardinal Health, Inc.*, No. C2-04-579; *Senn v. Cardinal Health, Inc.*, No. C2-04-597; *Kim v. Cardinal Health, Inc.*, No. C2-04-598; *Arace v. Cardinal Health, Inc.*, No. C2-04-604; *Hessian v. Cardinal Health, Inc.*, No. C2-04-635; *Constance Matthews Living Trust v. Cardinal Health, Inc.*, No. C2-04-636; *Mariss Partners v. Cardinal Health, Inc.*, No. C2-04-649; *New Jersey v. Cardinal Health, Inc.*, No. C2-04-831; *First New York Securities LLC v. Cardinal Health, Inc.*, No. C2-04-911

> On December 15, 2004, the Court also consolidated fourteen ERISA class actions against Cardinal and related Defendants. *In re Cardinal Health, Inc. ERISA Litig.*, No. C2-04-643 (Dec. 15, 2004). To further facilitate judicial efficiency, this Court consolidated pretrial discovery in the Consolidated ERISA Action and the Consolidated Securities Action. *Id.* [*6]

> n3 This stay applies not only where the motion to dismiss has actually been filed, but where "it is anticipated that such a motion will be filed in the future." *In re DPL Inc., Sec. Litig.*, 247 F. Supp. 2d 946, 947 n 4 (S.D. Ohio 2003).

2005 U.S. Dist. LEXIS 3042, *

The target of Defendants' Motion for a Partial Stay is *Staehr v. Walter*, No. 02-CVG-11-639, a pending state court shareholder derivative action against Cardinal's officers and directors in the Common Pleas Court of Delaware County, Ohio ("state court"). n4 The original complaint in *Staehr* was filed on November 8, 2002. It alleged that the state court defendants ("State Defendants") breached their fiduciary duties in connection with Cardinal's acquisition of Syncor International Corporation ("Syncor") in 2002. An Amended Verified Derivative Complaint was filed on March 21, 2003, which acknowledged that Cardinal had remedied the allegations set forth in the first complaint, but contained new allegations that State Defendants were improperly indemnifying Monty Fu, Syncor's former board chairman. In April 2003, the *Wall Street Journal* [*7] published an article regarding alleged accounting manipulations at Cardinal; consequently, the state court plaintiff ("Staehr" or "State Plaintiff") filed a Second Amended Complaint on June 3, 2003, alleging that State Defendants prematurely recognized a $ 22 million litigation settlement and breached their fiduciary duties by engaging in insider trading and other accounting improprieties. The state court denied State Defendants' motion to dismiss on November 20, 2003 and set a trial date of September 26, 2005.

> n4 The named defendants in the state court case are Robert D. Walter, William E. Bindley, Dave Bing, George H. Conrades, John F. Finn, Robert L. Gerbig, John F. Havens, J. Michael Losh, John B. McCoy, Richard C. Notebaert, Michael D. O'Halleran, David W. Raisbeck, Jean G. Spaulding, Matthew D. Walter, Melburn G. Whitmire, Regina E. Herzlinger and Richard J. Miller ("State Defendants"). Cardinal Health, Inc. is considered a "nominal defendant" in the state court action. (Pl. Resp. at 1).

State Plaintiff [*8] filed her First Request for Production of Documents on December 5, 2002 and her Second Request for Production of Documents on December 26, 2003. Specifically, State Plaintiff requested documents relating to investigations by the Securities and Exchange Commission and the Department of Justice, Cardinal's communications with accounting entities, and Cardinal's accounting methods for the settlement of anti-trust litigation involving vitamins ("Vitamin Settlement") According to State Plaintiff, State Defendants delayed their production of responsive documents for nearly two years." (Pl. Resp. at 3) Eventually, State Plaintiff filed a Motion to Compel State Defendants to respond to State Plaintiff's First and Second Request for Production of Documents, which the Court granted on February 8, 2005, with the caveat that the court's order was "subject to any Federal District Court stay on portions of discovery requests." *Staehr v. Walter*, No. 02-CVG-11-639 (Feb. 8, 2005) (Judgment Entry Granting Plaintiff's Motion to Compel).

On January 28, 2005, Defendants filed this Motion for Partial Stay of Overlapping State Court Proceedings, asking this Court to enter an Order staying all proceedings [*9] and/or discovery in *Staehr* relating to the accounting issues raised in the pending federal securities complaints. Defendants further request that the stay, if granted, remain in place until the Court decides any dismissal motion in the pending federal securities action. If the case survives Defendants' dismissal motion, Defendants ask that discovery in *Staehr* be coordinated with the federal action. n5

> n5 On February 18, 2005, State Plaintiff filed a Specially Appearing State Court Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Partial Stay of Overlapping State Court Proceedings.

## III. ANALYSIS

Defendants seek a partial stay of discovery in the pending state court derivative suit and base their request on 15 U.S.C. § 78u-4(b)(3)(D), entitled "Circumvention of stay of discovery," which provides as follows:

> Upon a proper showing, a court may stay discovery proceedings in any private action in a State court, as necessary in aid of its jurisdiction, [*10] or to protect or effectuate its judgments, in an action subject to a stay of discovery pursuant to this paragraph.

15 U.S.C. § 78u-4(b)(3)(D). Section 78u-3(b)(3)(D) was adopted as part of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), Pub. L. 105-353, 112 Stat. 3227, which was enacted in 1998 "to close a perceived gap in the PSLRA." *In re DPL Inc., Sec Litig.*, 247 F. Supp. 2d 946, 947 (S.D. Ohio 2003). As a result of Section 78u-4(b)(3)(B), the PSLRA provision

that stays discovery in federal securities fraud cases during the pendency of a motion to dismiss, "attorneys were evading the restrictions of the PSLRA of 1995 by filing securities lawsuits in state courts." n6 *City of Austin Police Ret. Sys. v. ITT Educ. Servs.*, 2005 U.S. Dist. LEXIS 1646, No. 1:04-CV-0380, 2005 WL 280345, at *3 (S.D. Ind. Feb. 2, 2005). To curb this practice, Congress passed Section 78u-4(b)(3)(D) "to prevent plaintiffs from utilizing state court actions to circumvent the stay of discovery imposed by Section 78u-4(b)(3)(B)." *In re DPL Inc.*, 247 F. Supp. 2d at 947. As explained in the legislative history:

> This provision [*11] expressly permits a Federal court to stay discovery proceedings in any private action in a State court as necessary in aid of its jurisdiction, or to protect or effectuate its judgments. This provision authorizes a court to stay such proceedings in State court, regardless of whether: (1) there exists a parallel action in Federal court; or (2) the State proceedings were brought prior to, subsequent to, or concurrently with, a Federal filing. Because circumvention of the stay of discovery of the [PSLRA] is a key abuse that this legislation is designed to prevent, the Committee intends that courts use this provision liberally, so that the preservation of State court jurisdiction of limited individual securities fraud claims does not become a loophole through which the trial bar can engage in discovery not subject to the stay of the [PSLRA].

H.R. REP. NO. 105-640, at 17-18 (1998).

> n6 Courts have enumerated two general purposes behind the PSLRA's stay provision: (1) to prevent the imposition of any unreasonable burden on a defendant before disposition of a motion to dismiss; and (2) to avoid the situation in which discovery at the state court level allows a federal plaintiff, who would not otherwise be able to meet the PSLRA's heightened pleading requirement, an opportunity to acquire information and resuscitate a complaint otherwise subject to dismissal *In re Gilead Sciences Sec. Litig.*, 2004 U.S. Dist. LEXIS 27309, at *7, No. 03-4999 (N.D. Cal. Nov. 22,

2004) (outlining these two interests which the PSLRA was designed to protect); *In re DPL Inc.*, *Sec. Litig.*, 247 F. Supp. 2d 946, 947 (S.D. Ohio 2003) (same); *Lapicola v. Alternative Dual Fuels, Inc.*, 2002 U.S. Dist. LEXIS 5941, No. 3-02-CV-02990G, 2002 WL 531545 (N.D. Tex. Apr. 5, 2002) (same) (citation omitted), *overruled on other grounds by Newby v. Enron Corp.*, 338 F.3d 467, 473 n.3 (5th Cir. 2003).

[*12]

To determine whether a stay of state court discovery proceedings is "necessary in aid of its jurisdiction, or to protect or effectuate its judgments," 15 U.S.C. § 78u-4(b)(3)(D), the Court relies on the following three factors: (1) whether there is a risk of Plaintiffs obtaining State Plaintiff's discovery, and to what extent a confidentiality agreement and/or protective order with Defendants can minimize this risk; (2) whether the state and federal actions contain overlapping legal claims and underlying facts; and (3) the burden that the state court discovery will impose on Defendants. n7 *In re Gilead Sciences Sec. Litig.*, 2004 U.S. Dist. LEXIS 27309, at *8-9, No. 03-4999 (N.D. Cal. Nov. 22, 2004). First, however, the Court addresses State Plaintiff's threshold argument that SLUSA is not generally applicable to state court derivative actions

> N7 Stated differently, a primary purpose of the PSLRA's stay provision, section 78u-4(b)(3)(B), is "to prevent the unnecessary imposition of discovery costs on defendants." *Tobias Holdings, Inc. v. Bank United Corp.*, 177 F. Supp. 2d 162, 165 (S.D.N.Y. 2001).

[*13]

**A. SLUSA's Applicability to State Derivative Actions**

This Court must determine whether 15 U.S.C. § 78u-4(b)(3)(D) broadly applies to state court derivative actions, or whether, as State Plaintiff argues, it applies only where the movant can demonstrate the state plaintiff's intent to circumvent the PSLRA's stay provision. The plain language of the statute provides that "a court may stay discovery proceedings in *any* private action in a State court, as necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 15 U.S.C. § 78u-4(b)(3)(D) (emphasis added). Thus, by the text of the statute, a derivative state court action may be stayed pursuant to 15 U.S.C. § 78u-4(b)(3)(D) without a

Case 1:05-cv-00162-JJF    Document 9    Filed 04/07/2005    Page 26 of 46

Page 5
2005 U.S. Dist. LEXIS 3042, *

showing of the state plaintiff's intent to circumvent the PSLRA's stay provision. Although an intent to circumvent should be one factor in the Court's determination, it is not a dispositive one. *See Newby v. Enron Corp.*, 338 F.3d 467, 473 (5th Cir. 2003) ("We see no reasons why the discovery stay provision in § 78u-4(b)(3)(D) should not also apply to stays of discovery in any private, [*14] class or nonclass, action in state court); *In re DPL Inc., Sec. Litig.*, 247 F. Supp. 2d 946, 948 (S.D. Ohio 2003) ("Derivative actions in state court may be stayed pursuant to the provisions of § 78u-4(b)(3)(D).").

