# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMUEL I. HYLAND, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>           vs.<br><br>WILLIAM B. HARRISON, JR., HANS W. BECHERER, RILEY P. BECHTEL, FRANK A. BENNACK, JR., JOHN H. BIGGS, LAWRENCE A. BOSSIDY, M. ANTHONY BURNS, ELLEN V. FUTTER, WILLIAM H. GRAY, III, HELENE L. KAPLAN, LEE R. RAYMOND, JOHN R. STAFFORD, JPMORGAN CHASE & CO., and JAMES DIMON,<br><br>      Defendants. | Case No.  **1:05-cv-162 (JJF)** |

**REPLY BRIEF IN FURTHER SUPPORT OF
PLAINTIFF HYLAND'S MOTION FOR AN INJUNCTION BARRING
THE PROSECUTION OF RELATED STATE COURT CLASS ACTIONS**

Dated: April 11, 2005

>Joseph N. Gielata (DSB # 4338)
>Attorney at Law
>501 Silverside Road, Suite 90
>Wilmington, DE 19809
>(302) 798-1096
>
>***Attorney for Plaintiff Samuel Hyland***

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.   AN INJUNCTION IS APPROPRIATE AND EXPRESSLY
     AUTHORIZED BY ACTS OF CONGRESS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.   *BankAmerica* Held That The PSLRA Expressly
          Authorizes An Injunction In This Case. . . . . . . . . . . . . . . . . . . . . . . . . . .3

     B.   The SLUSA Buttresses The Rights Created Under The PSLRA. . . . . . . . 6

     C.   Under The All Writs Act, An Injunction In This
          Case Is Appropriate To Aid This Court's Jurisdiction. . . . . . . . . . . . . . . 9

II.  AN INJUNCTION IS ALSO APPROPRIATE TO SAFEGUARD
     THE SEVENTH AMENDMENT RIGHTS OF THE CLASS. . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# **TABLE OF AUTHORITIES**

**Cases:** **Page**

*In re Adelphia Communs. Corp.*, 293 B.R. 337 (Bankr. S.D.N.Y. 2003) . . . . . . . . . . . . . 5

*Amalgamated Clothing Workers of Am. v. Richman Bros. Co.*, 348 U.S. 511 (1955). . . . 3

*In re BankAmerica Corp. Securities Litigation*, 95 F. Supp. 2d 1044 (E.D. Mo. 2000),
  *aff'd*, 263 F.3d 795 (8th Cir. 2001), *cert. denied*, 535 U.S. 970 (2002) . . . . . . . 3-6

*In re Cardinal Health Sec. Litig.*, No. 04-0575, 2005 U.S. Dist. LEXIS 3042 (S.D. Ohio
  Mar. 1, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*City of Austin Police Retirement System v. ITT Educational Services, Inc.*, 2005 U.S.
  Dist. LEXIS 1646 (S.D. Ind. Feb. 2, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*In re DPL Sec. Litig.*, 247 F. Supp. 2d 946 (S.D. Ohio 2003) . . . . . . . . . . . . . . . . . . . . . 5

*Epstein v. MCA, Inc.*, 179 F.3d 641 (9th Cir. 1999), *cert. denied* 528 U.S. 1004 (1999). .7

*Kline v. Burke Construction Co.*, 260 U.S. 226 (1922) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Laven v. Flanagan*, 695 F. Supp. 800 (D.N.J. 1988) . . . . . . . . . . . . . . . . . . . . . . 11 n.10

*Matsushita Electric Industrial Company v. Epstein*, 516 U.S. 367 (1996) . . . . . . . . . . . 7

*Media Gen., Inc. v. Tomlin*, 387 F.3d 865 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . .10

*Mendell v. Greenberg*, 927 F.2d 667 (2d Cir. 1990), *modified on other grounds*, 938 F.2d
  1528 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Mitchum v. Foster*, 407 U.S. 225 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Newby v. Enron Corp.*, 338 F.3d 467 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . .5, 6

*Providence & N.Y.S.S. Co. v. Hill Mfg. Co.*, 109 U. S. 578 (1883) . . . . . . . . . . . . . 4 & n.4

