## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMUEL I. HYLAND and STEPHANIE SPEAKMAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>        vs.<br><br>WILLIAM B. HARRISON, JR., HANS W. BECHERER, RILEY P. BECHTEL, FRANK A. BENNACK, JR., JOHN H. BIGGS, LAWRENCE A. BOSSIDY, M. ANTHONY BURNS, ELLEN V. FUTTER, WILLIAM H. GRAY, III, HELENE L. KAPLAN, LEE R. RAYMOND, JOHN R. STAFFORD, JPMORGAN CHASE & CO., and JAMES DIMON,<br><br>    Defendants. | Civil Action No. **1:05-cv-162 (JJF)**<br><br>**CLASS ACTION** |

## OPENING BRIEF IN SUPPORT OF THE
## MOTION BY PLAINTIFFS SAMUEL HYLAND
## AND STEPHANIE SPEAKMAN
## FOR APPOINTMENT AS LEAD PLAINTIFFS
## AND APPOINTMENT OF LEAD COUNSEL

Dated: May 23, 2005

Joseph N. Gielata (DSB # 4338)
Attorney at Law
501 Silverside Road, Suite 90
Wilmington, DE 19809
(302) 798-1096

*Attorney for Plaintiffs*
*Samuel Hyland and*
*Stephanie Speakman*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING . . . . . . . . . 2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.     The Merger and the Secret Deal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.     The Commencement of This Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.    Plaintiffs Satisfy The Statutory Criteria
    For Appointment As Lead Plaintiffs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.     Adequate Notice of the Pendency of
            the Action Was Properly Published. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

      B.     Plaintiffs Believe That They Have The Most
            Substantial Financial Interest In This Case. . . . . . . . . . . . . . . . . . . . . . . 10

      C.     Plaintiffs Satisfy The Requirements of Rule 23. . . . . . . . . . . . . . . . . . . 11

            1.    Typicality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

            2.    Plaintiffs Will Adequately Represent
                 The Interests Of The Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

II.    Plaintiffs' Chosen Counsel Should Be Appointed Lead Counsel. . . . . . . . . . . 14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>**TABLE OF AUTHORITIES**</u>

<u>**Cases:**</u>                                                                                              <u>**Page**</u>

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Burke v. Ruttenberg*,
    102 F. Supp. 2d 1280 (N.D. Ala. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

*In re Cendant Corp. Sec. Litig.*,
    404 F.3d 173 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re DaimlerChrysler AG Sec. Litig.*,
    216 F.R.D. 291 (D. Del. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 13

*East Texas Motor Freight System, Inc. v. Rodriguez*,
    431 U.S. 395 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gluck v. CellStar Corp.*,
    976 F. Supp. 542 (N.D. Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Janovici v. DVI, Inc.*,
    Nos. Civ.A.2:03CV04795-LD et al., 2003 WL 22849604
    (E.D. Pa. Nov. 25, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 15, n.3

*Krim v. pcOrder.com, Inc.*,
    210 F.R.D. 581 (W.D. Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Lucent Technologies, Inc., Sec. Litig.*,
    194 F.R.D. 137 (D.N.J. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 12, 13

*Marsden v. Select Medical Corp.*,
    No. 04-4020, 2005 WL 113128 (E.D. Pa. Jan. 18, 2005) . . . . . . . . . . . . . . . . .9, 10

*In re Milestone Scientific Sec. Litig.*,
    183 F.R.D. 404 (D.N.J. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*In re Nice Sys. Sec. Litig.*,
    188 F.R.D. 206 (D.N.J. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 13

*In re Oxford Health Plans, Inc., Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    148 F.3d 283 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ravens v. Iftikar*,
    174 F.R.D. 651 (N.D. Cal. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Sosna v. Iowa*,
    419 U.S. 393 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wetzel v. Liberty Mut. Ins. Co.*,
    508 F.2d 239 (3d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13


**Statutes:**

15 U.S.C. § 78u-4(a)(3)(A)(i)(II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15 U.S.C. § 78u-4(a)(3)(B)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15 U.S.C. § 78u-4(a)(3)(B)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(cc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

