# Tab B

# Part 1

# to

# Defendants' Opening Brief In Support of Their Motion to Dismiss Plaintiffs' Amended Complaint

**JPMorgan** **J P MORGAN CHASE & CO** (JPM)

270 PARK AVE
39TH FL
NEW YORK, NY 10017
212. 270 6000
http://www.jpmorganchase.com

# S–4

**FORM S–4**
Filed on 02/20/2004
File Number 333–112967



LIVEDGAR® Information Provided by Global Securities Information, Inc.
800.669.1154&nbsp
www.gsionline.com

As filed with the Securities and Exchange Commission on February 20, 2004

Registration No. 333–

# SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

## FORM S–4

REGISTRATION STATEMENT

*Under*
*THE SECURITIES ACT OF 1933*

# J.P. MORGAN CHASE & CO.
(Exact name of Registrant as specified in its charter)

| Delaware<br>(State or other jurisdiction of<br>incorporation or organization) | 6711<br>(Primary Standard Industrial<br>Classification Code Number) | 13–2624428<br>(I.R.S. Employer<br>Identification No.) |
|---|---|---|

270 Park Avenue

New York, New York 10017
(212) 270–6000
(Address, including zip code, and telephone number, including area code, of Registrant's principal executive offices)

Anthony J. Horan
Secretary
J.P. Morgan Chase & Co.
270 Park Avenue
New York, New York 10017
(212) 270–6000
(Name, address, including zip code, and telephone number, including area code, of agent for service)

*Copies to:*

| William H. McDavid, Esq.<br>Neila B. Radin, Esq.<br>J.P. Morgan Chase & Co.<br>270 Park Avenue<br>New York, NY 10017<br>(212) 270–6000 | Lee A. Meyerson, Esq.<br>Maripat Alpuche, Esq.<br>Simpson Thacher &<br>Bartlett LLP<br>425 Lexington Avenue<br>New York, NY 10017<br>(212) 455–2000 | Joan Guggenheimer, Esq.<br>Daniel P. Cooney, Esq.<br>Bank One Corporation<br>1 Bank One Plaza<br>Chicago, IL 60670<br>(312) 732–4000 | Edward D. Herlihy, Esq.<br>Craig M. Wasserman, Esq.<br>Lawrence S. Makow, Esq.<br>Wachtell, Lipton, Rosen & Katz<br>51 West 52nd Street<br>New York, NY 10019<br>(212) 403–1000 |
|---|---|---|---|

**Approximate date of commencement of proposed sale of the securities to the public:** As soon as practicable after this Registration Statement becomes effective and all other conditions to the proposed merger described herein have been satisfied or waived

If the securities being registered on this Form are being offered in connection with the formation of a holding company and there is compliance with General Instruction G. check the following box □

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act. check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering □

If this Form is a post–effective amendment filed pursuant to Rule 462(d) under the Securities Act. check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering □

| Title of each class of<br>securities to be registered | Amount to be<br>registered | Proposed maximum<br>offering price<br>per share | Proposed maximum<br>aggregate<br>offering price(2) | Amount of<br>registration fee(3) |
|---|---|---|---|---|
| Common Stock. par value $1 00 per share | 1.609.360.974(1) | Not Applicable | $64,142.788,512 | $8.126,891 |

(1) The number of shares of the registrant being registered is based upon an estimate of (x) the maximum number of shares of common stock. par value $0 01 per share, of Bank One Corporation ("Bank One Common Stock") presently outstanding or issuable or expected to be issued in connection with

the merger of Bank One Corporation into the registrant multiplied by (y) the exchange ratio of 1 32 shares of common stock. par value $1 00 per share, of the registrant for each share of Bank One Common Stock.

(2)  Estimated solely for the purpose of calculating the registration fee pursuant to Rule 457(f) under the Securities Act. The aggregate offering price is (x) the average of the high and low prices of Bank One Common Stock as reported on the New York Stock Exchange Composite Transaction Tape on February 13, 2004 ($52 61) multiplied by (y) the maximum number of shares of Bank One Common Stock to be converted in the merger (1.219.212.859)

(3)  Calculated by multiplying the estimated aggregate offering price of securities to be registered by .00012670.
THE REGISTRANT HEREBY AMENDS THIS REGISTRATION STATEMENT ON SUCH DATE OR DATES AS MAY BE NECESSARY TO DELAY ITS EFFECTIVE DATE UNTIL THE REGISTRANT SHALL FILE A FURTHER AMENDMENT WHICH SPECIFICALLY STATES THAT THIS REGISTRATION STATEMENT SHALL THEREAFTER BECOME EFFECTIVE IN ACCORDANCE WITH SECTION 8(a) OF THE SECURITIES ACT OF 1933 OR UNTIL THE REGISTRATION STATEMENT SHALL BECOME EFFECTIVE ON SUCH DATE AS THE COMMISSION, ACTING PURSUANT TO SAID SECTION 8(a), MAY DETERMINE.



**JPMorganChase**

**BANK≡ONE.**

To the stockholders of J.P. Morgan Chase & Co. and Bank One Corporation

A MERGER PROPOSAL — YOUR VOTE IS VERY IMPORTANT

The boards of directors of J.P. Morgan Chase & Co. and Bank One Corporation have approved an agreement to merge our two companies. The proposed merger will create one of the largest and most globally diversified financial services companies in the world and will establish the second–largest banking company in the United States based on total assets. The combined company, which will retain the J.P. Morgan Chase & Co. name, will have assets of $1.1 trillion, a strong capital base, 2,300 branches in 17 states and top–tier positions in retail banking and lending, credit cards, investment banking, asset management, private banking, treasury and securities services, middle–market and private equity. We believe the combined company will be well–positioned to achieve strong and stable financial performance and increase shareholder value through its balanced business mix, greater scale and enhanced efficiencies and competitiveness.

**In the proposed merger, Bank One will merge into JPMorgan Chase, and Bank One common stockholders will receive 1.32 shares of JPMorgan Chase common stock for each share of Bank One common stock they own. This exchange ratio is fixed and will not be adjusted to reflect stock price changes prior to the closing.** Based on the closing price of JPMorgan Chase's common stock on the New York Stock Exchange (trading symbol "JPM") on January 13, 2004, the last trading day before public announcement of the merger, the 1.32 exchange ratio represented approximately $51.35 in value for each share of Bank One common stock. Based on JPMorgan Chase's closing price on [                    ], 2004 of $[            ], the 1.32 exchange ratio represented approximately $[              ] in value for each share of Bank One common stock. **We urge you to obtain current market quotations of JPMorgan Chase and Bank One common stock.**

We expect the merger will qualify as a reorganization for federal income tax purposes. Accordingly, Bank One stockholders generally will not recognize any gain or loss for federal income tax purposes on the exchange of shares of Bank One common stock for JPMorgan Chase common stock in the merger, except with respect to any cash received instead of fractional shares of common stock of the combined company. Upon completion of the merger, we estimate that Bank One's former stockholders will own approximately 42% of the common stock of JPMorgan Chase.

At our respective annual meetings, which will be held on [                    ], 2004, in addition to other business, we will each ask our common stockholders to approve the merger. Information about these meetings and the merger is contained in this document. **In particular, see "Risk Factors" beginning on page 20.** We urge you to read this document carefully and in its entirety.

**Whether or not you plan to attend your annual meeting, please vote as soon as possible to make sure that your shares are represented at the meeting. If you do not vote, it will have the same effect as voting against the merger.**

Each of our boards of directors unanimously recommends that stockholders vote FOR the merger. We strongly support this combination of our companies and join our boards in their recommendations.

William B. Harrison, Jr.
Chairman and Chief Executive Officer
J.P. Morgan Chase & Co.

James Dimon
Chairman and Chief Executive Officer
Bank One Corporation

Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of the securities to be issued in connection with the merger or determined if this document is accurate or complete. Any representation to the contrary is a criminal offense.

The securities to be issued in connection with the merger are not savings or deposit accounts or other obligations of any bank or non–bank subsidiary of JPMorgan Chase or Bank One, and they are not insured by the Federal Deposit Insurance Corporation or any other governmental agency.

The information in this document is not complete and may be changed. We may not sell the securities being offered by use of this document until the registration statement filed with the Securities and Exchange Commission, of which this document is a part, is declared effective. This document is not an offer to sell these securities and is not soliciting an offer to buy these securities in any jurisdiction where the offer or sale is prohibited.

This document is dated [                    ], 2004, and is first being mailed to stockholders of JPMorgan Chase and Bank
One on or about [                    ], 2004.

## ADDITIONAL INFORMATION

This document incorporates important business and financial information about JPMorgan Chase and Bank One from other documents that are not included in or delivered with this document. This information is available to you without charge upon your written or oral request. You can obtain the documents incorporated by reference in this document through the Securities and Exchange Commission website at *http://www.sec.gov* or by requesting them in writing, by e-mail or by telephone at the appropriate address below:

- *if you are a JPMorgan Chase stockholder*
  [          ]
  By Mail: [          ]
       [          ]
  By E-mail: [          ]
  By Telephone:
    Within U.S.: [          ]
    Outside U.S.: [          ]

- *if you are a Bank One stockholder*
  [          ]
  By Mail: [          ]
       [          ]
  By E-mail: [          ]
  By Telephone:
    Within U.S.: [          ]
    Outside U.S.: [          ]

*If you would like to request any documents, please do so by [          ], 2004 in order to receive them before the meetings.*

See "Where You Can Find More Information" beginning on page 165.

## VOTING ELECTRONICALLY OR

## BY TELEPHONE

JPMorgan Chase stockholders of record may submit their proxies:

- through the Internet by visiting a website established for that purpose at http://[          ] and following the instructions; or

- by telephone by calling the toll-free number [          ] in the United States, Puerto Rico or Canada on a touch-tone phone and following the recorded instructions.

Bank One stockholders of record may submit their proxies:

- through the Internet by visiting a website established for that purpose at http://[          ] and following the instructions; or

- by telephone by calling the toll-free number [          ] in the United States, Puerto Rico or Canada on a touch-tone phone and following the recorded instructions. Bank One stockholders calling from another country may call [          ].



**J.P. Morgan Chase & Co.**

**270 Park Avenue**
**New York, New York 10017**

Notice of Annual Meeting of Stockholders

- **Date: [** ], 2004

- **Time: [** ], New York Time

- **Place: Auditorium**

  **One Chase Manhattan Plaza**
  **New York, New York 10081**

To JPMorgan Chase Stockholders:

We are pleased to notify you of and invite you to the JPMorgan Chase annual meeting of stockholders.

At the meeting you will be asked to vote on the following matters:

- Proposal to adopt a merger agreement between J.P. Morgan Chase & Co. and Bank One Corporation pursuant to which Bank One will merge into JPMorgan Chase as described in this document.

- Election of directors.

- Ratification of the appointment of PricewaterhouseCoopers LLP as our external auditor for 2004.

- Stockholder proposals included in this document, if they are introduced at the meeting.

- Any other matters that may properly be brought before the meeting.

Common stockholders of record at the close of business on [ ], 2004 may vote at the annual meeting. In order for the merger agreement to be adopted, the holders of a majority of the outstanding shares of JPMorgan Chase common stock entitled to vote must vote in favor of the merger agreement.

Holders of JPMorgan Chase's 6.63% Cumulative Preferred Stock, Series H, and Fixed/Adjustable Noncumulative Preferred Stock who submit a written demand for appraisal of their shares in connection with the proposed merger and who perfect their appraisal rights by complying with the applicable statutory procedures under Delaware law will be entitled to receive a cash payment for the fair value of their shares as determined by the Delaware Chancery Court. A summary of the applicable requirements of Delaware law is contained in this document under the caption "The Merger — Appraisal Rights" on page 71. In addition, the text of the applicable provisions of Delaware law is attached as Annex F to this document.

**Your vote is important. Whether or not you plan to attend the annual meeting, please complete, sign, date and return your proxy card or voting instruction card in the enclosed envelope promptly, or authorize the individuals named on your proxy card to vote your shares by calling the toll–free telephone number or by using the Internet as described in the instructions included with your proxy card or voting instruction card.**

By Order of the Board of Directors

*Anthony J. Horan*
*Secretary*

[ ], 2004

*Please note that if you attend the annual meeting you will be asked to present photo identification, such as a driver's license. See "The JPMorgan Chase Annual Meeting — Attending the Annual Meeting" on page 25.*

**BANK≡ONE.**

Bank One Corporation
1 Bank One Plaza
Chicago, Illinois 60670

### Notice of Annual Meeting of Stockholders

Date: [                  ], 2004

Time: [                  ], Chicago Time

Place: **Bank One Auditorium**
**Bank One Corporation**
**1 Bank One Plaza**
**Chicago, Illinois 60670**

To Bank One Stockholders:

We are pleased to notify you of and invite you to the Bank One annual meeting of stockholders. The purpose of the annual meeting is to consider and vote upon the following matters:

- Proposal to adopt a merger agreement between J.P. Morgan Chase & Co. and Bank One Corporation pursuant to which Bank One will merge into JPMorgan Chase as described in this document.

- Election of directors.

- Ratification of the appointment of KPMG LLP as our independent auditor for 2004.

- Any other matters that may properly be brought before the meeting.
Common stockholders of record at the close of business on [                  ], 2004 may vote at the meeting. In order for the merger agreement to be adopted, the holders of a majority of the outstanding shares of Bank One common stock entitled to vote must vote in favor of the merger agreement.

**Your vote is important. Whether or not you plan to attend the annual meeting, please complete, sign, date and return your proxy card or voting instruction card in the enclosed envelope promptly, or authorize the individuals named on your proxy card to vote your shares by calling the toll–free telephone number or by using the Internet as described in the instructions included with your proxy card or voting instruction card.**

By Order of the Board of Directors

*Joan Guggenheimer*
*Secretary*

[                  ], 2004

*Please note that if you attend the annual meeting you will be asked to present photo identification, such as a driver's license. See "The Bank One Annual Meeting — Attending the Annual Meeting" on page 28.*

# TABLE OF CONTENTS

| | Page |
|---|---|
| QUESTIONS AND ANSWERS ABOUT VOTING PROCEDURES FOR THE ANNUAL MEETINGS | 1 |
| SUMMARY | 3 |
| THE MERGER | 3 |
| Bank One Common Stockholders to Receive 1.32 Shares of JPMorgan Chase Common Stock for Each Bank One Common Share; JPMorgan Chase Stockholders to Keep Their Shares | 3 |
| Bank One Will Merge With and Into JPMorgan Chase | 3 |
| Exchange Ratio is Fixed and Will Not Be Adjusted in Response to Changes in Our Stock Prices | 3 |
| Merger Generally Tax−Free to Bank One Stockholders | 5 |
| Dividend Policy and Anticipated Share Repurchases | 5 |
| Our Boards of Directors Recommend that JPMorgan Chase and Bank One Stockholders Approve the Merger | 6 |
| We Have Received Opinions From Our Financial Advisors that the Merger is Fair | 6 |
| Appraisal Rights for Some JPMorgan Chase Preferred Stockholders But Not for Common Stockholders | 7 |
| Financial Interests of Our Directors and Executive Officers in the Merger | 7 |
| Directors and Management Following the Merger | 8 |
| Regulatory Approvals We Must Obtain for the Merger | 8 |
| Expected Timing of Merger | 8 |
| Conditions to Completion of the Merger | 8 |
| Termination of the Merger Agreement; Fees Payable | 9 |
| JPMorgan Chase and Bank One Granted Stock Options to Each Other | 10 |
| THE ANNUAL MEETINGS | 10 |
| JPMorgan Chase Annual Meeting | 10 |
| Bank One Annual Meeting | 11 |
| INFORMATION ABOUT JPMORGAN CHASE AND BANK ONE | 12 |
| COMPARATIVE PER SHARE DATA (Unaudited) | 19 |
| RISK FACTORS | 20 |
| INFORMATION REGARDING FORWARD−LOOKING STATEMENTS | 22 |
| THE JPMORGAN CHASE ANNUAL MEETING | 24 |
| Date, Time and Place of the Annual Meeting | 24 |
| Purpose of the Annual Meeting | 24 |
| Record Date for the Annual Meeting | 24 |
| Votes Required | 24 |
| Attending the Annual Meeting | 25 |
| &sp;Proxies | 25 |
| Voting Electronically or by Telephone | 26 |
| Solicitation of Proxies | 27 |
| THE BANK ONE ANNUAL MEETING | 27 |
| Date, Time and Place of the Annual Meeting | 27 |
| Purpose of the Annual Meeting | 27 |
| Record Date for the Annual Meeting | 27 |
| Votes Required | 28 |
| Attending the Annual Meeting | 28 |

