# Tab B

# Part 5

## to

# Defendants' Opening Brief In Support of Their Motion to Dismiss Plaintiffs' Amended Complaint

Annex A

# AGREEMENT AND PLAN OF MERGER

Dated as of January 14, 2004

Between

## J.P. MORGAN CHASE & CO.

and

## BANK ONE CORPORATION

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| ARTICLE I  THE MERGER | | A–2 |
| 1.1 | Effective Time of the Merger | A–2 |
| 1.2 | Closing | A–2 |
| 1.3. | Effects of the Merger | A–2 |
| 1.4. | Certificate of Incorporation and By–Laws | A–2 |
| 1.5. | Alternative Transaction Structures | A–2 |
| ARTICLE II  EFFECT OF THE MERGER ON THE CAPITAL STOCK OF THE CONSTITUENT CORPORATIONS; EXCHANGE OF CERTIFICATES | | A–3 |
| 2.1 | Effect on Capital Stock | A–3 |
| | (a) Cancellation of Treasury Stock and JPMorgan Chase–Owned Stock. etc | A–3 |
| | (b) Conversion of Bank One Common Stock | A–3 |
| | (c) JPMorgan Chase Capital Stock | A–3 |
| | (d) Appraisal Rights | A–3 |
| 2.2 | Exchange of Certificates | A–3 |
| | (a) Exchange Agent | A–3 |
| | (b) Exchange Procedures | A–4 |
| | (c) Distributions with Respect to Unexchanged Shares | A–4 |
| | (d) No Further Ownership Rights in Bank One Common Stock | A–4 |
| | (e) No Fractional Shares | A–5 |
| | (f) Termination of Exchange Fund | A–5 |
| | (g) No Liability | A–5 |
| | (h) Withholding | A–5 |
| ARTICLE III  REPRESENTATIONS AND WARRANTIES | | A–5 |
| 3.1. | Representations and Warranties of Bank One | A–5 |
| | (a) Organization, Standing and Power | A–6 |
| | (b) Capital Structure | A–7 |
| | (c) Authority | A–8 |
| | (d) SEC Documents; Regulatory Reports; Undisclosed Liabilities | A–9 |
| | (e) Information Supplied | A–10 |
| | (f) Compliance with Applicable Laws and Reporting Requirements | A–10 |
| | (g) Legal Proceedings | A–11 |
| | (h) Taxes | A–12 |
| | (i) Certain Agreements | A–12 |
| | (j) Benefit Plans | A–13 |
| | (k) Subsidiaries | A–13 |
| | (l) Agreements with Regulators | A–14 |
| | (m) Absence of Certain Changes or Events | A–14 |
| | (n) Board Approval | A–14 |
| | (o) Vote Required | A–14 |
| | (p) Properties | A–14 |

A–i

|  | Page |
|---|---|
| (q) Intellectual Property | A–15 |
| (r) Brokers or Finders | A–15 |
| (s) Opinion of Bank One Financial Advisor | A–15 |
| (t) Investment Adviser Subsidiaries; Funds; Clients | A–15 |
| 3 2 Representations and Warranties of JPMorgan Chase | A–16 |
| (a) Organization, Standing and Power | A–16 |
| (b) Capital Structure | A–17 |
| (c) Authority | A–18 |
| (d) SEC Documents; Regulatory Reports; Undisclosed Liabilities | A–19 |
| (e) Information Supplied | A–20 |
| (f) Compliance with Applicable Laws and Reporting Requirements | A–21 |
| (g) Legal Proceedings | A–21 |
| (h) Taxes | A–22 |
| (i) Certain Agreements | A–22 |
| (j) Benefit Plans | A–23 |
| (k) Subsidiaries | A–23 |
| (l) Agreements with Regulators | A–23 |
| (m) Absence of Certain Changes or Events | A–24 |
| (n) Board Approval | A–24 |
| (o) Vote Required | A–24 |
| (p) Properties | A–24 |
| (q) Intellectual Property | A–25 |
| (r) Brokers or Finders | A–25 |
| (s) Opinion of JPMorgan Chase Financial Advisor | A–25 |
| (t) Investment Adviser Subsidiaries; Funds; Clients | A–25 |
| ARTICLE IV COVENANTS RELATING TO CONDUCT OF BUSINESS | A–26 |
| 4 1. Covenants of Bank One | A–26 |
| (a) Ordinary Course | A–26 |
| (b) Dividends; Changes in Stock | A–26 |
| (c) Issuance of Securities | A–27 |
| (d) Governing Documents, Etc | A–27 |
| (e) No Acquisitions | A–27 |
| (f) No Dispositions | A–28 |
| (g) Indebtedness | A–28 |
| (h) Other Actions | A–28 |
| (i) Accounting Methods | A–28 |
| (j) Tax–Free Reorganization Treatment | A–28 |
| (k) Compensation and Benefit Plans | A–28 |
| (l) Investment Portfolio | A–29 |
| (m) No Liquidation | A–29 |
| (n) Other Agreements | A–29 |

A–ii

| | | Page |
|---|---|---|
| 4.2. | Covenants of JPMorgan Chase | A–29 |
| | (a) Ordinary Course | A–29 |
| | (b) Dividends; Changes in Stock | A–30 |
| | (c) Issuance of Securities | A–30 |
| | (d) Governing Documents | A–30 |
| | (e) No Acquisitions | A–30 |
| | (f) No Dispositions | A–31 |
| | (g) Indebtedness | A–31 |
| | (h) Other Actions | A–31 |
| | (i) Accounting Methods | A–31 |
| | (j) Tax–Free Reorganization Treatment | A–32 |
| | (k) Compensation and Benefit Plans | A–32 |
| | (l) Investment Portfolio | A–32 |
| | (m) No Liquidation | A–32 |
| | (n) Other Agreements | A–32 |
| 4.3. | Transition | A–33 |
| 4.4. | Advice of Changes; Government Filings | A–33 |
| 4.5. | Control of Other Party's Business | A–33 |
| ARTICLE V | ADDITIONAL AGREEMENTS | A–33 |
| 5.1. | Preparation of Proxy Statement; Stockholders Meetings | A–33 |
| 5.2. | Access to Information | A–35 |
| 5.3. | Reasonable Best Efforts | A–35 |
| 5.4. | Acquisition Proposals | A–36 |
| 5.5. | Affiliates | A–37 |
| 5.6. | Stock Exchange Listing | A–37 |
| 5.7. | Employee Benefit Plans | A–38 |
| 5.8. | Bank One Equity Awards | A–38 |
| 5.9. | Fees and Expenses | A–39 |
| 5.10. | Governance | A–40 |
| 5.11. | Indemnification; Directors' and Officers' Insurance | A–40 |
| 5.12. | Dividends | A–41 |
| 5.13. | Public Announcements | A–41 |
| 5.14. | Commitments to the Community | A–42 |
| 5.15. | Additional Agreements | A–42 |
| ARTICLE VI | CONDITIONS PRECEDENT | A–42 |
| 6.1. | Conditions to Each Party's Obligation To Effect the Merger | A–42 |
| | (a) Stockholder Approval | A–42 |
| | (b) NYSE Listing | A–42 |
| | (c) Other Approvals | A–42 |
| | (d) Form S–4 | A–43 |

A–iii

|  |  |  | Page |
|--|--|--|------|
| | | (e) No Injunctions or Restraints; Illegality | A–43 |
| | | (f) Burdensome Condition | A–43 |
| 6.2 | | Conditions to Obligations of JPMorgan Chase | A–43 |
| | | (a) Representations and Warranties | A–43 |
| | | (b) Performance of Obligations of Bank One | A–43 |
| | | (c) Tax Opinion | A–43 |
| 6.3 | | Conditions to Obligations of Bank One | A–43 |
| | | (a) Representations and Warranties | A–44 |
| | | (b) Performance of Obligations of JPMorgan Chase | A–44 |
| | | (c) Tax Opinion | A–44 |
| | | (d) By–Law Amendment | A–44 |
| ARTICLE VII  TERMINATION AND AMENDMENT | | | A–44 |
| 7.1. | | Termination | A–44 |
| 7.2. | | Effect of Termination | A–47 |
| 7.3. | | Amendment | A–47 |
| 7.4. | | Extension; Waiver | A–47 |
| ARTICLE VIII  GENERAL PROVISIONS | | | A–47 |
| 8.1. | | Non–survival of Representations. Warranties and Agreements | A–47 |
| 8.2. | | Notices | A–47 |
| 8.3. | | Interpretation | A–48 |
| 8.4. | | Counterparts | A–48 |
| 8.5. | | Entire Agreement; No Third Party Beneficiaries | A–49 |
| 8.6. | | Governing Law | A–49 |
| 8.7. | | Severability | A–49 |
| 8.8. | | Assignment | A–49 |
| 8.9. | | Submission to Jurisdiction | A–49 |
| 8.10 | | Enforcement | A–49 |
| 8.11. | | WAIVER OF JURY TRIAL | A–50 |

**Exhibits**

| | |
|--|--|
| Exhibit 1.1(a) | Form of Bank One Stock Option Agreement |
| Exhibit 1.1(b) | Form of JPMorgan Chase Stock Option Agreement |
| Exhibit 1.4(a) | Amendment to Certificate of Incorporation |
| Exhibit 1.4(b) | Amendment to By–laws |
| Exhibit 5.5 | Form of Affiliate Agreement |
| Exhibit 5.10(b) | List of Officers of Surviving Corporation |

## INDEX OF DEFINED TERMS

|  | Section |
|---|---|
| Acquisition Proposal | 5.4(a) |
| Acquisitions | 4.1(c) |
| Agreement | Preamble |
| Bank One | Preamble |
| Bank One Advisory Client | 3.1(t) |
| Bank One Advisory Contract | 3.1(t) |
| Bank One Advisory Entities | 3.1(t) |
| Bank One Benefit Plans | 3.1(j) |
| Bank One Board Approval | 3.1(n) |
| Bank One Certificates | 2.2(a) |
| Bank One Common Stock | Preamble |
| Bank One Contracts | 3.1(i) |
| Bank One's Current Premium | 5.11(b) |
| Bank One Disclosure Schedule | 3.1(b) |
| Bank One Fund Client | 3.1(t) |
| Bank One Insiders | 5.8(e) |
| Bank One Intellectual Property | 3.1(q) |
| Bank One Permits | 3.1(f) |
| Bank One Preferred Stock | 3.1(b) |
| Bank One Restricted Share | 5.8(a) |
| Bank One SAR | 5.8(a) |
| Bank One SEC Documents | 3.1(d) |
| Bank One Stock Option | 5.8(a) |
| Bank One Stock Option Agreement | Preamble |
| Bank One Stock Plans | 3.1(b) |
| Bank One Stockholders Meetings | 5.1(b) |
| Bank One Termination Fee | 7.2(c) |
| Bank One Unit | 5.8(a) |
| Benefit Plans | 3.1(j) |
| BHC Act | 3.1(a) |
| Certificate of Merger | 1.1 |
| certificates | 2.2(a) |
| CFTC | 3.1(c) |
| Change in Bank One Recommendation | 7.1(d) |
| Change in JPMorgan Chase Recommendation | 7.1(e) |
| Closing | 1.2 |
| Closing Date | 1.2 |
| Code | Preamble |
| Confidentiality Agreement | 5.2(b) |
| Constituent Corporations | 1.3 |

|  | Section |
|---|---|
| DGCL | 1 1 |
| Dissenting Shares | 2 1(d) |
| DPC shares | 3 1(b) |
| Effective Time | 1.1 |
| ERISA | 3 1(j) |
| Exchange Act | 3 1(c) |
| Exchange Agent | 2 2(a) |
| Exchange Fund | 2 2(a) |
| Exchange Ratio | 2 1(b) |
| FDIA | 3 1(k) |
| Federal Reserve | 3 1(c) |
| Foreign Antitrust Approvals | 3 1(c) |
| Form S–4 | 5 1(a) |
| FRA | 3 1(c) |
| Governmental Entity | 3 1(c) |
| HSR Act | 3 1(c) |
| incentive stock options | 5.8(a) |
| Indemnified Liabilities | 5 11(a) |
| Indemnified Parties | 5.11(a) |
| Injunction | 6.1(e) |
| Investment Advisers Act | 3 1(t) |
| Investment Company Act | 3 1(t) |
| Joint Proxy Statement/ Prospectus | 5 1(a) |
| JPMorgan Chase | Preamble |
| JPMorgan Chase Advisory Client | 3 2(t) |
| JPMorgan Chase Advisory Contract | 3 2(t) |
| JPMorgan Chase Advisory Entities | 3 2(t) |
| JPMorgan Chase Benefit Plans | 3 2(j) |
| JPMorgan Chase Board Approval | 3 2(n) |
| JPMorgan Chase Common Stock | Preamble |
| JPMorgan Chase Contracts | 3.2(i) |
| JPMorgan Chase Disclosure Schedule | 3.2(b) |
| JPMorgan Chase Fund Client | 3.2(t) |
| JPMorgan Chase Intellectual Property | 3.2(q) |
| JPMorgan Chase Permits | 3 2(f) |
| JPMorgan Chase Preferred Stock | 2 1(a) |
| JPMorgan Chase SARs | 5 8(b) |
| JPMorgan Chase SEC Documents | 3 2(d) |
| JPMorgan Chase Stock Option Agreement | Preamble |
| JPMorgan Chase Stock Plans | 3 2(b) |
| JPMorgan Chase Stockholders Meeting | 5 1(c) |

A–vi

|  | Section |
|---|---|
| JPMorgan Chase Termination Fee | 7.2(b) |
| material | 3.1(a) |
| material adverse effect | 3.1(a) |
| Merger | Preamble |
| Option Agreements | Preamble |
| Other Bank One Equity Right | 5.8(a) |
| Public Proposal | 7.2(b) |
| Required Bank One Vote | 3.1(o) |
| Required JPMorgan Chase Vote | 3.2(o) |
| Requisite Regulatory Approvals | 6.1(c) |
| SBA | 3.1(c) |
| SBIA | 3.1(c) |
| SEC | 3.1(a) |
| Section 16 Information | 5.8(e) |
| Securities Act | 3.1(b) |
| Significant Subsidiary | 3.1(t) |
| Sponsored | 3.1(c) |
| State Banking Approvals | 3.1(a) |
| Subsidiary | 5.4(e) |
| Superior Proposal | 1.3 |
| Surviving Corporation | 3.1(h) |
| tax, taxes, taxable | 3.1(b) |
| trading account shares | 3.1(b) |
| trust account shares | 3.1(c) |
| Violation | 3.1(b) |
| Voting Debt | |

