# Exhibit A



68 Fed.Appx. 934                                                                                           Page 1

68 Fed.Appx. 934, 2003 WL 21465516
**(Cite as: 68 Fed.Appx. 934)**

C
68 Fed.Appx. 934, 2003 WL 21465516
Briefs and Other Related Documents

This case was not selected for publication in the Federal ReporterThis case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)
United States Court of Appeals,Tenth Circuit.
James W. GREEN, Plaintiff-Appellant,
v.
CITIGROUP, INC.; Commercial Credit Company, also known as CCC; Primerica; Travelers; Commercial Credit Short Term Disability Plan, also known as CCC Short Term Disability Plan; Commercial Credit Long Term Disability Plan, also known as CCC Long Term Disability Plan; Commercial Credit Company Life Insurance Plan, also known as CCC Life Insurance Plan; Commercial Credit Company Medical Benefits Plan, also known as CCC Medical Benefits Plan; Commercial Credit Company Dental Benefits Plan, also known as CCC Dental Benefits Plan, Defendants-Appellees.
No. 03-7010.

June 25, 2003.

Former employee brought pro se action against former employer's corporate parent, its successors in interest, and employee benefit plans, seeking relief from two lawsuits he previously brought in Texas federal district court pursuant to Employee Retirement Income Security Act (ERISA). The District Court dismissed case without prejudice. Former employee appealed. The Court of Appeals , Briscoe, Circuit Judge, held that it was appropriate for district court to decline to exercise jurisdiction and dismiss claims without prejudice.

Affirmed.

West Headnotes

**Federal Civil Procedure 170A ☞1837.1**
170Ak1837.1 Most Cited Cases

**Federal Courts 170B ☞47.1**
170Bk47.1 Most Cited Cases

**Federal Courts 170B ☞1151**
170Bk1151 Most Cited Cases
Although plaintiff was resident of Oklahoma when he filed pro se action effectively seeking relief in Oklahoma federal district court from two judgments previously entered against him in Texas federal district court, plaintiff could and should have sought relief in Texas, and it was therefore appropriate for district court to decline to exercise jurisdiction and dismiss claims without prejudice. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

*934 James W. Green, Stigler, OK, for Plaintiff-Appellant.
William Brad Heckenkemper , Barrow, Gaddis, Griffith & Grimm, Tulsa, OK, Defendants-Appellees.

Before KELLY , BRISCOE and LUCERO, Circuit Judges.

ORDER AND JUDGMENT FN*

> FN* This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

BRISCOE, Circuit Judge.
*935 **1 After examining the briefs and appellate record, this panel has determined unanimously that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 Fed.Appx. 934                                                                                    Page 2
68 Fed.Appx. 934, 2003 WL 21465516
**(Cite as: 68 Fed.Appx. 934)**

oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff James W. Green, appearing pro se, appeals the district court's dismissal without prejudice of his claims against defendants. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

In August 1987, while employed in the claims department of the Gulf Insurance Company, Green suffered a retinal hemorrhage which left him blind in his right eye. He was discharged from his employment with Gulf on September 2, 1987. He worked in the claims department of Chubb & Son, Inc., from December 9, 1987, until he was discharged on October 13, 1989.

Following his discharge from Chubb, Green applied for long-term disability benefits under a disability plan offered through Gulf's corporate parent, Commercial Credit Company (CCC). His claim for disability benefits was denied because (1) he had worked in a similar position for a different employer (Chubb) following his discharge from Gulf, (2) a court had ruled that Green failed to meet the requirements for disability benefits under the Chubb plan, and (3) the Social Security Administration had not determined Green was disabled until two years after his discharge from Gulf.

Between September 1989 and October 1999, Green filed at least three federal lawsuits, all in the Northern District of Texas, alleging ERISA violations and seeking disability benefits under the CCC plan. FN1 The first suit, in which Green was represented by retained counsel, alleged that Green was discharged by Gulf in violation of ERISA § 510. That suit was dismissed in October 1991 as time-barred. The second suit, in which Green appeared pro se, included a claim for disability benefits under the CCC plan pursuant to ERISA § 501(a)(1)(B). That claim was ultimately resolved against Green in federal district court, and the Fifth Circuit Court of Appeals affirmed the judgment in June 1998. The third suit, in which Green again appeared pro se, alleged the wrongful denial of ERISA benefits under the CCC plan. Summary judgment was entered against Green in that suit on the grounds that his "claims ... were raised (or should have been raised) and litigated on the merits in his first two lawsuits." Aple.App. at 50. Green was also "cautioned that the filing of another lawsuit against these Defendants in which he reasserts or alleges any of the claims or causes of action raised in this case or his ... earlier lawsuits may subject him to appropriate sanctions." *Id.* at 54. Although Green apparently attempted to appeal the district court's judgment, the Fifth Circuit denied relief.

> FN1. Green also filed at least one unsuccessful lawsuit seeking benefits under the Chubb disability plan.

