**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

SAMUEL I. HYLAND and STEPHANIE
SPEAKMAN, individually and on behalf of
all others similarly situated,

Plaintiffs,

v.

WILLIAM B. HARRISON, JR., HANS W.
BECHERER, RILEY P. BECHTEL,
FRANK A. BENNACK, JR., JOHN H.
BIGGS, LAWRENCE A. BOSSIDY, M.
ANTHONY BURNS, ELLEN V. FUTTER,
WILLIAM H. GRAY, III, HELENE L.
KAPLAN, LEE R. RAYMOND, JOHN R.
STAFFORD, JPMORGAN CHASE & CO.,
and JAMES DIMON,

Defendants.

Case No. **1:05-cv-162 (JJF)**

**CLASS ACTION**

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO
MOTION OF DR. STEPHEN BLAU TO INTERVENE IN ORDER TO
<u>FURTHER MOVE THAT THIS ACTION BE STAYED</u>**

Dated: September 12, 2005

Joseph N. Gielata (DSB # 4338)
Attorney at Law
501 Silverside Road, Suite 90
Wilmington, DE 19809
(302) 798-1096

*Lead Counsel for Plaintiffs
and the Putative Class*

# **TABLE OF CONTENTS**

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       The First-Filed Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       The Illinois Action – A Comedy of Errors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       Background of the "Certification Form" Scheme. . . . . . . . . . . . . . . . . . . . . . . .5

       Wolf Haldenstein's Certification Scheme is Exposed in the Illinois Action. . . . . 8

       The First Properly-Venued and Properly-Noticed Federal Action. . . . . . . . . . . 10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.       THE MOTION FOR INTERVENTION IS UNTIMELY. . . . . . . . . . . . . . . . . .12

II.     BLAU'S INTERESTS, IF ANY, ARE MORE THAN
       ADEQUATELY REPRESENTED IN THIS ACTION. . . . . . . . . . . . . . . . . . . . 14

       A.    Movant's Interests Do Not Diverge
             From Those Of The Delaware Plaintiffs. . . . . . . . . . . . . . . . . . . . . . . . . . 15

       B.    There Is No Collusion Between The
             Delaware Plaintiffs And The Defendants. . . . . . . . . . . . . . . . . . . . . . . . . 15

       C.    The Delaware Plaintiffs Are
             Diligently Prosecuting This Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

III.    THE PROPOSED INTERVENTION LACKS A PROPER PURPOSE. . . . . . .16

IV.    THE DELAWARE PLAINTIFFS WOULD BE
       PREJUDICED BY BLAU'S INTERVENTION. . . . . . . . . . . . . . . . . . . . . . . . .18

V.     A STAY OF THIS ACTION WOULD BE INAPPROPRIATE DUE TO
       CRITICAL DIFFERENCES BETWEEN THE TWO ACTIONS. . . . . . . . . . . 19

VI.    THE EXISTENCE OF A LEAD PLAINTIFF ORDER IN THE
       ILLINOIS ACTION IS NOT A BASIS FOR INTERVENTION OR A STAY. .24

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

**Cases:**                                                                                              **Page**

*Brody By and Through Sugzdinis v. Spang,*
    957 F.2d 1108 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Colorado River Water Conservation District v. United States,*
    424 U.S. 800 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Commonwealth of Pennsylvania v. Rizzo,*
    530 F.2d 501 (3d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Complaint of Bankers Trust Co. v. Chatterjee,*
    636 F.2d 37 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Coopersmith v. Lehman Brothers, Inc.,*
    344 F. Supp. 2d 783 (D. Mass. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25, 26

*CTF Hotel Holdings, Inc. v. Marriott Intern., Inc.,*
    381 F.3d 131 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Delaware Valley Citizens' Council for Clean Air v. Pennsylvania,*
    674 F.2d 970 (3d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Dentsply Intern., Inc. v. Kerr Mfg. Co.,*
    734 F. Supp. 656 (D. Del. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*In re Fine Paper Anti-Trust Litigation,*
    695 F.2d 494 (3d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hoots v. Pennsylvania,*
    672 F.2d 1133 (3d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re J.P. Morgan Chase & Co. S'holder Litig.,*
    Consol. C.A. No. 531-N, 2005 WL 1076069 (Del. Ch. Apr. 29, 2005) . . . . . . . .10

*Kamerman v. Steinberg,*
    681 F. Supp. 206 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17, 18

*Landis v. North American Co.,*
    299 U.S. 248 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Lexington Ins. Co. v. Caleco, Inc.,*
    No. Civ. A. 01-5196, 2003 WL 21652163 (E.D. Pa. Jan. 25, 2003) . . . . . . . 17, 18

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,*
    460 U.S. 1 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

*NAACP v. New York*,
    413 U.S. 345 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*National Wildlife Federation v. Gorsuch*,
    744 F.2d 963 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Network Associates, Inc., Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Nice Sys. Sec. Litig.*,
    188 F.R.D. 206 (D.N.J. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

*Olden v. Hagerstown Cash Register, Inc.*,
    619 F.2d 271 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Stratos Lightwave, Inc. v. Picolight, Inc.*,
    No. Civ. A. 03-917-JJF, 2005 WL 681308 (D. Del. Mar. 23, 2005) . . . . . . . . . 22

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Tuff Torq Corp. v. Hydro-Gear Ltd. Partnership*,
    882 F. Supp. 359 (D. Del. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*University of Maryland at Baltimore v. Peat Marwick Main & Co.*,
    923 F.2d 265 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**Rules:**

Fed. R. Civ. P. 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17 n.8

Fed. R. Civ. P. 24. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 59. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12 n.6

Fed. R. Civ. P. 60. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

**Miscellaneous:**

All exhibits, statements and unreported decisions referenced herein are attached to the Declaration of Joseph N. Gielata, Esq. filed contemporaneously herewith and cited as "Decl. ¶ _" or "Decl. Ex. _."

This brief is respectfully submitted by lead plaintiffs Samuel I. Hyland and Stephanie Speakman (collectively, the "Delaware Plaintiffs") in opposition to the motion to intervene to seek a stay, and opening brief in support thereof ("Opening Br."), submitted by proposed intervenor-movant Stephen Blau ("Blau" or the "Movant").

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

Over two months after the Delaware Plaintiffs were appointed lead plaintiffs in this action (the "Delaware Action"), a challenger has appeared to contest that order of this Court (the "Lead Plaintiff Order"). Despite a blatant conflict of interest,[1] a law firm filed a related action in Illinois (the "Illinois Action"), a venue with no apparent connection to the events and witnesses in the Delaware Action. Using at least one illusory client (who withdrew and never expressly agreed to serve as a named plaintiff), the law firm thereafter procured an order appointing it as lead counsel.

