Statement was mailed to shareholders on April 19, 2004. No shareholder challenged the Proxy Statement as being inadequate or misleading in any way, and on May 25, 2004, the JPMC shareholders approved the Merger at a Special Meeting, with 99.18% of the votes cast in favor. (JPMC Form 8-K, filed May 25, 2004 (attached hereto as Exhibit B)[4]). On June 27, 2004, the *New York Times* published the article that forms the sole basis of plaintiff's claims. Almost immediately thereafter, a shareholder suit based upon the *New York Times* article was filed in Delaware Chancery Court,[5] but no effort was made to enjoin the Merger, which became effective on July 1, 2004 (Compl. ¶ 33). This action was not brought until months later, when there was no longer any possibility of corrective disclosure.

## ARGUMENT

### I. THE PUTATIVE CLASS LACKS STANDING TO BRING A CLAIM UNDER SECTION 14(a).

It is well established that a private cause of action under Section 14(a) and Rule 14a-9 belongs to shareholders who were entitled to vote on the transaction proposed in the Proxy Statement. See In re AOL Time Warner, Inc. Sec. & ERISA Litig., 2004 U.S. Dist. LEXIS 7917, *125 (S.D.N.Y. May 5, 2004) ("Section 14(a)'s emphasis on the Proxy Statement solicitation process indicates that the statute was designed to protect only those shareholders with voting rights"); see also United Paperworkers Int'l Union v. International Paper Co., 985 F.2d 1190, 1197-98 (2d Cir. 1993). Conversely, plaintiffs who were not entitled to vote on those transactions lack standing to bring a claim under Section 14(a). See, e.g., 7547 Corp. v. Parker

---

[4] A court may take judicial notice of matters of public record when considering a motion to dismiss. See, e.g., Anderson v. Simon, 217 F.3d 472, 474-475 (7th Cir. 2000); Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994).

[5] In the Delaware action, a JPMC shareholder claims, inter alia, that the Proxy Statement was materially misleading in violation of Delaware law, based on the alleged omission of the "offer" reported in the *New York Times* article. A motion to dismiss that action has been sub judice since January 13, 2005.

5

& Parsley Dev. Partners, 38 F.3d 211, 229-230 (4th Cir. 1994) (finding that "it goes too far to allow persons not even entitled to vote to assert a claim under § 14(a)"); In re AOL Time Warner, 2004 U.S. Dist. LEXIS 7917 at *126; Shields v. Erickson, 710 F. Supp. 686, 693 (N.D. Ill. 1989); Murray v. Hospital Corp. of Am., 682 F. Supp. 343, 348 (M.D. Tenn. 1988); Werfel v. Kramarsky, 61 F.R.D. 674, 677-678 (S.D.N.Y. 1974).

The Proxy Statement states that only "common stockholders of record at the close of business on April 2, 2004 may vote [for or against approval of the Merger] at the meeting." (Ex. A at Notice of Annual Meeting; see also id. at 27). The putative class, however, is defined as all persons

> who held shares of the common stock of J.P. Morgan Chase, either on April 2, 2004 (the record date for voting at the May 25, 2004 shareholder meeting), or at any time from April 19, 2004 (the date of the proxy statement associated with such meeting (the "Proxy Statement")) through July 1, 2004, (the date on which the Company consummated a merger with Bank One Corporation ("Bank One")). . . .

(Compl. at ¶ 1; see also id. at ¶¶ 11, 82). When, as here, some members of a putative class are not entitled to vote on a transaction, the action must be dismissed because "the class as a whole would not [have standing] and is improperly defined." Shields, 710 F. Supp. at 693. Because this putative class is defined to include persons who did not hold stock on April 2, 2004, the class as a whole lacks standing to pursue this claim, and the action must accordingly be dismissed.[6]

## II.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 14(a).

To state a claim under Section 14(a), plaintiff must allege, with particularity, that (1) the Proxy Statement misrepresented or omitted a material fact; (2) each defendant acted at

---

[6] Notably, not even the named plaintiff is alleged to have been entitled to vote on the Proxy Statement. Instead, although the certification accompanying his motion to be appointed lead plaintiff indicates that he purchased JPMC stock in 1994, the Complaint alleges only that he was a "holder of J.P. Morgan Chase common stock at the time the Merger was consummated." (Compl. ¶ 7). As such, the Complaint fails properly to allege that the plaintiff has standing individually.

