# EXHIBIT

# D



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| DR. STEPHEN BLAU, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM B. HARRISON, JR., HANS W. BECHERER, RILEY P. BECHTEL, FRANK A. BENNACK, JR., JOHN H. BIGGS, LAWRENCE A. BOSSIDY, M. ANTHONY BURNS, LAURENCE FULLER, ELLEN V. FUTTER, WILLIAM H. GRAY, III, HELENE L. KAPLAN, LEE R. RAYMOND, JOHN R. STAFFORD, and J.P. MORGAN CHASE & CO.,<br><br>Defendants. | CIVIL ACTION NO. 04C 6592<br><br>JUDGE WILLIAM T. HIBBLER<br><br>MAGISTRATE JUDGE MARTIN C. ASHMAN<br><br>NOTICE OF WITHDRAWAL OF AMERICAN GROWTH FUND, INC., AS LEAD PLAINTIFF |

# FILED

FEB 1 8 2005

MICHAEL W DOBBINS
CLERK, U S DISTRICT COURT

**PLEASE TAKE NOTICE** that Lead Plaintiff American Growth Fund, Inc., one of the

Court-appointed Lead Plaintiffs in the above-captioned action, hereby voluntarily withdraws as

Lead Plaintiff from this case.

**Dated:** February 18, 2005

Respectfully submitted,

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**

By: _____
Adam J. Levitt
55 West Monroe Street, Suite 1111
Chicago, Illinois. 60603
Telephone: (312) 984-0000
Facsimile: (312) 984-0001
Email: levitt@whafh.com

1

**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
Gregory M. Nespole
Gustavo Bruckner
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653
Email: nespole@whafh.com

*Lead Counsel for*
*Plaintiff and the Proposed Class*

**LAW OFFICE OF MARC S. HENZEL**
Marc S. Henzel
273 Montgomery Avenue, Suite 202
Bala Cynwyd, Pennsylvania 19004
Telephone: (610) 660-8000
Facsimile: (610) 660-8080

*Additional Counsel for*
*Plaintiff and the Proposed Class*

7320

2

# EXHIBIT

# E

**BLB&G**

Bernstein
Litowitz
Berger &
Grossmann
LLP

*January, 2000*

INSTITUTIONAL INVESTOR

# Advocate

### A SECURITIES FRAUD AND CORPORATE
### GOVERNANCE QUARTERLY

BULLETIN

From time to time, issues emerge regarding securities class actions that have the potential to affect institutional investors in a very significant way. Where we, at Bernstein Litowitz Berger & Grossmann LLP, believe that it is important to bring these issues to your attention before the publication of our regular quarterly newsletter, we will issue a special informtion *BULLETIN*, such as this one. Our next regular issue of the *Advocate* should reach you during the first week of March, 2000.

## MASS SOLICITATIONS DUPE INSTITUTIONAL INVESTORS

*By Max W. Berger and Robert S. Gans*

The purpose of this bulletin is to alert you to an alarming trend among certain class action attorneys to solicit institutional investors to participate in securities litigation as lead plaintiffs through deceptive means. As detailed in a recent important decision emanating from the United States District Court for the Northern District of California, many institutional investors have fallen prey to these techniques, which include advising investors that it is necessary to register with a particular law firm at the outset of litigation to participate in any recovery, when no such requirement exists. We believe that this matter requires your immediate attention, since many institutions already have been victimized by these deceptive solicitation efforts.

As detailed in prior issues of the *Advocate*, the Private Securities Litigation Reform Act of 1995 (the "PSLRA") requires courts to appoint as lead plaintiff in any class action alleging federal securities law violations "the person or group of persons that . . . has the largest financial interest in the relief sought by the Class." Congress enacted this provision to encourage large institutional shareholders to assume control over securities class action litigation. Nevertheless, many traditional class action attorneys who have been unable to attract institutional clients have been creative in their attempts to subvert

the Congressional intent and perpetuate the regime of class action litigation dominated by attorneys whose clients only have a nominal interest in the litigation.

For example, certain law firms have taken advantage of a provision of the PSLRA that requires the plaintiff in the first-filed case to publish a notice in a national business publi-

*Although Congress contemplated that only one notice would be published, attorneys have used this provision to publish dozens of notices, most of which more closely resemble advertisements for particular law firms than anything else.*

cation or wire service informing class members of the pendency of the action, and of their right to apply to the Court to be appointed lead plaintiff. Although Congress contemplated that only one notice would be published, attorneys have used this provision to publish dozens of notices, most of which more closely resemble advertisements for particular law firms than anything else. The goal of these advertisements is to attract either a large investor that is unfamiliar with its rights and responsibilities under the PSLRA, or a large group of small, unsophisticated investors that

*Continued on next page.*

the soliciting attorney will seek to have appointed as the "lead plaintiff group" in the litigation, and which invariably selects the soliciting law firm to serve as lead counsel. This strategy, when successfully employed, allows the attorney to perpetuate the pre-PSLRA problem of lawyer-controlled litigation, without regard to the interests of the class.

More recently, many law firms have adopted a variation of this model, investing tens of thousands dollars in direct mailings to all institutional investors, their money managers, and their brokerage firms. Typically, these mailings are not directed to any individual with significant decision-making authority for the investment entity; instead, they are designed to look like proof of claim forms that would be provided to class members later in a case to secure a portion of any recovery obtained, and provide relatively little information regarding the facts of the case. The mailings, also, often misleadingly imply that it is necessary to complete and return an enclosed "certification" form to participate in the action. Neither the certification form itself, nor the materials accompanying the form, specify the obligations that a lead plaintiff is expected to perform. The form merely contains boilerplate language stating the willingness of the recipient to serve as a "named plaintiff" or "class representative"—terms that are used interchangeably, and without any explanation of the added duties and responsibilities assumed by a lead plaintiff in the litigation. In most instances, the recipient need only fill in his stock purchase information, sign the form, and return it to the law firm in a postage paid, pre-addressed envelope. Finally, most of the mass solicitations sent by law firms never inform the recipient that he can participate in the Action without assuming any of these duties or obligations, and will be notified of any recovery during the course of the litigation.

*Institutions should not be fooled by these mass solicitations.* You do not need to take any kind of affirmative action to participate as a class member in securities class actions. By returning a certification form, you are agreeing to be a named party to the action, and are assuming substantial obligations in connection with the litigation — obligations

> *You do not need to take any kind of affirmative action to participate as a class member in securities class actions.*

that you may not want to assume in some circumstances, and that you need not assume to participate in any recovery obtained on behalf of the Class. These obligations, as recognized by the SEC and various courts addressing the issue, include the following:

- Maintaining authority and responsibility to consult with and direct counsel with respect to major litigation events, including important motions, trial and settlement;

- Consulting with counsel in advance to determine whether major litigation tasks are necessary and appropriate;

- Meeting with counsel regularly to review the progress and status of the case; and

- Attending major hearings and trial of the Action.

Recently, Judge William Alsup of the United States District Court for the Northern District of California addressed the propriety of mass solicitations and lead plaintiff group formation in a decision that is likely to be followed throughout the nation. Judge Alsup's opinion arose from a bitter dispute between competing

law firms for appointment as lead counsel in the case *In re Network Associates, Inc., Securities Litigation,* which was filed on behalf of purchasers of Network Associates common stock between January 20, 1998 and April 19, 1999. On one side of the battle was the law firm Milberg Weiss Bershad Hynes & Lerach LLP, which purported to represent over 1700 individuals seeking to be appointed lead plaintiffs who responded to numerous notices published by the law firm over wire services. Opposing their motion was a group led by the law firm Weiss & Yourman, which claimed to represent more than one hundred institutions and thousands of individuals who responded to a direct mail solicitation campaign orchestrated by the firm.

Over a period of seven months, the two law firms engaged in a paper war, which centered upon Milberg's allegation that Weiss & Yourman's direct mail campaign violated ethical rules and criminal statutes. In his thoroughly researched and detailed opinion, Judge Alsup criticized the mass solicitation tactics engaged in by both law firms. The Court bemoans the fact that the "race to the courthouse," which the PSLRA was designed to eradicate, has been replaced by "a race to both the courthouse and thence to the publisher", in an effort to accumulate as many large investors to support an application for appointment as lead plaintiff as possible. In this regard, Judge Alsup recognizes that the notices do not serve the purpose of attracting institutional investors to assert control over this litigation, as intended by Congress, but instead are designed "to steer investors away from seeking the lead role on their own and to steer them toward registering with a lawyer who already has a lead plaintiff candidate." The result is the formation of mass plaintiff groups incapable of asserting any real control over the litigation. Indeed, the Court noted that the group name used in a lead plaintiff motion is

# Advocate

not stated in the published notice or the certification form signed by the members of the group, nor are the names of the proposed lead counsel indicated on most certification forms. As a result, the members of the group "do not, in all probability, even know they belong to a group or know its name or know how their form is being used." Therefore, the Court disqualified both groups from serving as lead plaintiffs.

Significantly for institutional investors, the same concerns that precluded the Court from appointing a lead plaintiff group also prevented a large investment fund with millions of dollars in losses from serving as the sole lead plaintiff in the Action. Judge Alsup found that the fund, which was represented by the Weiss law firm, was confused by the mass solicitation issued by the firm, and had submitted a signed certification form based only on its mistaken belief that "it was necessary to do so to participate in any recovery." The Court found

that the proposed lead plaintiff had very little understanding of the case or the nature of the lead plaintiff motion, and was not even aware that its selected counsel was already suing an affiliated entity for securities fraud in a separate case.

