# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. STEPHEN BLAU, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>v.<br><br>WILLIAM B. HARRISON, JR., HANS W. BECHERER, RILEY P. BECHTEL, FRANK A. BENNACK, JR., JOHN H. BIGGS, LAWRENCE A. BOSSIDY, M. ANTHONY BURNS, LAURENCE FULLER, ELLEN V. FUTTER, WILLIAM H. GRAY, III, HELENE L. KAPLAN, LEE R. RAYMOND, JOHN R. STAFFORD, and J.P. MORGAN CHASE & CO.,<br><br>          Defendants. | Civil Action No. 04C 6592<br><br>Judge William J. Hibbler<br><br>Magistrate Judge Martin C. Ashman |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**

Months after J.P. Morgan Chase & Co. ("JPMC") and Bank One Corporation ("Bank One") merged (the "Merger"), plaintiff sued JPMC and all its then directors[1] based solely on a single sentence in a *New York Times* article – published before the Merger – attributing to unnamed sources the statement that during the negotiations leading up to the Merger agreement Bank One's CEO "*offered to do the deal for no premium* if he could become chief executive immediately." (Compl. ¶ 31 (emphasis in Complaint, but not in article)). Plaintiff contends that defendants are liable under Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 and Rule 14a-9(a) of the Securities and Exchange Commission for failing to disclose that alleged "offer" in the Proxy Statement that sought stockholder approval of the Merger. For all of the

---

[1] Plaintiff also named Laurence Fuller, who retired from the JPMC board of directors well before the Merger. Counsel for the parties have conferred, and plaintiff's counsel has agreed to voluntarily dismiss Mr. Fuller from the action.

reasons discussed below, the Amended Class Action Complaint ("Complaint") should be dismissed.[2]

First, the putative class lacks standing to bring a private action under Section 14(a). Only those persons who owned JPMC stock as of April 2, 2004—the Proxy record date for voting on the Merger—have the right to bring such an action. The putative class is improperly defined to include persons who did not hold stock at that time, which requires that the Complaint be dismissed.

Second, the Complaint fails to state a Section 14(a) claim, both because it does not satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") and Fed. R. Civ. P. Rule 9(b), and because the alleged omission was immaterial as a matter of law. The Complaint does not allege that the actual terms of the Merger (which was approved by the Board of Directors of both banks and by 99.18% of JPMC shareholders) were not adequately described in the Proxy Statement. Rather, the Complaint is based squarely and solely on an "offer" alleged to have been made and rejected during the months of negotiations which preceded the Merger's approval by both Boards of Directors, and bases its allegations as to that purported offer only on one newspaper article that relied entirely upon anonymous sources reportedly "close to the deal." The Complaint fails to allege facts that would establish that these sources were present when the "offer" was made or whether, instead, they heard about it second-, third-, or fourth-hand. For all these reasons, the Complaint fails to allege a legally sufficient basis for plaintiff's Section 14(a) claim.

---

[2] This motion to dismiss is filed on behalf of all defendants except Riley P. Bechtel, who was never properly served in this matter. However, the arguments contained herein are equally applicable to Mr. Bechtel.

2

Even if plaintiff had alleged with due particularity the making of this supposed "offer," moreover, its omission from the Proxy Statement was immaterial as a matter of law to shareholders who were being called upon not to supervise the negotiations, but rather to approve or reject the Merger terms ultimately agreed upon and approved by both Banks' Boards of Directors. In the absence of any *material* omission from the Proxy Statement, plaintiff's Section 14(a) claim must be dismissed.

Third, because plaintiff fails to allege adequately a predicate underlying violation of Section 14(a), plaintiff's Section 20(a) claim cannot stand.

## BACKGROUND

JPMC is a global provider of financial services relating to investment banking, treasury and securities matters, investment management, private banking, and other financial and banking functions. (Compl. ¶ 18). In November 2003, JPMC CEO and Chairman William Harrison began discussing the possibility of a merger with James Dimon, then the CEO and Chairman of Bank One, a financial and multi-bank holding company. (Id. ¶¶ 25, 28). On January 14, 2004, the Boards of Directors of both JPMC and Bank One each unanimously approved a stock-for-stock merger in which 1.32 shares of JPMC common stock would be issued to Bank One shareholders for each share of Bank One common stock. (Id. ¶¶ 39, 40).

On April 19, 2004, JPMC and Bank One issued their Proxy Statement (attached as Exhibit A hereto).[3] The Proxy Statement contains a notice of the annual stockholders

---

[3] The Court can consider the Proxy Statement without converting the instant motion to a motion for summary judgment because documents referred to in the Complaint are deemed incorporated into the Complaint. See Pokuta v. Trans World Airlines, Inc., 191 F.3d 834, 835 (7th Cir. 1999) (proper to consider documents referred to or incorporated by reference into plaintiff's complaint). Moreover, in considering defendants' motion to dismiss, the Court should consider the plain language of the Proxy Statement rather than plaintiff's mischaracterization thereof. See, e.g., Sedighim v. Donaldson, Lufkin & Jenrette, Inc., 167 F. Supp. 2d 639 (S.D.N.Y. 2001) ("If . . . allegations of securities fraud conflict with

3

meeting, which entitled JPMC "[c]ommon stockholders of record at the close of business on April 2, 2004" to vote. (Ex. A). The Proxy Statement described the specific terms of the Merger in considerable detail and informed JPMC stockholders that its Board had approved the Merger on such terms because it "believe[d] that the merger will provide a number of significant strategic opportunities and benefits," including "enhanced positions in retail financial services," a "more balanced business mix and greater geographic diversification," "enhanced opportunities for wholesale and other financial services businesses," and significant "expected financial synergies." (Id. at 34–35). The Proxy Statement further informed JPMC shareholders that the Board considered corporate governance and succession issues, "which the JPMC Board considered to be of significant importance with respect to CEO succession, continuity of senior management and effective and timely integration of the two companies' operations." (Id. at 41).

