UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMUEL I. HYLAND and STEPHANIE SPEAKMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM B. HARRISON, JR., HANS W. BECHERER, RILEY P. BECHTEL, FRANK A. BENNACK, JR., JOHN H. BIGGS, LAWRENCE A. BOSSIDY, M. ANTHONY BURNS, LAURENCE FULLER, ELLEN V. FUTTER, WILLIAM H. GRAY, III, HELENE L. KAPLAN, LEE R. RAYMOND, JOHN R. STAFFORD, and J.P. MORGAN CHASE & CO., and JAMES DIMON,<br><br>Defendants.<br><br>DR. STEPHEN BLAU, Individually and On Behalf of All Others Similarly Situated,<br><br>Applicants-In-Intervention | Case No. 1:05-cv-162 (JJF)<br><br>CLASS ACTION |

**MOVANT DR. STEPHEN BLAU'S REPLY BRIEF
IN FURTHER SUPPORT OF HIS MOTION TO INTERVENE IN
ORDER TO FURTHER MOVE THAT THIS ACTION BE STAYED**

Dated: September 19, 2005

CHIMICLES & TIKELLIS LLP

Pamela S. Tikellis (#2172)
Robert Davis (#4536)
One Rodney Square
P.O. Box 1035
Wilmington, Delaware 19899
(302) 656-2500

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gregory M. Nespole (of the New York bar)
Adam J. Levitt (of the Illinois bar)

\414508.v3

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................... 3

I.   Dr. Blau's Motion for Intervention Should be Granted in Its Entirety ................................. 3

    a.   Dr. Blau's Motion for Intervention was Timely .............................................................. 3

    b.   Dr. Blau is Entitled to Intervene Under Rule 24(a)(2) and Rule 24(b): .......................... 5

        i.   Dr. Blau is Entitled to Intervene as of Right ............................................................. 5

        ii.   Dr. Blau is Entitled to Permissive Intervention ........................................................ 8

        iii.   Dr. Blau's Motion for Intervention Complies with Rule 25(c) .............................. 10

II.   Dr. Blau's Motion to Stay this Proceeding Should Be Granted ........................................ 10

CONCLUSION ...................................................................................................................... 14

## TABLE OF AUTHORITIES

**CASES**                                                                              **PAGE(S)**

*Bankers Trust Co. v. Bethlehem Steel Co.*,
    636 F.2d 37 (3d Cir. 1980) .................................................................................11n

*Colorado River Water Conservation District v. United States*,
    424 U.S. 800 (1976) ............................................................................................11n

*Coopersmith v. Lehman Brothers, Inc.*,
    344 F. Supp. 2d 783 (D. Mass. 2004) .................................................................12

*Delaware Valley Citizens' Counsel for Clean Air v. Pennsylvania*,
    674 F.2d 970 (3d Cir. 1982) .............................................................................3, 4

*In re Fine Paper Anti-Trust Litigation*,
    695 F.2d 494 (3d Cir. 1982) ..................................................................................4

*Groves v. Insurance Company of North America*,
    433 F. Supp. 877 (E.D. Pa. 1977) .........................................................................8

*Harris v. Pernsley*,
    820 F.2d 592 (3d Cir.),
    *cert. denied*, 484 U.S. 947 (1987) ........................................................................6

*Kamerman v. Steinberg*,
    681 F. Supp. 206 (S.D.N.Y. 1988) .....................................................................10

*Mountain Top Condominium Association v. Dave Stabbert Master Builder, Inc.*,
    72 F.3d 361 (3d Cir. 1995) ................................................................................4, 5

*National Wildlife Federation v. Gorsuch*,
    744 F.2d 963 (3d Cir. 1984) ..................................................................................4

*Steiner v. Frankino*,
    1998 U.S. Dist. LEXIS 21804 (N.D. Ohio July 16, 1998) .................................13

*Switzenbaum v. Orbital Sciences, Corp.*,
    187 F.R.D. 246 (E.D. Va. 1999) ........................................................................13n

*Trbovich v. United Mine Workers of America*,
    404 U.S. 528 (1972) ..............................................................................................6

*Tuff Torq Corp. v. Hydro-Gear Limited Partnership*,
    882 F. Supp. 359 (D. Del. 1994) .......................................................................11n

*University of Maryland at Baltimore v. Peat, Marwick, Main & Co.*,
    996 F.2d 1534 (3d Cir. 1993) ............................................................................11n

