# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| SAMUEL I. HYLAND and STEPHANIE SPEAKMAN, individually and on behalf of all others similarly situated, | Case No. **1:05-cv-162 (JJF)** |
| Plaintiffs, | **CLASS ACTION** |
| v. | |
| WILLIAM B. HARRISON, JR., HANS W. BECHERER, RILEY P. BECHTEL, FRANK A. BENNACK, JR., JOHN H. BIGGS, LAWRENCE A. BOSSIDY, M. ANTHONY BURNS, ELLEN V. FUTTER, WILLIAM H. GRAY, III, HELENE L. KAPLAN, LEE R. RAYMOND, JOHN R. STAFFORD, JPMORGAN CHASE & CO., and JAMES DIMON, | |
| Defendants. | |

**OPENING BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION TO ENJOIN FURTHER
PROSECUTION OF _BLAU V. HARRISON, ET AL._**

Dated: September 22, 2005

Joseph N. Gielata (DSB # 4338)
Attorney at Law
501 Silverside Road, Suite 90
Wilmington, DE 19809
(302) 798-1096

***Lead Counsel for Plaintiffs
and the Putative Class***

# TABLE OF CONTENTS

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

      The Competing Actions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

      The Northern District Of Illinois Invites This
      Court To Determine Which Action Should Proceed . . . . . . . . . . . . . . . . . . . . . . .5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.     THIS COURT HAS THE INHERENT AUTHORITY TO ENJOIN
       DEFENDANTS AND THE ILLINOIS PLAINTIFF FROM
       PROCEEDING WITH THE ILLINOIS ACTION. . . . . . . . . . . . . . . . . . . . . . . . 6

II.    AN INJUNCTION SHOULD ISSUE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.    Every Relevant Factor Favors Delaware, Not Illinois,
           As The Proper Forum For This Litigation. . . . . . . . . . . . . . . . . . . . . . . . .7

           1.    The Balance Of Conveniences
                Strongly Favors The Delaware Action. . . . . . . . . . . . . . . . . . . . . . 8

           2.    The PSLRA Makes Clear That
                The Delaware Action Has Primacy. . . . . . . . . . . . . . . . . . . . . . . . 15

           3.    Only The Delaware Action Can Resolve All Claims. . . . . . . . . . 17

           4.    The Illinois Action's Irregularities Also
                 Weigh In Favor Of The Delaware Action. . . . . . . . . . . . . . . . . . 21

      B.    The Delaware Plaintiffs Will Suffer Irreparable Harm. . . . . . . . . . . . . . 21

      C.    Neither The Illinois Plaintiff Nor The
           Defendants Will Suffer Any Hardship. . . . . . . . . . . . . . . . . . . . . . . . . . . .22

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

**Cases:**                                                                                                      **Page**

*Bamdad Mechanic Co. v. United Technologies Corp.*,
    109 F.R.D. 128 (D. Del. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 12

*Berkshire Intern. Corp. v. Marquez*,
    69 F.R.D. 583 (E.D. Pa. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Colorado River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Columbia Plaza Corp. v. Security Nat. Bank*,
    525 F.2d 620 (D.C. Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Commonwealth Edison Co. v. Train*,
    71 F.R.D. 391 (N.D. Ill. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6 n.2

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*,
    821 F. Supp. 962 (D. Del. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*CTS Corp. v. Dynamics Corp. of Am.*,
    481 U.S. 69 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re DaimlerChrysler AG Sec. Litig.*,
    216 F.R.D. 291 (D. Del. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12 n.2

*In re DaimlerChrysler AG Sec. Litig.*,
    269 F. Supp. 2d 508 (D. Del. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 n.2

*Drugstore-Direct, Inc. v. The Cartier Division of Richemont North America, Inc.*,
    350 F. Supp. 2d 620 (E.D. Pa. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Equal Employment Opportunity Commission v. University of Pennsylvania*,
    850 F.2d 969 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Examen, Inc. v. VantagePoint Venture Partners 1996*,
    873 A.2d 318 (Del. Ch. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*FMC Corp. v. AMVAC Chemical Corp.*,
    379 F. Supp. 2d 733 (E.D. Pa. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Grand Park Surgical Center, Inc. v. Inland Steel Co.*,
    1996 WL 204322 (N.D. Ill. Apr. 25, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Hill v. Equitable Bank*,
    115 F.R.D. 184 (D. Del. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*In re Horizon/CMS Healthcare Corp. Sec. Litig.*,
    3 F. Supp. 2d 1208 (D.N.M. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
    Consol. C.A. No. 531-N, 2005 WL 1076069 (Del. Ch. Apr. 29, 2005) . . . . . . . .4

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
    92 F. Supp. 943 (D. Del. 1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*,
    189 F.2d 31 (3d Cir. 1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*,
    342 U.S. 180 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*passim*

*Kewanee Oil Co. v. M & T Chemicals, Inc.*,
    315 F. Supp. 652 (D. Del. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*In re Nice Sys. Sec. Litig.*,
    188 F.R.D. 206 (D.N.J. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Optical Recording Corp. v. Capitol-EMI Music, Inc.*,
    803 F. Supp. 971 (D. Del. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*Rayco Mfg. Co. v. Chicopee Mfg. Corp.*,
    148 F. Supp. 588 (S.D.N.Y. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*Reynolds v. Beneficial Nat. Bank*,
    288 F.3d 277 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22 n.9

*S-Fer Intern., Inc. v. Paladion Partners, Ltd.*,
    906 F. Supp. 211 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Solomon v. Continental American Life Insurance Co.*,
    472 F.2d 1043 (3d Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Stauffer Chemical Co. v. FMC Corp.*,
    218 F. Supp. 568 (D. Del. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Tracinda Corp. v. DaimlerChrysler AG*,
    197 F. Supp. 2d 42 (D. Del. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 n.2

*Tracinda Corp. v. DaimlerChrysler AG*,
    197 F. Supp. 2d 86 (D. Del. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 n.2

*Tracinda Corp. v. DaimlerChrysler AG*,
    362 F. Supp. 2d 487 (D. Del. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 n.2

