```
                                                                    1



 1                IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3
    DR. STEPHAN BLAU, et al.,      )
 4                                 )
           Plaintiffs,             )
 5                                 )
       -vs-                        ) No. 04 C 6592
 6                                 )
    WILLIAM B. HARRISON, JR., et   ) Chicago, Illinois
 7  al.,                           ) August 29, 2005
                                   ) 9:30 a.m.
 8         Defendants.             )

 9
                    TRANSCRIPT OF PROCEEDINGS
10
            BEFORE THE HONORABLE WILLIAM J. HIBBLER
11
    APPEARANCES:
12
    For the Plaintiffs:       WOLF HALDENSTEIN ADLER FREEMAN
13                            & HERZ LLC
                              BY:  MR. ADAM J. LEVITT
14                            55 W. Monroe, Suite 1111
                              Chicago, Illinois  60603
15                            312-984-0001

16  For the Defendants:       SIDLEY AUSTIN BROWN & WOOD LLP
                              BY:  MS. KATHLEEN L. ROACH
17                                 MS. COURTNEY A. ROSEN
                              Bank One Plaza, 10 S. Dearborn
18                            Chicago, Illinois  60603
                              312-853-7861

19

20

21
    Court Reporter:
22
                    ALEXANDRA ROTH, CSR, RPR,
23                     Official Court Reporter
                    United States District Court
24         219 South Dearborn Street, Suite 1744-a
                       Chicago, Illinois  60604
25                 Telephone:  (312) 294-0134
```

2

1    (Proceedings heard in open court.)
2        THE CLERK:  04 C 6592, Blau versus Harrison -- Blau,
3    et al., versus Harrison, et al., status.
4        MS. ROACH:  Good morning, your Honor.  Kathleen Roach
5    and Courtney Rosen for the defendants.
6        MR. LEVITT:  Good morning, your Honor.  I'm Adam
7    Levitt on plaintiffs' behalf.
8        THE COURT:  Okay.  Good morning.
9             The big issue in this case as far as I'm concerned is
10   the matter of the brief that I received regarding this matter
11   from counsel who represents the class in the Highland matter.
12   That has caused me some concern because of certain allegations
13   which he has made.
14            And, obviously, I received notice of the parties in
15   this action moving to intervene or stay the matter, the Highland
16   matter.  I think we need to resolve that issue as to whether or
17   not we proceed here or proceed there or these matters are so
18   similarly situated that we need to proceed in one forum as
19   opposed to both because clearly some order issued by this Court
20   or by that Court could affect the litigation in the other arena.
21            There is some indication also in the materials that
22   I've reviewed suggesting that the matter should be more properly
23   brought in that Court as opposed to this Court.
24            None of those issues have been answered to my
25   satisfaction.

```
 1              MR. LEVITT:  I can speak to that, your Honor.
 2              THE COURT:  Sure.
 3              MR. LEVITT:  Once again, I'm speaking on behalf of my
 4     firm, Wolf, Haldenstein, Adler, Freeman & Herz, which your Honor
 5     had appointed lead counsel in this case pursuant to a proper
 6     notice pursuant to all the procedures under the Private
 7     Securities Litigation Reform Act of 1995.
 8              Months after we filed our case and months after your
 9     Honor appointed our client lead plaintiff and our firm as lead
10     counsel in this action, Mr. Gielata filed an action in Delaware.
11     Then he began to mail all sorts of papers into your Honor
12     violating local practice and procedure that he styled as
13     purported amicus briefs on behalf of his clients in Delaware.
14     And in those briefs, as your Honor is aware and as your Honor
15     just stated for the Court, Mr. Gielata made all sorts of
16     accusations and essentially embarked on a smear campaign against
17     my firm.
18              When we received these papers and when your Honor
19     received these papers, we were in court shortly thereafter.  We
20     advised your Honor at that time that Mr. Gielata has no standing
21     to be here in the first place.  Second of all, what he's done to
22     the extent we were going to have to engage in actual substantive
23     analysis of what he's saying is simply wrong and false.
24              At that point, your Honor had said that if we didn't
25     think that your Honor had to consider those papers, you'd simply
```

```
 1   hold onto them.  And we spoke to opposing counsel, and our
 2   actions speak louder than words.  We thought that there was no
 3   need to even consider them.
 4           We also learned, your Honor, at the first time up
 5   before your Honor with respect to this issue that his -- that
 6   Mr. Gielata's improperly submitted amicus brief had found its
 7   way into the Clerk's office here and was now a part of the
 8   record in this case.
 9           Months thereafter -- and we went on with this case.
10   We filed an exhaustive response to the motion to dismiss that my
11   opponents had filed.  That schedule is proceeding now.  My
12   opponents have a reply due in this Court in about a month, and
13   it's our intention, based upon our understanding of the rules
14   and your Honor's orders, to go forward with this case.
15           A few weeks ago, Mr. Gielata filed a supplemental
16   brief before this Court saying all sorts of other things,
17   including, among other things, that my firm and my opponent's
18   firm had been conspiring in some way.  I'm not going to actually
19   dignify that with anymore comment other than to say that, as my
20   opponents will advise you, this has been a hard fought
21   litigation from the outset and any idea along those lines is
22   absolutely absurd.
23           MS. ROACH:  That's certainly correct.
24           MR. LEVITT:  So where we are now is this, your Honor.
25   After receiving Mr. Gielata's second round of papers, I
```

