**Exhibit B**

H.R. CONF. REP. 104-369, H.R. Conf. Rep. No. 369, 104TH Cong., 1ST Sess. 1995, 1995 U.S.C.C.A.N. 730, 1995 WL 709276 (Leg.Hist.)

**730 P.L. 104-67, PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995

*1 SECURITIES LITIGATION REFORM

DATES OF CONSIDERATION AND PASSAGE

House: March 7, 8, December 5, 1995
Senate: June 22, 23, 26, 27, 28, December 5, 1995
Cong. Record Vol. 141 (1995)
Senate Report (Banking, Housing, and Urban Affairs Committee) No. 104-98,
June 19, 1995
(To accompany S. 240)
House Conference Report No. 104-369,
Nov. 28, 1995
(To accompany H.R. 1058)

HOUSE CONFERENCE REPORT NO. 104-369
November 28, 1995

Mr. Bliley, from the committee of conference, submitted the following

CONFERENCE REPORT

[To accompany H.R. 1058]

The committee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H.R. 1058), to reform Federal securities litigation, and for other purposes, having met, after full and free conference, have agreed to recommend and do recommend to their respective Houses as follows:
That the House recede from its disagreement to the amendment of the Senate to the text of the bill and agree to the same with an amendment as follows:
In lieu of the matter proposed to be inserted by the Senate amendment, insert the following:

SECTION 1. SHORT TITLE; TABLE OF CONTENTS.

(a) Short Title.-This Act may be cited as the "Private Securities Litigation Reform Act of 1995".
(b) Table of Contents.-The table of contents for this Act is as follows:

Sec. 1. Short title; table of contents.

TITLE I-REDUCTION OF ABUSIVE LITIGATION

Sec. 101. Private securities litigation reform.

Sec. 102. Safe harbor for forward-looking statements.
Sec. 103. Elimination of certain abusive practices.
Sec. 104. Authority of Commission to prosecute aiding and
         abetting.
Sec. 105. Loss causation.
Sec. 106. Study and report on protections for senior citizens
         and qualified retirement plans.
Sec. 107. Amendment to Racketeer Influenced and Corrupt
         Organization Act.
Sec. 108. Applicability.

        TITLE II-REDUCTION OF COERCIVE SETTLEMENTS

Sec. 201. Proportionate liability.
Sec. 203. Applicability.
Sec. 204. Rule of construction.

        TITLE III-AUDITOR DISCLOSURE OF CORPORATE FRAUD

Sec. 301. Fraud detection and disclosure.

## *2 TITLE I-REDUCTION OF ABUSIVE LITIGATION

## SEC. 101. PRIVATE SECURITIES LITIGATION REFORM.

(a) Securities Act of 1933.-Title I of the Securities Act of 1933 (15 U.S.C. 77a et seq.) is amended by adding at the end the following new section:

"SEC. 27. PRIVATE SECURITIES LITIGATION.

"(a) Private Class Actions.-
"(1) In general.-The provisions of this subsection shall apply to each private action arising under this title that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure.
"(2) Certification filed with complaint.-
"(A) In general.-Each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint, that-
"(i) states that the plaintiff has reviewed the complaint and authorized its filing;
"(ii) states that the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this title;
"(iii) states that the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary;
"(iv) sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint;

"(v) identifies any other action under this title, filed during the 3- year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve, or served, as a representative party on behalf of a class; and

"(vi) states that the plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court in accordance with paragraph (4).

"(B) Nonwaiver of attorney-client privilege.-The certification filed pursuant to subparagraph (A) shall not be construed to be a waiver of the attorney-client privilege.

"(3) Appointment of lead plaintiff.-

"(A) Early notice to class members.-

*3 "(i) In general.-Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class-

"(I) of the pendency of the action, the claims asserted therein, and the purported class period; and

"(II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

"(ii) Multiple actions.-If more than one action on behalf of a class asserting substantially the same claim or claims arising under this title is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with clause (i).

"(iii) Additional notices may be required under federal rules.-Notice required under clause (i) shall be in addition to any notice required pursuant to the Federal Rules of Civil Procedure.

"(B) Appointment of lead plaintiff.-

"(i) In general.-Not later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the 'most adequate plaintiff') in accordance with this subparagraph.

"(ii) Consolidated actions.-If more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination required by clause (i) until after the decision on the motion to consolidate is rendered. As soon as practicable after such decision is rendered, the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions in accordance with this subparagraph.

"(iii) Rebuttable presumption.-

"(I) In general.-Subject to subclause (II), for purposes of clause (i), the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that-

*4 "(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

"(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

"(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

"(II) Rebuttal evidence.-The presumption described in subclause (I) may be rebutted only upon

proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff-

"(aa) will not fairly and adequately protect the interests of the class; or

"(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

"(iv) Discovery.-For purposes of this subparagraph, discovery relating to whether a member or members of the purported plaintiff class is the most adequate plaintiff may be conducted by a plaintiff only if the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class.

"(v) Selection of lead counsel.-The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.

"(vi) Restrictions on professional plaintiffs.-Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period.

"(4) Recovery by plaintiffs.-The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class. Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class.

"(5) Restrictions on settlements under seal.-The terms and provisions of any settlement agreement of a class action shall not be filed under seal, except that on motion of any party to the settlement, the court may order filing under seal for those portions of a settlement agreement as to which good cause is shown for such filing under seal. For purposes of this paragraph, good cause shall exist only if publication of a term or *5 provision of a settlement agreement would cause direct and substantial harm to any party.

"(6) Restrictions on payment of attorneys' fees and expenses.-Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.

"(7) Disclosure of settlement terms to class members.-Any proposed or final settlement agreement that is published or otherwise disseminated to the class shall include each of the following statements, along with a cover page summarizing the information contained in such statements:

"(A) Statement of plaintiff recovery.-The amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis.

"(B) Statement of potential outcome of case.-

"(i) Agreement on amount of damages.-If the settling parties agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this title, a statement concerning the average amount of such potential damages per share.

"(ii) Disagreement on amount of damages.-If the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this title, a statement from each settling party concerning the issue or issues on which the parties disagree.

"(iii) Inadmissibility for certain purposes.-A statement made in accordance with clause (i) or (ii) concerning the amount of damages shall not be admissible in any Federal or State judicial action or administrative proceeding, other than an action or proceeding arising out of such statement.

"(C) Statement of attorneys' fees or costs sought.-If any of the settling parties or their counsel intend to apply to the court for an award of attorneys' fees or costs from any fund established as part of the settlement, a statement indicating which parties or counsel intend to make such an application, the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought.

"(D) Identification of lawyers' representatives.-The name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members concerning any matter contained in any notice of settlement published or otherwise disseminated to the class.

"(E) Reasons for settlement.-A brief statement explaining the reasons why the parties are proposing the settlement.

*6 "(F) Other information.-Such other information as may be required by the court.

"(8) Attorney conflict of interest.-If a plaintiff class is represented by an attorney who directly owns or otherwise has a beneficial interest in the securities that are the subject of the litigation, the court shall make a determination of whether such ownership or other interest constitutes a conflict of interest sufficient to disqualify the attorney from representing the plaintiff class.

"(b) Stay of Discovery; Preservation of Evidence.-

"(1) In general.-In any private action arising under this title, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds, upon the motion of any party, that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

"(2) Preservation of evidence.-During the pendency of any stay of discovery pursuant to this subsection, unless otherwise ordered by the court, any party to the action with actual notice of the allegations contained in the complaint shall treat all documents, data compilations (including electronically recorded or stored data), and tangible objects that are in the custody or control of such person and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure.

"(3) Sanction for willful violation.-A party aggrieved by the willful failure of an opposing party to comply with paragraph (2) may apply to the court for an order awarding appropriate sanctions.

"(c) Sanctions for Abusive Litigation.-

"(1) Mandatory review by court.-In any private action arising under this title, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.

"(2) Mandatory sanctions.-If the court makes a finding under paragraph (1) that a party or attorney violated any requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion, the court shall impose sanctions on such party or attorney in accordance with Rule 11 of the Federal Rules of Civil Procedure. Prior to making a finding that any party or attorney has violated Rule 11 of the Federal Rules of Civil Procedure, the court shall give such party or attorney notice and an opportunity to respond.

"(3) Presumption in favor of attorneys' fees and costs.-

"(A) In general.-Subject to subparagraphs (B) and (C), for purposes of paragraph (2), the court shall adopt a presumption that the appropriate sanction-

*7 "(i) for failure of any responsive pleading or dispositive motion to comply with any requirement of Rule 11(b) of the Federal Rules of Civil Procedure is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation; and

"(ii) for substantial failure of any complaint to comply with any requirement of Rule 11(b) of the Federal Rules of Civil Procedure is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action.

"(B) Rebuttal evidence.-The presumption described in subparagraph (A) may be rebutted only upon proof by the party or attorney against whom sanctions are to be imposed that-

"(i) the award of attorneys' fees and other expenses will impose an unreasonable burden on that party or attorney and would be unjust, and the failure to make such an award would not impose a greater burden on the party in whose favor sanctions are to be imposed; or

"(ii) the violation of Rule 11(b) of the Federal Rules of Civil Procedure was de minimis.

"(C) Sanctions.-If the party or attorney against whom sanctions are to be imposed meets its burden under subparagraph (B), the court shall award the sanctions that the court deems appropriate pursuant to Rule 11 of the Federal Rules of Civil Procedure.

"(d) Defendant's Right to Written Interrogatories.-In any private action arising under this title in which the plaintiff may recover money damages only on proof that a defendant acted with a particular state of mind, the court shall, when requested by a defendant, submit to the jury a written interrogatory on the issue of each such defendant's state of mind at the time the alleged violation occurred.".

(b) Securities Exchange Act of 1934.-Title I of the Securities Exchange Act of 1934 (78a et seq.) is amended by inserting after section 21C the following new section:

"SEC. 21D. PRIVATE SECURITIES LITIGATION.

"(a) Private Class Actions.-

"(1) In general.-The provisions of this subsection shall apply in each private action arising under this title that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure.

"(2) Certification filed with complaint.-

"(A) In general.-Each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint, that-

"(i) states that the plaintiff has reviewed the complaint and authorized its filing;

"(ii) states that the plaintiff did not purchase the security that is the subject of the complaint at the direction *8 of plaintiff's counsel or in order to participate in any private action arising under this title;

"(iii) states that the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary;

"(iv) sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint;

"(v) identifies any other action under this title, filed during the 3- year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class; and

"(vi) states that the plaintiff will not accept any payment for serving as a representative party on

behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court in accordance with paragraph (4).

"(B) Nonwaiver of attorney-client privilege.-The certification filed pursuant to subparagraph (A) shall not be construed to be a waiver of the attorney-client privilege.

"(3) Appointment of lead plaintiff.-

"(A) Early notice to class members.-

"(i) In general.-Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class-

"(I) of the pendency of the action, the claims asserted therein, and the purported class period; and

"(II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

"(ii) Multiple actions.-If more than one action on behalf of a class asserting substantially the same claim or claims arising under this title is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with clause (i).

"(iii) Additional notices may be required under federal rules.- Notice required under clause (i) shall be in addition to any notice required pursuant to the Federal Rules of Civil Procedure.

"(B) Appointment of lead plaintiff.-

"(i) In general.-Not later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or *9 complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the 'most adequate plaintiff') in accordance with this subparagraph.

"(ii) Consolidated actions.-If more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination required by clause (i) until after the decision on the motion to consolidate is rendered. As soon as practicable after such decision is rendered, the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions in accordance with this paragraph.

"(iii) Rebuttable presumption.-

"(I) In general.-Subject to subclause (II), for purposes of clause (i), the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that-

"(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

"(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

"(cc) otherwise satisfies the requirements of [Rule 23 of the Federal Rules of Civil Procedure](#).

"(II) Rebuttal evidence.-The presumption described in subclause (I) may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff-

"(aa) will not fairly and adequately protect the interests of the class; or

"(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

"(iv) Discovery.-For purposes of this subparagraph, discovery relating to whether a member or

members of the purported plaintiff class is the most adequate plaintiff may be conducted by a plaintiff only if the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class.

"(v) Selection of lead counsel.-The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.