State Plaintiff would have this Court ignore the language of the provision in favor of the House Report's description of SLUSA's purpose. (Pl. Resp. at 7) (citing H.R. REP. NO. 105-640, at 17-18 (1998) for the proposition that SLUSA was enacted "in order to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the [PSLRA]"). State Plaintiff relies primarily on *City of Austin Police Ret. Sys. v. ITT Educ. Serv., Inc.*, 2005 U.S. Dist. LEXIS 1646, No. 1:04-CV-0380, 2005 WL 280345, at *3 (S.D. Ind. Feb. 2, 2005), which found that Congress did not intend for 15 U.S.C. § 78u-4(b)(3)(D) to allow federal courts to halt any state action's discovery; rather, Congress intended the provision to apply almost exclusively to state securities fraud actions. *ITT*, 2005 U.S. Dist. LEXIS 1646, 2005 WL 280345, at *3; *see also Tobias Holdings, Inc. v. Bank United Corp.*, 177 F. Supp. 2d 162, 168 (S.D.N.Y. 2001) [*15] (describing 15 U.S.C. § 78u-4(b)(3)(D) as a provision enacted to preclude "litigation of securities class actions in state courts"). The court in *ITT* further held that because state derivative actions were not intended targets of SLUSA, they should only be stayed upon a showing that the state plaintiff intends to circumvent the PSLRA's stay provision. 2005 U.S. Dist. LEXIS 1646, [WL] at *3 ("An intent to evade the PSLRA stay of discovery would weigh heavily in favor of a stay under the SLUSA, at least where the state court proceeding is not a securities fraud claim.").

This Court, however, finds the plain language of 15 U.S.C. § 78u-4(b)(3)(D) more persuasive than its legislative history. Had Congress intended to limit this provision to securities fraud actions, it could have done so. Likewise, had Congress desired to require a showing of an intent to circumvent the PSLRA, it could have incorporated language to that effect. n8 The statute as written, however, clearly states that "a court may stay discovery proceedings in any private action in a State court, as necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 15 U.S.C. § 78u-4(b)(3)(D)

[*16] . Thus, this Court finds the provision, as applied to state court derivative actions, does not require a showing that the state plaintiff intended to circumvent the PSLRA. The Court can now address whether a stay is "necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 15 U.S.C. § 78u-4(b)(3)(D).

n8 Although legislative history is certainly relevant to resolving ambiguities in statutory language, it is "no more authoritative than other sources of statutory interpretation . . . ." *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 820 (N.D. Ohio 1999) (rejecting one party's suggestion that the Conference Report trumped the language of a PSLRA provision, reasoning that "the Conference Report does not constitute the law, but is, instead, a gloss placed on the law by members of the House and Senate (or, more accurately, their staff), which is intended to persuade members of both houses to vote in favor of the law"). In *Telxon*, the parties urged the court to read a categorical exception for institutional investors into the PSLRA's ban on appointing a lead plaintiff who has served more than five times in a three year period. *Id.* at 820-21 (citing 15 U.S.C. § 78u-4(a)(3)(B)(vi)). The court chose, however, to rely primarily on the statutory language, noting "if Congress had intended to grant a blanket exemption from operation of the rule to institutional investors . . . , it could easily have stated" as such. This reasoning is persuasive in the case sub judice.

[*17]

**B. Risk of Circumvention**

Defendants argue that allowing discovery in *Staehr*, as it relates to the accounting issues raised in the federal litigation, "would effectively circumvent the PSLRA's heightened pleading requirements and automatic stay of discovery" by allowing Plaintiffs in federal court to bolster their Complaint before any dismissal motion has been decided. n9 (Def. Mem. in Support at 8-9) (citing *In re DPL Inc., Sec. Litig.*, 247 F. Supp. 2d 946, 948 (S.D. Ohio 2003), for the proposition that the state court litigation should not be an opportunity for the federal plaintiffs to "resuscitate a complaint that is otherwise subject to dismissal under the heightened pleading requirements of PSRLA"). Defendants caution that any confidentiality agreement would not be sufficient because "the mere receipt of discovery materials by Staehr will prejudice Defendants and thwart Congress's

goals in enacting SLUSA" and "discovery materials and related evidence may be disclosed publicly while this Court's stay is in effect " n10 (Def. Mem. in Support at 12, 14).

n9 The heightened pleading referenced by the parties refers to Section 78u-4(b)(2), which requires as follows:

> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2). [*18]

n10 Defendants rely primarily on cases in which the state plaintiffs' lawyers were deliberately attempting to avoid the PSLRA's discovery stay by filing in state court. (Def. Mem. in Support at 12, 14) (citing *In re DPL*, 247 F. Supp. 2d at 950 (noting that the attorneys, who represented both federal and state plaintiffs, indicated that the discovery would be shared), and *Newby*, 338 F.3d at 475 (finding the state plaintiff's counsel had been deliberately attempting to evade a stay of discovery by filing in state court)).

State Plaintiff responds by arguing that the only relevant question is whether the federal Plaintiffs' attorneys are intending to circumvent the discovery stay in federal court. n11 This Court disagrees with State Plaintiff's analysis. The dispositive question with regard to "risk of circumvention" is whether some form of relevant discovery is likely to reach the federal plaintiffs during the pendency of a motion to dismiss in federal Court: § 78u-4(b)(3)(D) includes no mention of a requisite intent to circumvent the PSLRA. In the case sub judice, [*19] this Court remains concerned that some form of discovery, whether it be a state court order resolving a discovery dispute or a public hearing, will reach Plaintiffs before this Court has decided any dismissal motion. n12 Due to the advanced nature of the

state court suit, as trial has been set for September 26, 2005, discovery hearings, discovery orders, and perhaps a public trial are likely. The result, intentional or not, will be to circumvent the PSLRA's stay provision.

n11 State Plaintiff asserts that she is not attempting to circumvent the PSLRA's stay provision, arguing that she filed her derivative complaint containing allegations of fraud on June 3, 2003, more than one year before the first federal Plaintiff filed a complaint against Cardinal. *Burger v. Cardinal Health, Inc.*, No. C2-04-575 (S.D. Ohio filed July 2, 2004). (Pl. Resp. at 2-3, 12). Moreover, State Plaintiff emphasizes that "there are no overlapping [attorney] representations of plaintiffs between the state and federal courts." (Pl. Resp. at 12). Finally, State Plaintiff notes that the parties have signed a confidentiality agreement: "The parties have already entered into a Protective Order which prohibits the sharing of discovery with the federal class plaintiffs." (Pl. Resp. at 11) (noting that on August 20, 2004, the parties filed a *Stipulated Protective Order Governing Order Governing the Production, Exchange and Use of Discovery Material* at Pl. Ex. I). [*20]

n12 The briefing schedule in the federal securities action requires the Lead Plaintiff's consolidated complaint is due on April 22, 2005. Defendants' responsive pleading is due sixty days later.

## C. Overlapping Legal Claims and Underlying Facts

State Plaintiff argues that state claims and federal claims have long run concurrently without federal courts issuing discovery stays, citing *City of Austin Police Ret Sys. v. ITT Educ. Serv., Inc.*, 2005 U.S. Dist. LEXIS 1646, No. 1:04-CV-0380, 2005 WL 280345, at *6 (S.D. Ind. Feb. 2, 2005) ("It is not at all unusual for securities fraud and related shareholder derivative cases to proceed along parallel tracks, without interfering with one another."), and *Tobias Holdings, Inc. v. Bank United Corp.*, 177 F. Supp. 2d 162, 169 (S.D.N.Y 2001) (holding that a federal stay of non-fraud state claims is not necessary because "the non-fraud claims would not interfere with the jurisdiction of the federal court or threaten its judgments in any way"). (Pl. Resp. at 12-

13).

The courts' holdings regarding non-fraud based state claims in *ITT* and [*21] *Tobias Holdings* are well-taken, but the circumstances presented in those cases differ substantially from those presented here. In *ITT*, the state court derivative action was at its embryonic stages as the state plaintiff had only begun the first stage of discovery. *ITT*, 2005 U.S. Dist. LEXIS 1646, 2005 WL 280345, at *6 ("The Section 220 action is . . . a precursor to a possible shareholder derivative action . . . ."). Similarly, in *Tobias Holdings*, the court was merely speculating about the interplay between federal and state court claims. The case actually turned on whether the state law claims of breach of contract, conspiracy, and tortious interference with contract, which had all been filed in federal court based solely on diversity jurisdiction, should be stayed while the federal derivative action was pending. *Tobias Holdings*, 177 F. Supp. 2d at 167 (refusing a stay, reasoning "Plaintiff's state law claims are substantive claims which . . . include separate and distinct breach of contract and tortious interference claims").

This case, however, involves a state court derivative claim predicated almost entirely on the gravamen of the complaints pending in this Court: [*22] securities fraud. Thus, were discovery to reach accidentally the federal Plaintiffs, the information would likely be applicable to the federal case because both involve the same substantive arguments. Moreover, as Defendants argue, the risk of inconsistent rulings would be unreasonably high given the similar subject matter, risking unnecessary tension between the courts. (Def. Mem. in Support at 9) (stressing that conflicting rulings are likely, on "privilege issues and the like"). n13 A stay of discovery in the state court derivative action will thus avoid any conflict between this Court and the state court, which would be ruling on a multitude of similar, if not identical, issues.

> n13 The state court appears to be in accordance with this Court's desire to avoid unseemly conflict. In the state court's Order Granting Plaintiff's Motion to Compel, Judge Krueger ruled that the Order was "subject to any Federal District Court stay on portions of discovery requests." *Staehr v. Walter*, No. 02-CVG-11-639 (Feb. 8, 2005) (Judgment Entry Granting Plaintiff's Motion to Compel)

[*23]

**D. Scope of Burden of Discovery**

Given that one purpose of the PSLRA's discovery stay is "to prevent the imposition of any unreasonable burden on a defendant before disposition of a motion to dismiss," *Lapicola v. Alternative Dual Fuels, Inc.*, 2002 U.S. Dist. LEXIS 5941, No. 3-02-CV-02990G, 2002 WL 531545, at *1 (N.D. Tex. Apr. 5, 2002), Defendants argue that complying with the discovery requests of two sets of plaintiffs will be duplicative and burdensome: "The Staehr plaintiff has served open-ended discovery requests that may require the production of hundred of thousands of documents." (Def. Mem. in Support at 13). Defendants predict that Cardinal, its officers, and any implicated third parties would have to "produce the same documents twice, respond to multiple sets of interrogatories, [and] defend and take the same depositions twice," and also stress that both this Court and the state court "would have to litigate, and resolve the same discovery disputes in two separate courts." (Def. Mem. in Support at 14).