*In re Reliance Sec. Litig.*, 91 F. Supp. 2d 706 (D. Del. 2000) . . . . . . . . . . . . . . . . 11 n.10

*Shapiro v. UJB Financial Corp.*, 964 F.2d 272 (3d Cir. 1992) . . . . . . . . . . . . . . . . 11 n.10

*TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438 (1976) . . . . . . . . . . . . . . . . . . . . .10

*United States v. Desantis*, 134 F.3d 760 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. New York Telephone Co.*, 434 U.S. 159 (1977) . . . . . . . . . . . . . . . . . . . . . 9

*In re VMS Securities Litigation*, 103 F.3d 1317 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 9


**Statutes and Rules:**

United States Constitution Amendment VII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

All Writs Act, 28 U.S.C. § 1651(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-9

Anti-Injunction Act, 28 U.S.C. § 2283. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Sections 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C.
    §§ 78aa, 78j(b), 78n(a) and 78t(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 n.10

Rules 10b-5 and 14a-9 promulgated by the Securities and Exchange Commission,
    17 C.F.R. §§ 240.l0b-5 and 240.14a-9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 n.10

Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l(a)(2)
    and 77o . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 n.10

Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77z-1, 78u-4. . . . . . . . . .5

Securities Litigation Uniform Standards Act, 15 U.S.C. §§ 77p(b)-(c), 78bb(f)(1)-(2). . . 6

The Civil Rights Act of 1871, 42 U.S.C.S. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . 4 n.6

28 U.S.C. § 1367. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

This brief is respectfully submitted by Plaintiff in further support of his motion for an injunction barring related state court class actions ("Motion"), and in reply to the answering brief ("Answering Brief") in opposition to Plaintiff's Motion submitted by JPMorgan Chase & Co. ("JPMC") and all the individual defendants other than Riley P. Bechtel (together with JPMC, the "Answering Defendants").[1]

## PRELIMINARY STATEMENT

As the only parties opposing the Motion, the Answering Defendants find themselves in the awkward position of arguing against an injunction or stay of an action they have denounced as meritless.[2] The Answering Defendants' efforts to ensure that the Chancery Action proceeds against them and their ostensible preference to be sued in two courts simultaneously speaks volumes about the Answering Defendants' true motivations and lends additional support for Plaintiff's contention that the interests of the class in this matter can only be fully advanced and protected in this Court. Their shifty efforts in this regard confirm that the Chancery Action is the *wrong* complaint filed in the *wrong* court, and indicate that the Securities Action is by far the more potent action.[3]

The Answering Brief attempts to sidestep the reasoning and holding of *BankAmerica* but fails to distinguish that case other than pointing out that its procedural posture was not identical in every respect to the one at bar. However, the Answering

---

[1] Unless otherwise defined, capitalized terms have the meanings ascribed to them in Plaintiff's Opening Brief (D.I. 3). The Answering Brief is cited as "Defs.' Br. at _."
[2] The Motion has been met with resounding silence from plaintiffs' counsel in the Chancery Action, suggesting that they have either deferred to the superior Securities Action or abandoned the Chancery Action, perhaps hoping to later throw their hat in the ring in the Securities Action.
[3] For instance, in a contention unrelated to the substance of any legal argument, the Answering Defendants disingenuously seize upon and adopt a canard conjured by plaintiffs' counsel in the Chancery Action: that Plaintiff's counsel has somehow betrayed former clients by filing the Securities Action. (Defs.' Br. at 3, 8.) This is nonsense because, among other reasons: (1) Plaintiff's interests are *identical* to those of the named plaintiffs in the Chancery Action, and (2) the Securities Action *enhances* the potential recovery of the named plaintiffs and purported class in the Chancery Action by demanding a trial by jury and asserting all available federal remedies *in addition to* common law causes of action. Indeed, by salvaging several valuable claims and inviolable rights belonging to the class, which could only have been asserted in federal court, Plaintiff's counsel has also saved plaintiffs' counsel in the Chancery Action from potentially disastrous malpractice exposure. This may explain their unwillingness to oppose Plaintiff's Motion.

Brief does not dispute *BankAmerica*'s crucial holding that the PSLRA and the SLUSA created federal rights that would be rendered meaningless unless the injunction sought herein is granted.