15 U.S.C. § 78u-4(a)(3)(B)(v) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

15 U.S.C. §78u-4(a)(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Treatises:**

1 H. Newberg, *Newberg on Class Actions* § 3.13 (3d ed. 1992) . . . . . . . . . . . . . . . . . . . 12

## PRELIMINARY STATEMENT

Plaintiffs Samuel I. Hyland and Stephanie Speakman ("Plaintiffs") submit this Opening Brief in Support of Their Motion For Appointment as Lead Plaintiffs and Appointment of Lead Counsel. As demonstrated below, Plaintiffs suffered significant losses in connection with the 2004 merger (the "Merger") of Bank One Corporation ("Bank One") and JPMorgan Chase & Co. ("JPMC" or the "Company").

Section 21D of the Exchange Act, as amended by the PSLRA, establishes the procedure for the selection of lead plaintiff to oversee class actions brought under the federal securities laws. Specifically, §21D(a)(3)(A)(i) provides that, within 20 days after the date on which a class action is filed under the PSLRA,

> [T]he plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class -
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. §78u-4(a)(3)(A)(i).

Additionally, §21D(a)(3)(B)(i) of the Exchange Act directs this Court to consider any motions brought by plaintiffs or purported class members to appoint lead plaintiffs filed in response to any such notice no later than 90 days after the date of publication, or as soon as practicable after this Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims.

Under this provision of the Exchange Act, this Court "shall" appoint the "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person, or group of persons, that

> (aa) has either filed the complaint or made a motion in response to a notice ...;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

Plaintiffs have suffered losses of at least $106,026.08 as a result of their holdings of JPMC securities during the Class Period.  (Aff. Ex. A-B.)[1]  Plaintiffs believe they have the largest financial interest in the relief sought by the class.  Plaintiffs also seek Court approval of their selection of counsel as provided by the statute.

For these reasons and the reasons that follow, Plaintiffs are qualified to serve as lead plaintiffs in this litigation under relevant provisions of the PSLRA.  Accordingly, this Court should grant Plaintiffs' motion, appointing them lead plaintiff and approving their chosen counsel as lead counsel.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

This is the only securities class action in this matter that has been filed in this Court.[2]  Three related class actions, consolidated as *In re J.P. Morgan Chase & Co. Shareholder Litigation*, Consol. C.A. No. 531-N (the "Chancery Action"), were also filed

---

[1] Exhibits and unreported decisions referenced herein are attached to the affidavit of Joseph N. Gielata, filed contemporaneously herewith and cited as "Aff. ¶ _" or "Aff. Ex. _."

[2] In a separate action in the Northern District of Illinois, Plaintiffs have filed an amici curiae memorandum urging, inter alia, that the Illinois action be transferred to the District of Delaware and that the class counsel in the Illinois action be disqualified.  (Aff. Ex. A.)

in the Delaware Court of Chancery.  On April 29, 2005, Vice Chancellor Stephen P. Lamb granted defendants' motion to dismiss the Chancery Action.

In this action, claims are asserted under Sections 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934 and Rules 10b-5 and 14a-9 thereunder, Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, as well as pendent common law, against JPMC and certain present and former JPMC directors based upon alleged misrepresentations made in connection with the Merger.

## SUMMARY OF ARGUMENTS

1.     Plaintiffs are presumptively entitled to serve as lead plaintiffs because, based on available information and after having published adequate notice, they have a greater financial interest in the outcome of this case than any other known putative class member seeking appointment as lead plaintiff.

2.     Plaintiffs' claims are typical of the proposed class, and given their substantial stake in the outcome, they will adequately represent the class within the purview of Fed. R. Civ. P. 23.

3.     Plaintiffs' proffered counsel is experienced in prosecuting securities class action claims under the PLSRA, has demonstrated the willingness and ability to vigorously adequately represent the interests of the class, and should be appointed lead counsel.