i

|                                                                                                     | Page |
|-----------------------------------------------------------------------------------------------------|------|
| Proxies                                                                                             | 28   |
| Voting Electronically or by Telephone                                                              | 29   |
| Solicitation of Proxies                                                                            | 30   |
| JPMORGAN CHASE PROPOSAL 1 AND BANK ONE PROPOSAL 1: THE MERGER                                      | 31   |
| Effect of the Merger; What Bank One Stockholders Will Receive in the Merger; Increase in Common Stock | 31   |
| Background of the Merger                                                                            | 31   |
| JPMorgan Chase's Reasons for the Merger; Recommendation of the Merger by the JPMorgan Chase Board of Directors | 34 |
| Bank One's Reasons for the Merger; Recommendation of the Merger by the Bank One Board of Directors | 38   |
| Opinions of Financial Advisors                                                                     | 41   |
| Interests of Directors and Executive Officers in the Merger                                        | 59   |
| Board of Directors and Management After the Merger                                                 | 63   |
| Material United States Federal Income Tax Consequences of the Merger                               | 64   |
| Accounting Treatment                                                                               | 66   |
| Regulatory Approvals                                                                               | 67   |
| Exchange of Bank One Stock Certificates                                                            | 69   |
| Treatment of Stock Options and Other Equity–Based Awards                                           | 70   |
| Restrictions on Sales of Shares by Affiliates of Bank One                                          | 71   |
| Stock Exchange Listings                                                                            | 71   |
| Appraisal Rights                                                                                   | 71   |
| Delisting and Deregistration of Bank One Stock After the Merger                                    | 72   |
| The Merger Agreement                                                                               | 73   |
| Amendments to JPMorgan Chase By–laws                                                               | 81   |
| Stock Option Agreements                                                                            | 82   |
| UNAUDITED PRO FORMA COMBINED FINANCIAL INFORMATION                                                 | 87   |
| DESCRIPTION OF JPMORGAN CHASE CAPITAL STOCK                                                        | 96   |
| Common Stock                                                                                       | 96   |
| JPMorgan Chase Preferred Stock                                                                     | 96   |
| Depositary Shares                                                                                  | 99   |
| COMPARISON OF STOCKHOLDER RIGHTS                                                                   | 102  |
| Capitalization                                                                                     | 102  |
| Voting Rights                                                                                      | 102  |
| Number and Election of Directors                                                                  | 102  |
| Vacancies on the Board of Directors and Removal of Directors                                       | 103  |
| Amendments to the Certificate of Incorporation                                                    | 103  |
| Amendments to By–Laws                                                                              | 103  |
| Action by Written Consent                                                                          | 103  |
| Ability to Call Special Meetings                                                                   | 104  |
| Notice of Stockholder Action                                                                       | 104  |
| Limitation of Personal Liability of Directors and Officers                                         | 105  |
| Indemnification of Directors and Officers                                                          | 106  |
| State Anti–Takeover Statutes; Business Combinations with Interested Stockholders                   | 107  |
| OTHER MATTERS TO BE CONSIDERED AT THE JPMORGAN CHASE ANNUAL MEETING                                | 109  |
| JPMorgan Chase Proposal 2: Election of Directors                                                   | 109  |
| JPMorgan Chase Proposal 3: Appointment of External Auditor                                         | 125  |

|                                                                              | Page |
|------------------------------------------------------------------------------|------|
| JPMorgan Chase Proposals 4–12: Stockholder Proposals                         | 126  |
| OTHER MATTERS TO BE CONSIDERED AT THE BANK ONE ANNUAL MEETING                | 140  |
| Bank One Proposal 2: Election of Directors                                   | 140  |
| Bank One Proposal 3: Ratification of Appointment of Independent Auditor      | 161  |
| LEGAL MATTERS                                                                | 163  |
| EXPERTS                                                                      | 163  |
| STOCKHOLDER PROPOSALS                                                        | 163  |
| WHERE YOU CAN FIND MORE INFORMATION                                          | 165  |

| ANNEX A | — | Agreement and Plan of Merger |
| ANNEX B | — | Bank One Stock Option Agreement |
| ANNEX C | — | JPMorgan Chase Stock Option Agreement |
| ANNEX D | — | Opinion of J.P. Morgan Securities Inc. |
| ANNEX E | — | Opinion of Lazard Frères & Co. LLC |
| ANNEX F | — | Section 262 of the Delaware General Corporation Law |
| ANNEX G | — | Amendments to JPMorgan Chase's Certificate of Incorporation and By-laws |
| ANNEX H | — | JPMorgan Chase Audit Committee Charter |
| ANNEX I | — | Bank One Audit and Risk Management Committee Charter |
| ANNEX J | — | Bank One Policy on Shareholder Communications |
| ANNEX K | — | Bank One Policy on Director Nominees |

QUESTIONS AND ANSWERS ABOUT VOTING PROCEDURES FOR THE ANNUAL MEETINGS

**Q: What do I need to do now?**

**A:** After carefully reading and considering the information contained in this document, please respond by completing, signing and dating your proxy card or voting instruction card and returning it in the enclosed postage–paid envelope, or, if available, by submitting your proxy or voting instruction by telephone or through the Internet, as soon as possible so that your shares may be represented at your meeting.

**Q: If my shares are held in "street name" by a broker or bank, will my broker or bank vote my shares for me?**

**A:** If you hold your shares in street name and do not provide voting instructions to your broker or bank, your shares will not be voted on any proposal on which your broker or bank does not have discretionary authority to vote. **Your broker or bank does not have discretionary authority to vote on the merger proposal. Accordingly, your broker or bank will vote your shares held by it in "street name" with respect to the merger proposal** *only* **if you provide instructions to it on how to vote. You should follow the directions your broker or bank provides. Shares that are not voted for any reason, including because you do not properly instruct your broker or bank, will have the effect of votes against the merger.**

**Q: What if I don't vote?**

**A: If you fail to respond with a vote on the merger proposal, it will have the same effect as a vote against the merger. If you respond but do not indicate in your response how you want to vote on the merger, your proxy will be counted as a vote in favor of the merger. If you respond and indicate that you are abstaining from voting, your proxy will have the same effect as a vote against the merger.**

If you are a JPMorgan Chase stockholder and you withhold authority to vote with respect to any director nominee, your proxy will be counted for purposes of establishing a quorum, but will have no effect on the election of that nominee. If you are a JPMorgan Chase stockholder and you abstain from voting on the other proposals, your proxy will be counted as present for purposes of establishing a quorum, and the abstention will have no effect on the outcome of that proposal. If you are a JPMorgan Chase stockholder and you respond without voting instructions, your proxy will be voted "for" each director nominee, "for" the appointment of PricewaterhouseCoopers LLP as external auditor and "against" the other proposals described in this document.

If you are a Bank One stockholder and you withhold authority to vote with respect to any director nominee, your proxy will be counted for purposes of establishing a quorum, but will have no effect on the election of that nominee. If you are a Bank One stockholder and you abstain from voting on the proposal to ratify the appointment of the independent auditor, your proxy will be counted as present for purposes of establishing a quorum, and the abstention will have no effect on the outcome of that proposal. If you are a Bank One stockholder and you respond without voting instructions, your proxy will be voted "for" each director nominee and "for" the appointment of KPMG LLP as independent auditor.

1

**Q: Can I change my vote after I have delivered my proxy or voting instruction card?**

**A:** Yes. You can change your vote at any time before your proxy is voted at your meeting. You can do this in one of three ways:

- By submitting a written statement that you would like to revoke your proxy to the Secretary of JPMorgan Chase or Bank One, as appropriate, before your annual meeting.

- By submitting a new proxy before your annual meeting. If you submit your proxy electronically through the Internet or by telephone, you can change your vote by submitting a proxy at a later date, in which case your later–submitted proxy will be recorded and your earlier proxy revoked.

- If you are a holder of record, you can attend your annual meeting and vote in person.

If your shares are held in an account at a broker or bank, you should contact your broker or bank to change your vote.

**Q: Should I send in my stock certificates now?**

**A: No.** If you are a Bank One stockholder, you will receive written instructions from the exchange agent after the merger is completed on how to exchange your stock certificates for JPMorgan Chase shares. **Please do not send in your stock certificates with your proxy.** If you are a JPMorgan Chase stockholder, you will keep your existing shares, which will remain outstanding and unchanged following the merger.

**Q: Why am I receiving this document?**

**A:** We are delivering this document to you because it is serving as both a joint proxy statement of JPMorgan Chase and Bank One and a prospectus of JPMorgan Chase. It is a joint proxy statement because it is being used by our boards of directors to solicit proxies of our common stockholders. It is a prospectus because JPMorgan Chase is offering shares of its common stock in exchange for shares of Bank One common stock if the merger is completed.

This document is also being sent to holders of preferred stock of JPMorgan Chase to provide them with notice of the meetings as required by Delaware law. None of those preferred stockholders is entitled to vote at the meetings; however, certain of those holders have appraisal rights in connection with the merger, as described under "The Merger — Appraisal Rights" on page 71.

**Q: Who can help answer my questions?**

**A:** If you have any questions about the merger or how to submit your proxy or voting instruction card, or if you need additional copies of this document or the enclosed proxy card or voting instruction card, you should contact:

- *if you are a JPMorgan Chase stockholder:*
[      ]
By Mail: [      ]
[      ]
By E–mail: [      ]
By Telephone:
  Within U.S.: [      ]
  Outside U.S.: [      ]

- *if you are a Bank One stockholder:*
[      ]
By Mail: [      ]
[      ]
By E–mail: [      ]
By Telephone:
  Within U.S.: [      ]
  Outside U.S.: [      ]

2

## SUMMARY

*This summary highlights selected information in this document and may not contain all of the information that is important to you. You should carefully read this entire document and the other documents we refer you to for a more complete understanding of the matters being considered at the annual meetings. In addition, we incorporate by reference important business and financial information about JPMorgan Chase and Bank One into this document. You may obtain the information incorporated by reference into this document without charge by following the instructions in the section entitled "Where You Can Find More Information" beginning on page 165 of this document.*

## THE MERGER

### Bank One Common Stockholders to Receive 1.32 Shares of JPMorgan Chase Common Stock for Each Bank One Common Share; JPMorgan Chase Stockholders to Keep Their Shares (see page 31)

Bank One common stockholders will receive 1.32 shares of common stock of JPMorgan Chase for each share of Bank One common stock they own

JPMorgan Chase stockholders will keep their shares, which will remain outstanding and unchanged as shares of JPMorgan Chase following the merger.

### Bank One Will Merge With and Into JPMorgan Chase (see page 31)

Subject to the terms and conditions of the merger agreement, and in accordance with Delaware law, at the completion of the merger Bank One will merge with and into JPMorgan Chase. JPMorgan Chase will be the surviving corporation. Because JPMorgan Chase does not currently have a sufficient number of authorized but unissued and unreserved shares to complete the merger and related transactions, the merger agreement also provides that, as part of the merger, JPMorgan Chase's certificate of incorporation will be amended to increase the authorized shares of its common stock from 4,500,000,000 to 9,000,000,000 and, as amended, will be the certificate of incorporation of the combined company. This amendment will not be effected unless the merger is approved by stockholders and completed. JPMorgan Chase's by-laws, which will be amended to provide for the agreed-upon succession and governance matters described under "The Merger — Amendments to JPMorgan Chase By–Laws" beginning on page 81, will be the by-laws of the combined company

### Exchange Ratio is Fixed and Will Not Be Adjusted in Response to Changes in Our Stock Prices (see page 20)

Because the exchange ratio is fixed in the merger agreement and neither JPMorgan Chase nor Bank One has the right to terminate the merger agreement based on changes in either party's stock price, **the market value of the JPMorgan Chase common stock that Bank One stockholders receive in the merger may vary significantly from its current value.**

The table below shows the closing prices of JPMorgan Chase and Bank One common stock, which trade on the New York Stock Exchange under the symbols "JPM" and "ONE," respectively, and the pro forma equivalent per share value of Bank One common stock at the close of the regular trading session on January 13, 2004, the last trading day before our public

announcement of the merger, and [          ], 2004, the most recent trading day for which that information was available prior to the mailing of this document.

| Date | JPMorgan Chase Closing Price | Bank One Closing Price | Bank One Pro Forma Equivalent(a) |
|------|------------------------------|------------------------|----------------------------------|
| January 13, 2004 | $38.90 | $44.61 | $51.35 |
| [          ], 2004 | [   ] | [   ] | [   ] |

(a)    The pro forma equivalent per share value of Bank One common stock is calculated by multiplying the JPMorgan Chase closing price by the exchange ratio of 1.32.

Because the 1.32 exchange ratio is fixed and will not be adjusted as a result of changes in the market price of JPMorgan Chase common stock, the implied value of the merger consideration will fluctuate with the market price of JPMorgan Chase common stock. The merger agreement does not include a price–based termination right or provisions that would compensate for increases or decreases in the market price of JPMorgan Chase common stock. You should obtain current market quotations for the shares of both companies from a newspaper, the Internet or your broker. In addition, set forth below is a table showing the implied value of the merger consideration to Bank One stockholders based on a range of hypothetical JPMorgan Chase common stock prices. This table is for illustrative purposes only, and the actual prices at which shares of JPMorgan Chase common stock may trade between the date of this document and the closing of the merger and thereafter may be above or below the range set forth below.

| Hypothetical Value of JPMorgan Chase Common Stock | Implied Value of Bank One Common Stock |
|---------------------------------------------------|----------------------------------------|
| $ 32.50 | $42.90 |
| 35.00 | 46.20 |
| 37.50 | 49.50 |
| 40.00 | 52.80 |
| 42.50 | 56.10 |
| 45.00 | 59.40 |
| 47.50 | 62.70 |

The following table sets forth, for the periods indicated, the high and low sale prices per share of JPMorgan Chase common stock and Bank One common stock as reported on the New York Stock Exchange Composite Tape. Bank One high and low prices presented in historical periodic filings are based on close of business prices. The information presented below is based on intra–day prices.

| Calendar Quarter | JPMorgan Chase Common Stock | | Bank One Common Stock | |
|------------------|------|------|------|------|
| | High | Low | High | Low |
| **2001** | | | | |
| First Quarter | $57.33 | $37.58 | $41.56 | $32.50 |
| Second Quarter | 50.60 | 39.21 | 39.80 | 32.90 |
| Third Quarter | 46.01 | 29.04 | 39.10 | 27.00 |
| Fourth Quarter | 40.95 | 31.85 | 40.00 | 28.92 |
| **2002** | | | | |
| First Quarter | 39.68 | 26.70 | 42.88 | 33.85 |
| Second Quarter | 38.75 | 30.15 | 42.75 | 35.61 |
| Third Quarter | 33.68 | 17.86 | 41.55 | 31.60 |
| Fourth Quarter | 26.14 | 15.26 | 40.75 | 32.54 |

4

| Calendar Quarter | JPMorgan Chase Common Stock | | Bank One Common Stock | |
|---|---|---|---|---|
| | High | Low | High | Low |
| **2003** | | | | |
| First Quarter | 28.29 | 20.13 | 38.98 | 33.14 |
| Second Quarter | 36.52 | 23.75 | 40.01 | 34.30 |
| Third Quarter | 38.26 | 32.40 | 40.51 | 36.80 |
| Fourth Quarter | 36.99 | 34.45 | 45.79 | 38.61 |
| **2004** | | | | |
| First Quarter (through February 19, 2004) | 41.12 | 36.30 | 53.74 | 44.14 |

## Merger Generally Tax–Free to Bank One Stockholders (see page 64)

The merger has been structured to qualify as a reorganization for federal income tax purposes, and it is a condition to our respective obligations to complete the merger that JPMorgan Chase and Bank One each receive a legal opinion to the effect that the merger will so qualify. In addition, in connection with the filing of the registration statement of which this document is a part, JPMorgan Chase and Bank One will each receive a legal opinion to the same effect. Accordingly, holders of Bank One common stock generally will not recognize any gain or loss for federal income tax purposes on the exchange of their Bank One common stock for JPMorgan Chase common stock in the merger, except for any gain or loss that may result from the receipt of cash instead of a fractional share of JPMorgan Chase common stock.

*You should be aware that the tax consequences to you of the merger may depend upon your own situation. In addition, you may be subject to state, local or foreign tax laws that are not discussed in this document. You should therefore consult with your own tax advisor for a full understanding of the tax consequences to you of the merger.*

## Dividend Policy and Anticipated Share Repurchases

The merger agreement permits each of us to continue to pay regular quarterly cash dividends to our stockholders. The merger agreement also permits Bank One to increase its regular quarterly cash dividend prior to the completion of the merger to 44.875 cents per share, which is an amount approximately equal to the current JPMorgan Chase quarterly dividend times the exchange ratio. On January 20, 2004, Bank One announced that it increased its quarterly dividend payable on April 1, 2004 to Bank One stockholders of record on March 12, 2004 to 44.875 cents per share. JPMorgan Chase expects to continue to pay quarterly dividends on the common stock of JPMorgan Chase after completion of the merger in an amount equal to JPMorgan Chase's current dividend of 34 cents per share per quarter. The payment of dividends by JPMorgan Chase or Bank One on their common stock in the future, before or after the merger is completed, is subject to the discretion of our respective boards of directors and will depend on business conditions, our financial condition and earnings, regulatory considerations and other factors.