AGREEMENT AND PLAN OF MERGER dated as of January 14, 2004 (this *"Agreement"*) between J.P. MORGAN CHASE & CO , a Delaware corporation (*"JPMorgan Chase"*), and BANK ONE CORPORATION, a Delaware corporation (*"Bank One"*)

WHEREAS, the Boards of Directors of JPMorgan Chase and Bank One have approved, and deem it advisable and in the best interests of their respective stockholders to consummate, the business combination transaction provided for herein in which Bank One would merge with and into JPMorgan Chase (the *"Merger"*);

WHEREAS, the Boards of Directors of JPMorgan Chase and Bank One have each determined that the Merger and the other transactions contemplated hereby are consistent with, and in furtherance of, their respective business strategies and goals;

WHEREAS, concurrently with the execution and delivery of this Agreement, (i) as a condition and inducement to JPMorgan Chase's willingness to enter into this Agreement and the JPMorgan Chase Stock Option Agreement referred to below, JPMorgan Chase and Bank One are entering into a Stock Option Agreement dated as of the date hereof in the form of Exhibit 1.1(a) (the *"Bank One Stock Option Agreement"*) pursuant to which Bank One is granting to JPMorgan Chase an option to purchase shares of Common Stock, par value $0.01 per share, of Bank One (the *"Bank One Common Stock"*); and (ii) as a condition and inducement to Bank One's willingness to enter into this Agreement and the Bank One Stock Option Agreement, Bank One and JPMorgan Chase are entering into a Stock Option Agreement dated as of the date hereof in the form of Exhibit 1 1(b) (the *"JPMorgan Chase Stock Option Agreement"*; and collectively with the Bank One Stock Option Agreement, the *"Option Agreements"*), pursuant to which JPMorgan Chase is granting to Bank One an option to purchase shares of Common Stock, par value $1.00 per share, of JPMorgan Chase (the *"JPMorgan Chase Common Stock"*);

WHEREAS, JPMorgan Chase and Bank One desire to make certain representations, warranties and agreements in connection with the Merger and also to prescribe various conditions to the Merger; and

WHEREAS, for Federal income tax purposes, it is intended that the Merger shall qualify as a reorganization under the provisions of Section 368(a) of the Internal Revenue Code of 1986, as amended (the *"Code"*), and the parties intend, by executing this Agreement, to adopt a plan of reorganization within the meaning of Treasury Regulation Section 1 368–2(g);

NOW, THEREFORE, in consideration of the foregoing and the respective representations, warranties, covenants and agreements set forth herein and in the Option Agreements, the parties hereto agree as follows:

A–1

ARTICLE I

THE MERGER

1.1. *Effective Time of the Merger.* Subject to the provisions of this Agreement, a certificate of merger (the *"Certificate of Merger"*) shall be duly prepared, executed by JPMorgan Chase as the Surviving Corporation (as defined in Section 1.3) and thereafter delivered to the Secretary of State of the State of Delaware for filing, as provided in the Delaware General Corporation Law (the *"DGCL"*), on the Closing Date (as defined in Section 1.2). The Merger shall become effective upon the filing of the Certificate of Merger with the Secretary of State of the State of Delaware or at such time thereafter as is provided in the Certificate of Merger (the "Effective Time").

1.2. *Closing.* The closing of the Merger (the *"Closing"*) will take place at 10:00 a.m. on the date (the *"Closing Date"*) that is the second business day after the satisfaction or waiver (subject to applicable law) of the conditions set forth in Article VI (excluding conditions that, by their terms, are to be satisfied on the Closing Date), unless another time or date is agreed to in writing by the parties hereto. The Closing shall be held at the offices of Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, unless another place is agreed to in writing by the parties hereto.

1.3. *Effects of the Merger.* At the Effective Time, Bank One shall be merged with and into JPMorgan Chase and the separate existence of Bank One shall cease. The Merger will have the effects set forth in the DGCL. As used in this Agreement, *"Constituent Corporations"* shall mean each of JPMorgan Chase and Bank One, and *"Surviving Corporation"* shall mean JPMorgan Chase, at and after the Effective Time, as the surviving corporation in the Merger.

1.4. *Certificate of Incorporation and By-Laws.* The Certificate of Incorporation of JPMorgan Chase as in effect immediately prior to the Effective Time, as amended as set forth in Exhibit 1.4(a), shall be the Certificate of Incorporation of the Surviving Corporation. The By-laws of JPMorgan Chase as in effect immediately prior to the Effective Time, as amended as set forth in Exhibit 1.4(b), shall be the By-laws of the Surviving Corporation.

1.5. *Alternative Transaction Structures.* The parties agree that JPMorgan Chase may change the method of effecting the business combination with Bank One, including, without limitation, by merging Bank One into a wholly-owned direct Subsidiary (as defined in Section 3.1(a)) of JPMorgan Chase or by merging a wholly-owned direct Subsidiary of JPMorgan Chase into Bank One, and Bank One shall cooperate in such efforts, including by entering into an appropriate amendment to this Agreement (to the extent such amendment only changes the method of effecting the business combination and does not substantively affect this Agreement or the rights and obligations of the parties or their respective stockholders hereunder); *provided, however,* that any such Subsidiary shall become a party to, and shall agree to be bound by, the terms of this Agreement and that any actions taken pursuant to this Section 1.5 shall not (i) alter or change the kind or amount of consideration to be issued to holders of Bank One Common Stock or the treatment of Bank One Stock Options, Bank One SARs, Bank One Units, Other Bank One Equity Rights or Bank One Restricted Shares as provided for in this Agreement, (ii) adversely affect the tax consequences of the transaction to the holders of Bank One Common Stock, (iii) materially delay receipt of any Requisite Regulatory Approval (as defined in Section 6.1(c)), or (iv) otherwise cause any closing condition not to be capable of being fulfilled (unless duly waived by the party entitled to the benefits thereof).

A-2

ARTICLE II

EFFECT OF THE MERGER ON THE CAPITAL STOCK OF THE

CONSTITUENT CORPORATIONS; EXCHANGE OF CERTIFICATES

2.1 *Effect on Capital Stock* As of the Effective Time, by virtue of the Merger and without any action on the part of the holder of any shares of Bank One Common Stock:

(a) *Cancellation of Treasury Stock and JPMorgan Chase–Owned Stock, etc.* All shares of Bank One Common Stock that are owned by Bank One as treasury stock and all shares of Bank One Common Stock that are owned by Bank One or JPMorgan Chase (other than, for the avoidance of doubt, trading account shares, trust shares and DPC shares, as each such term is defined in Section 3.1(b)) shall be cancelled and retired and shall cease to exist and no stock of JPMorgan Chase or other consideration shall be delivered in exchange therefor. All shares of JPMorgan Chase Common Stock and Preferred Stock, par value $1.00 per share, of JPMorgan Chase (*"JPMorgan Chase Preferred Stock"*) that are owned by Bank One shall become treasury stock, except as otherwise provided in JPMorgan Chase's Certificate of Incorporation.

(b) *Conversion of Bank One Common Stock.* Subject to Section 2.2(e), each share of Bank One Common Stock issued and outstanding immediately prior to the Effective Time (other than shares to be cancelled in accordance with Section 2.1(a)) shall be converted into 1.32 (the *"Exchange Ratio"*) fully paid and nonassessable shares of JPMorgan Chase Common Stock. All such shares of Bank One Common Stock shall no longer be outstanding and shall automatically be cancelled and retired and shall cease to exist, and each certificate previously representing any such shares shall thereafter represent the shares of JPMorgan Chase Common Stock into which such Bank One Common Stock has been converted. Certificates previously representing shares of Bank One Common Stock shall be exchanged for certificates representing whole shares of JPMorgan Chase Common Stock issued in consideration therefor upon the surrender of such certificates in accordance with Section 2.2, without interest.

(c) *JPMorgan Chase Capital Stock.* Each share of JPMorgan Chase Common Stock and each share of JPMorgan Chase Preferred Stock (other than Dissenting Shares (as defined in Section 2.1(d)) shall remain outstanding following the Effective Time as shares of the Surviving Corporation.

(d) *Appraisal Rights* Notwithstanding anything in this Agreement to the contrary, shares of 6.63% Cumulative Preferred Stock, Series H, and Fixed/ Adjustable Noncumulative Preferred Stock of JPMorgan Chase that are issued and outstanding immediately prior to the Effective Time and that are owned by stockholders that have properly perfected their right of appraisal within the meaning of Section 262 of the DGCL (the *"Dissenting Shares"*) shall not remain outstanding, and the holders thereof shall be entitled to payment of the appraised value of such Dissenting Shares in accordance with Section 262 of the DGCL. If any such holder shall have failed to perfect or shall have effectively withdrawn or lost such right of appraisal, each share of such JPMorgan Chase Preferred Stock held by such stockholder shall remain outstanding in accordance with Section 2.1(c).

2.2 *Exchange of Certificates.*

(a) *Exchange Agent* As of the Effective Time, JPMorgan Chase shall deposit, or shall cause to be deposited, with a bank or trust company designated by JPMorgan Chase and reasonably acceptable to Bank One (the *"Exchange Agent"*), for the benefit of the holders of certificates or evidence of shares in book entry form which immediately prior to the Effective Time evidenced shares of Bank One Common Stock (collectively, the *"Bank One Certificates"*), for exchange in accordance with this Article II, certificates or, at JPMorgan Chase's option, evidence of shares in book entry form (collectively *"certificates"*) representing the shares of

A–3

JPMorgan Chase Common Stock issuable pursuant to Section 2.1 in exchange for such shares of Bank One Common Stock. Such certificates for shares of JPMorgan Chase Common Stock so deposited, together with any dividends or distributions with respect thereto, are hereinafter referred to as the *"Exchange Fund"*.

(b) *Exchange Procedures*. As soon as reasonably practicable after the Effective Time, the Exchange Agent shall mail to each holder of record of shares of Bank One Common Stock immediately prior to the Effective Time whose shares were converted into shares of JPMorgan Chase Common Stock pursuant to Section 2.1, (i) a letter of transmittal (which shall specify that delivery shall be effected, and risk of loss and title to the Bank One Certificates shall pass, only upon delivery of the Bank One Certificates to the Exchange Agent, and which shall be in such form and have such other provisions as JPMorgan Chase and Bank One may reasonably specify) and (ii) instructions for use in effecting the surrender of the Bank One Certificates in exchange for certificates representing shares of JPMorgan Chase Common Stock. Upon surrender of a Bank One Certificate for cancellation to the Exchange Agent together with such letter of transmittal, duly executed, and such other documents as the Exchange Agent may reasonably require, the holder of such Bank One Certificate shall be entitled to receive in exchange therefor a certificate representing that number of whole shares of JPMorgan Chase Common Stock which such holder has the right to receive in respect of the Bank One Certificate surrendered pursuant to the provisions of this Article II (after taking into account all shares of Bank One Common Stock then held by such holder), and the Bank One Certificate so surrendered shall forthwith be cancelled. In the event of a transfer of ownership of Bank One Common Stock which is not registered in the transfer records of Bank One, a certificate representing the proper number of shares of JPMorgan Chase Common Stock may be issued to a transferee if the Bank One Certificate representing such Bank One Common Stock is presented to the Exchange Agent, accompanied by all documents required to evidence and effect such transfer and by evidence that any applicable stock transfer taxes have been paid. Until surrendered as contemplated by this Section 2.2, each Bank One Certificate shall be deemed at any time after the Effective Time to represent only the JPMorgan Chase Common Stock into which the shares of Bank One Common Stock represented by such Bank One Certificate have been converted as provided in this Article II and the right to receive upon such surrender cash in lieu of any fractional shares of JPMorgan Chase Common Stock as contemplated by this Section 2.2.

(c) *Distributions with Respect to Unexchanged Shares*. No dividends or other distributions declared or made with respect to JPMorgan Chase Common Stock with a record date after the Effective Time shall be paid to the holder of any unsurrendered Bank One Certificate with respect to the shares of JPMorgan Chase Common Stock represented thereby, and no cash payment in lieu of fractional shares shall be paid to any such holder pursuant to Section 2.2(e), until the holder of such Bank One Certificate shall surrender such Bank One Certificate. Subject to the effect of applicable laws, following the surrender of any such Bank One Certificate, there shall be paid to the holder of the certificates representing whole shares of JPMorgan Chase Common Stock issued in exchange therefor, without interest, (A) at the time of such surrender the amount of any cash payable with respect to a fractional share of JPMorgan Chase Common Stock to which such holder is entitled pursuant to Section 2.2(e) and the amount of dividends or other distributions with a record date after the Effective Time theretofore paid (but withheld pursuant to the immediately preceding sentence) with respect to such whole shares of JPMorgan Chase Common Stock, and (B) at the appropriate payment date, the amount of dividends or other distributions with a record date after the Effective Time but prior to surrender and a payment date subsequent to surrender payable with respect to such whole shares of JPMorgan Chase Common Stock.

(d) *No Further Ownership Rights in Bank One Common Stock*. All shares of JPMorgan Chase Common Stock issued upon conversion of shares of Bank One Common Stock in

A–4

accordance with the terms hereof (including any cash paid pursuant to Section 2.2(c) or 2.2(e)) shall be deemed to have been issued in full satisfaction of all rights pertaining to such shares of Bank One Common Stock; *subject, however*, to the Surviving Corporation's obligation to pay any dividends or make any other distributions with a record date prior to the Effective Time which may have been declared or made by Bank One on such shares of Bank One Common Stock in accordance with the terms of this Agreement on or prior to the Effective Time and which remain unpaid at the Effective Time, and there shall be no further registration of transfers on the stock transfer books of the Surviving Corporation of the shares of Bank One Common Stock which were outstanding immediately prior to the Effective Time. If, after the Effective Time, Bank One Certificates are presented to the Surviving Corporation for any reason, they shall be cancelled and exchanged as provided in this Article II.