On August 29, 2002, Green, again appearing pro se, filed the instant action in federal district court in Oklahoma. FN2 Citigroup, Inc., Primerica, and Travelers were named as defendants as a result of their status as successors in interest to CCC. The gist of the complaint was that Green was entitled to relief from

# Exhibit B

LEXSEE 2003 U.S. DIST. LEXIS 14947

**KELLY McGINLEY, et al., Plaintiffs, v. GORMAN HOUSTON, Senior Associate Justice of the Alabama Supreme Court, et al., Defendants.**

CIVIL ACTION 03-0563-WS-M

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

*2003 U.S. Dist. LEXIS 14947*

**August 27, 2003, Decided**

**PRIOR HISTORY:** *Glassroth v. Moore, 278 F. Supp. 2d 1272, 2003 U.S. Dist. LEXIS 14637 (M.D. Ala., 2003)*

**DISPOSITION:** [*1] Defendants' Motion to Dismiss granted and action dismissed without prejudice.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Bernard Harwood, Defendant: Charles Brinsfield Campbell, John J. Park, Jr., LEAD ATTORNEYS, Office of the Attorney General, State of Alabama, Montgomery, AL.

For Kelly McGinley, Plaintiff: Brian R. Chavez-Ochoa, LEAD ATTORNEY, Valley Springs, CA.

For Kelly McGinley, Plaintiff: James W. Zeigler, LEAD ATTORNEY, Mobile, AL.

**JUDGES:** WILLIAM H. STEELE, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** WILLIAM H. STEELE

**OPINION:**

### ORDER

This matter is before the Court on the defendants' Motion to Dismiss (doc. 8) pursuant to *Rules 12(b)(1), 12(b)(3),* and *12(b)(6) of the Federal Rules of Civil Procedure.*

### I. Overview.

The defendants have filed a motion asking the Court to dismiss the plaintiffs' lawsuit for several reasons. In light of the immediate and irreparable harm the plaintiffs claim to be facing, the Court has considered the motion on expedited basis to safeguard the rights of all parties.

Upon consideration, the Court concludes that it does not have jurisdiction over plaintiffs' claims. In effect, the plaintiffs are asking the Court to invalidate the injunction entered by the judge (and upheld [*2] by the court of appeals) in the *Glassroth* case. However, the Court lacks the power to do so. The law does not allow a party to file a "horizontal appeal" from one district judge to another judge of the same rank, nor can a district judge overturn the decision of an appellate court in that circuit. The *Glassroth* order will remain in place no matter what this Court does or does not do. That being the case, if the Court were to grant the plaintiffs the relief they seek and order the defendants not to remove the monument, chaos would ensue. The defendants would be forced to choose which of two binding, conflicting court orders to follow. They would be in violation of one of those orders no matter what they did. Under these circumstances, the orderly administration of justice and the respect for the rule of law demand that this Court not exercise jurisdiction over the plaintiffs' claims.

Alternatively, the Court finds that venue is not proper in this District. In other words, the plaintiffs have not satisfied the technical, statutory requirements for bringing this case here, as opposed to the Middle District of Alabama, seated in Montgomery, Alabama. None of the events, occurrences [*3] and property that are relevant to this case happened or may be found in this District. The defendants do not reside in this District. Because the defendants objected to venue on a timely basis, the Court finds that the venue statute entitles them to defend this case in the Middle District, not in the Southern District.

Both the jurisdiction and the venue issues lead to the same result. Accordingly, the Court **grants** the defendants' Motion to Dismiss, and **dismisses this case with-**

out prejudice. If they so choose, plaintiffs may refile this case in the Middle District of Alabama immediately. This ruling does not address the merits of the case. The Court offers no opinion as to whether plaintiff's *First Amendment* argument is valid or whether plaintiffs can establish a constitutional deprivation of any stripe. Those questions are properly addressed to the Middle District of Alabama, in the first instance, and principles of judicial restraint require the Court to refrain from addressing those topics.

In light of the Court's ruling, the hearing on plaintiffs' Application for Temporary Restraining Order that had been set for Wednesday, August 27, 2003 at 3:00 p.m. is [*4] **canceled.**

## II. Procedural History.

### A. The *Glassroth* Litigation.

On August 1, 2001, Roy S. Moore, Chief Justice of the Alabama Supreme Court, unveiled a 5,280-pound granite monument (the "Monument") in the rotunda of the Alabama State Judicial Building in Montgomery, Alabama. Located directly across from the main entrance of the building, the Monument is shaped like a cube, approximately three feet deep by four feet tall, with two rounded tablets carved into its sloping top. These tablets are engraved with the Ten Commandments, while the sides of the Monument bear quotations "generally proclaiming the primacy of the law of God over the law of the citizenry." (Complaint, at 2.) According to the plaintiffs in this case, "the monument is intended to proclaim the Ten Commandments as the cornerstone of the judicial foundation of this nation and country." (*Id.*)

After the Monument was installed, three practicing attorneys in the Alabama courts - Stephen R. Glassroth, Melinda Maddox, and Beverly Howard - brought two separate actions against Justice Moore pursuant to *42 U.S.C. § 1983*, asserting that placement of the Monument in the rotunda violates [*5] their rights under the *Establishment Clause of the First Amendment*, made binding on the states through the *Fourteenth Amendment to the U.S. Constitution*. These consolidated lawsuits (collectively referred to herein as *Glassroth*) were filed in the U.S. District Court of the Middle District of Alabama, and were assigned to U.S. District Judge Myron Thompson.