The securities laws vest the right to control a securities class action in the plaintiff or group of plaintiffs with the requisite financial stake, *not* in the law firm to file suit first. Blau's law firm exploited this principle by claiming a mandate based upon the financial stake of an institution that *did not want to participate* in the Illinois Action. Once the financial institution realized how it was being used, it immediately withdrew. Despite this deplorable use of an illusory client, Blau's law firm claims a monopoly over any lawsuit related to the Illinois Action, even though the Delaware Plaintiffs' financial stake is **over six times** higher than Blau's and the Delaware Action asserts several claims not asserted in the Illinois Action. Movant now seeks a stay the Delaware Action under the guise of intervention, with a tainted and misbegotten claim to authority.

---

[1] This conflict of interest is detailed in a forthcoming motion to disqualify.

Although the Illinois Action bears a passing resemblance to the Delaware Action, the claims, theories of relief and liability, parties, classes asserted, and adequacy of representation in the two actions are critically different. The two actions are not duplicative, and thus a stay would be highly prejudicial. The motion should be denied.

## **SUMMARY OF THE ARGUMENT**

1. Having chosen not to oppose the Delaware Plaintiffs' lead plaintiff application, Blau's motion for intervention is untimely.

2. The motion for intervention should be denied because Blau's interests, if any, are more than adequately represented in this action.

3. Intervention should be denied because the proposed intervenor seeks to stay this action rather than to join as an original party.

4. The motion for intervention should be denied because the Delaware Plaintiffs would be prejudiced by Blau's intervention.

5. Even if intervention is granted, a stay would be inappropriate and highly prejudicial in light of the numerous critical differences between the actions.

6. The existence of a lead plaintiff order in another district is not a basis to intervene in this action or for a stay of this action.

## STATEMENT OF FACTS

### The First-Filed Action

As set forth in greater detail in the Delaware Plaintiffs' opposition to defendants' motion to dismiss (D.I. 52), this action concerns a corporate merger (the "Merger") in 2004 between two banks incorporated in and with operations in Delaware.  After certain shocking facts were revealed on June 27, 2004, three shareholder suits were filed in the Delaware Court of the Chancery on June 29 and June 30 (the "Chancery Action").  The suits were thereafter consolidated and a consolidated complaint was filed.

### The Illinois Action – A Comedy of Errors

Over three months later, the Illinois Action was quietly commenced in, of all places, Chicago – where Blau's counsel, Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein"), has an office.  Blau himself resides in New York; all publicly-available evidence indicates that the Merger negotiations took place in New York; none of the relevant witnesses are located in or near Chicago; both parties to the Merger are incorporated in Delaware, not Illinois; the post-Merger entity is headquartered in New York, not Chicago.  Neither the litigation nor the parties have ties to Illinois.

The allegations in the Illinois Action may trigger a sense of *déjà vu*.  Indeed, a comparison of the Illinois Action amended complaint and the consolidated complaint in the Chancery Action reveals ***at least 29 instances of plagiarism***, including several allegations copied verbatim.  (Decl. ¶ 2 & Ex. A.)  Such rampant and obvious plagiarism strongly suggests that Wolf Haldenstein simply caught wind of the Chancery Action and, with little or no investigation, decided to file practically the same complaint in a venue where hopefully it would escape the attention of rivals.

Wolf Haldenstein thereafter published a purported notice of the Illinois Action—of course, to avoid unwanted attention, the notice concealed critical information. (Decl. Ex. B.) Among other deficiencies, the notice disclosed only two of the fourteen defendants. Thus, one would not have known from the notice that the lawsuit was against Riley Bechtel, Ellen Futter, Lawrence Bossidy, or any of the other defendants unmentioned in the notice. The notice also failed to advise that class members could retain counsel of their own choice—a critical omission since the statutory aim of the mandatory notice is to encourage class members to come forward with their own choice of counsel. Sixty days after the publication of the defective notice, Wolf Haldenstein filed a motion seeking the appointment of itself as lead counsel and of Blau and American Growth Fund, Inc. ("AGF") as co-lead plaintiffs. The motion was premised upon a combined financial stake of nearly 28,000 shares – 89% from AGF's holding of 25,000 shares and the remainder from Blau's purported holding of "2999.9" shares. The proposed order was entered without a written opinion on January 5, 2005.

On October 15, 2004, Wolf Haldenstein left copies of the summons and complaint with Marjorie G. Joseph, apparently an officer or other agent of JPMC. It remains unclear why Wolf Haldenstein believed that such service was sufficient or proper, especially given that five of the Illinois Action defendants were no longer directors of JPMC when the Illinois Action was commenced.[2] In fact, one defendant raised the issue. (Decl. Ex. C at 2 n.2 ("Riley P. Bechtel…was never properly served in this matter.").) To this day, none of the defendants in the Illinois Action have expressly waived service of process, and thus the question of adequacy of service lingers.

---

[2] Laurence Fuller stepped down from the JPMC Board in 2003; Riley P. Bechtel and M. Anthony Burns were JPMC directors until the eve of the JPMC annual meeting on May 25, 2004; Frank A. Bennack, Jr. and Helene L. Kaplan were JPMC directors until the consummation of the Merger on July 1, 2004.

On February 18, 2005, Blau filed an amended complaint. That very same day, AGF, which had purportedly certified its willingness to represent the class, suddenly withdrew as a lead plaintiff without explanation. (Decl. Ex. D.) As set forth in detail below, the scandalous circumstances behind this mysterious withdrawal were finally revealed only last month.

### Background of the "Certification Form" Scheme

In the wake of the PSLRA's passage, some unscrupulous class action law firms invented a scheme to take control of securities class actions by soliciting unwitting institutional investors to sign lead plaintiff certification forms closely resembling proof of claim forms. In an article entitled *Mass Solicitations Dupe Institutional Investors* (attached as Decl. Ex. E), shareholder lawyers Max Berger and Robert Gans warned of this particularly deceptive practice:

> [M]any traditional class action attorneys who have been unable to attract institutional clients have been creative in their attempts to subvert the Congressional intent and perpetuate the regime of class action litigation dominated by attorneys whose clients only have a nominal interest in the litigation.
>
> For example, certain law firms have taken advantage of a provision of the PSLRA that requires the plaintiff in the first-filed case to publish a notice in a national business publication or wire service informing class members of the pendency of the action, and of their right to apply to the Court to be appointed lead plaintiff. Although Congress contemplated that only one notice would be published, attorneys have used this provision to publish dozens of notices, most of which more closely resemble advertisements for particular law firms than anything else. ***The goal of these advertisements is to attract…a large investor that is unfamiliar with its rights and responsibilities under the PSLRA….***
>
> More recently, many law firms have adopted a variation of this model, investing tens of thousands dollars in direct

- 5 -

mailings to all institutional investors, their money managers, and their brokerage firms. Typically, these mailings are not directed to any individual with significant decision-making authority for the investment entity; instead, they are ***designed to look like proof of claim forms*** that would be provided to class members later in a case to secure a portion of any recovery obtained, and ***provide relatively little information*** regarding the facts of the case. ***The mailings, also, often misleadingly imply that it is necessary to complete and return an enclosed "certification" form to participate in the action.*** Neither the certification form itself, nor the materials accompanying the form, specify the obligations that a lead plaintiff is expected to perform. ***The form merely contains boilerplate language*** stating the willingness of the recipient to serve as a "named plaintiff" or "class representative" - terms that are used interchangeably, and without any explanation of the added duties and responsibilities assumed by a lead plaintiff in the litigation. ***In most instances, the recipient need only fill in his stock purchase information, sign the form, and return it to the law firm*** in a postage paid, pre-addressed envelope. Finally, most of the mass solicitations sent by law firms never inform the recipient that he can participate in the Action without assuming any of these duties or obligations, and will be notified of any recovery during the course of the litigation. [Emphasis added.]