6

least negligently in distributing the Proxy Statement; and (3) a materially false or misleading Proxy Statement was an essential link in causing the corporate actions. See, e.g., TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976); 15 U.S.C. § 78u-4(b)(1).[7] Plaintiff fails to carry this burden. Not only does the Complaint fail woefully to meet the heightened pleading requirements of the PSLRA, the Complaint fails adequately to allege the misrepresentation or omission of any *material* fact in the Proxy Statement.

A Section 14(a) claim is subject to the heightened pleading requirements of the PSLRA.[8] See, e.g., Hayes v. Crown Cent. Petroleum Corp., 249 F. Supp. 2d 725, 728-29, 734-35 (E.D. Va. 2002), aff'd in part, vacated in part, 2003 U.S. App. LEXIS 21060 (4th Cir. Oct. 17, 2003); In re Harmonic Inc., 2002 WL 31974384 at *20 n.17 (N.D. Cal. Nov. 13, 2002); Bond Opportunity Fund v. Unilab Corp., 2003 WL 21058251 at *3 (S.D.N.Y. May 9, 2003), aff'd, Bond Opportunity Fund v. Unilab Corp., 2004 WL 249583 (2d Cir. Feb. 10, 2004). Under the PSLRA, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts

---

[7] Section 14(a) of the Securities Exchange Act makes unlawful the solicitation of a proxy regarding any security, by way of interstate commerce, in contravention of the rules and regulations prescribed by the SEC. See 15 U.S.C. § 78n(a). SEC Rule 14a-9 prohibits false or misleading statements with respect to material facts, as well as the omission of material facts necessary to make the statements therein not false or misleading. See 17 C.F.R. § 240.14a-9.

[8] Moreover, even though the Complaint alleges that the instant case does not "sound in fraud" (Compl. ¶ 82), the Complaint contains language which does just that. The essence of plaintiff's claims is that the alleged "non-premium" offer was deliberately – not negligently – withheld to protect CEO Harrison's position. See, e.g., Compl. ¶¶ 29, 34, 78. Because such allegations sound in fraud, the Complaint must satisfy the heightened pleading requirements not only of the PSLRA, but of Fed.R.Civ.P. Rule 9(b) as well. See Rombach v. Chang, 355 F.2d 164, 172 (2nd Cir. 2004); In Re Elan Corp. Sec. Litig., 2004 WL 1305845 at *14 (S.D.N.Y. May 18, 2004) (finding that the complaint used the "sort of language" that required pleading in conformance with Rule 9(b) despite plaintiff's assertion that his Section 12 claim did not sound in fraud); In Re Harmonic Inc. Sec. Litig., 163 F. Supp. 2d 1079, 1088 (N.D. Cal. 2001) ("Plaintiffs cannot evade the requirements of Rule 9(b) simply by reciting that there are no allegations of fraud in the §§ 11 and 12 claims.").

on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). Mere speculation is insufficient to satisfy the PSLRA's standard and must be disregarded. See, e.g., Kunzweiler v. Zero.net, Inc., 2002 WL 1461732 at *8, n. 12 (N.D. Tex. July 3, 2002). Likewise, statements attributed to confidential sources cannot be relied upon unless sufficient information as to such sources is provided to substantiate their reliability. See Johnson v. Tellabs, 262 F. Supp. 2d 937, 945-46 (N.D. Ill. 2003). See also Sparling v. Daow, 397 F.3d 704 (9th Cir. 2005); In re Cabletron Sys., Inc., 311 F.3d 11, 30 (1st Cir. 2002); Novak v. Kasaks, 216 F.3d 300, 314 (2d Cir. 2000); In re Tyco Int'l, Ltd., Sec. Litig., 185 F. Supp. 2d 102, 114 (D. N.H. 2002).

Moreover, where, as here, a plaintiff can only recover upon "proof that the defendant acted with a particular state of mind, the complaint shall with respect to each act or omission ... state with particularity facts giving rise to a strong inference that the defendant acted with the required statement of mind." 15 U.S.C. § 78u-4(b)(2). Accordingly, "a Section 14(a) plaintiff must plead with particularity facts that give rise to a strong inference of negligence" on the part of all defendants. In re McKesson HBOC, Inc. Sec. Lit., 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000). See also In re Elan Corp., 2004 WL 1305845 at *16.

Plaintiff has utterly failed to meet this burden. The Complaint states that as to all matters other than the named plaintiff and his activities, the allegations of the Complaint are based "upon information and belief" (Compl. ¶ 1), yet fails to "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). So too, plaintiff fails to plead facts giving rise to a strong inference of negligence, and instead makes only the conclusory allegation that defendants "were negligent in disseminating the Proxy Statement with these materially false and misleading statements." (Compl. ¶ 87). This is plainly insufficient.