Nevertheless, even though the Court criticized the substance of the published notices and mass mailings used to attract lead plaintiffs, it refused to prohibit the practice of mass solicitations altogether. In finding that such mailings are not contrary to the PSLRA, Judge Alsup was swayed by the views of the SEC, which opined in a brief filed with the Court that "[t]he effect of mailings could be to encourage additional investors to come forward, negotiate with and retain counsel, and move to be lead plaintiff, thereby enhancing competition for lead plaintiff and lead counsel." The SEC warned, however, that such mailings and published notice campaigns are not only potentially deceptive, but also can undermine the goal of the PSLRA.

*The Court bemoans the fact that the "race to the courthouse," which the PSLRA was designed to eradicate, has been replaced by "a race to both the courthouse and thence to the publisher."*

Indeed, the SEC noted that in a securities fraud case involving Digital Lightwave, Inc. pending in Florida, at least one member of the ten-person lead plaintiff group appointed in the action did not even know that he was a lead plaintiff until after lead counsel submitted a

*Continued on back page.*

## DON'T BE DUPED — STEPS TO FOLLOW

*Institutional investors can avoid being duped only if they act wisely and cautiously, which should include taking the following steps:*

✔ *Read unsolicited mailings carefully, and tell your money managers to do the same.* There is no requirement to submit a form to anyone at the outset of a securities class action to participate in any recovery. Any mailing that states or implies that it is necessary to register with a particular law firm should be discussed with a known and trusted attorney. Any mailing or notice that states or implies that you will get a higher percentage of any recovery obtained for the Class simply by virtue of serving as a lead plaintiff is false.

✔ *Do not sign anything unless you want to be a lead plaintiff.* Many of the certification forms used in connection with mass solicitation campaigns do not clearly state that, by submitting the form, you are agreeing to be a lead plaintiff in the litigation. The forms often interpose the term "class representative" for "lead plaintiff", and generally do not

detail the duties and responsibilities of a lead plaintiff in overseeing litigation. The best course is to consult with an attorney you know and trust before responding to these solicitations.

✔ *Choose an attorney carefully*. You are not limited to using an attorney who publishes a notice, directs a mailing to you, or files a complaint to represent you in connection with securities litigation. You are free to select any attorney of your choice to file a lead plaintiff motion on your behalf, to apply to serve as lead counsel for the Class, or even to simply monitor the litigation for you.

✔ *Act quickly*. The PSLRA provides sixty days from the time notice of the filing of a securities class action is published for lead plaintiff motions to be filed. It is important that you use that time, in consultation with an attorney of your choice, to investigate the claim, evaluate your losses, and determine whether it is in your best interest to file a lead plaintiff motion. Delay could result in your making a rushed and uninformed judgment that you could later regret.

# BULLETIN

**BLB&G**
INSTITUTIONAL
INVESTOR

*Advocate*

BERNSTEIN LITOWITZ
BERGER & GROSSMANN LLP
1285 Avenue of the Americas
New York, NY 10019

*Continued from page 3.*

settlement of the case to the Court for approval. In this instance, lead counsel failed to respond to this "lead plaintiff's" repeated requests for information regarding the status of the action for over six months, and never even informed him that he had been appointed a lead plaintiff by the Court. Thus, while the SEC concluded that the practice of mass solicitation itself should not be banned, it stressed to Judge Alsup that it was not "sanctioning the methods utilized by Weiss & Yourman in forming a proposed lead plaintiff group." The Court concurred in the SEC's judgment, however, that abuses in the practice should be dealt with through regulatory or other means short of a blanket prohibition.

Despite the abuses recognized by Judge Alsup, and echoed by the SEC, the practice of soliciting institutional investors through mass mailings is likely to continue, and probably will accelerate. Further, the prospects for implementing a regulatory framework to cure the abuses inherent in this process are questionable at best, and even under the most ambitious schedule would likely take years to complete.

The lead plaintiff provisions of the PSLRA were passed to protect the rights of institutional investors. By monitoring securities fraud filings carefully and scrutinizing unsolicited mailings from law firms (read checklist on page 3), you can help end abuse, and ensure that these goals are achieved.

*Max W. Berger can be reached at mwb@blbglaw.com. Robert S. Gans can be reached at robert@blbg.law.com*



**BLB&G**
INSTITUTIONAL
INVESTOR

*Advocate*

BERNSTEIN LITOWITZ
BERGER & GROSSMANN LLP
1285 Avenue of the Americas
New York, NY 10019
Phone: 212-554-1400
E-mail: blbg@blbglaw.com
**www.blbglaw.com**

BLB&G: INSTITUTIONAL INVESTOR ADVOCATE is published by Bernstein Litowitz Berger & Grossmann LLP, which prosecutes class and private actions, nationwide, on behalf of institutional and individual investors. The materials in this newsletter have been prepared for information purposes only and are not intended to be, and should not be taken as, legal advice.

*Editor:* Gerald H. Silk
*Editorial Director:* Ava C. Thorin
*Contributing Attorneys:* Max W. Berger, Robert S. Gans

© 2000. ALL RIGHTS RESERVED. Quotation with attribution permitted.

# EXHIBIT

# F

U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DR. STEPHEN BLAU, Individually and On
Behalf of All Others Similarly Situated,

Plaintiff,

v.

WILLIAM B. HARRISON, JR., HANS W.
BECHERER, RILEY P. BECHTEL, FRANK
A. BENNACK, JR., JOHN H. BIGGS,
LAWRENCE A. BOSSIDY, M. ANTHONY
BURNS, ELLEN V. FUTTER, WILLIAM H.
GRAY, III, HELENE L. KAPLAN, LEE R.
RAYMOND, JOHN R. STAFFORD, and J.P.
MORGAN CHASE & CO.,

Defendants.

CIVIL ACTION NO. 04C 6592

JUDGE WILLIAM T. HIBBLER

MAGISTRATE JUDGE MARTIN C.
ASHMAN

JURY TRIAL DEMANDED

**FILED**

J N

AUG 2 4 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## AFFIDAVIT OF GREGORY MARK NESPOLE, ESQ. IN SUPPORT OF LEAD PLAINTIFF'S RESPONSE TO THE MEMORANDUM AND SUPPLEMENTAL MEMORANDUM OF AMICI CURIAE MAILED TO THIS COURT BY SAMUEL HYLAND AND STEPHANIE SPEAKMAN

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK  )

I, Gregory Mark Nespole, Esq., being duly sworn, deposes and says;

1.      I am an attorney at law of the State of New York.  I am a partner at the law firm

of Wolf Haldenstein Adler Freeman & Herz LLP, located at 270 Madison Avenue, New York,

10016.  I offer this affidavit in support of Lead Plaintiff's Response To The Memorandum And

Supplemental Memorandum of Amici Curiae Mailed To This Court By Samuel Hyland and

Stephanie Speakman I also offer this affidavit in support of the introduction of true and correct copies of the following document listed below:

> a. The Delaware Attorney General's Indictment of Mr. Gielata, attached as Exhibit A;
>
> b. The Delaware Court's Order appointing Mr. Hyland and Mrs. Speakman LP, attached as Exhibit B; and
>
> c. The Bloomberg Run reporting the adjusted close price of J.P. Morgan shares on the dates Dr. Blau purchased his shares, attached as Exhibit C.

2. As a threshold matter, Counsel for the Hyland Plaintiffs[1] insinuates that my firm may be inadequate to serve as lead counsel in the Blau Action because, in part, former Lead Plaintiff American Growth Fund, Inc. elected to withdraw as a court appointed Lead Plaintiff prior to the filing of the amended complaint in the Blau Action. This contention is meritless.

3. Following the filing of the Blau Action in October 2004, I directed that notice of pendency be published in the *Investors Business Daily*. See Exhibit D.

4. On or about November 23, 2004, I received in the mail an unsigned plaintiff's certificate from the American Growth Fund, Inc. concerning its shares of J.P. Morgan common stock. See Exhibit E.

5. Given that the certificate was unsigned, I called Timothy E. Taggart of AGF and left him a voicemail stating that I had received the certificate, but it was defective because it was unsigned by a person with authority to approve AGF's involvement in the litigation. Mr. Taggart's name was listed on the certificate as AGF's contact person.

---

[1] Defined terms in this affidavit shall have the same meaning as they were assigned in the accompanying memorandum.

6.      That same day, I wrote Mr. Taggart requesting that he resubmit a signed certificate. A copy of that letter is annexed hereto as Exhibit F.

7.      Within days, I received a duly executed certificate, signed by Mr. Taggart. See Exhibit G.

8.      Again, I called Mr. Taggart and left him a detailed message explaining the process, and that we were planning to proffer as Lead Plaintiffs AGF and Dr. Blau, and that we were working on an amended complaint that I would send to him in draft form once it was fairly advanced.

9.      On February 14, 2005, I sent Mr. Taggart a draft of the amended complaint. See Exhibit H.

10.     Sometime on February 16, 2005, Mr. Taggart called me and said he had some misgivings about continuing as a Lead Plaintiff in a class action against J. P. Morgan. At no time did he state that he mistakenly executed a certificate or that AGF had not intended to serve as a lead plaintiff.

11.     We spoke additional times on February 16, 2005. Mr. Taggart stated that he was mindful and concerned that as a fiduciary, he might have an obligation to pursue the case on behalf of investors in AGF. I explained to him that he had no obligation to participate and regardless of whether he proffered AGF as a lead plaintiff, AGF was a member of the class and that I would, assuming the case was successful, make sure he received a claim form and would assist him in submitting it. During our last conversation on that day, Mr. Taggart requested that I send him a copy of the certificate he executed on behalf of AGF and that he would bring up the matter with others at AGF.