The JPMC Board agreed to an exchange rate that represented a premium to Bank One shareholders of 8% based on average closing prices of the two stocks for the month preceding announcement of the Merger, and of 14% based on the stock prices on the day of announcement. (Id. at 36; see also Compl. ¶ 33). (In the days immediately preceding the announcement, the price of JPMC stock rose relative to that of Bank One stock, thereby nominally increasing the premium). (See Ex. A at 36).

The agreement to merge was widely reported in the press when it was announced on January 14, 2004. (See, e.g., Compl. ¶¶ 27, 37, 49, 52, 53, 54). Suit was immediately filed against the Bank One Directors charging them with having sold Bank One too cheaply. See Shaper, et. al. v. Bryan, et. al., No. 04-1175 (Cook Cty. Ill. Ch.) (filed Jan. 21, 2004). The Proxy

---

the plain language of the publicly filed disclosure documents, the disclosure documents control, and the court need not accept the allegations as true.").

4

Statement was mailed to shareholders on April 19, 2004. No shareholder challenged the Proxy Statement as being inadequate or misleading in any way, and on May 25, 2004, the JPMC shareholders approved the Merger at a Special Meeting, with 99.18% of the votes cast in favor. (JPMC Form 8-K, filed May 25, 2004 (attached hereto as Exhibit B)[4]). On June 27, 2004, the *New York Times* published the article that forms the sole basis of plaintiff's claims. Almost immediately thereafter, a shareholder suit based upon the *New York Times* article was filed in Delaware Chancery Court,[5] but no effort was made to enjoin the Merger, which became effective on July 1, 2004 (Compl. ¶ 33). This action was not brought until months later, when there was no longer any possibility of corrective disclosure.

## ARGUMENT

I. **THE PUTATIVE CLASS LACKS STANDING TO BRING A CLAIM UNDER SECTION 14(a).**

It is well established that a private cause of action under Section 14(a) and Rule 14a-9 belongs to shareholders who were entitled to vote on the transaction proposed in the Proxy Statement. See In re AOL Time Warner, Inc. Sec. & ERISA Litig., 2004 U.S. Dist. LEXIS 7917, *125 (S.D.N.Y. May 5, 2004) ("Section 14(a)'s emphasis on the Proxy Statement solicitation process indicates that the statute was designed to protect only those shareholders with voting rights"); see also United Paperworkers Int'l Union v. International Paper Co., 985 F.2d 1190, 1197-98 (2d Cir. 1993). Conversely, plaintiffs who were not entitled to vote on those transactions lack standing to bring a claim under Section 14(a). See, e.g., 7547 Corp. v. Parker

---

[4] A court may take judicial notice of matters of public record when considering a motion to dismiss. See, e.g., Anderson v. Simon, 217 F.3d 472, 474-475 (7th Cir. 2000); Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994).

[5] In the Delaware action, a JPMC shareholder claims, inter alia, that the Proxy Statement was materially misleading in violation of Delaware law, based on the alleged omission of the "offer" reported in the *New York Times* article. A motion to dismiss that action has been sub judice since January 13, 2005.

5

& Parsley Dev. Partners, 38 F.3d 211, 229-230 (4th Cir. 1994) (finding that "it goes too far to allow persons not even entitled to vote to assert a claim under § 14(a)"); In re AOL Time Warner, 2004 U.S. Dist. LEXIS 7917 at *126; Shields v. Erickson, 710 F. Supp. 686, 693 (N.D. Ill. 1989); Murray v. Hospital Corp. of Am., 682 F. Supp. 343, 348 (M.D. Tenn. 1988); Werfel v. Kramarsky, 61 F.R.D. 674, 677-678 (S.D.N.Y. 1974).

The Proxy Statement states that only "common stockholders of record at the close of business on April 2, 2004 may vote [for or against approval of the Merger] at the meeting." (Ex. A at Notice of Annual Meeting; see also id. at 27). The putative class, however, is defined as all persons

> who held shares of the common stock of J.P. Morgan Chase, either on April 2, 2004 (the record date for voting at the May 25, 2004 shareholder meeting), or at any time from April 19, 2004 (the date of the proxy statement associated with such meeting (the "Proxy Statement")) through July 1, 2004, (the date on which the Company consummated a merger with Bank One Corporation ("Bank One")). . . .

(Compl. at ¶ 1; see also id. at ¶¶ 11, 82). When, as here, some members of a putative class are not entitled to vote on a transaction, the action must be dismissed because "the class as a whole would not [have standing] and is improperly defined." Shields, 710 F. Supp. at 693. Because this putative class is defined to include persons who did not hold stock on April 2, 2004, the class as a whole lacks standing to pursue this claim, and the action must accordingly be dismissed.[6]

## II. THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 14(a).

To state a claim under Section 14(a), plaintiff must allege, with particularity, that (1) the Proxy Statement misrepresented or omitted a material fact; (2) each defendant acted at

---

[6] Notably, not even the named plaintiff is alleged to have been entitled to vote on the Proxy Statement. Instead, although the certification accompanying his motion to be appointed lead plaintiff indicates that he purchased JPMC stock in 1994, the Complaint alleges only that he was a "holder of J.P. Morgan Chase common stock at the time the Merger was consummated." (Compl. ¶ 7). As such, the Complaint fails properly to allege that the plaintiff has standing individually.

6