## STATUTES AND RULES

Exchange Act
   Section 21D(a)(3)(B)(i) .................................................................................... 11

Fed. R. Civ. P. 24 ............................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 (PSLRA)
   15 U.S.C. §77 ............................................................................................ *passim*

Securities Act
   Section 27(a)(3)(b)(i) ...................................................................................... 11

## OTHER AUTHORITIES

Moore's Federal Practice §24.03[4][a] ................................................................... 6, 7

Moore's Federal Practice §24.03[5][b][i] ................................................................... 5

## INTRODUCTION

Dr. Blau, as court-appointed lead plaintiff on behalf of a proposed class consisting of thousands of shareholders, by and through his counsel, has properly sought to intervene in this action pursuant to Rule 24 of the Federal Rules of Civil Procedure to fulfill his statutory mandate to protect the rights of the unnamed class members that Dr. Blau was appointed to represent by Judge William B. Hibbler of the United States District Court for the Northern District of Illinois on January 5, 2005. Indeed, Dr. Blau has a fiduciary obligation to intervene so that he may shield the proposed class from the harm that the plaintiffs here ("Hyland Shareholders") and their attorney, Mr. Joseph N. Gielata, are inflicting in pursuing this action. The Hyland Shareholders are for instance, pursuing as class claims in this litigation, claims that were dismissed by Vice Chancellor Lamb of the Delaware Chancery Court, in part, on the ground that they were not properly class claims, but were claims belonging to J.P. Morgan Chase. Further, Mr. Gielata has engaged in conduct that, even if this suit was properly brought, renders him inadequate to prosecute this case.

Mr. Gielata's actions and omissions in this case and his arguments in opposition to Dr. Blau's motion for intervention are further examples of his inadequacy to prosecute this action, and provide additional support for Dr. Blau's intervention.[1] Mr. Gielata failed to move on behalf

---

[1] The first 11 pages of the Hyland Brief contain irrelevant "arguments" that were previously discredited by Judge Hibbler when presented in the form of an *amicus* brief. In the interest of brevity, Dr. Blau submits the Affidavit of Gregory Mark Nespole, Esq., dated September 19, 2005 (the "Nespole Aff'd."). The Nespole Aff'd annexes as Exhibit 1 a copy of the submission styled "Memorandum of *Amici Curiae* Samuel Hyland and Stephanie Speakman" (sans its voluminous exhibits, which will be provided should the court desire) filed by Mr. Gielata in the Northern District of Illinois. Exhibit 2 is Mr. Gielata's affidavit in support of that memorandum (also sans exhibits). Exhibit 3 is Mr. Gielata's June 16, 2005 Supplemental Affidavit. Exhibit 4 is the Hyland Shareholders' Supplemental Memorandum of *Amici Curiae*. Exhibit 5 is the August 24th Nespole Affidavit, submitted to Judge Hibbler in response to Mr. Gielata's *amici curiae*. Exhibit 6 is the memoranda submitted to Judge Hibbler in response to Mr. Gielata's *amici curiae*. Exhibit 7 is the transcript of the hearing before Judge Hibbler that addressed Mr. Gielata's contentions. (*see* pp.12-13) (during the hearing, as reflected in the transcript, Judge Hibbler, reaffirmed the propriety of the notice published in the first-filed *Blau* action pending before him, that Dr. Blau is a "proper lead plaintiff," and that the Wolf Haldenstein firm is serving as an adequate lead counsel for the class). Exhibit 8 is Judge Hibbler's Order dated August 29, 2005 that states "the Court finds that the parties have sufficiently responded

1

of the Hyland Shareholders for lead plaintiff status in the first-filed Illinois action, as he was required to do under the Private Securities Litigation Reform Act of 1995 ("PSLRA") if they sought that role. Approximately six months later, however, Mr. Gielata filed this lawsuit alleging a mixture of already dismissed claims and claims already being pursued by a duly appointed lead plaintiff elsewhere, in clear contravention of the letter and the spirit of the PSLRA in an attempt to end-run the statute. More importantly, these actions can harm the class whose interest Dr. Blau is bound to protect since adverse rulings on matters in this subsequent and out-of-time action could still have negative effects on the class claims in the Illinois action, despite that action being the appropriate forum for this dispute.