*Tracinda Corp. v. DaimlerChrysler AG*,
    364 F. Supp. 2d 362 (D. Del. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Tranor v. Brown*,
    913 F. Supp. 388 (E.D. Pa. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Tuff Torq Corp. v. Hydro-Gear Ltd. Partnership*,
    882 F. Supp. 359 (D. Del. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Van Gelder v. Taylor*,
    621 F. Supp. 613 (N.D. Ill. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*William Gluckin & Co. v. International Playtex Corp.*,
    407 F.2d 177 (2d Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Rules and Statutes:**

Fed. R. Civ. P. 45(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

15 U.S.C. §§ 77z-1(a)(3)(B), 78u-4(a)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

10 *Del. C.* § 3114(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18 n.8

**Other Authorities:**

Moore's Federal Practice. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Wright, Miller & Cooper, *Federal Practice and Procedure 2d*. . . . . . . . . . . . . . . . . . 9

H.R. Rep. No. 104-369 (1995) reprinted in 1996 U.S.C.C.A.N. 730. . . . . . . . . . . . 15, 16

S. Rep. No. 104-98 (1995) reprinted in 1996 U.S.C.C.A.N. 679. . . . . . . . . . . . . . . . . 15

This brief is respectfully submitted by lead plaintiffs Samuel I. Hyland and Stephanie Speakman (collectively, the "Delaware Plaintiffs") in support of their motion to enjoin further prosecution of *Blau v. Harrison, et al.*, No. 04C 6592 (N.D. Ill.) (the "Illinois Action").

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

The Delaware Plaintiffs have commenced and vigorously prosecuted the instant securities class action in this Court (the "Delaware Action"). While both the Delaware Action and the Illinois Action arise from the same core set of facts, there are critical differences in the respective actions, as discussed below. In both actions, a class has yet to be certified, no discovery has been taken, and motions to dismiss remain pending.

On August 24, 2005, more than five months after the filing of the Delaware Action and three months after the Delaware Plaintiffs notified the parties to the Illinois Action of: (i) the existence of the Delaware Action; (ii) a series of disturbing errors committed by the law firm representing the plaintiff in the Illinois Action (the "Illinois Plaintiff"); and (iii) disabling conflicts of interest which preclude the Illinois Plaintiff's counsel from involvement in the Illinois Action, the Illinois Plaintiff moved this Court to intervene and for a stay of the Delaware Action.[1]

The Northern District of Illinois has expressed skepticism that the Illinois Action was commenced in an appropriate venue. However, in light of the Illinois Plaintiff's decision to appear in the Delaware Action, that Court has expressly deferred to this Court to determine which of the two actions (but not both) should proceed.

---

[1] The Delaware Plaintiffs have filed their opposition to the intervention motion (D.I. 62) and moved to disqualify one law firm representing the Illinois Plaintiff (D.I. 64).

Not a single relevant factor weighs in favor of the primacy of the Illinois Action. Illinois is a wholly inappropriate venue for this litigation and its selection can be attributed only to forum shopping. Moreover, the Illinois Action has been beset by irregularities and is irremediably tainted by misconduct and errors attributable to the Illinois Plaintiff's counsel. The latter's astonishing bad faith (*e.g.*, its exploitation of an unwitting investor and its plagiarized pleadings) undermines any claim of legitimacy. As set forth herein, the conspicuous disadvantages and self-inflicted wounds debilitating the Illinois Action favor only the defendants, who may be tempted to seek a release of the Delaware Plaintiffs' claims through a "reverse auction" settlement of the Illinois Action.

The sole possible basis for priority of the Illinois Action is that it was commenced prior to the Delaware Action. However, the Private Securities Litigation Reform Act ("PSLRA") has definitively ended the "race to the courthouse" in securities class actions and instead vests control of such suits in the plaintiff(s) with the largest financial interest, *not* the litigant who filed first. The Illinois Plaintiff claims a financial stake less than one-sixth of the Delaware Plaintiffs' financial interest. Moreover, the Illinois Action cannot even claim to be "first-filed" because a related class action was commenced over three months previously in Delaware state court.

Permitting the Illinois Action to proceed any further would inevitably lead to conflicting judgments and waste of judicial resources. The Northern District of Illinois has already acknowledged as much and invited this Court to act. Unless the Illinois Plaintiff and the defendants are enjoined from further pursuing the Illinois Action, irreparable harm will result to the Delaware Plaintiffs and the class they seek to represent. An injunction should issue.

## SUMMARY OF THE ARGUMENT

1.    This Court has the inherent authority to enjoin the defendants and the Illinois Plaintiff from prosecuting or proceeding in any other district court, and the Northern District of Illinois has expressly invited this Court to resolve which of the Delaware Action and the Illinois Action should proceed.

2.    Unlike Illinois, Delaware is an appropriate and convenient forum for this litigation. Coupled with the risk that judgments in the Illinois Action may conflict with judgments in the Delaware Action, the inconvenience inherent in the Illinois Action is an appropriate basis for an injunction.

3.    The PSLRA has ended the "race to the courthouse" in federal securities class actions. The Delaware Plaintiffs' far-greater financial stake gives them, and not the Illinois Plaintiff, the right to control this litigation.

4.    The Illinois Action cannot be considered first-filed because the first class action arising from the events at issue in this litigation was filed in Delaware.

5.    The myriad critical shortcomings of the Illinois Action, all attributable to the Illinois Plaintiffs' counsel, further weigh in favor of the primacy of the Delaware Action over the Illinois Action.

6.    The Delaware Plaintiffs will suffer irreparable harm if this Court does not enjoin defendants and the Illinois Plaintiff from proceeding in the Illinois Action.

7.    The Illinois Plaintiff will suffer no hardship if the parties to the Illinois Action are enjoined from proceeding in the Illinois Action.

## STATEMENT OF FACTS

### The Competing Actions

As set forth in greater detail in the Delaware Plaintiffs' opposition to defendants' motion to dismiss (D.I. 52), this action concerns a corporate merger (the "Merger") in 2004 between two banks incorporated in and with operations in Delaware. After certain shocking facts were revealed on June 27, 2004, three shareholder suits were filed in the Delaware Court of the Chancery on June 29 and June 30 (the "Chancery Action"). The suits were thereafter consolidated and a consolidated complaint was filed.