5

1  understand that your Honor was concerned by a lot of the things
2  he was saying in those papers.  We felt it was now time to
3  undertake two courses of action.
4          Number 1, we immediately put in a response to Mr.
5  Gielata's papers, which your Honor received from us last
6  Wednesday.  We sent a courtesy copy up to your Honor after we
7  filed it.  And we also moved for intervention into Mr. Gielata's
8  action in Delaware for the sole purpose of staying that action
9  and shutting it down in light of the fact that what Mr. Gielata
10 is doing simply violates the rules and puts, very frankly, his
11 own interests over the interests of the class in this case.
12         In preparing our papers, as your Honor is now aware,
13 we learned something that we think, frankly, speaks to the heart
14 of this situation as well.  On August 5th, Mr. Gielata was
15 indicted in Delaware on felony charges for theft.
16         I was on the phone this morning with the state
17 disciplinary commission in Delaware to find out exactly what was
18 happening there, and what was happening was he was -- under the
19 rules in Delaware, Rule 16(a) specifically, if a felony
20 indictment comes down against a lawyer, the state disciplinary
21 bar has to immediately file a verified petition for interim
22 suspension, which they did.  That result your Honor should
23 really be aware of because it speaks to -- it speaks to Mr.
24 Gielata's entire approach to these things.  He sued the state
25 bar commission for filing that petition.

```
 1              What they were able to advise me of -- because a lot
 2   of this is occurring in confidential proceedings -- was that in
 3   exchange for not immediately suspending him from the practice of
 4   law, thereby taking this entire issue off the table, very
 5   frankly, they required him to serve a copy of his indictment in
 6   every case in which he was involved, which, to the extent that
 7   he has something on file here in this case, he has not even
 8   complied with a ruling from his home court.
 9              Having said all of that, your Honor, what this comes
10   down to here, I think, is a very simple thing.  He called us all
11   sorts of names.  We answered it.  We showed you in our papers
12   that it's all a hundred percent completely and demonstrably
13   false.
14              The issue here, as Mr. Gielata said in his own papers,
15   he believed he was within his rights to file his own case in
16   Delaware because he didn't believe our notice in this case was a
17   valid and proper notice when we first had put our case on file.
18              As your Honor is aware, under the Private Securities
19   Litigation Reform Act of 1995, when the first filed case gets
20   filed, the lawyers in that case have to put a press release up,
21   a notice in either a national newspaper, a wire service or the
22   like, and we put our notice in Investors Business Daily, which
23   has been held by courts here and elsewhere in the country to be
24   a valid notice, and followed all the rules in the PSLRA.  Your
25   Honor, considering what we did with our notice, held that we
```