*10 "(vi) Restrictions on professional plaintiffs.-Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period.

"(4) Recovery by plaintiffs.-The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class. Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class.

"(5) Restrictions on settlements under seal.-The terms and provisions of any settlement agreement of a class action shall not be filed under seal, except that on motion of any party to the settlement, the court may order filing under seal for those portions of a settlement agreement as to which good cause is shown for such filing under seal. For purposes of this paragraph, good cause shall exist only if publication of a term or provision of a settlement agreement would cause direct and substantial harm to any party.

"(6) Restrictions on payment of attorneys' fees and expenses.-Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.

"(7) Disclosure of settlement terms to class members.-Any proposed or final settlement agreement that is published or otherwise disseminated to the class shall include each of the following statements, along with a cover page summarizing the information contained in such statements:

"(A) Statement of plaintiff recovery.-The amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis.

"(B) Statement of potential outcome of case.-

"(i) Agreement on amount of damages.-If the settling parties agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this title, a statement concerning the average amount of such potential damages per share.

"(ii) Disagreement on amount of damages.-If the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this title, a statement from each settling party concerning the issue or issues on which the parties disagree.

*11 "(iii) Inadmissibility for certain purposes.-A statement made in accordance with clause (i) or (ii) concerning the amount of damages shall not be admissible in any Federal or State judicial action or administrative proceeding, other than an action or proceeding arising out of such statement.

"(C) Statement of attorneys' fees or costs sought.-If any of the settling parties or their counsel intend to apply to the court for an award of attorneys' fees or costs from any fund established as part of the settlement, a statement indicating which parties or counsel intend to make such an application, the amount of fees and costs that will be sought (including the amount of such fees

and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought. Such information shall be clearly summarized on the cover page of any notice to a party of any proposed or final settlement agreement.

"(D) Identification of lawyers' representatives.-The name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members concerning any matter contained in any notice of settlement published or otherwise disseminated to the class.

"(E) Reasons for settlement.-A brief statement explaining the reasons why the parties are proposing the settlement.

"(F) Other information.-Such other information as may be required by the court.

"(8) Security for payment of costs in class actions.-In any private action arising under this title that is certified as a class action pursuant to the Federal Rules of Civil Procedure, the court may require an undertaking from the attorneys for the plaintiff class, the plaintiff class, or both, or from the attorneys for the defendant, the defendant, or both, in such proportions and at such times as the court determines are just and equitable, for the payment of fees and expenses that may be awarded under this subsection.

"(9) Attorney conflict of interest.-If a plaintiff class is represented by an attorney who directly owns or otherwise has a beneficial interest in the securities that are the subject of the litigation, the court shall make a determination of whether such ownership or other interest constitutes a conflict of interest sufficient to disqualify the attorney from representing the plaintiff class.

"(b) Requirements for Securities Fraud Actions.-

"(1) Misleading statements and omissions.-In any private action arising under this title in which the plaintiff alleges that the defendant-

"(A) made an untrue statement of a material fact; or

"(B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;

*12 the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

"(2) Required state of mind.-In any private action arising under this title in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this title, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

"(3) Motion to dismiss; stay of discovery.-

"(A) Dismissal for failure to meet pleading requirements.-In any private action arising under this title, the court shall, on the motion of any defendant, dismiss the complaint if the requirements of paragraphs (1) and (2) are not met.

"(B) Stay of discovery.-In any private action arising under this title, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

"(C) Preservation of evidence.-

"(i) In general.-During the pendency of any stay of discovery pursuant to this paragraph, unless otherwise ordered by the court, any party to the action with actual notice of the allegations

contained in the complaint shall treat all documents, data compilations (including electronically recorded or stored data), and tangible objects that are in the custody or control of such person and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure.

"(ii) Sanction for willful violation.-A party aggrieved by the willful failure of an opposing party to comply with clause (i) may apply to the court for an order awarding appropriate sanctions.

"(4) Loss causation.-In any private action arising under this title, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this title caused the loss for which the plaintiff seeks to recover damages.

"(c) Sanctions for Abusive Litigation.-

"(1) Mandatory review by court.-In any private action arising under this title, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.

"(2) Mandatory sanctions.-If the court makes a finding under paragraph (1) that a party or attorney violated any requirement *13 of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion, the court shall impose sanctions on such party or attorney in accordance with Rule 11 of the Federal Rules of Civil Procedure. Prior to making a finding that any party or attorney has violated Rule 11 of the Federal Rules of Civil Procedure, the court shall give such party or attorney notice and an opportunity to respond.

"(3) Presumption in favor of attorneys' fees and costs.-

"(A) In general.-Subject to subparagraphs (B) and (C), for purposes of paragraph (2), the court shall adopt a presumption that the appropriate sanction-

"(i) for failure of any responsive pleading or dispositive motion to comply with any requirement of Rule 11(b) of the Federal Rules of Civil Procedure is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation; and

"(ii) for substantial failure of any complaint to comply with any requirement of Rule 11(b) of the Federal Rules of Civil Procedure is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action.

"(B) Rebuttal evidence.-The presumption described in subparagraph (A) may be rebutted only upon proof by the party or attorney against whom sanctions are to be imposed that-

"(i) the award of attorneys' fees and other expenses will impose an unreasonable burden on that party or attorney and would be unjust, and the failure to make such an award would not impose a greater burden on the party in whose favor sanctions are to be imposed; or

"(ii) the violation of Rule 11(b) of the Federal Rules of Civil Procedure was de minimis.

"(C) Sanctions.-If the party or attorney against whom sanctions are to be imposed meets its burden under subparagraph (B), the court shall award the sanctions that the court deems appropriate pursuant to Rule 11 of the Federal Rules of Civil Procedure.

"(d) Defendant's Right to Written Interrogatories.-In any private action arising under this title in which the plaintiff may recover money damages, the court shall, when requested by a defendant, submit to the jury a written interrogatory on the issue of each such defendant's state of mind at the time the alleged violation occurred.

"(e) Limitation on Damages.-

"(1) In general.-Except as provided in paragraph (2), in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security,

the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security *14 and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

"(2) Exception.-In any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, if the plaintiff sells or repurchases the subject security prior to the expiration of the 90-day period described in paragraph (1), the plaintiff's damages shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the security and the mean trading price of the security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security.

"(3) Definition.-For purposes of this subsection, the 'mean trading price' of a security shall be an average of the daily trading price of that security, determined as of the close of the market each day during the 90-day period referred to in paragraph (1).".

## SEC. 102. SAFE HARBOR FOR FORWARD-LOOKING STATEMENTS.

(a) Amendment to the Securities Act of 1933.-Title I of the Securities Act of 1933 (15 U.S.C. 77a et seq.) is amended by inserting after section 27 (as added by this Act) the following new section:

## "SEC. 27A. APPLICATION OF SAFE HARBOR FOR FORWARD-LOOKING STATEMENTS.

"(a) Applicability.-This section shall apply only to a forward-looking statement made by-

"(1) an issuer that, at the time that the statement is made, is subject to the reporting requirements of section 13(a) or section 15(d) of the Securities Exchange Act of 1934;

"(2) a person acting on behalf of such issuer;

"(3) an outside reviewer retained by such issuer making a statement on behalf of such issuer; or

"(4) an underwriter, with respect to information provided by such issuer or information derived from information provided by the issuer.

"(b) Exclusions.-Except to the extent otherwise specifically provided by rule, regulation, or order of the Commission, this section shall not apply to a forward-looking statement-

"(1) that is made with respect to the business or operations of the issuer, if the issuer-

"(A) during the 3-year period preceding the date on which the statement was first made-

"(i) was convicted of any felony or misdemeanor described in clauses (i) through (iv) of section 15(b)(4)(B) of the Securities Exchange Act of 1934; or

"(ii) has been made the subject of a judicial or administrative decree or order arising out of a governmental action that-

"(I) prohibits future violations of the antifraud provisions of the securities laws;

*15 "(II) requires that the issuer cease and desist from violating the antifraud provisions of the securities laws; or

"(III) determines that the issuer violated the antifraud provisions of the securities laws;

"(B) makes the forward-looking statement in connection with an offering of securities by a blank

check company;

"(C) issues penny stock;

"(D) makes the forward-looking statement in connection with a rollup transaction; or

"(E) makes the forward-looking statement in connection with a going private transaction; or

"(2) that is-

"(A) included in a financial statement prepared in accordance with generally accepted accounting principles;

"(B) contained in a registration statement of, or otherwise issued by, an investment company;

"(C) made in connection with a tender offer;

"(D) made in connection with an initial public offering;

"(E) made in connection with an offering by, or relating to the operations of, a partnership, limited liability company, or a direct participation investment program; or

"(F) made in a disclosure of beneficial ownership in a report required to be filed with the Commission pursuant to section 13(d) of the Securities Exchange Act of 1934.

"(c) Safe Harbor.-

"(1) In general.-Except as provided in subsection (b), in any private action arising under this title that is based on an untrue statement of a material fact or omission of a material fact necessary to make the statement not misleading, a person referred to in subsection (a) shall not be liable with respect to any forward-looking statement, whether written or oral, if and to the extent that-

"(A) the forward-looking statement is-

"(i) identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement; or

"(ii) immaterial; or

"(B) the plaintiff fails to prove that the forward-looking statement-

"(i) if made by a natural person, was made with actual knowledge by that person that the statement was false or misleading; or

"(ii) if made by a business entity; was-

"(I) made by or with the approval of an executive officer of that entity, and

"(II) made or approved by such officer with actual knowledge by that officer that the statement was false or misleading.

"(2) Oral forward-looking statements.-In the case of an oral forward-looking statement made by an issuer that is subject to the reporting requirements of section 13(a) or section *16 15(d) of the Securities Exchange Act of 1934, or by a person acting on behalf of such issuer, the requirement set forth in paragraph (1)(A) shall be deemed to be satisfied-

"(A) if the oral forward-looking statement is accompanied by a cautionary statement-

"(i) that the particular oral statement is a forward-looking statement; and

"(ii) that the actual results could differ materially from those projected in the forward-looking statement; and

"(B) if-

"(i) the oral forward-looking statement is accompanied by an oral statement that additional information concerning factors that could cause actual results to differ materially from those in the forward-looking statement is contained in a readily available written document, or portion thereof;

"(ii) the accompanying oral statement referred to in clause (i) identifies the document, or portion thereof, that contains the additional information about those factors relating to the forward-

looking statement; and

"(iii) the information contained in that written document is a cautionary statement that satisfies the standard established in paragraph (1)(A).

"(3) Availability.-Any document filed with the Commission or generally disseminated shall be deemed to be readily available for purposes of paragraph (2).

"(4) Effect on other safe harbors.-The exemption provided for in paragraph (1) shall be in addition to any exemption that the Commission may establish by rule or regulation under subsection (g).

"(d) Duty To Update.-Nothing in this section shall impose upon any person a duty to update a forward-looking statement.

"(e) Dispositive Motion.-On any motion to dismiss based upon subsection (c)(1), the court shall consider any statement cited in the complaint and cautionary statement accompanying the forward-looking statement, which are not subject to material dispute, cited by the defendant.

"(f) Stay Pending Decision on Motion.-In any private action arising under this title, the court shall stay discovery (other than discovery that is specifically directed to the applicability of the exemption provided for in this section) during the pendency of any motion by a defendant for summary judgment that is based on the grounds that-

"(1) the statement or omission upon which the complaint is based is a forward-looking statement within the meaning of this section; and

"(2) the exemption provided for in this section precludes a claim for relief.

"(g) Exemption Authority.-In addition to the exemptions provided for in this section, the Commission may, by rule or regulation, provide exemptions from or under any provision of this title, including with respect to liability that is based on a statement or that is based on projections or other forward-looking information, if *17 and to the extent that any such exemption is consistent with the public interest and the protection of investors, as determined by the Commission.

"(h) Effect on Other Authority of Commission.-Nothing in this section limits, either expressly or by implication, the authority of the Commission to exercise similar authority or to adopt similar rules and regulations with respect to forward-looking statements under any other statute under which the Commission exercises rulemaking authority.