Defendants' arguments are well-taken. The burden placed upon the Defendants would be inordinately large given the quickly impending state court trial, and coordination of state [*24] and federal court discovery would be an impossibility. Most importantly, however, rejecting Defendants' request for a discovery stay would waste substantial judicial resources. Discovery proceedings in both the federal and state actions promise to be rife with disputes and litigating them in both the state and federal courts would be cumbersome and inefficient.

In sum, upon consideration of these factors, the Court concludes that the circumstances herein are such that a stay of discovery in the state derivative action is appropriate. n14 A stay of all discovery in the state court case relating to accounting issues raised in the federal securities complaints is warranted: the possibility of circumventing the PSLRA is likely despite the confidentiality agreement and the good faith efforts of State Plaintiff; the overlapping claims are such that inconsistent rulings would be a real possibility; and the burden on Defendants and judicial resources would be great.

> n14 State Plaintiff and Defendants argue extensively over the implications of the Anti-Injunction Act, 28 U.S.C. § 2283 and the All Writs Act, 28 U.S.C. § 1651 on this Court's ability to stay discovery in state court. The Court notes that the words of § 78u-4(b)(3)(D),

2005 U.S. Dist. LEXIS 3042, *

"necessary in aid of its jurisdiction, or to protect or effectuate its judgments" echo those set forth in the Anti-Injunction Act. The Anti-Injunction Act has been narrowly construed to only allow a federal court to enjoin state court proceedings in very particular circumstances. The Court, however, like other federal courts, declines to interpret § 78u-4(b)(3)(D) to comport with the tight constraints of the Anti-Injunction Act. *See, e.g., City of Austin Police Ret. Sys. v. ITT Educational Services, Inc.,* 2005 U.S. Dist. LEXIS 1646, 2005 WL 280345, 7 (S.D. Ind. Feb. 2, 2005) ("It is reasonable to conclude that in enacting SLUSA, Congress intended to expand federal courts' existing authority to block state court proceedings, and it expected that there would be some cases where allowing discovery to proceed in state courts would interfere with a federal court's jurisdiction or its judgments.").

[*25]

## IV. CONCLUSION

For the foregoing reasons, this Court hereby **GRANTS** Defendants' Motion to stay all discovery in the state court case relating to the accounting issues raised in the federal securities complaints. [Docket No. 123]. This Order shall remain in effect until the Court has ruled upon any forthcoming motion seeking dismissal of the Plaintiffs' federal securities claims. n15

n15 The Court found the parties' briefs on this matter sufficient; thus, Defendants' Request for Oral Argument is denied.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**

**UNITED STATES DISTRICT JUDGE**

**Dated: March 1, 2005**

2005 U.S. Dist. LEXIS 1646, *; Fed. Sec. L. Rep. (CCH) P93,102

LEXSEE 2005 U.S. DIST. LEXIS 1646

**CITY OF AUSTIN POLICE RETIREMENT SYSTEM, individually and on behalf of all others similarly situated, Plaintiffs, v. ITT EDUCATIONAL SERVICES, INC., RENE R. CHAMPAGNE, OMER E. WADDLES, KEVIN M. MODANY, GENE A. BAUGH, CLARK D. ELWOOD, THOMAS W. LAUER, RAND V. ARASKOG, HARRIS N. MILLER, JOHN E. DEAN, and DANIEL P. WEADOCK, Defendants.**

**CASE NO. 1:04-cv-0380-DFH-TAB**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION**

**2005 U.S. Dist. LEXIS 1646; Fed. Sec. L. Rep. (CCH) P93,102**

**February 2, 2005, Decided**

**DISPOSITION:** Defendants' motion motion for injunction staying state court proceedings denied without prejudice

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For plaintiff City of Austin Police Retirement System: Richard E. Shevitz, COHEN & MALAD LLP.

For plaintiff Stein in Stein v. ITT Educational Services, Delaware Chancery action: Robert B. Weiser, Erich L. Zagar, Schiffrin & Barroway, Bala Cynwyd, Pennsylvania.

For defendants ITT Educational Services, Inc., et al.: Robert E. Palmer, GIBSON DUNN & CRUTCHER, LLP; Philip A. Whistler, ICE MILLER.

**JUDGES:** DAVID F. HAMILTON, JUDGE.

**OPINIONBY:** DAVID F. HAMILTON

**OPINION:**

ENTRY ON MOTION FOR STAY OF DELAWARE CHANCERY LITIGATION

This federal securities fraud case now presents a narrow question under 15 U.S.C. § 78u-4(b)(3)(D), a provision of the Securities Litigation Uniform Standards Act of 1998, known as "SLUSA." That statute authorizes a federal court hearing a federal securities fraud class action to stay discovery proceedings in a state court: "Upon a proper showing, a court may stay discovery proceedings in any private action in a State court, as necessary in aid of its jurisdiction, or to protect or effectuate its judgments, in an action subject to a stay of discovery pursuant to this paragraph." The specific question is whether this federal district court should exercise [*2] its power under Section 78u-4(b)(3)(D) to stay an action filed by a shareholder in the Delaware Court of Chancery pursuant to Section 220 of the Delaware Corporation Code. In that action, the shareholder seeks to obtain the right to inspect corporate books and records, as a possible precursor to filing a shareholder derivative action against directors and officers based on the same circumstances involved in this federal securities fraud action. The legal question is relatively novel, but it is one that may arise with some frequency.

For reasons explained in detail below, the court denies the defendants' motion for stay, though without prejudice to possible renewal if circumstances should change. Several factors weigh together against issuance of a stay. First, there is no indication that the Delaware action is intended to evade this court's stay of discovery; the Delaware plaintiff and his attorneys do not intend to share information they might learn with the plaintiffs

Case 1:05-cv-00162-JJF    Document 9    Filed 04/07/2005    Page 31 of 46

Page 2
2005 U.S. Dist. LEXIS 1646, *; Fed. Sec. L. Rep. (CCH) P93,102

and their attorneys in this case, and are willing to enter into a confidentiality order. Second, the Delaware action arises under the law of the state of incorporation and presents issues at the core of state corporation [*3] law, matters that Congress has left to the state of incorporation and its courts. Third, this court sees no potential for the Delaware action to interfere with this court's judgments, jurisdiction, or management of this securities fraud litigation.

### Factual Background

The consolidated case pending in this court presents claims of federal securities fraud. The claims have been brought on behalf of a putative class of investors against ITT Educational Services, Inc. and several officers. The claims arise from an announcement by ITT Educational Services in February 2004 that the company was the subject of a federal criminal investigation. After the announcement, the price of the company's stock fell. Numerous plaintiffs filed cases alleging violations of federal securities fraud laws. Pursuant to the terms of the Private Securities Litigation Reform Act of 1995 (known as the "PSLRA"), the court has consolidated the parallel suits, designated a lead plaintiff and lead plaintiff's counsel, and stayed discovery pending resolution of the defendants' motion to dismiss. See 15 U.S.C. § 78u-4. Briefing on the motion to dismiss was finished recently, and a hearing [*4] will be held in a few weeks.

One of the most significant changes enacted by the PSLRA is the combination of heightened pleading standards for plaintiffs with an automatic stay of discovery unless and until the plaintiffs can survive a motion to dismiss under the new, more exacting pleading standards of Section 78u-4(b)(1) & (2). The PSLRA provides for the stay of discovery in the federal securities lawsuit: "In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B). That statutory provision was the basis for this court's order staying discovery in this consolidated federal action.

The target of defendants' motion to stay is an action now pending in the Court of Chancery in Delaware. The action is *Arthur Stein v. ITT Educational Services, Inc.*, No. 778-N. Plaintiff Stein filed the Delaware action on October 26, 2004. His complaint alleges that he is and was at all relevant times [*5] a shareholder of ITT Educational Services and that on July 1, 2004 he

formally demanded that the company's board commence litigation against several officers and directors for alleged breaches of their fiduciary duties. Stein also alleges that he is entitled to inspect and copy books and records of the company, pursuant to § 220 of the Delaware Corporation Code, 8 Del. Code § 220. Stein alleges that he submitted in writing to the company on September 20, 2004, a demand to inspect and copy company records relating to alleged falsification of records of student placement, retention, graduation, attendance, academic progress, recruitment, admissions, grades, graduate salaries, and transferability of credits, as well as records relating to the board's consideration of his litigation demand. After an exchange of correspondence, the company rejected Stein's request, except that it agreed to allow him to inspect the board minutes relating to consideration of the litigation demand.

Stein alleges that he seeks to inspect records to investigate possible mis-management and breaches of fiduciary duties by officers and directors and to help him determine whether the directors are independent [*6] and have acted in good faith in considering his litigation demand. Stein's complaint seeks a judgment ordering the company to permit him to inspect and copy the requested records. According to defendants, Stein owns ITT stock worth roughly $ 3,000. It seems safe to say that his personal economic interests are not driving the Section 220 action. Stein and his attorneys in the Section 220 action have stated that they are willing to enter into a confidentiality agreement that would prevent them from sharing information with the plaintiffs' attorneys in this federal securities action.

Stein's attorneys in the Section 220 action in Delaware include the law firm of Schiffrin & Barroway, LLP. That law firm previously filed several of the federal securities fraud actions that have been consolidated in this court and this action. Although Schiffrin & Barroway sought appointment as lead plaintiff's counsel under the PSLRA, other firms and their clients were in stronger positions and were selected as lead plaintiffs and lead counsel. After the hearing on the pending motion for a stay of the Delaware action, Schiffrin & Barroway sought and was granted leave to withdraw as counsel in this case. [*7]

### Discussion

Defendants have moved for an injunction from this court to stay the Section 220 action in the Delaware Court of Chancery. Defendants rely primarily on a provision of SLUSA, 15 U.S.C. § 78u-4(b)(3)(D), and also contend that such a stay is warranted here under the

Case 1:05-cv-00162-JJF    Document 9    Filed 04/07/2005    Page 32 of 46

Page 3

2005 U.S. Dist. LEXIS 1646, *; Fed. Sec. L. Rep. (CCH) P93,102

All Writs Act, 28 U.S.C. § 1651 (a).

## I. *SLUSA*

The key statutory provision states: "Upon a proper showing, a court may stay discovery proceedings in any private action in a State court, as necessary in aid of its jurisdiction, or to protect or effectuate its judgments, in an action subject to a stay of discovery pursuant to this paragraph." 15 U.S.C. § 78u-4(b)(3)(D). Several questions leap from the page. What is "a proper showing"? Is a Section 220 action a "discovery proceeding" in a private action? Is a stay of discovery necessary in aid of this court's jurisdiction or to effectuate this court's judgments? These questions cannot be answered by prolonged meditation on the statutory text. The court must rely on the statutory scheme as a whole, the legislative history, and the applicable case law.