## SUMMARY OF THE ARGUMENT

1. The PSLRA created federal rights that would be frustrated if class action lawyers who won the race to the state courthouse can effectively control related federal litigation. Thus, the PSLRA "expressly authorizes" an injunction in this case, consistent with the "expressly authorized" exception to the Anti-Injunction Act.

2. The SLUSA, which buttresses the rights created by the PSLRA consistent with Congress's intent to make federal courts the exclusive jurisdiction for securities class actions, also weighs heavily against allowing the Chancery Action to proceed.

3. The All Writs Act authorizes an injunction in this case because it is necessary and appropriate in aid of this Court's jurisdiction.

4. The Seventh Amendment right to trial by jury will be impaired if the defendants in a related state court class action can leverage non-jury findings to prevent the jury in this action from deciding questions ordinarily reserved for a jury.

# ARGUMENT

The Answering Defendants urge this Court to overrule a well-reasoned Eighth Circuit decision. The central holding of *In re BankAmerica Corp. Securities Litigation*, 95 F. Supp. 2d 1044 (E.D. Mo. 2000), *aff'd*, 263 F.3d 795 (8th Cir. 2001) is that, ***in a securities class action***, an injunction of related state court class actions is necessary to protect federal rights created by the PSLRA and buttressed by the SLUSA. Such an injunction is necessary *or appropriate* under the All Writs Act, 28 U.S.C. § 1651, and falls within the "expressly authorized" exception to the Anti-Injunction Act, 28 U.S.C. § 2283. The Answering Defendants do not dispute this holding and do not otherwise show why the reasoning of *BankAmerica* should be rejected.

## I.  AN INJUNCTION IS APPROPRIATE AND EXPRESSLY AUTHORIZED BY ACTS OF CONGRESS

Although the All Writs Act and the Anti-Injunction Act are relatively short, case law reveals that the statutes are not as precise and narrow as the Answering Defendants suggest. (Defs. Br.' at 4.) As the Eighth Circuit has already held in *BankAmerica*, the PSLRA and the SLUSA necessitate an injunction in this case under the All Writs Act and consistent with the Anti-Injunction Act.

### A.  *BankAmerica* Held That The PSLRA Expressly Authorizes An Injunction In This Case

Notwithstanding the Answering Defendants' baseless assertion to the contrary, the "expressly authorized" exception of § 2283 has been interpreted broadly by courts and does not require overt reference to § 2283. *See Amalgamated Clothing Workers of Am. v. Richman Bros. Co.*, 348 U.S. 511, 516 (1955) ("Of course no prescribed formula is required; an authorization need not expressly refer to 2283."). For example, a statute indicating that "all claims and proceedings… shall cease" is considered an express

exception since state proceedings fall within the ambit of "all proceedings." *See Providence & N.Y.S.S. Co. v. Hill Mfg. Co.*, 109 U. S. 578, 600 (1883).[4]

To determine whether an injunction is authorized in the circumstances posed by the case at bar, "[t]he test...is whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of the state court proceeding." *Mitchum v. Foster*, 407 U.S. 225, 238 (1972).[5] In *Mitchum*, the Supreme Court declined the narrow interpretation of § 2283 suggested in the Answering Brief and determined that an injunction was authorized even though there was no obvious express provision but where an injunction was necessary to effectively administer a federal statutory scheme.[6] In reaching its conclusion, the Court carefully considered the legislative history and purpose of the federal statute and determined that an injunction was consistent with the spirit of the statute.

In *BankAmerica*, the Eighth Circuit has already interpreted the "expressly authorized" exception in the context of securities litigation. Under the PSLRA, the largest stakeholder[7] serves as lead plaintiff in securities litigation, a right the Eighth Circuit held was a unique federal right thereby satisfying the first prong of *Mitchum*. *BankAmerica*, 263 F.3d at 801. Given the numerous rights and responsibilities entrusted

---

[4] Under the reasoning of *Providence*, the PSLRA's automatic stay provision expressly authorizes an injunction in this case: "In any private action arising under this chapter, all discovery **and other proceedings** shall be stayed during the pendency of any motion to dismiss…." 15 U.S.C. § 78u- 4(b)(3)(B) (emphasis added). Since "other proceedings" include state proceedings, this phrase alone supplies a basis to grant the injunction requested herein as appropriate under the Anti-Injunction Act's "expressly authorized" exception.