## STATEMENT OF FACTS

### A.     The Merger and the Secret Deal

Defendant JPMC is a global financial services firm involved in investment banking, financial services for consumers and businesses, financial transaction processing, investment management, private banking, and private equity. Defendant William B. Harrison, Jr. has served as Chief Executive Officer ("CEO") and Chairman of the Board of Directors of JPMC since 1999. However, by late 2003, after years of poor business decisions, costly acquisitions, and financial scandals, numerous public reports denounced Harrison's leadership and predicted that he would soon lose his job. This situation forced Harrison to conjure yet another massive deal to protect his lucrative and prestigious CEO title. Accordingly, Harrison commenced discussions with James Dimon, Chairman and CEO of Bank One, concerning the possibility of a business combination between JPMC and Bank One.

As a result of these discussions, on January 14, 2004, JPMC and Bank One issued a joint press release announcing their agreement to merge. When the Merger was announced, the acquisition premium for Bank One shares amounted to approximately 14 percent, based on that day's closing prices. In other words, to merge with Bank One, JPMC shareholders paid an acquisition premium of more than $7 billion in stock, which substantially diluted their individual holdings. The total value of the deal was approximately $57 billion.

The proposed acquisition of Bank One in a stock-for-stock transaction required the approval of a majority of JPMC's shareholders, as an amendment to JPMC's certificate of incorporation was necessary for JPMC to have the corporate authority to issue the shares necessary for the exchange. Thus, the defendants issued a Joint Proxy

Statement-Prospectus, dated April 19, 2004 (the "Proxy/Prospectus"), to gain shareholder approval of the Merger. Unaware that the Proxy/Prospectus contained materially false and misleading statements and failed to disclose material facts, shareholders of JPMC overwhelmingly approved the Merger. As of the record date for the Merger vote, and through the closing of the Merger, Plaintiffs owned 19,170 shares of JPMC stock. (Aff. Ex. A-B.)

However, months later, it was revealed that, in the course of the secretive negotiations between Dimon and Harrison, Dimon had been willing to agree to a ***no-premium deal*** if he could be CEO of the combined company immediately. Instead, Harrison and Dimon struck a secret pact allowing Harrison to retain the CEO title for two more years in exchange for paying a premium. The Proxy/Prospectus omitted this secret pact. However, a June 27, 2004 article in *The New York Times* entitled "The Yin, the Yang and the Deal" shocked the market with the following stunning revelations:

> During the negotiations with Mr. Dimon, [Harrison] fought hard to give himself the two extra years, to secure a smooth transition, although he may have cost J.P. Morgan shareholders extra money in doing so. ***Mr. Dimon, always the tough deal maker, offered to do the deal for no premium if he could become chief executive immediately***, according to two people close to the deal.
>
> ***When Mr. Harrison resisted, Mr. Dimon insisted on a premium***, which Mr. Harrison was able to push down to 14 percent. The two men declined to comment on the specifics of their negotiations. [Emphasis added.]

This article revealed that the Proxy/Prospectus was incomplete and materially misleading. The $7 billion premium paid by JPMC stockholders in the Merger was completely unnecessary. Moreover, the enormous acquisition premium paid for Bank One was a betrayal of the interests of JPMC shareholders, as it served only to entrench Harrison in the CEO position for two more years, even though under his leadership

JPMC's stock price has fallen significantly and JPMC's reputation has suffered. At no time did any of the defendants ever disclose the secret pact between Dimon and Harrion or that Dimon had offered to merge Bank One into JPMC without requiring an exchange ratio providing a premium.

### B.    The Commencement of This Action

On March 17, 2005, Plaintiff Samuel Hyland filed a comprehensive class action complaint in the District of Delaware asserting claims under Sections 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78j(b), 78n(a) and 78t(a)), Rules l0b-5 and 14a-9 promulgated thereunder by the SEC (17 C.F.R. §§ 240.l0b-5 and 240.14a-9), Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (15 U.S.C. §§ 77k, 77l(a)(2) and 77o), and pendent common law claims.