We have agreed in the merger agreement to coordinate dividend declarations and the related record dates and payment dates so that our stockholders will not receive two dividends, or fail to receive one dividend, for any single calendar quarter. Accordingly, prior to the merger we may coordinate and amend our record dates and payment dates in order to effect this policy.

We anticipate that Bank One, JPMorgan Chase and the combined company will repurchase shares in an aggregate amount of approximately $3.5 billion in each of 2004, 2005 and 2006 (in addition to shares repurchased to provide common stock required for our respective dividend reinvestment and employee equity based plans). Share repurchases are subject to the discretion of our respective boards of directors and may be more or less than anticipated due to various

5

factors including capital requirements, market conditions and legal considerations affecting the amount and timing of repurchase activity.

**Our Boards of Directors Recommend that JPMorgan Chase and Bank One Stockholders Approve the Merger (see pages 34 and 38)**

*JPMorgan Chase Stockholders.* The JPMorgan Chase board of directors has determined that the merger agreement and related agreements are advisable and in the best interests of JPMorgan Chase and its stockholders and unanimously recommends that the JPMorgan Chase stockholders vote FOR the adoption of the merger agreement.

*Bank One Stockholders.* The Bank One board of directors has determined that the merger agreement and related agreements are advisable and in the best interests of Bank One and its stockholders and unanimously recommends that the Bank One stockholders vote FOR the adoption of the merger agreement.

*Factors Considered by Our Boards.* In determining whether to approve the merger, our boards of directors each consulted with our respective senior managements and legal and financial advisors and considered the respective strategic, financial and other considerations referred to under "The Merger — JPMorgan Chase's Reasons for the Merger; Recommendation of the Merger by the JPMorgan Chase Board of Directors" beginning on page 34 and "The Merger — Bank One's Reasons for the Merger; Recommendation of the Merger by the Bank One Board of Directors" beginning on page 38.

**We Have Received Opinions From Our Financial Advisors that the Merger is Fair (see page 41)**

*Opinion of JPMorgan Chase's Financial Advisor.* JPMorgan Chase's financial advisor, J.P. Morgan Securities Inc., has provided its opinion to the JPMorgan Chase board of directors dated as of January 14, 2004 that, as of that date, and subject to and based on the qualifications and assumptions set forth in its opinion, the exchange ratio in the merger was fair, from a financial point of view, to JPMorgan Chase. The full text of JPMorgan Securities' opinion is attached as Annex D to this document. JPMorgan Chase urges its stockholders to read that opinion in its entirety. The opinion of JPMorgan Securities will not reflect any developments that may occur or may have occurred after the date of its opinion and prior to the completion of the merger. JPMorgan Chase does not currently expect that it will request an updated opinion from JPMorgan Securities.

JPMorgan Chase has agreed to allocate a fee of $40 million to JPMorgan Securities in consideration for its services as financial advisor.

*Opinion of Bank One's Financial Advisor.* Bank One's financial advisor, Lazard Frères & Co. LLC, has provided its opinion to the Bank One board of directors dated as of January 14, 2004 that, as of that date, and subject to and based on the considerations referred to in its opinion, the exchange ratio in the merger was fair, from a financial point of view, to Bank One's common stockholders. The full text of Lazard's opinion is attached as Annex E to this document. Bank One urges its stockholders to read that opinion in its entirety. The opinion of Lazard will not reflect any developments that may occur or may have occurred after the date of its opinion and prior to the completion of the merger. Bank One does not currently expect that it will request an updated opinion from Lazard.

Bank One has agreed to pay a fee of $20 million to Lazard in consideration for its services as financial advisor, a portion of which is payable upon completion of the merger.

*JPMorgan Chase's Financial Advisor is an Affiliate of JPMorgan Chase and May be Deemed to Have Conflicts of Interest.* JPMorgan Chase decided to engage its subsidiary investment bank as its financial advisor. As a result of its affiliation with JPMorgan Chase, J.P. Morgan

6

Securities may be deemed to have had potential conflicts of interest in performing its duties as financial advisor. JPMorgan Chase's board of directors considered this potential conflict of interest when making its decision to engage JPMorgan Securities. JPMorgan Chase's board concluded that it was appropriate and in the best interests of JPMorgan Chase and its stockholders to approve the engagement of JPMorgan Securities based on the investment bank's global standing, extensive experience in merger transactions on behalf of unaffiliated parties and familiarity with the businesses in which JPMorgan Chase and Bank One operate, as well as its involvement in the discussions and due diligence that led to the merger agreement. The board also noted that in previous business combinations involving major financial institutions, including the merger of JPMorgan Chase's predecessor institutions, The Chase Manhattan Corporation and J.P. Morgan & Co. Incorporated, one or both of the merging parties had relied on its affiliated investment bank as its financial advisor. See "Risk Factors" beginning on page 20 and "The Merger — Opinions of Financial Advisors — Decision by JPMorgan Chase's Board to Engage Affiliated Financial Advisor" on page 41

### Appraisal Rights for Some JPMorgan Chase Preferred Stockholders But Not for Common Stockholders (see page 71)

Under Delaware law, the common stockholders of JPMorgan Chase and Bank One are not entitled to appraisal rights in connection with the merger. Holders of JPMorgan Chase's 6.63% Cumulative Preferred Stock, Series H, and Fixed/ Adjustable Noncumulative Preferred Stock who submit a written demand for appraisal of their shares and who perfect their appraisal rights by complying with the applicable statutory procedures required by Delaware law will be entitled to receive payment in cash for the fair value of their shares as determined by the Delaware Chancery Court. Holders of other series of preferred stock of JPMorgan Chase are not entitled to appraisal rights in connection with the merger.

### Financial Interests of Our Directors and Executive Officers in the Merger (see pages 59)

Some of the directors and executive officers of JPMorgan Chase and Bank One have interests in the merger that are different from, or are in addition to, the interests of stockholders of JPMorgan Chase and Bank One. These interests include:

- rights of Bank One's Chairman and Chief Executive Officer, James Dimon, under an employment agreement with JPMorgan Chase for a term of employment to commence upon the completion of the merger;

- rights of JPMorgan Chase's Chairman and Chief Executive Officer, William B. Harrison, Jr., under JPMorgan Chase's severance policy;

- the agreed-upon appointment of various members of senior management of JPMorgan Chase and Bank One to senior management positions at JPMorgan Chase after the merger;

- rights of certain Bank One executive officers under stock-based benefit programs and awards (including programs and awards of Bank One under which an aggregate of 5,789,588 options held by current executive officers of Bank One may become exercisable and 869,090 other stock-based awards held by current executive officers of Bank One may be required to be distributed upon completion of the merger or in connection with certain terminations of employment after the merger);

- rights of certain Bank One officers under existing and contemplated severance arrangements or retirement arrangements;

- rights of certain Bank One officers and directors to continued indemnification and insurance coverage by JPMorgan Chase after the merger for acts or omissions occurring prior to the merger; and

7

- compensation of persons designated by Bank One to serve on the combined company's board of directors under JPMorgan Chase's standard director compensation policy

Our boards of directors were aware of these respective interests when deciding to approve the merger

## Directors and Management Following the Merger (see page 63)

Following the merger, the board of directors of JPMorgan Chase will consist of sixteen directors. The board will include Mr. Harrison, currently the Chairman and Chief Executive Officer of JPMorgan Chase, and seven other directors to be designated by JPMorgan Chase. It will also include Mr. Dimon, currently the Chairman and Chief Executive Officer of Bank One, and seven other directors to be designated by Bank One. Other than Messrs. Harrison and Dimon, none of the directors to be designated by JPMorgan Chase or Bank One will be employees of the combined company. Directors who serve on the combined company's board of directors are expected to be compensated for their services in that capacity in accordance with JPMorgan Chase's standard director compensation policy

Following the merger, Mr. Harrison will continue to serve as Chairman and Chief Executive Officer of JPMorgan Chase and Mr. Dimon will become President and Chief Operating Officer of JPMorgan Chase. As part of the merger, the parties have agreed that as of the second anniversary of the completion of the merger (or, if earlier, when Mr. Harrison ceases for any reason to serve in the position of Chief Executive Officer), Mr. Dimon will become Chief Executive Officer of JPMorgan Chase. Mr. Harrison will continue to serve as Chairman of JPMorgan Chase following the date of Mr. Dimon's succession as Chief Executive Officer. In addition, the parties have agreed that various members of senior management from each company will be appointed to senior management positions of the combined company following the merger, as further described in "The Merger — Board of Directors and Management After the Merger" beginning on page 63

## Regulatory Approvals We Must Obtain for the Merger (see page 67)

To complete the merger, we must obtain the approval of the Board of Governors of the Federal Reserve System. In addition, we need to obtain approvals or consents from, or make filings with, a number of U.S. federal and state bank, antitrust, insurance and other regulatory authorities as well as regulatory authorities in various foreign jurisdictions. For more information regarding these required regulatory approvals, see "The Merger — Regulatory Approvals" beginning on page 67

## Expected Timing of Merger

We expect to complete the merger by mid–2004 if we have received the stockholder and regulatory approvals required to do so.

## Conditions to Completion of the Merger (see page 73)

We may not complete the merger unless the following conditions are satisfied or, where permitted, waived:

- the merger agreement must be adopted by the common stockholders of both JPMorgan Chase and Bank One;

- the JPMorgan Chase common stock to be issued in, or in connection with, the merger must be approved for listing on the New York Stock Exchange;

8

- we must obtain all necessary regulatory approvals of the merger from domestic and foreign governmental authorities, and none of those approvals may contain a condition or restriction that would have a material adverse effect on JPMorgan Chase after the merger;

- the registration statement of which this document is part must be declared effective by the Securities and Exchange Commission and not be subject to a stop order or proceedings seeking a stop order;

- no legal prohibition to completion of the merger may be in effect;

- our respective representations and warranties in the merger agreement must be true and correct, subject to exceptions that would not have a material adverse effect on JPMorgan Chase or Bank One, as the case may be, or on the combined company following the completion of the merger;

- we must each be in compliance in all material respects with our respective covenants in the merger agreement;

- we must each receive an opinion of our respective tax counsel that the merger will qualify as a tax–free reorganization; and

- in the case of Bank One's obligation to complete the merger, JPMorgan Chase's by–laws must have been amended to provide for the agreed–upon structure of the board of directors and Chief Executive Officer succession arrangements after the merger.

**Termination of the Merger Agreement; Fees Payable (see page 76 and page 77)**

We may jointly agree to terminate the merger agreement at any time. Either of us may also terminate the merger agreement if:

- a governmental authority that must grant a material regulatory approval denies approval of the merger, or a governmental authority permanently restrains or prohibits the merger, and in either case that denial or action is final and nonappealable (although this termination right is not available to a party whose failure to comply with the merger agreement resulted in those actions by a governmental authority);

- the merger is not completed on or before January 14, 2005 (although this termination right is not available to a party whose failure to comply with the merger agreement resulted in the failure to complete the merger by that date);

- the other party's board of directors adversely changes its recommendation that its stockholders vote in favor of the merger or takes any other action inconsistent with such recommendation, or the other party breaches its obligation to hold its stockholders' meeting to vote on adoption of the merger agreement;

- the other party is in breach of its representations, warranties, covenants or agreements set forth in the merger agreement and the breach rises to a level that would excuse the terminating party's obligation to complete the merger and is either incurable or is not cured within 60 days; or

- the stockholders of either party do not approve the merger at their respective stockholders' meeting.

The merger agreement provides that in several circumstances described more fully beginning on page 77 involving a change in recommendation in favor of the merger agreement or failure to hold a stockholders' meeting to vote on the merger or a third party acquisition proposal, either of us may be required to pay termination fees to the other of up to $2.30 billion. The termination fees and the stock option agreements described below could discourage other companies from seeking to acquire or merge with either JPMorgan Chase or Bank One.

9

**JPMorgan Chase and Bank One Granted Stock Options to Each Other** (see page 82)

Each of us has issued to the other an option to purchase up to 19.9% of our respective outstanding shares of common stock. The exercise price of the option issued by Bank One is $44.61 per Bank One share, which represented the closing price of Bank One common stock on January 13, 2004, the trading day prior to the announcement of the merger. The exercise price of the option issued by JPMorgan Chase is $38.90 per JPMorgan Chase share, which represented the closing price of JPMorgan Chase common stock on that same day.

Each option becomes exercisable only if one of the following events occurs:

- prior to termination of the merger agreement, without the consent of the option holder, the option issuer enters into an agreement with any person relating to a competing acquisition proposal as described in the stock option agreement;

- prior to termination of the merger agreement, any person other than the option holder acquires beneficial ownership of, or a right to acquire beneficial ownership of, voting securities representing 20% or more of the voting power of the option issuer or any of its significant subsidiaries; or

- the full $2.30 billion termination fee under the merger agreement, as described above, becomes payable by the option issuer.
Under the circumstances described in the stock option agreements, the option holder may require the option issuer to repurchase the option and any shares purchased under the option for a price specified in the stock option agreement.

The option holder's profit under the applicable stock option agreement, together with any termination fees paid under the merger agreement, may not exceed $2.87 billion.

## THE ANNUAL MEETINGS

**JPMorgan Chase Annual Meeting** (see page 24)

The JPMorgan Chase annual meeting will be held at the auditorium of J.P. Morgan Chase & Co., One Chase Manhattan Plaza, New York, New York on [          ], 2004, starting at [          ], New York time. At the JPMorgan Chase meeting, JPMorgan Chase's common stockholders will be asked to vote on the following matters:

- adoption of the merger agreement;

- election of directors;

- ratification of the appointment of PricewaterhouseCoopers LLP as JPMorgan Chase's external auditor for 2004;

- stockholder proposals included in this document, if they are introduced at the meeting; and

- any other matters that may be properly brought before the meeting
You may vote at the JPMorgan Chase annual meeting if you owned shares of JPMorgan Chase common stock at the close of business on [          ], 2004. On that date there were [          ] shares of JPMorgan Chase common stock outstanding, less than 1% of which were owned and entitled to be voted by JPMorgan Chase directors and executive officers and their affiliates. We currently expect that JPMorgan Chase's directors and executive officers will vote their shares in favor of the merger, although none of them has entered into any agreements obligating them to do so.

10

You may cast one vote for each share of JPMorgan Chase common stock you own. The proposals require different percentages of votes in order to approve them:

- The affirmative vote of a majority of the shares of JPMorgan Chase common stock outstanding on the record date is required to adopt the merger agreement

- The affirmative vote of a plurality of the votes cast at the annual meeting is required to approve the election of each director nominee.

- The affirmative vote of a majority of the shares of JPMorgan Chase common stock represented at the annual meeting and entitled to vote is required to ratify the appointment of the external auditor.

- The affirmative vote of a majority of the shares of JPMorgan Chase common stock represented at the annual meeting and entitled to vote is required to adopt the stockholder proposals described in this document.

**Bank One Annual Meeting (see page 27)**

The Bank One annual meeting will be held at the auditorium of Bank One Corporation, 1 Bank One Plaza, Chicago, Illinois on [          ], 2004, starting at [          ], Chicago time. At the Bank One meeting, Bank One's common stockholders will be asked to vote on the following matters:

- adoption of the merger agreement;

- election of directors;

- ratification of the appointment of KPMG LLP as Bank One's independent auditor for 2004; and

- any other matters that may be properly brought before the meeting

You may vote at the Bank One annual meeting if you owned shares of Bank One common stock at the close of business on [          ], 2004. On that date there were [          ] shares of Bank One common stock outstanding, approximately 1.25% of which were owned and entitled to be voted by Bank One directors and executive officers and their affiliates. We currently expect that Bank One's directors and executive officers will vote their shares in favor of the merger, although none of them has entered into any agreements obligating them to do so.

You can cast one vote for each share of Bank One common stock you own. The proposals require different percentages of votes in order to approve them:

- The affirmative vote of a majority of the shares of Bank One common stock outstanding on the record date is required to adopt the merger agreement.

- The affirmative vote of a plurality of the votes cast at the annual meeting is required to approve the election of each director nominee.

- The affirmative vote of a majority of the shares of Bank One common stock represented at the annual meeting and entitled to vote is required to ratify the appointment of the independent auditor

11

## INFORMATION ABOUT JPMORGAN CHASE AND BANK ONE

**J.P. Morgan Chase & Co.**

270 Park Avenue
New York, New York 10017
(212) 270–6000

JPMorgan Chase is a financial holding company incorporated under Delaware law in 1968. JPMorgan Chase is one of the largest banking institutions in the United States, with $771 billion in assets and $46 billion in stockholders' equity as of December 31, 2003.

JPMorgan Chase is a global financial services firm with operations in more than 50 countries and more than 30 million retail customers nationwide as of December 31, 2003. Its principal bank subsidiaries are JPMorgan Chase Bank, a New York banking corporation headquartered in New York City, and Chase Manhattan Bank USA, National Association, headquartered in Delaware. JPMorgan Chase's principal nonbank subsidiary is its investment banking subsidiary, JPMorgan Securities. The bank and nonbank subsidiaries of JPMorgan Chase operate nationally as well as through overseas branches and subsidiaries, representative offices and affiliated banks.