(e) *No Fractional Shares.* No certificates or scrip representing fractional shares of JPMorgan Chase Common Stock shall be issued upon the surrender for exchange of Bank One Certificates evidencing Bank One Common Stock, and such fractional share interests will not entitle the owner thereof to vote or to any rights of a stockholder of the Surviving Corporation. In lieu thereof, upon surrender of the applicable Bank One Certificates, JPMorgan Chase shall pay each holder of Bank One Common Stock an amount in cash equal to the product obtained by multiplying (a) the fractional share interest to which such holder (after taking into account all shares of Bank One Common Stock held at the Effective Time by such holder) would otherwise be entitled by (b) the closing price on the NYSE, as reported on the Consolidated Tape at the close of the NYSE regular session of trading, for a share of JPMorgan Chase Common Stock on the last trading day immediately preceding the Effective Time.

(f) *Termination of Exchange Fund.* Any portion of the Exchange Fund which remains undistributed to the stockholders of Bank One for six months after the Effective Time shall be delivered to the Surviving Corporation, upon demand, and any stockholders of Bank One who have not theretofore complied with this Article II shall thereafter look only to the Surviving Corporation for payment of their claim for JPMorgan Chase Common Stock, any cash in lieu of fractional shares of JPMorgan Chase Common Stock and any dividends or distributions with respect to JPMorgan Chase Common Stock.

(g) *No Liability.* None of JPMorgan Chase, Bank One or the Surviving Corporation shall be liable to any holder of shares of Bank One Common Stock for shares of JPMorgan Chase Common Stock (or dividends or distributions with respect thereto) or cash from the Exchange Fund delivered to a public official pursuant to any applicable abandoned property, escheat or similar law.

(h) *Withholding.* JPMorgan Chase shall be entitled to deduct and withhold from the consideration otherwise payable pursuant to this Agreement to any holder of shares of Bank One Common Stock or Dissenting Shares such amounts as it is required to deduct and withhold with respect to the making of such payment under the Code and the rules and regulations promulgated thereunder, or any provision of state, local or foreign tax law. To the extent that amounts are so withheld by JPMorgan Chase, such withheld amounts shall be treated for all purposes of this Agreement as having been paid to the holder of the shares of Bank One Common Stock or Dissenting Shares in respect of which such deduction and withholding was made by JPMorgan Chase.

ARTICLE III

REPRESENTATIONS AND WARRANTIES

3.1 *Representations and Warranties of Bank One.* Except (x) with respect to any subsection of this Section 3.1, as set forth in the correspondingly identified subsection of the Bank One Disclosure Schedule (as defined in Section 3.1(b)(iii)) or (y) as disclosed in the

A-5

Bank One SEC Documents (as defined in Section 3.1(d)) filed with the SEC prior to the date hereof, Bank One represents and warrants to JPMorgan Chase as follows:

(a) *Organization, Standing and Power.* Bank One is a bank holding company registered under the Bank Holding Company Act of 1956, as amended (the *"BHC Act"*), which has duly elected to become, and meets the applicable requirements for qualification as, a financial holding company pursuant to Section 4(l) of the BHC Act. Each of Bank One and its Significant Subsidiaries (as defined below) is a bank, corporation or partnership duly organized, validly existing and, in the case of banks or corporations, in good standing under the laws of its jurisdiction of incorporation or organization, has all requisite power and authority to own, lease and operate its properties and to carry on its business as now being conducted and is duly qualified and in good standing to do business in each jurisdiction in which the nature of its business or the ownership or leasing of its properties makes such qualification necessary, other than in such jurisdictions where the failure so to qualify would not, either individually or in the aggregate, reasonably be expected to have a material adverse effect on Bank One. The Certificate of Incorporation and By-laws of Bank One, copies of which were previously furnished to JPMorgan Chase, are true, complete and correct copies of such documents as in effect on the date of this Agreement. As used in this Agreement, (i) the word *"Subsidiary"* when used with respect to any party means any corporation or other organization, whether incorporated or unincorporated, (x) of which such party or any other Subsidiary of such party is a general partner (excluding partnerships, the general partnership interests of which held by such party or any Subsidiary of such party do not have a majority of the voting interests in such partnership), or (y) at least a majority of the securities or other interests of which that have by their terms ordinary voting power to elect a majority of the board of directors or others performing similar functions with respect to such corporation or other organization is directly or indirectly owned or controlled by such party or by any one or more of its Subsidiaries, or by such party and one or more of its Subsidiaries; (ii) a *"Significant Subsidiary"* means any Subsidiary of Bank One or JPMorgan Chase, as the case may be, that would constitute a Significant Subsidiary of such party within the meaning of Rule 1–02 of Regulation S–X of the Securities and Exchange Commission (the *"SEC"*); (iii) any reference to any event, change or effect being *"material"* with respect to any entity means an event, change or effect which is material in relation to the financial condition, properties, assets, liabilities, businesses or results of operations of such entity and its Subsidiaries taken as a whole; and (iv) the term *"material adverse effect"* means, with respect to any entity, a material adverse effect on the financial condition, properties, assets, liabilities, businesses or results of operations of such entity and its Subsidiaries taken as a whole or on the ability of such entity to perform its obligations hereunder or under any Option Agreement on a timely basis; *provided* that, in any such case referred to in clause (iii) or (iv) the following shall not be deemed "material" or to have a "material adverse effect": any change or event caused by or resulting from (A) changes in prevailing interest rates, currency exchange rates or other economic or monetary conditions in the United States or elsewhere, (B) changes in United States or foreign securities markets, including changes in price levels or trading volumes, (C) changes or events, after the date hereof, affecting the financial services industry generally and not specifically relating to Bank One or JPMorgan Chase or their respective Subsidiaries, as the case may be, (D) changes, after the date hereof, in generally accepted accounting principles or regulatory accounting requirements applicable to banks or savings associations and their holding companies generally, (E) changes, after the date hereof, in laws, rules or regulations of general applicability or interpretations thereof by any Governmental Entity (as defined in Section 3.1(c)(iii)), (F) actions or omissions of JPMorgan Chase or Bank One taken with the prior written consent of the other or required hereunder, (G) the execution and delivery of this Agreement or the consummation of the transactions contemplated hereby or the announcement thereof, or (H) any outbreak of major hostilities in which the United States is

A–6

involved or any act of terrorism within the United States or directed against its facilities or citizens wherever located; and *provided. further*, that in no event shall a change in the trading prices of a party's capital stock, by itself, be considered material or constitute a material adverse effect

   (b) *Capital Structure* (i) The authorized capital stock of Bank One consists of four billion (4,000,000,000) shares of Bank One Common Stock and 50 million (50,000,000) shares of Preferred Stock, par value $0 01 per share (the *"Bank One Preferred Stock"*) As of the close of business on December 31, 2003 (A) 1,181,382,302 shares of Bank One Common Stock were issued (including shares held in treasury), 102,630,826 shares of Bank One Common Stock were reserved for issuance upon the exercise or payment of outstanding stock options, stock units or other awards or pursuant to Bank One's dividend reinvestment and stock purchase plan, Bank One Corporation Stock Performance Plan, Bank One Corporation Director Stock Plan, Bank One Corporation Deferred Compensation Plan and Bank One Employee Stock Purchase Plan (such stock options, units and other awards and plans, collectively, the *"Bank One Stock Plans"*), and 61,800,269 shares of Bank One Common Stock were held by Bank One in its treasury or by its Subsidiaries (exclusive of (x) shares held in connection with any market making activities or proprietary trading activities (*"trading account shares"*), (y) shares held in trust, managed, custodial or nominee accounts and the like, or held by mutual funds or merchant banking entities for which a Subsidiary of the relevant party acts as investment advisor or in a similar capacity (any such shares, *"trust account shares"*), and (z) shares acquired in respect of debts previously contracted (any such shares, *"DPC shares"*)); and (B) no shares of Bank One Preferred Stock were outstanding or reserved for issuance All outstanding shares of Bank One Common Stock have been duly authorized and validly issued and are fully paid and non–assessable and not subject to preemptive rights The shares of Bank One Common Stock which may be issued pursuant to the Bank One Stock Option Agreement have been duly authorized and, if and when issued pursuant to the terms thereof, will be validly issued, fully paid and non–assessable and not subject to preemptive rights.

   (ii) No bonds, debentures, notes or other indebtedness having the right to vote on any matters on which stockholders may vote (*"Voting Debt"*) of Bank One are issued or outstanding.

   (iii) Except for (A) this Agreement, (B) Bank One Stock Options, Bank One SARs, Bank One Units and Other Bank One Equity Rights (each as defined in Section 5 8(a)) which represented, as of December 31, 2003, the right to acquire up to an aggregate of 99,630,826 shares of Bank One Common Stock, (C) the Bank One Stock Option Agreement, (D) as set forth in the disclosure schedule delivered by Bank One to JPMorgan Chase concurrently herewith (the *"Bank One Disclosure Schedule"*), and (E) agreements entered into and securities and other instruments issued after the date of this Agreement as permitted by Section 4.1, there are no options, warrants, calls, rights, commitments or agreements of any character to which Bank One or any Subsidiary of Bank One is a party or by which it or any such Subsidiary is bound obligating Bank One or any Subsidiary of Bank One to issue, deliver or sell, or cause to be issued, delivered or sold, additional shares of capital stock or any Voting Debt or stock appreciation rights of Bank One or of any Subsidiary of Bank One or obligating Bank One or any Subsidiary of Bank One to grant, extend or enter into any such option, warrant, call, right, commitment or agreement. There are no outstanding contractual obligations of Bank One or any of its Subsidiaries (A) to repurchase, redeem or otherwise acquire any shares of capital stock of Bank One or any of its Subsidiaries, other than the Bank One Stock Option Agreement or (B) pursuant to which Bank One or any of its Subsidiaries is or could be required to register shares of Bank One Common Stock or other securities under the Securities Act of 1933, as amended (the

A–7

"*Securities Act*"), except the Bank One Stock Option Agreement and any such contractual obligations entered into after the date hereof as permitted by Section 4.1.

(iv) Since December 31, 2003, except as set forth in the Bank One Disclosure Schedule and except as permitted by Section 4.1, Bank One has not (A) issued or permitted to be issued any shares of capital stock, stock appreciation rights or securities exercisable or exchangeable for or convertible into shares of capital stock of Bank One or any of its Subsidiaries, other than pursuant to and as required by the terms of the Bank One Stock Option Agreement, the dividend reinvestment and stock purchase plan referred to above, and any employee stock options and other awards issued prior to the date hereof under the Bank One Stock Plans (or issued after the date hereof in compliance with Sections 4.1(c) and 4.1(k)); (B) repurchased, redeemed or otherwise acquired, directly or indirectly through one or more Bank One Subsidiaries, any shares of capital stock of Bank One or any of its Subsidiaries (other than the acquisition of trading account shares, trust account shares and DPC shares in the ordinary course of business consistent with past practice); or (C) declared, set aside, made or paid to the stockholders of Bank One dividends or other distributions on the outstanding shares of capital stock of Bank One, other than regular quarterly cash dividends on the Bank One Common Stock at a rate not in excess of the regular quarterly cash dividend most recently declared by Bank One prior to the date of this Agreement.

(v) The Bank One employee stock purchase plan (A) will continue until the earlier of the termination of the current offering period and the Closing Date, and no further offering periods will commence thereafter, and (B) will be terminated by Bank One immediately prior to and effective as of the Closing Date. The optional cash purchase (but not the dividend reinvestment) feature of the Bank One dividend reinvestment and stock purchase plan will be terminated within 30 days of a written request by JPMorgan Chase unless all such optional cash purchases are satisfied through open market purchases of Bank One Common Stock and not through new issuances of Bank One Common Stock by Bank One.

(c) *Authority.* (i) Bank One has all requisite corporate power and authority to enter into this Agreement and the Option Agreements and, subject in the case of the consummation of the Merger to the adoption of this Agreement by the requisite vote of the holders of Bank One Common Stock, to consummate the transactions contemplated hereby and thereby. The execution and delivery of this Agreement and the Option Agreements and the consummation of the transactions contemplated hereby and thereby have been duly authorized by all necessary corporate action on the part of Bank One, subject in the case of the consummation of the Merger to the adoption of this Agreement by the stockholders of Bank One. This Agreement and the Option Agreements have been duly executed and delivered by Bank One and each constitutes a valid and binding obligation of Bank One, enforceable against Bank One in accordance with its terms, subject to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' rights and to general equitable principles.

(ii) The execution and delivery of this Agreement and the Option Agreements do not, and the consummation of the transactions contemplated hereby and thereby will not, (A) conflict with, or result in any violation of, or constitute a default (with or without notice or lapse of time, or both) under, or give rise to a right of termination, cancellation or acceleration of any obligation or the loss of a material benefit under, or the creation of a lien, pledge, security interest, charge or other encumbrance on any assets (any such conflict, violation, default, right of termination, cancellation or acceleration, loss or creation, a "*Violation*") pursuant to, any provision of the Certificate of Incorporation or By–laws of Bank One or any Subsidiary of Bank One, or (B) except as disclosed in the Bank One Disclosure Schedule and subject to obtaining or making the consents, approvals, orders, authorizations, registrations, declarations and filings referred to in paragraph (iii) below, result in any

A–8

Violation of any loan or credit agreement, note, mortgage, indenture, lease, Bank One Benefit Plan (as defined in Section 3.1(j)) or other agreement, obligation, instrument, permit, concession, franchise, license, judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Bank One or any Subsidiary of Bank One or their respective properties or assets, which Violation, individually or in the aggregate, would reasonably be expected to have a material adverse effect on Bank One.