Following a seven-day bench trial, Judge Thompson concluded that Justice Moore's fundamental purpose in displaying the Monument was non-secular, and that the Monument's primary effect was to advance religion. *Glassroth v. Moore, 229 F. Supp.2d 1290, 1299, 1304 (M.D. Ala. 2002)*. Based on his determination that the Monument is violative of the *Establishment Clause*, on November 18, 2002 Judge Thompson entered a "declaration that Justice Moore's placement of his Ten Commandments monument in the Alabama State Judicial Building was unconstitutional," and allowed him 30 days to remove it. *Id. at 1319.*

Justice Moore did not remove the Monument in response to Judge Thompson's Order and Judgment of November 18. Accordingly, on December 19, 2002, Judge Thompson entered a "Final Judgment and Injunction" [*6] enjoining and restraining Justice Moore from failing to relocate the Monument by no later than January 3, 2003. *Glassroth v. Moore, 242 F. Supp.2d 1067 (M.D. Ala. 2002)*. On December 23, 2002, upon motion by Justice Moore, Judge Thompson ordered that the permanent injunction be stayed pending appeal to the U.S. Court of Appeals for the Eleventh Circuit. *Glassroth v. Moore, 242 F. Supp.2d 1068, 1070 (M.D. Ala. 2002).*

Just over six months later, a panel of the Eleventh Circuit affirmed Judge Thompson's order enjoining Justice Moore from failing to remove the Monument from public areas of the Judicial Building. *Glassroth v. Moore, 335 F.3d 1282 (11th Cir. 2003)*. In so doing, the panel specifically held the Monument to be a violation of the *Establishment Clause. Id. at 1297*. The Eleventh Circuit concluded its opinion by expressing its expectation that "if he is unable to have the district court's order overturned through the usual appellate processes, when the time comes Chief Justice Moore will obey that order. If necessary the court order will be enforced. The rule of law will prevail." *Id. at 1303.* [*7]

On August 5, 2003, Judge Thompson, having received the appellate mandate of the Eleventh Circuit, entered a "Final Judgment and Injunction," providing in pertinent part that:

> "Having found that defendant Roy S. Moore, Chief Justice of the Alabama Supreme Court, violated the *Establishment Clause of the First Amendment to the United States Constitution* by placing a Ten Commandments monument in the rotunda of the Alabama Judicial Building, ... it is the ORDER, JUDGMENT and DECREE of the Court as follows:
>
> \*\*\*
>
> "Defendant Roy S. Moore, his officers, agents, servants, and employees, and those persons in active concert or participation with him who receive actual notice of this injunction, be and they are each ENJOINED and RESTRAINED from failing to remove, by no later than August

20, 2003, the Ten Commandments monument at issue in this litigation from the non-private areas of the Alabama State Judicial Building."

*Glassroth v. Moore*, F. Supp.2d , 275 F. Supp. 2d 1347, 2003 U.S. Dist. LEXIS 13907, *6 (M.D. Ala. Aug. 5, 2003). The Court understands that Justice Moore's direct appeal of Judge Thompson's injunction is ongoing and that he intends to file a [*8] petition for writ of certiorari in the United States Supreme Court. In the interim, however, no court at any level has entered a stay or otherwise excused Justice Moore from full compliance with Judge Thompson's injunction of August 5, 2003.

To date, the Monument has not been removed from the public areas of the Alabama State Judicial Building.

B. The Associate Justices' Order.

On August 21, 2003, one day after the deadline ordered by Judge Thompson for removing the Monument, the eight Associate Justices of the Supreme Court of Alabama entered Order No. 03-01, in which they opined that "the refusal of officers of this Court to obey a binding order of a federal court of competent jurisdiction would impair the authority and ability of all of the courts of the State to enforce their judgments." (Order No. 03-01, at p. 6.) In light of this and other findings, the Associate Justices ordered that "the administrative decision of the Chief Justice to disregard the writ of injunction of the United States District Court for the Middle District of Alabama be, and the same hereby is, COUNTERMANDED" and that the Building Manager for the Judicial Building "take all steps necessary to comply [*9] with the injunction as soon as practicable." (*Id.* at p. 7.)

C. The *McGinley* Action.

On the afternoon of August 25, 2003, plaintiffs Kelly McGinley and Richard C. Dorley-residents of Mobile, Alabama and Tallassee, Alabama, n1 respectively - filed the instant Complaint in this Court, asserting a claim under *42 U.S.C. § 1983* against the Associate Justices of the Alabama Supreme Court, in their official capacities. Plaintiffs contend that the Associate Justices' announced intention of complying with Judge Thompson's injunction "clearly suggests that adherence to the religion of nontheistic beliefs is a prerequisite or an advantage to those seeking justice in Alabama." (Complaint, at P 20.) Plaintiffs further maintain that "removal of the Ten Commandments Monument constitutes an impermissible endorsement of the religion of nontheistic beliefs by the state" and would itself violate plaintiffs' rights under the *Establishment Clause*. (Complaint, at P 21.) n2

n1 Of course, Mobile lies in the Southern District of Alabama. Tallassee, however, is located in the Middle District of Alabama.

[*10]

n2 Tellingly, the Complaint also asserts that "display of the Ten Commandments Monument in the Alabama State Judicial Building does not create an excessive entanglement of government with religion." (Complaint, at P 24.) This language strongly suggests that, even though they characterize this case as concerning whether the removal of the Monument violates the *Establishment Clause*, plaintiffs in fact intend to litigate the issue of whether the display of the Monument violates the *Establishment Clause*. Of course, that precise issue has already been decided by Judge Thompson and the Eleventh Circuit in the *Glassroth* litigation.