The very scheme described and denounced above is precisely what took place in the Illinois Action. All evidence indicates that AGF believed it was submitting nothing more than a proof of claim form. Indeed, Delaware Plaintiffs' counsel twice spoke with an AGF executive who specifically stated that AGF's involvement in the Illinois Action was the result of a "clerical error." (Decl. ¶ 4.) In fact, AGF never wanted to be a named plaintiff in the Illinois Action, let alone a lead plaintiff. As soon as AGF discovered how it was being used in the Illinois Action, it immediately ordered its withdrawal.

No less than the Securities and Exchange (the "SEC") has specifically denounced this manipulative practice under similar circumstances:

In its *Report to the President and the Congress on the First Year of Practice Under the Private Securities Litigation Reform Act of 1995* (Apr. 1997), the [SEC's] Office of General Counsel noted (at 65-66) that some lawyers, "[t]aking advantage of [the Act's] provision" allowing appointment of a "group of persons" as lead plaintiff, have attempted "to recruit investors as additional clients." They have done so, the Report explained, by phrasing Reform Act notices "in a way more likely to attract clients, rather than competition from investors (and other law firms) independently vying to be named lead plaintiff."

A striking example of abuse is provided by *Parnes v. Digital Lightwave, Inc.*, No. 98-152-CIV-T-24(C) (M.D. Fla.), *appeal pending*, 99-11293-FF (11th Cir.), a case in which at least one member of a ten-person lead plaintiff group (and likely others as well) did not know he was appointed lead plaintiff until after lead counsel had submitted a proposed settlement for court approval. After responding to a law firm's internet notice about the class action, the investor received a series of cryptic mailings from the law firm's non-attorney Shareholder Relations Manager. They did not inform the investor, who signed a certification stating that he was "willing to serve as a representative party," that he had in fact been put forward as a member of a lead plaintiff group, who "our group of plaintiffs" was, what the "lead plaintiff" was, or that multiple lead law firms had been proposed. Although a later mailing said that "the Court appointed a group of plaintiffs represented by this firm and two other firms as lead plaintiffs and appointed this firm and the other two firms as lead counsel," it did not identify the "group of plaintiffs," its function, or the "other firms."

No attorney at the law firm spoke or wrote to the investor until almost six months after he had responded to the law firm's internet notice and a month after a settlement had been reached in the case. Despite the investor's repeated requests over a six-week period, lead counsel did not provide him with the information for which he asked about the action, including a copy of the stipulation of settlement filed with the district court. Only after the court had preliminarily approved the settlement and asked at that hearing if the lead plaintiff group had seen it, did lead counsel send the stipulation to the investor.

*Memorandum of the SEC as Amicus Curiae* appended to *In re Network Associates, Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1052 (N.D. Cal. 1999) (rejecting one proffered lead plaintiff candidate who "selected" a law firm "merely because he received its mass-mailed form. He sent it in erroneously thinking it was necessary to do so to participate in any recovery").

### Wolf Haldenstein's Certification Scheme is Exposed in the Illinois Action

Demonstrating yet another "striking example of abuse," *see Network Associates*, 76 F. Supp. 2d at 1052, below are essentially-undisputed facts from the Illinois Action:[3]

(1) On or about November 19, 2004, AGF sent to Wolf Haldenstein a fill-in-the-blank "plaintiff's certification" form, unsigned, listing AGF's relevant stock transactions. How AGF received the vague form (which not once uses the phrase "lead plaintiff") remains shrouded in mystery. Importantly, there is no evidence that AGF in fact received or reviewed a copy of the complaint and authorized its filing.

(2) On or about November 23, 2004, Wolf Haldenstein wrote back to AGF, requesting a signature—however, no explanation of the lead plaintiff process was offered, nor were the responsibilities of a lead plaintiff discussed.

(3) AGF returned the form, this time with a signature.[4]

(4) Nearly four months later, and well after AGF had been appointed a lead plaintiff, Wolf Haldenstein sent to AGF a draft of the amended complaint in the Illinois Action on or about February 14, 2005.

---

[3] The facts are taken from the affidavit of Wolf Haldenstein partner Gregory Mark Nespole and exhibits attached thereto, filed in the Illinois Action, attached hereto as Exhibit F. Since no waiver of attorney-client privilege is disclosed or referenced, apparently Wolf Haldenstein believes that the privilege does not extend to an illusory client such as AGF.

[4] Since the form was apparently signed after November 23, 2004 (when Wolf Haldenstein returned the unsigned form), the certification's representation that it was executed on November 19 is necessarily false.

(5) At this time, AGF appeared to realize the unintended consequences of its clerical error and immediately called Wolf Haldenstein to sever its involvement.

(6) On February 16, confronted with the exposure of its gambit, Wolf Haldenstein sent a letter to AGF to shield itself from future scrutiny.

(7) That same day, an AGF executive sent a letter to Wolf Haldenstein stating its position in no uncertain terms: "This is to confirm my earlier message. [AGF] does not wish to participate in a class action lawsuit against Chase Morgan." The letter does not suggest that AGF had misgivings, or that AGF *no longer* wished to be a lead plaintiff— rather, it confirms that AGF *never* intended to be a lead plaintiff. The Delaware Plaintiffs' counsel has confirmed this fact in two conversations with the AGF executive.

Wolf Haldenstein has sought to minimize its role in the scheme, to offer "plausible deniability" as to its involvement – but its spin on the story, even if believed, does not cure the fact that it exploited an unwitting investor, an unwilling plaintiff, an illusory client. In any case, the documents themselves suggest that Wolf Haldenstein's dummy defense is simply not credible. Wolf Haldenstein cannot plead ignorance as to AGF's unwillingness to participate in the Illinois Action.

Blau's prosecution of the Illinois Action has been wanting in other respects. For instance, the diligence of Wolf Haldenstein's counsel must be called into question by the fact that briefing on defendants' motion to dismiss in the Illinois Action is not due to be completed until September 23, 2005 – nearly a year after the action was commenced. This extraordinary delay is primarily due to repeated continuances sought by Wolf Haldenstein, raising doubts not only about its diligence, but also its ability to handle the workload of this litigation. (Decl. Exs. G, H and I.)