A. **The Complaint Fails To Allege Adequately That Defendants Misrepresented or Omitted a *Material* Fact.**

Plaintiff bears the burden of pleading that the Proxy Statement failed to state a *material* fact necessary to make the statements contained in the Proxy Statement not false or misleading. See, e.g., In Re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1329 (3rd Cir. 2002); Miller v. Loucks, 1992 WL 329313 at *11 (N.D. Ill. Nov. 5, 1992). In the context of a Proxy Statement, plaintiff can meet his pleading burden only by showing that there is a "substantial likelihood that a reasonable shareholder would consider [the alleged misstatement or omission] important in deciding how to vote." TSC Indus., Inc., 426 U.S. at 449. In other words, plaintiff must demonstrate "a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." Id. (emphasis added).

Plaintiff must plead facts sufficient to establish a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." TSC Indus., Inc., 426 U.S. at 449; see also Basic, Inc. v. Levinson, 485 U.S. 224, 231-232, 239 (1988). The "total mix" of information to be considered "may also include 'information already in the public domain and facts known or reasonably available to the shareholders.'" United Paperworkers Int'l Union, 985 F.2d at 1199 (citations omitted).

Plaintiff contends that the Proxy Statement was false and misleading because it did not state that (1) "an offer was made to complete the Merger with no premium for the Bank One shares," or that (2) "Mr. Harrison rejected this offer to protect his executive position at J.P. Morgan Chase." (Compl. ¶ 78). Even if plaintiff had pled sufficient facts to support such

9

allegations with adequate particularly (which he did not), neither of these purported omissions is material, nor does either render any statement in the Proxy Statement false or misleading.

1. **Plaintiff Has Not Plead With Particularity That an "Offer" Was Made During Negotiations.**

To attack the Proxy Statement as materially misleading, plaintiff must allege with particularity "provable facts" undercutting the statements in the Proxy Statement. See, e.g., Minzer v. Keegan, 218 F.3d 144, 151 (2d Cir. 2000). However, plaintiff's allegations concerning the alleged "no premium" offer are based on one selected press quotation, speculation and pejorative conclusions, and contain precious few factual allegations, much less allegations containing the particularity required to satisfy the heightened standard of the PSLRA.

The Complaint relies solely upon one newspaper article citing "two people close to the deal" to support its allegation that an alleged "no premium" offer was even made. (Compl. ¶ 31).[9] This pleading fails to meet the standard set forth in the PSLRA, which requires plaintiff to identify such sources "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." Novak, 216 F.3d at 314; see also Johnson v. Tellabs, Inc., 303 F. Supp. 2d 941, 952 (N.D. Ill. 2004) and other cases cited at p. 8, supra. As one court explained, "[t]he disclosure of information regarding confidential sources may be 'helpful in distinguishing whether a particular allegation is mere rumor and speculation or whether it is based on concrete information from relevant documents or

---

[9] Plaintiff's attempt to bolster this assertion by alleging that the *Financial Times* "quoted an additional source that corroborated Mr. Harrison's insistence that he remain in control, regardless of the cost" (Compl. ¶ 32) (emphasis in the original) has the opposite effect. In fact, the *Financial Times* article openly doubts whether any such "no premium offer" was made, stating that "[w]hether or not the details [of the negotiations as reported in the *New York Times* article] are correct, it is true that during the negotiations the two sides discussed the relationship between price and management positions," as had been reported long before the proxy vote. David Wighton, Lawsuit Ruins Merger Celebration, *Financial Times UK*, July 3, 2004.

10

people who were in a position to know the truth of the allegations.'" <u>Johnson</u>, 303 F. Supp. 2d at 952 (quoting <u>Adams v. Kinder-Morgan, Inc.</u>, 340 F.3d 1083, 1101 (10th Cir. 2003)).

Here, other than repeating a journalist's vague characterization of these sources as being "close to the deal," plaintiff does not provide any specific information regarding the positions of the anonymous sources, the nature of their involvement, if any, in the negotiations, or anything else about the sources that would give credence to their claim. Indeed, the complaint notably fails to allege that plaintiff interviewed the alleged sources of the *New York Times* article or has any other basis for believing the allegations in it to be true. In short, plaintiff's allegations do not provide the requisite factual support for the proposition that the alleged sources had access to the information alleged. <u>See</u> cases cited at p. 8, <u>supra</u>.