12.     Pursuant to his request, at the end of business on February 16, I sent Mr. Taggart, via e-mail/PDF, fax, and Federal Express, the information he requested along with a cover letter. See Exhibit I.

13.     On February 17, 2005, Mr. Taggart called me and asked that I withdraw AGF as a Lead Plaintiff in the Blau Action. During our February 17, 2005 telephone call, Mr. Taggart said that he would remain open to the possibility that AGF might be willing to serve as a proposed class representative should defendants' motion to dismiss be denied. Later in the week, I received, via express mail, a letter dated February 16, 2005, confirming that AGF wished to withdraw as Lead Plaintiff. See Exhibit J.

14.     We submitted AGF's withdrawal to the Court on February 18, 2005, the same date upon which we filed the Amended Complaint in the *Blau* Action. Accordingly, with respect to my dealings with AGF, I complied with the PSLRA and all other applicable ethical obligations. For Mr. Gielata to state otherwise is simply not supported by the record.

15.     In addition to casting aspersions on my firm, Mr. Gielata baselessly attacks AGF, though he purports to have spoken to it. *See* Hyland Memorandum at 6. Specifically, his allegations border on libel when he states that AGF may be the same or related entity to American Growth Capital Corp. and American Growth Fund, I, LP – two entities forced into receivership by the SEC in 1997. Upon reading Mr. Gielata's allegations with respect to AGF, I personally conducted an investigation to determine their validity, or lack thereof.

16.     I initially conducted a LEXIS search and found a *Wall Street Journal* article dated August 13, 1997, that identified the entities as being based in Las Vegas and were "funds [that] aren't related to other mutual funds or similar names," according to an SEC staff attorney referred to in the article. See Exhibit K.

17. The article stated that attorney Laurie T. Butler in California represented the two funds in receivership. I obtained Ms. Butler's telephone number and called her. We spoke at length, and she told me that AGF was not one of the funds she represented in the receivership matter and that Mr. Gielata was apparently mistaken. Accordingly, Mr. Gielata's attack on AGF was unfounded and careless.

18. Mr. Gielata's failure to do his homework is further evidenced by his contention that my firm was sanctioned in the two actions he cites. Curiously, however, he also concluded that my firm was not sanctioned in those actions. Putting aside Mr. Gielata's confusion, as a member of Wolf Haldenstein, I can represent that neither I nor my firm were sanctioned in the *De la Fuentes v. DCI Telecommunications, Inc.* matter. Indeed, Mr. Gielata fails to cite the subsequent opinion that explicitly holds that my firm was not sanctioned. *See De la Fuente v DCI Telecommunications*, 269 F. Supp. 2d. 229 (S.D.N.Y. 2003). Had Mr. Gielata simply Shepardized the case he cited, he might have been more cautious prior to accusing me or my firm of misconduct. Similarly, with respect to *Greenfield v. U.S. Healthcare, Inc.*, 146 F.R.D. 118 (E.D. Pa. 1993), no member of my firm was sanctioned in connection with the case either.

19. Mr. Gielata's litany of feckless allegations continues when he accuses my firm of colluding with Defendants and their counsel here. This allegation strains credulity to the breaking point. This is a contentious litigation. Indeed, Defendant Bechtel endeavored to evade service for months. Only after threatening to obtain an order permitting alternative service given that Mr. Bechtel is reportedly accompanied by a security detail and service was both impossible and dangerous, did he ultimately agree to accept service and join in Defendants' motion to dismiss Further, the decision to dismiss claims against Laurence Fuller followed discussion among the parties' counsel concerning whether Mr. Fuller was on the board of J.P. Morgan at the

5

time of the merger. Accordingly, I thought it a prudent course to agree to dismiss that defendant instead of engaging in a time-consuming, collateral battle over one outside director.

20. Further, that Mr. Blau has elected not to name Mr. Dimon as a defendant was a conscious litigation strategy, as was the decision to limit the Blau Action to claims under Section 14 of the Exchange Act. Indeed, Mr. Gielata's complaint alleges at Count I the same proxy allegations as the Blau Action, and at Count II the same control person allegations. Mr. Gielata's Count III, however, alleges claims that were dismissed by Vice Chancellor Lamb in *In re J.P. Morgan Chase & Co. Shareholder Litigation*, C.A. No. 531-N, on the grounds they were derivative, not direct claims, and plaintiffs in that action were unable to allege demand futility.

21. With respect to Mr. Gielata's fraud-based claim under Section 10(b), the Blau Action purposefully elected to pursue claims only under Section 14 because I believed that defendants conduct clearly constituted negligent conduct, while it was a much closer call as to whether the Blau Action could allege the requisite scienter required by Section 10(b). In short, counsel in the Blau Action elected to plead and prove claims that required a showing of negligence, not scienter, as a strategic course, and not because we simply forgot to do it, as Mr. Gielata implies.

22. Finally, counsel in the Blau Action elected to forego the Securities Act claims alleged by Mr. Gielata because I conclude the only way to plead them properly would require plaintiffs to plead that they sounded in fraud. Again, I elected to pursue claims that sounded in negligence, given the circumstances and facts presented at least while the PSLRA's discovery stay was in effect. This is not to say that I might not amend in the future should discovery reveal

that defendants' conduct was fraudulent. Accordingly, Dr. Blau's action, from its inception, has pursued Section 14 claims that require a showing of negligence, not fraud-based claims that require pleading scienter.

FURTHER AFFIANT SAYETH NOT.

GREGORY MARK NESPOLE

Sworn to before me this
24th day of August, 2005

JAMES A. CIRIGLIANO
Notary Public, State of New York
No. 01CI6106186
Qualified In Queens County
Commission Expires March 1, 2008

412608

7

# EXHIBIT A

/35

Case 1:05-cv-00567-GMS    Document 7-2    Filed 08/04/2005    Page 11 of 12

## RULE 9 WARRANT/BOTH

### IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| V. | ) | INDICTMENT BY THE GRAND JURY |
| | ) | I.D.#0506021946 |
| JOSEPH N. GIELATA | ) | #0507018523 |
| WAYNE CHEN | ) | |

The Grand Jury of New Castle County charges JOSEPH N. GIELATA AND WAYNE

CHEN with the following offenses;

### COUNT I. A FELONY

#N_____

#N_____

THEFT in violation of Title 11, Section 841 of the Delaware Code of 1974, as amended.

JOSEPH N. GIELATA AND WAYNE CHEN, on or between November 25, 2003 and

December 24, 2003, in the County of New Castle, State of Delaware, did take, exercise control

over, or obtain, pursuant to a common scheme, United States Currency or other miscellaneous

property valued in excess of $1,000.00, belonging to Pay Pal, Inc., or another business or person,

intending to deprive that business or person and/or the owner of the property, or to appropriate it.

### COUNT II. A FELONY

#N_____

#N_____

CONSPIRACY SECOND DEGREE in violation of Title 11, Section 512 of the Delaware

Code of 1974, as amended.

JOSEPH N. GIELATA AND WAYNE CHEN, on or between November 25, 2003 and December 24, 2003, in the County of New Castle, State of Delaware, when intending to promote or facilitate the commission of the felony of Theft, did agree with each other and/or Geoffrey Keston, to aid each other or another person or persons in the planning or commission of the felony or an attempt or solicitation to commit the felony, and one of them or another person, with whom they conspired, did commit an overt act in pursuance of the conspiracy.

A TRUE BILL

FOREPERSON

ATTORNEY GENERAL

DEPUTY ATTORNEY GENERAL

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMUEL I. HYLAND and STEPHANIE SPEAKMAN, individually and on behalf of all others similarly situated, | Case No. **1:05-cv-162 (JJF)** |
| Plaintiffs, | **CLASS ACTION** |
| vs. | |
| WILLIAM B. HARRISON, JR., HANS W. BECHERER, RILEY P. BECHTEL, FRANK A. BENNACK, JR., JOHN H. BIGGS, LAWRENCE A. BOSSIDY, M. ANTHONY BURNS, ELLEN V. FUTTER, WILLIAM H. GRAY, III, HELENE L. KAPLAN, LEE R. RAYMOND, JOHN R. STAFFORD, JPMORGAN CHASE & CO., and JAMES DIMON, | |
| Defendants. | |

## [PROPOSED] ORDER APPOINTING LEAD PLAINTIFFS AND LEAD COUNSEL

IT IS HEREBY ORDERED AND DECREED, this __21__ day of __June__, 2005,

that Samuel I. Hyland and Stephanie Speakman are hereby appointed lead plaintiffs in the above-

captioned litigation.