In addition to his blatant disregard for the established strictures of a federal statute, Mr. Gielata also has attempted to adversely interfere with the first-filed Illinois action, while trying to avoid subjecting himself to the jurisdiction of that court, which had already appointed a lead plaintiff and selected lead counsel. In his *amici curiae* memorandum (Exhibit 1 to the Nespole Aff'd), Mr. Gielata made countless spurious and inflammatory accusations regarding the Illinois action and Dr. Blau's well-respected counsel, Wolf Haldenstein Freeman Adler and Herz LLP ("Wolf Haldenstein"). In response, Wolf Haldenstein submitted a brief and the accompanying affidavit of Gregory Mark Nespole dated August 24th, addressing all of Mr. Gielata's "concerns." (Exhibit 5 to the Nespole Aff'd). Judge Hibbler reviewed the papers and determined that Mr. Gielata's accusations were adequately addressed and did not deserve further consideration, both

---

(...continued)

to issues raised by *Amici Curiae* filing and absent some further intervention authorized by the Court this matter shall proceed without further consideration regarding the Hyland case." Exhibit 9 is a copy of Judge Lamb's Opinion and Order dismissing the case filed against J.P. Morgan Chase in the Delaware Chancery Court. Exhibit 10 is a copy of the indictment handed down against Mr. Gielata by the Grand Jury of New Castle County. Exhibit 11 is a copy of the complaint filed by Mr. Gielata, sans exhibits, alleging *inter alia* that his civil rights were violated by the State of Delaware.

\414508.v3

at a hearing and in a subsequent order. (Exhibits 7 and 8 to the Nespole Aff'd). Despite Judge Hibbler's unequivocal ruling, and in further testament to his inadequacy, Mr. Gielata repeats many of those unfounded remarks and charges in his pleadings to this Court. It seems he wants extra swings at the piñata.

For all of the above reasons and those below, this Court should afford Mr. Blau an opportunity to intervene in this case to protect the thousands of shareholders that he represents from any additional and likely irreparable harm that will certainly befall them should Mr. Gielata be permitted to continue to prosecute this action. Furthermore, this Court should stay this action so that the proxy claim can be prosecuted in accordance with the PSLRA and in the proper venue where it was first brought.

## ARGUMENT

### I. Dr. Blau's Motion for Intervention Should be Granted in Its Entirety

Dr. Blau's motion for intervention on behalf of himself and the class he represents should be granted because he properly moved under Rule of 24(a) and (b), and his motion was made in a timely fashion.

#### a. Dr. Blau's Motion for Intervention was Timely

The Hyland Shareholders contend that Dr. Blau's motion for intervention is untimely. (Hyland Br., at 12 *et seq.*). After correctly stating the Third Circuit's three factors weighed to determine timeliness – (1) stage of proceeding; (2) prejudice the delay might cause the parties; and (3) reason for the delay – the Hyland Shareholders then cite inapposite authority in support of their assertion that Dr. Blau failed to satisfy this standard. (Hyland Br., at 12)(citing *Commonwealth of Pennsylvania v. Rizzo*, 530 F.2d 501, 506 (3d Cir. 1976).

First, the Hyland Shareholders cite *Delaware Valley Citizens' Counsel for Clean Air v. Pennsylvania*, 674 F.2d 970, 974 (3d Cir. 1982) for the purported proposition that Dr. Blau's

3

\414508.v3

motion is untimely because it was made after the parties fully briefed a motion to dismiss (but prior to any motion to dismiss being decided). (Hyland Br., at 12). *Delaware Valley* addresses a totally different situation and simply does not support that contention. There, a group of state senators and state representatives attempted to intervene in a case nearly four years after the action was commenced and over twenty months after entry of a consent decree. The Hyland Shareholders' additional authority is entirely inapposite. In *In re Fine Paper Anti-Trust Litig.*, 695 F.2d 494 (3d Cir. 1982), the motion for intervention was not made until after a settlement was reached and the court entered a judgment. *Id.* at 500. Likewise, in *National Wildlife Fed'n v. Gorsuch*, 744 F.2d 963 (3d Cir. 1984), the intervention motion was deemed untimely because it was made after the court already had entered consent judgment, thereby terminating the litigation.

Not a single dispositive motion has been decided in the case at bar, let alone a consent decree or judgment that effectively ends the case. In *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361 (3d Cir. 1995), in reversing a denial of a motion to intervene made nearly four years after the inception of the case, and after some written discovery and settlement negotiations had occurred, the court made clear that the operative inquiry is "what proceedings of substance on the merits have occurred?" The issue is not, as the Hyland Shareholders urge, the mere passage of time. *Id.* at 369-70. Here, this action is in its earliest stages and there has been no ruling on the merits to date. Therefore, the first factor of the Third Circuit's test actually weighs in favor of Dr. Blau's intervention, not against it.