Over three months later, on October 13, 2004, the Illinois Action was quietly commenced in, of all places, Chicago – where the Illinois Plaintiff's counsel has an office. The Illinois Plaintiff himself resides in New York; all publicly-available evidence indicates that the Merger negotiations took place in New York; none of the relevant witnesses are located in or near Chicago; both parties to the Merger are incorporated in Delaware, not Illinois; the post-Merger entity is headquartered in New York, not Chicago. In sum, the Illinois Action has no ties to Illinois.

On March 17, 2005, the Delaware Action was commenced in this district, where both parties to the Merger are incorporated and have operations, where the Delaware Plaintiffs reside, where the Chancery Action was filed, and where witnesses in New York can be summoned to testify at trial.

On April 29, 2005, the Court of Chancery issued an opinion granting a motion to dismiss the Chancery Action. *In re J.P. Morgan Chase & Co. S'holder Litig.*, Consol. C.A. No. 531-N, 2005 WL 1076069 (Del. Ch. Apr. 29, 2005) (Lamb, V.C.). The Court of Chancery noted several significant factual and legal distinctions between the Chancery Action and the Delaware Action. *Id.* at 11-12. The decision is presently on appeal.

**The Northern District Of Illinois Invites This
Court To Determine Which Action Should Proceed**

On August 29, 2005, the Northern District of Illinois held a hearing in which the

Honorable William J. Hibbler commented as follows on the Delaware Action:

> The big issue in this case as far as I'm concerned is the
> matter of the brief that I received regarding this matter from
> counsel who represents the class in the [Delaware Action].
> That has caused me some concern because of certain
> allegations which he has made.
>
> And, obviously, I received notice of the parties in this
> action moving to intervene or stay the matter, the
> [Delaware Action]. **I think we need to resolve that issue
> as to whether or not we proceed here or proceed there
> or these matters are so similarly situated that we need
> to proceed in one forum as opposed to both because
> clearly some order issued by this Court or by that Court
> could affect the litigation in the other arena.**
>
> **There is some indication also in the materials that I've
> reviewed suggesting that the matter should be more
> properly brought in that Court as opposed to this
> Court. …**
>
> [This Court has] some concern about orders entered by this
> Court which might somehow impact orders entered by that
> Court or vice versa.
>
> So I did believe that it was necessary for someone to
> become either -- one lawyer to become present here and
> intervene so I could have that lawyer present and talk what
> the issues really are **or the lawyer here to intervene in
> that action so that we have one forum where we know
> this case is going to go forward in** and we don't have
> these ancillary actions all over the place.
>
> Now that counsel has indicated and I have seen your
> motion to stay the [Delaware Action] in Delaware, **that, at
> least, should bring to fruition a hearing as to which case
> is going to go forward.**

Transcript of August 29, 2005 hearing in the Illinois Action at 2, 10-11 (the "Illinois

Transcript") (attached hereto as Ex. A) (emphasis added).

- 5 -

## ARGUMENT

**I.    THIS COURT HAS THE INHERENT AUTHORITY TO ENJOIN
DEFENDANTS AND THE ILLINOIS PLAINTIFF FROM
PROCEEDING WITH THE ILLINOIS ACTION**

As an initial matter, there is no doubt that this Court has the inherent authority to
grant injunctive relief against an action pending in another jurisdiction to protect its
jurisdiction over a pending action in this district.  All parties to the Illinois Action have
appeared in the Delaware Action.  As this Court has previously stated, "[t]he Court's
authority to enjoin a party within its jurisdiction from prosecuting the same cause of
action in another suit in another court is undisputed."  *Bamdad Mechanic Co. v. United
Technologies Corp.*, 109 F.R.D. 128, 134 (D. Del. 1985) (citing cases).

This Court should exercise that authority here.  In addition, the Northern District
of Illinois has indicated that the Illinois Plaintiff's appearance in this Court "should bring
to fruition a hearing as to which case is going to go forward."  Illinois Transcript at 11
(stating that "the issues will be discussed and decided by" this Court).

**II.   AN INJUNCTION SHOULD ISSUE**

The "whole of the war and all the parties to it" are in this district.  *Kerotest Mfg.
Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952) (quoting *Kerotest Mfg.
Co. v. C-O-Two Fire Equipment Co.*, 189 F.2d 31, 34 (3d Cir. 1951)).  The Illinois
Plaintiff has appeared in this action, but the Delaware Plaintiffs have not appeared in the
Illinois Action,[2] and critical defendants in the Delaware Action were not named or served
in the Illinois Action.  Thus, "only [here] can it be fought to a finish as the litigations are
now cast."  *Id.  Kerotest* presented the mirror image of the instant case:  "[I]f the battle is

---

[2] The Delaware Plaintiffs submitted filings in the Illinois Action *qua amici curiae* but did not wish to
intervene or otherwise formally appear in the Illinois Action for fear that doing so would waive their
objections to venue.  *See Commonwealth Edison Co. v. Train*, 71 F.R.D. 391, 394 (N.D. Ill. 1976).

waged in the Delaware arena there is a strong probability that the Chicago suit nonetheless would have to be proceeded with for [one entity] is not and cannot be made a party to the Delaware litigation." *Id.* In *Kerotest*, the Supreme Court affirmed the Third Circuit's equitable determination that, between parallel federal cases, the case with the larger scope and covering more parties, even if not first-filed, ought to have priority for the sake of "conservation of judicial resources and comprehensive disposition of litigation." *Id.* The fact that critical claims in the Delaware Action were not asserted (and defendants were not named or served) in the Illinois Action necessitates that the Delaware Action must proceed in any event. "Why, under the circumstances, should there be two litigations where one will suffice?" *Id.*

Under the PSLRA, *Kerotest*, and other controlling authority, the defendants and the Illinois Plaintiff should be restrained from proceeding with the Illinois Action because the facts and unique circumstances of this litigation overwhelmingly favor the Delaware Action and, as the Northern District of Illinois has indicated, this Court should determine which of the two actions (but not both) should proceed.

### A.    Every Relevant Factor Favors Delaware, Not Illinois, As The Proper Forum For This Litigation

This forum is clearly more convenient for this litigation. In terms of the objectives of the PSLRA, as well as the scope of the respective actions, the Delaware Action is superior to the Illinois Action. Under other relevant factors, it is clear that the Delaware Action has primacy over the Illinois Action. Accordingly, the facts and circumstances of this litigation overwhelmingly favor the Delaware Action as the only action which should proceed.