 1   actually acted properly.
 2           What's happening now is Mr. Gielata, for whatever
 3   reason, to get his own hands in the game, so to speak, feels
 4   that it was not a proper notice.  Even if he was right -- which
 5   as we set forth in the response papers we filed with your Honor
 6   last Wednesday, he is wrong because we satisfied every single
 7   requirement for this type of notice -- but let's say for the
 8   sake of this conversation he was right, the place that he has to
 9   challenge that notice is here in this Court.
10           What he is trying to do now by having run off on his
11   own and filed his own action in Delaware, he is asking a
12   similarly situated Article III judge on the same level as your
13   Honor to serve as a court of review on your Honor's ruling, and
14   that's not allowed.  What he's doing now is seeking to
15   circumvent the rules to support his own ends.
16           Is he unhappy that his clients aren't in this case?
17   They're actually -- they're actually, based upon the information
18   he's now provided us about them, they're in the class if the
19   class gets certified in this case.  Is he unhappy that he is not
20   the lead counsel in this case?  That might be the case.  But as
21   your Honor is aware, we followed the rules.  He didn't put up
22   his clients.
23           The fact that he said in his letter that was recently
24   handed up to your Honor before the hearing this morning because
25   he served the letter on us on Friday night, even if he's right,

1   and even if his client has 6 times more losses than our client
2   does, it's irrelevant.
3          I can read off a laundry list of cases, your Honor,
4   where various potential class members and funds have called us
5   after the fact and said we'd like to be involved in the lead,
6   and the answer is, we're sorry, you're just too late.  The rules
7   are the rules.
8          So what's happening here, your Honor, stripping out
9   the sound and fury, is he lacks any standing to be in this
10  Court.  Frankly, his indictment raises the question of his
11  adequacy in any court.  And to the extent that he had a problem
12  with the proceedings in this Court, he had to first intervene
13  into this action and then raise that objection here in the form
14  of a motion for reconsideration.  He didn't do it.  He's not
15  here.
16          As far as we're concerned, there isn't an issue
17  whether it should be in Delaware or hear.  The case is here.
18  The case has been proceeding here, and that's the way it should
19  stay.
20          If you have any questions, I'd be more than happy to
21  answer them.
22          THE COURT:  Okay.
23          Counsel, you have anything you want to add?
24          MS. ROACH:  Your Honor, just from a defense counsel
25  perspective, we're not in a position to comment on the

1    substantive allegations that Mr. Gielata has made against Mr.
2    Levitt's firm.  However, what we can say is that Mr. Gielata --
3    I would agree with what Mr. Levitt said.  He has no standing
4    here.  He's not filed an appearance.  He's not filed a motion to
5    intervene.  He's not filed a motion of any sort.  All he has
6    done is sent in letters to the Court with his purported amicus
7    papers.  He's not associated local counsel in Illinois.
8    Instead, he sends his letters to opposing counsel and asks us to
9    present them to the Court, which is highly improper and part of
10   a pattern and practice of ignoring local rules and local
11   practice.
12           And I agree with Mr. Levitt.  The fact that he stands
13   under indictment at this point in time certainly raises
14   questions as to his competency as counsel.
15           But based on the papers, there's no motion for the
16   Court to consider.  I understand the Court's concern that there
17   are these two actions pending in parallel courts, but there is a
18   properly filed or, at least, from all appearances reading it
19   this morning, there is a motion that has been filed by Mr.
20   Levitt's firm in the other action, but there is no such motion
21   pending here.
22           Mr. Gielata is either unaware of or has declined to
23   follow this Court's rules and practice, and we don't see any
24   purpose to be served by commenting further.
25           THE COURT:  Okay.