"(i) Definitions.-For purposes of this section, the following definitions shall apply:

"(1) Forward-looking statement.-The term 'forward-looking statement' means-

"(A) a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items;

"(B) a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;

"(C) a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission;

"(D) any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C);

"(E) any report issued by an outside reviewer retained by an issuer, to the extent that the report assesses a forward-looking statement made by the issuer; or

"(F) a statement containing a projection or estimate of such other items as may be specified by rule or regulation of the Commission.

"(2) Investment company.-The term 'investment company' has the same meaning as in section 3(a) of the Investment Company Act of 1940.

"(3) Penny stock.-The term 'penny stock' has the same meaning as in section 3(a)(51) of the Securities Exchange Act of 1934, and the rules and regulations, or orders issued pursuant to that section.

"(4) Going private transaction.-The term 'going private transaction' has the meaning given that term under the rules or regulations of the Commission issued pursuant to section 13(e) of the Securities Exchange Act of 1934.

"(5) Securities laws.-The term 'securities laws' has the same meaning as in section 3 of the Securities Exchange Act of 1934.

"(6) Person acting on behalf of an issuer.-The term 'person acting on behalf of an issuer' means an officer, director, or employee of the issuer.

"(7) Other terms.-The terms 'blank check company', 'rollup transaction', 'partnership', 'limited liability company', 'executive officer of an entity' and 'direct participation investment program', *18 have the meanings given those terms by rule or regulation of the Commission.".

(b) Amendment to the Securities Exchange Act of 1934.-The Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.) is amended by inserting after section 21D (as added by this Act) the following new section:

"SEC. 21E. APPLICATION OF SAFE HARBOR FOR FORWARD-LOOKING STATEMENTS.

"(a) Applicability.-This section shall apply only to a forward-looking statement made by-

"(1) an issuer that, at the time that the statement is made, is subject to the reporting requirements of section 13(a) or section 15(d);

"(2) a person acting on behalf of such issuer;

"(3) an outside reviewer retained by such issuer making a statement on behalf of such issuer; or

"(4) an underwriter, with respect to information provided by such issuer or information derived from information provided by such issuer.

"(b) Exclusions.-Except to the extent otherwise specifically provided by rule, regulation, or order of the Commission, this section shall not apply to a forward-looking statement-

"(1) that is made with respect to the business or operations of the issuer, if the issuer-

"(A) during the 3-year period preceding the date on which the statement was first made-

"(i) was convicted of any felony or misdemeanor described in clauses (i) through (iv) of section 15(b)(4)(B); or

"(ii) has been made the subject of a judicial or administrative decree or order arising out of a governmental action that-

"(I) prohibits future violations of the antifraud provisions of the securities laws;

"(II) requires that the issuer cease and desist from violating the antifraud provisions of the securities laws; or

"(III) determines that the issuer violated the antifraud provisions of the securities laws;

"(B) makes the forward-looking statement in connection with an offering of securities by a blank check company;

"(C) issues penny stock;

"(D) makes the forward-looking statement in connection with a rollup transaction; or

"(E) makes the forward-looking statement in connection with a going private transaction; or

"(2) that is-

"(A) included in a financial statement prepared in accordance with generally accepted accounting principles;

"(B) contained in a registration statement of, or otherwise issued by, an investment company;

"(C) made in connection with a tender offer;

"(D) made in connection with an initial public offering;

*19 "(E) made in connection with an offering by, or relating to the operations of, a partnership, limited liability company, or a direct participation investment program; or

"(F) made in a disclosure of beneficial ownership in a report required to be filed with the Commission pursuant to section 13(d).

"(c) Safe Harbor.-

"(1) In general.-Except as provided in subsection (b), in any private action arising under this title that is based on an untrue statement of a material fact or omission of a material fact necessary to make the statement not misleading, a person referred to in subsection (a) shall not be liable with respect to any forward-looking statement, whether written or oral, if and to the extent that-

"(A) the forward-looking statement is-

"(i) identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement; or

"(ii) immaterial; or

"(B) the plaintiff fails to prove that the forward-looking statement-

"(i) if made by a natural person, was made with actual knowledge by that person that the statement was false or misleading; or

"(ii) if made by a business entity; was-

"(I) made by or with the approval of an executive officer of that entity; and

"(II) made or approved by such officer with actual knowledge by that officer that the statement was false or misleading.

"(2) Oral forward-looking statements.-In the case of an oral forward-looking statement made by an issuer that is subject to the reporting requirements of section 13(a) or section 15(d), or by a person acting on behalf of such issuer, the requirement set forth in paragraph (1)(A) shall be deemed to be satisfied-

"(A) if the oral forward-looking statement is accompanied by a cautionary statement-

"(i) that the particular oral statement is a forward-looking statement; and

"(ii) that the actual results might differ materially from those projected in the forward-looking statement; and

"(B) if-

"(i) the oral forward-looking statement is accompanied by an oral statement that additional information concerning factors that could cause actual results to materially differ from those in the forward-looking statement is contained in a readily available written document, or portion thereof;

"(ii) the accompanying oral statement referred to in clause (i) identifies the document, or portion thereof, *20 that contains the additional information about those factors relating to the forward-looking statement; and

"(iii) the information contained in that written document is a cautionary statement that satisfies the standard established in paragraph (1)(A).

"(3) Availability.-Any document filed with the Commission or generally disseminated shall be

deemed to be readily available for purposes of paragraph (2).

"(4) Effect on other safe harbors.-The exemption provided for in paragraph (1) shall be in addition to any exemption that the Commission may establish by rule or regulation under subsection (g).

"(d) Duty To Update.-Nothing in this section shall impose upon any person a duty to update a forward-looking statement.

"(e) Dispositive Motion.-On any motion to dismiss based upon subsection (c)(1), the court shall consider any statement cited in the complaint and any cautionary statement accompanying the forward-looking statement, which are not subject to material dispute, cited by the defendant.

"(f) Stay Pending Decision on Motion.-In any private action arising under this title, the court shall stay discovery (other than discovery that is specifically directed to the applicability of the exemption provided for in this section) during the pendency of any motion by a defendant for summary judgment that is based on the grounds that-

"(1) the statement or omission upon which the complaint is based is a forward-looking statement within the meaning of this section; and

"(2) the exemption provided for in this section precludes a claim for relief.

"(g) Exemption Authority.-In addition to the exemptions provided for in this section, the Commission may, by rule or regulation, provide exemptions from or under any provision of this title, including with respect to liability that is based on a statement or that is based on projections or other forward-looking information, if and to the extent that any such exemption is consistent with the public interest and the protection of investors, as determined by the Commission.

"(h) Effect on Other Authority of Commission.-Nothing in this section limits, either expressly or by implication, the authority of the Commission to exercise similar authority or to adopt similar rules and regulations with respect to forward-looking statements under any other statute under which the Commission exercises rulemaking authority.

"(i) Definitions.-For purposes of this section, the following definitions shall apply:

"(1) Forward-looking statement.-The term 'forward-looking statement' means-

"(A) a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items;

*21 "(B) a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;

"(C) a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission;

"(D) any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C);

"(E) any report issued by an outside reviewer retained by an issuer, to the extent that the report assesses a forward-looking statement made by the issuer; or

"(F) a statement containing a projection or estimate of such other items as may be specified by rule or regulation of the Commission.

"(2) Investment company.-The term 'investment company' has the same meaning as in section 3(a) of the Investment Company Act of 1940.

"(3) Going private transaction.-The term 'going private transaction' has the meaning given that term under the rules or regulations of the Commission issued pursuant to section 13(e).

"(4) Person acting on behalf of an issuer.-The term 'person acting on behalf of an issuer' means

any officer, director, or employee of such issuer.

"(5) Other terms.-The terms 'blank check company', 'rollup transaction', 'partnership', 'limited liability company', 'executive officer of an entity' and 'direct participation investment program', have the meanings given those terms by rule or regulation of the Commission.".

SEC. 103. ELIMINATION OF CERTAIN ABUSIVE PRACTICES.

(a) Prohibition of Referral Fees.-Section 15(c) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(c)) is amended by adding at the end the following new paragraph:

"(8) Prohibition of referral fees.-No broker or dealer, or person associated with a broker or dealer, may solicit or accept, directly or indirectly, remuneration for assisting an attorney in obtaining the representation of any person in any private action arising under this title or under the Securities Act of 1933.".

(b) Prohibition of Attorneys' Fees Paid From Commission Disgorgement Funds.-

(1) Securities act of 1933.-Section 20 of the Securities Act of 1933 (15 U.S.C. 77t) is amended by adding at the end the following new subsection:

"(f) Prohibition of Attorneys' Fees Paid From Commission Disgorgement Funds.-Except as otherwise ordered by the court upon motion by the Commission, or, in the case of an administrative action, as otherwise ordered by the Commission, funds disgorged as the result of an action brought by the Commission in Federal court, or as a result of any Commission administrative action, shall not be distributed as payment for attorneys' fees or expenses *22 incurred by private parties seeking distribution of the disgorged funds.".

(2) Securities exchange act of 1934.-Section 21(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78u(d)) is amended by adding at the end the following new paragraph:

"(4) Prohibition of attorneys' fees paid from commission disgorgement funds.-Except as otherwise ordered by the court upon motion by the Commission, or, in the case of an administrative action, as otherwise ordered by the Commission, funds disgorged as the result of an action brought by the Commission in Federal court, or as a result of any Commission administrative action, shall not be distributed as payment for attorneys' fees or expenses incurred by private parties seeking distribution of the disgorged funds.".

SEC. 104. AUTHORITY OF COMMISSION TO PROSECUTE AIDING AND ABETTING.

Section 20 of the Securities Exchange Act of 1934 (15 U.S.C. 78t) is amended-

(1) by striking the section heading and inserting the following:

"LIABILITY OF CONTROLLING PERSONS AND PERSONS WHO AID AND ABET VIOLATIONS";

and

(2) by adding at the end the following new subsection:

"(f) Prosecution of Persons Who Aid and Abet Violations.-For purposes of any action brought by the Commission under paragraph (1) or (3) of section 21(d), any person that knowingly provides substantial assistance to another person in violation of a provision of this title, or of any rule or regulation issued under this title, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided.".

SEC. 105. LOSS CAUSATION.

Section 12 of the Securities Act of 1933 (15 U.S.C. 77l) is amended-
(1) by inserting "(a) In General.-" before "Any person";
(2) by inserting ", subject to subsection (b)," after "shall be liable"; and
(3) by adding at the end the following:
"(b) Loss Causation.-In an action described in subsection (a)(2), if the person who offered or sold such security proves that any portion or all of the amount recoverable under subsection (a)(2) represents other than the depreciation in value of the subject security resulting from such part of the prospectus or oral communication, with respect to which the liability of that person is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statement not misleading, then such portion or amount, as the case may be, shall not be recoverable.".

*23 SEC. 106. STUDY AND REPORT ON PROTECTIONS FOR SENIOR CITIZENS AND QUALIFIED RETIREMENT PLANS.

(a) In General.-Not later than 180 days after the date of enactment of this Act, the Securities and Exchange Commission shall-
(1) determine whether investors that are senior citizens or qualified retirement plans require greater protection against securities fraud than is provided in this Act and the amendments made by this Act;
(2) determine whether investors that are senior citizens or qualified retirement plans have been adversely impacted by abusive or unnecessary securities fraud litigation, and whether the provisions in this Act or amendments made by this Act are sufficient to protect their investments from such litigation; and
(3) if so, submit to the Congress a report containing recommendations on protections from securities fraud and abusive or unnecessary securities fraud litigation that the Commission determines to be appropriate to thoroughly protect such investors.
(b) Definitions.-For purposes of this section-
(1) the term "qualified retirement plan" has the same meaning as in section 4974(c) of the Internal Revenue Code of 1986; and
(2) the term "senior citizen" means an individual who is 62 years of age or older as of the date of the securities transaction at issue.

SEC. 107. AMENDMENT TO RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT.

Section 1964(c) of title 18, United States Code, is amended by inserting before the period ", except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final".

SEC. 108. APPLICABILITY.

The amendments made by this title shall not affect or apply to any private action arising under title I of the Securities Exchange Act of 1934 or title I of the Securities Act of 1933, commenced before and pending on the date of enactment of this Act.