### A. *SLUSA and its Legislative* [*8] *History*

The legislative history of SLUSA provides some context and explanation for the specific provision authorizing stays of discovery in state court. The Congress that enacted SLUSA in 1998 perceived that securities fraud plaintiffs and their attorneys were evading the restrictions of the PSLRA of 1995 by filing securities fraud lawsuits in state courts. The legislative findings themselves focused on state law cases alleging securities fraud:

The Congress finds that --

(1) the Private Securities Litigation Reform Act of 1995 sought to prevent abuses in private securities fraud lawsuits;

(2) since enactment of that legislation, considerable evidence has been presented to Congress that *a number of securities class action lawsuits have shifted from Federal to State courts*;

(3) this shift has prevented that Act from fully achieving its objectives;

(4) State securities regulation is of continuing importance, together with Federal regulation of securities, to protect investors and promote strong financial markets; and

(5) in order *to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives* [*9] of the Private Securities Litigation Reform Act of 1995, it is appropriate to enact national standards for securities class action lawsuits involving nationally traded securities, *while preserving the appropriate enforcement powers of State securities regulators and not changing the current treatment of individual lawsuits.*

Pub. L. 105-353 § 2 (emphasis added); see also H.R. Rep. No. 105-640 at 8-9, cited in *Newby v. Enron Corp.*, 338 F.3d 467, 471 (5th Cir. 2003) (affirming federal order staying discovery in state securities fraud action); *Kircher v. Putnam Funds Trust*, 373 F.3d 847, 848 (7th Cir. 2004). SLUSA therefore preempted most state law class actions based on allegations of securities fraud. 15 U.S.C. § 78bb(f)(1) & (5)(B). Congress did not attempt to prohibit individual (non-class) securities fraud cases in state courts, but it enacted the discovery stay provision at issue here in an effort to prevent plaintiffs from using such state court actions to evade the discovery stay pending a decision on a motion to dismiss.

The committee report on the bill explained the discovery stay provision and similarly [*10] focused on state law cases alleging securities fraud, stating:

Subsection 101(a)(2) amends Section 27(b) of the Securities Act of 1933 to include a provision to prevent plaintiffs from circumventing the stay of discovery under the Reform Act by using State court discovery, which may not be subject to those limitations, in an action filed in State court. This provision expressly permits a Federal court to stay discovery proceedings in any private action in a State court as necessary in aid of its jurisdiction, or to protect or effectuate its judgments. This provision authorizes a court to stay such proceedings in State court, regardless of whether: (1) there exists a parallel action in Federal court; or (2) the State proceedings were brought prior to, subsequent to, or concurrently

Case 1:05-cv-00162-JJF    Document 9    Filed 04/07/2005    Page 33 of 46

Page 4

2005 U.S. Dist. LEXIS 1646, *; Fed. Sec. L. Rep. (CCH) P93,102

with, a Federal filing. Because circumvention of the stay of discovery of the Reform Act is a key abuse that this legislation is designed to prevent, *the Committee intends that courts use this provision liberally, so that the preservation of State court jurisdiction of limited individual securities fraud claims does not become a loophole* through which the trial bar can engage in discovery not [*11] subject to the stay of the reform Act.

H.R. Rep. No. 105-640 at 17-18 (1998). The report then added that essentially the same amendment for the same reasons was being made to Section 28 of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4, which is the provision directly at issue here. *Id.* at 18.

SLUSA is one of the more aggressive examples of federal laws regulating litigation in state courts. Despite the focus on securities fraud cases in the legislative history, the language authorizing stays of state court discovery in Section 78u-4(b)(3)(D) is not limited to state securities fraud actions. It may apply to "any private action." Congress nevertheless took deliberate steps to preserve state authority over areas of corporation law traditionally left to the states:

> Preservation of certain actions. (A) Actions under State law of State of incorporation. (I) Actions preserved Notwithstanding paragraph (1) or (2), a covered class action described in clause (ii) of this subparagraph that is based upon the statutory or common law of the State in which the issuer is incorporated (in the case of a corporation) or organized (in the case of [*12] any other entity) may be maintained in a State or Federal court by a private party.

15 U.S.C. § 78bb(f)(3) Congress also provided expressly that shareholder derivative actions under state law are not covered by the SLUSA prohibition on securities fraud class actions under state law. 15 U.S.C. § 78bb(f)(5)(C).

B. "*Discovery Proceedings*"

Stein argues, based on Delaware law, that his Section 220 action is not a "discovery proceeding" within the meaning of Section 78u-4(b)(3)(D). Delaware's Section 220 provides in pertinent part:

> (b) Any stockholder, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose, and to make copies and extracts from:
>
> > (1) The corporation's stock ledger, a list of its stockholders, and its other books and records; * * *
>
> (c) If the corporation, or an officer or agent thereof, refuses to permit an inspection sought by a stockholder or attorney or other agent acting for the stockholder pursuant to subsection (b) of this section or does not reply [*13] to the demand within 5 business days after the demand has been made, the stockholder may apply to the Court of Chancery for an order to compel such inspection. The Court of Chancery is hereby vested with exclusive jurisdiction to determine whether or not the person seeking inspection is entitled to the inspection sought. The Court may summarily order the corporation to permit the stockholder to inspect the corporation's stock ledger, an existing list of stockholders, and its other books and records, and to make copies or extracts therefrom; or the Court may order the corporation to furnish to the stockholder a list of its stockholders as of a specific date on condition that the stockholder first pay to the corporation the reasonable cost of obtaining and furnishing such list and on such other conditions as the Court deems appropriate *Where the stockholder seeks to inspect the corporation's books and records, other than its stock ledger or list of stockholders,* such stockholder shall first establish that:
>
> > (1) Such stockholder is a stockholder;
> >
> > (2) Such stockholder has complied with this section respecting the form and

Case 1:05-cv-00162-JJF    Document 9    Filed 04/07/2005    Page 34 of 46

Page 5

2005 U.S. Dist. LEXIS 1646, *; Fed. Sec. L. Rep. (CCH) P93,102

manner of making demand for inspection of such [*14] documents; and

(3) The inspection such stockholder seeks is for a proper purpose.

Where the stockholder seeks to inspect the corporation's stock ledger or list of stockholders and establishes that such stockholder is a stockholder and has complied with this section respecting the form and manner of making demand for inspection of such documents, the burden of proof shall be upon the corporation to establish that the inspection such stockholder seeks is for an improper purpose. The Court may, in its discretion, prescribe any limitations or conditions with reference to the inspection, or award such other or further relief as the Court may deem just and proper.

8 Del. Code § 220 (emphasis added). Section 220 codifies stockholders' common law rights to examine corporate records. *Saito v. McKesson HBOC, Inc.*, 806 A.2d 113, 116 (Del. 2002).

Stein points out that Delaware courts have distinguished between Section 220 actions and standard civil discovery. *E.g., Saito*, 806 A.2d at 114-15. For example, Delaware law prohibits a plaintiff in a shareholder derivative action from using discovery under civil procedure rules until the case survives [*15] a motion to dismiss under the heightened pleading standard of Court of Chancery Rule 23.1. *Grimes v. Donald*, 673 A.2d 1207, 1218 n.22 (Del. 1996), overruled in part on other grounds, *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). In fact, because civil discovery is not readily available in derivative actions, the Delaware courts have repeatedly instructed shareholders contemplating a derivative action to use "the tools at hand," including Section 220, to obtain information needed to investigate and prepare a demand and later derivative action. *Brehm*, 746 A.2d at 266-67; accord, *e.g., Saito*, 806 A.2d at 115; *In re Walt Disney Co. Derivative Lit.*, 825 A.2d 275, 279 n.5 (Del. Ch. 2003); *Guttman v. Huang*, 823 A.2d 492, 504 (Del. Ch. 2003).

Section 220 actions differ from standard civil discovery in at least two important respects. First, § 220

is limited to the right to inspect existing records and documents. It does not provide the tools of depositions, interrogatories, requests for admission, or inspections of places or things. Second, § 220 involves direct court supervision of the disclosure [*16] of information, which differs from the standard civil discovery practice of having opposing parties handle their own exchange of information, with court intervention only as needed.

Nevertheless, whether a Section 220 action under Delaware law is a "discovery proceeding" for purposes of SLUSA is a question of federal law, not state law. The state courts' distinction between § 220 and civil discovery is not controlling. As a matter of federal law, the court is convinced that Stein's Section 220 action is a "discovery proceeding" within the meaning of 15 U.S.C. § 78u-4(b)(3)(D). Stein's action seeks not only the corporation's list of stockholders but a broad range of internal documents relevant to alleged or suspected wrongdoing. Delaware's policy choice to require use of Section 220 before full civil discovery is available does not control the question of federal law. In substance, the Section 220 action is a judicially-controlled procedure for forcing a corporation to provide a form of discovery to stockholders, and at least in Stein's case, the Section 220 action is a precursor to a derivative lawsuit. In enacting the discovery stay provision of SLUSA, Congress [*17] chose to use broad language that can be adapted to a variety of state law procedures to accomplish the congressional purpose of preventing evasion of the PSLRA discovery stay. For purposes of federal law, the substance controls, and Stein's Section 220 action is a "discovery proceeding" for purposes of Section 78u-4(b)(3)(D).

C "*Upon a Proper Showing*"

The next question is whether defendants have made "a proper showing" to support a federal injunction halting the state court action. In enacting SLUSA, Congress did not spell out the requirements for "a proper showing." In the statutory language, the federal court may act as "necessary in aid of its jurisdiction, or to protect or effectuate its judgments." These words echo the Anti-Injunction Act, 28 U.S.C. § 2283, and the All Writs Act, 28 U.S.C. § 1651. The court is not persuaded that an injunction stopping the Section 220 action is needed to aid this court's jurisdiction or to protect or effectuate its judgments.

Under the Anti-Injunction Act, the phrase "necessary in aid of its jurisdiction" means that "federal injunctive relief may be necessary to prevent a state court from [*18] so interfering with a federal court's consideration or disposition of a case as to seriously

Case 1:05-cv-00162-JJF    Document 9    Filed 04/07/2005    Page 35 of 46

Page 6
2005 U.S. Dist. LEXIS 1646, *; Fed. Sec. L. Rep. (CCH) P93,102

impair the federal court's flexibility and authority to decide that case." *Zurich American Ins. Co. v. Superior Court for State of California*, 326 F.3d 816, 825 (7th Cir. 2003) (reversing injunction), quoting *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295, 26 L. Ed. 2d 234, 90 S. Ct. 1739 (1970). Stein's pursuit of the Section 220 case in Delaware will not interfere at all with this court's consideration or disposition of the consolidated federal securities fraud case, nor will it impair this court's flexibility in managing the case or its authority to decide the case. It is not at all unusual for securities fraud and related shareholder derivative cases to proceed along parallel tracks, without interfering with one another. Stein's case is merely a precursor to such a derivative action.