[5] The Answering Defendants cite to *Mitchell v. Foster*, but no such Supreme Court decision exists; presumably, they meant *Mitchum*. (Defs.' Br. at 5.)

[6] In *Mitchum*, the state prosecutor in Florida attempted to close a bookshop under nuisance laws. The Florida court issued a preliminary order closing the store, prompting the owner to seek an injunction against the state action under The Civil Rights Act of 1871, 42 U.S.C.S. § 1983. After the petitioner failed in the lower courts, the Supreme Court agreed that § 1983 authorized an injunction.

[7] The Answering Defendants belittle Plaintiff's investment in JPMC and damages in this case, but do not contend that any plaintiff in the Chancery Action has a larger financial stake. (Defs.' Br. at 7.)  As no other class member has moved to be appointed lead plaintiff in this case, Plaintiff is the presumptive lead plaintiff in the Securities Action.  15 U.S.C. §§ 77z-1(a)(3)(B), 78u-4(a)(3)(B).  In any case, it is clear that, within the appropriate statutory period, a lead plaintiff ***must be*** appointed.  *Id.*

to the lead plaintiff by Congress, the injunction was proper, as it "was the only means available to the district court of giving those rights their intended scope." *Id.* at 803. The lower court considered it important that "Congress passed the [PSLRA] to correct abusive practices in the prosecution of securities law class actions." *BankAmerica*, 95 F. Supp. 2d at 1044. Thus, in *BankAmerica*, as in *Mitchum*, legislative history was critical in determining the nature and scope of the created right.

The Answering Defendants contend that, aside from *BankAmerica*, federal courts invoking the PSLRA to enjoin state court actions have only done so to enforce the PSLRA's stay of discovery. (Defs.' Br. at 8.) However, without exception, the cases cited by the Answering Defendants involved individual or derivative actions, ***not class actions***. *See Newby v. Enron Corp.*, 338 F.3d 467, 470 (5th Cir. 2003) (enjoining action filed on behalf of thirteen individual plaintiffs); *In re Adelphia Communs. Corp.*, 293 B.R. 337, 339 (Bankr. S.D.N.Y. 2003) (granting stay of discovery against an individual action); *In re Cardinal Health Sec. Litig.*, No. 04-0575, 2005 U.S. Dist. LEXIS 3042 (S.D. Ohio Mar. 1, 2005) (granting stay of discovery against a derivative action); *In re DPL Sec. Litig.*, 247 F. Supp. 2d 946 (S.D. Ohio 2003) (same). Tellingly, the Answering Defendants fail to cite a single decision denying an injunction sought by a plaintiff in a securities class action against a related state court class action.

*BankAmerica* supports the injunction requested herein because it appears to be the only case involving ***plaintiffs*** in a federal court ***securities class action*** seeking to enjoin a related state court class action, rather than ***defendants*** seeking to stop individual state court actions from circumventing the discovery stay.

### B. The SLUSA Buttresses The Rights Created Under The PSLRA

Although the litigation in *BankAmerica* was commenced prior to the passage of the SLUSA, the legislative history behind this statute also played a role in affirming the injunction granted in that case. *See* 95 F. Supp. 2d at 1046 n.2. Congress enacted the SLUSA in 1998 after perceiving that securities fraud plaintiffs and their attorneys were evading the restrictions of the PSLRA by filing securities fraud lawsuits in state courts. The legislative findings themselves focused on securities class actions filed in state courts:

> The Congress finds that –
>
> (1) the Private Securities Litigation Reform Act of 1995 sought to prevent abuses in private securities fraud lawsuits;
>
> (2) since enactment of that legislation, considerable evidence has been presented to Congress that *a number of securities class action lawsuits have shifted from Federal to State courts*;
>
> (3) this shift has prevented that Act from fully achieving its objectives;
>
> (4) State securities regulation is of continuing importance, together with Federal regulation of securities, to protect investors and promote strong financial markets; and
>
> (5) in order *to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives* of the Private Securities Litigation Reform Act of 1995, it is appropriate to enact national standards for securities class action lawsuits involving nationally traded securities, while preserving the appropriate enforcement powers of State securities regulators and *not changing the current treatment of individual lawsuits*.