On March 21, 2005, Hyland also moved for an injunction of related state court actions, including the Chancery Action, but this Court denied the motion without prejudice on April 18, 2005. (D.I. 19.) On April 14, 2005, all defendants except for Riley P. Bechtel stipulated to waiver of service of summons. (D.I. 17.) By letter dated April 27, 2005, Bechtel waived service of the summons in the Delaware Action. (D.I. 21.)

On April 29, 2005, Vice Chancellor Stephen P. Lamb issued an opinion granting defendants' motion to dismiss the Chancery Action. *In re J.P. Morgan Chase & Co. S'holder Litig.*, Mem. Op. (Del. Ch. Apr. 29, 2005) (Aff. Ex. E). The opinion specifically discussed and distinguished this action, observing, in relevant part:

> A similar federal class action complaint was filed in the District of Delaware on March 17, 2005. The federal complaint alleges substantially the same claims that are before this court. It does, however, have several important differences. First, the federal complaint characterizes the deal between Harrison and Dimon as a "secret deal." This

- 6 -

description implies that the merger negotiations were unknown to the board of JPMC, a fact that appears inconsistent with the state complaint's primary allegation, as well as later allegations in the federal complaint that the "[d]efendants were motivated to conceal Harrison's secret and undisclosed pact with Dimon."

Second, the federal complaint alleges that JPMC violated federal securities laws, specifically Sections 10(b), 11, 12(a)(2), 14(a), 15, and 20(a) of the Securities Exchange Act of 1934. These claims are sufficient to give federal courts jurisdiction over the claims, including the related breaches of fiduciary duty claims.

Finally, the federal complaint lists important distinguishing facts, some of which are inconsistent with facts in this action. For instance, the federal complaint states that *Harrison* offered the no-premium deal. The complaint before this court makes the opposite claim, i.e. that it was Dimon who made an offer of that nature. This discrepancy is not explained.

The federal complaint alleges additional substantive facts concerning certain directors. For example, the federal complaint ties Futter's fund-raising activities to her board membership, as reported in *New York Magazine* on February 21, 2000. Additionally, the federal complaint alleges that Kaplan is an attorney whose law firm receives substantial fees from JPMC. [Emphasis in original; citations omitted.]

*Id.* at 11-12.

On May 3, 2005, Hyland requested leave of Court to serve document preservation subpoenas on the law firm and the investment bank which advised Bank One in connection with the Merger. (D.I. 23.) Hyland also obtained confirmation that certain document preservation efforts agreed upon by the parties in the Chancery Action remained in force despite the dismissal of the Chancery Action. On May 12, 2005, Hyland, joined by his mother, Stephanie Speakman, filed an amended complaint.

## ARGUMENT

**I.    Plaintiffs Satisfy The Statutory Criteria
For Appointment As Lead Plaintiffs**

Under the PSLRA, any member(s) of the purported class may move for appointment as lead plaintiff within 60 days of the publication of notice that the action has been filed.  15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  Subsequently, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ."  15 U.S.C. § 78u-4(a)(3)(B)(i).  *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 222 (3d Cir. 2001).  Consistent with its legislative history, the PSLRA provides that the court shall make a significant presumption when determining the "most capable" plaintiff:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa)    has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

**A.    Adequate Notice Of the Pendency of
the Action Was Properly Published**

The PSLRA mandates that after filing a putative class action complaint, a plaintiff seeking to represent the proposed class must publish a notice that sets forth (i) the pendency of the action, including a description of the claims asserted and the proposed

class period, and (ii) a statement that any party seeking to serve as lead plaintiff for the action referenced in the notice must move the applicable court within sixty (60) days of the date of the notice. 15 U.S.C. § 78u-4(a)(3)(A)(i). *See Janovici v. DVI, Inc.*, Nos. Civ.A.2:03CV04795-LD et al., 2003 WL 22849604, at *5 (E.D. Pa. Nov. 25, 2003) (in considering motions for appointment of lead plaintiff, court has an independent duty to scrutinize the published notice for compliance with PSLRA requirements).