JPMorgan Chase's activities are internally organized, for management reporting purposes, into five major business segments: Investment Bank; Chase Financial Services; Treasury & Securities Services; Investment Management & Private Banking; and JPMorgan Partners. The following is a brief description of those businesses.

*Investment Bank.* The Investment Bank, which includes JPMorgan Securities, provides a full range of investment banking and commercial banking products and services including advising on corporate strategy and structure, capital raising in equity and debt markets, sophisticated risk management and market–making in cash securities and derivative instruments in all major capital markets. The Investment Bank also commits JPMorgan Chase's own capital to proprietary investing and trading activities to capture market opportunities.

*Chase Financial Services.* Chase Financial Services is a major provider of banking, investment and financing products and services to consumers and small and middle market businesses throughout the United States. The majority of its revenues and earnings are produced by its national consumer credit businesses, Chase Home Finance, Chase Cardmember Services and Chase Auto Finance. It also serves as a full–service bank for consumers and small–and medium–sized businesses through Chase Regional Banking and Chase Middle Market.

*Treasury & Securities Services.* Treasury & Securities Services, a global leader in transaction processing and information services to wholesale clients, is composed of three businesses. Institutional Trust Services provides a range of fiduciary services to debt and equity issuers and broker–dealers, from traditional trustee and paying–agent functions to global securities clearance. Investor Services provides securities custody and related functions, such as securities lending, investment analytics and reporting, to mutual funds, investment managers, pension funds, insurance companies and banks worldwide. Treasury Services provides treasury and cash management, as well as payment, liquidity management and trade finance services, to a diversified global client base of corporations, financial institutions and governments.

*Investment Management & Private Banking.* JPMorgan Fleming Asset Management provides investment management services to private– and public–sector institutional investors, high net worth individuals and retail customers across asset classes and global markets. JPMorgan Private Bank provides personalized advice and solutions to wealthy individuals and families.

*JPMorgan Partners.* JPMorgan Partners, the global private equity organization of JPMorgan Chase, provides equity and mezzanine capital financing to private companies. It is a diversified investor, investing in buyouts, growth equity and venture opportunities across a variety of

12

industry sectors, with the objective of creating long–term value for JPMorgan Chase and third–party investors.

On December 31, 2000, J.P. Morgan & Co. Incorporated merged with and into The Chase Manhattan Corporation, which changed its name to "J.P. Morgan Chase & Co." upon completion of the merger. The merger was accounted for as a pooling of interests. As a result, the financial information provided or incorporated by reference in this document presents the combined results of The Chase Manhattan Corporation and J.P. Morgan & Co. Incorporated as if the merger had been in effect for all periods presented. In addition, certain prior–period amounts for the predecessor institutions' financial statements have been reclassified to conform to the current presentation.

## Bank One Corporation

1 Bank One Plaza
Chicago, Illinois 60670
(312) 732–4000

Bank One Corporation is a financial holding company and a multibank bank holding company registered under the Bank Holding Company Act of 1956, and is headquartered in Chicago, Illinois. Bank One was incorporated in Delaware in 1998 to effect the merger of Banc One Corporation and First Chicago NBD Corporation.

Bank One provides domestic retail banking, finance and credit card services; worldwide commercial banking services; and trust and investment management services. Bank One operates banking offices in Arizona, Colorado, Florida, Illinois, Indiana, Kentucky, Louisiana, Michigan, Ohio, Oklahoma, Texas, Utah, West Virginia and Wisconsin and in certain international markets. Bank One also engages in other businesses related to banking and finance, including credit card and merchant processing, consumer and education finance, real estate–secured lending and servicing, insurance, venture capital, investment and merchant banking, trust, brokerage, investment management, leasing, community development and data processing. These activities are conducted through bank subsidiaries and nonbank subsidiaries. Prior to 2001, the bank subsidiaries were operated under separate national or state charters in the 14 states in which the banking offices are located. Since 2001, most of the bank subsidiaries have been consolidated into Bank One, National Association, headquartered in Chicago, Illinois and Bank One, National Association, headquartered in Columbus, Ohio.

13

## SELECTED HISTORICAL AND PRO FORMA FINANCIAL DATA

The following financial information is to aid you in understanding the financial aspects of the merger. The following tables present (1) selected historical financial data of JPMorgan Chase, (2) selected historical financial data of Bank One and (3) selected unaudited pro forma combined financial data reflecting the merger. The historical financial data show the financial results actually achieved by JPMorgan Chase and Bank One for the periods indicated. The pro forma unaudited combined financial data show financial results as if the merger had taken place at the beginning of the earliest period presented and assuming the merger is accounted for as a purchase of Bank One by JPMorgan Chase.

### Selected Historical Financial Data of JPMorgan Chase

**(in millions, except per share and ratio data)**

The selected historical financial data of JPMorgan Chase have been derived from the historical consolidated financial statements and related notes of JPMorgan Chase filed by JPMorgan Chase with the Securities and Exchange Commission. On December 31, 2000, J.P. Morgan & Co. Incorporated merged with and into The Chase Manhattan Corporation, which changed its name to "J.P. Morgan Chase & Co." The merger was accounted for as a pooling of interests and accordingly the amounts below include the consolidated results of The Chase Manhattan Corporation and J.P. Morgan & Co. Incorporated prior to that merger. See "Where You Can Find More Information" beginning on page 165.

| | Years Ended December 31, | | | | |
|---|---|---|---|---|---|
| | **2003** | **2002** | **2001** | **2000** | **1999** |
| **Income Statement** | | | | | |
| Net interest income | $12,337 | $11,526 | $10,802 | $ 9,512 | $10,285 |
| Noninterest revenue | 20,919 | 18,088 | 18,542 | 23,674 | 20,861 |
| Total revenue | 33,256 | 29,614 | 29,344 | 33,186 | 31,146 |
| Provision for credit losses | 1,540 | 4,331 | 3,182 | 1,380 | 1,446 |
| Noninterest expense(e) | 21,688 | 22,764(a) | 23,596 | 23,073 | 18,211 |
| Income before income tax expense | 10,028 | 2,519 | 2,566 | 8,733 | 11,489 |
| Income tax expense | 3,309 | 856 | 847 | 3,006 | 3,988 |
| Net effect of change in accounting principle | — | — | (25) | — | — |
| Net income | 6,719 | 1,663 | 1,694 | 5,727 | 7,501 |
| Average common shares outstanding: | | | | | |
| Basic | 2,009 | 1,984 | 1,972 | 1,884 | 1,913 |
| Diluted | 2,055 | 2,009 | 2,024 | 1,969 | 2,005 |
| | | | | | |
| **Performance Ratios** | | | | | |
| Return on average assets | 0.87% | 0.23% | 0.23% | 0.85% | 1.19% |
| Return on average common equity | 15.5% | 3.9% | 3.9% | 15.6% | 22.5% |
| Total equity to total assets at December 31 | 6.0% | 5.6% | 5.9% | 5.9% | 5.3% |
| Total average equity to total average assets | 5.7% | 5.8% | 5.8% | 5.6% | 5.5% |
| Dividend payout ratio | 43% | 171% | 168% | 42% | 28% |
| **Per Common Share** | | | | | |
| Net income — Basic | $ 3.32 | $ 0.81 | $ 0.83(d) | $ 2.99 | $ 3.87 |
| Net income — Diluted | 3.24 | 0.80 | 0.80(d) | 2.86 | 3.69 |
| Cash dividends per common share | 1.36 | 1.36 | 1.36 | 1.28 | 1.08 |
| Book value at December 31 | 22.10 | 20.66 | 20.32 | 21.17 | 18.07 |

14

| | Years Ended December 31, | | | | |
|---|---|---|---|---|---|
| | 2003 | 2002 | 2001 | 2000 | 1999 |
| **Selected Balance Sheet Items** | | | | | |
| Loans | $219.518 | $216.364 | $217.444 | $216,050 | $203.008 |
| Total assets | 770,912 | 758.800 | 693,575 | 715.348 | 667.003 |
| Deposits | 326,492 | 304,753 | 293.650 | 279,365 | 287.064 |
| Long–term debt(b) | 54.782 | 45,190 | 43.622 | 47.238 | 45,540 |
| Common stockholders' equity | 45.145 | 41.297 | 40.090 | 40.818 | 33.434 |
| **Capital Ratios** | | | | | |
| Risk–based capital: | | | | | |
| Tier–1 | 8.5% | 8.2% | 8.3% | 8.5% | 8.5% |
| Total | 11.8% | 12.0% | 11.9% | 12.0% | 12.3% |
| Leverage | 5.6% | 5.1% | 5.2% | 5.4% | 5.9% |
| **Market Price Per Share of Common Stock(c)** | | | | | |
| Closing | $ 36.73 | $ 24.00 | $ 36.35 | $ 45.44 | $ 51.79 |
| High | 38.26 | 39.68 | 59.19 | 67.17 | 60.75 |
| Low | 20.13 | 15.26 | 29.04 | 32.38 | 43.88 |

(a)  Includes a $1.3 billion charge in connection with the settlement of the Enron–related surety litigation and the establishment of a reserve related to certain material litigations, proceedings and investigations.

(b)  Includes junior subordinated deferrable interest debentures held by trusts that issued guaranteed preferred beneficial interests and excludes certain long–term debt classified as Beneficial interests issued by consolidated variable interest entities.

(c)  JPMorgan Chase's common stock is listed and traded on the New York Stock Exchange, the London Stock Exchange Limited and the Tokyo Stock Exchange. The high, low and closing prices of JPMorgan Chase's common stock are from the New York Stock Exchange composite transaction tape. Share–related data have been restated to reflect a three–for–two stock split effective as of the close of business on June 9, 2000.

(d)  Basic and diluted earnings per share have been reduced by $0.01 in 2001 because of the impact of the adoption of SFAS 133 relating to the accounting for derivative financial instruments and hedging activities.

(e)  Includes merger and restructuring charges of $1,210 million in 2002, $2,523 million in 2001, $1,431 million in 2000 and $23 million in 1999.

15

Selected Historical Financial Data of Bank One

(in millions, except per share and ratio data)

The selected historical financial data of Bank One have been derived from the historical consolidated financial statements and related notes of Bank One filed by Bank One with the Securities and Exchange Commission. See "Where You Can Find More Information" beginning on page 165.

| | Years Ended December 31, | | | | |
|---|---|---|---|---|---|
| | 2003 | 2002 | 2001 | 2000 | 1999 |
| **Income Statement** | | | | | |
| Net interest income | $ 8,149 | $ 8,555 | $ 8,605 | $ 8,806 | $ 8,993 |
| Noninterest revenue | 8,063 | 8,180 | 7,143 | 5,004 | 8,609 |
| Total revenue | 16,212 | 16,735 | 15,748 | 13,810 | 17,602 |
| Provision for credit losses | 2,045 | 2,487 | 2,510 | 3,398 | 1,249 |
| Noninterest expense | 9,777 | 9,546 | 9,490 | 11,531 | 11,421 |
| Income (loss) from continuing operations, net of taxes | 3,125 | 3,256 | 2,649 | (536) | 3,453 |
| Income from discontinued operations, net of taxes | 410 | 39 | 33 | 25 | 26 |
| Net effect of change in accounting principle | — | — | (44) | — | — |
| Net income (loss) | 3,535 | 3,295 | 2,638 | (511) | 3,479 |
| Average common shares outstanding: | | | | | |
| Basic | 1,126 | 1,162 | 1,166 | 1,154 | 1,168 |
| Diluted | 1,135 | 1,172 | 1,174 | 1,154 | 1,178 |
| | | | | | |
| **Performance Ratios** | | | | | |
| Return (loss) on average assets | 1.27% | 1.25% | 0.98% | (0.19%) | 1.36% |
| Return (loss) on average common stockholders' equity | 15.6% | 15.2% | 13.4% | (2.7%) | 17.1% |
| Total equity to total assets (period end) | 7.2% | 8.1% | 7.5% | 6.9% | 7.5% |
| Total average equity to total average assets | 8.1% | 8.2% | 7.3% | 7.2% | 8.0% |
| Dividend payout ratio | 30% | 30% | 38% | NM | 57% |
| | | | | | |
| **Per Common Share Data** | | | | | |
| Basic earnings per share: | | | | | |
| Income (loss) from continuing operations, (net of taxes) | $ 2.78 | $ 2.80 | $ 2.25 | $ (0.47) | $ 2.95 |
| Income from discontinued operations, (net of taxes) | 0.36 | 0.03 | 0.03 | 0.02 | 0.02 |
| Net income (loss) | 3.14 | 2.83 | 2.25(3) | (0.45) | 2.97 |
| Diluted earnings per share: | | | | | |
| Income (loss) from continuing operations, (net of taxes) | 2.75 | 2.77 | 2.25 | (0.47) | 2.93 |
| Income from discontinued operations, (net of taxes) | 0.36 | 0.03 | 0.03 | 0.02 | 0.02 |
| Net income (loss) | 3.11 | 2.80 | 2.24(3) | (0.45) | 2.95 |
| Cash dividends per common share | 0.92 | 0.84 | 0.84 | 1.26 | 1.68 |
| Book value at December 31 | 20.92 | 19.28 | 17.33 | 15.90 | 17.34 |

NM = not meaningful.

p

16

| | Years Ended December 31, | | | | |
|---|---|---|---|---|---|
| | 2003 | 2002 | 2001 | 2000 | 1999 |
| **Selected Balance Sheet Items** | | | | | |
| Loans | $138,147 | $148,125 | $156,733 | $174,251 | $163,877 |
| Total assets | 326,563 | 277,985 | 269,507 | 269,774 | 269,767 |
| Total deposits | 164,621 | 170,008 | 167,530 | 167,077 | 162,278 |
| Long–term debt(2) | 46,764 | 43,234 | 43,418 | 40,911 | 35,435 |
| Common stockholders' equity | 23,419 | 22,440 | 20,226 | 18,445 | 19,900 |
| **Capital Ratios** | | | | | |
| Risk–based capital: | | | | | |
| Tier–1 | 10.0% | 9.9% | 8.6% | 7.3% | 7.7% |
| Total | 13.7% | 13.7% | 12.2% | 10.8% | 10.7% |
| Leverage | 8.8% | 8.9% | 8.2% | 7.3% | 7.7% |
| **Market Price Per Share of Common Stock** | | | | | |
| Closing | $  45.59 | $  36.55 | $  39.05 | $  36.63 | $  32.00 |
| High(4) | 45.70 | 42.53 | 39.85 | 38.81 | 63.13 |
| Low(4) | 33.94 | 32.59 | 28.00 | 24.25 | 29.98 |

(1)  Common equivalent shares and related income were excluded from the computation of diluted loss per share for the year–ended December 31, 2000, as they are antidilutive.

(2)  Includes trust preferred capital securities and excludes certain long–term debt classified as Beneficial interests issued by consolidated variable interest entities.

(3)  Basic and diluted earnings per share have been reduced by $0.03 and $0.04, respectively, in 2001 because of the impact of the adoption of SFAS 133 relating to the accounting for derivative financial instruments and hedging activities.

(4)  Bank One high and low share prices presented in historical periodic filings are based on close of business prices. The information presented above is based on intra–day prices.

17

**Selected Unaudited Pro Forma Combined Financial Data of JPMorgan Chase and Bank One**

**(in millions)**

The following table shows information about our financial condition and results of operations, including per share data and financial ratios, after giving effect to the merger. This information is called pro forma financial information in this document. The information under "Selected Combined Balance Sheet Items at Period End" in the table below assumes the merger was completed on December 31, 2003. The information under "Combined Income Statement" in the table below gives effect to the merger as if the merger had been completed on January 1, 2003. This pro forma financial information assumes that the merger is accounted for using the purchase method of accounting and represents a current estimate of the financial information based on available financial information of JPMorgan Chase and Bank One. See "The Merger — Accounting Treatment" on page 66.

The pro forma financial information includes adjustments to record the assets and liabilities of Bank One at their estimated fair values and is subject to further adjustment as additional information becomes available and as additional analyses are performed. The pro forma financial information is presented for illustrative purposes only and does not indicate the financial results of the combined company had the impact of possible revenue enhancements, expense efficiencies, asset dispositions and share repurchases, among other factors, been considered.