(iii) No consent, approval, order or authorization of, or registration, declaration or filing with, any court, administrative agency or commission or other governmental authority or instrumentality, domestic or foreign, or industry self–regulatory organization (a *"Governmental Entity"*), is required by or with respect to Bank One or any Subsidiary of Bank One in connection with the execution and delivery of this Agreement and the Option Agreements by Bank One or the consummation by Bank One of the transactions contemplated hereby and thereby, the failure to make or obtain which would have a material adverse effect on Bank One, except for (A) the filing of applications and notices with the Board of Governors of the Federal Reserve System (the *"Federal Reserve"*) under the BHC Act and the Federal Reserve Act (the *"FRA"*) and approval of same, (B) the filing with the SEC of (1) the Joint Proxy Statement/ Prospectus (as defined in Section 5.1(a)) and (2) such reports under Sections 13(a), 13(d), 13(g) and 16(a) of the Securities Exchange Act of 1934, as amended (the *"Exchange Act"*), as may be required in connection with this Agreement, the Option Agreements and the transactions contemplated hereby and thereby and the obtaining from the SEC of such orders as may be required in connection therewith, (C) the filing of the Certificate of Merger with the Secretary of State of the State of Delaware, (D) such applications, filings, authorizations, orders and approvals as may be required under the banking laws of any state, and approval thereof (collectively, the *"State Banking Approvals"*), (E) consents, authorizations, approvals, filings or exemptions in connection with compliance with the applicable provisions of federal or state securities laws relating to the regulation of broker–dealers, investment companies and investment advisors and federal commodities laws relating to the regulation of futures commission merchants and the rules and regulations of the SEC and the Commodity Futures Trading Commission (the *"CFTC"*) thereunder and of any applicable industry self–regulatory organization and the rules of the NYSE, or which are required under consumer finance, mortgage banking and other similar laws of the various states in which Bank One or any of its Subsidiaries is licensed or regulated, (F) notices or filings under the Hart–Scott–Rodino Antitrust Improvements Act of 1976, as amended (the *"HSR Act"*), (G) such filings, approvals and authorizations as may be required pursuant to applicable antitrust or competition laws of any foreign Governmental Entity (the *"Foreign Antitrust Approvals"*), (H) such other filings, authorizations, orders and approvals as may be required under foreign banking and similar laws with respect to bank Subsidiaries of Bank One that are chartered or licensed under the laws of foreign jurisdictions, and (I) such filings, notifications and approvals as are required under the Small Business Investment Act of 1958 (*"SBIA"*) and the rules and regulations of the Small Business Administration (*"SBA"*) thereunder.

(d) *SEC Documents; Regulatory Reports; Undisclosed Liabilities.* (i) Bank One has filed all required reports, schedules, registration statements and other documents with the SEC since December 31, 2000 (the *"Bank One SEC Documents"*). As of their respective dates of filing with the SEC (or, if amended or superseded by a filing prior to the date hereof, as of the date of such filing), the Bank One SEC Documents complied in all material respects with the requirements of the Securities Act or the Exchange Act, as the case may be, and the rules and regulations of the SEC thereunder applicable to such Bank One SEC Documents, and none of the Bank One SEC Documents when filed contained any untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading. The financial statements of Bank One included in the Bank One SEC Documents

A–9

complied as to form, as of their respective dates of filing with the SEC, in all material respects with all applicable accounting requirements and with the published rules and regulations of the SEC with respect thereto (except, in the case of unaudited statements, as permitted by Form 10–Q of the SEC), have been prepared in accordance with generally accepted accounting principles applied on a consistent basis during the periods involved (except as may be disclosed therein) and fairly present in all material respects the consolidated financial position of Bank One and its consolidated Subsidiaries and the consolidated results of operations, changes in stockholders' equity and cash flows of such companies as of the dates and for the periods shown.

(ii) Other than the Bank One SEC Documents, which are addressed in clause (i) above, Bank One and each of its Subsidiaries have timely filed all reports, registrations and statements, together with any amendments required to be made with respect thereto, that they were required to file since December 31, 2000 with any Governmental Entity, and have paid all fees and assessments due and payable in connection therewith, except where the failure to file such report, registration or statement or to pay such fees and assessments is not reasonably likely to have, either individually or in the aggregate, a material adverse effect on Bank One

(iii) Except for (A) those liabilities that are fully reflected or reserved for in the consolidated financial statements of Bank One included in its Quarterly Report on Form 10–Q for the fiscal quarter ended September 30, 2003, as filed with the SEC prior to the date of this Agreement, (B) liabilities incurred since September 30, 2003 in the ordinary course of business consistent with past practice, and (C) liabilities which would not, individually or in the aggregate, reasonably be expected to have a material adverse effect on Bank One, Bank One and its Subsidiaries do not have, and since September 30, 2003 Bank One and its Subsidiaries have not incurred (except as permitted by Section 4.1), any liabilities or obligations of any nature whatsoever (whether accrued, absolute, contingent or otherwise and whether or not required to be reflected in Bank One's financial statements in accordance with generally accepted accounting principles)

(e) *Information Supplied.* None of the information supplied or to be supplied by Bank One for inclusion or incorporation by reference in (i) the Form S–4 (as defined in Section 5.1(a)) will, at the time the Form S–4 is filed with the SEC and at the time it becomes effective under the Securities Act, contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements therein not misleading, and (ii) the Joint Proxy Statement/ Prospectus will, at the date of mailing to stockholders and at the times of the meetings of stockholders to be held in connection with the Merger, contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading. The Joint Proxy Statement/ Prospectus will comply as to form in all material respects with the requirements of the Exchange Act and the rules and regulations of the SEC thereunder, except that no representation or warranty is made by Bank One with respect to statements made or incorporated by reference therein based on information supplied by JPMorgan Chase for inclusion or incorporation by reference in the Joint Proxy Statement/ Prospectus

(f) *Compliance with Applicable Laws and Reporting Requirements* (i) Bank One and its Subsidiaries hold all permits, licenses, variances, exemptions, orders and approvals of all Governmental Entities which are material to the operation of the businesses of Bank One and its Subsidiaries, taken as a whole (the *"Bank One Permits"*), and Bank One and its Subsidiaries are in compliance with the terms of the Bank One Permits and all applicable laws and regulations, except where the failure so to hold or comply, individually or in the aggregate, would not reasonably be expected to have a material adverse effect on Bank One Except as disclosed in the Bank One SEC Documents filed prior to the date of this

A–10

Agreement or as set forth in the Bank One Disclosure Schedule, the businesses of Bank One and its Subsidiaries are not being conducted in violation of any law, ordinance or regulation of any Governmental Entity (including but not limited to the Sarbanes–Oxley Act of 2002 and the USA PATRIOT Act of 2001), except for possible violations which, individually or in the aggregate, do not have, and would not reasonably be expected to have, a material adverse effect on Bank One. To the knowledge of Bank One, no investigation by any Governmental Entity with respect to Bank One or any of its Subsidiaries is pending or threatened, other than, in each case, those the outcome of which, individually or in the aggregate, would not reasonably be expected to have a material adverse effect on Bank One.

(ii) Except as is not reasonably likely to have, either individually or in the aggregate, a material adverse effect on Bank One, Bank One and each of its Subsidiaries have properly administered all accounts for which it acts as a fiduciary, including accounts for which it serves as a trustee, agent, custodian, personal representative, guardian, conservator or investment advisor, in accordance with the terms of the governing documents, applicable state and federal law and regulation and common law. None of Bank One, any of its Subsidiaries, or any director, officer or employee of Bank One or of any Bank One Subsidiary, has committed any breach of trust or fiduciary duty with respect to any such fiduciary account that is reasonably likely to have, either individually or in the aggregate, a material adverse effect on Bank One, and, except as would not be reasonably likely to have, either individually or in the aggregate, a material adverse effect on Bank One, the accountings for each such fiduciary account are true and correct and accurately reflect the assets of such fiduciary account.

&bsp;

(iii) The records, systems, controls, data and information of Bank One and its Subsidiaries are recorded, stored, maintained and operated under means (including any electronic, mechanical or photographic process, whether computerized or not) that are under the exclusive ownership and direct control of Bank One or its Subsidiaries or accountants (including all means of access thereto and therefrom), except for any non–exclusive ownership and non–direct control that would not reasonably be expected to have a materially adverse effect on the system of internal accounting controls described in the following sentence. As and to the extent described in the Bank One SEC Documents filed with the SEC prior to the date hereof, Bank One and its Subsidiaries have devised and maintain a system of internal accounting controls sufficient to provide reasonable assurances regarding the reliability of financial reporting and the preparation of financial statements in accordance with generally accepted accounting principles. Bank One (A) has designed disclosure controls and procedures to ensure that material information relating to Bank One, including its consolidated Subsidiaries, is made known to the management of Bank One by others within those entities, and (B) has disclosed, based on its most recent evaluation prior to the date hereof, to Bank One's auditors and the audit committee of Bank One's Board of Directors (1) any significant deficiencies in the design or operation of internal controls which could adversely affect in any material respect Bank One's ability to record, process, summarize and report financial data and have identified for Bank One's auditors any material weaknesses in internal controls and (2) any fraud, whether or not material, that involves management or other employees who have a significant role in Bank One's internal controls. Bank One has made available to JPMorgan Chase a summary of any such disclosure made by management to Bank One's auditors and audit committee since January 1, 2002.

(g) *Legal Proceedings.* Except as disclosed in the Bank One SEC Documents filed prior to the date of this Agreement or as set forth in the Bank One Disclosure Schedule, there is no suit, action, investigation or proceeding (whether judicial, arbitral, administrative or other) pending or, to the knowledge of Bank One, threatened, against or affecting Bank One or any Subsidiary of Bank One as to which there is a significant possibility of an

A–11

adverse outcome which would, individually or in the aggregate, have a material adverse effect on Bank One, nor is there any judgment, decree, injunction, rule or order of any Governmental Entity or arbitrator outstanding against Bank One or any Subsidiary of Bank One having or which would reasonably be expected to have, individually or in the aggregate, a material adverse effect on Bank One or on the Surviving Corporation.

(h) *Taxes.* Bank One and each of its Subsidiaries have filed all material tax returns required to be filed by any of them and have paid (or Bank One has paid on their behalf), or have set up an adequate reserve for the payment of, all taxes required to be paid as shown on such returns, and the most recent financial statements contained in the Bank One SEC Documents reflect an adequate reserve, in accordance with generally accepted accounting principles, for all taxes payable by Bank One and its Subsidiaries accrued through the date of such financial statements. No material deficiencies or other claims for any taxes have been proposed, asserted or assessed against Bank One or any of its Subsidiaries that are not adequately reserved for. For the purpose of this Agreement, the term *"tax"* (including, with correlative meaning, the terms *"taxes"* and *"taxable"*) shall mean (i) all Federal, state, local and foreign income, profits, franchise, gross receipts, payroll, sales, employment, use, property, withholding, excise, occupancy and other taxes, duties or assessments of any nature whatsoever, together with all interest, penalties and additions imposed with respect to such amounts, (ii) liability for the payment of any amounts of the type described in clause (i) as a result of being or having been a member of an affiliated, consolidated, combined or unitary group, and (iii) liability for the payment of any amounts as a result of being party to any tax sharing agreement or as a result of any express or implied obligation to indemnify any other person with respect to the payment of any amounts of the type described in clause (i) or (ii). Neither Bank One nor any of its Subsidiaries has taken any action or knows of any fact, agreement, plan or other circumstance that is reasonably likely to prevent the Merger from qualifying as a reorganization within the meaning of Section 368(a) of the Code.

(i) *Certain Agreements.* Except as disclosed in or filed as exhibits to the Bank One SEC Documents filed prior to the date of this Agreement or as disclosed in the Bank One Disclosure Schedule and except for this Agreement and the Option Agreements, neither Bank One nor any of its Subsidiaries is a party to or bound by any contract, arrangement, commitment or understanding (i) with respect to the employment of any directors or executive officers, or with any consultants that are natural persons, involving the payment of $10 million or more per annum, (ii) which is a "material contract" (as such term is defined in Item 601(b)(10) of Regulation S-K of the SEC), (iii) which limits the ability of Bank One or any of its Subsidiaries to compete in any line of business, in any geographic area or with any person, or which requires referrals of business or requires Bank One or any of its affiliates to make available investment opportunities to any person on a priority, equal or exclusive basis, and in each case which limitation or requirement would reasonably be expected to be material to Bank One and its Subsidiaries taken as a whole, (iv) with or to a labor union or guild (including any collective bargaining agreement), (v) in the case of a Bank One Benefit Plan, any of the benefits of which will be increased, or the vesting of the benefits of which will be accelerated, by the occurrence of any of the transactions contemplated by this Agreement or the Option Agreements, or the value of any of the benefits of which will be calculated on the basis of any of the transactions contemplated by this Agreement or the Option Agreements, or (vi) which would prohibit or delay the consummation of any of the transactions contemplated by this Agreement or the Option Agreements. Bank One has previously made available to JPMorgan Chase complete and accurate copies of each contract, arrangement, commitment or understanding of the type described in this Section 3.1(i) (collectively referred to herein as the *"Bank One Contracts"*). All of the Bank One Contracts are valid and in full force and effect, except to the extent they have previously expired in accordance with their terms or if the failure to be

A-12

in full force and effect, individually or in the aggregate, would not reasonably be expected to have a material adverse effect on Bank One. Neither Bank One nor any of its Subsidiaries has, and to the best knowledge of Bank One, none of the other parties thereto have, violated any provision of, or committed or failed to perform any act, and no event or condition exists, which with or without notice, lapse of time or both would constitute a default under the provisions of, any Bank One Contract, except in each case for those violations and defaults which, individually or in the aggregate, would not reasonably be expected to result in a material adverse effect on Bank One.

(j) *Benefit Plans.* (i) With respect to each employee benefit plan (including, without limitation, any "employee benefit plan", as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("*ERISA*"), including, without limitation, multiemployer plans within the meaning of ERISA Section 3(37)) and all stock purchase, stock option, severance, employment, change-in-control, fringe benefit, collective bargaining, bonus, incentive, deferred compensation and other material employee benefit plans, agreements, programs, policies or other arrangements, whether or not subject to ERISA, whether formal or informal, oral or written, legally binding or not (all the foregoing being herein called "*Benefit Plans*"), under which any employee or former employee of Bank One or any of its Subsidiaries has any present or future right to benefits, maintained or contributed to by Bank One or any of its Subsidiaries or under which Bank One or any of its Subsidiaries has any present or future liability (the "*Bank One Benefit Plans*"), Bank One has made available, or within 30 days after the execution hereof will make available, to JPMorgan Chase a true and correct copy of (A) the most recent annual report (Form 5500) filed with the IRS, (B) such Bank One Benefit Plan, (C) each trust agreement relating to such Bank One Benefit Plan, (D) the most recent summary plan description for each Bank One Benefit Plan for which a summary plan description is required by ERISA, (E) the most recent actuarial report or valuation relating to a Bank One Benefit Plan subject to Title IV of ERISA and (F) the most recent determination letter issued by the IRS with respect to any Bank One Benefit Plan qualified under Section 401(a) of the Code.

(ii) With respect to the Bank One Benefit Plans, individually and in the aggregate, no event has occurred and, to the knowledge of Bank One, there exists no condition or set of circumstances, in connection with which Bank One or any of its Subsidiaries could be subject to any liability that would reasonably be expected to have a material adverse effect on Bank One under ERISA, the Code or any other applicable law.