In their Prayer for Relief, plaintiffs request a permanent injunction requiring defendants "to refrain from and ease *[sic]* any efforts to remove the Ten Commandments Monument." (Complaint, at pp. 8-9.) Along with their Complaint, plaintiffs filed an Application for Temporary Restraining Order (doc. 6) requesting that defendants be restrained from removing the Monument from the rotunda of the Judicial Building, and asserting that in the absence of a temporary [*11] restraining order, defendants will cause the Monument to be moved, as a result of which plaintiffs would sustain irreparable harm. (Application for TRO, at p. 2.) n3

n3 A fair reading of the Memorandum of Law accompanying the Application for Temporary Restraining Order suggests that the true target of this lawsuit is not the Associate Justices, but rather the injunction entered by Judge Thompson and affirmed by the Eleventh Circuit in *Glassroth*. For example, plaintiffs argue as follows:

> "Here, the federal court in Montgomery has, in effect, respected one religion over another. By forcing out the Ten Commandments and replacing it with nothing (but in reality the nothing is the false god of nontheistic religion), the court has declared that the Lord

God shall be removed from the public square and that the false god of nontheistic religion shall be the false god that the Alabama Supreme Court and society shall serve."

(Memorandum in Support of Motion for Temporary Restraining Order, at p. 9.) Thus, it is apparent from the face of their submissions that plaintiffs are asking this Court for not only an order restraining the Associate Justices, but also one whose effect is to restrain, negate or invalidate Judge Thompson's order, and presumably that of the Eleventh Circuit as well.

[*12]

Upon the filing of this Complaint and in regard for plaintiffs' claimed constitutional deprivation, the Court promptly scheduled a hearing on plaintiffs' Application for Temporary Restraining Order. In a conference call initiated by the Court with participation by counsel for both parties on August 25, the parties agreed to set this matter for hearing on August 27, 2003 at 3:00 p.m.

At approximately 2:00 p.m. on August 26, 2003, defendants filed a Motion to Dismiss, a supporting Memorandum of Law, and an Opposition to the Application for Temporary Restraining Order. n4 The Motion asserts that this Court lacks subject-matter jurisdiction (warranting dismissal under *Rule 12(b)(1), Fed.R.Civ.P.*), that venue does not properly lie in the Southern District of Alabama (warranting dismissal under *Rule 12(b)(3)*), and that the Complaint fails to state a claim upon which relief can be granted (warranting dismissal under *Rule 12(b)(6)*). Upon careful review of the legal issues raised by defendants' Motion, the Court is of the opinion that it should decline to exercise jurisdiction over this dispute and that venue is not proper in this District.

n4 Being cognizant of plaintiffs' claims of irreparable harm and constitutional deprivations absent immediate relief, the Court has reviewed and considered the Motion to Dismiss on an expedited basis. In so doing, the Court intends to minimize any delay or hardship that plaintiffs might otherwise incur if their Complaint and applications for *Rule 65* relief were held in suspended animation while the Motion to Dismiss is taken under submission.

[*13]

**III. Jurisdictional Issues.**

Reducing the claims to their essence, it is apparent that plaintiffs seek an injunction barring defendants from complying with the injunction entered by Judge Thompson of the Middle District of Alabama, and affirmed by the Eleventh Circuit Court of Appeals. n5

n5 This observation is valid, notwithstanding plaintiffs' framing of their objective as being merely to prevent defendants from removing the Monument. The Associate Justices' order dated August 21, 2003 plainly reflects that they are ordering the removal of the Monument for the sole purpose of complying with Judge Thompson's injunction, not in furtherance of their personal religious or constitutional viewpoints or other agendas. Indeed, defendants' Motion to Dismiss and related filings make clear that they are "complying with a federal injunction, with which the defendants do not necessarily agree." (Motion to Dismiss, at P 2.) Thus, ordering defendants not to move the Monument and ordering them not to abide by Judge Thompson's injunction are functional equivalents in all respects.

[*14]

A. The Status of the *Glassroth* Injunction.

Despite their strident expressions of dissatisfaction with the outcome of the *Glassroth* litigation to date, plaintiffs cannot ask this Court to reverse, overrule, invalidate or modify the ruling of Judge Thompson. The law is clear that the Court lacks the authority to do so. *See, e.g., Green v. Citigroup, Inc., 68 Fed. Appx. 934, 936 (10th Cir. June 25, 2003)* ("It is axiomatic that one district court has no jurisdiction to review the decision of another district court."); *Carter v. U.S., 733 F.2d 735, 736 (10th Cir. 1984)* (finding that a district court is without jurisdiction to afford relief from a mandatory injunction issued by a federal district court sitting elsewhere); *In re Persico, 362 F. Supp. 713, 714 (E.D.N.Y. 1973)* ("Judges of coordinate jurisdiction do not, except in the most extraordinary situations, have the function of reviewing each other's orders."); *United States v. Rabin, 263 F. Supp. 989, 990 (S.D. Fla. 1966)* (district court lacks jurisdiction to review ruling entered by another district court); *In re Pusser, 123 F. Supp. 164, 167 (E.D.S.C. 1954)* [*15] (declaring in response to litigant's request that court revoke another judge's restraining order, "I have no power or authority to amend, modify or revoke an order of another United States District Judge"); *United States v. American Radiator & Standard Sanitary Corp., 388 F.2d 201, 203-04 (3rd Cir. 1967)* (noting that within a single circuit, there is rarely need or