**The First Properly-Venued and Properly-Noticed Federal Action**

On March 17, 2005, less than 30 days after AGF withdrew as lead plaintiff, the Delaware Action was commenced in this district, where both parties to the Merger are incorporated and have operations, where the Delaware Plaintiffs reside, where the Chancery Action was filed, and where witnesses in New York can be summoned to testify at trial. An adequate legal notice of the Delaware Action, including the critical information left out of the Illinois Action notice, was published on March 23, 2005, triggering the procedure for lead plaintiff motions in the Delaware Action. The Delaware Plaintiffs moved for appointment as lead plaintiffs on May 23, 2005, based on their combined financial stake of nearly 20,000 shares.

On April 18, 2005, at a hearing in the Delaware Action, defendants' counsel, who had recently become aware of the existence of the Illinois Action, notified the Delaware Plaintiffs' counsel of the Illinois Action.

On April 29, 2005, the Court of Chancery issued an opinion granting a motion to dismiss the Chancery Action. *In re J.P. Morgan Chase & Co. S'holder Litig.*, Consol. C.A. No. 531-N, 2005 WL 1076069 (Del. Ch. Apr. 29, 2005) (Lamb, V.C.). The Court specifically discussed and distinguished the Delaware Action, observing, in relevant part:

> A similar federal class action complaint was filed in the District of Delaware on March 17, 2005. The federal complaint alleges substantially the same claims that are before this court. It does, however, have several important differences. First, the federal complaint characterizes the deal between Harrison and Dimon as a "secret deal." This description implies that the merger negotiations were unknown to the board of JPMC, a fact that appears inconsistent with the state complaint's primary allegation, as well as later allegations in the federal complaint that the "[d]efendants were motivated to conceal Harrison's secret and undisclosed pact with Dimon."

> Second, the federal complaint alleges that JPMC violated federal securities laws, specifically Sections 10(b), 11, 12(a)(2), 14(a), 15, and 20(a) of the Securities Exchange Act of 1934. These claims are sufficient to give federal courts jurisdiction over the claims, including the related breaches of fiduciary duty claims.
>
> Finally, the federal complaint lists important distinguishing facts, some of which are inconsistent with facts in this action. For instance, the federal complaint states that *Harrison* offered the no-premium deal. The complaint before this court makes the opposite claim, i.e. that it was Dimon who made an offer of that nature. This discrepancy is not explained.
>
> The federal complaint alleges additional substantive facts concerning certain directors. For example, the federal complaint ties Futter's fund-raising activities to her board membership, as reported in *New York Magazine* on February 21, 2000. Additionally, the federal complaint alleges that Kaplan is an attorney whose law firm receives substantial fees from JPMC.

*Id.* at 11-12 (referring to D.I. 1; emphasis in original; citations omitted).

On June 21, 2005, this Court appointed the Delaware Plaintiffs as lead plaintiffs in the Delaware Action. (D.I. 46.) Only weeks later, on August 1, 2005, defendants' motion to dismiss the operative complaint in the Delaware Action was fully briefed.

## ARGUMENT

Blau's motion is untimely and offers no tenable reason to justify either intervention or a stay of the Delaware Action. Moreover, the objective of the proposed intervention is improper and would be highly prejudicial to the Delaware Plaintiffs, given the numerous critical differences between the Delaware Action and the Illinois Action. The opening brief offers precious few points or authorities, and Movant has failed to meet his various burdens. The motion should be denied.

**I.    THE MOTION FOR INTERVENTION IS UNTIMELY**

By no later than May 23, 2005, Wolf Haldenstein was aware of the Delaware Action.[5] Yet the Delaware Plaintiffs' motion for appointment as lead plaintiffs, filed that day, met no opposition.[6] Thus, Blau has waived the opportunity to contest the lead plaintiff appointment in the Delaware Action, and Wolf Haldenstein has waived its opportunity to contest the lead counsel appointment in the Delaware Action. Coming over two months after the Delaware Plaintiffs were appointed lead plaintiffs in the Delaware Action, and after the motion to dismiss has been fully briefed, Movant's challenge at this late date is untimely.

Whether a motion to intervene is timely is decided in light of the totality of the circumstances. *See NAACP v. New York*, 413 U.S. 345, 366 (1973). In *Commonwealth of Pennsylvania v. Rizzo*, 530 F.2d 501, 506 (3d Cir. 1979), the Court of Appeals listed three factors that inform the inquiry regarding timeliness of an intervention motion: "(1) [H]ow far the proceedings have gone when the movant seeks to intervene, ... (2) prejudice which resultant delay might cause to other parties, ... and (3) the reason for the delay." (Citations omitted). None of these factors support Blau's intervention.

First, intervention after entry of a decree is justified only under "extraordinary circumstances." *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 974 (3d Cir. 1982). Here, although this Court entered the Lead Plaintiff Order months ago, and after the parties have fully briefed a motion to dismiss, Movant has offered no extraordinary circumstances to excuse his delay. When a proposed intervenor knew or should have known of the pendency of a lawsuit at an earlier time, but failed to

---

[5] On that date, the Delaware Plaintiffs, *qua amici curiae*, filed an informative brief in the Illinois Action.
[6] In addition, no motion for reconsideration of the lead plaintiff order under Fed. R. Civ. P. 59(e) was filed within the 10-day period provided for in Local Rule 7.1.5.

act at that time to protect its interests, that inaction will weigh heavily against the timeliness of the motion. *Id.* at 975; *see also In re Fine Paper Anti-Trust Litigation*, 695 F.2d 494, 501 (3d Cir. 1982) ("Although appellants knew or should have known long before settlement that their interest was not protected, they failed to take the necessary steps... . They presented no reason for their delay... .").

Blau knew or had reason to know of the Delaware Plaintiffs' lead plaintiff motion as of no later than May 23, 2005. *Cf. National Wildlife Federation v. Gorsuch*, 744 F.2d 963, 971-72 (3d Cir. 1984) ("Clearly, [the proposed intervenors] were not outsiders unaware of litigation in progress that would ultimately affect their interests. In a deliberate choice of litigation strategy, they chose to stand on the sidelines, wary but not active, deeply interested, but of their own volition not participants."). After deliberately choosing not to oppose the motion, Movant waited for over two months after the court's entry of the Lead Plaintiff Order to file the instant motion. *See id.* at 969 ("The critical fact is that [the proposed intervenors] deliberately chose not to appeal that decision as they had a right to do."). At this time, defendants' motion to dismiss has already been fully briefed in this action, all defendants have waived service of process, and discovery efforts have been initiated, including document preservation subpoenas served upon critical witnesses. (D.I. 47, 48.) Thus, the Delaware Action is well underway. Movant has offered no reason for this substantial delay after standing on the sidelines for months.