### 2. Defendants Were Not Required To Disclose Alleged Negotiating Positions in the Proxy Statement.

Even assuming *arguendo* that the Complaint adequately pled the existence of an offer to consummate the Merger without a premium if management transitioned immediately, any such alleged offer was immaterial as a matter of law and did not have to be disclosed in the Proxy Statement.

The Proxy Statement describes in detail the terms of the Merger ultimately agreed upon and approved unanimously by each corporation's Board of Directors. (Exh. A hereto at pp. 3-11, 34-42, 66-67, 70-93). The Proxy Statement also discloses that these terms were arrived at over the course of two months of negotiations. (<u>Id.</u> at 35-37). Although the Proxy Statement does not purport to include any of the back and forth of those negotiations, including any offers or counter-offers as to any of the multitude of terms to be agreed upon, plaintiff claims only that the Proxy Statement was misleading because it failed to disclose that, at some unidentified point

11

"during the negotiations," Mr. Dimon "offered to do the deal for no premium if he could become chief executive immediately" but Mr. Harrison refused. (Compl. ¶ 31).

Contrary to plaintiff's apparent contention, a corporation is not required to provide a "round by round synopsis" of merger negotiations in its proxy statement. See, e.g., Kaufman v. Cooper Cos., Inc., 719 F. Supp. 174, 183 (S.D.N.Y. 1989) (finding that defendant's efforts to work out an arrangement for preferred shareholders were adequately disclosed and that defendant did not have to describe each step of the negotiations); see also Jackvony v. Riht Fin. Corp., 873 F.2d 411, 415 (1st Cir. 1989) (rejecting the idea that corporations must disclose "tentative feelers" during preliminary negotiations). Instead, what is important is that a shareholder know the actual terms of the Merger, "not the preliminary terms subsequently amended." Beaumont v. American Can Co., 797 F.2d 79, 85 (2$^d$ Cir. 1986). Plaintiff here makes no allegation that the actual terms of the Merger were not adequately disclosed.

The Second Circuit's decision in Beaumont is particularly instructive. Beaumont arose from a merger between Associated Madison Companies and the American Can Company. Those two companies "reached an agreement in principle for a proposed merger," pursuant to which Associated shareholders would receive consideration of $15 per share in either cash or American Can stock. Id. at 81. But then the terms changed, and the Merger was eventually consummated with the overwhelming majority of Associated shareholders receiving only $12.61 worth of American Can stock for each Associated share. Id. at 82.

American Can shareholders commenced a class action "seek[ing] to recover the difference between the value of the American Can stock at the time of the Exchange and the $15 per share figure contemplated in the original Merger negotiations." Id. Plaintiffs included a claim "that the proxy statement omitted material facts in violation of § 14(a) of the Securities

12

Exchange Act and SEC Rules 14a-9" on the grounds that "they had the right to know, when voting on the merger proposal, that American Can originally sought and obtained the SEC's approval for the Merger and pre-merger transactions on the representation that Associated shareholders would receive $15 worth of American Can stock in the merger." Id. at 84. Granting the defendants' motion for summary judgment, the District Court observed:

> It is readily apparent that the stock (or cash) exchange that occurred after the merger was consistent with the proxy statement's description of the merger and its consequences in all material respects. Moreover, although information relating to the tentatively agreed upon, but later amended terms was not contained in the proxy statement, the omission of that information did not make false any of the material contained in the proxy statement which accurately described the only proposal then "on the table" for shareholder approval or disapproval. To the contrary, in all likelihood the proxy statement could well have been misleading if it had contained information concerning the earlier terms.

Beaumont v. American Can Co., 621 F. Supp. 484, 496 (S.D.N.Y. 1985). The Second Circuit affirmed, holding that "[p]laintiffs have made no showing that Associated shareholders would have considered information about the originally contemplated $15 per share figure important":

> [W]hat was important for the Associated shareholders to know was the actual terms of the proposed merger, not the preliminary terms subsequently amended. Much discussion necessarily takes place in the course of any merger negotiation, and some of it may explore the possibility of a higher price for the shareholders than that offered in the final proposal. But if companies were forced to disclose all preliminary negotiations, proxy statements would become longer and more obtuse than they already are.

Beaumont, 797 F.2d at 84-85.

Like the proxy statement in Beaumont, the Proxy Statement here "accurately described the only proposal then 'on the table' for shareholder approval or disapproval." 621 F. Supp. at 496. Indeed, if an "agreement in principle" that had been approved by the SEC need not be disclosed in a proxy statement if the terms were later amended, as the Second Circuit held in

13