IT IS FURTHER ORDERED AND DECREED that Joseph N. Gielata, Esq. is hereby

appointed lead counsel in the above-captioned litigation. *subject to defendants reservations (D.I 31)*

_____

The Honorable Joseph J. Farnan, Jr.
United States District Judge

# EXHIBIT C

&lt;HELP&gt; for explanation.                          N161 **Equity** HP

## Comp/CLOSE/PRICE

|  |  |  |  |  | Page 1 / 6 |
|---|---|---|---|---|---|
| JPMORGAN CHASE & CO | (JPM | US) | PRICE 34.35 | B | % DELAYED |

HI 13.8333   ON  1/17/94
AVE 12.493   VL  1608408
LOW 11.375   ON 10/ 6/94

Range 1/ 3/94 to 12/30/94   Period D Daily   Market T Trade
USD

| | DATE | PRICE | VOLUME | | DATE | PRICE | VOLUME | | DATE | PRICE | VOLUME |
|---|---|---|---|---|---|---|---|---|---|---|---|
| F | 12/30 | 11.958 | 1458900 | F | 12/ 9 | 12.333 | 1507200 | F | 11/18 | 11.792 | 4029300 |
| T | 12/29 | 12.167 | 1469100 | T | 12/ 8 | 12.333 | 851100 | T | 11/17 | 11.917 | 2577300 |
| W | 12/28 | 12.208 | 1039200 | W | 12/ 7 | 12.583 | 1116000 | W | 11/16 | 12.125 | 1812900 |
| T | 12/27 | 12.125 | 1559100 | T | 12/ 6 | 12.833 | 1006800 | T | 11/15 | 12.167 | 2579700 |
| M | 12/26 | | | M | 12/ 5 | 12.667 | 1057800 | M | 11/14 | 12.125 | 1570500 |
| F | 12/23 | 12.208 | 1062600 | F | 12/ 2 | 12.458 | 981300 | F | 11/11 | 11.958 | 1024200 |
| T | 12/22 | 12.208 | 1882500 | T | 12/ 1 | 12.208 | 1255200 | T | 11/10 | 12.00 | 1260900 |
| W | 12/21 | 12.25 | 2344800 | W | 11/30 | 12.125 | 2495700 | W | 11/ 9 | 11.958 | 1815300 |
| T | 12/20 | 12.375 | 1778100 | T | 11/29 | 12.25 | 1628100 | T | 11/ 8 | 12.042 | 1229700 |
| M | 12/19 | 12.417 | 1724100 | M | 11/28 | 11.875 | 2343600 | M | 11/ 7 | 12.00 | 1239900 |
| F | 12/16 | 12.375 | 2956500 | F | 11/25 | 12.00 | 1142100 | F | 11/ 4 | 12.125 | 951300 |
| T | 12/15 | 12.458 | 4200600 | T | 11/24 | | | T | 11/ 3 | 12.375 | 710400 |
| W | 12/14 | 12.667 | 3634800 | W | 11/23 | 12.083 | 2557800 | W | 11/ 2 | 12.167 | 1107300 |
| T | 12/13 | 12.625 | 3074700 | T | 11/22 | 11.417 | 4359300 | T | 11/ 1 | 12.333 | 1219800 |
| M | 12/12 | 12.458 | 629400 | M | 11/21 | 11.75 | 2289900 | M | 10/31 | 12.667 | 1239000 |

Australia 61 2 9777 8600    Brazil 5511 3048 4500    Europe 44 20 7330 7500    Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2005 Bloomberg L.P.
G447-654-0 24-Aug-05  9:51:39

Bloomberg

Case 1:04-cv-01062-JDF   Document 562-6   Filed 08/29/2005   Page 24 of 56

# Comp/CLOSE/PRICE

JPMORGAN CHASE & CO    (JPM    US)    PRICE 34.35    B    % DELAYED

|     |       |       |     HI 13.8333 | ON | 1/17/94 |
|-----|-------|-------|----------------|----|---------|
| Range **1/ 3/94** to **12/30/94** | Period **D** Daily | | AVE 12.493 | VL | 1608408 |
| | USD | Market **T** Trade | LOW 11.375 | ON | 10/ 6/94 |

|   | DATE  | PRICE  | VOLUME  |   | DATE  | PRICE   | VOLUME  |   | DATE  | PRICE  | VOLUME  |
|---|-------|--------|---------|---|-------|---------|---------|---|-------|--------|---------|
| F | 10/28 | 12.458 | 2253000 | F | 10/ 7 | 11.708  | 984900  | F | 9/16  | 12.333 | 2338200 |
| T | 10/27 | 12.333 | 658200  | T | 10/ 6 | L11.375 | 966600  | T | 9/15  | 12.333 | 1275300 |
| W | 10/26 | 12.083 | 1427700 | W | 10/ 5 | 11.375  | 2044800 | W | 9/14  | 12.292 | 642900  |
| T | 10/25 | 11.958 | 1169100 | T | 10/ 4 | 11.417  | 1784100 | T | 9/13  | 12.25  | 1089900 |
| M | 10/24 | 11.792 | 1725300 | M | 10/ 3 | 11.542  | 1044000 | M | 9/12  | 12.208 | 933300  |
|   |       |        |         |   |       |         |         |   |       |        |         |
| F | 10/21 | 12.125 | 1223100 | F | 9/30  | 11.667  | 980700  | F | 9/ 9  | 12.417 | 2040300 |
| T | 10/20 | 12.25  | 1206300 | T | 9/29  | 11.833  | 917400  | T | 9/ 8  | 12.708 | 1203600 |
| W | 10/19 | 12.458 | 1128000 | W | 9/28  | 11.875  | 915000  | W | 9/ 7  | 12.667 | 735900  |
| T | 10/18 | 12.542 | 794400  | T | 9/27  | 11.833  | 1280400 | T | 9/ 6  | 12.75  | 812400  |
| M | 10/17 | 12.542 | 1132200 | M | 9/26  | 11.833  | 1764600 | M | 9/ 5  |        |         |
|   |       |        |         |   |       |         |         |   |       |        |         |
| F | 10/14 | 12.458 | 776700  | F | 9/23  | 12.042  | 2526300 | F | 9/ 2  | 12.792 | 942300  |
| T | 10/13 | 12.292 | 1418700 | T | 9/22  | 12.125  | 2453100 | T | 9/ 1  | 12.792 | 848400  |
| W | 10/12 | 12.292 | 748800  | W | 9/21  | 12.167  | 2955300 | W | 8/31  | 12.917 | 1389600 |
| T | 10/11 | 11.958 | 912600  | T | 9/20  | 12.083  | 2011200 | T | 8/30  | 13.083 | 1431300 |
| M | 10/10 | 11.958 | 660300  | M | 9/19  | 12.083  | 1620000 | M | 8/29  | 13.167 | 1040800 |

Australia 61 2 9777 8600    Brazil 5511 3048 4500    Europe 44 20 7330 7500    Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2005 Bloomberg L.P.
G447-654-0 24-Aug-05 9:51:47

<HELP> for explanation.                                        N161 **Equity HP**

# Comp/CLOSE/PRICE
                                                                    Page  3 / 6
JPMORGAN CHASE & CO          (JPM      US)       PRICE 34.35        B    $    DELAYED
                                                            HI 13.8333  ON  1/17/94
Range 1/ 3/94 to 12/30/94      Period D Daily               AVE 12.493  VL  1608408
                          USD    Market T Trade              LOW 11.375  ON 10/ 6/94

|   | DATE | PRICE | VOLUME |   | DATE | PRICE | VOLUME |   | DATE | PRICE | VOLUME |
|---|------|-------|--------|---|------|-------|--------|---|------|-------|--------|
| F | 8/26 | 13.208 | 1161900 | F | 8/ 5 | 12.625 | 912900 | F | 7/15 | 12.875 | 2190300 |
| T | 8/25 | 13.125 | 841200 | T | 8/ 4 | 12.667 | 1338300 | T | 7/14 | 13.042 | 2322900 |
| W | 8/24 | 13.208 | 830700 | W | 8/ 3 | 12.958 | 825900 | W | 7/13 | 12.75 | 982500 |
| T | 8/23 | 13.125 | 1534500 | T | 8/ 2 | 12.958 | 1047900 | T | 7/12 | 12.75 | 789600 |
| M | 8/22 | 13.00 | 1268400 | M | 8/ 1 | 12.917 | 780000 | M | 7/11 | 12.792 | 543300 |
|   |      |       |        |   |      |       |        |   |      |       |        |
| F | 8/19 | 12.917 | 4692300 | F | 7/29 | 12.792 | 1546200 | F | 7/ 8 | 12.75 | 531300 |
| T | 8/18 | 12.875 | 1665600 | T | 7/28 | 12.542 | 1208700 | T | 7/ 7 | 12.833 | 684600 |
| W | 8/17 | 12.958 | 1477500 | W | 7/27 | 12.50 | 1383000 | W | 7/ 6 | 12.708 | 983400 |
| T | 8/16 | 13.042 | 1209300 | T | 7/26 | 12.75 | 3420600 | T | 7/ 5 | 12.792 | 930300 |
| M | 8/15 | 12.792 | 1464600 | M | 7/25 | 12.75 | 1765200 | M | 7/ 4 |  |  |
|   |      |       |        |   |      |       |        |   |      |       |        |
| F | 8/12 | 12.792 | 1089600 | F | 7/22 | 12.625 | 1034100 | F | 7/ 1 | 12.958 | 706500 |
| T | 8/11 | 12.667 | 1290300 | T | 7/21 | 12.625 | 932700 | T | 6/30 | 12.833 | 938400 |
| W | 8/10 | 12.625 | 986100 | W | 7/20 | 12.542 | 2060700 | W | 6/29 | 12.792 | 1111500 |
| T | 8/ 9 | 12.625 | 928200 | T | 7/19 | 12.792 | 2146500 | T | 6/28 | 13.00 | 1187700 |
| M | 8/ 8 | 12.667 | 923700 | M | 7/18 | 12.917 | 1591800 | M | 6/27 | 13.042 | 1076400 |

Australia 61 2 9777 8600      Brazil 5511 3048 4500     Europe 44 20 7330 7500      Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2005 Bloomberg L.P.
                                                                          G447-654-0 24-Aug-05  9:51:52

Bloomberg

&lt;HELP&gt; for explanation.                                              N161 **Equity** **HP**