Second, the Hyland Shareholders argue that Dr. Blau's intervention is untimely because prejudice would inure as "Movant seeks to oust the Delaware Plaintiffs." (Hyland Br., at 12-13). Even if that assertion were true, any resulting prejudice "would not be attributable to any time delay." *Mountain Top Condo. Ass'n*, 72 F.3d at 370 (holding the fact that the proposed

4

\414508.v3

intervention would "deep six" any possible settlement was irrelevant as to the timeliness issue). Furthermore, as stated below, Dr. Blau's intervention will not cause prejudice of any kind; indeed the opposite is true. Nor would such a result be cognizable as prejudice since it would result from Dr. Blau's prior appointment to the position Mr. Gielata seeks to aggrandize to the Hyland Shareholders improperly under the PSLRA.

Finally, the Hyland Shareholders argue that Dr. Blau's motion for intervention is untimely because he has offered no reason for the purported delay. (Hyland Br., at 13). This is nonsensical. Dr. Blau's intervention is sought not to delay the class's claims against defendants, but to protect his litigation strategy and court appointed authority to pursue the class claims against these defendants in the Illinois action. He has not delayed. Indeed, he moved within a reasonable time period after Mr. Gielata made his actions apparent by his filing in Illinois in an attempt to derail that litigation and contemporaneously with Judge Hibbler's ruling rejecting Mr. Gielata's claims that upheld the propriety of Dr. Blau's appointment as lead plaintiff for the class.

### b.    Dr. Blau is Entitled to Intervene Under Rule 24(a)(2) and Rule 24(b):

This Court should grant Dr. Blau's motion to intervene under either Rule 24(a)(2) and/or Rule 24(b). In granting Dr. Blau's motion for intervention the Court will be fulfilling "an important purpose of intervention [that] is to prevent a multiplicity of suits that involve common questions of law or fact." MOORE'S FEDERAL PRACTICE §24.03[5][b][i].

### i.    Dr. Blau is Entitled to Intervene as of Right

The Third Circuit holds that Rule 24(a)(2) entitles an applicant to intervene as of right when: (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the

litigation. *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir.), *cert. denied*, 484 U.S. 947 (1987). Rule 24(a)(2) is broadly construed in favor of intervenors. The advisory committee's note to Rule 24(a)(2) states that: "If an applicant would be substantially affected in a practical sense by the determination made in an action, the applicant should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24(a)(2) advisory committee's note.

The Hyland Shareholders do not contest the fact that Dr. Blau and the class he represents have a sufficient interest in the litigation, or that their interest may be affected by the disposition of this case. They do, however, assert that Dr. Blau is not entitled to intervene under Rule 24(a)(2) because his interests are adequately represented by the existing parties in this case. (Hyland Br., at 14). While the proposed intervenor bears the burden of showing that the existing parties may not adequately represent their interests, the Supreme Court has held that this burden is minimal. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Id.* "Any doubt concerning adequacy of representation should be resolved in favor of the proposed intervenor." MOORE'S FEDERAL PRACTICE §23.03[4][a] (citing *Federal Sav.& Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993). Here, Dr. Blau, under the PSLRA lead plaintiff rules, clearly has the right and power to prosecute the proxy claim given that the Hyland Shareholders did not seek to contest for lead plaintiff when that claim was first brought before Judge Hibbler, who has ruled that proper notice was given by Dr. Blau and has affirmed his ruling after being fully informed of the Highland Shareholders' position. (*See* Exhibits 7 and 8 to the Nespole Aff'd). Thus, Dr. Blau not only has an interest here, but an obligation to protect the claims he is the fiduciary over under the PSLRA.