1.    **The Balance Of Conveniences**
      **Strongly Favors The Delaware Action**

This district is a convenient forum for this litigation because (1) the plaintiffs are Delaware residents, *see Tuff Torq Corp. v. Hydro-Gear Ltd. Partnership*, 882 F. Supp. 359, 362 (D. Del. 1994) ("deference to plaintiff's choice of forum applies when plaintiff has chosen its 'home turf' as the forum for the lawsuit"), (2) JPMorgan Chase & Co. ("JPMC"), the corporate defendant, is a Delaware corporation, *see Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 821 F. Supp. 962, 965 (D. Del. 1993) (Farnan, J.) (plaintiff demonstrated a "rational and legitimate" reason for filing suit in Delaware where defendant is incorporated in Delaware), (3) Bank One (JPMC's partner in the Merger) is incorporated in Delaware, (4) the Merger agreement provides that Delaware law governs, (5) the first-filed suits against the defendants were commenced in the Delaware Court of Chancery, (6) Delaware law applies to the breach of fiduciary duty claims in the Delaware Action, (7) both JPMC and Bank One conduct substantial business in Delaware, and (8) unlike Illinois, Delaware is close enough to New York to compel the trial testimony of several non-party witnesses in New York, where the alleged misconduct took place and where most witnesses reside.

Conversely, the Northern District of Illinois is not a convenient forum for this litigation in any respect.  First, the Illinois Plaintiff does not reside in Illinois.  *See* Moore's Federal Practice ¶111.13[1][c][iii] ("When the chosen forum is neither the plaintiff's residence nor the place where the operative events occurred, the court is likely to override the plaintiff's choice." (citing *Tranor v. Brown*, 913 F. Supp. 388, 391 (E.D. Pa. 1996))).  Rather, the Illinois Plaintiff resides in New York.[3]  Thus, the decision to file

---

[3] The civil cover sheet in the Illinois Action lists the Illinois Plaintiff as residing in Westchester, New York.

suit in the Northern District of Illinois can be explained only by the fact that the Illinois Plaintiff's law firm has its office in Chicago. Of course, the mere convenience of counsel, without more, cannot justify an otherwise inappropriate choice of venue. *See Solomon v. Continental American Life Insurance Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973) (convenience of counsel not a factor to be considered in determining convenience of a forum). Thus, there appears to be no justification for commencing or maintaining this litigation in the Northern District of Illinois. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) (affirming dismissal of complaint on *forum non conveniens* grounds where neither plaintiff nor witnesses, but only plaintiff's counsel, resided in forum where action was commenced).

Second, unlike the Illinois Action, subpoenas issued in the Delaware Action for New York witnesses can be served from the District of Delaware. *See* Fed. R. Civ. P. 45(b)(2) ("a subpoena may be served…at any place without the district that is within 100 miles of the place of the deposition."). The Delaware Plaintiffs' counsel has determined that JPMC's headquarters in Manhattan are located 94.4 air miles from the Delaware Federal Courthouse.[4] (Declaration of Joseph Gielata ("Decl.") ¶ 3.)

The convenience of the witnesses is "[p]robably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C. § 1404(a)." 15 Wright, Miller & Cooper, *Federal Practice and Procedure 2d* § 3851 at 415 (1986). This factor also informs the balancing of conveniences between parallel actions. Crucial non-party witnesses anticipated at trial include the investment bankers and lawyers who advised JPMC and Bank One in connection with the Merger. The

---

[4] Also, the combined Company's credit card operations are based in Wilmington, just blocks from the Delaware Federal Courthouse. Moreover, one of JPMC's two principal banking subsidiaries, Chase Manhattan Bank USA, National Association, is headquartered in Delaware.

expected testimony from these witnesses, many or all of whom were intimately involved in the negotiations leading to the Merger, will confirm the secret deal at the heart of this case, as well as related details of the negotiations, such as one defendant's rejection of the zero-premium merger offer.

The investigation of the Delaware Plaintiffs' counsel indicates that these witnesses may include, among others: (i) bankers Gary Parr, Tim Dana, and Gary Shedlin of Lazard Frères & Co. LLC for Bank One; (ii) lawyers Edward Herlihy, Craig Wasserman, Adam Chinn, and Lawrence Makow of Wachtell, Lipton, Rosen & Katz for Bank One; (iii) bankers Douglas Braunstein, Richard Herbst, John Chrin, and Fernando Rivas of J.P. Morgan & Co. for JPMC; (iv) lawyers Richard Beattie, Lee Meyerson, Maripat Alpuche, Christopher Lee, Kristin Johnson and Elsa Fraysse of Simpson Thacher & Bartlett LLP for JPMC; and (v) lawyers Rodgin Cohen and Mitchell Eitell with Sullivan & Cromwell LLP for JPMC's board. (Decl. ¶ 2.) The offices of these investment banks and law firms are all located in Manhattan, less than 100 air miles from the Delaware Federal Courthouse (and less than two hours away by Amtrak). (Decl. ¶ 3.)

As each of these anticipated witnesses resides or works within 100 miles of the Delaware Federal Courthouse, their live presence can be compelled judicially to testify at trial in the Delaware Action. *See Hill v. Equitable Bank*, 115 F.R.D. 184, 186 (D. Del. 1987). Thus, from the standpoint of the convenience of the most material witnesses, as well as in the interests of justice generally, Delaware is clearly a better forum than Illinois. *See Stauffer Chemical Co. v. FMC Corp.*, 218 F. Supp. 568 (D. Del. 1963) (holding Delaware to be a superior forum to Wyoming where litigation grew out of negotiations held in New York City which was place of the home offices of parties and a

considerable number of witnesses were in New York area); *Gulf Oil*, *supra*, 330 U.S. at 511 ("Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury, or most litigants.").

Third, it is in the interest of justice to have a Delaware court decide this case because both JPMC and Bank One are Delaware corporations and the Merger agreement provides for Delaware law to govern the contract.[5]  *See Van Gelder v. Taylor*, 621 F. Supp. 613, 620 (N.D. Ill. 1985).  Indeed, "'[n]o principle of corporation law and practice is more firmly established than a State's authority to regulate domestic corporations, including the authority to define the voting rights of shareholders.'"  *Examen, Inc. v. VantagePoint Venture Partners 1996*, 873 A.2d 318, 323 (Del. Ch. 2005) (citing internal affairs doctrine in applying Delaware law to contested stockholder vote concerning a Delaware corporation's merger) (quoting *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 89 (1987)).