10

```
 1           Let me ask this.  Are you also defending the Highland
 2   matter that is pending in Delaware?
 3           MS. ROACH:  We are not counsel of record in that
 4   matter.
 5           THE COURT:  Are you engaged in any way with counsel
 6   who is involved in the defense of that case because, obviously,
 7   the two cases are basically the same case?
 8           MS. ROACH:  We represent the same clients.  So there's
 9   discussion.  But we don't represent them in that action.
10           THE COURT:  Okay.
11           Have you any opinion or any information regarding the
12   propriety of one jurisdiction as opposed to the other?
13           MS. ROACH:  At this point, I don't have any comment on
14   that, your Honor.
15           THE COURT:  Okay.
16           Let me say that, obviously, the Court has been
17   receiving a great deal of material from Counsel Gielata
18   regarding this matter in the form of an amicus curiae brief and
19   also in the form of letters which have been forwarded to the
20   Court through counsel.
21           Those materials the Court reviewed, and they raise
22   certain issues with the Court, some of which the Court viewed as
23   sour grapes perhaps, others of which caused the Court to, at
24   least, have some concern about orders entered by this Court
25   which might somehow impact orders entered by that Court or vice
```

 1  versa.

 2           So I did believe that it was necessary for someone to
 3  become either -- one lawyer to become present here and intervene
 4  so I could have that lawyer present and talk what the issues
 5  really are or the lawyer here to intervene in that action so
 6  that we have one forum where we know this case is going to go
 7  forward in and we don't have these ancillary actions all over
 8  the place.

 9           Now that counsel has indicated and I have seen your
10  motion to stay the Highland matter in Delaware, that, at least,
11  should bring to fruition a hearing as to which case is going to
12  go forward.

13           Based upon the filings that have been made by counsel
14  for the Highland plaintiff in the Delaware matter, I will make
15  this order:  That based upon the fact that we now have a motion
16  pending to stay that matter in which the issues will be
17  discussed and decided by that Court, I see no need to further
18  entertain motions or writings or materials from Mr. Gielata in
19  this case.  I am not going to further make -- make any further
20  order on his motions regarding the propriety of lead counsel or
21  his other assertions in his papers.  The Court here had no
22  information and still has no information which it can base any
23  action on its part to change what the Court has previously
24  ruled.  As far as this Court is concerned, lead counsel remains
25  lead counsel.

12

1           Certainly there are no -- there may be other persons
2    who might suggest that they have a greater interest, for
3    instance, the Highland plaintiff, but that is of no movement to
4    this Court in that the notices that the Court reviewed were
5    proper, the lead plaintiff has indicated a willingness, and the
6    Court has found that he is a proper lead plaintiff.
7           The Court is concerned as to the ancillary or the
8    other action in Delaware, but I -- it is the Court's belief that
9    that Court can, after hearing these materials regarding the
10   intervention and the movement to stay that action, can rule, and
11   if that ruling results in that action going forward as well as
12   this action, then, I think, the next step is to decide where the
13   action should go forth, the two actions should go forth
14   simultaneously in a single court as opposed to two, but we're
15   not there because your motion to stay might be, in fact,
16   granted.
17           MR. LEVITT:  Thank you very much, your Honor.
18           MS. ROACH:  Thank you, your Honor.
19           THE COURT:  Okay.
20           Now, we already have a status date in this case,
21   correct?
22           THE CLERK:  I need to reset it back because we had
23   this one today.
24           THE COURT:  Yes.  We had it set for --
25           THE CLERK:  October 17th.

13

1        THE COURT:  -- 10-17, right?

2        Do you folks want that date again?

3        MS. ROACH:  I think right now the briefing on the

4   motion to dismiss, I think, will have been completed by then.

5        MR. LEVITT:  Right.  September 23rd or 24th or

6   something like that.

7        MS. ROACH:  Right.  So that's not a bad time to come

8   back in for status.

9        THE COURT:  Okay.  10-17.

10       MR. LEVITT:  Thank you.

11       MS. ROACH:  Thank you, your Honor.

12       THE COURT:  Thank you.

13

14   (Which were all the proceedings heard.)

15                         CERTIFICATE

16   I certify that the foregoing is a correct transcript from

17   the record of proceedings in the above-entitled matter.

18

19
    Alexandra Roth              Date
20  Official Court Reporter

21

22

23

24

25