## TITLE II-REDUCTION OF COERCIVE SETTLEMENTS

## SEC. 201. PROPORTIONATE LIABILITY.

(a) Amendment to Securities and Exchange Act of 1934.-Section 21D the Securities Exchange Act of 1934 (as added by this Act) is amended by adding at the end the following new subsection:

"(g) Proportionate Liability.-

"(1) Applicability.-Nothing in this subsection shall be construed to create, affect, or in any manner modify, the standard *24 for liability associated with any action arising under the securities laws.

"(2) Liability for damages.-

"(A) Joint and several liability.-Any covered person against whom a final judgment is entered in a private action shall be liable for damages jointly and severally only if the trier of fact specifically determines that such covered person knowingly committed a violation of the securities laws.

"(B) Proportionate liability.-

"(i) In general.-Except as provided in paragraph (1), a covered person against whom a final judgment is entered in a private action shall be liable solely for the portion of the judgment that corresponds to the percentage of responsibility of that covered person, as determined under paragraph (3).

"(ii) Recovery by and costs of covered person.-In any case in which a contractual relationship permits, a covered person that prevails in any private action may recover the attorney's fees and costs of that covered person in connection with the action.

"(3) Determination of responsibility.-

"(A) In general.-In any private action, the court shall instruct the jury to answer special interrogatories, or if there is no jury, shall make findings, with respect to each covered person and each of the other persons claimed by any of the parties to have caused or contributed to the loss incurred by the plaintiff, including persons who have entered into settlements with the plaintiff or plaintiffs, concerning-

"(i) whether such person violated the securities laws;

"(ii) the percentage of responsibility of such person, measured as a percentage of the total fault of all persons who caused or contributed to the loss incurred by the plaintiff; and

"(iii) whether such person knowingly committed a violation of the securities laws.

"(B) Contents of special interrogatories or findings.-The responses to interrogatories, or findings, as appropriate, under subparagraph (A) shall specify the total amount of damages that the plaintiff is entitled to recover and the percentage of responsibility of each covered person found to have caused or contributed to the loss incurred by the plaintiff or plaintiffs.

"(C) Factors for consideration.-In determining the percentage of responsibility under this paragraph, the trier of fact shall consider-

"(i) the nature of the conduct of each covered person found to have caused or contributed to the loss incurred by the plaintiff or plaintiffs; and

"(ii) the nature and extent of the causal relationship between the conduct of each such person and the damages incurred by the plaintiff or plaintiffs.

*25 "(4) Uncollectible share.-

"(A) In general.-Notwithstanding paragraph (2)(B), upon motion made not later than 6 months after a final judgment is entered in any private action, the court determines that all or part of the share of the judgment of the covered person is not collectible against that covered person, and is also not collectible against a covered person described in paragraph (2)(A), each covered person described in paragraph (2)(B) shall be liable for the uncollectible share as follows:

"(i) Percentage of net worth.-Each covered person shall be jointly and severally liable for the uncollectible share if the plaintiff establishes that-

"(I) the plaintiff is an individual whose recoverable damages under the final judgment are equal to more than 10 percent of the net worth of the plaintiff; and

"(II) the net worth of the plaintiff is equal to less than $200,000.

"(ii) Other plaintiffs.-With respect to any plaintiff not described in subclauses (I) and (II) of clause (i), each covered person shall be liable for the uncollectible share in proportion to the percentage of responsibility of that covered person, except that the total liability of a covered person under this clause may not exceed 50 percent of the proportionate share of that covered person, as determined under paragraph (3)(B).

"(iii) Net worth.-For purposes of this subparagraph, net worth shall be determined as of the date immediately preceding the date of the purchase or sale (as applicable) by the plaintiff of the security that is the subject of the action, and shall be equal to the fair market value of assets, minus liabilities, including the net value of the investments of the plaintiff in real and personal property (including personal residences).

"(B) Overall limit.-In no case shall the total payments required pursuant to subparagraph (A) exceed the amount of the uncollectible share.

"(C) Covered persons subject to contribution.-A covered person against whom judgment is not collectible shall be subject to contribution and to any continuing liability to the plaintiff on the judgment.

"(5) Right of contribution.-To the extent that a covered person is required to make an additional payment pursuant to paragraph (4), that covered person may recover contribution-

"(A) from the covered person originally liable to make the payment;

"(B) from any covered person liable jointly and severally pursuant to paragraph (2)(A);

"(C) from any covered person held proportionately liable pursuant to this paragraph who is liable to make the same payment and has paid less than his or her proportionate share of that payment; or

*26 "(D) from any other person responsible for the conduct giving rise to the payment that would have been liable to make the same payment.

"(6) Nondisclosure to jury.-The standard for allocation of damages under paragraphs (2) and (3) and the procedure for reallocation of uncollectible shares under paragraph (4) shall not be disclosed to members of the jury.

"(7) Settlement discharge.-

"(A) In general.-A covered person who settles any private action at any time before final verdict or judgment shall be discharged from all claims for contribution brought by other persons. Upon entry of the settlement by the court, the court shall enter a bar order constituting the final discharge of all obligations to the plaintiff of the settling covered person arising out of the action. The order shall bar all future claims for contribution arising out of the action-

"(i) by any person against the settling covered person; and

"(ii) by the settling covered person against any person, other than a person whose liability has been extinguished by the settlement of the settling covered person.

"(B) Reduction.-If a covered person enters into a settlement with the plaintiff prior to final verdict or judgment, the verdict or judgment shall be reduced by the greater of-

"(i) an amount that corresponds to the percentage of responsibility of that covered person; or

"(ii) the amount paid to the plaintiff by that covered person.

"(8) Contribution.-A covered person who becomes jointly and severally liable for damages in any private action may recover contribution from any other person who, if joined in the original action, would have been liable for the same damages. A claim for contribution shall be determined based on the percentage of responsibility of the claimant and of each person against whom a claim for contribution is made.

"(9) Statute of limitations for contribution.-In any private action determining liability, an action for contribution shall be brought not later than 6 months after the entry of a final, nonappealable judgment in the action, except that an action for contribution brought by a covered person who was required to make an additional payment pursuant to paragraph (4) may be brought not later than 6 months after the date on which such payment was made.

"(10) Definitions.-For purposes of this subsection-

"(A) a covered person 'knowingly commits a violation of the securities laws'-

"(i) with respect to an action that is based on an untrue statement of material fact or omission of a material fact necessary to make the statement not misleading, if-

"(I) that covered person makes an untrue statement of a material fact, with actual knowledge that the representation is false, or omits to state a *27 fact necessary in order to make the statement made not misleading, with actual knowledge that, as a result of the omission, one of the material representations of the covered person is false; and

"(II) persons are likely to reasonably rely on that misrepresentation or omission; and

"(ii) with respect to an action that is based on any conduct that is not described in clause (i), if that covered person engages in that conduct with actual knowledge of the facts and circumstances that make the conduct of that covered person a violation of the securities laws;

"(B) reckless conduct by a covered person shall not be construed to constitute a knowing commission of a violation of the securities laws by that covered person;

"(C) the term 'covered person' means-

"(i) a defendant in any private action arising under this title; or

"(ii) a defendant in any private action arising under section 11 of the Securities Act of 1933, who is an outside director of the issuer of the securities that are the subject of the action; and

"(D) the term 'outside director' shall have the meaning given such term by rule or regulation of the Commission.".

(b) Amendments to the Securities Act of 1933.-Section 11(f) of the Securities Act of 1933 (12 U.S.C. 77k(f)) is amended-

(1) by striking "All" and inserting "(1) Except as provided in paragraph (2), all"; and

(2) by adding at the end the following new paragraph:

"(2)(A) The liability of an outside director under subsection (e) shall be determined in accordance with section 38 of the Securities Exchange Act of 1934.

"(B) For purposes of this paragraph, the term 'outside director' shall have the meaning given such term by rule or regulation of the Commission .".

SEC. 202. APPLICABILITY.

The amendments made by this title shall not affect or apply to any private action arising under the securities laws commenced before and pending on the date of enactment of this Act.

SEC. 203. RULE OF CONSTRUCTION.

Nothing in this Act or the amendments made by this Act shall be deemed to create or ratify any implied private right of action, or to prevent the Commission, by rule or regulation, from restricting or otherwise regulating private actions under the Securities Exchange Act of 1934.

*28 TITLE III–AUDITOR DISCLOSURE OF CORPORATE FRAUD

SEC. 301. FRAUD DETECTION AND DISCLOSURE.

(a) In General.-The Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.) is amended by inserting immediately after section 10 the following new section:

"SEC. 10A. AUDIT REQUIREMENTS.

"(a) In General.-Each audit required pursuant to this title of the financial statements of an issuer by an independent public accountant shall include, in accordance with generally accepted auditing standards, as may be modified or supplemented from time to time by the Commission-
"(1) procedures designed to provide reasonable assurance of detecting illegal acts that would have a direct and material effect on the determination of financial statement amounts;
"(2) procedures designed to identify related party transactions that are material to the financial statements or otherwise require disclosure therein; and
"(3) an evaluation of whether there is substantial doubt about the ability of the issuer to continue as a going concern during the ensuing fiscal year.
"(b) Required Response To Audit Discoveries.-
"(1) Investigation and report to management.-If, in the course of conducting an audit pursuant to this title to which subsection (a) applies, the independent public accountant detects or otherwise becomes aware of information indicating that an illegal act (whether or not perceived to have a material effect on the financial statements of the issuer) has or may have occurred, the accountant shall, in accordance with generally accepted auditing standards, as may be modified or supplemented from time to time by the Commission-
"(A)(i) determine whether it is likely that an illegal act has occurred; and
"(ii) if so, determine and consider the possible effect of the illegal act on the financial statements of the issuer, including any contingent monetary effects, such as fines, penalties, and damages; and
"(B) as soon as practicable, inform the appropriate level of the management of the issuer and assure that the audit committee of the issuer, or the board of directors of the issuer in the absence of such a committee, is adequately informed with respect to illegal acts that have been detected or have otherwise come to the attention of such accountant in the course of the audit, unless the illegal act is clearly inconsequential.
"(2) Response to failure to take remedial action.-If, after determining that the audit committee of the board of directors of the issuer, or the board of directors of the issuer in the absence of an

audit committee, is adequately informed with respect to illegal acts that have been detected or have otherwise come to the attention of the accountant in the course of the *29 audit of such accountant, the independent public accountant concludes that-

"(A) the illegal act has a material effect on the financial statements of the issuer;

"(B) the senior management has not taken, and the board of directors has not caused senior management to take, timely and appropriate remedial actions with respect to the illegal act; and

"(C) the failure to take remedial action is reasonably expected to warrant departure from a standard report of the auditor, when made, or warrant resignation from the audit engagement; the independent public accountant shall, as soon as practicable, directly report its conclusions to the board of directors.

"(3) Notice to commission; response to failure to notify.-An issuer whose board of directors receives a report under paragraph (2) shall inform the Commission by notice not later than 1 business day after the receipt of such report and shall furnish the independent public accountant making such report with a copy of the notice furnished to the Commission. If the independent public accountant fails to receive a copy of the notice before the expiration of the required 1-business-day period, the independent public accountant shall-

"(A) resign from the engagement; or

"(B) furnish to the Commission a copy of its report (or the documentation of any oral report given) not later than 1 business day following such failure to receive notice.

"(4) Report after resignation.-If an independent public accountant resigns from an engagement under paragraph (3)(A), the accountant shall, not later than 1 business day following the failure by the issuer to notify the Commission under paragraph (3), furnish to the Commission a copy of the accountant's report (or the documentation of any oral report given).

"(c) Auditor Liability Limitation.-No independent public accountant shall be liable in a private action for any finding, conclusion, or statement expressed in a report made pursuant to paragraph (3) or (4) of subsection (b), including any rule promulgated pursuant thereto.

"(d) Civil Penalties in Cease-and-Desist Proceedings.-If the Commission finds, after notice and opportunity for hearing in a proceeding instituted pursuant to section 21C, that an independent public accountant has willfully violated paragraph (3) or (4) of subsection (b), the Commission may, in addition to entering an order under section 21C, impose a civil penalty against the independent public accountant and any other person that the Commission finds was a cause of such violation. The determination to impose a civil penalty and the amount of the penalty shall be governed by the standards set forth in section 21B.