Under the Anti-Injunction Act, the concept of protecting or effectuating judgments focuses on final judgments. See, e.g., *In re BankAmerica Corp. Securities Lit.*, 263 F.3d 795, 801 (8th Cir. 2001) (affirming injunction against state securities fraud [*19] action under "authorized by Congress" exception, but explaining that exception for injunctions necessary to effectuate or protect district court's judgments was inapplicable because district court's lead-plaintiff order was neither a final appealable order nor an order appealable under the collateral order doctrine), citing *Z-Seven Fund, Inc. v Motorcar Parts & Accessories*, 231 F.3d 1215, 1218-19 (9th Cir. 2000) (PSLRA lead plaintiff order not appealable final order); 17 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4226 (2d ed. 1988) (exception for protection of judgments extends, at best, to interlocutory orders appealable under collateral order doctrine). This court has issued no final judgment in this case.

Nevertheless, it is reasonable to conclude that in enacting SLUSA, Congress intended to expand federal courts' existing authority to block state court proceedings, and it expected that there would be some cases where allowing discovery to proceed in state courts would interfere with a federal court's jurisdiction or its judgments. The most obvious candidate, of course, is the federal court's interlocutory order [*20] staying discovery, so that state court proceedings involving efforts to evade or interfere with such orders could be enjoined.

Federal courts have used Section 78u-4(b)(3)(D) to issue stays of discovery in a number of state cases alleging securities fraud. *E.g., Newby v. Enron Corp.*, 338 F.3d 467, 473 (5th Cir. 2003) (affirming stay);

*Schwartz v. TXU Corp.*, 2004 WL 1732477, at *2, 2004 U.S. Dist. LEXIS 14782, at *6 (N.D. Tex. July 30, 2004); *Adelphia Communs. Corp. v. Rigas (In re Adelphia Communs. Corp.)*, 293 B.R. 337, 355 (Bankr. S.D.N.Y. 2003). The risk of evasion of federal restrictions is obvious in parallel state cases alleging securities fraud under state law, and, as noted above, such cases were the principal target of the SLUSA provision.

The parties have identified only one case in which a federal court issued a stay of discovery in a state court action that was not a securities fraud case. The court in *In re DPL, Inc. Securities Litigation*, 247 F. Supp. 2d 946 (S.D. Ohio 2003), issued a SLUSA stay of discovery in related shareholder derivative actions under state law and pending in state courts. There is one critical [*21] difference between this case and *DPL*. In *DPL*, the attorney for the plaintiffs in the state court shareholder derivative actions "indicated that he anticipated sharing discovery obtained in that state court proceeding with the other counsel representing Plaintiffs in these consolidated [federal] actions." 247 F. Supp. 2d at 950. In this litigation, by contrast, Stein and Schiffrin & Barroway have made it clear that they are willing to enter into a confidentiality agreement and to refrain from sharing with plaintiffs' counsel in this case any information obtained under § 220. That fact, as well as the difference between derivative actions and Section 220 actions, distinguishes this case from *DPL*. See generally *In re FirstEnergy Shareholder Derivative Lit.*, 219 F.R.D. 584, 586 (N.D. Ohio 2004) (denying stay of discovery in derivative action in federal court where none of the attorneys in the derivative litigation were attorneys in parallel securities fraud litigation and defendants could not demonstrate that derivative plaintiffs were attempting to evade PSLRA stay of discovery); *Tobias Holdings, Inc. v. Bank United Corp.*, 177 F. Supp. 2d 162, 168 (S.D.N.Y. 2001) [*22] (declining to apply PSLRA stay to state law claims other than securities fraud claims).

The parties have cited only one case involving SLUSA and Delaware's § 220. In *Cohen v. El Paso Corp.*, 2004 WL 2340046, 2004 Del. Ch. LEXIS 149 (Oct. 18, 2004), Chancellor Chandler declined to stay the Section 220 action while a securities fraud class action was pending in a federal court in Texas. In *Cohen*, the Delaware Chancellor explained his decision in some detail. He noted that both his court and the Delaware Supreme Court had "repeatedly admonished shareholder plaintiffs to seek books and records before filing class or derivative complaints, so that they may prepare a factually accurate and legally sufficient

Case 1:05-cv-00162-JJF    Document 9    Filed 04/07/2005    Page 36 of 46

Page 7

2005 U.S. Dist. LEXIS 1646, *; Fed. Sec. L. Rep. (CCH) P93,102

pleading. Both Courts have also recognized that shareholder plaintiffs who use § 220 often avoid the expensive and time-consuming procedural machinations that too often occur in derivative litigation.'" 2004 Del. Ch. LEXIS 149, 2004 WL 2340046, at *2, citing *Guttman v. Huang*, 823 A.2d 492, 493-94, 504 (Del. Ch. 2003), and quoting *In re Walt Disney Co. Derivative Lit.*, 825 A.2d 275, 279 n.5 (Del. Ch. 2003). Under § 220, a plaintiff shareholder [*23] must make a credible showing that there are legitimate issues of wrongdoing and must have a proper purpose. *Cohen*, 2004 Del. Ch. LEXIS 149, 2004 WL 2340046, at *2. The Delaware court found that the plaintiff had made such a showing based on a public announcement of a $ 1 billion write-down resulting from improper accounting for proven reserves and the launch of a formal SEC investigation. *Id.*

The defendants in *Cohen* argued that the plaintiff had an improper purpose: the evasion of the federal stay of discovery in a federal securities fraud class action known as *Wyatt v. El Paso Corp.* The Delaware court rejected the argument, seeing nothing on the face of the pleadings, and nothing in the history of the dispute, suggesting such an improper purpose. The court specifically noted that there was no indication of any intent to share the results from the Section 220 action with the *Wyatt* plaintiffs, and that the Section 220 plaintiff was willing to enter into a confidentiality agreement, just as plaintiff Stein is willing to do in this case. The Delaware court concluded that Cohen could continue his Section 220 action.

After the Delaware court declined to stay the action under SLUSA, [*24] the district judge presiding over the *Wyatt* case in the Southern District of Texas issued a one-line order staying the *Cohen* Section 220 action. *Wyatt v. El Paso Corp.*, No. H-02-2717 (S.D. Tex. Dec. 8, 2004) Chancellor Chandler has complied with that order.

Defendants in this case argue that the reasoning of the Delaware Chancery Court in *Cohen* deserves no weight at all because it is a state court. Def. Reply Br. at 10 & n.5. The argument overlooks the fact that both federal and state courts are obliged under the federal Supremacy Clause to apply federal law. A thoughtful and careful explanation of an issue by either type of court may persuade other courts that are not bound to follow its decision. By comparison, the federal court's one-line order effectively nullifying the Delaware Chancellor's thoughtful decision offers no helpful guidance to other courts. n1

n1 Busy trial courts, including this one, often issue orders without detailed explanation, or with explanations to follow. This court assumes the parties will quickly provide to this court any further explanation that the *Wyatt* court might provide.

[*25]

What standard should be applied in determining whether a party has made "a proper showing" for a stay under § 78u-4(b)(3)(D)? State court actions alleging securities fraud were the principal target of the SLUSA stay provision, but they were not necessarily the only target. At the same time, in enacting SLUSA, Congress took care to preserve the authority of state law and state courts over core areas of corporation law, including shareholder derivative actions and the relationship between shareholders and corporate directors and officers. How should the courts give life to the balance Congress attempted to strike?

Defendants contend that a federal court should stay discovery in a state case when a defendant shows that discovery is being conducted or attempted in a state court proceeding any time the facts at issue and the discovery are related to and overlap with the federal securities fraud case. See Hearing Tr. 19. Defendants contend the standard should be objective, so that intent to evade a stay under the PSLRA or intent to share the results of discovery with federal plaintiffs would be irrelevant. As defendants frame the issue, they have "a uniquely federal right" to such a stay [*26] of any state court proceedings in which discovery would overlap with discovery in this case, so that a stay is needed to protect or effectuate that order of this court. That assertion of "a uniquely federal right," however, simply begs the question whether they have made "a proper showing."

As discussed in the hearing, defendants' proposed standard would apply far too broadly, reaching state court cases in which the claims would be entirely different, and in which the federal defendants would not even need to be parties. For example, consider the possibility of a dispute between an accounting firm and its own former partner. The former partner sues the accounting firm for some variety of unlawful termination, alleging that he was removed from the partnership for having refused to remain silent about a client corporation's fraudulent accounting. If the client corporation were also a defendant in a federal securities fraud case, it would be entitled under defendant's standard to a stay of non-party discovery conducted in a

Case 1:05-cv-00162-JJF    Document 9    Filed 04/07/2005    Page 37 of 46

Page 8
2005 U.S. Dist. LEXIS 1646, *; Fed. Sec. L. Rep. (CCH) P93,102

state court lawsuit between the accounting firm and its former partner.

Defendants are of course willing to narrow their proposed standard, so long as a stay is [*27] issued in this case. They suggest that Schiffrin & Barroway's earlier involvement in the ITT Educational Services litigation ought to bar that firm, in essence, from representing any other shareholder in a Section 220 action. There is no convincing reason, however, why that earlier activity should exclude them from another case or why this court should issue an injunction against the Delaware case when, if a different set of lawyers were involved, the case should be allowed to go forward. Moreover, Schiffrin & Barroway are no longer involved in this federal litigation.

Defendants also imply, at least, that if there is intent to evade the PSLRA stay of discovery, that fact should weigh in favor of a stay. In fact, such an intent should probably be the biggest factor in deciding how far to extend SLUSA's discovery stay provision beyond the securities fraud cases that are its principal target. The court agrees that an intent to evade the PSLRA stay of discovery would weigh heavily in favor of a stay under SLUSA, at least where the state court proceeding is not a securities fraud claim. That much is explicit in the state court decision in *Cohen* and the Southern District of Ohio decision [*28] in *DPL*, which appear to be the only reported cases applying SLUSA's discovery stay provision to state court proceedings not involving securities fraud. See *Cohen*, 2004 Del. Ch. LEXIS 149, 2004 WL 2340046, at *2 (lack of evidence of intent to evade PSLRA stay critical to court's conclusion that defendant failed "proper showing" under SLUSA); *DPL*, 247 F. Supp. 2d at 950 (evidence of such intent was key factor in court's finding that defendant had made "proper showing").