Pub. L. 105-353 § 2 (emphasis added); *see also* H.R. Rep. No. 105-640 at 8-9 (same), cited in *Newby*, 338 F.3d at 471. Congress therefore did not attempt to prohibit individual (non-class) securities fraud cases in state courts. However, Congress voiced

its clear desire to restrict the litigation of securities class actions to federal courts.  If the Chancery Action is permitted to proceed, the management of and rulings in that action will interfere with and frustrate the lead plaintiff's rights in the Securities Action.  Most troubling is the possible recurrence of the unfortunate circumstances underlying *Matsushita Electric Industrial Company v. Epstein*, 516 U.S. 367 (1996).

In *Matsushita*, the Supreme Court found that a settlement in Delaware Chancery Court could release federal securities law claims that the state court did not have subject matter jurisdiction to hear.  The long history of *Matsushita* shows why principles of comity strongly disfavor allowing competing class actions in state and federal courts.  That litigation arose out of a 1990 tender offer by Matsushita for MCA, Inc.  A state law class action relating to the tender offer was brought in the Court of Chancery (by plaintiffs' counsel including Milberg Weiss), and securities claims arising out of the same facts were brought in federal court in California.  After the Court of Chancery issued a final judgment in its case in February 1993, a six-year battle ensued regarding the effect of the Delaware judgment on the federal case pending in California.  *See Epstein v. MCA, Inc.*, 179 F.3d 641 (9th Cir. 1999), *cert. denied* 528 U.S. 1004 (1999).  Thus, unless related state court class actions are enjoined, the potential for the Securities Action defendants to secure a universal release in the Chancery Action will be a Damoclean sword hanging over the head of the lead plaintiff in the Securities Action, hampering the effective prosecution of the case.

On the other hand, enjoining the Chancery Action would be appropriate since the Securities Action alleges every class claim asserted in the Chancery Action.  Plaintiff concurs with the Answering Defendants' contention that the Chancery Action is not a

- 7 -

"covered class action" under the SLUSA.[8]  (Defs.' Br. at 9-10.)  However, whereas the SLUSA precludes most claims asserted in the Securities Action from being asserted in state court, this Court's supplemental jurisdiction, under 28 U.S.C. § 1367, allows it to hear all of the breach of fiduciary duty claims asserted in both actions.

The Answering Defendants contend that the Securities Action and Chancery Action, both class actions, should proceed in parallel, citing *Kline v. Burke Construction Co.*, 260 U.S. 226 (1922), which was decided sixteen years before class action procedures were first introduced as part of the Federal Rules of Civil Procedure.[9]  (Defs.' Br. at 12.)  The Answering Brief also cites *City of Austin Police Retirement System v. ITT Educational Services, Inc.*, 2005 U.S. Dist. LEXIS 1646 (S.D. Ind. Feb. 2, 2005) for this contention.  (Defs.' Br. at 10-11.)  However, *City of Austin* concerned a books-and-records demand in state court by a shareholder investigating potential ***derivative*** claims.  *See* 2005 U.S. Dist. LEXIS 1646, at *14-*15.  There was no ***class action*** in state court competing with the federal securities class action.  Here, this Court is confronted with two competing class actions.  The Chancery Action complaint plainly includes class action allegations, names JPMC as a vicariously-liable defendant (*i.e.*, not a nominal defendant), and does not purport to sue derivatively on behalf of JPMC.  Thus, even if it is "common for derivative suits in the Court of Chancery alleging director and officer misconduct to be accompanied by class actions in federal court," (Defs.' Br. at 14), such a situation is not present here.  Accordingly, an injunction in this case is appropriate to honor the aims of the SLUSA while maximizing judicial efficiency by adjudicating all claims in a single forum.

---

[8] When the Answering Defendants move to dismiss the operative complaint in the Securities Action, (*see* Defs.' Br. at 10 n.3), Plaintiff will hold them to this contention.
[9] Rule 23 was first adopted as part of the Federal Rules of Civil Procedure promulgated in 1938 and was substantially re-written in 1966 to broaden the availability of the class action remedy.