    For notice to be adequate under the PSLRA, it must include such information as the names of the defendants, the claims asserted, and the Court before which the action is pending. *See, e.g., Marsden v. Select Medical Corp.*, No. 04-4020, 2005 WL 113128, at *6 (E.D. Pa. Jan. 18, 2005) (accepting notice which "adequately informs class members of 'the pendency of the action,' as it identifies the caption of the case, its civil action number, the Court before which the action was brought, and the names of all five Defendants."); *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1311 (N.D. Ala. 2000) ("notice must, at a minimum, provide information about…who has filed the suit, who is being sued, the court in which the suit is taking place, and the civil action number of the case"). *Cf. Ravens v. Iftikar*, 174 F.R.D. 651, 655 (N.D. Cal. 1997) (finding notice inadequate because "[t]here is no explanation of the legal theory underlying plaintiffs' suit; no discussion of who violated the Securities Exchange Act of 1934; and no description of the alleged wrongdoing that forms the basis of the complaint."); *Burke*, 102 F. Supp. 2d at 1316 ("the notice published by [one] plaintiff and his counsel fails to indicate who is seeking relief and against whom relief is sought, facts that would be revealed were the entire name of the action included in the notice").

    Notice must also advise class members of their right to retain counsel of their choice. *See, e.g., Burke*, 102 F. Supp. 2d at 1311 n.39 ("giving only information

directing putative class members to contact counsel would not comport with the purposes of the subsection"); *id.* at 1314 ("the notice published appears to have been drafted with the aim of directing clients to the law firms listed in it, thereby permitting the Burke plaintiffs and counsel associated therewith to avoid any lead plaintiff challenge.").

On March 23, 2005, counsel for Hyland published a notice of the pendency of this action in the *Investor's Business Daily* (Aff. Ex. D) which advised class members of their right to retain counsel of their own choice in considering or seeking the lead plaintiff appointment and included the names of all defendants, the civil action number, the class definition, and the claims asserted on behalf of the class. *See Marsden*, 2005 WL 113128, at *5 (finding publication in *Investor's Business Daily* to satisfy the PSLRA notice requirement); *Janovici*, 2003 WL 22849604, at *8 (finding notice adequate which "[u]nlike the first three notices, …lists the names of the Defendants…[,] advises the purported…Class of the pendency of the action, the claims asserted, and the purported Class Period…[and] also advises that potential class members may retain counsel of their choice.").

Accordingly, the notice published by Hyland's counsel triggered the 60-day period for all lead plaintiff motions.[3]  This motion is timely filed within 60 days from the publication of that notice.

### B.    Plaintiffs Believe That They Have The Most Substantial Financial Interest In This Case

As described above, damages are sought principally on behalf of holders of JPMC common stock who sustained monetary damages as a result of the Merger.  As a result of

---

[3] A notice published in connection with a separate action in Illinois was inadequate, for the reasons set forth in Section III of the Amici Curiae Memorandum (Aff. Ex. A).  *See Janovici*, 2003 WL 22849604, at *9 ("This [60-day] rule does not apply, however, where the first notice of pendency fails to provide adequate information pursuant to the terms of the PSLRA– the statutory 60 day period begins to run from the date of the first notice that complies with the PSLRA.").

- 10 -

their substantial holdings in JPMC common stock both on the record date of the Merger

(April 2, 2004, at which time Plaintiffs owned 19,170 JPMC shares) and on the date the

Merger closed (July 1, 2004, at which time Plaintiffs owned 19,170 JPMC shares),

Plaintiffs believe they are presumptively the most adequate plaintiffs to lead this

important action.  *See In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 216-217 (D.N.J. 1999)

(appointing investors with largest financial interest in the case).

      **C.**    **Plaintiffs Satisfy The Requirements of Rule 23**

The PSLRA's presumption that the plaintiff with the largest financial interest in

the case is best qualified to serve as lead plaintiff may be overcome only by proof that the

lead plaintiff will not adequately represent the class or is subject to unique defenses.  15

U.S.C. § 78u-4(a)(3)(B)(iii)(cc) (providing that the lead plaintiff or plaintiffs must

"otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil

Procedure").  Rule 23(a) provides that a party may serve as a class representative so long

as the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is
> impracticable; (2) there are questions of law or fact
> common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or defenses
> of the class; and (4) the representative parties will fairly
> and adequately protect the interests of the class.