The information presented below should be read together with the historical consolidated financial statements of JPMorgan Chase and Bank One, including the related notes, filed by each of them with the Securities and Exchange Commission and together with the consolidated historical financial data for JPMorgan Chase and Bank One and the other pro forma financial information, including the related notes, appearing elsewhere in this document. See "Where You Can Find More Information" beginning on page 165 and "Unaudited Pro Forma Combined Financial Information" beginning on page 87. The pro forma financial data are not necessarily indicative of results that actually would have occurred had the merger been completed on the dates indicated or that may be obtained in the future.

|  | As of or for the Year Ended December 31, 2003 |
| --- | --- |
| **Combined Income Statement:** | |
| Net Interest Income | $  20.902 |
| Provision for Credit Losses | 3.585 |
| Noninterest Revenue | 29,212 |
| Noninterest Expense | 33.161 |
| Income from Continuing Operations Before Income Tax Expense | 13.368 |
| Income Tax Expense | 4.174 |
| Income from Continuing Operations | $   9.194 |
| **Selected Combined Balance Sheet Items at Period End:** | |
| Loans, Net of Allowance | $ 345.801 |
| Total Assets | 1.135.234 |
| Deposits | 489.795 |
| Long–Term Debt and Other Capital Securities(a) | 100,876 |
| Total Stockholders' Equity | 104.457 |

(a)   Excludes long–term debt of consolidated variable interest entities

18

## COMPARATIVE PER SHARE DATA

### (Unaudited)

We present below for JPMorgan Chase and Bank One historical, unaudited pro forma combined and pro forma equivalent per share financial data for the year ended December 31, 2003. You should read the information below together with the financial statements and related notes of JPMorgan Chase and Bank One that are incorporated by reference in this document and with the unaudited pro forma combined financial data included under "Unaudited Pro Forma Combined Financial Information" beginning on page 87.

|  | As of or for the Year Ended December 31, 2003 |
| --- | --- |
| **JPMORGAN CHASE COMMON STOCK:** |  |
| **Income from continuing operations per common share:** |  |
| **Basic:** |  |
| Historical | $ 3.32 |
| Pro Forma Combined | $ 2.62 |
| **Diluted:** |  |
| Historical | $ 3.24 |
| Pro Forma Combined | $ 2.57 |
| **Cash Dividends Per Common Share:** |  |
| Historical | $ 1.36 |
| Pro Forma Combined(a) | $ 1.36 |
| **Book Value Per Share at December 31, 2003** |  |
| Historical | $22.10 |
| Pro Forma Combined | $29.67 |
| **BANK ONE COMMON STOCK:** |  |
| **Income from continuing operations per common share:** |  |
| **Basic:** |  |
| Historical | $ 2.78 |
| Pro Forma Equivalent(b) | $ 3.46 |
| **Diluted:** |  |
| Historical | $ 2.75 |
| Pro Forma Equivalent(b) | $ 3.39 |
| **Cash Dividends Per Common Share:** |  |
| Historical | $ 0.92 |
| Pro Forma Equivalent(b) | $ 1.80 |
| **Book Value Per Share at December 31, 2003** |  |
| Historical | $20.92 |
| Pro Forma Equivalent(b) | $39.16 |

(a)  The JPMorgan Chase pro forma combined dividends per common share represent historical dividends per share for JPMorgan Chase.

(b)  The Bank One pro forma equivalent per share amounts are calculated by multiplying the JPMorgan Chase pro forma combined per common share amounts by the exchange ratio of 1.32.

19

# RISK FACTORS

*In addition to the other information contained in or incorporated by reference into this document, including the matters addressed under the caption "Information Regarding Forward—Looking Statements" beginning on page 22, you should carefully consider the following risk factors in deciding whether to vote for adoption of the merger agreement*

**Because the market price of JPMorgan Chase common stock may fluctuate, you cannot be sure of the market value of the common stock issued in the merger.**

Upon completion of the merger, each share of Bank One common stock you hold will be converted into 1.32 shares of common stock of JPMorgan Chase. This exchange ratio will not be adjusted for changes in the market price of either JPMorgan Chase common stock or Bank One common stock. Changes in the price of JPMorgan Chase common stock prior to the merger will affect the value that Bank One common stockholders will receive on the date of the merger. Stock price changes may result from a variety of factors, including general market and economic conditions, changes in our businesses, operations and prospects and regulatory considerations, many of which factors are beyond our control. Neither of us is permitted to terminate the merger agreement or resolicit the vote of our stockholders solely because of changes in the market price of either of our common stocks.

The prices of JPMorgan Chase common stock and Bank One common stock at the closing of the merger may vary from their respective prices on the date the merger agreement was executed, on the date of this document and on the date of the meetings. As a result, the value represented by the exchange ratio will also vary. For example, based on the range of closing prices of JPMorgan Chase common stock during the period from January 13, 2004, the last trading day before public announcement of the merger, through [          ], 2004, the exchange ratio represented a value ranging from a high of $[          ] to a low of $[          ] for each share of Bank One common stock. **Because the date that the merger is completed will be later than the date of the meetings, at the time of your meeting, you will not know the exact market value of the JPMorgan Chase common stock that Bank One stockholders will receive upon completion of the merger.**

**JPMorgan Chase and Bank One have not obtained updated fairness opinions from JPMorgan Securities and Lazard, respectively, reflecting changes in circumstances that may have occurred since the signing of the merger agreement.**

JPMorgan Chase and Bank One have not obtained updated opinions as of the date of this document from JPMorgan Securities and Lazard, which are JPMorgan Chase's and Bank One's respective financial advisors. Changes in the operations and prospects of JPMorgan Chase or Bank One, general market and economic conditions, and other factors which may be beyond the control of JPMorgan Chase and Bank One, and on which the fairness opinions were based, may have altered the value of JPMorgan Chase or Bank One or the prices of shares of JPMorgan Chase common stock and shares of Bank One common stock as of the date of this document, or may alter such values and prices by the time the merger is completed. The opinions do not speak as of any date other than the dates of those opinions. For a description of the opinions that JPMorgan Chase and Bank One received from their respective financial advisors, please refer to "The Merger — Opinions of Financial Advisors" beginning on page 41. For a description of the other factors considered by JPMorgan Chase's board of directors in determining to approve the merger, please refer to "The Merger — JPMorgan Chase's Reasons for the Merger; Recommendation of the Merger by the JPMorgan Chase Board of Directors" beginning on page 34. For a description of the other factors considered by Bank One's board of directors in determining to approve the merger, please refer to "The Merger — Bank One's Reasons for the Merger; Recommendation of the Merger by the Bank One Board of Directors" beginning on page 38.

20

**We may fail to realize the anticipated benefits of the merger.**

The success of the merger will depend, in part, on our ability to realize the anticipated cost savings from combining the businesses of JPMorgan Chase and Bank One. Our managements have estimated that approximately $2.2 billion of annual pre–tax cost savings, to be phased in between 2004 and 2007, would be realized from the merger. However, to realize the anticipated benefits from the merger, we must successfully combine the businesses of JPMorgan Chase and Bank One in a manner that permits those cost savings to be realized. If we are not able to successfully achieve these objectives, the anticipated benefits of the merger may not be realized fully or at all or may take longer to realize than expected.

JPMorgan Chase and Bank One have operated and, until the completion of the merger, will continue to operate, independently. It is possible that the integration process could result in the loss of key employees, the disruption of each company's ongoing businesses or inconsistencies in standards, controls, procedures and policies that adversely affect our ability to maintain relationships with clients and employees or to achieve the anticipated benefits of the merger.

**The market price of the JPMorgan Chase shares after the merger may be affected by factors different from those affecting the shares of Bank One or JPMorgan Chase currently.**

The businesses of JPMorgan Chase and Bank One differ and, accordingly, the results of operations of the combined company and the market price of the combined company's shares of common stock may be affected by factors different from those currently affecting the independent results of operations of each of JPMorgan Chase or Bank One. For a discussion of the businesses of JPMorgan Chase and Bank One and of certain factors to consider in connection with those businesses, see the documents incorporated by reference in this document and referred to under "Where You Can Find More Information" beginning on page 165.

**JPMorgan Chase may be subject to adverse regulatory conditions after the merger.**

Before the merger may be completed, various approvals or consents must be obtained from the Board of Governors of the Federal Reserve System and various bank regulatory, antitrust, insurance and other authorities in the United States and in foreign jurisdictions. The governmental entities from which these approvals are required, including the Federal Reserve Board, may impose conditions on the completion of the merger or require changes to the terms of the merger. These conditions or changes could have the effect of delaying completion of the merger or imposing additional costs on or limiting the revenues of JPMorgan Chase following the merger, any of which might have a material adverse effect on JPMorgan Chase following the merger.

21

## INFORMATION REGARDING FORWARD–LOOKING STATEMENTS

This document contains "forward–looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. These statements may be made directly in this document or they may be made a part of this document by appearing in other documents filed with the Securities and Exchange Commission by JPMorgan Chase and Bank One and incorporated by reference in this document. These statements may include statements regarding the period following completion of the merger.

Words such as "anticipate," "estimate," "expect," "project," "intend," "plan," "believe," "target," "objective," "goal" and words and terms of similar substance used in connection with any discussion of future operating or financial performance of JPMorgan Chase, Bank One, the surviving company or the merger identify forward–looking statements. All forward–looking statements are management's present expectations or forecasts of future events and are subject to a number of factors and uncertainties that could cause actual results to differ materially from those described in the forward–looking statements. In addition to the factors relating to the merger discussed under the caption "Risk Factors" beginning on page 20, the following risks related to the businesses of JPMorgan Chase and Bank One, among others, could cause actual results to differ materially from those described in the forward–looking statements:

- the risk of adverse movements or volatility in domestic or foreign debt and equity securities markets or in interest or foreign exchange rates or indices;

- the risk of adverse impact from an economic downturn or other downturn in trading conditions or markets;

- the risks associated with increased competition;

- the risks associated with unfavorable political and diplomatic developments;

- the risks associated with acts of terrorism or the outbreak of armed hostilities;

- the risks associated with adverse changes in domestic or foreign governmental or regulatory policies, including adverse interpretations of regulatory guidelines;

- the risk that material litigation or investigations will be determined adversely to the company;

- the risk that a downgrade in the company's credit ratings will adversely affect the company's businesses or investor sentiment;

- the risk that management's assumptions and estimates used in applying the company's critical accounting policies prove unreliable, inaccurate or not predictive of actual results;

- the risk that the company's business continuity plans or data security systems prove inadequate;

- the risk that external vendors are unable to fulfill their contractual obligations to the company;

- the risk that the design of the company's disclosure controls and procedures or internal controls prove inadequate, or are circumvented, thereby causing losses or errors in information or a delay in the detection of fraud;

- the risk that the credit, market, liquidity, private equity, operational and business risks associated with the various businesses of the company are not successfully managed; or

- other factors affecting business plans.

We caution you not to place undue reliance on the forward–looking statements, which speak only as of the date of this document in the case of forward–looking statements contained in this

document, or the dates of the documents incorporated by reference in this document in the case of forward–looking statements made in those incorporated documents. Neither JPMorgan Chase nor Bank One has any obligation to update these forward–looking statements.

For additional information about factors that could cause actual results to differ materially from those described in the forward–looking statements, please see the reports that JPMorgan Chase and Bank One have filed with the Securities and Exchange Commission as described under "Where You Can Find More Information" beginning on page 165.

We expressly qualify in their entirety all forward–looking statements attributable to either of us or any person acting on our behalf by the cautionary statements contained or referred to in this section.

23

## THE JPMORGAN CHASE ANNUAL MEETING

**Date, Time and Place of the Annual Meeting**

This document is being furnished to you in connection with the solicitation of proxies by JPMorgan Chase in connection with JPMorgan Chase's 2004 annual meeting of stockholders  The JPMorgan Chase annual meeting is scheduled to be held as follows:

[          ], 2004

[          ], New York time
Auditorium
One Chase Manhattan Plaza
New York, New York

**Purpose of the Annual Meeting**

At the JPMorgan Chase annual meeting, JPMorgan Chase's stockholders will be asked to consider and vote upon the following proposals:

- the proposal to adopt the merger agreement (JPMorgan Chase Proposal 1);

- the proposal to elect nominees to the JPMorgan Chase board of directors (JPMorgan Chase Proposal 2);

- the proposal to ratify the appointment of PricewaterhouseCoopers LLP as JPMorgan Chase's external auditor for 2004 (JPMorgan Chase Proposal 3);

- the stockholder proposals described under "Other Matters to be Considered at the JPMorgan Chase Annual Meeting — JPMorgan Chase Proposals 4–12: Stockholder Proposals", if they are introduced at the meeting (JPMorgan Chase Proposals 4–12); and

- any other matters that may be properly brought before the meeting

**Record Date for the Annual Meeting**

The board of directors of JPMorgan Chase has fixed the close of business on [          ], 2004 as the record date for determination of stockholders entitled to notice of and to vote at the annual meeting of stockholders  On the record date, there were [          ] shares of JPMorgan Chase common stock outstanding, held by approximately [          ] holders of record

**Votes Required**

A majority of the shares of JPMorgan Chase common stock outstanding on the record date must be present, either in person or by proxy, to constitute a quorum at the JPMorgan Chase annual meeting  The proposals require different percentages of votes in order to approve them:

p  • The affirmative vote of a majority of the shares of JPMorgan Chase common stock outstanding on the record date is required to adopt the merger agreement

- The affirmative vote of a plurality of the votes cast at the annual meeting is required to approve the election of each director nominee

- The affirmative vote of a majority of the shares of JPMorgan Chase common stock represented at the annual meeting and entitled to vote is required to ratify the appointment of the external auditor

- The affirmative vote of a majority of the shares of JPMorgan Chase common stock represented at the annual meeting and entitled to vote is required to adopt the stockholder proposals described in this document

24

At the JPMorgan Chase annual meeting, each share of JPMorgan Chase common stock is entitled to one vote on all matters properly submitted to the JPMorgan Chase stockholders

As of the record date, JPMorgan Chase directors and executive officers and their affiliates owned and were entitled to vote approximately [          ] shares of JPMorgan Chase common stock, representing less than 1% of the outstanding shares of JPMorgan Chase common stock. We currently expect that JPMorgan Chase's directors and executive officers will vote their shares in favor of the merger, although none of them has entered into any agreements obligating them to do so.

## Attending the Annual Meeting

If you are a holder of record of JPMorgan Chase common stock and plan to attend the JPMorgan Chase annual meeting, please indicate this when you vote. The lower portion of the proxy card is your admission ticket. When you arrive at the JPMorgan Chase annual meeting, you will be asked to present photo identification, such as a driver's license. If you are a beneficial owner of JPMorgan Chase common stock held by a broker, bank, or other nominee, you will need proof of ownership to be admitted to the meeting. A recent brokerage statement or a letter from a bank or broker are examples of proof of ownership. If you want to vote your JPMorgan Chase common stock held in nominee name in person, you must get a written proxy in your name from the broker, bank, or other nominee that holds your shares.

The auditorium in which JPMorgan Chase's annual meeting will be held offers access for people using wheelchairs and headsets for the hearing–impaired.

## Proxies

All shares of JPMorgan Chase common stock represented by properly executed proxy cards or voting instruction cards (including those given through electronic voting through the Internet or by telephone) received before or at the annual meeting will, unless revoked, be voted in accordance with the instructions indicated on those proxy cards or voting instruction cards. If no instructions are indicated on a properly executed proxy card, the shares will be voted:

- FOR adoption of the merger agreement as presented in JPMorgan Chase Proposal 1;

- FOR election of all nominees for directors presented in JPMorgan Chase Proposal 2;

- FOR ratification of the appointment of PricewaterhouseCoopers LLP as JPMorgan Chase's external auditor for 2004 as presented in JPMorgan Chase Proposal 3; and

- AGAINST the stockholder proposals described under "Other Matters to be Considered at the JPMorgan Chase Annual Meeting — JPMorgan Chase Proposals 4–12: Stockholder Proposals."

If you return a properly executed proxy card or voting instruction card and have indicated that you have abstained from voting, your JPMorgan Chase common stock represented by the proxy will be considered present at the annual meeting for purposes of determining a quorum.

If your shares are held in an account at a broker or bank, you must instruct the broker or bank on how to vote your shares. If you do not provide voting instructions to your broker or bank, your shares will not be voted on any proposal on which your broker or bank does not have discretionary authority to vote. Under applicable New York Stock Exchange rules, your broker or bank does not have discretionary authority to vote on the merger proposal or any stockholder proposals at the JPMorgan Chase annual meeting. If an executed proxy card returned by a broker or bank holding shares indicates that the broker or bank does not have discretionary authority to vote on a particular matter, the shares will be considered present at the meeting for purposes of determining the presence of a quorum, but will not be voted with respect to that matter. This is called a broker non–vote. Your broker or bank will vote your shares only if you

provide instructions on how to vote by following the instructions provided to you by your broker or bank. If you hold shares through a JPMorgan Chase 401(k) plan or other stock ownership plan, your shares in these plans may be voted even if you do not instruct the trustee how to vote, as explained in your voting instruction card or plan description.

**Because approval of the merger requires the affirmative vote of a majority of the outstanding shares of JPMorgan Chase common stock, abstentions, failures to vote and broker non-votes will have the same effect as votes against the merger. Accordingly, we urge you to mark each applicable box on the proxy card or voting instruction card to indicate how to vote your shares.**

JPMorgan Chase does not expect that any matter or proposal other than the proposals described in this document will be brought before its annual meeting. If, however, other matters are properly presented, the persons named as proxies will vote in accordance with their judgment with respect to those matters. The persons named as proxies may vote for one or more adjournments of the JPMorgan Chase annual meeting to permit further solicitations in favor of the proposals to be submitted at the meeting. However, proxies that indicate a vote against adoption of the merger agreement will not be voted in favor of any adjournment to solicit additional proxies to adopt the merger agreement.