(iii) True and complete copies of the Bank One Stock Plans as in effect on the date hereof have been, or within 30 days after the execution hereof will be, provided or made available to JPMorgan Chase.

(iv) Except as set forth in the Bank One Disclosure Schedule, no Bank One Benefit Plan or Bank One Stock Plan exists that could result in the payment to any present or former employee of Bank One or any Subsidiary of Bank One of any money or other property or accelerate or provide any other rights or benefits to any present or former employee of Bank One or any Subsidiary of Bank One as a result of the transactions contemplated by this Agreement, whether or not such payment would constitute a parachute payment within the meaning of Code Section 280G.

(k) *Subsidiaries.* Exhibit 21 to Bank One's Annual Report on Form 10-K for the fiscal year ended December 31, 2002 filed with the SEC prior to the date of this Agreement includes all the Subsidiaries of Bank One which are Significant Subsidiaries. Each of Bank One's Subsidiaries that is a bank (as defined in the BHC Act) (i) is listed in Section 3.1(k) of the Bank One Disclosure Schedule and (ii) is an "insured bank" as defined in the Federal Deposit Insurance Act (the "*FDIA*") and applicable regulations thereunder. Except as set forth in Section 3.1(k) of the Bank One Disclosure Schedule, all of the shares of capital

A-13

stock of each of the Subsidiaries held by Bank One or by another Bank One Subsidiary are fully paid and, except as provided in 12 U.S.C. Section 55, nonassessable and are owned by Bank One or a Subsidiary of Bank One free and clear of any claim, lien or encumbrance.

(l) *Agreements with Regulators.* Except as set forth in Section 3.1(l) of the Bank One Disclosure Schedule, neither Bank One nor any Subsidiary of Bank One is a party to any written agreement, consent decree or memorandum of understanding with, or a party to any commitment letter or similar undertaking to, or is subject to any cease–and–desist or other order or directive by, or is a recipient of any extraordinary supervisory letter from, or had adopted any policies, procedures or board resolutions at the request of, any Governmental Entity which restricts materially the conduct of its business, or in any manner relates to its capital adequacy, its credit or risk management policies or its management, nor has Bank One been advised by any Governmental Entity that it is contemplating issuing or requesting (or is considering the appropriateness of issuing or requesting) any such agreement, decree, memorandum of understanding, extraordinary supervisory letter, commitment letter, order, directive or similar submission, or any such policy, procedure or board resolutions.

(m) *Absence of Certain Changes or Events.* Except as disclosed in the Bank One SEC Documents filed prior to the date of this Agreement or, in the case of actions taken after the date hereof, except as permitted by Section 4.1, since September 30, 2003 (i) Bank One and its Subsidiaries have conducted their respective businesses in the ordinary course consistent with their past practices and (ii) there has not been any change, circumstance or event (including any event involving a prospective change) which has had, or would reasonably be expected to have, a material adverse effect on Bank One.

(n) *Board Approval.* The Board of Directors of Bank One, by resolutions duly adopted by unanimous vote of those voting at a meeting duly called and held (the *"Bank One Board Approval"*), has (i) determined that this Agreement, the Option Agreements and the Merger are fair to and in the best interests of Bank One and its stockholders and declared the Merger to be advisable, (ii) approved this Agreement, the Option Agreements and the Merger, and (iii) recommended that the stockholders of Bank One adopt this Agreement and directed that such matter be submitted for consideration by Bank One stockholders at the Bank One Stockholders Meeting (as defined in Section 5.1(b)). The Bank One Board Approval constitutes approval of this Agreement, the Bank One Stock Option Agreement and the Merger (i) for purposes of Section 203 of the DGCL and (ii) by the "Disinterested Directors" of Bank One pursuant to clause "First" of Subsection (b) of Article "Twelfth" of Bank One's Certificate of Incorporation, such that no additional stockholder approval (other than the Required Bank One Vote (as defined in Section 3.1(o)) shall be required pursuant to such Article to consummate the Merger and the other transactions contemplated by this Agreement and the Option Agreements. To the knowledge of Bank One, except for Section 203 of the DGCL (which has been rendered inapplicable), no state takeover statute is applicable to this Agreement, the Option Agreements, the Merger or the other transactions contemplated hereby or thereby.

(o) *Vote Required.* The affirmative vote of the holders of a majority of the outstanding shares of Bank One Common Stock to adopt this Agreement (the *"Required Bank One Vote"*) is the only vote of the holders of any class or series of Bank One capital stock necessary to approve and adopt this Agreement and the transactions contemplated hereby (including the Merger).

(p) *Properties.* Except as disclosed in the Bank One SEC Documents filed prior to the date of this Agreement, Bank One or one of its Subsidiaries (i) has good and marketable title to all the properties and assets reflected in the latest audited balance sheet included in such Bank One SEC Documents as being owned by Bank One or one of its Subsidiaries or acquired after the date thereof which are material to Bank One's business on a consolidated

A–14

basis (except properties sold or otherwise disposed of since the date thereof in the ordinary course of business), free and clear of all claims, liens, charges, security interests or encumbrances of any nature whatsoever, except (A) statutory liens securing payments not yet due, (B) liens on assets of Subsidiaries of Bank One which are banks incurred in the ordinary course of their banking business and (C) such imperfections or irregularities of title, claims, liens, charges, security interests or encumbrances as do not materially affect the use of the properties or assets subject thereto or affected thereby or otherwise materially impair business operations at such properties, and (ii) is the lessee of all leasehold estates reflected in the latest audited financial statements included in such Bank One SEC Documents or acquired after the date thereof which are material to its business on a consolidated basis (except for leases that have expired by their terms since the date thereof) and is in possession of the properties purported to be leased thereunder, and each such lease is valid without default thereunder by the lessee or, to Bank One's knowledge, the lessor, except in the case of clauses (i) and (ii) above as would not reasonably be expected to have a material adverse effect on Bank One.

(q) *Intellectual Property*  Bank One and its Subsidiaries own or have a valid license to use all trademarks, service marks and trade names (including any registrations or applications for registration of any of the foregoing) (collectively, the *"Bank One Intellectual Property"*) necessary to carry on their business substantially as currently conducted, except where such failures to own or validly license such Bank One Intellectual Property would not, individually or in the aggregate, reasonably be expected to have a material adverse effect on Bank One. Neither Bank One nor any such Subsidiary has received any notice of infringement of or conflict with, and to Bank One's knowledge, there are no infringements of or conflicts with, the rights of others with respect to the use of any Bank One Intellectual Property that individually or in the aggregate, in either such case, would reasonably be expected to have a material adverse effect on Bank One.

(r) *Brokers or Finders*  No agent, broker, investment banker, financial advisor or other firm or person is or will be entitled to any broker's or finder's fee or any other similar commission or fee in connection with any of the transactions contemplated by this Agreement, except Lazard, and Bank One agrees to indemnify JPMorgan Chase and to hold JPMorgan Chase harmless from and against any and all claims, liabilities or obligations with respect to any other fees, commissions or expenses asserted by any person on the basis of any act or statement alleged to have been made by Bank One or its affiliates.

(s) *Opinion of Bank One Financial Advisor*  Bank One has received the opinion of its financial advisor, Lazard, dated the date of this Agreement, to the effect that the Exchange Ratio is fair, from a financial point of view, to Bank One and the holders of Bank One Common Stock.

(t) *Investment Adviser Subsidiaries, Funds, Clients*  (i) Bank One and certain of its Subsidiaries (the *"Bank One Advisory Entities"*) provide investment management, investment advisory and sub-advisory services (including management and advice provided to separate accounts and participation in wrap fee programs). For purposes of this Agreement, *"Bank One Advisory Contract"* means each Bank One contract for such services provided by a Bank One Advisory Entity; *"Bank One Advisory Client"* means each party to a Bank One Advisory Contract other than the applicable Bank One Advisory Entity; *"Bank One Fund Client"* means each Bank One Advisory Client that is registered as an investment company under the Investment Company Act; and *"Sponsored"* means, when used with reference to any Bank One Fund Client or JPMorgan Chase Fund Client (as defined in Section 3.2(t)), any such Bank One Fund Client or JPMorgan Chase Fund Client, as the case may be, a majority of the officers of which are employees of Bank One or any of its Subsidiaries or JPMorgan Chase or any of its Subsidiaries, as the case may be, or of which Bank One or

A-15

any of its Subsidiaries or JPMorgan Chase or any of its Subsidiaries, as the case may be, holds itself out as the sponsor

(ii) Each Sponsored Bank One Fund Client and Bank One Advisory Entity (A) has since January 1, 1999 operated and is currently operating in compliance with all laws, regulations, rules, judgments, orders or rulings of any Governmental Entity applicable to it or its business and (B) has all permits, licenses, exemptions, orders and approvals required for the operation of its business or ownership of its properties and assets as presently conducted except, in the case of clauses (A) and (B) above, where the failure to be in compliance or failure to have such permits, licenses, exemptions, orders and approvals, individually or in the aggregate, would not reasonably be expected to have a material adverse effect on Bank One. There is no action, suit, proceeding or investigation pending or, to the knowledge of Bank One, threatened which would reasonably be expected to lead to the revocation, amendment, failure to renew, limitation, suspension or restriction of any such permits, licenses, exemptions, orders and approvals, except for such revocations, amendments, failures to renew, limitations, suspensions or restrictions which, individually or in the aggregate, would not reasonably be expected to have a material adverse effect on Bank One.

(iii) Each Bank One Advisory Entity has been and is in compliance with each Bank One Advisory Contract to which it is a party, except where the failure to be so in compliance, individually or in the aggregate, would not reasonably be expected to have a material adverse effect on Bank One.

(iv) The accounts of each Bank One Advisory Client subject to ERISA have been managed by the applicable Subsidiary of Bank One in compliance with the applicable requirements of ERISA, except where the failure to be in compliance, individually or in the aggregate, would not reasonably be expected to have a material adverse effect on Bank One.

(v) As of the date hereof, except as would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on Bank One, neither Bank One nor any of the Bank One Advisory Entities nor any "affiliated person" (as defined in the Investment Company Act of 1940, as amended (the *"Investment Company Act"*)) of any of them is ineligible pursuant to Section 9(a) or (b) of the Investment Company Act to serve as an investment adviser (or in any other capacity contemplated by the Investment Company Act) to a registered investment company; and except as would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on Bank One, none of Bank One, any Bank One Advisory Entity or any "person associated with an investment advisor" (as defined in the Investment Advisers Act of 1940, as amended (the *"Investment Advisers Act"*)) of any of them is ineligible pursuant to Section 203 of the Investment Advisers Act to serve as an investment advisor or as a person associated with a registered investment advisor.

3.2. *Representations and Warranties of JPMorgan Chase.* Except (x) with respect to any subsection of this Section 3.2, as set forth in the correspondingly identified subsection of the JPMorgan Chase Disclosure Schedule (as defined in Section 3.2(b)(iii)) or (y) as disclosed in the JPMorgan Chase SEC Documents (as defined in Section 3.2(d)) filed with the SEC prior to the date hereof, JPMorgan Chase represents and warrants to Bank One as follows:

(a) *Organization, Standing and Power.* JPMorgan Chase is a bank holding company registered under the BHC Act, which has duly elected to become, and meets the applicable requirements for qualification as, a financial holding company pursuant to Section 4(l) of the BHC Act. Each of JPMorgan Chase and its Significant Subsidiaries is a bank, corporation or partnership duly organized, validly existing and, in the case of banks or corporations, in good standing under the laws of its jurisdiction of incorporation or organization, has all requisite

A–16

power and authority to own, lease and operate its properties and to carry on its business as now being conducted, and is duly qualified and in good standing to do business in each jurisdiction in which the nature of its business or the ownership or leasing of its properties makes such qualification necessary, other than in such jurisdictions where the failure so to qualify would not, either individually or in the aggregate, reasonably be expected to have a material adverse effect on JPMorgan Chase. The Certificate of Incorporation and By-laws of JPMorgan Chase, copies of which were previously furnished to Bank One, are true, complete and correct copies of such documents in effect on the date of this Agreement.

(b) *Capital Structure.* (i) The authorized capital stock of JPMorgan Chase consists of 4,500,000,000 shares of JPMorgan Chase Common Stock and 200,000,000 shares of JPMorgan Chase Preferred Stock. As of the close of business on December 31, 2003 (A) 2,044,436,509 shares of JPMorgan Chase Common Stock were issued (including shares held in treasury), 404,234,649 shares of JPMorgan Chase Common Stock were reserved for issuance upon the exercise or payment of outstanding stock options, stock units or other awards or pursuant to JPMorgan Chase's dividend reinvestment plan, Value Shares, Success Shares and Vision Shares Plans, the Deferred Compensation Plan for Non-Employee Directors of JPMorgan Chase and JPMorgan Chase Bank, the Post-Retirement Compensation Plan for Non-Employee Directors, JPMorgan Chase's Employee Stock Purchase Plan, the Deferred Compensation Plan of JPMorgan Chase and Participating Companies, the JPMorgan Chase 1996 Long-Term Incentive Plan, JPMorgan Chase's Stock Option Plan, JPMorgan Chase's Directors Stock Arrangements, JPMorgan Chase's Corporate Performance Incentive Plan and long-term incentive and other stock plans assumed by JPMorgan Chase in connection with the combinations with and acquisitions of Manufacturers Hanover Corporation, The Chase Manhattan Banking Corporation, Margaretten Financial Corporation, Hambrecht & Quist Group and J.P. Morgan & Co. Incorporated (such stock options, units and other plans and programs, collectively, the "*JPMorgan Chase Stock Plans*"), and 1,816,495 shares of JPMorgan Chase Common Stock were held by JPMorgan Chase in its treasury or by its Subsidiaries (other than trading account shares, trust account shares or DPC shares); and (B) 17,800,432 shares of JPMorgan Chase Preferred Stock were outstanding, consisting of 2,420,000 shares of Adjustable Rate Cumulative Preferred Stock, Series A, 280,432 shares of 6.63% Cumulative Preferred Stock, Series H, 2,000,000 shares of Adjustable Rate Cumulative Preferred Stock, Series L, 4,000,000 shares of Fixed/ Adjustable Rate Noncumulative Preferred Stock and 9,100,000 shares of Adjustable Rate Cumulative Preferred Stock, Series N. All outstanding shares of JPMorgan Chase Common Stock and JPMorgan Chase Preferred Stock have been duly authorized and validly issued and are fully paid and non-assessable and not subject to preemptive rights. The shares of JPMorgan Chase Common Stock (x) to be issued pursuant to or as specifically contemplated by this Agreement (including without limitation as contemplated by Section 5.8 hereof), or (y) which may be issued pursuant to the JPMorgan Chase Stock Option Agreement, will have been duly authorized as of the Effective Time and, if and when issued in accordance with the terms hereof or thereof, will be validly issued, fully paid and non-assessable and not subject to preemptive rights.