justification for one district court to interfere with the course of litigation pending in another); *Johnson v. England*, 356 F.2d 44, 52 (9th Cir. 1966) (deeming it "improper" for one district court to decline to follow prior order made by another district court staying an action in bankruptcy). More generally, an oft-cited principle of law dictates that judges of coordinate jurisdiction ought not overrule each other's decisions. *United States v. Koenig*, 290 F.2d 166, 172 (5th Cir. 1961); *TCF Film Corp. v. Gourley*, 240 F.2d 711, 713-14 (3d Cir. 1957); *De Maurez v. Swope*, 110 F.2d 564, 565 (9th Cir. 1940) (commenting in passing that it is "highly indiscreet and injudicious for one judge of equal rank and power to review identical matters [*16] passed upon by his colleague"). Accordingly, regardless of what action this Court may or may not take in this case, Judge Thompson's injunction will remain in full force and effect, and will continue to be binding on defendants unless and until Judge Thompson or a higher court rules otherwise.

B. The Risk of Conflicting Orders.

This fact places defendants in a most untenable position. After all, "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *GTE Sylvania, Inc. v. Consumers Union of United States, Inc.*, 445 U.S. 375, 386, 100 S. Ct. 1194, 63 L. Ed. 2d 467 (1980). It is for the Middle District in the first instance to address the constitutionality of the placement or removal of the Monument. "Until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected." *Celotex Corp. v. Edwards*, 514 U.S. 300, 313, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995) (quoting *Walker v. Birmingham*, 388 U.S. 307, 314, 18 L. Ed. 2d 1210, 87 S. Ct. 1824 (1967)). [*17] Assuming *arguendo* that the Court were to find in plaintiffs' favor and enjoin defendants from moving the Monument, what are the defendants to do? If they honored this Court's injunction, then they would be in violation of the corresponding injunction entered by Judge Thompson and upheld by the Eleventh Circuit. If they adhered to Judge Thompson's injunction at the expense of this Court's, then they would undoubtedly face contempt sanctions from this Court. In short, defendants would find themselves in the middle of an inter-district game of tug o' war, buffeted by conflicting and countervailing judicial forces in Mobile and Montgomery. Defendants would be in violation of an injunction no matter what they did, and would be forced to decide which of two binding federal orders they wished to flout.

C. Comity and the Orderly Administration of Justice.

Fortunately, our legal system does not foist such a Hobson's choice on litigants. When a party effectively requests that one court grant it relief from an injunction or judgment entered by another court, "considerations of comity and orderly administration of justice demand that the nonrendering court should decline jurisdiction [*18] of such an action and remand the parties for their relief to the rendering court, so long as it is apparent that a remedy is available there." *Lapin v. Shulton, Inc.*, 333 F.2d 169, 172 (9th Cir.), cert. denied, 379 U.S. 904, 85 S. Ct. 193, 13 L. Ed. 2d 177 (1964); *see also Carter v. Attorney General of United States*, 782 F.2d 138, 142 n.4 (10th Cir. 1986) (same); *Treadaway v. Academy of Motion Picture Arts and Sciences*, 783 F.2d 1418, 1422 (9th Cir. 1986) (holding that district court did not abuse discretion in declining to exercise jurisdiction over a request to review another district court's decision, reasoning that "when a court entertains an independent action for relief from the final order of another court, it interferes with and usurps the power of the rendering court just as much as it would if it were reviewing that court's equitable decree"); *Ord v. United States*, 8 Fed. Appx. 852, 854 (9th Cir. Apr. 13, 2001) (where heart of complaint was request that court invalidate an order entered by another court, district court properly dismissed action based on principles of judicial comity, fairness [*19] and efficiency, all underlying the basic rule against horizontal appeals); *Zdrok v. V Secret Catalogue, Inc.*, 215 F. Supp.2d 510, 515 (D.N.J. 2002) (declining to disturb judgment entered by district court in Ohio, based on principles of judicial comity, where contrary action would usurp the power of the rendering court, and declining to exercise jurisdiction over independent collateral attack on that basis). n6

n6 A host of other federal courts facing analogous situations have reached similar conclusions. *See, e.g., Green*, 68 Fed. Appx. at 936 (finding that district court in Oklahoma properly declined to exercise jurisdiction over lawsuit seeking relief from judgments entered by district courts in Texas, and that action was properly dismissed without prejudice); *Martin-Trigona v. United States*, 250 U.S. App. D.C. 272, 779 F.2d 72, 73 (D.C. Cir. 1985) (affirming denial of leave to file complaints in district court for the District of Columbia where plaintiff sought to be excused from compliance with injunction previously entered against him by District of Connecticut, where considerations of comity, consistency of treatment, and orderly administration of justice require that such argument be directed to the *District of Connecticut*); *Mann Mfg, Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971) (district

Case 1:05-cv-00162-JJF    Document 59-2    Filed 08/26/2005    Page 10 of 14

Page 6
2003 U.S. Dist. LEXIS 14947, *

court in one jurisdiction should not seriously interfere with or usurp the continuing power of another district court to supervise its injunction, but should instead decline jurisdiction and remand the parties to the rendering court if a remedy is available there); *American Radiator, 388 F.2d at 203-04 (3d Cir. 1967)* (where one district court is asked to enjoin proceedings in a sister district court, which injunctive relief has already been denied by the sister court, court should stay its hand, as proper procedure for aggrieved parties is to apply to reviewing court, not a coordinate tribunal); *see generally New Orleans Public Service, Inc. v. Majoue, 802 F.2d 166, 167 (5th Cir. 1986)* (district court should dismiss lawsuit seeking injunction of state court proceedings where suit is improper attempt to seek collateral review of prior remand order entered by district court).