Second, were Blau permitted to intervene, other parties would suffer prejudice. The Delaware Action has been proceeding at an expedited pace, as described herein, and the Delaware Plaintiffs intend to seek a jury trial at the soonest possible date. Prejudice is obvious in so far as Movant seeks to oust the Delaware Plaintiffs from prosecuting this

action on behalf of themselves and the putative class. Also, Movant's belated attempt to disrupt this action has likely delayed a ruling on defendants' motion to dismiss. Finally, as set forth in Part V, *infra*, prejudice will necessarily result if Movant achieves the purpose of the intervention herein sought, as numerous claims not brought in the Illinois Action will be stayed indefinitely, granting a windfall to defendants at the Delaware Plaintiffs' expense.

Blau had every opportunity to intervene in this law suit, of which he was on actual notice by no later than May 23, 2005. The nature of the relief sought and granted in connection with the Delaware Plaintiffs' Motion for Appointment as Lead Plaintiffs and Appointment of Lead Counsel (D.I. 27) should have alerted Blau to the likely necessity for action. Movant failed to exercise his right to oppose that motion or seek reconsideration of the Lead Plaintiff Order. No reason for delay has been offered. Accordingly, the application for intervention is untimely.

## II.    BLAU'S INTERESTS, IF ANY, ARE MORE THAN ADEQUATELY REPRESENTED IN THIS ACTION

The applicant bears the burden of establishing its right to intervene. *Olden v. Hagerstown Cash Register, Inc.*, 619 F.2d 271, 273 (3d Cir. 1980) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972), and *Rizzo*, 530 F.2d at 505). In particular, the applicant bears the burden of showing that the existing parties inadequately represent his or her interests in the action. *See* Fed. R. Civ. P. 24(a)(2); *Brody By and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992). The Third Circuit has stated that representation can be considered inadequate on any of the following three grounds: "(1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the

applicant's interests; (2) that there is collusion between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the suit." *Brody*, 957 F.2d at 1123 (citing *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 1982)). In the instant case, Movant simply does not contend, and cannot show, that any of these three possible grounds apply.

### A. Movant's Interests Do Not Diverge From Those Of The Delaware Plaintiffs

Blau is a member of the putative class in the Delaware Action.[7] If he held JPMC common stock at the relevant time, then he will share in any recovery from the Delaware Action. Alternatively, after the Delaware Action class is certified, Blau is free to opt out and individually pursue his claims against the defendants. Of course, by not opting out, Blau may benefit from the broader and better-pled claims in the Delaware Action.

In any case, Movant does not contend that his interests diverge from those of the Delaware Plaintiffs.

### B. There Is No Collusion Between The Delaware Plaintiffs And The Defendants

Movant does not allege that there has been any collusion between defendants and the Delaware Plaintiffs. The Delaware Plaintiffs have aggressively litigated this action by conducting a thorough investigation and filing a comprehensive complaint with several valuable claims not asserted in the Illinois Action. The Delaware Plaintiffs have demonstrated their vigorous prosecution of this action through efficient and high-quality pleadings and by serving document preservation subpoenas on lawyers and bankers close

---

[7] This proposition presumes that Blau, in fact, (i) owned common stock of the corporate defendant at the relevant time and (ii) is a willing client of Wolf Haldenstein. Blau's claim to own "2999.9" shares raises doubt as to the former point, since it is impossible to buy or sell fractional shares. The circumstances behind AGF's short-lived turn as lead plaintiff raise a reasonable question as to the latter point.

to the Merger negotiations. Unlike Wolf Haldenstein, counsel for the Delaware Plaintiffs is not counsel in any other action against the corporate defendant, precluding any charge of collusion in connection with favoring one action over another in multiple suits against the same defendant. (Decl. ¶ 5.) There is no evidence whatsoever of any collusion between the Delaware Plaintiffs and defendants.

**C.    The Delaware Plaintiffs Are Diligently Prosecuting This Action**

Movant does not allege that the Delaware Plaintiffs have not diligently litigated this lawsuit. Indeed, although the Delaware Action was commenced after the Illinois Action, the motion to dismiss in this action was fully briefed nearly two months before the motion to dismiss is due to be completed in the Illinois Action. Wolf Haldenstein, whose pre-filing investigation appears limited to copying the Chancery Action pleadings, can hardly accuse the Delaware Plaintiffs, whose amended complaint reflects an extraordinary investigation and careful drafting, of a lack of diligence. The Delaware Plaintiffs and their counsel have delivered excellence, and the putative class will benefit.

Accordingly, intervention as of right should be denied because Movant's interests, if any, are adequately represented.

**III.    THE PROPOSED INTERVENTION LACKS A PROPER PURPOSE**

Intervention should be denied because Movant seeks to stay this action rather than join as an original party. Although the motion is technically "accompanied by a pleading," the pleading does not actually set forth "the claim or defense for which intervention is sought." *See* Fed. R. Civ. P. 24(c). Rather, the "Complaint in Intervention" is submitted solely to satisfy Rule 24's procedural requirement, even though the *true* reason "for which intervention is sought" is to request a stay of the

Delaware Action.[8] This reason is not a proper basis for intervention. *See Lexington Ins. Co. v. Caleco, Inc.*, No. Civ. A. 01-5196, 2003 WL 21652163, at *6 (E.D. Pa. Jan. 25, 2003) (denying motion for intervention and stay of proceedings) (citing *Kamerman v. Steinberg*, 681 F. Supp. 206, 211 (S.D.N.Y. 1988)). In *Kamerman*, the court stated:

> The court notes at the outset the peculiar character of movants' application to intervene. Ordinarily, a person desiring to intervene seeks to join a pending action either as a plaintiff or as defendant. The federal rules therefore require that the applicant "set forth the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). If the application is granted, the intervenor is "treated as if he [or she] were an original party…." *Marcaida v. Rascoe*, 569 F.2d 828, 831 (5th Cir. 1978) (per curiam). The movants here, on the other hand, do not seek to join this action as either plaintiffs or as defendants. They have no claim to press against defendants; nor have they any defense to assert against plaintiffs. In fact, they have no intention whatsoever of litigating the causes of action asserted in the federal complaint. Their sole purpose in submitting their motion is to delay the prosecution of the federal action. With this goal in mind, they dress in the language of Rule 24 what is in reality an application for some special status permitting them to press their motion for a stay. For this reason alone, the court believes that the application to intervene should be denied.

681 F. Supp. at 211.

As in *Kamerman* and *Lexington*, here Movant does not seek intervention in order to join the Delaware Action, but rather to prevent this action from proceeding. Lacking a proper purpose, the motion for intervention should be denied.

---

[8] Notably missing from the Complaint in Intervention is any section on venue or jurisdiction. As noted above, the Illinois Action was inexplicably commenced in an entirely inappropriate venue. The Court should look past this obvious ploy to evade conceding the validity of the Delaware Plaintiffs' choice of venue. Also notably missing from the Complaint in Intervention is a signature—perhaps to avoid Fed. R. Civ. P. 11's standards for signed pleadings. If the absence of a signature renders a pleading void, then the motion fails Fed. R. Civ. P. 24(c) for lack of an accompanying pleading.