# Comp/CLOSE/PRICE
                                                                         Page 4 / 6
JPMORGAN CHASE & CO        (JPM    US)        PRICE 34.35        B    $    DELAYED
                                                              HI 13.8333   ON  1/17/94
Range `1/ 3/94` to `12/30/94`      Period `D` Daily           AVE 12.493   VL  16084O8
                              `USD`       Market `T` Trade     LOW 11.375   ON 10/ 6/94

| | DATE | PRICE | VOLUME | | DATE | PRICE | VOLUME | | DATE | PRICE | VOLUME |
|---|---|---|---|---|---|---|---|---|---|---|---|
| F | 6/24 | 12.792 | 1105500 | F | 6/ 3 | 13.292 | 1103100 | F | 5/13 | 11.50 | 2060700 |
| T | 6/23 | 12.958 | 811500 | T | 6/ 2 | 13.125 | 682200 | T | 5/12 | 11.458 | 1229700 |
| W | 6/22 | 13.042 | 1177500 | W | 6/ 1 | 13.25 | 1407900 | W | 5/11 | 11.458 | 1104600 |
| T | 6/21 | 12.917 | 1403400 | T | 5/31 | 12.792 | 1151700 | T | 5/10 | 11.708 | 1328400 |
| M | 6/20 | 13.125 | 1233000 | M | 5/30 | | | M | 5/ 9 | 11.417 | 1562100 |
| | | | | | | | | | | | |
| F | 6/17 | 13.292 | 2146800 | F | 5/27 | 12.667 | 425400 | F | 5/ 6 | 11.542 | 1743000 |
| T | 6/16 | 13.417 | 1117200 | T | 5/26 | 12.333 | 716400 | T | 5/ 5 | 11.75 | 1647900 |
| W | 6/15 | 13.458 | 1654500 | W | 5/25 | 12.375 | 1013700 | W | 5/ 4 | 11.875 | 1713300 |
| T | 6/14 | 13.458 | 1184400 | T | 5/24 | 12.292 | 1215000 | T | 5/ 3 | 11.875 | 1760100 |
| M | 6/13 | 13.625 | 1559100 | M | 5/23 | 12.00 | 766800 | M | 5/ 2 | 11.833 | 1609800 |
| | | | | | | | | | | | |
| F | 6/10 | 13.333 | 814500 | F | 5/20 | 12.042 | 922800 | F | 4/29 | 11.583 | 1336500 |
| T | 6/ 9 | 13.167 | 929400 | T | 5/19 | 12.333 | 1260000 | T | 4/28 | 11.667 | 1559100 |
| W | 6/ 8 | 13.208 | 1011000 | W | 5/18 | 12.458 | 2129700 | W | 4/27 | | |
| T | 6/ 7 | 13.208 | 1524300 | T | 5/17 | 11.917 | 1365300 | T | 4/26 | 11.833 | 1199400 |
| M | 6/ 6 | 13.458 | 1587600 | M | 5/16 | 11.583 | 1553400 | M | 4/25 | 11.75 | 1675200 |

Australia 61 2 9777 8600    Brazil 5511 3048 4500    Europe 44 20 7330 7500    Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2005 Bloomberg L.P.
G447-654-0 24-Aug-05  9:52:02

Bloomberg

<HELP> for explanation.                                    N151 **Equity** **HP**

## Comp/CLOSE/PRICE                                      Page  5 / 6
JPMORGAN CHASE & CO        (JPM     US)      PRICE 34.35        B     6    DELAYED

HI 13.8333   ON  1/17/94
Range  1/ 3/94  to  12/30/94    Period D Daily    AVE 12.493   VL  1608408
                          USD   Market T Trade     LOW 11.375   ON 10/ 6/94

| | DATE | PRICE | VOLUME | | DATE | PRICE | VOLUME | | DATE | PRICE | VOLUME |
|---|---|---|---|---|---|---|---|---|---|---|---|
| F | 4/22 | 12.00 | 1485600 | F | 4/ 1 | | | F | 3/11 | 12.125 | 2567100 |
| T | 4/21 | 12.25 | 1745700 | T | 3/31 | 12.125 | 2722500 | T | 3/10 | 11.958 | 2444100 |
| W | 4/20 | 12.125 | 977700 | W | 3/30 | 11.833 | 3234000 | W | 3/ 9 | 11.958 | 2845800 |
| T | 4/19 | 12.333 | 1444200 | T | 3/29 | 12.208 | 2229900 | T | 3/ 8 | 12.125 | 2825100 |
| M | 4/18 | 12.50 | 1159800 | M | 3/28 | 12.375 | 990900 | M | 3/ 7 | 12.125 | 2059800 |
| | | | | | | | | | | | |
| F | 4/15 | 12.708 | 2790900 | F | 3/25 | 12.417 | 1806600 | F | 3/ 4 | 12.125 | 2517900 |
| T | 4/14 | 12.667 | 1631100 | T | 3/24 | 12.667 | 2148300 | T | 3/ 3 | 12.00 | 2345100 |
| W | 4/13 | 12.583 | 1623300 | W | 3/23 | 12.75 | 1086000 | W | 3/ 2 | 12.333 | 3251400 |
| T | 4/12 | 12.833 | 1125300 | T | 3/22 | 12.792 | 1573200 | T | 3/ 1 | 12.417 | 1791000 |
| M | 4/11 | 12.917 | 2398200 | M | 3/21 | 12.708 | 1087200 | M | 2/28 | 12.417 | 1005000 |
| | | | | | | | | | | | |
| F | 4/ 8 | 12.542 | 2184600 | F | 3/18 | 12.792 | 4375800 | F | 2/25 | 12.625 | 1084200 |
| T | 4/ 7 | 12.667 | 1995000 | T | 3/17 | 12.917 | 2329800 | T | 2/24 | 12.458 | 1966200 |
| W | 4/ 6 | 12.125 | 2928600 | W | 3/16 | 13.00 | 1883400 | W | 2/23 | 12.50 | 1282800 |
| T | 4/ 5 | 12.125 | 2471700 | T | 3/15 | 12.708 | 3094200 | T | 2/22 | 12.375 | 890700 |
| M | 4/ 4 | 11.958 | 6395100 | M | 3/14 | 12.542 | 1522800 | M | 2/21 | | |

Australia 61 2 9777 8600      Brazil 5511 3048 4500      Europe 44 20 7330 7500      Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2005 Bloomberg L.P.
                                                                    G447-654-0 24-Aug-05  9:52:14

Bloomberg

&lt;HELP&gt; for explanation.                                    N161 **Equity HP**

## Comp/CLOSE/PRICE                                      Page  6 / 6
JPMORGAN CHASE & CO        (JPM    US)        PRICE 34.35        B      $       DELAYED

|   | DATE | PRICE | VOLUME |   | DATE | PRICE | VOLUME |   | DATE | PRICE | VOLUME |
|---|------|-------|--------|---|------|-------|--------|---|------|-------|--------|
|   |      |       |        |   |      |       |        |   | HI 13.8333 | ON | 1/17/94 |
|   | Range 1/ 3/94 | to 12/30/94 |  |  | Period D Daily |  |  |  | AVE 12.493 | VL | 1608408 |
|   |      |       | USD    |   | Market T Trade |  |  |  | LOW 11.375 | ON | 10/ 6/94 |
| F | 2/18 | 12.167 | 1662900 | F | 1/28 | 13.042 | 1851000 | F | 1/ 7 | 13.542 | 3363000 |
| T | 2/17 | 12.208 | 1725900 | T | 1/27 | 12.833 | 1274100 | T | 1/ 6 | 13.167 | 2865600 |
| W | 2/16 | 12.25  | 1031100 | W | 1/26 | 12.625 | 1593600 | W | 1/ 5 | 13.375 | 3010500 |
| T | 2/15 | 12.208 | 907500 | T | 1/25 | 12.417 | 1833600 | T | 1/ 4 | 13.50 | 1971300 |
| M | 2/14 | 12.167 | 843900 | M | 1/24 | 12.583 | 977100 | M | 1/ 3 | 13.458 | 2140200 |
|   |      |       |        |   |      |       |        |   |      |       |        |
| F | 2/11 | 12.208 | 826200 | F | 1/21 | 12.542 | 2264700 |   |      |       |        |
| T | 2/10 | 12.333 | 1018500 | T | 1/20 | 12.667 | 914400 |   |      |       |        |
| W | 2/ 9 | 12.458 | 1659900 | W | 1/19 | 12.875 | 2179200 |   |      |       |        |
| T | 2/ 8 | 12.292 | 2142900 | T | 1/18 | 13.50 | 2042400 |   |      |       |        |
| M | 2/ 7 | 12.417 | 1992000 | M | 1/17 | H13.833 | 1405200 |   |      |       |        |
|   |      |       |        |   |      |       |        |   |      |       |        |
| F | 2/ 4 | 12.333 | 1668900 | F | 1/14 | 13.833 | 3084600 |   |      |       |        |
| T | 2/ 3 | 12.625 | 1450500 | T | 1/13 | 13.833 | 3350400 |   |      |       |        |
| W | 2/ 2 | 13.042 | 1016700 | W | 1/12 | 13.708 | 2177400 |   |      |       |        |
| T | 2/ 1 | 12.875 | 1131600 | T | 1/11 | 13.667 | 1845000 |   |      |       |        |
| M | 1/31 | 13.167 | 1383300 | M | 1/10 | 13.75 | 1775400 |   |      |       |        |

Australia 61 2 9777 8600    Brazil 5511 3048 4500    Europe 44 20 7330 7500    Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2005 Bloomberg L.P.
G447-654-0 24-Aug-05  9:52:21

**Bloomberg**

# EXHIBIT D

**Legal Notice**

Dated: October 15, 2004

Notice: On October 13, 2004, a class action was filed in United States District Court for the Northern District of Illinois - Eastern Division by Wolf Haldenstein Adler Freeman & Herz LLP against J.P. Morgan Chase & Co., along with William B. Harrison Jr., J.P. Morgan Chase's Chief Executive Officer and Chairman of the Board, and additional officers and directors of J.P. Morgan Chase) on behalf of all those who held shares of the common stock of J.P. Morgan Chase, either on April 2, 2004 (the record date for voting at the May 25, 2004 shareholder meeting), or at any time from April 19, 2004 (the date of the proxy that was issued in connection with such meeting) through July 1, 2004, (the date on which the Company consummated a merger with Bank One Corporation, which was approved by shareholders pursuant to the above-dated materially false and misleading proxy statement). The complaint alleges violations of sections 14(a) and rule 14a - 9, and section 20(a) of the Securities Exchange Act of 1934. The action is pending before the Honorable William J. Hibbler and is styled Blau v. Harrison, et al., 04 C 6592.