The Hyland Shareholders proffer that "representation can be considered inadequate on any of the following three grounds: '(1) that although the applicant's interests are similar to those

of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the case.'" (Hyland Br., at 14-15)(citing *Brody v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992)). On page 15 of their brief, the Hyland Shareholders contend that "Movant's interests do not diverge from those of the Delaware Plaintiffs," but in Section V of their brief they proceed to delineate all of the "critical differences" between the present action and the Illinois action. (Hyland Br., at 15, 19). Indeed, on pages 20-23, the Hyland Shareholders present the Court with a table that "illustrates some of the critical differences between the Delaware Action (DE) and the Illinois Action (IL)," and they are quick to point out that "the table does not purport to be an exhaustive list of differences between the actions." *Id.* at 20-23. Although these two opposite factual contentions of the Hyland Shareholders are irreconcilable and render the arguments incoherent, in an attempt to have it both ways the Hyland Shareholders have defeated any argument that they can sufficiently represent Dr. Blau and the class he represents. Indeed, their nearly schizophrenic presentation of conflicting facts highlights that Dr. Blau has approved a particular and different litigation strategy. Under the PSLRA, as the rightfully appointed lead plaintiff, he is obligated – through his counsel – to prosecute those claims that are viable and the absolute right and duty to forego other claims he perceives as untenable. Dr. Blau and his counsel have diligently exercised this responsibility. (*See* Exhibit 5 to the Nespole Aff'd.) The Hyland Shareholders clearly threaten that strategy by proceeding in a very different and unauthorized way.

Assuming *arguendo* that Dr. Blau and the putative class' interests are not sufficiently divergent from the Delaware parties' interests, the Court should nevertheless find that intervention as of right is warranted because (despite claims to the contrary) Mr. Gielata and the Hyland Shareholders are not diligently prosecuting the case. Mr. Gielata proclaims that "[t]he

7

\414508.v3

Delaware Plaintiffs and their counsel have delivered excellence, and the putative class will benefit." (Hyland Br., at 16). The fact that Mr. Gielata has been furiously filing papers with courts across the country and has asserted as many claims as he could think of in his complaint (potentially meritorious and previously dismissed alike), does not prove his diligence or demonstrate "excellence." As stated above, Mr. Gielata filed these claims six months too late, in the wrong forum, and in flagrant disregard of the PSLRA. In addition, Mr. Gielata's cavalier approach – as demonstrated by his assertion that if Dr. Blau and other members of the class are dissatisfied they are "free to opt out" – further demonstrates his inability to diligently prosecute the case. (Hyland Br., at 15).

For all of the above reasons, Dr. Blau's motion to intervene as of right under Rule 24(a)(2) should be granted.

### ii. Dr. Blau is Entitled to Permissive Intervention

Even if the Court agrees with the Hyland Shareholders' contention that Dr. Blau has not met his burden to intervene as of right under Rule 24(a)(2), intervention is nonetheless appropriate under the less rigorous standard of Rule 24(b). The Hyland Shareholders fail to present any persuasive arguments why Dr. Blau may not permissively intervene in this case.

Rule 24(b) provides for permissive intervention when, as here: (1) the application is timely; (2) the proposed intervener and the existing parties present common questions of law or fact; and (3) intervention will neither unduly delay or prejudice the rights of the original plaintiffs or defendants. Rule 24(b) permits permissive intervention regardless of whether the existing parties can adequately protect the proposed intervenors' interest. *Groves v. Insurance Co. of N. Am.*, 433 F. Supp. 877, 889 (E.D. Pa. 1977) (permissive intervention under Rule 24(b) does not require a showing of inadequacy of representation).

\414508.v3

The Hyland Shareholders argue that Dr. Blau should not be allowed to permissively intervene under Rule 24(b) because "intervention will prejudice the Delaware Plaintiffs and unduly delay the prosecution of the Delaware Action." (Hyland Br., at 18). The Hyland Shareholders, however, will suffer greater prejudice if Dr. Blau's intervention is not granted. Dr. Blau is lead plaintiff of the proxy claim in the first-filed Illinois action, and he is under a fiduciary obligation to protect the class. Dr. Blau retained one of the most experienced and well-respected law firms in the area of complex litigation, who ensured that the action was properly filed in an appropriate forum and in strict compliance with the PSLRA, as Judge Hibbler has affirmed. Unfortunately for the Hyland Shareholders, the same cannot be said of their chosen counsel. Mr. Gielata is a solo practitioner with only three years experience who is currently under indictment for a felony;[2] has attempted to influence the outcome of the Illinois action adversely to the class;[3] has filed previously dismissed claims;[4] has misled this court regarding the scope and status of that action;[5] and is also suing the state of Delaware for, *inter alia*, allegedly violating his civil rights in connection with actions sought by the state bar following his indictment.[6] Although, Mr. Gielata is undeniably zealous, his inexperience and disrespect for the rule of law, as well as his fellow officers of the court, places the class in danger of a prejudice far greater than Dr. Blau's well reasoned and prudent decision not to file claims previously dismissed by the Chancery Court.