Fourth, this Court is ideally suited to overseeing this litigation.  Earlier this year, this Court issued a final decision in a similar case.  *See Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp. 2d 362 (D. Del. 2005).  In that complex securities litigation concerning a corporate merger, it was alleged that a company's CEO defrauded shareholders into accepting an inadequate merger premium by casting a takeover as a merger of equals.  *See id.* at 406.  The litigation involved many of the concepts and

---

[5] The Merger agreement itself provides "8.6. Governing Law. This Agreement shall be governed and construed in accordance with the laws of the State of Delaware (without giving effect to choice of law principles thereof)."  *See also* Proxy/Prospectus at 3 ("Subject to the terms and conditions of the merger agreement, and in accordance with Delaware law, at the completion of the merger Bank One will merge with and into JPMorgan Chase.").

securities claims at issue in the Delaware Action.[6]  Thus, this Court's unique experience

with a similar securities fraud class action will ensure the fair and efficient adjudication

of this litigation, to the benefit of all parties.  In *Grand Park Surgical Center, Inc. v.

Inland Steel Co.*, 1996 WL 204322, at *1 (N.D. Ill. Apr. 25, 1996), the Northern District

of Illinois, on its own motion, ordered transfer to Indiana district court under § 1404(a),

noting that "because Indiana state law applies, a federal district court judge in that state

would be more familiar with the governing law."  This rationale is even more compelling

here, given the Delaware common law claims in the Delaware Action as well as this

Court's recent participation in a case with conceptual parallels to the instant litigation.

    For all the reasons stated above, an injunction is appropriate due to the disparity

of convenience between the two forums—in other words, a motion to transfer the Illinois

Action to Delaware would succeed, but a motion to transfer the Delaware Action to

Illinois would fail.  *See Kewanee Oil Co. v. M & T Chemicals, Inc.*, 315 F. Supp. 652,

655 (D. Del. 1970) (denying motion for stay or transfer and enjoining parallel action in

Illinois in the interest of justice after weighing convenience of parties and witnesses);

*William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177, 180 (2d Cir. 1969)

(affirming injunction of first-filed action in favor of second-filed action based on

convenience of forum); *Berkshire Intern. Corp. v. Marquez*, 69 F.R.D. 583, 588 (E.D. Pa.

1976) (enjoining parallel federal action where "the facts of this case are not appropriate

for a change of venue under § 1404(a)"); *Bamdad*, *supra*, 109 F.R.D. at 134 (enjoining

---

[6] Among other rulings, this Court adjudicated numerous complex motions, including multiple motions to dismiss and summary judgment motions, certified a class of investors, oversaw a settlement for the class, administered a bench trial on an individual lawsuit and issued a final decision on April 7, 2005.  *See, e.g., Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 86 (D. Del. 2002) (motion to dismiss); *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42 (D. Del. 2002) (same); *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291 (D. Del. 2003) (certifying class); *In re DaimlerChrysler AG Sec. Litig.*, 269 F. Supp. 2d 508 (D. Del. 2003) (denying defendants' motions for summary judgment); *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487 (D. Del. 2005) (ruling on post-trial evidentiary objections)

parallel federal action in Connecticut in favor of action in Delaware); *S-Fer Intern., Inc.*
*v. Paladion Partners, Ltd.*, 906 F. Supp. 211 (S.D.N.Y. 1995) (enjoining parallel federal
action based on convenience of witnesses); *Columbia Plaza Corp. v. Security Nat. Bank*,
525 F.2d 620, 628 (D.C. Cir. 1975) (enjoining parallel federal action after rejecting first-
filed rule, holding that injunction analysis "must be found in the significance of the
equitable factors").

  The Illinois Action cannot even claim to be first-filed. That distinction belongs to
the Chancery Action, filed over three months before the Illinois Action. Although the
Illinois Action was filed prior to the Delaware Action, that fact offers no basis for priority
under the circumstances. In *Kerotest*, *supra*, the Supreme Court joined the Third Circuit
in reversing a judgment of the district court that had been based on rigid application of
the first-filed rule. *See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 92 F. Supp. 943,
947 (D. Del. 1950). Though the Court declined to favor any particular approach to the
problems raised by overlapping suits, it did observe that the case law did not reflect "any
rigid rule" of priority like that the district court had applied. 342 U.S. at 184 n.3.

  The Third Circuit reaffirmed this flexible, undogmatic approach in *Equal
Employment Opportunity Commission v. University of Pennsylvania*, 850 F.2d 969 (3d
Cir. 1988) ("*EEOC*"). In *EEOC*, the Court observed that the judicial authority to restrain
later-filed actions in favor of a first-filed action "is not a mandate directing wooden
application of the rule without regard to rare or extraordinary circumstances, inequitable
conduct, bad faith, or forum shopping." 850 F.2d at 972. Under the extraordinary
circumstances of this case, the inequitable conduct, bad faith, and forum shopping
evident in the Illinois Action strongly weigh against the invocation of timing as a basis

for priority. *See FMC Corp. v. AMVAC Chemical Corp.*, 379 F. Supp. 2d 733, 745 (E.D. Pa. 2005) ("[A] district court [need] not…defer to the first-filed jurisdiction if the court can demonstrate that the second-filed court can insure that it is in a better position to preserve judicial resources and avoid duplication." (quoting *Optical Recording Corp. v. Capitol-EMI Music, Inc.*, 803 F. Supp. 971, 973 (D. Del. 1992) (Farnan, J.))).