"(e) Preservation of Existing Authority.-Except as provided in subsection (d), nothing in this section shall be held to limit or otherwise affect the authority of the Commission under this title.

"(f) Definition.-As used in this section, the term 'illegal act' means an act or omission that violates any law, or any rule or regulation having the force of law.".

*30 (b) Effective Dates.-The amendment made by subsection (a) shall apply to each annual report-

(1) for any period beginning on or after January 1, 1996, with respect to any registrant that is required to file selected quarterly financial data pursuant to the rules or regulations of the Securities and Exchange Commission; and

(2) for any period beginning on or after January 1, 1997, with respect to any other registrant.

And the Senate agree to the same.

That the House recede from its disagreement to the amendment of the Senate to the title of the bill, and agree to the same.

From the Committee on Commerce, for consideration of the House bill, and the Senate amendment, and modifications committed to conference:
Thomas Bliley,
Billy Tauzin,
Jack Fields,
Chris Cox,
Richard F. White,
Anna G. Eshoo,
As additional conferees from the Committee on the Judiciary, for consideration of the House bill, and the Senate amendment, and modifications committed to conference:
Bill McCollum,
Managers on the Part of the House.
Alfonse D'Amato,
Phil Gramm,
Robert F. Bennett,
Rod Grams,
Pete V. Domenici,
Christopher Dodd,
John F. Kerry,
Managers on the Part of the Senate.

## *31 JOINT EXPLANATORY STATEMENT OF THE COMMITTEE OF CONFERENCE

The managers on the part of the House and the Senate at the conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H.R. 1058) to reform Federal securities litigation, and for other purposes, submit the following joint statement to the House and the Senate in explanation of the effect of the action agreed upon by the managers and recommended in the accompanying conference report:

## STATEMENT OF MANAGERS-THE "PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995"

The overriding purpose of our Nation's securities laws is to protect investors and to maintain confidence in the securities markets, so that our national savings, capital formation and investment may grow for the benefit of all Americans.
The private securities litigation system is too important to the integrity of American capital markets to allow this system to be undermined by those who seek to line their own pockets by bringing abusive and meritless suits. Private securities litigation is an indispensable tool with which defrauded investors can recover their losses without having to rely upon government action. Such private lawsuits promote public and global confidence in our capital markets and help to deter wrongdoing and to guarantee that corporate officers, auditors, directors, lawyers and others properly perform their jobs. This legislation seeks to return the securities litigation system to that high standard.
Congress has been prompted by significant evidence of abuse in private securities lawsuits to enact reforms to protect investors and maintain confidence in our capital markets. The House and Senate Committees heard evidence that abusive practices committed in private securities litigation include: (1) the routine filing of lawsuits against issuers of securities and others

whenever there is a significant change in an issuer's stock price, without regard to any underlying culpability of the issuer, and with only faint hope that the discovery process might lead eventually to some plausible cause of action; (2) the targeting of deep pocket defendants, including accountants, underwriters, and individuals who may be covered by insurance, without regard to their actual culpability; (3) the abuse of the discovery process to impose costs so burdensome that it is often economical for the victimized party to settle; and (4) the manipulation by class action lawyers of the clients whom they purportedly represent. These serious injuries to innocent parties are compounded by the reluctance of many judges to impose sanctions under Federal Rule of Civil Procedure 11, except in those cases involving truly outrageous misconduct. At the same time, the investing public and the entire U.S. economy have been injured by the **731 *32 unwillingness of the best qualified persons to serve on boards of directors and of issuers to discuss publicly their future prospects, because of fear of baseless and extortionate securities lawsuits.

In these and other examples of abusive and manipulative securities litigation, innocent parties are often forced to pay exorbitant "settlements." When an insurer must pay lawyers' fees, make settlement payments, and expend management and employee resources in defending a meritless suit, the issuers' own investors suffer. Investors always are the ultimate losers when extortionate "settlements" are extracted from issuers.

This Conference Report seeks to protect investors, issuers, and all who are associated with our capital markets from abusive securities litigation. This legislation implements needed procedural protections to discourage frivolous litigation. It protects outside directors, and others who may be sued for non-knowing securities law violations, from liability for damage actually caused by others. It reforms discovery rules to minimize costs incurred during the pendency of a motion to dismiss or a motion for summary judgment. It protects investors who join class actions against lawyer-driven lawsuits by giving control of the litigation to lead plaintiffs with substantial holdings of the securities of the issuer. It gives victims of abusive securities lawsuits the opportunity to recover their attorneys' fees at the conclusion of an action. And it establishes a safe harbor for forward looking statements, to encourage issuers to disseminate relevant information to the market without fear of open-ended liability.

## PRIVATE SECURITIES LITIGATION REFORM

Section 101 contains provisions to reform abusive securities class action litigation. It amends the Securities Act of 1933 (the "1933 Act") by adding a new section 27 and the Securities Exchange Act of 1934 (the "1934 Act") by adding a new section 21D. These provisions are intended to encourage the most capable representatives of the plaintiff class to participate in class action litigation and to exercise supervision and control of the lawyers for the class. These provisions are intended to increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel. The legislation also provides that all discovery is stayed during the pendency of any motion to dismiss or for summary judgment. These stay of discovery provisions are intended to prevent unnecessary imposition of discovery costs on defendants.

## THE PROFESSIONAL PLAINTIFF AND LEAD PLAINTIFF PROBLEMS

House and Senate Committee hearings on securities litigation reform demonstrated the need to

reform abuses involving the use of "professional plaintiffs" and the race to the courthouse to file the complaint.

Professional plaintiffs who own a nominal number of shares in a wide array of public companies permit lawyers readily to file abusive securities class action lawsuits. Floor debate in the Senate highlighted that many of the "world's unluckiest investors" repeatedly *33 **732 appear as lead plaintiffs in securities class action lawsuits. These lead plaintiffs often receive compensation in the form of bounty payments or bonuses.

The Conference Committee believes these practices have encouraged the filing of abusive cases. Lead plaintiffs are not entitled to a bounty for their services. Individuals who are motivated by the payment of a bounty or bonus should not be permitted to serve as lead plaintiffs. These individuals do not adequately represent other shareholders-in many cases the "lead plaintiff" has not even read the complaint.

The Conference Committee believes that several new rules will effectively discourage the use of professional plaintiffs.

Plaintiff certification of the complaint

This legislation requires, in new section 27(a)(2) of the 1933 Act and new section 21D(a)(2) of the 1934 Act, that the lead plaintiff file a sworn certified statement with the complaint. The statement must certify that the plaintiff: (a) reviewed and authorized the filing of the complaint; (b) did not purchase the securities at the direction of counsel or in order to participate in a lawsuit; and (c) is willing to serve as the lead plaintiff on behalf of the class. To further deter the use of professional plaintiffs, the plaintiff must also identify any transactions in the securities covered by the class period, and any other lawsuits in which the plaintiff has sought to serve as lead plaintiff in the last three years. [FN1]

Method for determining the "most adequate plaintiff"

The Conference Committee was also troubled by the plaintiffs' lawyers "race to the courthouse" to be the first to file a securities class action complaint. This race has caused plaintiffs' attorneys to become fleet of foot and sleight of hand. Most often speed has replaced diligence in drafting complaints. The Conference Committee believes two incentives have driven plaintiffs' lawyers to be the first to file. First, courts traditionally appoint counsel in class action lawsuits on a "first come, first serve" basis. Courts often afford insufficient consideration to the most thoroughly researched, but later filed, complaint. The second incentive involves the court's decision as to who will become lead plaintiff. Generally, the first lawsuit filed also determines the lead plaintiff.

The Conference Committee believes that the selection of the lead plaintiff and lead counsel should rest on considerations other than how quickly a plaintiff has filed its complaint. As a result, this legislation establishes new procedures for the appointment of the lead plaintiff and lead counsel in securities class actions in new section 27(a)(3) of the 1933 Act and new section 21D(a)(3) of the 1934 Act.

A plaintiff filing a securities class action must, within 20 days of filing a complaint, provide notice to members of the purported class in a widely circulated business publication. This notice must identify the claims alleged in the lawsuit and the purported class period and inform potential class members that, within 60 days, they may move to serve as the lead plaintiff.

Members of the purported *34 **733 class who seek to serve as lead plaintiff do not have to file the certification filing as part of this motion. "Publication" includes a variety of media, including wire, electronic or computer services. [FN2]

Within 90 days of the published notice, the court must consider motions made under this section and appoint the lead plaintiff. If a motion has been filed to consolidate multiple class actions brought on behalf of the same class, the court will not appoint a lead plaintiff until after consideration of the motion.

The current system often works to prevent institutional investors from selecting counsel or serving as lead plaintiff in class actions. [FN3] The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the "most adequate plaintiff."

The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions. Institutional investors are America's largest shareholders, with about $9.5 trillion in assets, accounting for 51% of the equity market. According to one representative of institutional investors: "As the largest shareholders in most companies, we are the ones who have the most to gain from meritorious securities litigation." [FN4]

Several Senators expressed concern during floor consideration of this legislation that preference would be given to large investors, and that large investors might conspire with the defendant company's management. The Conference Committee believes, however, that with pension funds accounting for $4.5 trillion [FN5] or nearly half of the institutional assets, in many cases the beneficiaries of pension funds-small investors-ultimately have the greatest stake in the outcome of the lawsuit. Cumulatively, these small investors represent a single large investor interest. Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake. The claims of both types of class members generally will be typical.

The Conference Committee recognizes the potential conflicts that could be caused by the shareholder with the "largest financial stake" serving as lead plaintiff. As a result, this presumption may be rebutted by evidence that the plaintiff would not fairly and adequately represent the interests of the class or is subject to unique defenses. Members of the purported class may seek discovery on whether the presumptively most adequate plaintiff would not adequately represent the class. The provisions of the bill relating to the appointment of a lead plaintiff are not intended to affect current law with regard to challenges to the adequacy of the class representative or typicality of the claims among the class.

Although the most adequate plaintiff provision does not confer any new fiduciary duty on institutional investors-and the courts should not impose such a duty-the Conference Committee nevertheless intends that the lead plaintiff provision will encourage institutional investors to take a more active role in securities class action lawsuits. Scholars predict that increasing the role of institutional *35 **734 investors will benefit both injured shareholders and courts: "Institutions with large stakes in class actions have much the same interests as the plaintiff class generally; thus, courts could be more confident settlements negotiated under the supervision of institutional plaintiffs were 'fair and reasonable' than is the case with settlements negotiated by unsupervised plaintiffs' attorneys." [FN6]

Finally, this lead plaintiff provision solves the dilemma of who will serve as class counsel.

Subject to court approval, the most adequate plaintiff retains class counsel. As a result, the Conference Committee expects that the plaintiff will choose counsel rather than, as is true today, counsel choosing the plaintiff. The Conference Committee does not intend to disturb the court's discretion under existing law to approve or disapprove the lead plaintiff's choice of counsel when necessary to protect the interests of the plaintiff class.

The Conference Report seeks to restrict professional plaintiffs from serving as lead plaintiff by limiting a person from serving in that capacity more than five times in three years. Institutional investors seeking to serve as lead plaintiff may need to exceed this limitation and do not represent the type of professional plaintiff this legislation seeks to restrict. As a result, the Conference Committee grants courts discretion to avoid the unintended consequence of disqualifying institutional investors from serving more than five times in three years. The Conference Committee does not intend for this provision to operate at cross purposes with the "most adequate plaintiff" provision. The Conference Committee does expect, however, that it will be used with vigor to limit the activities of professional plaintiffs.

Limitation on lead plaintiff's recovery

This legislation also removes the financial incentive for becoming a lead plaintiff. New section 27(a)(4) of the 1933 Act and section 21D(a)(4) of the 1934 Act limits the class representative's recovery to his or her pro rata share of the settlement or final judgment. The lead plaintiff's share of the final judgment or settlement will be calculated in the same manner as the shares of the other class members. The Conference Committee recognizes that lead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the courts discretion to award fees accordingly.