In this case there is no convincing evidence of an intent to evade the PSLRA stay of discovery. As noted, Schiffrin & Barroway has no further involvement in this federal litigation, and both the firm and its client are willing to enter into a protective order in the Delaware case that would bar them from sharing information with plaintiffs' counsel in this case. Defendants may not be happy with Stein's and Schiffrin & Barroway's intent to pursue derivative claims, but the PSLRA and SLUSA were not intended to protect corporate management from shareholder derivative claims. Those are left to state law. n2

n2 Throughout their briefs and arguments,

defendants have offered unusually aggressive readings of legislative history and case law in their effort to stretch SLUSA so that derivative actions would be presumptively subject to discovery stays. For example, in their reply brief, defendants wrote at pages 3-4:

> Initially, Congress considered preempting all actions under state law that the trial bar and professional plaintiffs were using to burden a corporate-issuer with discovery pending a motion to dismiss in federal court and while the corporate-issuer sorted out its legitimate business issues. For instance, plaintiffs who were unsuccessful in the lead plaintiff's race in federal court were using, as strike-suits, either: (i) state securities class actions; or (ii) actions brought derivatively on behalf of the issuer against the issuer's officers and directors for fiduciary liability. See H.R. Rep. No. 105-640, at 9. Congress addressed the first of these two avenues of abuse by choosing to preempt a clearly defined variety of state securities class actions. See 15 U.S.C. § 77p. Out of federalism-related concerns, however, Congress chose not to entirely preempt the second avenue -- that is, actions for fiduciary liability; Congress understood that actions for fiduciary liability brought derivatively on behalf of the corporation issuer are firmly grounded in state law. So instead of preempting those actions entirely, Congress enacted a stay on discovery in order to strike a proper balance between federalism concerns and concerns related to preserving a corporate issuer's right to be free from discovery pending a motion to dismiss. H.R. Rep. No. 105-640, at 17-18.

This account of the legislative history amounts to wishful thinking. The first citation to H.R. Rep.

Case 1:05-cv-00162-JJF    Document 9    Filed 04/07/2005    Page 38 of 46

Page 9

2005 U.S. Dist. LEXIS 1646, *; Fed. Sec. L. Rep. (CCH) P93,102

No. 105-640 refers to passages that say nothing about derivative actions being strike suits; the only references on page 9 to derivative actions make clear that they are not preempted by SLUSA. The second citation, to the report's discussion of the stay provisions at pages 17-18, addresses only securities fraud claims. That passage says nothing about shareholder derivative actions.

Similarly, defendants assert "courts [note the plural] have already held that discovery is stayed under SLUSA in state derivative actions pending a motion to dismiss in a factually-related federal securities case. *See, e.g., In re DPL, Inc. Sec. Litig.*, 247 F. Supp. 2d 946 (S.D. Ohio 2003) (staying four state derivative actions pending a motion to dismiss)." Def. Reply Br. at 4-5. In fact, *DPL* is the *only* case that supports that claim, and it is readily distinguishable based on the derivative plaintiffs' attorney's stated intent to share the results of discovery with the federal plaintiffs and their attorneys.

[*29]

In supporting their motion for a stay, defendants have raised objections to the scope and expense of the records request in the Delaware Section 220 action, as well as more general objections to whether Stein has a proper purpose and has made a proper request under § 220 of the Delaware corporation code. As a matter of federalism and comity, this federal court believes those objections are better addressed to the Delaware court. If the Delaware court agrees with the defendants, there may be no need for a federal injunction against the state court proceedings. If the Delaware court disagrees and explains why it believes Stein should be allowed to obtain all or only some of the requested records, such an explanation could give the federal courts important guidance in balancing the defendants' interests against those of the other parties to the Delaware action and the interests of the State of Delaware, in which defendants chose to incorporate.

The choice of Delaware as the state of incorporation weighs heavily in this court's decision. In enacting SLUSA, Congress took care to ensure that it was not preempting state court litigation (other than most securities fraud class actions) [*30] under the law of the state of incorporation. 15 U.S.C. § 78bb(f)(3). It is "an accepted part of the business landscape in this country for States to create corporations, to prescribe their powers, and to define the rights that are acquired by purchasing their shares. A State has an interest in promoting stable relationships among parties involved in the corporations it charters, as well as in ensuring that investors in such corporations have an effective voice in corporate affairs." *CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 91, 95 L. Ed. 2d 67, 107 S. Ct. 1637 (1987). This tradition of federal deference to state regulation of the relationships between corporate shareholders, officers, and directors has deep roots in American law:

> State regulation of corporate governance is regulation of entities whose very existence and attributes are a product of state law. As Chief Justice Marshall explained: "A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of law, it possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very [*31] existence. These are such as are supposed best calculated to effect the object for which it was created."

*CTS*, 481 U.S. at 89, quoting *Trustees of Dartmouth College v. Woodward*, 17 U.S. (4 Wheat.) 518, 636, 4 L. Ed. 629 (1819).

The Delaware courts in general, and the Chancery Court in particular, are well respected for their expertise in corporation law, such as the issues presented by defendants' objections to Stein's request for records and documents under § 220. The need for a federal court to step in and save corporate managers from their own shareholders and the state courts in the chosen state of incorporation, seems minimal. See generally Ralph K. Winter, Government and the Corporation (American Enterprise Institute 1978) (arguing that Delaware corporation law reflects not a "race to the bottom" but a market-tested solution that effectively balances interests of shareholders and management); Macey & Miller, *Toward an Interest-Group Theory of Delaware Corporate Law*, 65 Tex. L. Rev. 469, 498-509 (1987); Fischel, *The "Race to the Bottom" Revisited: Reflections on Recent Developments in Delaware's Corporation Law*, 76 Nw. U. L. Rev. 913, 919-20 (1982) [*32]

To sum up, the court finds that the defendants in this case have not made "a proper showing" at this point

2005 U.S. Dist. LEXIS 1646, *; Fed. Sec. L. Rep. (CCH) P93,102

requiring a stay of Stein's Section 220 action in the Delaware courts. The Section 220 action is not a securities fraud case, nor a precursor to one. It is instead a precursor to a possible shareholder derivative action under the law and in the courts of the state of incorporation. There is no indication that the Section 220 action is intended to circumvent this court's stay of discovery under the PSLRA. The court also sees no threat to this court's jurisdiction, its judgments, or its ability to manage and decide this federal securities fraud case.

## II. *The All Writs Act*

Defendants also contend they are entitled to an injunction under the All Writs Act, 28 U.S.C. § 1651 (a). That Act provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The court sees no need to aid its own jurisdiction by ordering a state court not to decide questions properly before it pursuant to that state's corporation [*33] law. The pendency of the Section 220 action does not threaten or undermine this court's ability to decide the claims properly before it. Nor have defendants shown how pursuit of the Section 220 action would somehow interfere with the lead federal plaintiff's ability to manage this litigation.

The court recognizes that the Seventh Circuit has acknowledged that, in unusual situations, such as

management of multi-district litigation where parties are clearly engaged in forum-shopping, the All Writs Act and the Anti-Injunction Act may permit a district court to issue an injunction to safeguard a pre-trial ruling limiting discovery. *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1203 (7th Cir. 1996). After acknowledging this possibility, however, the *Winkler* court vacated as an abuse of discretion a federal district court's order attempting to block a state court proceeding to obtain discovery of a document the federal district court had refused to compel be produced. As explained above, the court sees no potential for the Delaware Section 220 action to undermine the court's ability to manage this litigation.

### Conclusion

For the foregoing reasons, defendants' motion [*34] for an injunction staying proceedings in the Delaware Court of Chancery in *Stein v. ITT Educational Services, Inc.* is hereby denied. This denial is without prejudice to possible renewal of the motion after further action by the Delaware courts.

So ordered.

Date: February 2, 2005

DAVID F. HAMILTON, JUDGE

United States District Court

Southern District of Indiana

LEXSEE 1999 US DIST LEXIS 22979

**ARTHUR KLEIN; et al., Plaintiffs, vs. SOUTHWEST GAS CORPORATION; et al., Defendants SOUTHERN UNION COMPANY, a Delaware corporation, and SU ACQUISITION CORPORATION, a California corporation, Intervenors.**

**CASE NO. 99-1004-IEG (CGA)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

**1999 U.S. Dist. LEXIS 22979**

**August 3, 1999, Decided**
**August 3, 1999, Filed; August 4, 1999, Entered**

**DISPOSITION:** [*1] Intervenor's motion to remand this action GRANTED, in its entirety, to San Diego Superior Court. Intervenors' request for attorney fees and costs DENIED. Defendants' motions to transfer venue and to dismiss intervenors' complaint DENIED AS MOOT.

**COUNSEL:** For ARTHUR KLEIN, JOHN MAURICIO, RICHARD DEMARTIN, plaintiffs: Darren Jay Robbins, Milberg Weiss Bershad Hynes and Lerach, San Diego, CA.

For SOUTHERN UNION COMPANY, SU ACQUISITION CORPORATION, intervenors: Scott L Metzger, Duckor Spradling and Metzger, San Diego, CA.

For SOUTHWEST GAS CORPORATION, THOMAS Y HARTLEY, GEORGE C BIEHL, MANUEL J CORTEZ, LLOYD T DYER, MICHAEL B JAGER, LEONARD R JUDD, JAMES J KROPID, MICHAEL O MAFFIE, CAROLYN M SPARKS, ROBERT S SUNDT, TERRANCE L WRIGHT, DOES, DOES 1-25, inclusive, defendants: Seth Alben Aronson, OMelveny and Myers, Los Angeles, CA.

**JUDGES:** IRMA E. GONZALEZ, Judge, United States District Court.

**OPINIONBY:** IRMA E. GONZALEZ

**OPINION:**

ORDER GRANTING INTERVENORS' MOTION TO REMAND; DENYING INTERVENORS' MOTION FOR COSTS AND FEES; DENYING AS MOOT DEFENDANTS' MOTIONS TO TRANSFER VENUE AND TO DISMISS COMPLAINT IN INTERVENTION

[Doc. Nos. 6, 14, 34]

**BACKGROUND**

This case involves several disputes stemming [*2] from the planned merger of defendant Southwest Gas Corporation ("Southwest Gas"), a California corporation based in Las Vegas, Nevada, and ONEOK, Inc. ("ONEOK"), an Oklahoma corporation based in Tulsa, Oklahoma.

On December 14, 1998, Southwest Gas entered into a merger agreement with ONEOK (the "ONEOK merger agreement"). As part of the ONEOK merger agreement, ONEOK agreed to acquire all of Southwest Gas's outstanding stock at a price of $ 28.50 per share. The ONEOK merger agreement contained a "no shopping" provision, which prohibited Southwest Gas from soliciting competing merger proposals.

On December 16, 1998, plaintiff Arthur Klein, one of Southwest Gas's shareholders, filed a shareholder class action suit against Southwest Gas and its Board of Directors in San Diego Superior Court. Plaintiffs' original class action complaint alleged that defendants violated their fiduciary duties to Southwest Gas's shareholders in connection with their decision to enter

into the ONEOK merger agreement. Plaintiffs sought to enjoin the planned merger on this basis.