### C. Under The All Writs Act, An Injunction In This Case Is Appropriate To Aid This Court's Jurisdiction

The Answering Defendants misconstrue the All Writs Act as justifying injunctions only in complex litigation or proceedings *in rem.* (Defs.' Br. at 14-15.) However, in *United States v. New York Telephone Co.*, 434 U.S. 159 (1977), the Supreme Court set forth a broad construction of the All Writs Act. The Court upheld the use of the Act to compel a non-party to comply with an order, as opposed to a judgment, as would be required under the Anti-Injunction Act. The Court noted "this Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained. This statute has served since its inclusion, in substance, in the original Judiciary Act as a 'legislatively approved source of procedural instruments designed to achieve the rational ends of law.'" *Id.* at 172. The Court continued, "Indeed, '[u]nless appropriately confined by Congress, a federal court may avail itself of all auxiliary writs as aids in the performance of its duties when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it.'" *Id.* at 172-73 (citations omitted).

Accordingly, contrary to the unduly narrow reading urged in the Answering Brief, the generous language of the All Writs Act empowers federal courts to stay state court proceedings wherever "necessary ***or appropriate*** in aid of their respective jurisdictions…." (emphasis added). In addition to the Eighth Circuit in *BankAmerica*, the Seventh Circuit has also endorsed the use of the All Writs Act to enjoin state court securities litigation in order to enforce its ongoing orders. *In re VMS Securities Litigation*, 103 F.3d 1317, 1323-26 (7th Cir. 1996).

II.     AN INJUNCTION IS ALSO APPROPRIATE TO SAFEGUARD
THE SEVENTH AMENDMENT RIGHTS OF THE CLASS

The Chancery Action implicitly waives the right to a jury trial of all persons in that action's purported class, as no juries are available in the Delaware Court of Chancery. (*See* Pl.'s Opening Brf. at 13.) The only way to explain the Answering Defendants' tortured efforts to continue being sued in the Chancery Action is that they hope to leverage rulings obtained in the Chancery Action against the Securities Action. Not only does this situation offend the PSLRA and the SLUSA as it frustrates the right of the lead plaintiff to manage the litigation, *see* I.A & I.B *supra*, but it also impairs the Seventh Amendment rights of class members in the Securities Action.

The Answering Defendants err in contending that bench rulings on materiality are unexceptional. (Defs.' Br. at 13.) It is well-settled that whether alleged misrepresentations or omissions are material under the securities laws is a question that is particularly well suited for jury determination. *See, e.g., Mendell v. Greenberg*, 927 F.2d 667, 673 (2d Cir. 1990), *modified on other grounds*, 938 F.2d 1528 (2d Cir. 1991); *Media Gen., Inc. v. Tomlin*, 387 F.3d 865, 871-72 (D.C. Cir. 2004) (reversing dismissal of purchaser's claims for securities fraud, common law fraud, and civil conspiracy because "[t]his dispute over the [materiality of an undisclosed lawsuit in the context of merger-related disclosures] is precisely the kind of fact-specific question that should be resolved by a jury."); *United States v. Desantis*, 134 F.3d 760, 764 (6th Cir. 1998) ("Issues of materiality in the [securities fraud] context being discussed here are normally reserved for a jury." (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976))). As

materiality is an element of each of Plaintiff's securities claims, this question is appropriately reserved for the jury demanded in the Securities Action.[10]

The Answering Defendants' actions betray their obvious preference to defend themselves in the Court of Chancery, where their misconduct cannot be exposed to a jury. Thus, their objective here is all too transparent: obtain favorable rulings, including factual findings, in the Chancery Action, attempt to bind this Court to such rulings, and thereby prevent certain questions, such as materiality, from being decided by a jury. The Answering Defendants' hypocritical accusation of forum-shopping, (*see* Defs.' Br. at 8), cannot apply to Plaintiff, who had *no choice as to where to file*, given that the SLUSA leaves no doubt that the Securities Action could be maintained *only* in federal court.