Of the four prerequisites of class certification under Rule 23(a), only two –

typicality and adequacy of representation – directly address the characteristics of the lead

plaintiff under the PSLRA which must be satisfied.  *See In re Lucent Technologies, Inc.,*

*Sec. Litig.*, 194 F.R.D. 137, 149-50 (D.N.J. 2000) ("This inquiry 'focus[es] on the

qualities of the class representatives enumerated in Rule 23(a)(3) and 23(a)(4), that is

typicality and adequacy.'") (quoting *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546

(N.D. Tex. 1997)).  *See also In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42,

49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA.").  The remaining requirements of Rule 23 relate to the adequacy of the claims themselves and should not enter into the Court's analysis in its selection of a lead plaintiff.

## 1.     Typicality

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that "the claims . . . of the representative parties" be "typical of the claims . . . of the class."  "To satisfy the typicality requirement of Rule 23(a)(3), the plaintiffs must show that the class representatives are part of the class and possess the same injury as the class members." *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 298 (D. Del. 2003) (quoting *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)) (internal quotes omitted).  *See also* 1 H. Newberg, *Newberg on Class Actions* § 3.13 (3d ed. 1992) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met regardless of minor variations in fact patterns underlying individual claims"). The Rule 23(a)(3) typicality requirement "helps ensure alignment of the interests of the Proposed Class with those of the class representatives 'so that the [class representatives] will work to benefit the entire class through the pursuit of their own goals.'" *Lucent*, 194 F.R.D. at 150 (quoting *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 311 (3d Cir. 1998)).

Here, Plaintiffs' claims arise from the same course of conduct from which the claims of all other class members arise.  As shareholders of JPMC on the record date for the Merger and at the time of the Merger, Plaintiffs, like other putative class members, were innocent victims of defendants' fraudulent conduct.  The injuries alleged by

- 12 -

Plaintiffs, like the injuries suffered by other members of the class, arise from concealment of the secret deal and the valuable nil-premium opportunity in the Proxy/Prospectus and other communications. Thus, Plaintiffs' claims are in all respects "typical" of the claims of the class. *See DaimlerChrysler*, 216 F.R.D. at 298 (finding claims typical which were based on the same allegedly false and misleading statements made by defendants in connection with corporate merger).

### 2.    Plaintiffs Will Adequately Represent The Interests Of The Class

Rule 23(a)(4)'s requirement of adequate representation is satisfied where it appears that (1) the named plaintiffs' interests are not antagonistic to other members of the class, and (2) plaintiffs' counsel is qualified, experienced and generally able to conduct the litigation. *See DaimlerChrysler*, 216 F.R.D. at 299 (citing *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975)). *See also Sosna v. Iowa*, 419 U.S. 393, 403 (1975). The Rule 23(a)(4) requirement of "[a]dequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests among the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff to vigorously prosecute the action." *Lucent*, 194 F.R.D. at 151. "The adequacy of representation inquiry 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *Id.* (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). Plaintiffs easily meet the adequacy requirements.

As noted above, given that they have a substantial stake in the outcome of this action, Plaintiffs will vigorously prosecute the claims asserted. *See Nice Sys.*, 188 F.R.D. at 219 (observing that, where proposed lead plaintiff purchased securities at issue at a cost of $93,633.88, "[t]his financial stake in the litigation provides an adequate incentive for the Proposed Lead Plaintiffs to vigorously prosecute the action.").

- 13 -

Finally, there are no facts which indicate any conflict of interest between

Plaintiffs and other class members. *See In re Milestone Scientific Sec. Litig.*, 183 F.R.D.

404, 416 (D.N.J. 1998). Accordingly, Plaintiffs will adequately represent the interests of

the class.