If you are a JPMorgan Chase stockholder of record, you may revoke your proxy at any time before it is voted by:

• filing a written notice of revocation with the Secretary of JPMorgan Chase, 270 Park Avenue, New York, NY 10017;

• granting a subsequently dated proxy; or

• appearing in person and voting at the JPMorgan Chase annual meeting if you are a holder of record.
If you hold your shares of JPMorgan Chase common stock through an account at a broker or bank, you should contact your broker or bank to change your vote.

Attendance at the annual meeting will not in and of itself constitute revocation of a proxy. If the annual meeting is postponed or adjourned, it will not affect the ability of stockholders of record as of the record date to exercise their voting rights or to revoke any previously-granted proxy using the methods described above.

**Voting Electronically or by Telephone**

JPMorgan Chase stockholders of record and many stockholders who hold their shares through a broker or bank will have the option to submit their proxy cards or voting instruction cards electronically through the Internet or by telephone. Please note that there are separate arrangements for using the Internet and telephone depending on whether your shares are registered in JPMorgan Chase's stock records in your name or in the name of a broker, bank or other holder of record. If you hold your shares through a broker, bank or other holder of record, you should check your proxy card or voting instruction card forwarded by your broker, bank or other holder of record to see which options are available.

JPMorgan Chase stockholders of record may submit their proxies:

• through the Internet by visiting a website established for that purpose at http://[                ] and following the instructions; or

• by telephone by calling the toll-free number [                ] in the United States, Puerto Rico or Canada on a touch-tone phone and following the recorded instructions; stockholders calling from another country may call [                ]

26

**Solicitation of Proxies**

JPMorgan Chase and Bank One will share equally the expenses incurred in connection with the printing and mailing of this document. To assist in the solicitation of proxies, JPMorgan Chase has retained [                    ], for a fee of $[            ] plus expenses for their services. JPMorgan Chase and its proxy solicitor will also request banks, brokers and other intermediaries holding shares of JPMorgan Chase common stock beneficially owned by others to send this document to, and obtain proxies from, the beneficial owners and will, if requested, reimburse the record holders for their reasonable out–of–pocket expenses in so doing. Solicitation of proxies by mail may be supplemented by telephone and other electronic means, advertisements and personal solicitation by the directors, officers or employees of JPMorgan Chase. No additional compensation will be paid to our directors, officers or employees for solicitation.

You should not send in any JPMorgan Chase stock certificates with your proxy card or voting instruction card. JPMorgan Chase stockholders should retain their stock certificates and will not need to surrender them for exchange.

## THE BANK ONE ANNUAL MEETING

**Date, Time and Place of the Annual Meeting**

This document is being furnished to you in connection with the solicitation of proxies by Bank One in connection with Bank One's 2004 annual meeting of stockholders. The Bank One annual meeting is scheduled to be held as follows:

[                    ], 2004

[                    ], Chicago time
Auditorium
Bank One Corporation
1 Bank One Plaza
Chicago, Illinois 60670

**Purpose of the Annual Meeting**

At the Bank One annual meeting, Bank One's stockholders will be asked to consider and vote upon the following proposals:

• the proposal to adopt the merger agreement (Bank One Proposal 1);

• the proposal to elect directors (Bank One Proposal 2);

• the proposal to ratify the appointment of KPMG LLP as Bank One's independent auditor (Bank One Proposal 3); and

• any other matters that may be properly brought before the meeting.

**Record Date for the Annual Meeting**

The board of directors of Bank One has fixed the close of business on [                    ], 2004 as the record date for determination of stockholders entitled to notice of and to vote at the annual meeting of stockholders. On the record date, there were [                    ] shares of Bank One common stock outstanding, held by approximately [                    ] holders of record.

27

**Votes Required**

A majority of the shares of Bank One common stock outstanding on the record date must be present, either in person or by proxy, to constitute a quorum at the Bank One annual meeting. The proposals require different percentages of votes in order to approve them:

- The affirmative vote of the holders of a majority of the shares of Bank One common stock outstanding on the record date is required to adopt the merger agreement.

- The affirmative vote of a plurality of the votes cast at the annual meeting is required to approve the election of each director nominee.

- The affirmative vote of a majority of the shares of Bank One common stock represented at the annual meeting and entitled to vote is required to ratify the appointment of the independent auditor.

At the Bank One annual meeting, each share of Bank One common stock is entitled to one vote on all matters properly submitted to the Bank One stockholders.

As of the record date, Bank One directors and executive officers and their affiliates owned and were entitled to vote approximately [                    ] shares of Bank One common stock, representing approximately 1.25% of the outstanding shares of Bank One common stock. We currently expect that Bank One's directors and executive officers will vote their shares in favor of the merger, although none of them has entered into any agreements obligating them to do so.

**Attending the Annual Meeting**

If you are a holder of record of Bank One common stock and plan to attend the Bank One annual meeting, please indicate this on your proxy card when you vote. The lower portion of the proxy card is your admission ticket. When you arrive at the Bank One annual meeting, you will be asked to present photo identification, such as a driver's license. If you are a beneficial owner of Bank One common stock held by a broker, bank, or other nominee, you will need proof of ownership to be admitted to the meeting. A recent brokerage statement or a letter from a bank or broker are examples of proof of ownership. If you want to vote your Bank One common stock held in nominee name in person, you must get a written proxy in your name from the broker, bank, or other nominee that holds your shares.

The Bank One Auditorium, in which the annual meeting will be held, offers access for people using wheelchairs and headsets for the hearing–impaired. Stockholders who wish to arrange for either of these services are invited to call [                    ] by [                    ].

**Proxies**

All shares of Bank One common stock represented by properly executed proxy cards or voting instruction cards (including those given through electronic voting through the Internet or by telephone) received before or at the annual meeting will, unless revoked, be voted in accordance with the instructions indicated on those proxy cards or voting instruction cards. If no instructions are indicated on a properly executed proxy card, the shares will be voted:

- FOR adoption of the merger agreement as presented in Bank One Proposal 1;

- FOR election of all nominees for directors presented in Bank One Proposal 2; and

- FOR ratification of the appointment of KPMG LLP as Bank One's independent auditor for 2004 as presented in Bank One Proposal 3.

If you return a properly executed proxy card or voting instruction card and have indicated that you have abstained from voting, your Bank One common stock represented by the proxy will be considered present at the annual meeting for purposes of determining a quorum.

28

If your shares are held in an account at a broker or bank, you must instruct the broker or bank on how to vote your shares. If an executed proxy card or voting instruction card returned by a broker or bank holding shares indicates that the broker or bank does not have discretionary authority to vote on a particular matter, the shares will be considered present at the meeting for purposes of determining the presence of a quorum, but will not be voted with respect to that matter. This is called a broker non–vote. Your broker or bank will vote your shares only if you provide instructions on how to vote by following the instructions provided to you by your broker or bank. If you hold shares through a Bank One 401(k) plan or other stock ownership plan, your shares in these plans may be voted even if you do not instruct the trustee how to vote, as explained in your voting instruction card or plan description.

**Because approval of the merger requires the affirmative vote of a majority of the outstanding shares of Bank One common stock, abstentions, failures to vote and broker non–votes will have the same effect as a vote against the merger. We urge you to mark each applicable box on the proxy card or voting instruction card to indicate how to vote your shares.**

Bank One does not expect that any matter or proposal other than the proposals described in this document will be brought before its annual meeting. If, however, other matters are properly presented, the persons named as proxies will vote in accordance with their judgment with respect to those matters.

If you are a Bank One stockholder of record, you may revoke your proxy at any time before it is voted by:

• filing a written notice of revocation with the Secretary of Bank One, Bank One Corporation, 1 Bank One Plaza, Mail Code IL1–0276, Chicago, IL 60670–0276;

• granting a subsequently dated proxy; or

• appearing in person and voting at the Bank One annual meeting if you are a holder of record.
If you hold your shares of Bank One common stock through an account at a broker or bank, you should contact your broker or bank to change your vote.

Attendance at the Bank One annual meeting will not in and of itself constitute revocation of a proxy. If the annual meeting is postponed or adjourned, it will not affect the ability of stockholders of record as of the record date to exercise their voting rights or to revoke any previously–granted proxy using the methods described above.

## Voting Electronically or by Telephone

Bank One stockholders of record and most stockholders who hold their shares through a broker or bank will have the option to submit their proxies or voting instruction cards electronically through the Internet or by telephone. Please note that there are separate arrangements for using the Internet and telephone depending on whether your shares are registered in Bank One's stock records in your name or in the name of a broker, bank or other holder of record. If you hold your shares through a broker, bank or other holder of record, you should check your proxy card or voting instruction card forwarded by your broker, bank or other holder of record to see which options are available.

Bank One stockholders of record may submit their proxies:

• through the Internet by visiting a website established for that purpose at http://[                    ] and following the instructions; or

29

• by telephone by calling the toll–free number [                    ] in the United States, Puerto Rico or Canada on a touch–tone phone and following the recorded instructions; stockholders calling from another country may call [                    ].

**Solicitation of Proxies**

JPMorgan Chase and Bank One will share equally the expenses incurred in connection with the printing and mailing of this document. To assist in the solicitation of proxies, Bank One has retained [                    ], for a fee of $[                    ] plus expenses for their services. Bank One and its proxy solicitor will also request banks, brokers and other intermediaries holding shares of Bank One common stock beneficially owned by others to send this document to, and obtain proxies from, the beneficial owners and will, if requested, reimburse the record holders for their reasonable out–of–pocket expenses in so doing. Solicitation of proxies by mail may be supplemented by telephone and other electronic means, advertisements and personal solicitation by the directors, officers or employees of Bank One. No additional compensation will be paid to our directors, officers or employees for solicitation.

You should not send in any Bank One stock certificates with your proxy card or voting instruction card. The exchange agent for the combined company will mail a transmittal letter with instructions for the surrender of stock certificates to Bank One stockholders as soon as practicable after completion of the merger.

30

JPMORGAN CHASE PROPOSAL 1 AND BANK ONE PROPOSAL 1:

## THE MERGER

*This section of the document describes material aspects of the proposed merger, including the merger agreement and the stock option agreements. This summary may not contain all of the information that is important to you. You should carefully read this entire document and the other documents we refer you to for a more complete understanding of the merger. In addition, we incorporate important business and financial information about each of us into this document by reference. You may obtain the information incorporated by reference into this document without charge by following the instructions in the section entitled "Where You Can Find More Information" beginning on page 165.*

**Effect of the Merger; What Bank One Stockholders Will Receive in the Merger; Increase in Common Stock**

Upon completion of the merger, Bank One will merge with and into JPMorgan Chase, with JPMorgan Chase as the surviving corporation in the merger.

In the merger, each outstanding share of Bank One common stock will be converted into 1.32 shares of common stock of JPMorgan Chase. No fractional shares will be issued, and cash will be paid instead of fractional shares. The exchange ratio is fixed and will not be adjusted to reflect stock price changes prior to the date of the merger.

As part of the merger, JPMorgan Chase's authorized common stock will be increased from 4,500,000,000 to 9,000,000,000 shares. This increase will be automatically reflected in an amendment to JPMorgan Chase's certificate of incorporation to be adopted as part of the certificate of merger only if and when the merger is completed. Without an increase, JPMorgan Chase would not have sufficient unissued and unreserved shares to issue and reserve for issuance the shares of common stock required to be issued and reserved for issuance under the merger agreement, the stock option agreement issued by JPMorgan Chase to Bank One, and under JPMorgan's and Bank One's equity plans. The number of additional shares to be authorized as part of the merger was determined based on the existing number of authorized shares of JPMorgan Chase common stock plus the existing number of authorized shares of Bank One common stock multiplied by 1.32 (to take into account the exchange ratio), which totals 9,780,000,000; historical issuance patterns; the desire for flexibility to effect any stock splits in the future based on market conditions; and a comparison of the ratio of outstanding shares to authorized shares among other public companies deemed comparable for purposes of this analysis.

**Background of the Merger**

The board of directors and senior management of JPMorgan Chase have regularly discussed JPMorgan Chase's business and strategic direction in the context of competitive developments, including the long–term trend of consolidation in the financial services industry, and have considered ways to enhance JPMorgan Chase's competitive position. Over the past decade, JPMorgan Chase has, through a combination of strategic acquisitions and internal growth, significantly expanded its domestic and global presence and client base. During the latter part of that decade, it focused on broadening its wholesale and investment banking businesses to create one of the world's leading global wholesale financial services franchises.

In more recent years, JPMorgan Chase's management and board have discussed possible ways of reducing the volatility of JPMorgan Chase's earnings by increasing revenues from retail financial services and broadening JPMorgan Chase's retail client base. JPMorgan Chase's management and board have considered acquisitions and strategic combinations with a variety of financial institutions and the potential benefits and risks of those transactions. A potential

31

business combination with Bank One appeared to offer a superior strategic fit, complementary business strengths, competitive positions and prospects and compatible senior management strengths.

The Bank One board of directors has also regularly discussed the state of Bank One's business and strategic direction and objectives and its performance and prospects in the context of competitive developments in the financial services industry, and has considered ways to enhance Bank One's competitive position in light of continuing industry trends, including the long-term trend of consolidation. The Bank One board of directors has also discussed with senior management various potential strategic alternatives, including some involving possible acquisitions, dispositions and strategic business combinations with a variety of financial institutions along with the potential benefits and risks of those transactions.

William B. Harrison, Jr., Chairman and Chief Executive Officer of JPMorgan Chase, and James Dimon, Chairman and Chief Executive Officer of Bank One, have known each other for many years. From time to time they have had informal discussions about their respective institutions and trends in the financial services industry, including the increasing need for scale and diverse revenue bases.

During November 2003, Mr. Harrison and Mr. Dimon had several discussions concerning the possibility of more seriously considering the merits of a business combination between JPMorgan Chase and Bank One. During these conversations, Messrs. Harrison and Dimon preliminarily discussed the possible structure of such a transaction. Based on these discussions, Messrs. Harrison and Dimon concluded that a transaction between the two companies could offer strategic benefits to the companies and their stockholders and that further discussions could be productive. Mr. Dimon and Mr. Harrison periodically updated members of their respective boards of directors about these contacts. At a meeting of the JPMorgan Chase board of directors on November 18, 2003, Mr. Harrison briefed the board on his discussions with Mr. Dimon and was authorized to continue discussions regarding a possible business combination with Bank One. Mr. Dimon, based on his conversations with members of the Bank One board of directors, likewise was encouraged to continue discussions regarding a possible business combination with JPMorgan Chase. In November 2003, each party retained legal and financial advisors in the event that discussions about a possible transaction progressed further.

Discussions between Messrs. Harrison and Dimon continued in late November and into December. In addition, in December meetings commenced between the parties' respective financial advisers. During these discussions, the parties began considering in more detail the potential financial and other terms and conditions of such a transaction, and concluded that the contemplated merger would be for stock consideration based on a fixed exchange ratio. The parties also began exchanging information regarding each company's businesses, structure and management teams. Each of Mr. Harrison and Mr. Dimon continued to brief members of their respective boards of directors in early and mid-December and updated their respective boards regarding the status of discussions at board meetings in mid-December. At these meetings, the boards endorsed continued discussions.

The chief financial officers of each company met in late December 2003 to hold additional discussions regarding a possible business combination. In connection with the ongoing discussions, Bank One and JPMorgan Chase entered into a confidentiality agreement on December 23, 2003. Messrs. Dimon and Harrison also continued to discuss the possible key terms of a transaction, including possible financial terms and a framework for the combined company's board of directors and senior management.

In early January 2004, senior management of JPMorgan Chase and Bank One authorized their respective legal and financial advisors to discuss possible timeframes for a transaction and arrangements to facilitate broader mutual due diligence and negotiations between the parties regarding a possible transaction.

32

The parties and their legal and financial advisors met in New York City beginning on January 8, 2004, to undertake mutual confidential due diligence and management discussions and to organize a broader series of due diligence sessions, while counsel for the parties commenced discussions regarding the legal documentation for the transaction. Due diligence continued over the course of the next several days as the parties and their counsel continued to negotiate the terms of the definitive merger agreement and other related agreements, as well as terms of post–closing employment arrangements with Mr. Dimon and with several other key Bank One executives.

A special meeting of the board of directors of JPMorgan Chase was held on January 11, 2004, and special meetings of the board of directors of Bank One were held on both January 8 and 12, 2004. At these special meetings, the board of each company and their respective senior management and legal counsel reviewed and discussed strategic considerations relating to the transaction, the status of discussions regarding the terms of the proposed merger and governance arrangements and the status of each company's due diligence review of the other. In addition, each company's financial advisors presented financial information to their respective boards regarding the potential transaction. Following the completion of these meetings, negotiations between the parties and their respective counsel continued, and the parties continued their reviews of information obtained during due diligence. At a special meeting of the Bank One compensation committee on January 13, 2004, members of the committee reviewed the terms of the proposed employment agreement with Mr. Dimon and proposed severance and other senior management arrangements described under "— Interests of Directors and Executive Officers in the Merger" below. Mr. Dimon and members of senior management of Bank One discussed various aspects of the proposed transaction with individual members of the Bank One board of directors on January 13, 2004.