(ii) No Voting Debt of JPMorgan Chase is issued or outstanding.

(iii) Except for (A) this Agreement, (B) options or awards issued or to be issued under the JPMorgan Chase Stock Plans, which represented, as of December 31, 2003, the right to acquire up to an aggregate of 463,634,649 shares of JPMorgan Chase Common Stock, (C) the JPMorgan Chase Stock Option Agreement, and (D) agreements entered into and securities and other instruments issued after the date of this Agreement as permitted by Section 4.2, there are no options, warrants, calls, rights, commitments or agreements of any character to which JPMorgan Chase or any Subsidiary of JPMorgan Chase is a party or by which it or any such Subsidiary is bound obligating JPMorgan Chase or any Subsidiary of

A-17

JPMorgan Chase to issue, deliver or sell, or cause to be issued, delivered or sold, additional shares of capital stock or any Voting Debt or stock appreciation rights of JPMorgan Chase or of any Subsidiary of JPMorgan Chase or obligating JPMorgan Chase or any Subsidiary of JPMorgan Chase to grant, extend or enter into any such option, warrant, call, right, commitment or agreement. There are no outstanding contractual obligations of JPMorgan Chase or any of its Subsidiaries to (A) repurchase, redeem or otherwise acquire any shares of capital stock of JPMorgan Chase or any of its Subsidiaries, other than the JPMorgan Chase Stock Option Agreement, or (B) except as set forth in the disclosure schedule delivered by JPMorgan Chase to Bank One concurrently herewith (the *"JPMorgan Chase Disclosure Schedule"*), pursuant to which JPMorgan Chase or any of its Subsidiaries is or could be required to register shares of JPMorgan Chase Common Stock or other securities under the Securities Act, except the JPMorgan Chase Stock Option Agreement and any such contractual obligations entered into after the date hereof as permitted by Section 4.2.

(iv) Since December 31, 2003, and except as permitted by Section 4.2, JPMorgan Chase has not (A) issued or permitted to be issued any shares of capital stock, stock appreciation rights or securities exercisable or exchangeable for or convertible into shares of capital stock, of JPMorgan Chase or any of its Subsidiaries, other than pursuant to and as required by the terms of the JPMorgan Chase Stock Option Agreement, the JPMorgan Chase Stock Plans and any employee stock options and other awards issued under the JPMorgan Chase Stock Plans prior to the date hereof (or issued after the date hereof in compliance with Sections 4.2(c) and 4.2(k)); (B) repurchased, redeemed or otherwise acquired, directly or indirectly through one or more JPMorgan Chase Subsidiaries, any shares of capital stock of JPMorgan Chase or any of its Subsidiaries (other than the acquisition of trading account shares, trust account shares and DPC shares in the ordinary course of business consistent with past practice); or (C) declared, set aside, made or paid to the stockholders of JPMorgan Chase dividends or other distributions on the outstanding shares of capital stock of JPMorgan Chase, other than (x) regular quarterly cash dividends on the JPMorgan Chase Common Stock at a rate not in excess of the regular quarterly cash dividend most recently declared by JPMorgan Chase prior to the date of this Agreement and (y) cash dividends on the JPMorgan Chase Preferred Stock as required by the terms of such preferred stock as in effect on the date hereof.

(c) *Authority.* (i) JPMorgan Chase has all requisite corporate power and authority to enter into this Agreement and the Option Agreements and, subject in the case of the consummation of the Merger to the adoption of this Agreement by the requisite vote of the holders of JPMorgan Chase Common Stock, to consummate the transactions contemplated hereby and thereby. The execution and delivery of this Agreement and the Option Agreements and the consummation of the transactions contemplated hereby and thereby have been duly authorized by all necessary corporate action on the part of JPMorgan Chase, subject in the case of the consummation of the Merger to the adoption of this Agreement by the stockholders of JPMorgan Chase. This Agreement and the Option Agreements have been duly executed and delivered by JPMorgan Chase and each constitutes a valid and binding obligation of JPMorgan Chase, enforceable against JPMorgan Chase in accordance with its terms, subject to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' rights and to general equitable principles.

(ii) The execution and delivery of this Agreement and the Option Agreements do not, and the consummation of the transactions contemplated hereby and thereby will not, (A) result in any Violation pursuant to any provision of the Certificate of Incorporation or By-laws of JPMorgan Chase or any Subsidiary of JPMorgan Chase, or (B) except as disclosed in the JPMorgan Chase Disclosure Schedule and subject to obtaining or making the consents, approvals, orders, authorizations, registrations, declarations and filings referred to

A-18

in paragraph (iii) below, result in any Violation of any loan or credit agreement, note, mortgage, indenture, lease, JPMorgan Chase Benefit Plan (as defined in Section 3.2(j)) or other agreement, obligation, instrument, permit, concession, franchise, license, judgment, order, decree, statute, law, ordinance, rule or regulation applicable to JPMorgan Chase or any Subsidiary of JPMorgan Chase or their respective properties or assets which Violation, individually or in the aggregate, would reasonably be expected to have a material adverse effect on JPMorgan Chase

(iii) No consent, approval, order or authorization of, or registration, declaration or filing with, any Governmental Entity is required by or with respect to JPMorgan Chase or any Subsidiary of JPMorgan Chase in connection with the execution and delivery of this Agreement and the Option Agreements by JPMorgan Chase or the consummation by JPMorgan Chase of the transactions contemplated hereby and thereby, the failure to make or obtain which would have a material adverse effect on JPMorgan Chase, except for (A) the filing of applications and notices with the Federal Reserve under the BHC Act and the FRA and approval of same, (B) the filing with the SEC of the Joint Proxy Statement/ Prospectus, the Form S–4 and such reports under Sections 12, 13(a), 13(d), 13(g) and 16(a) of the Exchange Act as may be required in connection with this Agreement, the Option Agreements and the transactions contemplated hereby and thereby and the obtaining from the SEC of such orders as may be required in connection therewith, (C) such filings and approvals as are required to be made or obtained under the securities or blue sky laws of various states in connection with the transactions contemplated by this Agreement, (D) the filing of the Certificate of Merger with the Secretary of State of the State of Delaware, (E) the State Banking Approvals, (F) consents, authorizations, approvals, filings or exemptions in connection with compliance with the applicable provisions of federal or state securities laws relating to the regulation of broker–dealers, investment companies and investment advisors and federal commodities laws relating to the regulation of futures commission merchants and the rules and regulations of the SEC and the CFTC thereunder and of any applicable industry self–regulatory organization, and the rules of the NYSE, or which are required under consumer finance, mortgage banking and other similar laws of the various states in which Bank One or any of its Subsidiaries is licensed or regulated, (G) notices or filings under the HSR Act, (H) the Foreign Antitrust Approvals, (I) such other filings, authorizations, orders and approvals as may be required under foreign banking and similar laws with respect to bank Subsidiaries of Bank One that are chartered or licensed under the laws of foreign jurisdictions, and (J) such filings, notifications and approvals as are required under the SBIA and the rules and regulations of the SBA thereunder

(d) *SEC Documents; Regulatory Reports; Undisclosed Liabilities*. (i) JPMorgan Chase has filed all required reports, schedules, registration statements and other documents with the SEC since December 31, 2000 (the *"JPMorgan Chase SEC Documents"*). As of their respective dates of filing with the SEC (or, if amended or superseded by a filing prior to the date hereof, as of the date of such filing), the JPMorgan Chase SEC Documents complied in all material respects with the requirements of the Securities Act or the Exchange Act, as the case may be, and the rules and regulations of the SEC thereunder applicable to such JPMorgan Chase SEC Documents, and none of the JPMorgan Chase SEC Documents when filed contained any untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading. The financial statements of JPMorgan Chase included in the JPMorgan Chase SEC Documents complied as to form, as of their respective dates of filing with the SEC, in all material respects with all applicable accounting requirements and with the published rules and regulations of the SEC with respect thereto (except, in the case of unaudited statements, as permitted by Form 10–Q of the SEC), have been prepared in accordance with generally accepted accounting principles

A–19

applied on a consistent basis during the periods involved (except as may be disclosed therein) and fairly present in all material respects the consolidated financial position of JPMorgan Chase and its consolidated Subsidiaries and the consolidated results of operations, changes in stockholders' equity and cash flows of such companies as of the dates and for the periods shown.

(ii) Other than the JPMorgan Chase SEC Documents, which are addressed in clause (i) above, JPMorgan Chase and each of its Subsidiaries have timely filed all reports, registrations and statements, together with any amendments required to be made with respect thereto, that they were required to file since December 31, 2000 with any Governmental Entity, and have paid all fees and assessments due and payable in connection therewith, except where the failure to file such report, registration or statement or to pay such fees and assessments is not reasonably likely to have, either individually or in the aggregate, a material adverse effect on JPMorgan Chase.

(iii) Except for (A) those liabilities that are fully reflected or reserved for in the consolidated financial statements of JPMorgan Chase included in its Quarterly Report on Form 10-Q for the fiscal quarter ended September 30, 2003, as filed with the SEC prior to the date of this Agreement, (B) liabilities incurred since September 30, 2003 in the ordinary course of business consistent with past practice, and (C) liabilities which would not, individually or in the aggregate, reasonably be expected to have a material adverse effect on JPMorgan Chase, JPMorgan Chase and its Subsidiaries do not have, and since September 30, 2003 JPMorgan Chase and its Subsidiaries have not incurred (except as permitted by Section 4.2), any liabilities or obligations of any nature whatsoever (whether accrued, absolute, contingent or otherwise and whether or not required to be reflected in JPMorgan Chase's financial statements in accordance with generally accepted accounting principles).

(e) *Information Supplied.* None of the information supplied or to be supplied by JPMorgan Chase for inclusion or incorporation by reference in (i) the Form S-4 will, at the time the Form S-4 is filed with the SEC and at the time it becomes effective under the Securities Act, contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements therein not misleading and (ii) the Joint Proxy Statement/ Prospectus will, at the date of mailing to stockholders and at the times of the meetings of stockholders to be held in connection with the Merger, contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading. The Joint Proxy Statement/ Prospectus will comply as to form in all material respects with the requirements of the Exchange Act and the rules and regulations of the SEC thereunder, and the Form S-4 will comply as to form in all material respects with the requirements of the Securities Act and the rules and regulations of the SEC thereunder, except that no representation or warranty is made by JPMorgan Chase with respect to statements made or incorporated by reference therein based on information supplied by Bank One for inclusion or incorporation by reference in the Joint Proxy Statement/ Prospectus or Form S-4.

(f) *Compliance with Applicable Laws and Reporting Requirements.* (i) JPMorgan Chase and its Subsidiaries hold all permits, licenses, variances, exemptions, orders and approvals of all Governmental Entities which are material to the operation of the businesses of JPMorgan Chase and its Subsidiaries, taken as a whole (the "*JPMorgan Chase Permits*"), and JPMorgan Chase and its Subsidiaries are in compliance with the terms of the JPMorgan Chase Permits and all applicable laws and regulations, except where the failure so to hold or comply, individually or in the aggregate, would not reasonably be expected to have a material adverse effect on JPMorgan Chase. Except as disclosed in the JPMorgan Chase SEC Documents filed prior to the date hereof or as set forth in the JPMorgan Chase

A-20

Disclosure Schedule, the businesses of JPMorgan Chase and its Subsidiaries are not being conducted in violation of any law, ordinance or regulation of any Governmental Entity (including but not limited to the Sarbanes–Oxley Act of 2002 and the USA PATRIOT Act of 2001), except for possible violations which, individually or in the aggregate, do not have, and would not reasonably be expected to have, a material adverse effect on JPMorgan Chase. To the knowledge of JPMorgan Chase, no investigation by any Governmental Entity with respect to JPMorgan Chase or any of its Subsidiaries is pending or threatened, other than, in each case, those the outcome of which, individually or in the aggregate, would not reasonably be expected to have a material adverse effect on JPMorgan Chase.

(ii) Except as is not reasonably likely to have, either individually or in the aggregate, a material adverse effect on JPMorgan Chase, JPMorgan Chase and each of its Subsidiaries have properly administered all accounts for which it acts as a fiduciary, including accounts for which it serves as a trustee, agent, custodian, personal representative, guardian, conservator or investment advisor, in accordance with the terms of the governing documents, applicable state and federal law and regulation and common law. None of JPMorgan Chase, any of its Subsidiaries, or any director, officer or employee of JPMorgan Chase or of any JPMorgan Chase Subsidiary, has committed any breach of trust or fiduciary duty with respect to any such fiduciary account that is reasonably likely to have, either individually or in the aggregate, a material adverse effect on JPMorgan Chase, and, except as would not be reasonably likely to have, either individually or in the aggregate, a material adverse effect on JPMorgan Chase, the accountings for each such fiduciary account are true and correct and accurately reflect the assets of such fiduciary account.

(iii) The records, systems, controls, data and information of JPMorgan Chase and its Subsidiaries are recorded, stored, maintained and operated under means (including any electronic, mechanical or photographic process, whether computerized or not) that are under the exclusive ownership and direct control of JPMorgan Chase or its Subsidiaries or accountants (including all means of access thereto and therefrom), except for any non–exclusive ownership and non–direct control that would not reasonably be expected to have a materially adverse effect on the system of internal accounting controls described in the following sentence. As and to the extent described in the JPMorgan Chase SEC Documents filed with the SEC prior to the date hereof, JPMorgan Chase and its Subsidiaries have devised and maintain a system of internal accounting controls sufficient to provide reasonable assurances regarding the reliability of financial reporting and the preparation of financial statements in accordance with generally accepted accounting principles. JPMorgan Chase (A) has designed disclosure controls and procedures to ensure that material information relating to JPMorgan Chase, including its consolidated Subsidiaries, is made known to the management of JPMorgan Chase by others within those entities, and (B) has disclosed, based on its most recent evaluation prior to the date hereof, to JPMorgan Chase's auditors and the audit committee of JPMorgan Chase's Board of Directors (1) any significant deficiencies in the design or operation of internal controls which could adversely affect in any material respect JPMorgan Chase's ability to record, process, summarize and report financial data and have identified for JPMorgan Chase's auditors any material weaknesses in internal controls and (2) any fraud, whether or not material, that involves management or other employees who have a significant role in JPMorgan Chase's internal controls. JPMorgan Chase has made available to Bank One a summary of any such disclosure made by management to JPMorgan Chase's auditors and audit committee since January 1, 2002.