[*20]

Along those lines, a hoary decision from the Fifth Circuit n7 is quite instructive. In *Louisville & N.R. Co. v. Western Union Telegraph Co., 233 F. 82 (5th Cir. 1916)*, a federal district court in Kentucky had enjoined and restrained the appellant from taking possession of the appellee's poles, wires and other telegraphic apparatus located on appellant's property. Unhappy with the outcome in that forum, the appellant filed a separate lawsuit in federal court in Mississippi seeking an injunction ordering the appellee to refrain from maintaining and operating its telegraphic equipment on appellant's property. The Fifth Circuit found that such a claim was not cognizable, reasoning that "we think it is apparent that *the necessary effect of granting the relief which the supplemental bill prayed would be to enable the appellant to do, under the protection of the orders of one court, what it has been forbidden to do by a valid order of another court,* which is in full force and effect. A bill, the object of which is to bring about such a result, is not maintainable." *Id. at 84* (emphasis added).

---

n7 Decisions of the Fifth Circuit rendered on or before September 30, 1981 constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).*

---

[*21]

These judicial guideposts were echoed more recently in *Feller v. Brock, 802 F.2d 722 (4th Cir. 1986)*, in which the U.S. Department of Labor faced a binding, final injunction issued by a district court in the District of Columbia not to certify certain apple growers in its temporary foreign worker program. In response to that injunction, certain growers who were not parties to the D.C. proceedings and whom the DOL could not certify as a result of the D.C. injunction sued in federal district court in West Virginia seeking a preliminary injunction barring the DOL from refusing to certify them. The West Virginia court granted an injunction. On appeal, the Fourth Circuit reversed on an abuse of discretion standard, reasoning as follows:

> "... Issuance of the preliminary injunction did a grave disservice to the public interest in the orderly administration of justice. Prudence requires that whenever possible, coordinate courts should avoid issuing conflicting orders ... Whatever its label, there is an underlying policy of judicial administration which counsels against the creation of conflicts such as the one at bar."

*Id. at 727-28.* In light [*22] of this conclusion, the *Feller* court vacated the injunction, strongly suggesting that the district court consider following *Lapin* and declining to exercise jurisdiction over the action given that the plaintiffs could seek redress from the court in D.C. *Feller, 802 F.2d at 728-29.*

A common thread runs through all of these decisions. That theme is the amorphous, ill-defined but still very tangible notion that federal district courts have a responsibility to litigants and to our system of justice not to countermand their brother and sister courts' decisions. An unsuccessful plaintiff ought not be able to flit from one federal trial judge to the next, finally seizing upon a favorable ruling by one judge allowing him to do that which other judges have expressly forbidden him from doing. Likewise, a defendant ought not be impaled on the horns of an intractable dilemma by being ordered to take diametrically opposite action by two lateral courts of coextensive power and authority. The rule of law demands orderly, consistent administration of justice. In turn, the orderly, consistent administration of justice obliges a district court to respect the ruling of its peer tribunal in [*23] a particular matter, staying its hand by declining jurisdiction rather than creating a risk of conflicting orders in the same matter.

D. Declining to Exercise Jurisdiction.

Considered *in toto*, these concepts militate in favor of the Court declining to exercise jurisdiction over this dispute. Such a result is both just and fair. Despite being cloaked in the garb of an independent action brought by

parties separate and distinct from those in *Glassroth*, this case is at its core a thinly veiled attempt to countermand Judge Thompson's injunction. Principles of substantive and procedural law, equity and common sense are fully aligned in prompting the conclusion that such a horizontal appeal cannot and will not be suffered by this Court. n8

> n8 This rationale certainly holds if plaintiffs' complaint is characterized -- quite properly, in the Court's view -- as an attempt to overturn the injunction entered by Judge Thompson. It rings doubly true if plaintiffs' complaint is viewed -- as it reasonably may be -- as an inverse appeal of the Eleventh Circuit's opinion affirming Judge Thompson's injunction. *See, e.g., Phelps v. Hamilton,* 59 F.3d 1058, 1078 (10th Cir. 1995) ("A district court cannot review and reverse a decision of a court of appeals ....").

[*24]

Nor does this result unfairly strip plaintiffs of a remedy for the alleged constitutional deprivations of which they complain. Plaintiffs' remedy, if any exists, lies in Montgomery, not Mobile. They have cited no reason -- and the Court is aware of none -- why plaintiffs cannot petition the Middle District for relief from the threatened removal of the Monument. The Middle District is the rendering court that ordered defendants to remove the Monument. The Middle District is intimately familiar with the factual and legal issues of the case. The Middle District has continuing jurisdiction over its injunction, and is empowered to reconsider and/or modify that injunction (at least, to the extent permitted by the Eleventh Circuit's opinion in *Glassroth*) if plaintiffs' claims have merit. n9 The Middle District, or a higher court of competent jurisdiction, should be the final arbiter of plaintiffs' dissatisfactions with the effects of Judge Thompson's injunction. This Court simply has no place in that chain of review.