**IV.    THE DELAWARE PLAINTIFFS WOULD BE
        <u>PREJUDICED BY BLAU'S INTERVENTION</u>**

As previously stated, (i) intervention as of right should be denied for failure to
allege any adversity of interest or inadequate representation and (ii) both intervention as
of right and permissive intervention should be denied because the motion is untimely.
Permissive intervention should also be denied because intervention will prejudice the
Delaware Plaintiffs and unduly delay the prosecution of the Delaware Action.

"Rule 24(b) specifically directs the court to 'consider whether the intervention
will unduly delay or prejudice the adjudication of the rights of the original parties,' and
movants are seeking to intervene for the sole purpose of delay." *Kamerman*, 681 F.
Supp. at 212. *See also Lexington*, 2003 WL 21652163, at *8 ("[I]t is clear that permitting
Proposed Intervenors to intervene here would 'unduly delay or prejudice the adjudication
of the rights of the original parties,' as Proposed Intervenors' express objective is to stay
the present action...").

The prejudice which would result from permissive intervention is not limited to a
delay of the Delaware Action.  In addition, as detailed in Part V, *infra*, granting
intervention in order to grant a stay would act as a dismissal of several valuable claims
asserted in the Delaware Action but not in the Illinois Action.  Moreover, the Delaware
Plaintiffs' spirited prosecution of the Delaware Action would likely be slowed by the
intrusion of Wolf Haldenstein, which has demonstrated its inability to prosecute the
Illinois Action on a reasonable schedule.  The inability or unwillingness of Wolf
Haldenstein to take this litigation seriously would impair the potent campaign waged by
the Delaware Plaintiffs on behalf of the class they seek to represent.  Accordingly,

permissive intervention should be denied because it would unduly delay and prejudice adjudication of the rights of the Delaware Plaintiffs.

## V.    A STAY OF THIS ACTION WOULD BE INAPPROPRIATE DUE TO CRITICAL DIFFERENCES BETWEEN THE TWO ACTIONS

Movant seeks intervention solely to request an indefinite stay of the Delaware Action.  Due to the numerous critical differences between the Illinois Action and the Delaware Action, several valuable claims raised in the Delaware Action but not in the Illinois Action would be effectively dismissed without ever being heard on the merits. *See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 28 (1983) ("[A] stay is as much a refusal to exercise federal jurisdiction as a dismissal.").

The motion cites only *Landis v. North American Co.*, 299 U.S. 248 (1936) to justify the request for a stay.  (Opening Br. at 5 n.3.)  In *Landis*, the Supreme Court set down the rule that "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else."  *Id.* at 255 (quoted with approval in *Dentsply Intern., Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990) (Farnan, J.)).  The proposed stay exposes the Delaware Plaintiffs, and the class they seek to represent, to substantial harm, but Movant has not even attempted to make out any clear case of hardship or inequity.  Accordingly, the stay should be denied even if intervention is granted.

A stay of the Delaware Action would indefinitely prevent the Delaware Plaintiffs from pursuing their claims. The table below illustrates some of the critical differences between the Delaware Action (DE) and the Illinois Action (IL):[9]

| DE | IL | *Claims Asserted* |
|----|----|-------------------|
| * | * | Section 14(a) of the Securities and Exchange Act of 1934 (the "34 Act"), and Rule 14a-9 promulgated thereunder |
| * | * | Section 20 of the 34 Act (as to 14a-9 claim) |
| * |  | Common law, for breach of the duty of loyalty |
| * |  | Common law, for breach of the duty of disclosure |
| * |  | Section 10(b) of the 34 Act and Rule 10b-5 promulgated thereunder |
| * |  | Section 20 of the 34 Act (as to 10b-5 claim) |
| * |  | Section 11 of the Securities Act of 1933 (the "33 Act") |
| * |  | Section 12(a)(2) of the 33 Act |
| * |  | Section 15 of the 33 Act |
| **DE** | **IL** | ***Plaintiffs*** |
| * |  | Samuel Hyland – 300 shares |
| * |  | Stephanie Speakman – 19,170 shares |
|  | * | Stephen Blau – 2,999.9 shares |
|  | * | American Growth Fund – 25,000 shares (withdrawn) |
| **DE** | **IL** | ***Defendants*** |
|  | * | Laurence Fuller (voluntarily dismissed) |
|  | * | J.P. Morgan Chase & Co. (pre-Merger entity – no longer in existence) |
| * |  | JPMorgan Chase & Co. (post-Merger entity) |
| * |  | James Dimon |
| * | * | Hans W. Becherer, Frank A. Bennack, Jr., John H. Biggs, Lawrence A. Bossidy, M. Anthony Burns, Ellen V. Futter, William H. Gray, III, Helene L. Kaplan, Lee R. Raymond, John R. Stafford, Riley P. Bechtel, and William B. Harrison, Jr. |
| **DE** | **IL** | ***Omissions and/or Misrepresentations Alleged to Have Violated Section 14(a)*** |
| * | * | Omission of Offer to Merge Without a Premium |
| * | * | Misrepresentation of Merger Rationale |
| * | * | Misrepresentation of Succession Arrangement |
| * |  | Misrepresentation of Merger Agreement |
| * |  | Omission of Material Relationship Compromising Directorial Independence of Defendant Riley P. Bechtel |
| * |  | Omission of Material Relationship Compromising Directorial Independence of Defendant Ellen V. Futter |
| * |  | Omission of Material Relationship Compromising Directorial Independence of Defendant Helene L. Kaplan |

---

[9] The table does not purport to be an exhaustive list of differences between the actions or an exhaustive list of claims and allegations in the Delaware Action.