Specifically, the complaint alleges, among other things, that the merger was consummated following shareholder approval of a 15% premium in favor of Bank One, but defendants never disclosed that Bank One offered to consummate the merger without demanding a premium for its shares and that Defendant Harrison rejected that offer so that he could prolong his executive tenure. This conduct (the facts of which are omitted from the proxy statement's discussions of related issues - namely, the merger negotiation and approval process, the exchange ratio, and Mr. Harrison's continued employment) ultimately cost J.P. Morgan Chase shareholders over $7 billion in merger compensation.

If you are a member of the Class, you may, no later than December 14, 2004, move the Court to serve as lead plaintiff of the Class. Your ability to share in a recovery is not, however, affected by the decision whether or not to serve as the lead plaintiff. If you have any questions concerning this notice or rights with regard to this case, please contact Gregory Mark Nespole, Esq., at Wolf Haldenstein Adler Freeman & Herz LLP at 270 Madison Avenue, New York, New York 10016, 212-545-4600.

# EXHIBIT E

## PLAINTIFF'S CERTIFICATION

American Growth Fund, Inc ("Plaintiff") declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

      1.     Plaintiff has reviewed the complaint and authorized the commencement of an action on Plaintiff's behalf.

      2.     Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

      3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

      4.     Plaintiff's transactions in J.P. Morgan Chase & Co. securities during the Class Period specified in the Complaint are as follows:

| Date | # of Shares Purchased | # of Shares Sold | Price |
|------|----------------------|------------------|-------|
| 11/14/01 | 25,000 | N/A | 37.99 |

      5.     During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws. [Or, Plaintiff has served as a class representative in the action(s) listed below:]

      6.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

      I declare under penalty of perjury that the foregoing is true and correct. Executed this 19 day of November, 2004.

# EXHIBIT F

# WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

JOHN L. FREEMAN
EDGAR J. NATHAN, 3RD
CHARLES H. BALLER
DAVID A. RUTTENBERG
PETER L. KLAUSNER*
DANIEL W. KRASNER
FRED T. ISQUITH
STUART M. SAFTY
ERIC B. LEVINE
JEFFREY G. SMITH†
FRANCIS M. GREGOREK†
MARY JANE FAIT*
ROBERT D. STEELE
MARK C. SILVERSTEIN
ELI D. GREENBERG
PETER C. HARRAR
LAWRENCE P. KOLKER
MARK C. RIFKIN§
JEFFREY M. SCHWARTZ
MICHAEL JAFFE†
MARIA I. BELTRANI*
MICHAEL E. FLEISS
BETSY C. MANIFOLD†
ALEXANDER H. SCHMIDT*
JEFFREY S. REICH*
GREGORY M. NESPOLE
DAVID L. WALES
FRANCIS A. BOTTINI, JR.¶
DEMET BASAR*
ADAM J. LEVITT‡
LISA A. LOWENTHAL

FOUNDED 1888

270 MADISON AVENUE

NEW YORK, NY 10016

212-545-4600

WWW.WHAFH.COM

SYMPHONY TOWERS
750 B STREET - SUITE 2770
SAN DIEGO, CA 92101
619-239-4599

625 NORTH FLAGLER DRIVE
9TH FLOOR
WEST PALM BEACH, FL 33401
561-833-1778

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC
656 WEST RANDOLPH STREET, SUITE 500W
CHICAGO, IL 60661
312-466-9200
DIRECT DIAL (212) 545-4657
FACSIMILE (212) 545-4758
NESPOLE@WHAFH.COM

N. JOSHUA ABER
CARL R. SLOAN
ROBERT D. WEINTRAUB
ROBERT ABRAMS

OF COUNSEL

ALAN McDOWELL†
JULIE M. SULLIVAN
LINDA A. REDLISKY
NANCY S. PITKOFSKY*
STEVEN D. BLACKUS*
MICHAEL C. HULE*
RACHELE R. RICKERT*
BRIAN S. COHEN
THOMAS H. BURT
JILL H. BLUMBERG*
MARK A. HAKIM*
SCOTT J. FARRELL*
KATHERINE B. DUBOSE
KATE M. McGUIRE
GUSTAVO BRUCKNER*
STACEY T. KELLY
STEFANIE A. LINDEMAN
RONNIE BRONSTEIN
MICHAEL J. MISEK
TAMARA E. GROSS
CHRISTOPHER S. HINTON
JOSHUA BERENGARTEN
INGRID C. NANEVITZ

ALSO ADMITTED
*FLA., ¶CAL., §N.J., §IL.
ONLY ADMITTED
¶CA,§IL, □VA, ¶NJ & PA

November 23, 2004

## Via Federal Express

Mr. Timothy Taggart
c/o American Growth Fund, Inc.
110 16th Street, Suite 1400
Denver, Colorado 80202

Re:   **J.P. Morgan Chase & Company Securities Litigation**

Dear Mr. Taggart:

Thank you for submitting to us American Growth fund's filled-out plaintiff's certification. However, the certificate does need a signature. Please arrange for signing of the certificate on behalf of the Fund, and return it my attention in the Federal Express envelope that we have provided for you.

Should you have any questions or comments, please do not hesitate to contact me.

Very truly yours,

Gregory Mark Nespole

GMN:mns/384190

# EXHIBIT G

## PLAINTIFF'S CERTIFICATION

American Growth Fund, Inc. ("Plaintiff") declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.     Plaintiff has reviewed the complaint and authorized the commencement of an action on Plaintiff's behalf.

2.     Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff's transactions in J.P. Morgan Chase & Co. securities during the Class Period specified in the Complaint are as follows:

| Date | # of Shares Purchased | # of Shares Sold | Price |
|------|----------------------|------------------|-------|
| 11/14/01 | 25,000 | N/A | 37.99 |

5.     During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws. [Or, Plaintiff has served as a class representative in the action(s) listed below:]

6.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this __17__ day of __November__, 2004.

Please complete the following information so that we may include your contact information with your Plaintiff's Certification upon being returned to us. By filling out this form, it will facilitate the process of providing you with updates on the status of the case.

**NAME:** Timothy E Taggart

**ADDRESS:** 110 16th St. Suite 1400
Denver, CO 80202

**HOME PHONE:**

**WORK PHONE:** (303) 626-0600

**E-MAIL ADDRESS:** Tim.Taggart@AmericanGrowthFund.com

**CASE NAME:** J.P. Morgan Chase & Company

# EXHIBIT H

 

## WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

FOUNDED 1888

270 MADISON AVENUE

NEW YORK, NY 10016

212-545-4600

WWW.WHAFH.COM

JOHN L. FREEMAN
EDGAR J. NATHAN, 3RD
CHARLES H. BALLER
DAVID A. RUTTENBERG
DANIEL W. KRASNER
FRED T. ISQUITH
STUART M. SAFT*
ERIC B. LEVINE
JEFFREY G. SMITH†
FRANCIS M. GREGOREK†
MARY JANE FAIT*
ROBERT D. STEELE
MARK C. SILVERSTEIN
ELI D. GREENBERG
PETER C. HARRAR
LAWRENCE P. KOLKER
MARK C. RIFKIN◊
JEFFREY N. SCHWARTZ
MICHAEL JAFFE†
MARIA I. BELTRANI*
MICHAEL E. FLEISS
BETSY C. MANIFOLD†
ALEXANDER H. SCHMIDT°
JEFFREY S. REICH*
GREGORY M. NESPOLE
DAVID L. WALES
FRANCIS A. BOTTINI, JR.◊
DEMET BASAR*
ADAM J. LEVITT‡
LISA A. LOWENTHAL

SYMPHONY TOWERS
750 B STREET - SUITE 2770
SAN DIEGO, CA 92101
619-239-4599

625 NORTH FLAGLER DRIVE
9TH FLOOR
WEST PALM BEACH, FL 33401
561-833-1776

M. JOSHUA ABER
CARL R. SLOAN
ROBERT B. WEINTRAUB
ROBERT ABRAMS
OF COUNSEL

ALAN McDOWELL◊
LINDA A. REDLISKY
NANCY S. PITKOFSKY°
STEVEN D. SLADKUS°
JULIE A. FOX‡
MICHAEL C. MULÉ°
RACHELE R. RICKERT▾
THOMAS H. BURT
JILL H. BLUMBERG°
SCOTT J. FARRELL°
KATE M. McGUIRE
LAUREN P. KRAUS◊
GUSTAVO BRUCKNER°
STACEY T. KELLY°
RONNIE BRONSTEIN
PAULETTE S. FOX°
MICHAEL J. MISKE
TAMARA E. GROSS
CHRISTOPHER S. HINTON
JOSHUA BERENGARTEN
INGRID C. MANEVITZ°
MATTHEW M. GUINEY
MARTHA J. BROSIUS
AYA BOUCHEDID
JESSICA HOFF*

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC
656 WEST RANDOLPH STREET, SUITE 500W
CHICAGO, IL 60661
312-466-9200

DIRECT DIAL (212) 545-4657
FACSIMILE (212) 545-4758
NESPOLE@WHAFH.COM

February 14, 2005

ALSO ADMITTED
*FLA., †CAL., ◊N.J., ♦IL.
ONLY ADMITTED
▾CA,‡IL,□VA, ◊NJ & PA. °CT

## VIA FEDERAL EXPRESS

Mr. Timothy Taggart
c/o American Growth Fund, Inc.
110 16th Street, Suite 1400
Denver, Colorado 80202

### Re:   J.P. Morgan Chase & Company Securities Litigation

Dear Mr. Taggart:

Enclosed, please find a draft complaint we intend to file on Friday, February 18, 2005, alleging claims against J.P. Morgan Chase and certain former officers and directors. We believe the claim is very strong. Please review the draft complaint and call me if you have any questions.