---

[2] Exhibit 10 to the Nespole Aff'd.

[3] Exhibits 1-4 to the Nespole Aff'd.

[4] Exhibit 9 to the Nespole Aff'd.

[5] The fact that, by his own admission, the Delaware lead plaintiff papers "do[] not refer to the Illinois action at all," (Hyland Br., at 25), demonstrates that he impermissibly failed to inform the court of the first-filed action as he is required to do under the PSLRA.

[6] Exhibit 11 to the Nespole Aff'd.

As demonstrated above, Dr. Blau more than satisfies the base criteria to permissively intervene on behalf of the class he represents under Rule 24(b).

### iii. Dr. Blau's Motion for Intervention Complies with Rule 25(c)

The Hyland Shareholders contend that Dr. Blau's motion for intervention on behalf of the putative class lacks a proper purpose, and thus, fails to set forth a claim or defense as required by Rule 24(c). (Hyland Br., at 16-17). This contention, however, as noted above, misconstrues Dr. Blau's motion for intervention. Unlike the proposed intervenor in *Kamerman v. Steinberg*, 681 F. Supp. 206 (S.D.N.Y. 1988), Dr. Blau moves to intervene as a plaintiff on behalf of the class that he represents to protect his ability to pursue claims against these defendants that he is actively pursuing in the Northern District of Illinois where he has duly been appointed lead plaintiff. His seeking of a stay here is not to delay the claims, but to protect them from prejudice, protect the jurisdiction of the Northern District of Illinois over the proxy claims, and obtain recovery for the class. The Hyland Shareholders cannot possibly claim otherwise this side of the looking glass. Dr. Blau's goal is not "to delay prosecution of the federal action," but to expedite the prosecution of the federal action in the proper forum and in compliance with the PSLRA. That Dr. Blau is seeking a stay of this action in order to achieve the goal of efficient and compliant prosecution of the Illinois action does not render his intervention in contravention of Rule 24(c).

## II. Dr. Blau's Motion to Stay this Proceeding Should Be Granted

This action should be stayed because it was brought at an impermissible time and in clear contravention to the strict procedures provided for in the PSLRA.

The Hyland Shareholders suggest that a stay should not be granted because it would inure prejudice to them and that Dr. Blau has failed to "make out a clear case of inequity or hardship" if a stay is not granted. (Hyland Br., at 19). In an effort to persuade the Court that a stay should

not be granted, the Hyland plaintiffs cite pre-PSLRA authority that does not provide any insight to the issues at bar.[7] This is another example of their miscomprehension (or disregard of the law). Again, a stay of this action in favor of the Illinois action is appropriate because under the PSLRA this action should not have been brought in the first place.

Section 27(a)(3)(b)(i) of the Securities Act and Section 21D(a)(3)(B)(i) of the Exchange Act state that not later than 60 days after notice of the first-filed action is published any member of the proposed class may move to be named lead plaintiff, regardless of whether they have filed a complaint in the action.

The Hyland Shareholders do not deny that they failed to move to be named lead plaintiff in Illinois within the 60-day period. Rather, they urge this Court to interpret the PSLRA to allow an untimely shareholder to bring a parallel suit in another district, and move the court to appoint it lead plaintiff after the 60-day statutory period has elapsed. (Hyland Br., at 25-26) This is clearly wrong. The PSLRA provides that "if more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff or plaintiffs in the first-filed action shall be required to cause notice to be published." 15 U.S.C. §78u-4(a)(3)(B)(i). "Where more than one such action is filed, the 60 days begin to run from the date the initial notice is published in the first suit." *Coopersmith v. Lehman Bros., Inc.*, 344 F. Supp. 2d 783, 789 (D. Mass. 2004)(citing *In re Telxon Corp. Sec. Litig.*, 67 F. Supp 2d 803, 818 (N.D. Ohio 1999).

---

[7] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); *Bankers Trust Co. v. Bethlehem Steel Co.*, 636 F.2d 37, 40 (3d Cir. 1980); *University of Md at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534 (3d Cir. 1993); and *Tuff Torq Corp. v. Hydro-Gear Ltd. P'ship*, 882 F. Supp. 359 (D. Del. 1994) are cited, but all of these cases are pre-PSLRA and none deal with the situation where a person desperate to become lead plaintiff in a large class action, but who failed to file for appointment as such within the statutory 60-day window, then filed a duplicative lawsuit in another district in an attempt to circumvent the PSLRA.