As set forth above, the Illinois Action's forum lacks any connection whatsoever to this litigation. Accordingly, the Illinois Plaintiff's forum shopping can be inferred. *See Rayco Mfg. Co. v. Chicopee Mfg. Corp.*, 148 F. Supp. 588, 592-93 (S.D.N.Y. 1957) ("a litigant…is open to the charge of forum shopping whenever he chooses a forum with slight connection to the factual circumstances surrounding his suit") (cited with approval in *EEOC*, 850 F.2d at 976). In light of this fact, coupled with the convenience of this district as the forum for this litigation, this Court should not hesitate to side with the Delaware Action over the Illinois Action. *See FMC Corp.*, 379 F. Supp. 2d at 744 ("Exceptions to the first-filed rule are not rare and are made when justice or expediency requires, including when the first-filed action is the result of forum shopping and if the balance of convenience favors the second forum." (quoting *Drugstore-Direct, Inc. v. The Cartier Division of Richemont North America, Inc.*, 350 F. Supp. 2d 620, 623 (E.D. Pa. 2004))).

As to inequitable conduct and bad faith, the Illinois Action is replete with both, as set forth more fully below, *see* Part II.A.4 *infra*, as well as in the Delaware Plaintiffs' motion to disqualify the Illinois Plaintiff's counsel (D.I. 64, 65). Additionally, the Delaware Action has developed far more quickly than the Illinois Action—for instance, the motion to dismiss was fully briefed four months after the commencement of the

Delaware Action, but briefing is not yet complete in the Illinois Action, commenced nearly a year ago. *See EEOC*, 850 F.2d at 976 ("courts have rejected the [first-filed] rule when the second-filed action had developed further than the initial suit" (citations omitted)).

Perhaps most importantly, the PSLRA has unequivocally ended the "race to the courthouse" in securities class actions, *see* Part II.A.2 *infra*. Accordingly, every relevant factor weighs in favor of the Delaware Action's superiority over the Illinois Action.

### 2.    The PSLRA Makes Clear That The Delaware Action Has Primacy

The PSLRA, which altered the procedures for bringing class actions under the federal securities laws, was enacted in response to a variety of perceived abuses of the class action procedure. H.R. Rep. No. 104-369, at *31 (1995) reprinted in 1996 U.S.C.C.A.N. 730 (attached hereto as Ex. B). Among other things Congress was concerned that the lead plaintiff in class action lawsuits was being determined by plaintiffs' lawyers' race to the courthouse. *See* S. Rep. No. 104-98, at *10-11 (1995) reprinted in 1996 U.S.C.C.A.N. 679, **689-90 (attached hereto as Ex. C). In enacting the PSLRA, Congress intended to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Rep. No. 104-369, at *32 (1995) reprinted in 1996 U.S.C.C.A.N. at **731. As the House of Representatives Report on the PSLRA stated:

> The Conference Committee was also troubled by the plaintiffs' lawyers "race to the courthouse" to be the first to file a securities class action complaint. This race has caused plaintiffs' attorneys to become fleet of foot and sleight of hand. Most often speed has replaced diligence in

- 15 -

> drafting complaints. The Conference Committee believes two incentives have driven plaintiffs' lawyers to be the first to file. First, courts traditionally appoint counsel in class action lawsuits on a "first come, first serve" basis. Courts often afford insufficient consideration to the most thoroughly researched, but later filed, complaint. The second incentive involves the court's decision as to who will become lead plaintiff. Generally, the first lawsuit filed also determines the lead plaintiff.

> The Conference Committee believes that the selection of the lead plaintiff and lead counsel should rest on considerations other than how quickly a plaintiff has filed its complaint.

H.R. Rep. No. 104-369, at 33, reprinted in 1996 U.S.C.C.A.N. at 732. Years later, commenting on this central pillar of the PSLRA, Commissioner Harvey J. Goldschmid of the Securities and Exchange Commission stated:

> One real advantage of the 1995 PSLRA was that it told private plaintiffs' lawyers that, in effect, you need a client, and that institutional investors should often play a lead plaintiff role. It stopped the race to the courthouse, which decided who would become lead counsel. Getting rid of that was a national blessing.

Harvey J. Goldschmid, *Post-Enron America: An SEC Perspective* (Dec. 2, 2002) (available at http://www.sec.gov/news/speech/spch120202hjg.htm) (attached as Ex. D). *See also In re Horizon/CMS Healthcare Corp. Sec. Litig.*, 3 F. Supp. 2d 1208, 1212 (D.N.M. 1998) (The PSLRA "appears to reflect a congressional intent to transfer power from counsel who win the race to the courthouse to those shareholders who possess a sufficient financial interest in the outcome to maintain some supervisory responsibility over both the litigation and their counsel." (citation omitted)); *In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 215 (D.N.J. 1999) ("[T]he PSLRA attempts to replace the outdated practice of selecting representative plaintiffs by a 'race to the courthouse,' with a selection system which focuses on the adequacy of the representative.").

- 16 -

Thus, the PSLRA has unequivocally eliminated the "first-filed" principle in securities class actions. In its place, the PSLRA mandates that the most adequate plaintiffs, those with the largest financial interest in the relief sought by the class, shall be appointed lead plaintiffs. 15 U.S.C. §§ 77z-1(a)(3)(B), 78u-4(a)(3)(B). The Delaware Plaintiffs' financial stake in this litigation is over six times greater than that of the Illinois Plaintiff. As no other member of the putative class came forward with a greater financial stake in either the Delaware Action or the Illinois Action, the PSLRA mandates that the Delaware Plaintiffs be presumed the "most adequate" plaintiffs in this litigation. Pursuant to the PSLRA's procedures, the Delaware Plaintiffs were appointed lead plaintiffs in the Delaware Action. Despite being on written notice of the Delaware Action, the Illinois Plaintiff did not oppose the Delaware Plaintiffs' lead plaintiff application.

Even if the Illinois Action could claim to be first-filed, that fact has no relevance in the wake of the PSLRA. The Delaware Action fulfills the objectives of the PSLRA and must be deemed to have priority, as the Delaware Plaintiffs have by far the largest financial stake of any plaintiff in this litigation.

### 3.    Only The Delaware Action Can Resolve All Claims

Just as the defendants have attempted to leverage an adverse ruling from the Chancery Action (a parallel, but not duplicative, proceeding) to obstruct claims in the Delaware Action, (*see, e.g.,* D.I. 33 at 28-31), they will likely attempt to exploit the Illinois Action in similar fashion, even though the weaknesses plaguing the Illinois Action are not present in the Delaware Action.