## IMPROVEMENTS TO THE SETTLEMENT PROCESS

Restriction on sealed settlement agreements

New section 27(a)(5) of the 1933 Act and section 21D(a)(5) of the 1934 Act generally bar the filing of settlement agreements under seal. The Conference Committee recognizes that legitimate reasons may exist for the court to permit the entry of a settlement or portions of a settlement under seal. A party must show "good cause," i.e., that the publication of a portion or portions of the settlement agreement would result in direct and substantial harm to any party, whether or not a party to the action. The Conference Committee intends "direct and substantial harm" to include proof of reputational injury to a party.

**735 *36 Limitation on attorney's fees

The House and Senate heard testimony that counsel in securities class actions often receive a disproportionate share of settlement awards.

Under current practice, courts generally award attorney's fees based on the so-called "lodestar" approach-i.e., the court multiplies the attorney's hours by a reasonable hourly fee, which may be increased by an additional amount based on risk or other relevant factors. [FN7] Under this approach, attorney's fees can constitute 35% or more of the entire settlement awarded to the class. The Conference Committee limits the award of attorney's fees and costs to counsel for a class in new section 27(a)(6) of the 1933 Act and new section 21D(a)(6) of the 1934 Act to a

reasonable percentage of the amount of recovery awarded to the class. By not fixing the percentage of fees and costs counsel may receive, the Conference Committee intends to give the court flexibility in determining what is reasonable on a case-by-case basis. The Conference Committee does not intend to prohibit use of the lodestar approach as a means of calculating attorney's fees. The provision focuses on the final amount of fees awarded, not the means by which such fees are calculated.

Improved settlement notice to class members

The House and Senate heard testimony that class members frequently lack meaningful information about the terms of the proposed settlement. [FN8] Class members often receive insufficient notice of the terms of a proposed settlement and, thus, have no basis to evaluate the settlement. As one bar association advised the Senate Securities Subcommittee, "settlement notices provided to class members are often obtuse and confusing, and should be written in plain English." [FN9] The Senate received similar testimony from a class member in two separate securities fraud lawsuits: "Nowhere in the settlement notices were the stockholders told of how much they could expect to recover of their losses. . . . I feel that the settlement offer should have told the stockholders how little of their losses will be recovered in the settlement, and that this is a material fact to the shareholder's decision to approve or disapprove the settlement." [FN10]
In new section 27(a)(7) of the 1933 Act and new section 21D(a)(7) of the 1934 Act, the Conference Committee requires that certain information be included in any proposed or final settlement agreement disseminated to class members. To ensure that critical information is readily available to class members, the Conference Committee requires that such information appear in summary form on the cover page of the notice. The notice must contain a statement of the average amount of damages per share that would be recoverable if the settling parties can agree on a figure, or a statement from each settling party on why there is disagreement. It must also explain the attorney's fees and costs sought. The name, telephone number and address of counsel for the class must be provided. Most importantly, the notice must include a brief statement explaining the reason for the proposed settlement.

**736 *37 MAJOR SECURITIES CLASS ACTION ABUSES

Limits on abusive discovery to prevent "fishing expedition" lawsuits

The cost of discovery often forces innocent parties to settle frivolous securities class actions. According to the general counsel of an investment bank, "discovery costs account for roughly 80% of total litigation costs in securities fraud cases." [FN11] In addition, the threat that the time of key employees will be spent responding to discovery requests, including providing deposition testimony, often forces coercive settlements.
The House and Senate heard testimony that discovery in securities class actions often resembles a fishing expedition. As one witness noted, "once the suit is filed, the plaintiff's law firm proceeds to search through all of the company's documents and take endless depositions for the slightest positive comment which they can claim induced the plaintiff to invest and any shred of evidence that the company knew a downturn was coming." [FN12]
The Conference Committee provides in new section 27(b) of the 1933 Act and new section 21D(b)(3) of the 1934 Act that courts must stay all discovery pending a ruling on a motion to dismiss, unless exceptional circumstances exist where particularized discovery is necessary to

preserve evidence or to prevent undue prejudice to a party. For example, the terminal illness of an important witness might require the deposition of the witness prior to the ruling on the motion to dismiss.

To ensure that relevant evidence will not be lost, new section 27(b) of the 1933 Act and new section 21D(b)(3) of the 1934 Act make it unlawful for any person, upon receiving actual notice that names that person as a defendant, willfully to destroy or otherwise alter relevant evidence. The Conference Committee intends this provision to prohibit only the willful alteration or destruction of evidence relevant to the litigation. The provision does not impose liability where parties inadvertently or unintentionally destroy what turn out later to be relevant documents. Although this prohibition expressly applies only to defendants, the Conference Committee believes that the willful destruction of evidence by a plaintiff would be equally improper, and that courts have ample authority to prevent such conduct or to apply sanctions as appropriate.

"Fair share" rule of proportionate liability

One of the most manifestly unfair aspects of the current system of securities litigation is its imposition of liability on one party for injury actually caused by another. Under current law, a single defendant who has been found to be 1% liable may be forced to pay 100% of the damages in the case. The Conference Committee remedies this injustice by providing a "fair share" system of proportionate liability. As former SEC Chairman Richard Breeden testified, under the current regime of joint and several liability, "parties who are central to perpetrating a fraud often pay little, if anything. At the same time, those whose involvement might be only peripheral and lacked any deliberate and knowing participation in the fraud often pay the most in damages." [FN13]

The current system of joint and several liability creates coercive pressure for entirely innocent parties to settle meritless claims **737 *38 rather than risk exposing themselves to liability for a grossly disproportionate share of the damages in the case.

In many cases, exposure to this kind of unlimited and unfair risk has made it impossible for firms to attract qualified persons to serve as outside directors. Both the House and Senate Committees repeatedly heard testimony concerning the chilling effect of unlimited exposure to meritless securities litigation on the willingness of capable people to serve on company boards. SEC Chairman Levitt himself testified that "there [were] the dozen or so entrepreneurial firms whose invitations [to be an outside director] I turned down because they could not adequately insure their directors . . . . [C]ountless colleagues in business have had the same experience, and the fact that so many qualified people have been unable to serve is, to me, one of the most lamentable problems of all." [FN14] This result has injured the entire U.S. economy.

Accordingly, the Conference Committee has reformed the traditional rule of joint and several liability. The Conference Report specifically applies this reform to the liability of outside directors under Section 11 of the 1933 Act, [FN15] because the current imposition of joint and several liability for non- knowing Section 11 violations by outside directors presents a particularly glaring example of unfairness. By relieving outside directors of the specter of joint and several liability under Section 11 for non-knowing conduct, Section 201 of the Conference Report will reduce the pressure placed by meritless litigation on the willingness of capable outsiders to serve on corporate boards.

In addition, Section 201 will provide the same "fair share" rule of liability, rather than joint and several liability, for all 1934 Act cases in which liability can be predicated on non-knowing

conduct. [FN16]

In applying the "fair share" rule of proportionate liability to cases involving non-knowing securities violations, the Conference Committee explicitly determined that the legislation should make no change to the state of mind requirements of existing law. Accordingly, the definition of "knowing" conduct in the Conference Report is written to conform to existing statutory standards, and Section 201 of the Conference Report makes clear that the "fair share" rule of proportionate liability does not create any new cause of action or expand, diminish, or otherwise affect the substantive standard for liability in any action under the 1933 Act or the 1934 Act. This section of the Conference Report further provides that the standard of liability in any such action should be determined by the pre-existing, unamended statutory provision that creates the cause of action, without regard to this provision, which applies solely to the allocation of damages.

The Conference Report imposes full joint and several liability, as under current law, on defendants who engage in knowing violations of the securities laws. Defendants who are found liable but have not engaged in knowing violations are responsible only for their share of the judgment (based upon the fact finder's apportionment of responsibility), with two key exceptions. First, all defendants are jointly and severally liable with respect to the claims of certain plaintiffs. Such plaintiffs are defined in the Conference Report as those who establish that (i) they are entitled to damages **738 *39 exceeding 10% of their net worth, and (ii) their net worth is less than $200,000. The $200,000 net worth test does not reflect a judgment by the Conference Committee that investors who fall below this standard are "small," unsophisticated, or in need of or entitled to any special protection under the securities laws. Second, if a defendant cannot pay their allocable share of the damages due to insolvency, each of the other defendants must make an additional payment-up to 50% of their own liability-to make up the shortfall in the plaintiff's recovery.

The Conference Committee recognizes that private parties may wish to allocate attorney's fees and costs according to a formula negotiated previously by contract. Accordingly, the Conference Report provides that where authorized by contract a prevailing defendant may recover attorney's fees and costs. The Conference Report does not change the enforceability of indemnification contracts in the event of settlement.


Attorneys' fees awarded to prevailing parties in abusive litigation


The Conference Committee recognizes the need to reduce significantly the filing of meritless securities lawsuits without hindering the ability of victims of fraud to pursue legitimate claims. The Conference Committee seeks to solve this problem by strengthening the application of Rule 11 of the Federal Rules of Civil Procedure in private securities actions.

Existing Rule 11 has not deterred abusive securities litigation. [FN17] Courts often fail to impose Rule 11 sanctions even where such sanctions are warranted. When sanctions are awarded, they are generally insufficient to make whole the victim of a Rule 11 violation: the amount of the sanction is limited to an amount that the court deems sufficient to deter repetition of the sanctioned conduct, rather than imposing a sanction that equals the costs imposed on the victim by the violation. Finally, courts have been unable to apply Rule 11 to the complaint in such a way that the victim of the ensuing lawsuit is compensated for all attorneys' fees and costs incurred in the entire action.

The legislation gives teeth to Rule 11 in new section 27(c) of the 1933 Act and new section

21D(c) of the 1934 Act by requiring the court to include in the record specific findings, at the conclusion of the action, as to whether all parties and all attorneys have complied with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure.

These provisions also establish the presumption that the appropriate sanction for filing a complaint that violates Rule 11(b) is an award to the prevailing party of all attorney's fees and costs incurred in the entire action. The Conference Report provides that, if the action is brought for an improper purpose, is unwarranted by existing law or legally frivolous, is not supported by facts, or otherwise fails to satisfy the requirements set forth in Rule 11(b), the prevailing party presumptively will be awarded its attorneys' fees and costs for the entire action. This provision does not mean that a party who is sanctioned for only a partial failure of the complaint under Rule 11, such as one count out of a 20-count complaint, must pay for all of the attorney's fees and costs associated with the action. The Conference Committee expects that courts will **739 *40 grant relief from the presumption where a de minimis violation of the Rule has occurred. Accordingly, the Conference Committee specifies that the failure of the complaint must be "substantial" and makes the presumption rebuttable.

For Rule 11(b) violations involving responsive pleadings or dispositive motions, the rebuttable presumption is an award of attorneys' fees and costs incurred by the victim of the violation as a result of that particular pleading or motion.

A party may rebut the presumption of sanctions by providing that: (i) the violation was de minimis; or (ii) the imposition of fees and costs would impose an undue burden and be unjust, and it would not impose a greater burden for the prevailing party to have to pay those same fees and costs. The premise of this test is that, when an abusive or frivolous action is maintained, it is manifestly unjust for the victim of the violation to bear substantial attorneys' fees. The Conference Committee recognizes that little in the way of justice can be achieved by attempting to compensate the prevailing party for lost time and such other measures of damages as injury to reputation; hence it has written into law the presumption that a prevailing party should not have the cost of attorney's fees added as insult to the underlying injury. If a party successfully rebuts the presumption, the court then impose sanctions consistent with Rule 11(c)(2). [FN18] The Conference Committee intends this provision to impose upon courts the affirmative duty to scrutinize filings closely and to sanction attorneys or parties whenever their conduct violates Rule 11(b).


Limitation on attorney's conflict of interest

The Conference Committee believes that, in the context of class action lawsuits, it is a conflict of interest for a class action lawyer to benefit from the outcome of the case where the lawyer owns stock in the company being sued. Accordingly, new section 27(a)(8) of the 1933 Act and new section 21D(a)(9) requires the court to determine whether a lawyer who owns securities in the defendant company and who seeks to represent the plaintiff class in a securities class action should be disqualified from representing the class.