On February 2, 1999, Southwest Gas received an unsolicited offer from intervenor Souther Union Company ("Southern Union"), a Delaware [*3] Corporation based in Austin, Texas, to acquire all of Southwest Gas's outstanding stock at a price of $ 32.00 per share (the "competing offer"). On February 21, 1999, Southern Union and Southwest Gas signed a confidentiality and standstill agreement (the "standstill agreement"), which permitted Southern Union to obtain certain non-public information concerning Southwest Gas's business operations. As part of the standstill agreement, Southern Union promised not to take any actions for the next eighteen months to influence Southwest Gas, its Board of Directors, or its shareholders by, inter alia, directly or indirectly attempting to solicit proxies from Southwest Gas's shareholders. By its terms, the standstill agreement binds both Southern Union and its affiliates from engaging in such actions.

On March 11, 1999, plaintiffs filed an application for a temporary restraining order in San Diego Superior Court seeking to enjoin defendants from proceeding with the ONEOK merger in light of Southern Union's competing offer, along with a request for expedited discovery. On March 12, 1999, the San Diego Superior Court granted plaintiffs' request for expedited discovery. Plaintiffs withdrew [*4] their application for a temporary restraining order in anticipation of an expedited hearing on their request for a preliminary injunction. On March 22, 1999, plaintiffs filed an amended class action complaint against defendants adding a claim for breach of defendants' duty of candor.

Some time after Southwest Gas received Southern Union's competing offer, ONEOK increased its offer to purchase all of Southwest Gas's outstanding stock to $ 30.00 per share (the "revised offer"). On April 26, 1999, defendants approved ONEOK's revised offer and formally rejected Southern Union's competing offer. The next day, Southern Union increased its offer to $ 33.50 per share (the "revised competing offer"). Defendants rejected Southern Union's revised competing offer on May 4, 1999.

On April 30, 1999, Southwest Gas, in anticipation of Southern Union's intervention in the shareholder class action, filed suit against Southern Union in the United States District Court for the District of Nevada alleging, among other claims for relief, breach of the standstill agreement, breach of an implied covenant of good faith and fair dealing, tortious interference with

the ONEOK merger agreement, and intentional [*5] interference with prospective economic advantage. n1 On May 13, 1999, Southwest Gas filed a motion to transfer its Nevada action to the United States District Court for the Northern District of Oklahoma.

> n1 Southwest Gas subsequently amended its complaint to add a federal securities law claim against Southern Union for unlawfully soliciting proxies from Southwest Gas's shareholders.

On May 4, 1999, Southern Union and Southern Union Acquisition Corporation, a California corporation and wholly-owned subsidiary of Southern Union formed on March 10, 1999, intervened in plaintiffs' shareholder class action suit. On May 6, 1999, defendants filed a motion to dismiss the entire action in San Diego Superior Court on forum non conveniens grounds. Plaintiffs filed a second amended class action complaint on May 5, 1999, and a corrected second amended class action complaint on May 12, 1999 ("SAC").

On May 5, 1999, ONEOK, as a third party beneficiary of the standstill agreement, filed suit against Southern Union in the United [*6] States District Court for the Northern District of Oklahoma, alleging breach of the standstill agreement, tortious interference with the ONEOK merger agreement, and intentional interference with prospective economic advantage. On May 11, 1999, the Northern District of Oklahoma issued a temporary restraining order prohibiting Southern Union, inter alia, from directly or indirectly attempting to solicit proxies from Southwest Gas's shareholders. This temporary restraining order was converted into a preliminary injunction, pursuant to Southern Union's stipulation, so as to enable Southern Union to seek a stay of the injunction from the United States Court of Appeals for the Tenth Circuit. On June 10, 1999, the Tenth Circuit denied Southern Union's request for a stay insofar as it pertained to ongoing administrative proceedings before various state public utility commissions.

On May 17, 1999, prior to the San Diego Superior Court's ruling on plaintiffs' request for a preliminary injunction and defendants' motion to dismiss, defendants jointly removed this action pursuant to 28 U.S.C. § 1446, invoking the Court's original jurisdiction under 28 U.S.C. § 1441. [*7] See 28 U.S.C. § 1441(a) (providing that a defendant may remove a civil action filed in state court over which a United States district court possesses original jurisdiction). Specifically, in

their notice of removal, defendants invoked the Court's original subject matter jurisdiction over suits involving federal questions, see 28 U.S.C. § 1331, the Court's exclusive jurisdiction over all claims arising from the Securities Exchange Act of 1934, see 15 U.S.C. § 78aa, the Court's removal jurisdiction under the newly enacted Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), see 15 U.S.C. §§ 77p(c), 78f(f)(2), and the Court's supplemental jurisdiction over all claims, including claims by intervening parties, that form part of the same case or controversy as the claims within the Court's original jurisdiction, see 28 U.S.C. § 1367(a).

Upon their removal of this action to federal court, defendants filed a motion to dismiss plaintiffs' SAC, a motion to transfer this case to the Northern District of Oklahoma, and a motion to dismiss intervenors' [*8] complaint-in-intervention. On May 21, 1999, plaintiffs file a motion to remand this action to San Diego Superior Court. On June 9, 1999, Southwest Gas entered into a memorandum of understanding with plaintiffs. Defendants represent that this memorandum of understanding "will be followed by an extensive Stipulation of Settlement, which will include the entry of a judgment by this Court dismissing the Klein action with prejudice and a release of all shareholder claims against defendants." (Defs.' Opp'n at 9-10.) Thereafter, on July 12, 1999, plaintiffs and defendants stipulated to the withdrawal of plaintiffs' motion to remand, to a partial withdrawal of defendants' motion to transfer venue, to the withdrawal of defendants' motion to dismiss plaintiffs' SAC, and to plaintiffs' filing of a third amended class action complaint ("TAC") against defendants. Intervenors filed the instant motion to remand this action to San Diego Superior Court on July 2, 1999.

In support of their motion to remand, intervenors argue that defendants' removal of this action was improper because neither plaintiffs' SAC nor intervenors' complaint-in-intervention raise federal questions. Alternatively, intervenors [*9] argue that, even assuming that the Court finds that plaintiffs' SAC raises a federal question, the Court should nevertheless decline to exercise supplemental jurisdiction over intervenors' complaint-in-intervention. Conversely, defendants argue that both plaintiffs' SAC and intervenors' complaint-in-intervention confer federal question jurisdiction on the Court. Alternatively, defendants argue that, assuming that the Court finds that it possesses federal question jurisdiction over plaintiffs' SAC only, the Court should find that is possesses supplemental jurisdiction over intervenors' complaint-in-intervention. n2 For the reasons set forth

below, the Court finds that neither plaintiffs' SAC nor intervenors' complaint-in-intervention state claims arising under federal law and, consequently, that defendants' removal of this action from state court was improper. n3

n2 Defendants also argue that the Court possesses diversity jurisdiction over plaintiffs' and intervenors' suits. However, Southwest Gas, as a citizen of the state where this suit was initially brought, was statutorily barred from removing this action to this Court on diversity grounds. See 28 U.S.C. § 1441(b). Accordingly, in determining the propriety of defendants' removal, the Court limits its inquiry to whether the Court possesses either federal question or supplemental jurisdiction over plaintiffs' and intervenors' claims. [*10]

n3 The Court notes that plaintiffs, in their withdrawn motion to remand, challenged the timeliness of defendants' removal under 28 U.S.C. § 1446(b). In their motion papers, however, intervenors do not brief the timeliness of defendants' removal as a basis for remand. Defendants have not briefed this issue either. Given the absence of proper briefing by intervenors on the timeliness of defendants' removal, the Court does not reach this alternative basis for remand.

## DISCUSSION

### I. Intervenors' Motion to Remand

#### A. Legal Standard

A motion to remand is the appropriate mechanism for challenging removal of an action from state court. See 28 U.S.C. § 1447(c). A federal court may remand an action to state court for lack of subject matter jurisdiction at any time prior to the entry of final judgment. See id. The burden is on the party seeking to preserve the removal, not the party seeking remand, to establish federal jurisdiction. See Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C., 992 F.2d 932, 937 (9th Cir. 1993). [*11] In addition, removal statutes must be strictly construed against removal jurisdiction. See Ethridge v. Harbor House Restaurant, 861 F.2d 1389, 1393 (9th Cir. 1988). Thus, "federal jurisdiction

must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

The federal courts possess federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In general, "a cause of action arises under federal law [for purposes of federal question jurisdiction] only when the plaintiff's well-pleaded complaint raises issues of federal law." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63, 95 L. Ed. 2d 55, 107 S. Ct. 1542 (1987). The well-pleaded complaint rule makes the plaintiff "the master of the claim." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 96 L. Ed. 2d 318, 107 S. Ct. 2425 (1987). He or she "may avoid federal jurisdiction by exclusive reliance on state law." Id.; see also Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 809 n.6, 92 L. Ed. 2d 650, 106 S. Ct. 3229 (1986) [*12] ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced.") A plaintiff may not avoid federal jurisdiction, however, "by omitting from the complaint federal law essential to his or her claim or by casting in state law terms a claim that can be made only under federal law." Sparta Surgical Corp. v. National Ass'n of Sec. Dealers, Inc., 159 F.3d 1209, 1212 (9th Cir. 1998). Thus, "in addition to examining the literal language selected by the plaintiff, the district court must analyze whether federal jurisdiction would exist under a properly pleaded complaint." Id.; see also Schroeder v Trans World Airlines, 702 F.2d 189, 191 (9th Cir. 1983) (recognizing that a plaintiff may not defeat removal of a federal claim by artfully pleading it as a state claim). In determining the existence of removal jurisdiction based upon a federal question, a court "must look to the complaint as of the time the removal petition was filed." Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979) (holding that, where the causes of action comprising the original complaint filed in state court did not state a federal [*13] question, no jurisdiction existed after the complaint's removal to entertain an amendment to the complaint).

### B. Analysis

In the present case, defendants stipulated to plaintiffs' filing of the TAC against them following defendants' removal of this action from state court. In their TAC, plaintiffs invoke both the Court's federal question and diversity jurisdiction. (See TAC at 6.) Unlike the previous versions of plaintiffs' complaint, plaintiffs' TAC alleges that defendants omitted material information from a preliminary proxy statement that

defendants submitted to the Securities Exchange Commission on May 11, 1999, which plaintiffs allege defendants intend to distribute to Southwest Gas's shareholders for their upcoming vote on the ONEOK-Southwest Gas merger. (See id. at 27-29.) Plaintiffs' TAC also drops John Mauricio, a citizen of Nevada, as one of the named shareholder plaintiffs. n4 Even though plaintiffs have filed a third amended complaint that asserts both federal question and diversity jurisdiction, because the Court must look to plaintiffs' complaint at the time of removal in determining the existence of federal question jurisdiction, see Libhart, 592 F.2d at 1064, [*14] the Court considers only plaintiffs' SAC and intervenors' complaint-in-intervention in determining whether defendants' removal was proper.