The Answering Defendants contend that the Seventh Amendment does not govern proceedings in state court. (Defs.' Br. at 12 n.4.) This misses the point. The Securities Action demands a trial by jury *in federal court*, as guaranteed by the Seventh Amendment. This guarantee will be frustrated if the Securities Action defendants can block the jury from making findings as a result of rulings in a non-jury action.

---

[10] Materiality is an element (or, for control person claims, an element of the primary violation) of each of Plaintiff's securities claims. To establish a cause of action for a violation of Rule 14a-9, a plaintiff must demonstrate: (1) that the defendants made a *material* misrepresentation or omission in a proxy statement; (2) that they knew or should have known was false; and (3) that the proxy solicitation was an essential link in effecting the proposed corporate action. *In re Reliance Sec. Litig.*, 91 F. Supp. 2d 706, 728 (D. Del. 2000). The elements of a cause of action under Section 10(b) are: (1) misstatement or omission; (2) of a *material* fact; (3) with scienter; (4) in connection with the purchase or sale of securities; (5) upon which plaintiffs relied; and (6) that reliance proximately caused plaintiffs' losses. *Id.* at 720. To establish liability under Section 20(a) of the Exchange Act, a plaintiff must show: (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful sense a culpable participant in the primary violation. *Id.* at 731. To establish a claim under Section 11 of the Securities Act, a plaintiff must establish that he/she acquired a security issued pursuant to a false or misleading registration statement. *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 286 (3d Cir. 1992) Section 12(a)(2) of the Securities Act provides that a person who offers or sells securities by means of a prospectus or oral communication that misrepresents or omits *material* facts is liable to the purchaser. *Id.* Section 15 of the Securities Act provides that any person who controls another person liable under Sections 11 or 12 is jointly and severally liable along with the controlled person unless the controlling person had no knowledge or reasonable ground to know of the facts giving rise to liability. *Laven v. Flanagan*, 695 F. Supp. 800, 806 (D.N.J. 1988).

Accordingly, an injunction in this case is appropriate to safeguard the right to trial by jury guaranteed by the Constitution to all members of the class in this action.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that this Court enter the Motion's proposed Order.  In order to expedite resolution of this matter, Plaintiff stands on the briefs submitted and does not request oral argument.  However, at the Court's convenience, counsel is available for oral argument.

DATED:      April 11, 2005              Respectfully submitted,

/s/ Joseph N. Gielata
Joseph N. Gielata (DSB # 4338)
Attorney at Law
501 Silverside Road, Suite 90
Wilmington, DE 19809
(302) 798-1096

***Attorney for Plaintiff Samuel Hyland***

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

## **CERTIFICATE OF SERVICE**

I hereby certify that, on April 11, 2005, I electronically filed the REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFF HYLAND'S MOTION FOR AN INJUNCTION BARRING THE PROSECUTION OF RELATED STATE COURT CLASS ACTIONS (the "Filing") with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

>Jesse A. Finkelstein, Esq.
>Michael R. Robinson, Esq.
>**RICHARDS LAYTON & FINGER, P.A.**
>One Rodney Square
>Wilmington, DE  19801
>*Counsel for Defendants except Riley P. Bechtel*

I hereby certify that, on April 11, 2005, I have mailed by United States Postal Service, postage prepaid, and emailed the Filing to the following non-registered participants:

>Seth D. Rigrodsky, Esq.
>srigrodsky@milbergweiss.com
>Richard Weiss, Esq. (via email only)
>rweiss@milbergweiss.com
>**MILBERG WEISS BERSHAD & SCHULMAN LLP**
>919 North Market Street Suite 411
>Wilmington, DE 19801
>*Co-Lead Counsel for Plaintiffs in*
>*In re J.P. Morgan Chase & Co. Shareholder Litigation*, 531-N

I hereby certify that, on April 11, 2005, I delivered by hand the Filing to the following non-registered participants:

>The Honorable Stephen P. Lamb
>**Vice Chancellor of the Court of Chancery**
>New Castle County Courthouse
>500 North King Street, Suite 11400
>Wilmington, DE  19801

>/s/ Joseph N. Gielata
>Joseph N. Gielata (DSB # 4338)
>Attorney at Law
>501 Silverside Road, Suite 90
>Wilmington, Delaware 19809
>(302) 798-1096
>attorney@gielatalaw.com