## II.    <u>Plaintiffs' Chosen Counsel Should Be Appointed Lead Counsel</u>

The PSLRA vests authority in the lead plaintiff(s) to select and retain counsel to

represent the class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

*See also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 186 (3d Cir. 2005) ("The PSLRA

is explicit that the power to select counsel resides in the lead plaintiff") (*Cendant II*).

Thus, the Court should not disturb the lead plaintiffs' choice of counsel unless necessary

to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  Plaintiffs

have selected counsel with experience in prosecuting securities class action claims under

the PLSRA.  (Aff. ¶ 5-6.) *See also Cendant II*, 404 F.3d at 192 ("The power to select

counsel lets clients choose lawyers with whom they are comfortable and in whose ability

and integrity they have confidence." (quoting *Cendant*, 264 F.3d at 254)).

Plaintiffs' counsel has also certified that he does not directly own or otherwise

have a beneficial interest in JPMC common stock.  (Aff. ¶ 4.)  Such disclosure is

necessary for the Court to make the following determination mandated by the PSLRA:

> **Attorney conflict of interest**
>
> If a plaintiff class is represented by an attorney who
> directly owns or otherwise has a beneficial interest in the
> securities that are the subject of the litigation, the court
> shall make a determination of whether such ownership or
> other interest constitutes a conflict of interest sufficient to
> disqualify the attorney from representing the plaintiff class.

15 U.S.C. §78u-4(a)(9).  As a further precaution against any conflict of interest,

Plaintiffs' counsel has certified that he is not presently involved in any other litigation in

which JPMC is a defendant and will not become involved in any other litigation in which JPMC is a defendant during the pendency of this action.  (Aff. ¶ 4.)  *See also Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581 (W.D. Tex. 2002) (denying law firm's request to be appointed class counsel because (1) it had not informed the class representatives that it represented other classes in other courts against the same defendant, and (2) because of the possibility that the defendants might not be able to satisfy all the claims); *Janovici*, 2003 WL 22849604, at *12 (observing that lead plaintiff movant's "selected counsel are capable of satisfying their obligations; evidence of conflict with the interests of other class members is lacking.").

Plaintiffs' attorney has already vigorously protected the interests of the class by (1) investigating and filing a comprehensive complaint and amended complaint, (2) seeking leave to serve document preservation subpoenas on critical third parties, (3) moving to enjoin related state court class actions, and (4) filing an amici curiae brief in a separate action which threatens the interests of the class in this action.  Thus, Plaintiffs' selected counsel can be trusted to continue protecting the interests of the class fairly and adequately in this lawsuit and should be appointed lead counsel.

Accordingly, Plaintiffs' choice of counsel should be upheld, and the undersigned appointed lead counsel.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs should be appointed lead plaintiffs in this matter on behalf of the class and their choice of counsel should be approved.

DATED:        May 23, 2005                    Respectfully submitted,

                                                            /s/ Joseph N. Gielata
                                                            Joseph N. Gielata
                                                            Attorney at Law
                                                            501 Silverside Road, Suite 90
                                                            Wilmington, DE 19809
                                                            (302) 798-1096

                                                            ***Attorney for Plaintiffs***
                                                                    ***Samuel Hyland and***
                                                                            ***Stephanie Speakman***

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that, on May 23, 2005, I electronically filed the *OPENING BRIEF IN SUPPORT OF THE MOTION BY PLAINTIFFS SAMUEL HYLAND AND STEPHANIE SPEAKMAN FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPOINTMENT OF LEAD COUNSEL* with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

> Jesse A. Finkelstein, Esq.
> Michael R. Robinson, Esq.
> **RICHARDS LAYTON & FINGER, P.A.**
> One Rodney Square
> Wilmington, DE  19801
> *Counsel for Defendants*

> /s/ Joseph N. Gielata
> Joseph N. Gielata (DSB # 4338)
> Attorney at Law
> 501 Silverside Road, Suite 90
> Wilmington, Delaware 19809
> (302) 798-1096
> attorney@gielatalaw.com