During the morning of Wednesday, January 14, 2004, the JPMorgan Chase board of directors held a special meeting to consider the proposed transaction, which was also attended by members of JPMorgan Chase's senior management and JPMorgan Chase's financial and legal advisors. At this meeting, JPMorgan Chase's senior management reviewed with the board of directors strategic considerations relating to the transaction and the progress of the negotiations regarding the terms of the transaction and apprised the board of the results of its due diligence review of Bank One. In addition, JPMorgan Chase's legal advisors discussed with the board of directors the legal standards applicable to its decisions with respect to the proposed transaction, reviewed the legal terms of the proposed definitive merger agreement and stock option agreements, and responded to questions from directors. JPMorgan Chase's Director of Human Resources also summarized for the board the terms of the proposed employment agreement with Mr. Dimon and the proposed severance and other senior management arrangements described under "— Interests of Directors and Executive Officers in the Merger" below. JPMorgan Chase's financial advisor, JPMorgan Securities, presented a summary of its financial analyses relating to the proposed merger, responded to questions posed by directors and, at the conclusion of its presentation, noted that it would be prepared to deliver its opinion that the proposed exchange ratio in the merger was fair to JPMorgan Chase from a financial point of view. During the January 11 and January 14 meetings, the JPMorgan Chase board discussed the proposed transaction and related agreements and asked questions of JPMorgan Chase's senior management and JPMorgan Chase's legal and financial advisors. At the conclusion of the various presentations on January 14 and after further discussion, the directors determined to adjourn the meeting in order to provide management and JPMorgan Chase's legal advisors with the opportunity to finalize details of the merger agreement and related matters with Bank One and to reconvene later that day to formally consider approval of the merger agreement.

In the afternoon of Wednesday, January 14, 2004, the Bank One board of directors held a special meeting to consider the proposed transaction, which was also attended by members of

33

Bank One's senior management and Bank One's outside legal and financial advisors. At this meeting, Bank One senior management reviewed with the board of directors strategic considerations relating to the transaction and the progress of the negotiations regarding the terms of the transaction and apprised the board of the results of its due diligence review of JPMorgan Chase. Lazard reviewed its financial analyses relating to the proposed merger, responded to questions posed by directors, and rendered to the Bank One board of directors its opinion that, as of that date and based on and subject to the considerations in its opinion, the proposed exchange ratio was fair, from a financial point of view, to holders of Bank One common stock. Bank One's legal advisors discussed with the board of directors the legal standards applicable to its decisions with respect to the proposed transaction, reviewed the legal terms of the proposed definitive merger agreement, proposed stock option agreements and proposed employment arrangements, and responded to questions from directors. During these discussions, the Bank One board discussed the proposed transaction and related agreements and asked questions of Bank One senior management and Bank One's legal and financial advisors. Following further review and discussion among the members of the Bank One board of directors, the board of directors voted unanimously to approve the merger and merger agreement with JPMorgan Chase and the related agreements and the transactions contemplated by those agreements, and resolved to recommend that its stockholders vote to adopt the merger agreement.

In the late afternoon of January 14, 2004, the JPMorgan Chase board of directors, with one director absent, reconvened its meeting. JPMorgan Chase's senior management and JPMorgan Chase's legal and financial advisors provided updates regarding the final terms of the proposed merger agreement and related agreements. JPMorgan Securities delivered its opinion that, as of that date and based on and subject to the considerations in its opinion, the exchange ratio in the merger was fair, from a financial point of view, to JPMorgan Chase. Following deliberations, the JPMorgan Chase board of directors, by unanimous vote of all directors present, and having been advised that the absent director concurred in the decision, approved the merger agreement and the related agreements and the transactions contemplated by those agreements, and resolved to recommend that its stockholders vote to adopt the merger agreement.

Shortly following approval of each board of directors, the parties executed the merger agreement and related agreements. The parties announced the transaction via a joint press release issued in the early evening of January 14, 2004.

## JPMorgan Chase's Reasons for the Merger; Recommendation of the Merger by the JPMorgan Chase Board of Directors

*Strategic Considerations.* JPMorgan Chase's board believes that the merger will provide a number of significant strategic opportunities and benefits, including the following:

- *Enhanced Positions in Retail Financial Services*

    - On a pro forma basis, the combined company will rank second in the United States in terms of total assets as of September 30, 2003, fourth in terms of number of branches as of June 30, 2003 and will have the highest market share position in some of the most important U.S. banking markets, including New York, Chicago, Houston and Dallas.

    - The merger will strengthen JPMorgan Chase's leadership positions in a number of national consumer credit businesses. The combined company will be the second largest U.S. credit card issuer based on amounts outstanding as of June 30, 2003, the largest non-captive provider of auto financing, the fourth largest originator and servicer of mortgage loans and the second largest provider of home equity lines of credit.

34

- *More Balanced Business Mix and Greater Geographic Diversification*

  - The businesses of the combined company following the merger will be more evenly balanced between retail and institutional financial services. JPMorgan Chase's board noted that approximately 39% of its pre–tax income came from retail businesses during the first nine months of 2003, compared to approximately 54% for the combined company on a pro forma basis. The JPMorgan Chase board believes that this kind of balance between retail and institutional financial services will reduce the volatility of the combined company's earnings compared to JPMorgan Chase on its own.

  - The merger will also result in greater geographic diversity of the retail customer base. The combined company will have approximately 2,300 branches in 17 states compared to JPMorgan Chase's existing network of 514 branches in 4 states.

- *Enhanced Opportunities for Wholesale and Other Financial Services Businesses*

  - JPMorgan Chase's board also believes that the combined company will benefit from the ability to sell its wholesale financial services to a larger combined client base. The board noted that Bank One's middle–market client base of approximately 20,000 customers will provide a promising new market for JPMorgan Chase's financial advisory, investment banking, cash management and securities processing services.

  - JPMorgan Chase's board also noted that the combined company will have strong investment management and private banking operations, with over $700 billion in assets under active management, a mutual fund family with over $200 billion in assets under management, $300 billion of assets in the private bank, and the leading position in U.S. private banking.

  - In addition, the combined company will retain and strengthen its leadership positions in key corporate and investment banking businesses and will have leading positions in a number of treasury and securities services businesses, including the top ranking, based on Thompson Financial Securities Data as of September 30, 2003, in U.S. dollar clearing; U.S. corporate trust services; and CHIPs, Fedwire and ACH origination.

- *Expected Financial Synergies*

  - JPMorgan Chase's board considered management's estimate of annual pre–tax cost savings of approximately $2.2 billion from the merger. Savings are expected to come primarily from eliminating duplicative technology and operations functions, and from facility consolidations and staffing reductions, and are expected to be phased in over three years following completion of the merger. Management's estimates were based on their review of the business and operations of JPMorgan Chase and Bank One, including an assessment of the two companies' computer systems, personnel, premises and service contracts to determine where redundancies exist, and their experience in managing business integrations in prior mergers.

  - JPMorgan Chase's board noted that, while management's forecasted synergies did not include any revenue enhancements, management believes the merger will create opportunities for incremental revenues from, among other things, cross-marketing of an expanded range of products and services.

  - Applying the potential cost savings and other assumptions (including assumed amortization of intangibles and repurchases of $3.5 billion of stock in both 2004 and 2005, but excluding estimated merger and restructuring costs) would result in earnings per share accretion to Institutional Brokers Estimate System, or I/B/E/S, earnings per share estimates for 2005 for JPMorgan Chase stockholders of 1% on a GAAP basis and 5.6% on a cash basis (assuming full realization of anticipated annual

35

cost savings in 2005) Assuming 65% realization of anticipated cost savings in 2005, the merger would be dilutive to those GAAP earnings per share estimates by 3 2% but accretive to cash earnings per share estimates by 1 5% Cash earnings are GAAP earnings per share plus the amortization of certain identifiable intangibles, such as the after–tax amount of core deposit intangibles amortization and purchased credit card relationships amortization Due to the potential for significant variation of such amortization across financial services companies, cash earnings can provide investors with the ability to make consistent and meaningful comparisons with other financial services firms.

*Other Factors Considered by the JPMorgan Chase Board.* In addition to considering the strategic and financial factors outlined above, the JPMorgan Chase board considered the following additional factors, all of which it viewed as supporting its decision to approve the merger:

- historical information concerning JPMorgan Chase's and Bank One's respective businesses, financial performance and condition, operations, management, competitive positions and stock performance, which comparisons generally informed the board's determination as to the relative values of JPMorgan Chase, Bank One and the combined company;

- the results of the due diligence review of Bank One's businesses and operations;

- management's assessment that the proposed merger was likely to meet each of the criteria they deemed necessary for a successful merger — strategic fit, acceptable execution risk, and financial benefits to JPMorgan Chase and JPMorgan Chase's stockholders;

- the current and prospective competitive environment in which financial institutions such as JPMorgan Chase operate, including the continuing consolidation in the financial services industry and the likely effect of that competitive environment on JPMorgan Chase in light of, and in the absence of, the proposed merger;

- the alternatives reasonably available to JPMorgan Chase if it did not pursue the merger with Bank One, including the possibility of pursuing an acquisition of or merger with another financial institution, and the conclusion that no other reasonably available alternative or prospective merger partner would yield greater benefits for JPMorgan Chase and its stockholders than the merger with Bank One;

- the possible risk of loss of current merger opportunities if JPMorgan Chase were to delay consideration of a transaction;

- the financial analyses and presentations of JPMorgan Chase's financial advisor and its opinion that the exchange ratio was fair, from a financial point of view, to JPMorgan Chase (see "— Opinions of Financial Advisors — Opinion of JPMorgan Chase's Financial Advisor" below);

- the terms and conditions of the merger agreement and the stock option agreements, including the fact that the merger agreement is not subject to termination, regardless of any change in the trading prices of either company's stock between signing of the merger agreement and closing;

- the fact that the exchange ratio represented a premium of 8% based on the average closing prices of JPMorgan Chase and Bank One common stock during the one month prior to announcement of the merger and a premium of 14% over the closing price of Bank One common stock on the date of announcement of the merger;

36

- the determination that an exchange ratio that is fixed and not subject to adjustment is appropriate to reflect the strategic purpose of the merger and consistent with market practice for mergers of this type and that a fixed exchange ratio fairly captures the respective ownership interests of the JPMorgan Chase and Bank One stockholders based on fundamental valuation assessments and avoids fluctuations caused by near–term market volatility;

- the corporate governance provisions established for the transaction, including the post–merger board composition, the Chief Executive Officer succession arrangements, the employment agreement with Mr. Dimon and the designation of key senior management of the combined company, which the JPMorgan Chase board considered to be of significant importance in assuring certainty with respect to Chief Executive Officer succession, continuity of senior management and an effective and timely integration of the two companies' operations;

- the provisions of the merger agreement and stock option agreements designed to restrict the ability of the parties to entertain third party acquisition proposals, and the provisions of the merger agreement providing for the payment of termination fees in certain events; the JPMorgan Chase board concluded that those provisions were appropriate and reasonable means to increase the likelihood that the transaction will be completed;

- the likelihood that the merger will be completed on a timely basis, including the likelihood that the merger will receive all necessary regulatory approvals without unacceptable conditions; and

- JPMorgan Chase management's experience in implementing previous strategic merger transactions.

JPMorgan Chase's board of directors also considered the potential risks of the merger and potential conflicts of interest, including the following:

- the challenges of combining the operations of two major financial services businesses;

- the risk that anticipated cost savings will not be achieved;

- the estimated $3 billion (pre–tax) in costs expected to be incurred to combine the operations of JPMorgan Chase and Bank One;

- the potential dilution to JPMorgan Chase's stockholders if the forecast cost savings are not achieved or the anticipated levels of excess capital (which in turn support the planned post–merger share repurchases; see "Summary — Dividend Policy and Anticipated Share Repurchases" on page 5) are not generated;

- the potential conflicts of interest of certain JPMorgan Chase officers and directors in connection with the merger (see "— Interests of Directors and Executive Officers in the Merger" below); and

- the risk of diverting management's attention from other strategic priorities to implement merger integration efforts.

JPMorgan Chase's board of directors took into account the allocation of eight of sixteen (or 50%) of the seats on the board of the combined company to Bank One directors, which is greater than the pro forma percentage ownership of the combined company by Bank One common shareholders (approximately 42%) and the percentage contributions of Bank One to the combined company based on various financial metrics, including tangible equity (approximately 37%) and estimated 2004 GAAP net income based on Institutional Brokers Estimate System, or I/B/E/S, estimates (approximately 37%). JPMorgan Chase's board understood that board participation at this level was a condition to the willingness of Bank One to enter into the merger

37

agreement and deemed it appropriate given the strategic importance of the transaction to JPMorgan Chase.

In view of the wide variety of factors considered in connection with its evaluation of the merger and the complexity of these matters, the JPMorgan Chase board did not find it useful, and did not attempt, to quantify, rank or otherwise assign relative weights to these factors. In considering the factors described above, individual members of the JPMorgan Chase board may have given different weight to different factors. The JPMorgan Chase board conducted an overall analysis of the factors described above, including thorough discussions with, and questioning of, JPMorgan Chase's management and JPMorgan Chase's legal and financial advisors, and considered the factors overall to be favorable to, and to support, its determination. The JPMorgan Chase board also relied on the experience and expertise of JPMorgan Securities, its financial advisor, for quantitative analyses of the financial terms of the merger. See "— Opinions of Financial Advisors — Opinion of JPMorgan Chase's Financial Advisor" below.

*The JPMorgan Chase board of directors unanimously determined that the merger, the merger agreement and the transactions contemplated by the merger agreement are advisable and in the best interests of JPMorgan Chase and its stockholders and unanimously approved the merger agreement. The JPMorgan Chase board unanimously recommends that JPMorgan Chase stockholders vote "FOR" adoption of the merger agreement.*

### Bank One's Reasons for the Merger; Recommendation of the Merger by the Bank One Board of Directors

The Bank One board of directors consulted with Bank One management as well as financial and legal advisors and unanimously determined that the merger and the related transactions are advisable and in the best interests of Bank One and Bank One's stockholders. In reaching its conclusion to approve the merger and the related transactions and to recommend that the stockholders of Bank One adopt the merger agreement, the Bank One board considered the following factors as generally supporting its decision to enter into the merger agreement and related agreements:

- its understanding of Bank One's businesses, operations, financial condition, earnings and prospects and of JPMorgan Chase's businesses, operations, financial condition, earnings and prospects (including the report of Bank One management of the results of Bank One's due diligence review of JPMorgan Chase);

- its understanding of the current and prospective economy and market and industry environment in which Bank One and JPMorgan Chase operate, including global, national and local economic conditions, the competitive landscape for financial institutions generally, the trend toward consolidation in the financial services industry, and the likely effect of these factors on Bank One in light of, and in absence of, the proposed transaction;

- the reports of Bank One management and the financial presentation by Lazard to Bank One's board of directors concerning the business, operations, financial condition, earnings and prospects of JPMorgan Chase and the expected financial impact of the merger on the combined company, including pro forma assets, earnings, deposits and regulatory capital ratios;

- the value of the exchange ratio provided for in the merger agreement relative to the current and historical trading prices of the common stock of each of Bank One and JPMorgan Chase and relative to the analyses prepared by Lazard of comparative valuations for JPMorgan Chase and Bank One and the contributions that each company would make to the combined company in terms of earnings, assets, deposits and other key measures;

38

- the opinion delivered to the Bank One board of directors by Lazard to the effect that, as of the date of the opinion and based upon and subject to the considerations in its opinion, the exchange ratio was fair from a financial point of view to the holders of shares of Bank One common stock;

- the scale, scope, strength and diversity of operations, product lines and delivery systems that could be achieved by combining Bank One and JPMorgan Chase, and its expectation that a combination would solidify and enhance market leadership in retail financial services, as measured by such key indicators as credit card issuances, core deposits, and retail branches;

- JPMorgan Chase's market leadership in wholesale financial services, and the board's understanding of the opportunities, risks and character of JPMorgan Chase's business mix relative to Bank One's;

- the complementary nature of the respective customer bases, business products and skills of Bank One and JPMorgan Chase, which could be expected to result in opportunities to obtain synergies as products are cross–marketed and distributed over broader customer bases and best practices are compared and applied across businesses;

- the fact that Bank One's and JPMorgan Chase's branch franchises operate principally in different geographic markets, with the exception of Texas, and the prospect of combined branch operations reaching nearly 50% of the U.S population, including a significant concentration in important urban areas;

- the potential cost saving opportunities, currently estimated to be approximately $2.2 billion pre–tax annually when fully phased–in, and the related potential impact on the combined company's earnings;

- the review by the Bank One board of directors with Bank One's legal and financial advisors of the structure of the merger and the financial and other terms of the merger agreement, including the exchange ratio, the expectation of Bank One's legal advisors that the merger will qualify as a transaction of a type that is generally tax–free to stockholders for U.S. federal income tax purposes and Bank One's ability under the merger agreement to increase the regular quarterly Bank One dividend after executing the merger agreement to a level approximately equivalent, on a pro forma per share basis adjusted for the exchange ratio, to the current regular quarterly JPMorgan Chase common dividend;

- the likelihood that the regulatory approvals needed to complete the transaction will be obtained without unacceptable conditions;

- the governance arrangements providing for equal representation on the board of directors of the combined company for appointees from each of Bank One and JPMorgan Chase after completion of the merger, and the agreement that the key leadership of the combined company after completion of the merger will be drawn from senior executives from each of Bank One and JPMorgan Chase;

- the arrangements providing for Mr. Harrison of JPMorgan Chase to serve as Chairman and Chief Executive Officer of the combined company and Mr. Dimon of Bank One to serve as President and Chief Operating Officer after the merger, and for Mr. Dimon to succeed as Chief Executive Officer on the second anniversary of the completion of the merger (or earlier if Mr. Harrison ceases for any reason to serve in the position of Chief Executive Officer), which the Bank One board considered to be of significant importance in assuring continuity of management and an effective and timely integration of the two companies' operations;

- the agreement of the parties as to the extent of the combined company's commitment to the Chicago metropolitan area, as reflected in the merger agreement; and

- the grant by each party to the other of an option to acquire stock exercisable under the circumstances and on the conditions described under "— Stock Option Agreements", together with the termination fee provisions of the merger agreement described under "— The Merger Agreement" below.