(g) *Legal Proceedings.* Except as disclosed in the JPMorgan Chase SEC Documents filed prior to the date of this Agreement or as set forth in the JPMorgan Chase Disclosure Schedule, there is no suit, action, investigation or proceeding (whether judicial, arbitral, administrative or other) pending or, to the knowledge of JPMorgan Chase, threatened,

against or affecting JPMorgan Chase or any Subsidiary of JPMorgan Chase as to which there is a significant possibility of an adverse outcome which would, individually or in the aggregate, have a material adverse effect on JPMorgan Chase, nor is there any judgment, decree, injunction, rule or order of any Governmental Entity or arbitrator outstanding against JPMorgan Chase or any Subsidiary of JPMorgan Chase having, or which would reasonably be expected to have, individually or in the aggregate, a material adverse effect on JPMorgan Chase or on the Surviving Corporation.

(h) *Taxes*. JPMorgan Chase and each of its Subsidiaries have filed all material tax returns required to be filed by any of them and have paid (or JPMorgan Chase has paid on their behalf), or have set up an adequate reserve for the payment of, all taxes required to be paid as shown on such returns, and the most recent financial statements contained in the JPMorgan Chase SEC Documents reflect an adequate reserve, in accordance with generally accepted accounting principles, for all taxes payable by JPMorgan Chase and its Subsidiaries accrued through the date of such financial statements. No material deficiencies or other claims for any taxes have been proposed, asserted or assessed against JPMorgan Chase or any of its Subsidiaries that are not adequately reserved for. Neither JPMorgan Chase nor any of its Subsidiaries has taken any action or knows of any fact, agreement or plan or other circumstance that is reasonably likely to prevent the Merger from qualifying as a reorganization within the meaning of Section 368(a) of the Code.

(i) *Certain Agreements*. Except as disclosed in or filed as exhibits to the JPMorgan Chase SEC Documents filed prior to the date of this Agreement or as disclosed in the JPMorgan Chase Disclosure Schedule and except for this Agreement and the Option Agreements, neither JPMorgan Chase nor any of its Subsidiaries is a party to or bound by any contract, arrangement, commitment or understanding (i) with respect to the employment of any directors or executive officers, or with any consultants that are natural persons, involving the payment of $10 million or more per annum, (ii) which is a "material contract" (as such term is defined in Item 601(b)(10) of Regulation S–K of the SEC), (iii) which limits the ability of JPMorgan Chase or any of its Subsidiaries to compete in any line of business, in any geographic area or with any person, or which requires referrals of business or requires JPMorgan Chase or any of its affiliates to make available investment opportunities to any person on a priority, equal or exclusive basis, and in each case which limitation or requirement would reasonably be expected to be material to JPMorgan Chase and its Subsidiaries taken as a whole, (iv) with or to a labor union or guild (including any collective bargaining agreement), (v) in the case of a JPMorgan Chase Benefit Plan, any of the benefits of which will be increased, or the vesting of the benefits of which will be accelerated, by the occurrence of any of the transactions contemplated by this Agreement or the Option Agreements, or the value of any of the benefits of which will be calculated on the basis of any of the transactions contemplated by this Agreement or the Option Agreements, or (vi) which would prohibit or delay the consummation of any of the transactions contemplated by this Agreement or the Option Agreements. JPMorgan Chase has previously made available to Bank One complete and accurate copies of each contract, arrangement, commitment or understanding of the type described in this Section 3.2(i) (collectively referred to herein as *"JPMorgan Chase Contracts"*). All of the JPMorgan Chase Contracts are valid and in full force and effect, except to the extent they have previously expired in accordance with their terms or if the failure to be in full force and effect, individually or in the aggregate, would not reasonably be expected to have a material adverse effect on JPMorgan Chase. Neither JPMorgan Chase nor any of its Subsidiaries has, and to the best knowledge of JPMorgan Chase, none of the other parties thereto have, violated any provision of, or committed or failed to perform any act, and no event or condition exists, which, with or without notice, lapse of time or both would constitute a default under the provisions of, any JPMorgan Chase Contract, except in each case for those violations and defaults which,

A–22

individually or in the aggregate, would not reasonably be expected to result in a material adverse effect on JPMorgan Chase.

(j) *Benefit Plans*. (i) With respect to each Benefit Plan maintained or contributed to by JPMorgan Chase or any of its Subsidiaries or under which JPMorgan Chase or any of its Subsidiaries have any present or future liability (the "*JPMorgan Chase Benefit Plans*"), JPMorgan Chase has made available, or within 30 days after the execution hereof will make available, to Bank One a true and correct copy of (A) the most recent annual report (Form 5500) filed with the IRS, (B) such JPMorgan Chase Benefit Plan, (C) each trust agreement relating to such JPMorgan Chase Benefit Plan, (D) the most recent summary plan description for each JPMorgan Chase Benefit Plan for which a summary plan description is required by ERISA, (E) the most recent actuarial report or valuation relating to a JPMorgan Chase Benefit Plan subject to Title IV of ERISA and (F) the most recent determination letter issued by the IRS with respect to any JPMorgan Chase Benefit Plan qualified under Section 401(a) of the Code.

(ii) With respect to the JPMorgan Chase Benefit Plans, individually and in the aggregate, no event has occurred and, to the knowledge of JPMorgan Chase, there exists no condition or set of circumstances in connection with which JPMorgan Chase or any of its Subsidiaries could be subject to any liability that would reasonably be expected to have a material adverse effect on JPMorgan Chase under ERISA, the Code or any other applicable law.

(iii) True and complete copies of the JPMorgan Chase Stock Plans as in effect on the date hereof have been, or within 30 days after the execution hereof will be, provided or made available to Bank One.

(iv) Except as set forth in the JPMorgan Chase Disclosure Schedule, no JPMorgan Chase Benefit Plan or JPMorgan Chase Stock Plan exists that could result in the payment to any present or former employee of JPMorgan Chase or any Subsidiary of JPMorgan Chase of any money or other property or accelerate or provide any other rights or benefits to any present or former employee of JPMorgan Chase or any Subsidiary of JPMorgan Chase as a result of the transactions contemplated by this Agreement, whether or not such payment would constitute a parachute payment within the meaning of Code Section 280G.

(k) *Subsidiaries*. Exhibit 21.1 to JPMorgan Chase's Annual Report on Form 10–K for the fiscal year ended December 31, 2002 filed with the SEC prior to the date of this Agreement includes all the Subsidiaries of JPMorgan Chase which are Significant Subsidiaries. Each of JPMorgan Chase's Subsidiaries that is a bank (as defined in the BHC Act) (i) is listed in Section 3.2(k) of the JPMorgan Chase Disclosure Schedule and (ii) is an "insured bank" as defined in the FDIA and applicable regulations thereunder. All of the shares of capital stock of each of the Subsidiaries held by JPMorgan Chase or by another Subsidiary of JPMorgan Chase are fully paid and, except as provided in Sections 5004(8) and 114 of the New York Banking Law and 12 U.S.C. Section 55, nonassessable and are owned by JPMorgan Chase or a Subsidiary of JPMorgan Chase free and clear of any claim, lien or encumbrance.

(l) *Agreements with Regulators*. Except as set forth in Section 3.2(l) of the JPMorgan Chase Disclosure Schedule, neither JPMorgan Chase nor any Subsidiary of JPMorgan Chase is a party to any written agreement, consent decree or memorandum of understanding with, or a party to any commitment letter or similar undertaking to, or is subject to any cease–and–desist or other order or directive by, or is a recipient of any extraordinary supervisory letter from, or has adopted any policies, procedures or board resolutions at the request of, any Governmental Entity which restricts materially the conduct of its business, or in any manner relates to its capital adequacy, its credit or risk management policies or its management, nor has JPMorgan Chase been advised by any

A–23

Governmental Entity that it is contemplating issuing or requesting (or is considering the appropriateness of issuing or requesting) any such agreement, decree, memorandum of understanding, extraordinary supervisory letter, commitment letter, order, directive or similar submission, or any such policy, procedure or board resolutions.

(m) *Absence of Certain Changes or Events* Except as disclosed in the JPMorgan Chase SEC Documents filed prior to the date of this Agreement (or, in the case of actions taken after the date hereof, except as permitted by Section 4.2), since September 30, 2003 (i) JPMorgan Chase and its Subsidiaries have conducted their respective businesses in the ordinary course consistent with their past practices and (ii) there has not been any change, circumstance or event (including any event involving a prospective change) which has had, or would reasonably be expected to have, a material adverse effect on JPMorgan Chase.

(n) *Board Approval.* The Board of Directors of JPMorgan Chase, by resolutions duly adopted by unanimous vote of those voting at a meeting duly called and held (the *"JPMorgan Chase Board Approval"*), has (i) determined that this Agreement, the Option Agreements and the Merger are fair to and in the best interests of JPMorgan Chase and its stockholders and declared the Merger to be advisable, (ii) approved this Agreement, the Option Agreements and the Merger, and (iii) recommended that the stockholders of JPMorgan Chase adopt this Agreement and directed that such matter be submitted for consideration by JPMorgan Chase stockholders at the JPMorgan Chase Stockholders Meeting (as defined in Section 5.1(c)). The JPMorgan Chase Board Approval constitutes approval of this Agreement, the JPMorgan Chase Stock Option Agreement and the Merger for purposes of Section 203 of the DGCL. To the knowledge of JPMorgan Chase, except for Section 203 of the DGCL (which has been rendered inapplicable), no state takeover statute is applicable to this Agreement, the Option Agreements, the Merger or the other transactions contemplated hereby or thereby.

(o) *Vote Required.* The affirmative vote of the holders of a majority of the outstanding shares of JPMorgan Chase Common Stock to adopt this Agreement (the *"Required JPMorgan Chase Vote"*) is the only vote of the holders of any class or series of JPMorgan Chase capital stock necessary to approve and adopt this Agreement and the transactions contemplated hereby (including the Merger).

(p) *Properties.* Except as disclosed in the JPMorgan Chase SEC Documents filed prior to the date of this Agreement, JPMorgan Chase or one of its Subsidiaries (i) has good and marketable title to all the properties and assets reflected in the latest audited balance sheet included in such JPMorgan Chase SEC Documents as being owned by JPMorgan Chase or one of its Subsidiaries or acquired after the date thereof which are material to JPMorgan Chase's business on a consolidated basis (except properties sold or otherwise disposed of since the date thereof in the ordinary course of business), free and clear of all claims, liens, charges, security interests or encumbrances of any nature whatsoever, except (A) statutory liens securing payments not yet due, (B) liens on assets of Subsidiaries of JPMorgan Chase which are banks incurred in the ordinary course of their banking business and (C) such imperfections or irregularities of title, claims, liens, charges, security interests or encumbrances as do not materially affect the use of the properties or assets subject thereto or affected thereby or otherwise materially impair business operations at such properties, and (ii) is the lessee of all leasehold estates reflected in the latest audited financial statements included in such JPMorgan Chase SEC Documents or acquired after the date thereof which are material to its business on a consolidated basis (except for leases that have expired by their terms since the date thereof) and is in possession of the properties purported to be leased thereunder and each such lease is valid without default thereunder by the lessee or, to JPMorgan Chase's knowledge, the lessor, except in the case of clauses (i) and (ii) above as would not reasonably be expected to have a material adverse effect on JPMorgan Chase.

A–24

(q) *Intellectual Property* JPMorgan Chase and its Subsidiaries own or have a valid license to use all trademarks, service marks and trade names (including any registrations or applications for registration of any of the foregoing) (collectively, the *"JPMorgan Chase Intellectual Property"*) necessary to carry on their business substantially as currently conducted, except where such failures to own or validly license such JPMorgan Chase Intellectual Property would not, individually or in the aggregate, reasonably be expected to have a material adverse effect on JPMorgan Chase. Neither JPMorgan Chase nor any such Subsidiary has received any notice of infringement of or conflict with, and to JPMorgan Chase's knowledge, there are no infringements of or conflicts with, the rights of others with respect to the use of any JPMorgan Chase Intellectual Property that individually or in the aggregate, would reasonably be expected to have a material adverse effect on JPMorgan Chase.

(r) *Brokers or Finders* No agent, broker, investment banker, financial advisor or other firm or person is or will be entitled to any broker's or finder's fee or any other similar commission or fee in connection with any of the transactions contemplated by this Agreement, except J P Morgan Securities Inc., and JPMorgan Chase agrees to indemnify Bank One and to hold Bank One harmless from and against any and all claims, liabilities or obligations with respect to any other fees, commissions or expenses asserted by any person on the basis of any act or statement alleged to have been made by JPMorgan Chase or its affiliates.

(s) *Opinion of JPMorgan Chase Financial Advisor* JPMorgan Chase has received the opinion of its financial advisor, J P Morgan Securities Inc., dated the date of this Agreement, to the effect that the Exchange Ratio is fair, from a financial point of view, to JPMorgan Chase.

(t) *Investment Adviser Subsidiaries; Funds; Clients.* (i) JPMorgan Chase and certain of its Subsidiaries (the *"JPMorgan Chase Advisory Entities"*) provide investment management, investment advisory and sub-advisory services (including management and advice provided to separate accounts and participation in wrap fee programs). For purposes of this Agreement, *"JPMorgan Chase Advisory Contract"* means each JPMorgan Chase contract for such services provided by a JPMorgan Chase Advisory Entity; *"JPMorgan Chase Advisory Client"* means each party to a JPMorgan Chase Advisory Contract other than the applicable JPMorgan Chase Advisory Entity; and *"JPMorgan Chase Fund Client"* means each JPMorgan Chase Advisory Client that is registered as an investment company under the Investment Company Act.