> n9 In fact, the Supreme Court has recognized that a court has the power to revisit its own previous decisions in extraordinary circumstances, such as where the initial decision was clearly erroneous and would work a manifest injustice. *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 817, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988). More importantly, "there is no dispute but that a sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen ... The source of the power to modify is of course the fact that *an injunction often requires continuing supervision by the issuing court* and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief." *System Federation No. 91, Railway Emp. Dept., A.F.L.-C.I.O. v. Wright,* 364 U.S. 642, 647, 81 S. Ct. 368, 371, 5 L. Ed. 2d 349 (1961) (emphasis added).

[*25]

Plaintiffs appear entirely capable of addressing their concerns to Judge Thompson and the Middle District. Yet, rather than pursuing such a course of action, plaintiffs chose to launch what is effectively a collateral attack of Judge Thompson's injunction in this District. In the words of Chief Justice Rehnquist, "this they cannot be permitted to do without seriously undercutting the orderly process of the law." *Celotex,* 514 U.S. at 313. For these reasons, the Court declines to exercise jurisdiction over this matter. n10 Defendants' Motion to dismiss for lack of jurisdiction pursuant to *Rule 12(b)(1), Fed.R.Civ.P.,* is accordingly **granted,** and this action is **dismissed without prejudice.**

> n10 To be clear, the Court does not suggest that Judge Thompson's injunction is somehow binding on this Court under doctrines of *stare decisis,* law of the case, or otherwise. After all, it is well established that district courts generally are not bound by the decisions of other district courts, whether in the same or other judicial districts or circuits. *See, e.g., Fishman & Tobin, Inc. v. Tropical Shipping & Construction Co., Ltd.,* 240 F.3d 956, 965 (11th Cir. 2001) (finding that "the district court cannot be said to be bound by a decision of one of its brother or sister judges"); *Fox v. Acadia State Bank,* 937 F.2d 1566, 1570 (11th Cir. 1991). Rather, the Court's finding is simply that Judge Thompson's injunction is his injunction, and that it is not the role of this Court to review or contradict that injunction when the plaintiffs may reasonably seek redress of their grievances from him, or from the appellate courts responsible for reviewing his decisions. The Court's decision in this regard is rooted in time-honored considerations of judicial comity, fairness and the orderly administration of justice, rather than rigid doctrinal principles such as *stare decisis.*

[*26]

Case 1:05-cv-00162-JJF    Document 59-2    Filed 08/26/2005    Page 12 of 14

Page 8
2003 U.S. Dist. LEXIS 14947, *

## IV. Venue Issues.

As an alternative ground for dismissing this action, the Associate Justices maintain in their Motion that venue is improper in this District. The Court concludes that the venue analysis yields precisely the same outcome as the comity/administration of justice analysis *supra*, and therefore adopts the following conclusions of law as an alternative ground for its decision to dismiss this action without prejudice.

The Complaint alleges that venue for this action properly lies in this District pursuant to *28 U.S.C. § 1391* for three reasons: (a) plaintiff McGinley resides in Mobile, (b) the Monument is located in the Alabama State Judicial Building and therefore affects all citizens of the State of Alabama, and (c) plaintiff Dorley (who resides in Tallassee, which lies in the Middle District) regularly visits the Judicial Building, sometimes for the purpose of viewing the Monument. (Complaint, at P 3.)

It is well established that venue is not a jurisdictional prerequisite and that it may be waived by a defendant absent timely objection. *See, e.g., Harris Corp. v. National Iranian Radio and Television, 691 F.2d 1344, 1349 (11th Cir. 1982)*; [*27] *see also 28 U.S.C. § 1406(b)* ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue."). In their Motion to Dismiss, the Associate Justices timely objected that venue in this District is improper; therefore, the Court will consider the merits of that objection at this time.

Federal jurisdiction over this action not being grounded on diversity of citizenship and plaintiffs having invoked no special venue statutes, venue is clearly governed by *28 U.S.C. § 1391(b)*, which provides that in the absence of some other controlling provision venue properly lies only in:

> "(1) a judicial district where any defendant resides, if all defendants reside in the same State,
> "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or
> "(3) a judicial district in which any defendant may be found, if there is no district in which the action may be otherwise brought."

*Id.* [*28] When a defendant raises a timely venue objection, the burden of establishing the propriety of venue rests with the plaintiff. *Rogers v. Civil Air Patrol, 129 F. Supp.2d 1334, 1336 (M.D. Ala. 2001)*. On the face of plaintiffs' Complaint, they cannot meet this burden.

The venue analysis under *§ 1391(b)(1)* hinges on the residency of defendants. The limited record before the Court does not reflect where each Associate Justice personally resides; however, that information is unnecessary because they have been sued solely in their official capacities. Where suit is brought against a public official exclusively in his official capacity, that official resides for venue purposes in the district where he performs his official duties. *See, e.g., Taylor v. White, 132 F.R.D. 636, 640 (E.D. Pa. 1990); Republican Party of North Carolina v. Martin, 682 F. Supp. 834, 836 (M.D.N.C. 1988); see generally* 17 *Moore's Federal Practice*, § 110.03[3] (2003). Defendants, as Associate Justices of the Alabama Supreme Court, perform their duties in the Alabama State Judicial Building in Montgomery, Alabama, which is located in the Middle District [*29] of Alabama. As such, defendants all reside in the Middle District for venue purposes, and venue does not properly lie in this District under *§ 1391(b)(1)*.