| | | |
|---|---|---|
| * | | Omission of Material Relationship Compromising Directorial Independence of Defendant William Gray, III |
| * | | Omission of Material Relationship Compromising Directorial Independence of Defendant John R. Stafford |
| * | | Omission of Material Relationship Compromising Directorial Independence of Defendant M. Anthony Burns |
| * | | Misrepresentations and Omissions in Merger Press Release |
| * | | Oral Misrepresentations in Merger Announcement Conference Call |
| **DE** | **IL** | ***Theories of Liability*** |
| * | * | The Proxy Statement should have disclosed the zero premium offer. |
| * | | The Merger Press Release should have disclosed the zero premium offer. |
| * | | Harrison and Dimon should have disclosed the zero premium offer in their conference call announcing the Merger and lied when responding to questions regarding the succession arrangement. |
| * | | The Merger must be reviewed under, and fail, the "entire fairness" standard because the corporate defendant's board did not contain a majority of disinterested and independent directors. |
| * | | The defendants are liable for persuading shareholders to vote for an amendment to the corporate charter, expanding the authorized shares issuable, without informing shareholders of the true reason for the necessity of increasing this corporate authority. |
| * | | The corporate defendant's directors breached their fiduciary duties. |
| * | | The defendants wrongfully frustrated the will of a substantial number of shareholders to split the Chairman and Chief Executive Officer posts. |
| * | | Shareholders would not have approved the Merger had they known of the zero premium offer. |
| **DE** | **IL** | ***Theories of Relief*** |
| | * | "Mr. Harrison's selfish action…ultimately cost J.P. Morgan Chase shareholders over $7 billion in unnecessary Merger compensation." (Opening Br., Proposed Complaint in Intervention ¶ 2.) |
| * | | "As a result of the Merger, pre-Merger JPMC shareholders, including plaintiffs and other members of the Class, hold approximately 58 percent of the combined entity.  If JPMC had merged with Bank One without paying any acquisition premium, as was proposed, pre-Merger JPMC shareholders, including plaintiffs and other members of the Class, would have held approximately 61 percent of the combined entity."  (D.I. 51 ¶ 164.) |
| * | | "As a result of the misrepresentations and omissions of material facts set forth herein, including the failure to disclose that Harrison rejected the opportunity to merge Bank One into JPMC with a nil-premium exchange ratio, JPMC shareholders voted in favor of amending the Company's certificate of incorporation to allow the Company to issue far more shares than the Company would have needed to issue had Harrison agreed to a nil-premium exchange ratio."  (D.I. 51 ¶ 168.) |
| * | | "At the time of the purchase of those securities by the members of the JPMC Purchaser Class, the fair market value of JPMC securities was substantially less than the prices paid."  (D.I. 51 ¶ 252.) |

| * | | "[M]embers of the JPMC Exchange Class who have sold their shares of JPMC common stock are entitled to rescissionary damages."  (D.I. 51 ¶ 275.) |
|---|---|---|
| DE | IL | *Class Asserted* |
| | * | All persons who held common stock of J.P. Morgan Chase either on April 2, 2004 or at any time from April 19, 2004 through July 1, 2004 |
| * | | All present and former JPMC shareholders who: (1) purchased or otherwise acquired the common stock of JPMC between January 14, 2004 and June 25, 2004 inclusive, (2) as shareholders of record of JPMC on April 2, 2004, were entitled to vote on the Merger (and thereby on the proposed amendment to JPMC's certificate of incorporation in connection with the Merger), and/or (3) acquired their JPMC shares by surrendering Bank One shares in connection with the Merger on or about July 1, 2004 |
| DE | IL | *Persons Excluded from the Class* |
| | * | Defendants, the officers and directors of the corporate defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which defendants have or had a controlling interest. |
| * | | Defendants; any person related to any of the individual defendants; any firm, trust, corporation, or other entity affiliated with any of the defendants (except for those holding the corporate defendant's common stock in solely a fiduciary capacity); the legal representatives, heirs, successors, and assigns of any excluded person; and any entity controlled by any excluded person. |

As the table above plainly indicates, the two actions are neither duplicative nor sufficiently parallel to justify a stay of this action.  The Illinois Action does not remotely cover the Delaware Action and certainly could not act as *res judicata* against the latter. *See Stratos Lightwave, Inc. v. Picolight, Inc.*, No. Civ. A. 03-917-JJF, 2005 WL 681308, at *2 (D. Del. Mar. 23, 2005) (declining to stay later-filed related action).

In the related context of federal abstention in the face of parallel state court proceedings under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), it is clear that a stay would be unwarranted because the Illinois Action is not duplicative of the Delaware Action.  *See Moses H. Cone*, 460 U.S. at 26 ("[A]n important reason against allowing a stay is the probable inadequacy of the [parallel] proceeding to protect [a party's] rights."); *Complaint of Bankers Trust Co. v. Chatterjee*,

636 F.2d 37, 40 (3d Cir. 1980) ("It is important, however, that only truly duplicative proceedings be avoided.  When the claims, parties, or requested relief differ, deference may not be appropriate."); *University of Maryland at Baltimore v. Peat Marwick Main & Co.*, 923 F.2d 265, 276 (3d Cir. 1991) ("[W]hile certain issues to be litigated in the…federal claim may be identical to issues that have been or will be raised…in state court, the lack of identity of all issues necessarily precludes *Colorado River* abstention.") (citing *Chatterjee*, 636 F.2d 37).

In *Tuff Torq Corp. v. Hydro-Gear Ltd. Partnership*, 882 F. Supp. 359 (D. Del. 1994), Judge Robinson denied a motion to stay an action in this district despite an allegedly duplicative prior-filed action in Iowa.  In particular, "[a] recognized reason to depart from [the first-filed] rule exists when the second filed case has developed more rapidly than the first."  *Id.* at 364-65.  Having not even fully briefed the motion to dismiss nearly a year after its filing, the Illinois Action "is far from progressing rapidly."  *Id.* at 365.  Moreover, "[t]he Court…is not only concerned with the difference in progression between the two cases, but also with the prospect that a stay of this action will force the plaintiff to litigate its claims in [an inconvenient or inappropriate] forum…."  *Id.*

Subjecting the Delaware Plaintiffs to a stay would expose them and the class they seek to represent to (i) reduced recovery due to the absence of valuable claims and critical allegations in the Illinois Action, (ii) the risk that valuable claims will be released in the event that Wolf Haldenstein settles or voluntarily dismisses the Illinois Action, (iii) the harm of having certain claims litigated in an inconvenient venue, where critical witnesses cannot be summoned for trial, (iv) reduced or no recovery due to Wolf Haldenstein's blatant conflict of interest and lackadaisical, if not incompetent,

prosecution of the Illinois Action, and (v) the risk that Wolf Haldenstein's inadequate service of process will endanger recovery. Thus, there is far more than a fair possibility that the requested stay will harm the Delaware Plaintiffs. *See Dentsply*, 734 F. Supp. at 658 (denying stay because it would delay litigation).

Movant "must state a clear countervailing interest to abridge a party's right to litigate." *CTF Hotel Holdings, Inc. v. Marriott Intern., Inc.*, 381 F.3d 131, 139 (3d Cir. 2004) (reversing grant of stay). Blau has made no such showing.[10] By contrast, the Delaware Plaintiffs have shown in abundant detail the multiple ways in which they and the class they seek to represent would be substantially harmed by a stay of the Delaware Action. Accordingly, even if intervention is granted, the motion for a stay of this action should be denied.

## VI.   THE EXISTENCE OF A LEAD PLAINTIFF ORDER IN THE ILLINOIS ACTION IS NOT A BASIS FOR INTERVENTION OR A STAY

The factual overlap between the Illinois Action and the Delaware Action is undeniable. Both actions concern the same events. However, this overlap does not mean the actions are duplicative. The Delaware Action and the Illinois Action are both securities class actions, but no one can reasonably mistake the latter for the former.