Very truly yours,

Gregory Mark Nespole

GMN:dm/392790
Encl.

300
271

**FedEx** US Airbill
Express

FedEx Tracking Number: 8499 2174 1976

**1 From** Please print and press hard.
Date 2/14/05
Sender's FedEx Account Number: 0100-2513-3
Sender's Name Gregory M. Nepole    Phone (212) 545-4600
Company WOLF HALDENSTEIN ADLER FREEMAN
Address 270 MADISON AVE
City NEW YORK    State NY    ZIP 10016-0601

**2 Your Internal Billing Reference** 3282.001

**3 To**
Recipient's Name Mr. Timothy Taggart    Phone ( )
Company c/o American Growth Fund, Inc.
Recipient's Address 110 16th Street,
Address Suite 1400
City Denver    State CO    ZIP 80202

Try online shipping at...
Questions? Visit our Web site at fedex.com
or call 1.800.Go FedEx 1.800.463.3339

0294B09105

**NO POUCH NEEDED.**
See back for peel and stick application instructions.

PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE.

**Sender's Copy**

**4a Express Package Service**
☒ FedEx Priority Overnight
☐ FedEx Standard Overnight
☐ FedEx First Overnight
☐ FedEx 2Day
☐ FedEx Express Saver

**4b Express Freight Service**
☐ FedEx 1Day Freight
☐ FedEx 2Day Freight
☐ FedEx 3Day Freight

**5 Packaging**
☒ FedEx Envelope
☐ FedEx Pak
☐ FedEx Box
☐ FedEx Tube
☐ Other

**6 Special Handling**
☐ SATURDAY Delivery
☐ HOLD Weekday
☐ HOLD Saturday
☒ No    ☐ Yes
☐ Yes
☐ Cargo Aircraft Only

**7 Payment** Bill to:
☒ Sender
☐ Recipient
☐ Third Party
☐ Credit Card
☐ Cash/Check

Total Packages    Total Weight    Total Declared Value
$                    .00

**8 Sign to Authorize Delivery Without a Signature**

456

# EXHIBIT I

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

JOHN L. FREEMAN
EDGAR J. NATHAN, 3RD
CHARLES H. BALLER
DAVID A. RUTTENBERG
DANIEL W. KRASNER
FRED T. ISQUITH
STUART M. SAFT*
ERIC B. LEVINE
JEFFREY G. SMITH†
FRANCIS M. GREGOREK†
MARY JANE FAIT*
ROBERT D. STEELE
MARK C. SILVERSTEIN
ELI D. GREENBERG
PETER C. HARRAR
LAWRENCE P. KOLKER
MARK C. RIFKIN◊
JEFFREY M. SCHWARTZ
MICHAEL JAFFE†
MARIA I. BELTRANI*
MICHAEL E. FLEISS
BETSY C. MANIFOLD†
ALEXANDER H. SCHMIDT*
JEFFREY S. REICH*
GREGORY M. NESPOLE
DAVID L. WALES
FRANCIS A. BOTTINI, JR.*
DENET BASAR*
ADAM J. LEVITT‡
LISA A. LOWENTHAL

FOUNDED 1888

270 MADISON AVENUE

NEW YORK, NY 10016

212-545-4600

WWW.WHAFH.COM

SYMPHONY TOWERS
750 B STREET - SUITE 2770
SAN DIEGO, CA 92101
619-239-4599

625 NORTH FLAGLER DRIVE
8TH FLOOR
WEST PALM BEACH, FL 33401
561-833-1776

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC
656 WEST RANDOLPH STREET, SUITE 500W
CHICAGO, IL 60661
312-466-9200

DIRECT DIAL (212) 545-4657
FACSIMILE (212) 545-4758
NESPOLE@WHAFH.COM

February 16, 2005

M. JOSHUA ABER
CARL R. SLOAN
ROBERT B. WEINTRAUB
ROBERT ABRAMS
OF COUNSEL

ALAN McDOWELL◊
LINDA A. REDLISKY
NANCY S. PITKOFSKY*
STEVEN D. SLADKUS*
JULIE A. FOX‡
MICHAEL C. MULÉ*
RACHELE R. RICKERT*
THOMAS H. BURT
JILL H. BLUMBERG*
SCOTT J. FARRELL*
KATE M. McGUIRE
LAUREN P. KRAUS*
GUSTAVO BRUCKNER*
STACEY T. KELLY*
RONNIE BRONSTEIN
PAULETTE S. FOX*
MICHAEL J. MISKE
TAMARA E. GROSS
CHRISTOPHER S. HINTON
JOSHUA BERENGARTEN
INGRID C. MANEVITZ*
MATTHEW M. GUINEY
MARTHA J. BROSIUS
AYA BOUCHEDID
JESSICA HOFF*

ALSO ADMITTED
*FLA., †CAL., ◊N.J., ‡IL.
ONLY ADMITTED
◊CA, ‡IL, □VA, ◊NJ & PA, *CT

**VIA TELECOPIER (303) 626-0614**
**and FEDERAL EXPRESS**

Mr. Timothy Taggart
c/o American Growth Fund, Inc.
110 16th Street, Suite 1400
Denver, Colorado 80202

**Re:    J.P. Morgan Chase & Company Securities Litigation**

Dear Mr. Taggart:

It was a pleasure speaking to you this afternoon concerning the case. So that your records are complete, I have enclosed copies of the pertinent correspondence, including the certificate signed by American Growth Fund, Inc., by you on or about November 19, 2004. I have also enclosed a copy of the letter I sent to you asking that you re-submit the form to me; as we discussed, the version that you originally sent to me was not signed and I wrote to you requesting that you in fact sign it so that we could proceed.

I believe this is a very strong case, that defendants' malfeasance is substantial, and members of the proposed class may indeed have suffered damages in excess of $7 billion dollars in the form of the payment of unnecessary, excess merger compensation to Bank One's shareholders.

Also, as we discussed, the amended complaint is due to be filed on Friday, February 18, 2005 in Chicago; if you wish to remain a lead plaintiff, please let me know by the end of tomorrow, February 17 so that we may include you. I sincerely hope you elect to stay on-board.

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

February 16, 2005
Page 2

· If you wish to be withdrawn as a lead plaintiff we will, of course, accommodate you and you will not be listed on the amended complaint. I will file the necessary papers withdrawing the Fund by the end of this week as well.

Regardless of the choice you make concerning whether to proceed as a lead plaintiff, I am mindful that your fund may at some point in time be entitled to a substantial recovery. Thus, should we be successful in this litigation, I will make certain that you receive a claim form and I will help you complete and file it with the claims administrator.

I look forward to speaking to you sometime tomorrow.

Very truly yours,

Gregory Mark Nespole

GMN:dm/393216
Encl.

# EXHIBIT J



American Growth Fund, Inc.
110 Sixteenth Street, Suite 1400
Denver, CO  80202
(800) 525-2406
(303) 626-0600
(303) 626-0614 *Fax*

February 16th, 2005

Gregory Nespole
Wolf Handenstein Adler freeman & Herz LLP
270 Madison Ave
New York, NY 10016

Dear Mr. Nespole,

This is to confirm my earlier message. American Growth Fund, Inc. does not wish to participate in a class action lawsuit against Chase Morgan.

If you have any questions please feel free to call me.

Timothy E. Taggart

# EXHIBIT K

Search - 1 Result - "AMERICAN GROWTH CAPITAL CORP"

Source: News & Business > News > By Individual Publication > W > Wall Street Journal ▦
Terms: **"american growth capital corp" and date(geq (08/10/1997) and leq (08/31/1997))** (Edit Search)

*The Wall Street Journal August 13, 1997 Wednesday*

Copyright 1997 Factiva, a Dow Jones and Reuters Company
All Rights Reserved



factiva.

(Copyright (c) 1997, Dow Jones & Company, Inc.)

## THE WALL STREET JOURNAL

The Wall Street Journal

**August** 13, 1997 Wednesday

**SECTION:** Pg. C22

**LENGTH:** 304 words

**HEADLINE:** Two Mutual Funds Named in SEC Suit That Alleges Fraud

**BODY:**

LOS ANGELES -- The Securities and Exchange Commission sued several individuals and two small mutual funds alleging fraud and other misdeeds in connection with about $7.9 million they raised from over 300 investors around the country.

Named as defendants in the action, filed in Los Angeles federal district court, were American Growth Fund I LP and Capital Growth Fund I LP, both managed by investment advisers in Las Vegas.

The funds aren't related to other mutual funds of similar names, said Kelly Bowers, an SEC attorney on the case. Among several individual defendants was Charles E. Duquette, also of Las Vegas, whom the SEC complaint called the "undisclosed control person" behind the two funds.