\414508.v3

The Hyland Shareholders rely upon *Coopersmith* to support their argument. That case, even by the greatest stretch of the imagination, however, cannot be read to support such a rule. *Coopersmith* does not deal with a situation in which a court permitted a plaintiff to come onto the scene after the 60-day lead plaintiff period had passed and file its own lead plaintiff motion. Rather, in *Coopersmith*, the court permitted a late lead plaintiff motion from a plaintiff in a consolidated case because no eligible lead plaintiff had previously moved, and thus, none could have been appointed. *See Coopersmith*, 344 F. Supp. 2d at 783.

Under the PSLRA, Mr. Gielata and the Hyland Shareholders had one choice: to move for appointment as lead plaintiff in the first-filed Illinois Action within the 60-day statutory period or not. They chose not. This lawsuit was subsequently filed in direct violation the strictures of the PSLRA. It is irrelevant that "[e]ven if the Illinois Action had been properly noticed, the Delaware Plaintiffs, with just under 20,000 shares, would not likely have moved for lead plaintiff status in light of AGF's purported stake of 25,000 shares." (Hyland Br., at 26). First, Judge Hibbler has reviewed the notice and found it proper. Second, Mr. Gielata's reasons for not acting do not change the fact that he did not act in a timely fashion. Mr. Gielata's demonstrably untrue assertion that AGF's involvement turned out to be a "sham" is also irrelevant and untrue and it has been rejected, in effect by Judge Hibbler after his being fully apprised of the charges raised by Mr. Gielata. (*See* Exhibit 5 to the Nespole Aff'd.) Mr. Gielata has already brought all of these purported grievances before the court in Illinois, and thus, is well aware that Judge Hibbler has already ruled that his clients' "larger financial stake" is irrelevant. Judge Hibbler also confirmed that Dr. Blau's appointment as lead plaintiff was proper and the notice in the Illinois action was adequate under the PSLRA. (Exhibits 7 and 8). In repeating those same false allegations here, Mr. Gielata is asking this Court to overrule another federal court. This simply must not be countenanced.

12

\414508.v3

Finally, the Hyland Shareholders assert that Dr. Blau should have moved to be appointed lead plaintiff in this later-filed action. (Hyland Br., at 14). This is absurd. Dr. Blau has already been appointed lead plaintiff in the first-filed case pursuant to the PSLRA, six months before this action had even been commenced. Furthermore, under the PSLRA and case law, a later-filed suit alleging similar claims, even if it gives a new notice, does not trigger a new 60-day lead plaintiff period. *Steiner v. Frankino*, C.A. No. 98-0264, 1998 U.S. Dist. LEXIS 21804, at *10-16 (N.D. Ohio July 16, 1998); *see also* 15 U.S.C. § 77z-1(a)(3)(A)(ii); and 15 U.S.C. § 78u-4(a)(3)(A)(ii).[8]

---

[8] In *Steiner*, the Court also denied a motion to add additional class members to the lead plaintiffs group because the motion was filed after the 60-day time period had run. *Id.*, 1998 U.S. Dist. LEXIS 21804, at *10-16; *See also*, *Switzenbaum v. Orbital Sciences, Corp.*, 187 F.R.D. 246 (E.D. Va. 1999)[1999 Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 90,510 (attempt to supplement proposed lead plaintiff group with additional class member was improper where class member did not file a complaint of move to be named lead plaintiff within 60-day time period).

## CONCLUSION

For all of the above reasons, Dr. Blau, on behalf the putative class that he represents, respectfully requests that his motion for intervention be granted and that this action be stayed.

Dated: September 19, 2005                                CHIMICLES & TIKELLIS LLP

                                                         _____
                                                         Pamela S. Tikellis (#2172)
                                                         Robert Davis (#4536)
                                                         One Rodney Square
                                                         P.O. Box 1035
                                                         Wilmington, Delaware 19899
                                                         (302) 656-2500

OF COUNSEL:

Adam J. Levitt, Esquire
Wolf Haldenstein Adler Freeman
& Herz LLC
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
(312) 984-0000

Gregory M. Nespole, Esquire
Wolf Haldenstein Adler Freemen
& Herz LLP
270 Madison Avenue
New York, New York 10016
(212) 545-4600