Unless an injunction of the Illinois Action is entered, piecemeal litigation will result, as the Delaware Plaintiffs will have to fend off rulings in the Illinois Action as well as advance their own claims, a majority of which are not asserted in the Illinois Action.  As the table below indicates,[7] as between the Delaware Action (DE) and the Illinois Action (IL), the former covers a larger class, asserts more claims, and, generally, reflects a far-deeper pre-filing investigation and better drafting:

| DE | IL | Claims Asserted |
|----|----|-----------------|
| * | * | Section 14(a) of the Securities and Exchange Act of 1934 (the "34 Act"), and Rule 14a-9 promulgated thereunder |
| * | * | Section 20 of the 34 Act (as to 14a-9 claim) |
| * | | Common law, for breach of the duty of loyalty |
| * | | Common law, for breach of the duty of disclosure |
| * | | Section 10(b) of the 34 Act and Rule 10b-5 promulgated thereunder |
| * | | Section 20 of the 34 Act (as to 10b-5 claim) |
| * | | Section 11 of the Securities Act of 1933 (the "33 Act") |
| * | | Section 12(a)(2) of the 33 Act |
| * | | Section 15 of the 33 Act |
| **DE** | **IL** | **Plaintiffs** |
| * | | Samuel Hyland – 300 shares |
| * | | Stephanie Speakman – 19,170 shares |
| | * | Stephen Blau – 2,999.9 shares |
| | * | American Growth Fund – 25,000 shares (withdrawn) |
| **DE** | **IL** | **Defendants** |
| | * | Laurence Fuller (voluntarily dismissed) |
| | * | J.P. Morgan Chase & Co. (pre-Merger entity – no longer in existence) |
| * | | JPMorgan Chase & Co. (post-Merger entity) |
| * | | James Dimon |
| * | * | Hans W. Becherer, Frank A. Bennack, Jr., John H. Biggs, Lawrence A. Bossidy, M. Anthony Burns, Ellen V. Futter, William H. Gray, III, Helene L. Kaplan, Lee R. Raymond, John R. Stafford, Riley P. Bechtel, and William B. Harrison, Jr.[8] |
| **DE** | **IL** | **Omissions and/or Misrepresentations Alleged to Have Violated Section 14(a)** |
| * | * | Omission of Offer to Merge Without a Premium |

---

[7] The table is largely the same as the table included in the Delaware Plaintiffs' opposition to the Illinois Plaintiff's motion to intervene and for a stay of the Delaware Action.  (D.I. 62.)

[8] Bechtel, Burns, Bennack and Kaplan may not have been properly served in the Illinois Action.  (*See* D.I. 65 at 18-19.)  By filing in Delaware, the Delaware Plaintiffs had available 10 *Del. C.* § 3114(a), this state's expansive "director consent" statute, if any defendant declined to waive service of process.

| | | |
|---|---|---|
| * | * | Misrepresentation of Merger Rationale |
| * | * | Misrepresentation of Succession Arrangement |
| * | | Misrepresentation of Merger Agreement |
| * | | Omission of Material Relationship Compromising Directorial Independence of Defendant Riley P. Bechtel |
| * | | Omission of Material Relationship Compromising Directorial Independence of Defendant Ellen V. Futter |
| * | | Omission of Material Relationship Compromising Directorial Independence of Defendant Helene L. Kaplan |
| * | | Omission of Material Relationship Compromising Directorial Independence of Defendant William Gray, III |
| * | | Omission of Material Relationship Compromising Directorial Independence of Defendant John R. Stafford |
| * | | Omission of Material Relationship Compromising Directorial Independence of Defendant M. Anthony Burns |
| * | | Misrepresentations and Omissions in Merger Press Release |
| * | | Oral Misrepresentations in Merger Announcement Conference Call |
| DE | IL | ***Theories of Liability*** |
| * | * | The Proxy Statement should have disclosed the zero premium offer. |
| * | | The Merger Press Release should have disclosed the zero premium offer. |
| * | | Harrison and Dimon should have disclosed the zero premium offer in their conference call announcing the Merger and lied when responding to questions regarding the succession arrangement. |
| * | | The Merger must be reviewed under, and fail, the "entire fairness" standard because the corporate defendant's board did not contain a majority of disinterested and independent directors. |
| * | | The defendants are liable for persuading shareholders to vote for an amendment to the corporate charter, expanding the authorized shares issuable, without informing shareholders of the true reason for the necessity of increasing this corporate authority. |
| * | | The corporate defendant's directors breached their fiduciary duties. |
| * | | The defendants wrongfully frustrated the will of a substantial number of shareholders to split the Chairman and Chief Executive Officer posts. |
| * | | Shareholders would not have approved the Merger had they known of the zero premium offer. |
| DE | IL | ***Theories of Relief*** |
| | * | "Mr. Harrison's selfish action…ultimately cost J.P. Morgan Chase shareholders over $7 billion in unnecessary Merger compensation." (Illinois Action Amended Complaint ¶ 2.) |
| * | | "As a result of the Merger, pre-Merger JPMC shareholders, including plaintiffs and other members of the Class, hold approximately 58 percent of the combined entity. If JPMC had merged with Bank One without paying any acquisition premium, as was proposed, pre-Merger JPMC shareholders, including plaintiffs and other members of the Class, would have held approximately 61 percent of the combined entity." (D.I. 51 ¶ 164.) |
| * | | "As a result of the misrepresentations and omissions of material facts set |

| | | |
|---|---|---|
| | | forth herein, including the failure to disclose that Harrison rejected the opportunity to merge Bank One into JPMC with a nil-premium exchange ratio, JPMC shareholders voted in favor of amending the Company's certificate of incorporation to allow the Company to issue far more shares than the Company would have needed to issue had Harrison agreed to a nil-premium exchange ratio."  (D.I. 51 ¶ 168.) |
| * | | "At the time of the purchase of those securities by the members of the JPMC Purchaser Class, the fair market value of JPMC securities was substantially less than the prices paid."  (D.I. 51 ¶ 252.) |
| * | | "[M]embers of the JPMC Exchange Class who have sold their shares of JPMC common stock are entitled to rescissionary damages."  (D.I. 51 ¶ 275.) |
| **DE** | **IL** | *Class Asserted* |
| | * | All persons who held common stock of J.P. Morgan Chase either on April 2, 2004 or at any time from April 19, 2004 through July 1, 2004 |
| * | | All present and former JPMC shareholders who: (1) purchased or otherwise acquired the common stock of JPMC between January 14, 2004 and June 25, 2004 inclusive, (2) as shareholders of record of JPMC on April 2, 2004, were entitled to vote on the Merger (and thereby on the proposed amendment to JPMC's certificate of incorporation in connection with the Merger), and/or (3) acquired their JPMC shares by surrendering Bank One shares in connection with the Merger on or about July 1, 2004 |
| **DE** | **IL** | *Persons Excluded from the Class* |
| | * | Defendants, the officers and directors of the corporate defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which defendants have or had a controlling interest. |
| * | | Defendants; any person related to any of the individual defendants; any firm, trust, corporation, or other entity affiliated with any of the defendants (except for those holding the corporate defendant's common stock in solely a fiduciary capacity); the legal representatives, heirs, successors, and assigns of any excluded person; and any entity controlled by any excluded person. |