Bonding for payment of fees and expenses

The house hearings on securities litigation reform revealed the need for explicit authority for courts to require undertakings for attorney's fees and costs from parties, or their counsel, or both, in order to ensure the viability of potential sanctions as a deterrent to meritless litigation. [FN19]

Congress long ago authorized similar undertakings in the express private right of action in Section 11 of the 1933 Act and in Sections 9 and 18 of the 1934 Act. The availability of such undertakings in private securities actions will be an important means of ensuring that the provision of the Conference Report authorizing the award of attorneys' fees and costs under Rule 11 will not become, in practice, a one-way mechanism only usable to sanction parties with deep pockets. [FN20]

The legislation expressly provides that such undertakings may be required of parties' attorneys in lieu of, or in addition to, the parties themselves. In this regard, the Conference Committee intends to preempt any contrary state bar restrictions that much inhibit *41 **740 attorneys' provision of such undertakings in behalf of their clients. The Conference Committee anticipates, for example, that where a judge determines to require an undertaking in a class action, such an undertaking would ordinarily be imposed on plaintiffs' counsel rather than upon the plaintiff class, both because the financial resources of counsel would ordinarily be more extensive than those of an individual class member and because counsel are better situated than class members to evaluate the merits of cases and individual motions. This provision is intended to effectuate the remedial purposes of the bill's Rule 11 provision.

## REQUIREMENTS FOR SECURITIES FRAUD ACTIONS

Heightened pleading standard

Naming a party in a civil suit for fraud is a serious matter. Unwarranted fraud claims can lead to serious injury to reputation for which our legal system effectively offers no redress. For this reason, among others, Rule 9(b) of the Federal Rules of Civil Procedure requires that plaintiffs plead allegations of fraud with "particularity." The Rule has not prevented abuse of the securities laws by private litigants. [FN21] Moreover, the courts of appeals have interpreted Rule 9(b)'s requirement in conflicting ways, creating distinctly different standards among the circuits. [FN22] The House and Senate hearings on securities litigation reform included testimony on the need to establish uniform and more stringent pleading requirements to curtail the filing of meritless lawsuits.

The Conference Committee language is based in part on the pleading standard of the Second Circuit. The standard also is specifically written to conform the language to Rule 9(b)'s notion of pleading with "particularity."

Regarded as the most stringent pleading standard, the Second Circuit requirement is that the plaintiff state facts with particularity, and that these facts, in turn, must give rise to a "strong inference" of the defendant's fraudulent intent. Because the Conference Committee intends to strengthen existing pleading requirements, it does not intend to codify the Second Circuit's case law interpreting this pleading standard. [FN23] The plaintiff must also specifically plead with particularity each statement alleged to have been misleading. The reason or reasons why the statement is misleading must also be set forth in the compliant in detail. If an allegation is made on information and belief, the plaintiff must state with particularity all facts in the plaintiff's possession on which the belief is formed.

Loss causation

The Conference Committee also requires the plaintiff to plead and then to prove that the misstatement or omission alleged in the complaint actually caused the loss incurred by the

plaintiff in new Section 21D(b)(4) of the 1934 Act. For example, the plaintiff would have to prove that the price at which the plaintiff bought the stock was artificially inflated as the result of the misstatement or omission.

**741 *42 DAMAGES

Written interrogatories

In an action to recover money damages, the Conference Committee requires the court to submit written interrogatories to the jury on the issue of defendant's state of mind at the time of the violation. In expressly providing for certain interrogatories, the Committee does not intend to otherwise prohibit or discourage the submission of interrogatories concerning the mental state or relative fault of the plaintiff and of persons who could have been joined as defendants. For example, interrogatories may be appropriate in contribution proceedings among defendants or in computing liability when some of the defendants have entered into settlement with the plaintiff prior to verdict or judgment.

Limitation on "windfall" damages

The current method of calculating damages in 1934 Act securities fraud cases is complex and uncertain. As a result, there are often substantial variations in the damages calculated by the defendants and the plaintiffs. Typically, in an action involving a fraudulent misstatement or omission, the investor's damages are presumed to be the difference between the price the investor paid for the security and the price of the security on the day the corrective information gets disseminated to the market.
Between the time a misrepresentation is made and the time the market receives corrected information, however, the price of the security may rise or fall for reasons unrelated to the alleged fraud. According to an analysis provided to the Senate Securities Subcommittee, on average, damages in securities litigation comprise approximately 27.7 [FN24] of market loss. Calculating damages based on the date corrective information is disclosed may end up substantially overestimating plaintiff's damages. [FN25] The Conference Committee intends to rectify the uncertainty in calculating damages in new section 21D(e) of the 1934 Act by providing a "look back" period, thereby limiting damages to those losses caused by the fraud and not by other market conditions.
This provision requires that plaintiff's damages be calculated based on the "mean trading price" of the security. This calculation takes into account the value of the security on the date plaintiff originally bought or sold the security and the value of the security during the 90-day period after dissemination of any information correcting the misleading statement or omission. If the plaintiff sells those securities or repurchases the subject securities during the 90-day period, damages will be calculated based on the price of that transaction and the value of the security immediately after the dissemination of corrective information.

SAFE HARBOR FOR FORWARD-LOOKING STATEMENTS

The muzzling effect of abusive securities litigation

Abusive litigation severely affects the willingness of corporate managers to disclose information

to the marketplace. Former SEC Chairman Richard Breeden testified in a Senate Securities Subcommittee hearing on this subject: "Shareholders are also damaged **742 *43 due to the chilling effect of the current system on the robustness and candor of disclosure. . . . Understanding a company's own assessment of its future potential would be among the most valuable information shareholders and potential investors could have about a firm." [FN26] Fear that inaccurate projections will trigger the filing of securities class action lawsuit has muzzled corporate management. One study found that over two-thirds of venture capital firms were reluctant to discuss their performance with analysts or the public because of the threat of litigation. [FN27] Anecdotal evidence similarly indicates corporate counsel advise clients to say as little as possible, because "legions of lawyers scrub required filings to ensure that disclosures are as milquetoast as possible, so as to provide no grist for the litigation mill." [FN28] Technology companies-because of the volatility of their stock prices-are particularly vulnerable to securities fraud lawsuits when projections do not materialize. If a company fails to satisfy its announced earnings projections-perhaps because of changes in the economy or the timing of an order or new product-the company is likely to face a lawsuit.

A statutory safe harbor for forward-looking statements

The Conference Committee has adopted a statutory "safe harbor" to enhance market efficiency by encouraging companies to disclose forward-looking information. This provision adds a new section 27A to the 1933 Act and a new section 21E of the 1934 Act which protects from liability in private lawsuits certain "forward-looking" statements made by persons specified in the legislation. [FN29]
The Conference Committee has crafted a safe harbor that differs from the safe harbor provisions in the House and Senate passed bills. The Conference Committee safe harbor, like the Senate safe harbor, is based on aspects of SEC Rule 175 and the judicial created "bespeaks caution" doctrine. It is a bifurcated safe harbor that permits greater flexibility to those who may avail themselves of safe harbor protection. There is also a special safe harbor for issuers who make oral forward-looking statements.
The first prong of the safe harbor protects a written or oral forward-looking statement that is: (i) identified as forward-looking, and (ii) accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those projected in the statement.
Under this first prong of the safe harbor, boilerplate warnings will not suffice as meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those projected in the statement. The cautionary statements must convey substantive information about factors that realistically could cause results to differ materially from those projected in the forward-looking statement, such as, for example, information about the issuer's business.
As part of the analysis of what constitutes a meaningful cautionary statement, courts should consider the factors identified in the statements. "Important" factors means the stated factors identified in the cautionary statement must be relevant to the projection *44 **743 and must be of a nature that the factor or factors could actually affect whether the forward-looking statement is realized.
The Conference Committee expects that the cautionary statements identify important factors that could cause results to differ materially-but not all factors. Failure to include the particular factor

that ultimately causes the forward-looking statement not to come true will not mean that the statement is not protected by the safe harbor. The Conference Committee specifies that the cautionary statements identify "important" factors to provide guidance to issuers and not to provide an opportunity for plaintiff counsel to conduct discovery on what factors were known to the issuer at the time the forward-looking statement was made.

The use of the words "meaningful" and "important factors" are intended to provide a standard for the types of cautionary statements upon which a court may, where appropriate, decide a motion to dismiss, without examining the state of mind of the defendant. The first prong of the safe harbor requires courts to examine only the cautionary statement accompanying the forward-looking statement. Courts should not examine the state of mind of the person making the statement.

Courts may continue to find a forward-looking statement immaterial-and thus not actionable under the 1933 Act and the 1934 Act-on other grounds. To clarify this point, the Conference Committee includes language in the safe harbor provision that no liability attaches to forward-looking statements that are "immaterial."

The safe harbor seeks to provide certainty that forward-looking statements will not be actionable by private parties under certain circumstances. Forward-looking statements will have safe harbor protection if they are accompanied by a meaningful cautionary statement. A cautionary statement that misstates historical facts is not covered by the Safe harbor, it is not sufficient, however, in a civil action to allege merely that a cautionary statement misstates historical facts. The plaintiff must plead with particularity all facts giving rise to a strong inference of a material misstatement in the cautionary statement to survive a motion to dismiss.

The second prong of the safe harbor provides an alternative analysis. This safe harbor also applies to both written and oral forward-looking statements. Instead of examining the forward-looking and cautionary statements, this prong of the safe harbor focuses on the state of mind of the person making the forward-looking statement. A person or business entity will not be liable in a private lawsuit for a forward-looking statement unless a plaintiff proves that person or business entity made a false or misleading forward-looking statement with actual knowledge that it was false or misleading. The Conference Committee intends for this alternative prong of the safe harbor to apply if the plaintiff fails to prove the forward-looking statement (1) if made by a natural person, was made with the actual knowledge by that person that the statement was false or misleading; or (2) if made by a business entity, was made by or with the approval of an executive officer of the entity with actual knowledge by that officer that the statement was false or misleading.

**744 *45 The Conference Committee recognizes that, under certain circumstances, it may be unwieldy to make oral forward-looking statements relying on the first prong of the safe harbor. Companies who want to make a brief announcement of earnings or a new product would first have to identify the statement as forward-looking and then provide cautionary statements identifying important factors that could cause results to differ materially from those projected in the statement. As a result, the Conference Committee has provided for an optional, more flexible rule for oral forward-looking statements that will facilitate these types of oral communications by an issuer while still providing to the public information it would have received if the forward-looking statement was written. The Conference Committee intends to limit this oral safe harbor to issuers or the officers, directors, or employees of the issuer acting on the issuer's behalf.

This legislation permits covered issuers, or persons acting on the issuer's behalf, to make oral forward-looking statements within the safe harbor. The person making the forward-looking

statement must identify the statement as a forward-looking statement and state that results may differ materially from those projected in the statement. The person must also identify a "readily available" written document that contains factors that could cause results to differ materially. The written information identified by the person making the forward-looking statement must qualify as a "cautionary statement" under the first prong of the safe harbor (i.e., it must be a meaningful cautionary statement or statements that identify important factors that could cause actual results to differ materially from those projected in the forward-looking statement.) For purposes of this provision, "readily available" information refers to SEC filed documents, annual reports and other widely disseminated materials, such as press releases.

Who and what receives safe harbor protection

The safe harbor provision protects written and oral forward-looking statements made by issuers and certain persons retained or acting on behalf of the issuer. The Conference Committee intends the statutory safe harbor protection to make more information about a company's future plans available to investors and the public. The safe harbor covers underwriters, but only insofar as the underwriters provide forward looking information that is based on or "derived from" information provided by the issuer. Because underwriters have what is effectively an adversarial relationship with issuers in performing due diligence, the use of the term "derived from" affords underwriters some latitude so that they may disclose adverse information that the issuer did not necessarily "provide." The Conference Committee does not intend the safe harbor to cover forward-looking information made in connection with a broker's sales practices.

The Conference Committee adopts the SEC's present definition, as set forth in Rule 175, of forward-looking information, with certain additions and clarifying changes. The definition covers: (i) certain financial items, including projections of revenues, income and earnings, capital expenditures, dividends, and capital structure; (ii) management's statement of future business plans and objectives, *46 **745 including with respect to its products or services; and (iii) certain statements made in SEC required disclosures, including management's discussion and analysis and results of operations; and (iv) any statement disclosing the assumptions underlying the forward-looking statement.