> n4 In addition, unlike plaintiffs' SAC, plaintiffs' TAC alleges that Southwest Gas has its principal place of business in Arizona, rather than Nevada.

### 1. Plaintiffs' SAC

No federal action appears on the face of plaintiffs' SAC. In their SAC, plaintiffs assert only three bases for relief: (1) that defendants breached their fiduciary duties to Southwest Gas's shareholders in approving the allegedly inferior ONEOK merger agreement; (2) that defendants breached their duty of candor to Southwest Gas's shareholders by allegedly failing to disclose material facts and/or misrepresenting facts about the existence and nature of Southern Union's allegedly superior competing offer; and (3) that defendants violated California Corporations Code § 1101 by approving a merger transaction that allegedly provides for a disparate payment to certain Southwest Gas shareholders who sit [*15] on Southwest Gas's Board of Directors. In short, plaintiffs' SAC seeks relief based upon violations of California corporations law, not federal securities laws. Although plaintiffs may also have potential claims arising under federal securities law because of defendants' alleged misstatements and omissions, in their SAC defendants have not chosen to enforce any rights stemming from violations of federal law. Plaintiffs do not, for example, allege in their SAC that defendants are attempting to accomplish a corporate merger through the use of proxy statements that are materially false or misleading, in violation of section 14(a) of the Securities Exchange Act of 1934. See generally J.I. Case Co. v. Borak, 377 U.S. 426, 430-35, 12 L. Ed. 2d 423, 84 S. Ct. 1555 (1964) (recognizing an implied private right of action for violation of section

14(a) based on the circulation of misleading proxy statements).

Given that plaintiffs' have not chosen in their SAC to prosecute any claims stemming from violations of federal law, defendants' invocation of the Court's exclusive jurisdiction over all claims arising from the Securities Exchange Act of 1934 (the "Act") is inapposite. [*16] The Securities Exchange Act confers federal courts with "exclusive jurisdiction of violations of [the Act] or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by [the Act] or the rules and regulations thereunder." See 15 U.S.C. § 78aa; see also Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 370, 134 L. Ed. 2d 6, 116 S. Ct. 873 (1996) ("Section 27 of the Exchange Act confers exclusive jurisdiction upon the federal courts for suits brought to enforce the Act or rules and regulations promulgated thereunder."). Even though plaintiffs allege as part of their duty of candor claim that defendants made false statements and material omissions in connection with the ONEOK merger, plaintiffs are not seeking "to enforce any liability or duty" created by the Act or the rules and regulations promulgated thereunder. Moreover, unlike the plaintiff in Sparta Surgical Corp. v. NASD, 159 F.3d 1209, at 1211-13, a case relied on extensively by defendants, plaintiffs do not predicate their corporations law claims on specific violations of federal securities laws, an area committed [*17] exclusively to federal jurisdiction. A finding that defendants violated federal securities laws is not essential to the question of whether defendants breached their fiduciary obligations to plaintiffs.

Defendants also assert as a basis of jurisdiction over this action the Court's removal jurisdiction under the newly enacted Securities Litigation Uniform Standards Act of 1998 ("SLUSA") See 15 U.S.C. § 77p(c), 78(f)(2). The SLUSA provides, inter alia, that no class action based upon the statutory or common law of any state, which involves securities traded on a national exchange, may be maintained in any state or federal court by a private party alleging "(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." Id. § 77p(b). Any such class action brought in state court "shall be removable to the Federal district court for the district in which the action is pending" and may be dismissed pursuant to section 77p(b). Id. § 77p(c) [*18] The SLUSA exempts from the aforementioned provisions,

however, class actions based upon state statutory or common law if they involve the following:

> any recommendation, position, or other communication with respect to the sale of securities of the issuer that--(I) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and (II) concerns decisions of those equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

Id. § § 77p(d)(1)(A), (B). The Senate Banking Committee provided the following explanation of Congress's intent in adopting the SLUSA:

> It is not the intent of the Committee in adopting this legislation to interfere with state law regarding the duties and performance of an issuer's directors or officers in connection with a purchase or sale of securities by the issuer or an affiliate from current shareholders or communicating with existing shareholders with respect to voting their shares, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

S. Rep. [*19] No. 105-182, at P 404 (1998). In light of the explicit statutory language of section 77p(d)(1), as well as the legislative history behind SLUSA's enactment, the Court finds that plaintiffs' SAC is precisely the kind of shareholder class action that Congress provided would not be made removable under the SLUSA. In their SAC, plaintiffs, who are holders of Southwest Gas equity stock, claim that defendants breached their duty of candor to Southwest Gas's shareholders by failing to disclose and/or misrepresenting material facts about the sale of Southwest Gas's outstanding stock. These alleged omissions and misrepresentations relate directly to the decisions of Southwest Gas's shareholders with respect to the voting of their shares. Under section 77p(d)(1)(A), such claims are not removable.

## 2. Intervenors' Complaint-in Intervention

Like plaintiffs' SAC, no federal question appears on the face of intervenors' complaint-in-intervention. The gravamen of intervenors' complaint-in-intervention is that defendants never intended to consider seriously

Southern Union's competing offer, but instead fraudulently induced Southern Union into entering into the standstill agreement so that [*20] defendants could prevent intervenors from launching a takeover effort after defendants approved the ONEOK merger agreement. Intervenors also allege that ONEOK's revised offer released intervenors from their obligations under the standstill agreement. Based on the foregoing allegations, intervenors seek the following forms of relief: (1) either a declaration that defendants revoked the standstill agreement when they negotiated and accepted ONEOK's revised purchase offer or a declaration that the standstill agreement is unenforceable due to Southwest Gas's (a) fraudulent inducement, (b) breach of duty of good faith and fair dealing, or (c) fraud and breach of contract; (2) rescission of the portions of the standstill agreement that purport to restrict intervenors from soliciting proxy votes due to Southwest Gas's fraudulent inducement; and (3) a temporary restraining order and injunction enjoining the planned merger until a final resolution of intervenors' substantive claims.

As with plaintiffs' SAC, the viability of intervenors' claims depends entirely on the application of state law. In their complaint-in-intervention, intervenors allege simple breach of contract and fraudulent inducement [*21] claims arising from the standstill agreement. Intervenors' complaint-in-intervention does not contain any allegations of violations of any federal securities laws, such as section 14(a) of the Act. Defendants' reliance on 28 U.S.C. § 1331 and 15 U.S.C. § 78aa as bases for the Court's jurisdiction is therefore misplaced. Intervenors' fraudulent inducement and breach of contract claims are not claims that have been preempted by federal law. Although intervenors may also be entitled to pursue federal proxy claims against defendants, unlike the plaintiff in Sparta, the existence of a violation under federal securities law by defendants' is not essential to the resolution of intervenors' state law claims. See generally Redwood Theatres v. Festival Enters., 908 F.2d 477, 479 (9th Cir. 1990) (recognizing that a case is not removable on federal question grounds where a plaintiff has a viable state law claim, as well as a federal claim, and simply chooses to sue on the state law claim). Intervenors, like plaintiffs, are the masters of their complaint and are entitled to decide which substantive claims they wish to assert [*22] n5

n5 On July 26, 1999, defendants submitted a supplemental memorandum of points in authorities in opposition to intervenors' motion

In that supplemental brief, defendants state that on July 19, 1999, intervenors filed suit against defendants in the United States District Court for the District of Arizona. Defendants point to intervenors' federal complaint as definitive proof of the federal character of the claims asserted by intervenors' in their complaint-in-intervention.

The content of intervenors' federal complaint, however, is not relevant to the Court's present jurisdictional inquiry. Although defendants are correct that intervenors' federal complaint asserts claims related to the planned ONEOK-Southwest Gas merger, the resolution of the state law claims asserted by intervenors' in their complaint-in-intervention does not depend on the resolution of the federal claims asserted by intervenors' in their Arizona action (e.g., racketeering). In addition, although defendants are correct that intervenors' specifically allege violations of the Securities Exchange Act in their federal complaint, this federal claim by intervenors is predicated on facts that occurred after the filing of the complaint-in-intervention-- i.e., Southwest Gas's proxy solicitation of June 30, 1999 and accompanying press release. The content of Southern Union's proposed amended answer in the Nevada action is similarly irrelevant

[*23]

Finally, even assuming that the Court were to find that plaintiffs' SAC raises questions of federal law, the Court nevertheless would decline to exercise supplemental jurisdiction over intervenors' complaint-in-intervention. Section 1441(c), which governs the removal of mixed claims, states the following:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

28 U.S.C. § 1441(c). As discussed above, plaintiffs' allegations of false statements and omissions by defendants in connection with the planned merger are limited to plaintiffs' second duty of candor claim. Given

that intervenors' complaint-in-intervention sets forth purely state law claims, state law issues clearly would predominate over any federal issues implicated in this action. Moreover, in light of plaintiffs' and defendants' memorandum of understanding, a remand of intervenors' [*24]    state law claims is especially appropriate under section 1441(c).

For the foregoing reasons, the Court finds that neither plaintiffs' SAC nor intervenors' complaint-in-intervention state claims arising under federal law and, consequently, that defendants' removal of this action from state court was improper. The Court therefore **GRANTS** intervenors' motion to remand this action to San Diego Superior Court.

**II. Intervenors' Request for Costs and Fees**

The Court having found that defendants improperly removed this action under 28 U.S.C. § 1441, the Court next considers intervenors' request for costs and attorney fees stemming from defendants' improper removal. Section 1447(c) provides, in relevant part, that "an order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The award of fees and costs under section 1447(c) rests in a district court's discretion. See Moore

v. Permanente Med. Group Inc., 981 F.2d 443, 447-48 (9th Cir. 1992).

In the present case, the Court finds that defendants' removal [*25]    was neither frivolous nor motivated by bad faith. In addition, given the complexity of this case, the Court finds that defendants' removal has not resulted in an unreasonable delay of this litigation or demonstrable prejudice to the other parties. The Court therefore **DENIES** intervenors' request for costs and fees.

**CONCLUSION**

For the reasons already stated, the Court hereby **GRANTS** intervenors' motion to remand this action, in its entirety, to San Diego Superior Court. In addition, the Court hereby **DENIES** intervenors' request for attorney fees and costs. Defendants' motions to transfer venue and to dismiss intervenors' complaint are **DENIED AS MOOT.**

**IT IS SO ORDERED.**

DATED: aug. 3, 1999

IRMA E. GONZALEZ, Judge

United States District Court