The Bank One board of directors also considered potential risks associated with the merger in connection with its deliberations of the proposed transaction, including:

- the challenges of integrating the businesses, operations and workforce of the two companies, both of which are large and complex financial institutions, and the risk that the anticipated cost savings and other expected synergies may not be achieved as and when planned;

- the pre–tax merger–related costs of $3 billion that are expected to be incurred by the combined company in connection with completing the merger, reflecting a number of costs and expenses expected to be incurred as a result of the transaction and the integration of the two companies;

- that the fixed exchange ratio, by its nature, would not adjust upwards to compensate for declines, or downwards to compensate for increases, in JPMorgan Chase's stock price prior to completion of the merger, and that the terms of the merger agreement did not include "collar" provisions or stock–price–based termination rights that would be triggered by a decrease in the value of the merger consideration implied by the JPMorgan Chase stock price;

- the interests of Bank One executive officers and directors with respect to the merger apart from their interests as holders of Bank One common stock, and the risk that these interests might influence their decision with respect to the merger. See "— Interests of Directors and Executive Officers in the Merger" below;

- the risk that the terms of the merger agreement, including provisions relating to the payment of a termination fee under specified circumstances, and the stock option granted to JPMorgan Chase in connection with the merger agreement, while required by JPMorgan Chase as a condition to its willingness to enter into the merger agreement, could have the effect of discouraging other parties that might be interested in a transaction with Bank One from proposing such a transaction; and

- the different earnings, business and litigation risk profile of JPMorgan Chase as compared to Bank One.

In view of the wide variety of factors considered in connection with its evaluation of the merger and the complexity of these matters, the Bank One board did not find it useful, and did not attempt, to quantify, rank or otherwise assign relative weights to these factors. In considering the factors described above, individual members of the Bank One board may have given different weight to different factors. The Bank One board conducted an overall analysis of the factors described above, including thorough discussions with, and questioning of, Bank One management and Bank One's legal and financial advisors, and considered the factors overall to be favorable to, and to support, its determination. The Bank One board also relied on the experience and expertise of Lazard, its financial advisor, for quantitative analyses of the financial terms of the merger. See "— Opinions of Financial Advisors — Opinion of Bank One's Financial Advisor" below.

*The Bank One board of directors unanimously determined that the merger, the merger agreement and the transactions contemplated by the merger agreement are advisable and in the best interests of Bank One and its stockholders and unanimously approved the merger agreement. The Bank One board unanimously recommends that Bank One stockholders vote "FOR" adoption of the merger agreement.*

40

**Opinions of Financial Advisors**

*Decision by JPMorgan Chase Board to Engage Affiliated Financial Advisor.* As a result of its affiliation with JPMorgan Chase, JPMorgan Securities may be deemed to have had potential conflicts of interest in performing its duties as financial advisor. JPMorgan Chase's board of directors considered this potential conflict of interest, as well as its responsibilities under applicable law, when making its decision to engage JPMorgan Securities. The board of JPMorgan Chase concluded that JPMorgan Securities was experienced and knowledgeable in financial advisory engagements of this size and complexity and that reliance upon its reports and opinions was appropriate and in the best interests of JPMorgan Chase and its stockholders. JPMorgan Chase noted that JPMorgan Securities ranked among the top five financial advisors in the world for global announced M&A advisory transactions during 2003. In addition, JPMorgan Chase also considered JPMorgan Securities' detailed knowledge of the parties based in part upon its involvement in the discussions and due diligence that led to the merger agreement. The board also was aware that in previous business combinations involving major financial institutions, including the merger of JPMorgan Chase's predecessor institutions, The Chase Manhattan Corporation and J.P. Morgan Co. Incorporated, one or both of the merging parties had relied on its affiliated investment bank as its financial advisor. In addition, under the laws of Delaware, which is the state in which JPMorgan Chase is incorporated, the board of directors of a company is not required to obtain a fairness opinion or an outside valuation report prior to approving a business combination as long as the directors have adequate information upon which a proper exercise of business judgment can be made. Delaware law also permits directors to rely upon information, opinions, reports and other statements presented by any of the company's officers or employees.

*Opinion of JPMorgan Chase's Financial Advisor.* At a meeting of the board of directors of JPMorgan Chase on January 14, 2004, JPMorgan Securities rendered its oral opinion to the board of directors of JPMorgan Chase that, as of that date and based upon and subject to the factors and assumptions set forth in its opinion, the exchange ratio in the proposed merger of 1.32 shares of JPMorgan Chase common stock for each share of Bank One common stock was fair, from a financial point of view, to JPMorgan Chase. JPMorgan Securities confirmed its oral opinion by delivering to the board of directors of JPMorgan Chase a written opinion dated January 14, 2004. JPMorgan Chase's board of directors did not limit the investigations made or the procedures followed by JPMorgan Securities in giving its oral or written opinion.

JPMorgan Securities' opinion is directed to the board of directors of JPMorgan Chase and addresses only the fairness, from a financial point of view, of the exchange ratio to JPMorgan Chase. JPMorgan Securities' opinion does not address any other aspect of the merger and does not constitute an opinion as to the underlying business decision by JPMorgan Chase to engage in the merger. Moreover, JPMorgan Securities has expressed no opinion as to the price at which JPMorgan Chase's or Bank One's common stock will trade at any future time. The summary of JPMorgan Securities' opinion set forth in this document is qualified in its entirety by reference to the full text of the written opinion attached to this document.

In arriving at its opinion, JPMorgan Securities, among other things:

• reviewed the merger agreement;

• reviewed certain publicly available business and financial information concerning JPMorgan Chase and Bank One and the industries in which they operate;

• compared the proposed financial terms of the merger with the publicly available financial terms of certain transactions involving companies that JPMorgan Securities deemed relevant and the consideration paid for those companies;

• compared the financial and operating performance of JPMorgan Chase and Bank One with publicly available information concerning certain other companies that JPMorgan Securities deemed relevant and reviewed the current and historical market prices of JPMorgan

41

Chase common stock and Bank One common stock and certain publicly traded securities of those other companies;

- reviewed certain internal financial analyses and forecasts prepared by the managements of JPMorgan Chase and Bank One relating to their respective businesses, as well as the estimated amount and timing of cost savings and related expenses expected to result from the merger; and

- performed such other financial studies and analyses, and reviewed and considered such other information, as JPMorgan Securities deemed appropriate for the purposes of its opinion.

JPMorgan Securities also held discussions with certain members of the managements of JPMorgan Chase and Bank One with respect to certain aspects of the merger, and the past and current business operations of JPMorgan Chase and Bank One, the historical financial condition and operations and future prospects of JPMorgan Chase and Bank One, the effects of the merger on the financial condition and future prospects of JPMorgan Chase, and other matters that JPMorgan Securities believed necessary or appropriate to its inquiry.

JPMorgan Securities relied upon and assumed, without independent verification, the accuracy and completeness of all information that was publicly available or that was furnished to it by JPMorgan Chase or Bank One or otherwise reviewed by JPMorgan Securities, and JPMorgan Securities has not assumed any responsibility or liability for that information. JPMorgan Securities is not an expert in the evaluation of loan and lease portfolios for purposes of assessing the adequacy of the allowances for losses with respect to them, and accordingly, JPMorgan Securities has assumed that such allowances for losses are in the aggregate adequate to cover such losses. JPMorgan Securities did not review individual credit files, and did not make any independent evaluation or appraisal of the assets or liabilities (including any derivative or off–balance sheet assets and liabilities) of JPMorgan Chase or Bank One or any of their respective subsidiaries, and JPMorgan Securities was not furnished with any such evaluations or appraisals. In relying on financial analyses and forecasts provided to it, JPMorgan Securities assumed that those analyses and forecasts were reasonably prepared based on assumptions reflecting the best currently available estimates and judgments by the managements of JPMorgan Chase and Bank One as to the expected future results of operations and financial condition of JPMorgan Chase and Bank One to which those analyses and forecasts relate. JPMorgan Securities also assumed that the merger will qualify as a tax–free reorganization for United States federal income tax purposes, and that the other transactions contemplated by the merger agreement will be consummated as described in the merger agreement. JPMorgan Securities relied as to all legal matters relevant to rendering its opinion upon the advice of counsel. JPMorgan Securities further assumed that all material governmental, regulatory or other consents and approvals necessary for the completion of the merger will be obtained without any adverse effect on JPMorgan Chase or Bank One or on the contemplated benefits of the merger.

JPMorgan Securities based its opinions on economic, market and other conditions as in effect on, and the information made available to JPMorgan Securities, as of the date of its opinion. Subsequent developments may affect its opinion, and its opinion will not reflect any developments that may occur or may have occurred after the date of its opinion and prior to the completion of the merger.

In accordance with customary investment banking practice, JPMorgan Securities employed generally accepted valuation methods in reaching its opinion. The following is a summary of the material financial analyses that JPMorgan Securities used in providing its opinion. We have presented some of the summaries of financial analyses in tabular format. In order to understand the financial analyses used by JPMorgan Securities more fully, you should read the tables together with the text of each summary. The tables alone do not constitute a complete description of JPMorgan Securities' financial analyses, including the methodologies and

assumptions underlying the analyses, and if viewed in isolation could create a misleading or incomplete view of the financial analyses performed by JPMorgan Securities.

*Implied Value and Multiple Analysis.* Based upon the exchange ratio of 1.32 and the $38.79 closing market price of JPMorgan Chase common stock on January 12, 2004 (the last practicable date when presentation materials were prepared and distributed to the JPMorgan Chase board), JPMorgan Securities calculated that the implied value of the merger consideration was $51.20 per share of Bank One common stock. This implied value represents approximately a 15% premium to $44.56 (the prior trading day's closing price per share of Bank One common stock on January 9, 2004) and approximately a 14% premium to $44.73 (the one–week average closing price per share of Bank One common stock). JPMorgan Securities also calculated that based on the exchange ratio of 1.32 and on JPMorgan Chase's number of fully diluted shares of common stock, Bank One stockholders would own on a pro forma basis approximately 42.2% of the combined company

JPMorgan Securities also determined the multiple of the implied offer price to I/B/E/S median estimated 2004 earnings per share of Bank One common stock as of January 12, 2004 and the stated and tangible book values per share of Bank One common stock as of September 30, 2003. I/ B/ E/ S is a database owned and operated by Thompson Financial, which contains estimated and actual earnings, cash flows, dividends and other data for U.S. and foreign markets. The results of this analysis are summarized as follows:

|  | Multiples |
|---|---|
| 2004E EPS | 15.3x |
| Book value per share | 2.6 |
| Tangible book value per share | 2.9 |

*Comparable Companies.* Using publicly available information, JPMorgan Securities compared selected financial and market data of JPMorgan Chase and Bank One with similar data for the following companies:

| Large Banks | Mid–Size Banks | Credit Cards |
|---|---|---|
| Bank of America Corporation | BB&T Corporation | MBNA Corporation |
| Citigroup Inc. | Fifth Third Bancorp | |
| U.S. Bancorp | The PNC Financial Services Group. Inc. | |
| Wachovia Corporation | KeyCorp | |
| Wells Fargo & Company | National City Corporation | |
| | SunTrust Banks, Inc. | |

JPMorgan Securities calculated and compared various financial multiples and ratios based on publicly available financial data as of September 30, 2003, information it obtained from filings with the Securities and Exchange Commission and I/B/E/S estimates. The multiples and ratios of JPMorgan Chase and Bank One were calculated using the closing price of JPMorgan Chase common stock and Bank One common stock, respectively, as of January 12, 2004. The multiples and ratios for each of the selected companies were based on the most recent publicly available information. With respect to the selected companies, JPMorgan Securities calculated:

• the price as a percentage of the selected company's 52–week high,

• the multiple of price to 2003 and 2004 I/B/E/S median estimated earnings per share,

• the multiple of price to stated book value and tangible book value per share,

• premium to core deposits,

• ratio of tangible common equity to tangible assets (TCE/TA),

43

• rate of return on average equity (ROAE), and

• consensus long-term growth.
The results of this analysis are set forth below:

| | Large Banks | | Mid-Sized Banks | | Credit Cards | Bank One | JPMorgan Chase |
|---|---|---|---|---|---|---|---|
| | Range | Median | Range | Median | | | |
| % of 52-week high | 93%–100% | 98% | 94%–99% | 96% | 97% | 97% | 99% |
| 2003E EPS | 11.1x–15.6x | 14.0x | 10.7x–19.6x | 13.9x | 14.5x | 14.7x | 12.4x |
| 2004E EPS | 11.1x–13.9x | 12.7x | 11.3x–17.4x | 13.0x | 12.9x | 13.3x | 12.3x |
| Book value | 1.6x–2.9x | 2.3x | 1.8x–3.9x | 2.1x | 3.3x | 2.2x | 1.8x |
| Tangible book value | 2.3x–4.6x | 3.6x | 2.1x–4.5x | 2.9x | 4.7x | 2.5x | 2.3x |
| Core deposit premium | 23%–127% | 34% | 16%–58% | 23% | N/A | 23% | 30% |
| Dividend yield | 2.8%–4.1% | 3.3% | 1.9%–4.2% | 3.6% | 1.5% | 2.2% | 3.5% |
| TCE/TA | 4.5%–6.4% | 5.4% | 5.9%–8.6% | 6.8% | 12.6% | 7.0% | 4.5% |
| ROAE through September 30, 2003 | 14%–21% | 19% | 13%–22% | 17% | 26% | 15% | 15% |
| Consensus long-term growth | 10%–12% | 10% | 7%–12% | 9% | 14% | 10% | 10% |

The analysis implied a range of values for Bank One common stock of approximately $40 to $54 per share.

*Historical Market Performance Analysis.* JPMorgan Securities reviewed and compared the historical stock performance of Bank One and JPMorgan Chase to each other and to the historical stock performance of the same large banks, as a group, and mid-sized banks, as a group, identified above under "Comparable Companies" and the S&P 500 Index over various periods ranging from a 1-week period to a 5-year period ending January 12, 2004. The analysis indicated that Bank One common stock outperformed JPMorgan Chase common stock in certain periods and underperformed JPMorgan Chase's stock in other periods. The analysis also indicated that both Bank One and JPMorgan Chase common stocks outperformed the comparable banks and the S&P 500 Index in certain periods and underperformed the comparable banks and the S&P 500 Index in other periods. JPMorgan Securities also noted that the during the 52-week period ended January 12, 2004, the market price for Bank One common stock ranged from a high of $45.79 to a low of $33.14, and the market price for JPMorgan Chase common stock ranged from a high of $39.15 to a low of $20.13.

In addition, based on I/B/E/S data, JPMorgan Securities reviewed and compared the forward twelve-month price to earnings per share (P/E) ratios over time of Bank One to those of JPMorgan Chase. Based on I/B/E/S data, JPMorgan Securities also reviewed and compared Bank One's premium (or discount) to the median forward P/E ratios of its peer group of banks consisting of JPMorgan Chase and the same large banks and mid-sized banks identified above under "Comparable Companies" over a period from January 2000 to January 12, 2004. The analysis indicated that JPMorgan Chase's forward P/E ratio ranged from an average 0.3x premium to Bank One's forward P/E ratio in 2000 to discounts of (0.3x), (2.5x), and (0.9x) in 2001, 2002, and 2003, respectively. In addition, the analysis indicated that Bank One's forward P/E ratio ranged from an average (0.6x) discount to its bank peer group in 2000 to premiums of 0.2x, 1.6x and 0.5x in 2001, 2002 and 2003, respectively. JPMorgan Securities noted that Bank One's forward P/E ratio was at a 1.0x premium to JPMorgan Chase and a 0.6x premium to its bank peer group as of January 12, 2004.

44