(ii) Each Sponsored JPMorgan Chase Fund Client and JPMorgan Chase Advisory Entity (A) has since January 1, 1999 operated and is currently operating in compliance with all laws, regulations, rules, judgments, orders or rulings of Governmental Entity applicable to it or its business and (B) has all permits, licenses, exemptions, orders and approvals required for the operation of its business or ownership of its properties and assets as presently conducted except, in the case of clauses (A) and (B) above, where the failure to be in compliance or failure to have such permits, licenses, exemptions, orders and approvals, individually or in the aggregate, would not reasonably be expected to have a material adverse effect on JPMorgan Chase. There is no action, suit, proceeding or investigation pending or, to the knowledge of JPMorgan Chase, threatened which would reasonably be expected to lead to the revocation, amendment, failure to renew, limitation, suspension or restriction of any such permits, licenses, exemptions, orders and approvals, except for such revocations, amendments, failures to renew, limitations, suspensions or restrictions which, individually or in the aggregate, would not reasonably be expected to have a material adverse effect on JPMorgan Chase.

A-25

(iii) Each JPMorgan Chase Advisory Entity has been and is in compliance with each JPMorgan Chase Advisory Contract to which it is a party, except where the failure to be so in compliance, individually or in the aggregate, would not reasonably be expected to have a material adverse effect on JPMorgan Chase.

(iv) The accounts of each JPMorgan Chase Advisory Client subject to ERISA have been managed by the applicable Subsidiary of JPMorgan Chase in compliance with the applicable requirements of ERISA, except where the failure to be in compliance, individually or in the aggregate, would not reasonably be expected to have a material adverse effect on JPMorgan Chase.

(v) As of the date hereof, except as would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on JPMorgan Chase, neither JPMorgan Chase nor any of the JPMorgan Chase Advisory Entities nor any "affiliated person" (as defined in the Investment Company Act) of any of them is ineligible pursuant to Section 9(a) or (b) of the Investment Company Act to serve as an investment adviser (or in any other capacity contemplated by the Investment Company Act) to a registered investment company; and except as would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on JPMorgan Chase, none of JPMorgan Chase, any JPMorgan Chase Advisory Entity or any "person associated with an investment advisor" (as defined in the Investment Advisers Act) of any of them is ineligible pursuant to Section 203 of the Investment Advisers Act to serve as an investment advisor or as a person associated with a registered investment advisor.

ARTICLE IV

COVENANTS RELATING TO CONDUCT OF BUSINESS

4.1 *Covenants of Bank One.* During the period from the date of this Agreement and continuing until the Effective Time, Bank One agrees as to itself and its Subsidiaries that, except as expressly contemplated or permitted by this Agreement or the Option Agreements or to the extent that JPMorgan Chase shall otherwise consent in writing:

(a) *Ordinary Course.* Bank One and its Subsidiaries shall carry on their respective businesses in the usual, regular and ordinary course consistent with past practice and use all reasonable efforts to preserve intact their present business organizations, maintain their rights, franchises, licenses and other authorizations issued by Governmental Entities and preserve their relationships with employees, customers, suppliers and others having business dealings with them to the end that their goodwill and ongoing businesses shall not be impaired in any material respect at the Effective Time. Bank One shall not, nor shall it permit any of its Subsidiaries to, (i) enter into any new material line of business, (ii) change its or its Subsidiaries' lending, investment, underwriting, risk and asset–liability management and other material banking or operating policies in any respect which is material to Bank One, except as required by law or by policies imposed by a Governmental Entity, (iii) incur or commit to any capital expenditures or any obligations or liabilities in connection therewith other than capital expenditures and obligations or liabilities incurred or committed to in the ordinary course of business consistent with past practice, or (iv) enter into or terminate any material lease, contract or agreement, or make any change to any existing material leases, contracts or agreements, except in the ordinary course of business consistent with past practice.

(b) *Dividends; Changes in Stock.* Bank One shall not, nor shall it permit any of its Subsidiaries to, or propose to, (i) declare or pay any dividends on or make other distributions in respect of any of its capital stock, except (A) as provided in Section 5.12, (B) the declaration and payment of regular quarterly cash dividends on the Bank One

A–26

Common Stock at a rate not in excess of the regular quarterly cash dividend most recently declared prior to the date of this Agreement with usual record and payment dates for such dividends in accordance with Bank One's past dividend practice; *provided, however,* that Bank One shall be entitled to increase the regular quarterly cash dividend on the Bank One Common Stock for any quarter during the period from the date of this Agreement to the Effective Time to an amount not in excess of $0.44875 per share (or to pay the equivalent of the aggregate amount of such incremental increase in any one or more payments) and (C) for dividends by a wholly-owned Subsidiary of Bank One, (ii) split, combine or reclassify any of its capital stock or issue or authorize or propose the issuance of any other securities in respect of, in lieu of or in substitution for, shares of its capital stock, or (iii) repurchase, redeem or otherwise acquire, or permit any Subsidiary to redeem, purchase or otherwise acquire any shares of its capital stock or any securities convertible into or exercisable for any shares of its capital stock (except for the acquisition of trading account shares, trust account shares and DPC shares in the ordinary course of business consistent with past practice and except pursuant to agreements in effect on the date hereof and disclosed or not required to be disclosed in the Bank One Disclosure Schedule).

(c) *Issuance of Securities.* Bank One shall not, nor shall it permit any of its Subsidiaries to, issue, deliver or sell, or authorize or propose the issuance, delivery or sale of, any shares of its capital stock, any Voting Debt, any stock appreciation rights, or any securities convertible into or exercisable or exchangeable for, or any rights, warrants or options to acquire, any such shares or Voting Debt, or enter into any agreement with respect to any of the foregoing, other than (i) the issuance of Bank One Common Stock upon the exercise or settlement of stock options, stock appreciation rights, units or other equity rights or obligations under the Bank One Stock Plans or Bank One Benefit Plans in accordance with the terms of the applicable Bank One Stock Plan or Bank One Benefit Plan in effect on the date of this Agreement, issuances of stock options and other equity awards in the ordinary course of business or issuances of Bank One Common Stock pursuant to the Bank One Stock Option Agreement and (ii) issuances by a wholly-owned Subsidiary of its capital stock to its parent or to another wholly-owned Subsidiary of Bank One.

(d) *Governing Documents, Etc.* Bank One shall not amend or propose to amend its Certificate of Incorporation or By-laws or enter into, or, except as permitted by Section 4.1(e) or (f), permit any Subsidiary to enter into, a plan of consolidation, merger or reorganization with any person other than a wholly-owned Subsidiary of Bank One.

(e) *No Acquisitions.* Other than acquisitions (whether by means of merger, share exchange, consolidation, tender offer, asset purchase or otherwise) and other business combinations (collectively, *"Acquisitions"*) that (A) would not reasonably be expected to materially delay, impede or affect the consummation of the transactions contemplated by this Agreement in the manner contemplated hereby and (B) for which the fair market value of the total consideration paid by Bank One and its Subsidiaries in such Acquisitions does not exceed in the aggregate the amount set forth in the Bank One Disclosure Schedule, Bank One shall not, and shall not permit any of its Subsidiaries to, acquire or agree to acquire, by merging or consolidating with, by purchasing a substantial equity interest in or a substantial portion of the assets of, by forming a partnership or joint venture with, or by any other manner, any business or any corporation, partnership, association or other business organization or division thereof or otherwise acquire or agree to acquire any assets; *provided, however,* that the foregoing shall not prohibit (i) internal reorganizations or consolidations involving existing Subsidiaries that would not present a material risk of any material delay in the receipt of any Requisite Regulatory Approval, (ii) foreclosures and other debt-previously-contracted acquisitions in the ordinary course of business, (iii) acquisitions of control by a banking Subsidiary in its fiduciary capacity, (iv) investments made by small business investment company, venture capital or private equity Subsidiaries,

A-27

acquisitions of financial assets and merchant banking activities, in each case in the ordinary course of business consistent with past practice, (v) the creation of new Subsidiaries organized to conduct or continue activities otherwise permitted by this Agreement or (vi) acquisitions of securities in the ordinary course of Bank One's or its Subsidiaries' underwriting, trading or market–making businesses consistent with past practice.

(f) *No Dispositions.* Other than (i) internal reorganizations or consolidations involving existing Subsidiaries that would not present a material risk of any material delay in the receipt of any Requisite Regulatory Approval, (ii) dispositions referred to in Bank One SEC Documents filed prior to the date of this Agreement or as disclosed in the Bank One Disclosure Schedule, (iii) securitization activities in the ordinary course of business consistent with past practice, (iv) other activities in the ordinary course of business consistent with past practice and (v) other dispositions of assets (including Subsidiaries) if the fair market value of the total consideration received therefrom does not exceed in the aggregate the amount set forth in the Bank One Disclosure Schedule, Bank One shall not, and shall not permit any of its Subsidiaries to, sell, lease, assign, encumber or otherwise dispose of, or agree to sell, lease, assign, encumber or otherwise dispose of, any of its assets (including capital stock of its Subsidiaries and indebtedness of others held by Bank One and its Subsidiaries) which are material, individually or in the aggregate, to Bank One.

(g) *Indebtedness.* Bank One shall not, and shall not permit any of its Subsidiaries to, incur, create or assume any long–term indebtedness for borrowed money (or modify any of the material terms of any such outstanding long–term indebtedness), guarantee any such long–term indebtedness or issue or sell any long–term debt securities or warrants or rights to acquire any long–term debt securities of Bank One or any of its Subsidiaries or guarantee any long–term debt securities of others, other than (i) in replacement of existing or maturing debt, (ii) indebtedness of any Subsidiary of Bank One to Bank One or to another Subsidiary of Bank One, or (iii) in the ordinary course of business consistent with past practice.

(h) *Other Actions.* Bank One shall not, and shall not permit any of its Subsidiaries to, intentionally take any action that would, or reasonably might be expected to, result in any of its representations and warranties set forth in this Agreement being or becoming untrue, subject to such exceptions as do not have, and would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on Bank One or on the Surviving Corporation following the Effective Time, or in any of the conditions to the Merger set forth in Article VI not being satisfied or in a violation of any provision of this Agreement or the Option Agreements, or (unless such action is required by applicable law) which would adversely affect the ability of the parties to obtain any of the Requisite Regulatory Approvals without imposition of a condition or restriction of the type referred to in Section 6 1(f).

(i) *Accounting Methods.* Except as disclosed in any Bank One SEC Document filed prior to the date of this Agreement, Bank One shall not change its methods of accounting in effect at December 31, 2003, except as required by changes in generally accepted accounting principles as concurred in by Bank One's independent auditors.

(j) *Tax–Free Reorganization Treatment.* Bank One shall not, and shall not permit any of its Subsidiaries to, intentionally take or cause to be taken any action, whether before or after the Effective Time, which would reasonably be expected to disqualify the Merger as a reorganization within the meaning of Section 368(a) of the Code.

(k) *Compensation and Benefit Plans.* During the period from the date of this Agreement and continuing until the Effective Time, Bank One agrees as to itself and its Subsidiaries that, except as set forth in the Bank One Disclosure Schedule, it will not, without the prior written consent of JPMorgan Chase, (i) other than in the ordinary course of business, enter into, adopt, amend (except for such amendments as may be required by law) or terminate any Bank One Benefit Plan, or any other employee benefit plan or any agreement, arrangement,

A–28

plan or policy between Bank One or a Subsidiary of Bank One and one or more of its directors or officers, (ii) except for normal payments, awards and increases in the ordinary course of business or as required by any plan or arrangement as in effect as of the date hereof, increase in any manner the compensation or fringe benefits of any director, officer or employee or pay any benefit not required by any plan or arrangement as in effect as of the date hereof or enter into any contract, agreement, commitment or arrangement to do any of the foregoing, (iii) enter into or renew any contract, agreement, commitment or arrangement (other than a renewal occurring in accordance with the terms thereof) providing for the payment to any director, officer or employee of such party of compensation or benefits contingent, or the terms of which are materially altered, upon the occurrence of any of the transactions contemplated by this Agreement or the Option Agreements or (iv) provide, with respect to the grant of any stock option, restricted stock, restricted stock unit or other equity–related award pursuant to the Bank One 2003 bonus program or otherwise granted on or after the date hereof, that the vesting of any such stock option, restricted stock, restricted stock unit or other equity–related award shall accelerate or otherwise be affected by the occurrence of any of the transactions contemplated by this Agreement or the Option Agreements.

(l) *Investment Portfolio*. Bank One shall not materially restructure or materially change (on a consolidated basis) its investment securities portfolio, its hedging strategy or its gap position, through purchases, sales or otherwise, or the manner in which the portfolio is classified or reported or materially increase the credit or risk concentrations associated with its underwriting, market–making and other investment banking businesses.

(m) *No Liquidation*. Bank One shall not, and shall not permit any of its Significant Subsidiaries to, adopt a plan of complete or partial liquidation or resolutions providing for or authorizing such a liquidation or a dissolution, restructuring, recapitalization or reorganization.

(n) *Other Agreements*. Bank One shall not, and shall not permit any of its Subsidiaries to, agree to, or make any commitment to, take, or authorize, any of the actions prohibited by this Section 4.1.

4.2 *Covenants of JPMorgan Chase*. During the period from the date of this Agreement and continuing until the Effective Time, JPMorgan Chase agrees as to itself and its Subsidiaries that, except as expressly contemplated or permitted by this Agreement or the Option Agreements or to the extent that Bank One shall otherwise consent in writing:

(a) *Ordinary Course*. JPMorgan Chase and its Subsidiaries shall carry on their respective businesses in the usual, regular and ordinary course consistent with past practice and use all reasonable efforts to preserve intact their present business organizations, maintain their rights, franchises, licenses and other authorizations issued by Governmental Entities and preserve their relationships with employees, customers, suppliers and others having business dealings with them to the end that their goodwill and ongoing businesses shall not be impaired in any material respect at the Effective Time. JPMorgan Chase shall not, nor shall it permit any of its Subsidiaries to, (i) enter into any new material line of business, (ii) change its or its Subsidiaries' lending, investment, underwriting, risk and asset–liability management and other material banking or operating policies in any respect which is material to JPMorgan Chase, except as required by law or by policies imposed by a Governmental Entity, (iii) incur or commit to any capital expenditures or any obligations or liabilities in connection therewith other than capital expenditures and obligations or liabilities incurred or committed to in the ordinary course of business consistent with past practice, or (iv) enter into or terminate any material lease, contract or agreement, or make any change to any existing material leases, contracts or agreements, except in the ordinary course of business consistent with past practice.

A–29