With respect to *§ 1391(b)(2)*, the critical inquiry is whether a substantial part of the events or omissions giving rise to the claim occurred in this District or, alternatively, whether a substantial part of the property that is the subject of the action is situated in this District. This action concerns a Monument located in the Middle District of Alabama, and in-house administrative decisions made by state government officials in the Middle District of Alabama. Neither the Complaint nor plaintiffs' accompanying submissions reflect that any events or omissions giving rise to their claims occurred in this District, or that any property that is the subject of this action is situated in this District. In fact, the only link between this District and plaintiffs' lawsuit that appears from the face of the Complaint is the bare fact that plaintiff McGinley resides in this District. Such a showing is manifestly inadequate to establish venue under *§ 1391(b)(2)*. *See, e.g.*, 17 *Moore's Federal Practice* § 110.02[2][b] [*30] (2003) (noting that plaintiff's residence is "no longer relevant to venue" determinations under *§ 1391(b)*). n11

---

n11 The Court acknowledges plaintiffs' assertions in the Complaint that venue is appropriate here because the positioning of the Monument in the Alabama State Judicial Building affects all Alabama citizens and because plaintiff Dorley frequents the Monument and the Judicial Building from his residence in the Middle District. However, such contentions miss the mark be-

cause they ignore the analytical framework created by *§ 1391(b)* and because plaintiffs offer no explanation why these facts have any legal bearing on the question of venue.

The third and final prong of *§ 1391(b)* allows venue to reside in "a judicial district in which any defendant may be found, if there is no district in which the action may be otherwise brought." *§ 1391(b)(3)*. This provision cannot avail plaintiffs in their quest to establish venue in this District for two distinct reasons. First, no defendants "may be found" in this [*31] District. Second, there clearly is another "district in which the action may otherwise be brought" under both *§ 1391(b)(1)* and *§ 1391(b)(2)*; to-wit, the Middle District of Alabama.

Thus, straightforward application of the general venue statute inexorably confirms that which is already informed by common sense; namely, that this case does not belong in the Southern District of Alabama. It belongs in the Middle District, where all of the defendants reside, where the *res* that is the subject of the lawsuit (*i.e.*, the Monument) may be found, and where all or virtually all of the events and occurrences on which the litigation is predicated transpired.

It being clear that venue is improper in this District, the question remains as to what action the Court should take in response. By statute, a district court confronted with a case laying venue in the wrong district "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *28 U.S.C. § 1406(a)*. The decision of whether to dismiss the action or transfer it to the Middle District rests in the Court's sound discretion. *See, e.* [*32] *g., First of Michigan Corp. v. Bramlet, 141 F.3d 260, 262 (6th Cir. 1998); Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993)*.

The Court recognizes that the interests of justice typically militate in favor of transferring an improperly filed action, rather than dismissing it. However, considering the totality of the circumstances, the Court is of the opinion that this is one of those atypical cases in which transferring a case to a district where venue is proper may paradoxically harm the plaintiffs' interests to a greater extent than would dismissing it without prejudice. Plaintiffs' submissions have emphasized the time-sensitive nature of their prayer for relief, and the imminence of irreparable harm should the Monument be disturbed from its repose in the rotunda of the Judicial Building. If the Court transfers this case to the Middle District, the administrative process of transferring a case from this District's Clerk's Office to the Middle District's Clerk's Office - with its attendant paperwork and clerical tasks - might take days, during which time plaintiffs would be unable, for all practical purposes, to pursue their claims for relief [*33] in any forum. By contrast, if the Court dismisses the action without prejudice, plaintiffs may refile it in the Middle District as expeditiously as they wish, presumably within hours after the dismissal takes effect. For these reasons, and out of respect for the specter of constitutional injury that plaintiffs are purporting to confront at any moment, the Court will exercise its discretion under *§ 1406(a)* in favor of dismissing this action without prejudice for improper venue, pursuant to *Rule 12(b)(3), Fed.R.Civ.P.* n12

---

n12 Because both the jurisdictional and venue issues raised by the Associate Justices warrant dismissal of this action without prejudice, the Court finds it unnecessary to consider the constitutional issues raised by defendants' Motion (*e.g.*, whether plaintiffs' claims properly state a claim for relief under the *Establishment Clause* of the *First* and *Fourteenth Amendments*). In that regard, the Court acknowledges the "fundamental and longstanding principle of judicial restraint requir[ing] that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Santamorena v. Georgia Military College, 147 F.3d 1337, 1343 (11th Cir. 1998)*. The Court therefore refrains from expressing any opinion as to whether plaintiffs have established a cognizable claim for violation of the *Establishment Clause*.

[*34]

## V. Conclusion.

For all of the reasons set forth herein, defendants' Motion to Dismiss is hereby **granted** and this action is **dismissed without prejudice.** The hearing set for 3:00 p.m. on August 27, 2003 on plaintiffs' Application for Temporary Restraining Order is **canceled.**

**DONE** and **ORDERED** this 27th day of August, 2003.

s/ WILLIAM H. STEELE

UNITED STATES DISTRICT JUDGE

1070DT

\*\*\*\*\*\*\*\*\*\*  Print Completed  \*\*\*\*\*\*\*\*\*\*

Time of Request:    August 26, 2005   02:08 PM EDT

Print Number:       1841:58447488
Number of Lines:    483
Number of Pages:

Send To:   BOUCHEDID, AYA
           WOLF HALDENSTEIN ADLER FREEMAN & HERZ
           270 MADISON AVE
           NEW YORK, NY 10016-0601