Citing this overlap, Movant contends that the Lead Plaintiff Order in this action impermissibly overrules an order in the Illinois Action. (Opening Br. at 7.) The contention is incorrect. The Delaware Plaintiffs have not sought to intervene in the Illinois Action. Nor can it be said that the Lead Plaintiff Order is an attempt to overrule

---

[10] Blau cites the state court abstention doctrine set forth in *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.*, 263 A.2d 281 (Del. 1970)—but Delaware Plaintiffs' counsel is unaware of any federal case citing or applying the *McWane* doctrine, and Movant has cited no such precedent. In any case, *McWane* is inapplicable because (i) the Chancery Action, not the Illinois Action, was first-filed, and (ii) the Illinois Action is incapable of "doing prompt and complete justice" due to the critical, substantive differences between the Illinois Action and the Delaware Action.

any order in the Illinois Action.  After the Delaware Action was commenced and duly

noticed, a motion for the appointment of lead plaintiffs and lead counsel was filed, and

the motion was not opposed.  Accordingly, this Court entered the Lead Plaintiff Order.

The Lead Plaintiff Order concerns the Delaware Action.  It does not refer to the

Illinois Action at all.  Thus, Blau's contention that the Lead Plaintiff Order in itself

overrules or reverses any order in the Illinois Action is meritless.

Further, Blau leaves unclear what he seeks from this Court with respect to the

Lead Plaintiff Order in this action.  He has sought neither re-argument under Local Rule

7.1.5 nor relief under Fed. R. Civ. P. 60.

By seeking a stay, Blau hopes to sidestep three issues: (i) Blau's failure to

commence his action in an appropriate or convenient forum, (ii) the fact that the

Delaware Plaintiffs' financial stake far exceeds Blau's financial stake, and (iii) Blau's

failure to include valuable class claims and critical substantive allegations asserted in the

Delaware Action.  Blau contends that the Delaware Plaintiffs filed their motion for

appointment as lead plaintiffs after the 60-day lead plaintiff period in the Illinois Action

had expired.  Assuming *arguendo* that the Illinois Action was properly noticed, and that

Wolf Haldenstein's choice of forum was appropriate, Blau's contention was squarely

rejected in *Coopersmith v. Lehman Brothers, Inc.*, 344 F. Supp. 2d 783 (D. Mass. 2004).

In *Coopersmith*, "[t]he fact scenario presented 'is the question (not specifically

addressed in the statute) whether a person who files a complaint after the sixty day period

expires may nonetheless move to be named lead plaintiff where that complaint is

eventually consolidated with the other actions and this new plaintiff unquestionably has

- 25 -

the largest stake in the litigation.'"  *Id.* at 789 (quoting *In re MicroStrategy Inc., Sec. Litig.*, 110 F. Supp. 2d 427, 433 n.12 (E.D. Va. 2000)).

After the Court found a lead plaintiff candidate not to qualify, it observed that "[i]t is…not uncommon for class members not to apply for lead plaintiff status where, as here, a party with greater losses has applied."  *Id.* at 790.  Even if the Illinois Action had been properly noticed, the Delaware Plaintiffs, with just under 20,000 shares, would not likely have moved for lead plaintiff status in light of AGF's purported stake of 25,000 shares.  Of course, AGF's involvement turned out to be a sham.

With this concern in mind, the Court in *Coopersmith* held:

> The PSLRA does not limit lead plaintiffs to those who have filed motions within 60 days of the publication of the notice.  Rather, those presumed most adequate to serve as lead plaintiffs include either those who have filed a complaint *or* those who made a motion for appointment within the 60 day period. 15 U.S.C. § 78u-4(B)(iii)(I)(aa). The use of the disjunctive "or" indicates that the filing of a motion within the 60 day period is not mandatory, but rather is one of two procedural options that can be invoked in order to be presumed the most adequate plaintiff. Coopersmith has satisfied this procedural prerequisite by filing a complaint. *See also In re MicroStrategy Inc. Sec. Lit.*, 110 F. Supp. 2d at 432 & n.8 (where multiple complaints are filed, statute clearly allows any person who filed one of the complaints to be named lead plaintiff, even though statute refers to the "filing of the (singular) complaint").

344 F. Supp. 2d at 790-91 (italics in original) (citing other cases declining to strictly enforce the 60-day period).  Without this sensible rule, a plaintiffs' firm could move for appointment as lead counsel with a nominal plaintiff along with the mistaken certification from an institutional investor (just as Wolf Haldenstein exploited AGF) and then, after gaining control of the litigation, drop the illusory client.

Here the Delaware Plaintiffs commenced the Delaware Action by filing a detailed, comprehensive complaint in a convenient forum – not Hawaii, Alaska, the Virgin Islands, Puerto Rico, or various other potential venues that, like Illinois, lack any connection to the facts of this lawsuit. Sufficient notice of the Delaware Action was thereafter published on March 23, 2005, triggering the 60-day deadline for lead plaintiff motions. Even if Blau would have moved to be appointed lead plaintiff in the Delaware Action, the Delaware Plaintiffs, with their far-greater financial stake, would have been presumed to be the most adequate lead plaintiff candidates.

This outcome fulfills the objectives of the PSLRA:

> The purpose behind the PSLRA is to empower investors so that they, not their lawyers, control private securities litigation by allowing the Court to ensure the transfer of primary control of private securities litigation from lawyers to investors….

> Specifically, the PSLRA provides a method for identifying the plaintiff or plaintiffs who are the most strongly aligned with the class of shareholders, and most capable of controlling the selection and actions of counsel. …In so providing, the PSLRA attempts to replace the outdated practice of selecting representative plaintiffs by a "race to the courthouse," with a selection system which focuses on the adequacy of the representative.

*In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 215 (D.N.J. 1999) (citations and internal quotes omitted). Wolf Haldenstein's attempt to undermine the PSLRA must fail.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Delaware Plaintiffs respectfully request that

Blau's motion be denied in its entirety.

DATED:        September 12, 2005            Respectfully submitted,

<u>/s/ Joseph N. Gielata</u>
Joseph N. Gielata (DSB # 4338)
Attorney at Law
501 Silverside Road, Suite 90
Wilmington, DE 19809
(302) 798-1096

***Lead Counsel for Plaintiffs***
***and the Putative Class***

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that, on September 12, 2005, I electronically filed the foregoing

*ANSWERING BRIEF IN OPPOSITION TO MOTION OF DR. STEPHEN BLAU TO*

*INTERVENE IN ORDER TO FURTHER MOVE THAT THIS ACTION BE STAYED* with the

Clerk of Court using CM/ECF which will send notification of such filing to:

>Michael R. Robinson, Esq.
>**RICHARDS LAYTON & FINGER, P.A.**
>One Rodney Square
>Wilmington, DE  19801
>*Counsel for Defendants*
>
>Robert R. Davis, Esq.
>**CHIMICLES & TIKELLIS LLP**
>P.O. Box 1035
>One Rodney Square
>Wilmington, DE  19899
>*Counsel for Proposed Intervenor*

>   /s/ Joseph N. Gielata
>Joseph N. Gielata (DSB # 4338)
>Attorney at Law
>501 Silverside Road, Suite 90
>Wilmington, Delaware 19809
>(302) 798-1096
>attorney@gielatalaw.com