In its complaint, the SEC claimed that American Growth Fund and its investment adviser, **American Growth Capital Corp.**, raised about $7.4 million on the promise that the money would be invested in "emerging growth companies" that hadn't yet gone public. The SEC claimed that, among other things, some of the defendants were involved in the "misappropriation of at least $1.6 million" of those funds. In the case of Capital Growth Fund and its investment adviser, Growth Capital Resources Corp., the SEC complaint alleged that the misdeeds included undisclosed payments and expenses and a "kickback" that the investment adviser received in connection with one of the fund's investments.

Calls to American Growth Capital's office weren't returned. Mr. Duquette couldn't be located for comment. His attorney didn't return phone calls.

Laurie J. Butler, an attorney for Capital Growth Fund and Growth Capital Resources, said her clients "vigorously dispute" the SEC's contentions. But they agreed to settle the case with the SEC and agree to an injunction and appointment of a receiver in order to avoid the expense of litigation.

**NOTES:**
PUBLISHER: Dow Jones & Company

**LOAD-DATE:** December 6, 2004

Source: News & Business > News > By Individual Publication > W > **Wall Street Journal** 🔲
Terms: **"american growth capital corp" and date{geq (08/10/1997} and leq (08/31/1997))** (Edit Search)
View: Full
Date/Time: Thursday, May 26, 2005 - 4:47 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT

# G

KC

FILED

MAY 2 6 2005   *a*

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DR. STEPHEN BLAU, Individually and On
Behalf of All Others Similarly Situated,

        Plaintiff,

    v.

WILLIAM B. HARRISON, JR., HANS W.
BECHERER, RILEY P. BECHTEL, FRANK A.
BENNACK, JR., JOHN H. BIGGS,
LAWRENCE A. BOSSIDY, M. ANTHONY
BURNS, LAURENCE FULLER, ELLEN V.
FUTTER, WILLIAM H. GRAY, III, HELENE
L. KAPLAN, LEE R. RAYMOND, JOHN R.
STAFFORD, and J.P. MORGAN CHASE &
CO.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 04C 6592

Judge William J. Hibbler

Magistrate Judge Martin C. Ashman

## AGREED MOTION TO SET REVISED BRIEFING SCHEDULE AND TO DISMISS
## DEFENDANT LAURENCE FULLER

Plaintiff Dr. Stephen Blau and Defendants William B. Harrison, Jr., Hans W.

Becherer, Riley P. Bechtel, Frank A. Bennack, Jr., John H. Biggs, Lawrence A. Bossidy, M.

Anthony Burns, Laurence Fuller, Ellen V. Futter, William H. Gray, III, Helene L. Kaplan, Lee R.

Raymond, John R. Stafford, and J.P. Morgan Chase & Co. hereby move this Court to enter an

Order setting a revised briefing schedule and dismissing defendant Laurence Fuller from this

action with prejudice.  In support of this Motion, the parties state as follows:

      1.     On January 5, 2005, the parties appeared before the Court on plaintiff's

motion to appoint lead plaintiff and lead counsel.  The Court granted that motion and ordered

plaintiff to file his amended complaint by February 18, 2005, and defendants to respond by

March 18, 2005.

2.    On March 16, 2005, the court granted an agreed motion for extension of time for defendants to answer plaintiff's amended complaint or file a motion to dismiss by April 22, 2005. The motion provided that should defendants file a motion to dismiss, plaintiff would file a response by June 3, 2005 and defendants would file a reply by June 24, 2005.

3.    On April 22, 2005, defendants filed a motion to dismiss plaintiff's amended complaint. Plaintiff has been working to respond to defendants' motion to dismiss, however, plaintiff requires an extension of time until June 24, 2005 to respond to the arguments presented therein. Counsel for the parties conferred by telephone to discuss a revised briefing schedule. The parties agree that plaintiff's deadline to file a response to defendants' motion to dismiss should be extended to, and including, June 24, 2005. Defendants' deadline to file a reply in support of their motion to dismiss should be extended to, and including, July 22, 2005.

4.    Defendant Riley Bechtel is filing a motion to dismiss concurrently with the instant motion. The parties agree that the briefing on that motion should have the same deadlines as briefs on the other defendants' motion, i.e., plaintiff's response brief should be due on June 24, 2005 and Bechtel's reply should be due July 22, 2005.

5.    The parties further agree that Laurence Fuller should be voluntarily dismissed from this action, with prejudice, pursuant to Federal Rule of Civil Procedure 41(a).

WHEREFORE, the parties respectfully request that this Court enter an Order that (1) plaintiff's deadline to file a response to all defendants' motions to dismiss is extended to, and including, June 24, 2005; (2) defendants' deadline to file a reply in support of their motions to dismiss is extended to, and including, July 22, 2005; and (3) Laurence Fuller should be voluntarily dismissed as a defendant herein with prejudice.

Respectfully submitted,

Dr. Stephen Blau, individually and on behalf of the proposed class

Defendants William B. Harrison, Jr., Hans W. Becherer, Riley P. Bechtel, Frank A. Bennack, Jr., John H. Biggs, Lawrence A. Bossidy, M. Anthony Burns, Laurence Fuller, Ellen V. Futter, William H. Gray, III, Helene L. Kaplan, Lee R. Raymond, John R. Stafford, and J.P. Morgan Chase & Co.

By: _____
One of His Attorneys

By: _____
One of Their Attorneys

Adam J. Levitt
Mary Jane Edelstein Fait
WOLF HALDENSTEIN ADLER FREEMAN
& HERZ LLC
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
(312) 984-0000
Attorneys for Plaintiff and the Proposed Class

Kathleen L. Roach
Courtney A. Rosen
Chanté D. Spann
SIDLEY AUSTIN BROWN & WOOD LLP
10 S. Dearborn
Chicago, IL 60603
(312) 853-7000
Attorneys for all Defendants

Gregory M. Nespole
Jeffrey G. Smith
WOLF HALDENSTEIN ADLER FREEMAN
& HERZ LLP
270 Madison Avenue
New York, New York 10016
(212) 545-4600
Attorneys for Plaintiff and the Proposed Class

Julie A. Lepri
JPMORGAN CHASE LEGAL
DEPARTMENT
10 S. Dearborn, 11th Floor
Chicago, IL 60603
(312) 732-7354
Attorney for Defendant
J.P. Morgan Chase & Co.

Of Counsel:

Michael A. Cooper
Sharon L. Nelles
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000
Attorneys for all individual Defendants

Dated: May 26, 2005

# EXHIBIT

# H



# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**FILED**

DR. STEPHEN BLAU, Individually and On )
Behalf of All Others Similarly Situated, )
                                  )     Civil Action No. 04C 6592
             Plaintiff, )
                                    )     Judge William J. Hibbler

v. )
                                      )     Magistrate Judge Martin C. Ashman

WILLIAM B. HARRISON, JR., HANS W. )
BECHERER, RILEY P. BECHTEL, FRANK A. )
BENNACK, JR., JOHN H. BIGGS, )
LAWRENCE A. BOSSIDY, M. ANTHONY )
BURNS, LAURENCE FULLER, ELLEN V. )
FUTTER, WILLIAM H. GRAY, III, HELENE )
L. KAPLAN, LEE R. RAYMOND, JOHN R. )
STAFFORD, and J.P. MORGAN CHASE & CO., )
                                      )
           Defendants. )

## AGREED MOTION TO FURTHER REVISE BRIEFING
## SCHEDULE ON DEFENDANTS' MOTION TO DISMISS

Plaintiff Dr. Stephen Blau and Defendants William B. Harrison, Jr., Hans W. Becherer, Riley P. Bechtel, Frank A. Bennack, Jr., John H. Biggs, Lawrence A. Bossidy, M. Anthony Burns, Laurence Fuller, Ellen V. Futter, William H. Gray, III, Helene L. Kaplan, Lee R. Raymond, John R. Stafford, and J.P. Morgan Chase & Co., respectfully move the Court, by agreement, to enter an Order further revising the current briefing schedule with respect to Defendants' pending Motion to Dismiss. In support of their Agreed Motion, the parties state as follows:

1.      Pursuant to the current, Court ordered, briefing schedule relating to Defendants' Motion to Dismiss,[1] Plaintiff's opposition to Defendants' Motion to Dismiss is due on June 24, 2005, and Defendants' reply in support of their motion is due on July 22, 2005.

---

[1] On or about June 1, 2005, Defendant Riley Bechtel filed his motion to dismiss. Mr. Bechtel's motion merely incorporates by reference the other Defendants' dismissal papers in their entirety. As such, throughout this motion, Plaintiff will refer to the motions to dismiss in the singular, rather than the plural.

2.    Due to extenuating circumstances arising out of pressing obligations in other, unrelated litigation, Plaintiff's counsel requires a slight modification of the current briefing schedule in order to facilitate the filing of his opposition to Defendants' dismissal motion.

3.    Defendants have consented to Plaintiff's extension request, provided that their deadline to reply in support of their pending dismissal motion is extended commensurately. Plaintiffs agreed to that request.

4.    Should the Court enter an Order adopting the parties proposed modification of the briefing schedule, Plaintiff's opposition memorandum would be due on or before July 7, 2005, and Defendants' reply memorandum would be due on or before August 4, 2005.

**WHEREFORE**, the parties respectfully request that the Court enter an Order extending Plaintiff's deadline to file his response in opposition to Defendants' motion to dismiss through July 7, 2005, and extending Defendants' deadline to reply in support of their motion through August 4, 2005.

**Dated:**   June 17, 2005

Respectfully submitted,

Adam J. Levitt
**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
(312) 984-0000 (t)
(312) 984-0001 (f)

*Lead Counsel for Plaintiff and the
Proposed Class*

8014

# EXHIBIT

# I