The Delaware Action more than covers the few claims in the Illinois Action.  The former also better articulates theories of liability and relief, and includes a wider class. Several defendants in the Delaware Action were either not named or not served in the Illinois Action.  Thus, as a practical matter, if the Illinois Action is enjoined, piecemeal litigation can be avoided.  *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (noting "desirability of avoiding piecemeal litigation").

4.    **The Illinois Action's Irregularities Also
       <u>Weigh In Favor Of The Delaware Action</u>**

Various irregularities in the Illinois Action have been catalogued in the Delaware

Plaintiffs' opening brief in support of their motion to disqualify the Illinois Plaintiff's

primary counsel (D.I. 65) and need only a brief reiteration here.  In addition to filing

plagiarized pleadings in an inconvenient venue and publishing an inadequate notice (all

to avoid the attention of rivals), the Illinois Plaintiff's counsel submitted a lead plaintiff

application based primarily on the financial stake of an illusory client, an institutional

investor which had mistakenly executed a form it apparently believed to be a proof of

claim form.  Accordingly, for these reasons as well as all the reasons stated in the

Delaware Plaintiffs' opening brief in support of their motion to disqualify, the Illinois

Action is so riddled with bad-faith and inequitable conduct that the fact that it was filed

prior to the Delaware Action does not merit any consideration.  *See EEOC*, 850 F.2d at

972 (noting bad faith and inequitable conduct exceptions to first-filed rule).

B.    **<u>The Delaware Plaintiffs Will Suffer Irreparable Harm</u>**

The Delaware Plaintiffs need not show irreparable harm because the injunction

sought herein, unlike a preliminary injunction, is within the practical and inherent

authority of this Court.  *See Colorado River*, 424 U.S. at 817 (principles applicable in

concurrent litigation include "[w]ise judicial administration, giving regard to

conservation of judicial resources and comprehensive disposition of litigation. [*Kerotest*,

*supra*, 342 U.S. at 183],… As between federal district courts…, though no precise rule

has evolved, the general principle is to avoid duplicative litigation." (citations omitted)).

Nonetheless, the Delaware Plaintiffs face irreparable harm because of the

substantial likelihood that the defendants and the Illinois Plaintiff will, if not enjoined,

continue to proceed in the Illinois Action, thereby thrusting both this Court and the Northern District of Illinois headlong into an unnecessary duplication and waste of the judicial resources of both courts, and forcing the Delaware Plaintiffs to spend enormous amounts of time and money fighting off a "reverse auction" when it fully materializes.[9]

The Delaware Plaintiffs cannot effectively litigate the Delaware Action at the same time that the Illinois Action goes forward, due to the obvious and lingering threat of a "reverse auction." This constitutes irreparable harm.

### C.    Neither The Illinois Plaintiff Nor The Defendants Will Suffer Any Hardship

Finally, the balance of the hardships tips overwhelmingly in the Delaware Plaintiffs' favor. The Illinois Plaintiff will not suffer any hardship if only the Delaware Action proceeds. Rather, his interests, if any, are more than adequately represented in the Delaware Action. (*See* D.I. 62 at 14-16.) Also, the defendants will not suffer any hardship because it will be more convenient for them to litigate in this forum than in Illinois—especially given the shorter distance between Delaware and New York.

### CONCLUSION

For all of the foregoing reasons, the Delaware Plaintiffs respectfully request that the Court enter an Order enjoining defendants and the Illinois Plaintiff from proceeding further with the Illinois Action (or commencing or prosecuting any litigation in any court

---

[9] Judge Posner has described a "reverse auction" as "the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 282 (7th Cir. 2002) (citations omitted). "The ineffectual lawyers are happy to sell out a class they anyway can't do much for in exchange for generous attorneys' fees, and the defendants are happy to pay generous attorneys' fees since all they care about is the bottom line--the sum of the settlement and the attorneys' fees--and not the allocation of money between the two categories of expense." *Id.*

other than the District of Delaware concerning, or arising out of, the subject matter of the

Delaware Action), until such time as the Delaware Action has been decided on its merits.

DATED:        September 22, 2005          Respectfully submitted,

_/s/ Joseph N. Gielata_____
Joseph N. Gielata (DSB # 4338)
Attorney at Law
501 Silverside Road, Suite 90
Wilmington, DE 19809
(302) 798-1096

**_Lead Counsel for Plaintiffs_**
**_and the Putative Class_**

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that, on September 22, 2005, I electronically filed the foregoing

*OPENING BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO ENJOIN FURTHER*

*PROSECUTION OF BLAU V. HARRISON, ET AL.* with the Clerk of Court using CM/ECF

which will send notification of such filing to:

> Michael R. Robinson, Esq.
> **RICHARDS LAYTON & FINGER, P.A.**
> One Rodney Square
> Wilmington, DE  19801
> *Counsel for Defendants*
>
> Robert R. Davis, Esq.
> **CHIMICLES & TIKELLIS LLP**
> P.O. Box 1035
> One Rodney Square
> Wilmington, DE  19899
> *Counsel for Proposed Intervenor*

>                     /s/ Joseph N. Gielata
>                     Joseph N. Gielata (DSB # 4338)
>                     Attorney at Law
>                     501 Silverside Road, Suite 90
>                     Wilmington, Delaware 19809
>                     (302) 798-1096
>                     attorney@gielatalaw.com