The Conference Committee has determined that the statutory safe harbor should not apply to certain forward-looking statements. Thus, the statutory safe harbor does not protect forward-looking statements: (1) included in financial statements prepared in accordance with generally accepted accounting principles; (2) contained in an initial public offering registration statement; (3) made in connection with a tender offer; (4) made in connection with a partnership, limited liability company or direct participation program offering; or (5) made in beneficial ownership disclosure statements filed with the SEC under Section 13(d) of the 1934 Act.

At this time, the Conference Committee recognizes that certain types of transactions and issuers may not be suitable for inclusion in a statutory safe harbor absent some experience with the statute. Although this legislation restricts partnerships, limited liability companies and direct participation programs from safe harbor protection, the Conference Committee expects the SEC to consider expanding the safe harbor to cover these entities where appropriate. The legislation authorizes the SEC to adopt exemptive rules or grant exemptive orders to those entities for whom a safe harbor should be available. The SEC should consider granting exemptive orders for established and reputable entities who are excluded from the safe harbor.

Moreover, the Committee has determined to extend the statutory safe harbor only to forward-

looking information of certain established issuers subject to the reporting requirements of section 13(a) or section 15(d) of the 1934 Act. Except as provided by SEC rule or regulation, the safe harbor does not extend to an issuer who: (a) during the three year period preceding the date on which the statement was first made, has been convicted of a felony or misdemeanor described in clauses (i) through (iv) of Section 15(b)(4) or is the subject of a decree or order involving a violation of the securities laws; (b) makes the statement in connection with a "blank check" securities offering, "rollup transaction," or "going private" transaction; or (c) issues penny stock. The Committee intends for its statutory safe harbor provisions to serve as a starting point and fully expects the SEC to continue its rulemaking proceedings in this area. The SEC should, as appropriate, promulgate rules or regulations to expand the statutory safe harbor by providing additional exemptions from liability or extending its coverage to additional types of information. This legislation also makes clear that nothing in the safe harbor provision imposes any duty to update forward-looking statements.

The Conference Committee does not intend for the safe harbor provisions to replace the judicial "bespeaks caution" doctrine or to foreclose further development of that doctrine by the courts.

**746 *47 The safe harbor and stay of discovery

The legislation provides that, on any motion to dismiss the compliant based on the application of the safe harbor, the court shall consider the statements cited in the complaint and statements identified by the defendant in its moving papers, including any cautionary statements accompanying the forward-looking statement that are not subject to material dispute. The applicability of the safe harbor provisions under subsection (c)(1)(B) shall be based on the "actual knowledge" of the defendant and does not depend on the use of cautionary language. The applicability of the safe harbor provisions under subsections (c)(1)(A)(I) and (c)(2) shall be based upon the sufficiency of the cautionary language under those provisions and does not depend on the state of mind of the defendant. In the case of a compliant based on an oral forward-looking statement in which information concerning factors that could cause actual results to differ materially is contained in a "readily available" written document, the court shall consider statements in the readily available written documents.

INAPPLICABILITY OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) TO
PRIVATE SECURITIES ACTIONS.

The SEC has supported removing securities fraud as a predicate offense in a civil action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). SEC Chairman Arthur Levitt testified: "Because the securities laws generally provide adequate remedies for those injured by securities fraud, it is both necessary and unfair to expose defendants in securities cases to the threat of treble damages and other extraordinary remedies provided by RICO." [FN30] The Conference Committee amends section 1964(c) of title 18 of the U.S. Code to remove any conduct that would have been actionable as fraud in the purchase or sale of securities as racketeering activity under civil RICO. The Committee intends this amendment to eliminate securities fraud as a predicate offense in a civil RICO action. In addition, the Conference Committee intends that a plaintiff may not plead other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.

AUDITOR DISCLOSURE OF CORPORATE FRAUD

The Conference Report requires independent public accountants to adopt certain procedures in connection with their audits and to inform the SEC of illegal acts. These requirements would be carried out in accordance with generally accepted auditing standards for audits of SEC registrants-as modified from time to time by the Commission-on the detection of illegal acts, related party transactions and relationships, and evaluation of an issuer's ability to continue as a going concern.

The Conference Committee does not intend to affect the Commission's authority in areas not specifically addressed by this provision. The Conference Committee expects that the SEC will continue its longstanding practice of looking to the private sector to set **747 *48 and to improve auditing standards. The SEC should not act to "modify" or "supplement" generally accepted auditing standards for SEC registrants until after it has determined that the private sector is unable or unwilling to do so on a timely basis. The Conference Committee intends for the SEC to have discretion, however, to determine the appropriateness and timeliness of the private sector response. The SEC should act promptly if required by the public interest or for the protection of investors.

FOOTNOTES

**748 *49 From the Committee on Commerce, for consideration of the House bill, and the Senate amendment, and modifications committed to conference:
Thomas Bliley,
Billy Tauzin,
Jack Fields,
Chris Cox,
Richard F. White,
Anna G. Eshoo,
As additional conferees from the Committee on the Judiciary, for consideration of the House bill, and the Senate amendment, and modifications committed to conference:
Bill McCollum,
Managers on the Part of the House.


Alfonse D'Amato,
Phil Gramm,
Robert F. Bennett,
Rod Grams,
Pete V. Domenici,
Christopher Dodd,
John F. Kerry,
Managers on the Part of the Senate.

FN1 This certification should not be construed to waive the attorney-client privilege.

FN2 The notice provisions in this subsection do not replace or supersede other notice provisions provided in the Federal Rules of Civil Procedure.

FN3 See Elliott J. Weiss and John S. Beckerman, "Let the Money Do the Monitoring: How Institutional Investors Can Reduce Agency Costs in Securities Class Actions," 104 Yale L.J. 2053 (1995).

FN4 See testimony of Maryellen Anderson, Investor and Corporate Relations Director of the Connecticut Retirement & Trust Funds and Treasurer of the Council of Institutional Investors before the Securities Subcommittee of the Senate Committee on Banking, Housing, and Urban Affairs, July 21, 1993.

FN5 See The Brancato Report on Institutional Investment, "Total Assets and Equity Holdings," Vol. 2, Ed. 1.

FN6 See "Let the Money do the Monitoring," note 3, supra.

FN7 See generally Majority Staff Report, May 17, 1994 at page 81 et seq.

FN8 See testimony of Patricia Reilly before the Securities Subcommittee of the Senate Committee on Banking, Housing, and Urban Affairs, June 17, 1993.

FN9 See NASCAT Analysis of Pending Legislation on Securities Fraud Litigation, Hearing on Securities Litigation Reform Proposals: Subcommittee on Securities, Senate Committee on Banking, Housing, and Urban Affairs, March 2, 1995.

FN10 See testimony of Patricia Reilly, note 8 supra.

FN11 See testimony of former SEC Commissioner J. Carter Beese, Jr., Chairman of the Capital Markets Regulatory Reform Project Center for Strategic and International Studies, before the Securities Subcommittee of the Senate Committee on Banking, Housing, and Urban Affairs, March 2, 1995 (citing testimony of Philip A. Lacavara before the Telecommunications and Finance Subcommittee of the House Committee on Energy and Commerce, hearing on H.R. 3185.)

FN12 See testimony of Richard J. Egan, Chairman of the Board of EMC Corporation before the Securities Subcommittee of the Senate Committee on Banking, Housing, and Urban Affairs, June 17, 1993. See also testimony of Dennis Bakke, President and CEO, AES Corporation, before the Telecommunications and Finance Subcommittee of the House Committee on Commerce, January 19, 1995.

FN13 See testimony of Hon. Richard Breeden, former Chairman, Securities and Exchange Commission, before the Subcommittee on Telecommunications and Finance, House Commerce Committee, February 10, 1995. See also testimony of Daniel Gelzer, id. at 274.

FN14 See testimony of Hon. Arthur Levitt, Chairman, Securities and Exchange Commission, before the Subcommittee on Telecommunications and Finance of the House Commerce Committee, February 10, 1995, at 192. See also id. at 116, 126 (testimony of Dennis W. Bakke,

Chairman and CEO, AES Corporation); id. at 137-8 (testimony of James Kimsey, Chairman, America Online).

FN15 The Conference Report makes no change in the law with respect to Section 11 claims against other types of defendants. Section 11 expressly provides for a right of contribution, see Section 11(f), and this right has been construed to establish contribution and settlement standards like those set forth in the Conference Report. This section has no effect on the interpretation of Section 11(f) with respect to defendants other than outside directors.

FN16 See Section 16(b) (short-swing transactions) and Section 18 (liability for misleading statements).

FN17 See, e.g., testimony of Saul S. Cohen, Rosenman & Colin, before the Telecommunications and Finance Subcommittee of the House Committee on Commerce, February 10, 1995. ("In our experience, Rule 11 has been largely ineffective in deterring strike suits. As a general matter, courts rarely grant Rule 11 sanctions in all but the most egregious circumstances".)

FN18 Rule 11(c)(2) limits sanctions to "what is sufficient to deter the repetition of such conduct or comparable conduct by others similarly situated".

FN19 See testimony of John Olson, Chairman, American Bar Association Business Law Section, before the Subcommittee on Telecommunications and Finance, House Commerce Committee, February 10, 1995.

FN20 See id.

FN21 See, e.g., testimony of Saul S. Cohen, Rosenman & Colin, before the Telecommunications and Finance Subcommittee of the House Committee on Commerce at 234-35 (February 10, 1995).

FN22 See id.

FN23 For this reason, the Conference Report chose not to include in the pleading standard certain language relating to motive, opportunity, or recklessness.

FN24 The percentages of damages as market losses in the analysis ranged from 7.9% to 100% See Princeton Venture Research, Inc., "PVR Analysis, Securities Law Class Actions, Damages as a Percent of Market Losses," June 15, 1993.

FN25 See Lev and de Villiers, "Stock Price Crashes and 10b-5 Damages: A Legal, Economic and Policy Analysis," Standford Law Review, 7, 9-11 (1994).

FN26 See testimony of Hon. Richard C. Breeden, former Chairman, SEC, before the Securities Subcommittee of the Senate Committee on Banking, Housing, and Urban Affairs, April 6, 1995.

FN27 See testimony of the National Venture Capital Association before the Securities

Subcommittee on the Senate Committee on Banking, Housing, and Urban Affairs, March 2, 1995.

FN28 See testimony of Hon. J. Carter Beese, former SEC Commissioner, at id.

FN29 The concept of a safe harbor for forward-looking statements made under certain conditions is not new. In 1979, the SEC promulgated Rule 175 to provide a safe harbor for certain forward looking statements made with a "reasonable basis" and in "good faith." This safe harbor has not provided companies meaningful protection from litigation. In a February 1995 letter to the SEC, a major pension fund stated: "A major failing of the existing safe harbor is that while it may provide theoretical protection to issuers from liability when disclosing projections, it fails to prevent the threat of frivolous lawsuits that arises every time a legitimate projection is not realized." See February 14, 1995 letter from the California Public Employees' Retirement System to the SEC. Courts have also crafted a safe harbor for forward-looking statements or projections accompanied by sufficient cautionary language. The First, Second, Third, Sixth and Ninth Circuits have adopted a version of the "bespeaks caution" doctrine. See, e.g., In re Worlds of Wonder Securities Litigation, 35 F. 3d 1407 (9th Cir. 1994); Rubinstein v. Collins, 20 F.3d 169 (5th Cir. 1994): Kline v. First Western Government Securities, Inc., 24 F. 3d 480 (3d Cir. 1994); Sinay v. Lamson & Sessions Company, 948 F.2d 1037 (6th Cir. 1991); I. Meyer Pincus & Associates v. Oppenheimer & Co., Inc., 936 F.2d 759 (2d Cir. 1991); Romani v. Shearson Lehman Hutton, 929 F.2d 875 (1st Cir. 1991); Luce v. Edelstein, 802 F.2d 49 (2d Cir. 1986); In re Donald J. Trump Casino, 7 F.3d 357 (3d Cir. 1993).

FN30 See testimony of Hon. Arthur Levitt, Chairman, SEC, before the Telecommunications and Finance Subcommittee of the House Commerce Committee, February 10, 1995.
H.R. CONF. REP. 104-369, H.R. Conf. Rep. No. 369, 104TH Cong., 1ST Sess. 1995, 1995 U.S.C.C.A.N. 730, 1995 WL 709276 (Leg.Hist.)
END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.