# Exhibit 1

Service: **Get by LEXSEE®**
Citation: **2003 U.S. Dist. LEXIS 22315**

*2003 U.S. Dist. LEXIS 22315, \*; Fed. Sec. L. Rep. (CCH) P92,636*

JEFF JANOVICI, Individually and On Behalf of All Others Similarly Situated v. DVI, INC., et al.; MARK B. WILLIAMS, Individually and On Behalf of All Others Similarly Situated v. MICHAEL A. O'HANLON, et al.; ALLISON B. RICE, Individually and On Behalf of All Others Similarly Situated v. MICHAEL A. O'HANLON, et al.; BHARAT PAREKH, Individually and On Behalf of All Others Similarly Situated v. MICHAEL A. O'HANLON, et al.; STEPHEN BENCE, IV, Individually and On Behalf of All Others Similarly Situated v. MICHAEL A. O'HANLON, et al.; MURARI OJHA, Individually and On Behalf of All Others Similarly Situated v. MICHAEL A. O'HANLON, et al.; KENNETH GROSSMAN, Individually and On Behalf of All Others Similarly Situated v. MICHAEL A. O'HANLON, et al.; SHIRLEY H. KAREL, Individually and On Behalf of All Others Similarly Situated v. MICHAEL A. O'HANLON, et al.

CIVIL ACTION NO. 2:03-CV-04795-LDD, CIVIL ACTION NO. 2:03-CV-04963-LDD, CIVIL ACTION NO. 2:03-CV-05000-LDD, CIVIL ACTION NO. 2:03-CV-05111-LDD, CIVIL ACTION NO. 2:03-CV-05141-LDD, CIVIL ACTION NO. 2:03-CV-05244-LDD, CIVIL ACTION NO. 2:03-CV-05336-LDD, CIVIL ACTION NO. 2:03-CV-05674-LDD

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2003 U.S. Dist. LEXIS 22315; Fed. Sec. L. Rep. (CCH) P92,636

November 25, 2003, Decided
November 25, 2003, Filed; November 26, 2003, Entered

**SUBSEQUENT HISTORY:** Motion granted by, in part, Motion denied by, in part, Count dismissed at In re DVI Secs. Litig., 2005 U.S. Dist. LEXIS 17286 (E.D. Pa., May 31, 2005)

**DISPOSITION:** **[\*1]** Motions of Cedar Street Group in Grossman et. al. v. Merrill Lynch & Co., Inc. et al., 03-CV-5336, for Consolidation, Appointment as Lead Plaintiff, Approval of Selection of Lead Counsel and Liaison Counsel were granted in all respects.

### CASE SUMMARY

**PROCEDURAL POSTURE:** In eight class action lawsuits, plaintiff stock purchasers sued defendants, corporate officers and an underwriter, alleging securities fraud. Multiple stock purchasers moved for consolidation pursuant to Fed. R. Civ. P. 42(a). Multiple stock purchasers also petitioned to be appointed as lead plaintiff as well as for approval of their selection of lead counsel.

**OVERVIEW:** The stock purchasers alleged that defendants participated in a fraudulent scheme and made misleading statements in an effort to maintain artificially high market prices for a corporation's securities. The court consolidated the actions since the actions shared significant common issues of law and fact and any differences in claims were premised on the same facts and statutory provisions. The court determined the appropriate moving deadline and which published notice satisfied the requirements of the Private Securities Litigation Reform Act of 1995 (PSLRA). One notice failed to comply with the requirements because it incorrectly noticed the pendency of a dismissed action. Under the PSLRA, the court also determined that a group consisting of two institutional investors and one individual investor was the presumptive "most adequate" plaintiff because that group had the largest financial interest in the relief sought and satisfied the typicality and adequacy requirements of Fed. R. Civ. P. 23(a). The presumption of the "most adequate" plaintiff was not rebutted, because there was no proof that the group was subject to unique defenses or would not protect the interest of the class.

**OUTCOME:** The court granted the motion to consolidate filed by one group of stock purchasers, appointed that group as lead plaintiff, and approved that group's selection of lead counsel.

**CORE TERMS:** notice, pendency, appointment, purported, movant, consolidation, presumptive, largest, deadline, consolidated, investor, lead counsel, purchasers, inflated, stock, individual investor, comprised, common stock, appoint, appointed, financial interest, purchasing, co-lead, class action, misleading, instructs, false and misleading, consolidated action, consolidate, artificially

### LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Trials > Consolidation of Actions 🔄
*HN1*✚ A court has broad discretion to consolidate actions involving common questions of law or fact if it will facilitate the administration of justice. Fed. R. Civ. P. 42(a). More Like This Headnote

Civil Procedure > Trials > Consolidation of Actions 🔄
*HN2*✚ See Fed. R. Civ. P. 42(a).

Civil Procedure > Trials > Consolidation of Actions 🔄
*HN3*✚ When considering consolidation the court must balance the benefits of judicial economy and expediting the litigation against the possibility of prejudice. More Like This Headnote

Civil Procedure > Trials > Consolidation of Actions 🔄
Securities Law > Bases for Liability > Private Securities Litigation 🔄
*HN4*✚ The Private Securities Litigation Reform Act of 1995 directs that cases should be consolidated where there is more than one action on behalf of a class asserting substantially the same claim or claims. 15 U.S.C.S. § 78u-4(a)(3)(B)(ii). More Like This Headnote

Civil Procedure > Class Actions > Judicial Discretion 🔄
Securities Law > Bases for Liability > Private Securities Litigation 🔄
*HN5*✚ The Private Securities Litigation Reform Act of 1995 instructs that, "as soon as practicable" after the resolution of the motions to consolidate, the court shall appoint the most adequate plaintiff to serve as lead plaintiff of the class. 15 U.S.C.S. § 78u-4(a)(3)(B)(ii). More Like This Headnote

Civil Procedure > Class Actions > Judicial Discretion 🔄
Securities Law > Bases for Liability > Private Securities Litigation 🔄
*HN6*✚ The Private Securities Litigation Reform Act of 1995 requires plaintiffs filing private securities class action complaints to publish a notice of pendency of the suit in a widely circulated business publication or wire service no later than 20 days after the complaint is filed. 15 U.S.C.S. § 78u-4(a)(3)(A)(I). No later than 60 days after the publication of notice, any member of the purported class may file a motion to serve as lead plaintiff. 15 U.S.C.S. § 78u-4(a)(3)(A)(i)(II). If a motion for consolidation has been made, the court shall not appoint a lead plaintiff until after it renders a decision on the motion to consolidate. 15 U.S.C.S. § 78u-4(a)(3)(B)(ii). More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Class Actions > Judicial Discretion 🔄
Securities Law > Bases for Liability > Private Securities Litigation 🔄
*HN7*✚ The Private Securities Litigation Reform Act of 1995 instructs the court to appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members. 15 U.S.C.S. § 78u-4(a)(3)(B)(I). To this end, the statute creates a rebuttable presumption that the most adequate plaintiff is the person or group of persons that -- (aa) has either filed the complaint or made a motion in response to a notice; (bb) in the determination of the court, has the largest financial interests in the relief sought by the class; (cc) otherwise satisfies the requirements of Fed. R. Civ. P. 23. 15 U.S.C.S. § 78u-4(a)(3)(B)(iii)

(II). This presumption may only be rebutted by a member of the purported plaintiff class upon proof that the presumptively most adequate plaintiff -- (aa) will not fairly and adequately protect the interest of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(II). More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Class Actions > Judicial Discretion 📖

Securities Law > Bases for Liability > Private Securities Litigation 📖

*HN8* The process of determining the "most adequate" plaintiff is summarized by the United States Court of Appeals for the Third Circuit: The Private Securities Litigation Reform Act of 1995 establishes a two-step process for appointing a lead plaintiff: the court first identifies the presumptive lead plaintiff, and then determines whether any member of the putative class had rebutted the presumption. 15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(I), (II). More Like This Headnote

Civil Procedure > Class Actions > Judicial Discretion 📖

Securities Law > Bases for Liability > Private Securities Litigation 📖

*HN9* The Private Securities Litigation Reform Act of 1995 instructs that, within 20 days of filing a complaint under the statute, plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class (I) of pendency of the action, the claims asserted therein, and the purported class period; and (II) that not later than 60 days after the date on which the notice was published, any member of the purported class may move the court to serve as lead plaintiff of the purported class. 15 U.S.C.S. § 78u-4(a)(3)(A)(I). If more than one action on behalf of the class asserting substantially the same claims or claims is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published. 15 U.S.C.S. § 78u-4(a)(3)(A)(ii). More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Class Actions > Judicial Discretion 📖

Securities Law > Bases for Liability > Private Securities Litigation 📖

*HN10* In deciding a motion for the appointment of lead plaintiff under the Private Securities Litigation Reform Act of 1995 (PSLRA), the court has an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA, that is, encouraging the most adequate plaintiff, the plaintiff with the largest financial stake in the outcome of the litigation, to come forward and take control of the litigation. This means that in order for a notice of pendency to encourage the most adequate plaintiff to come forward and control the litigation, it must contain accurate information from which an interested class member may contact the court and readily obtain a copy of the complaint in a pending action and/or file a motion to be appointed as lead counsel in that case. More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Class Actions > Judicial Discretion 📖

Securities Law > Bases for Liability > Private Securities Litigation 📖

*HN11* Pursuant to the Private Securities Litigation Reform Act of 1995 statutory framework, the "most adequate" plaintiff must have either filed a complaint in the consolidated actions or timely moved for appointment as lead plaintiff. 15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(II)(aa). More Like This Headnote

Civil Procedure > Class Actions > Judicial Discretion 📖

Securities Law > Bases for Liability > Private Securities Litigation 📖

*HN12* A motion for appointment of lead plaintiff is timely when filed not later than 60 days after the date on which the notice is published. 15 U.S.C.S. § 78u-4(a)(3)(A)(i)(II). More Like This Headnote

Civil Procedure > Class Actions > Judicial Discretion 📖

Securities Law > Bases for Liability > Private Securities Litigation 📖

*HN13* Generally the 60-day expiration period begins to run from the publication date on which the first notice of pendency was filed. 15 U.S.C.S. § 78u-4(a)(3)(A)(ii). If more than one action on behalf of

a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff or plaintiff in the first filed action shall be required to cause notice to be published. 15 U.S.C.S. § 78u-4(a)(3)(A)(ii). This rule does not apply, however, where the first notice of pendency fails to provide adequate information pursuant to the terms of the Private Securities Litigation Reform Act of 1995 (PSLRA) -- the statutory 60 day period beings to run from the date of the first notice that complies with the PSLRA. Additionally, where multiple notices are published informing class members of the pendency of litigation and the notices contain conflicting information regarding the expiration of the 60 day period, it would be inconsistent with basic notions of fairness and the purposes of the notification provisions of the PSLRA to mechanically enforce a strict time limit with respect to the 60 day expiration period. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Class Actions > Judicial Discretion 🗐

Securities Law > Bases for Liability > Private Securities Litigation 🗐

HN14⚓The Private Securities Litigation Reform Act of 1995 instructs that the "most adequate," or lead plaintiff have the largest financial interest in the relief sought. 15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(II) (2). More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Class Actions > Judicial Discretion 🗐

Securities Law > Bases for Liability > Private Securities Litigation 🗐

HN15⚓In addition to having the largest financial interest in the relief sought, the presumptive "most adequate" plaintiff must also otherwise satisfy the requirements of Fed. R. Civ. P. 23. 15 U.S.C.S. § 78u-4(a)(3)(B). Fed. R. Civ. P. 23(a) provides that a party may serve as class representative if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Rule 23(a) is "otherwise" satisfied if the movant makes a prima facie showing that it satisfies the typicality and adequacy requirements. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Class Actions > Prerequisites 🗐

HN16⚓In the context of Fed. R. Civ. P. 23(a), the typicality requirement is satisfied if the plaintiff, as a result of the same course of conduct, suffered the same injuries as the absent class members, and their claims are based on the same legal issues. That the claims of the class representative be typical of claims of the class does not require that they be identical. More Like This Headnote

Civil Procedure > Class Actions > Prerequisites 🗐

HN17⚓In the context of Fed. R. Civ. P. 23(a), the "fairly and adequately" representing the class requirement is satisfied when both the class representative and its attorneys are capable of satisfying their obligations, and neither has interests conflicting with those of other class members. When assessing this requirement, courts should consider whether the proposed lead plaintiff has the ability and incentive to represent the claims of the class vigorously, whether it has obtained adequate counsel, and whether there is a conflict between the movant's claims and those asserted on behalf of the class. More Like This Headnote

Civil Procedure > Class Actions > Judicial Discretion 🗐

Securities Law > Bases for Liability > Private Securities Litigation 🗐

HN18⚓Under the Private Securities Litigation Reform Act of 1995, the most adequate lead plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class. 15 U.S.C.S. § 78u-4(a)(3)(B)(v). The question at this stage is not whether the court would "approve" that movant's choice of counsel or the terms of its retainer agreement or whether another movant may have chosen better lawyers or negotiated a better fee agreement; rather, the question is whether the choices made by the movant with the largest losses are so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class, thus disqualifying it from serving as lead plaintiff at all. Stated differently, once the presumption is triggered, the question is not whether

another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a "fair and adequate" job. The court should not interfere with lead plaintiff's choice of counsel, unless such intervention is necessary to protect the interest of the plaintiff class. More Like This Headnote | *Shepardize:* Restrict By Headnote

**COUNSEL:** For KENNETH GROSSMAN, CEDAR STREET FUND, CEDAR STREET OFFSHORE FUND, Plaintiffs (2:03-cv-05336-LDD): CLINTON A. KRISLOV, LEAD ATTORNEY, KRISLOV & ASSOCIATES, LTD., CHICAGO, IL.

For KENNETH GROSSMAN, CEDAR STREET FUND, Plaintiffs (2:03-cv-05336-LDD): MICHAEL R. KARNUTH, LEAD ATTORNEY, KRISLOV & ASSOCIATES, LTD., CHICAGO, IL.

For KENNETH GROSSMAN, CEDAR STREET FUND, CEDAR STREET OFFSHORE FUND, Plaintiffs (2:03-cv-05336-LDD): STEVEN A. SCHWARTZ, CHIMICLES & TIKELLIS LLP, HAVERFORD, PA.

For SHIRLEY H. KAREL, Plaintiff (2:03-cv-05674-LDD): JOSEPH W. COTCHETT, LEAD ATTORNEY, COTCHETT, PITRE AND SIMON, BURLINGAME, CA.

For SHIRLEY H. KAREL, Plaintiff (2:03-cv-05674-LDD): KENNETH I. TRUJILLO, LEAD ATTORNEY, TRUJILLO RODRIQUEZ & RICHARDS, JOANNE G. NOBLE, TRUJILLO RODRIGUEZ & RICHARDS LLC, PHILADELPHIA, PA.

For SHIRLEY H. KAREL, Plaintiff (2:03-cv-05674-LDD): NANCI E. NISHIMURA, LEAD ATTORNEY, COTCHETT PITRE SIMON & MCCARTHY, BULINGAME, CA.

For SHIRLEY H. KAREL, Plaintiff (2:03-cv-05674-LDD): R. BRUCE MCNEW, LEAD ATTORNEY, TAYLOR & MCNEW, GREENVILLE, DE.

For MERRILL LYNCH & CO., INC., Defendant (2:03-cv-05336-LDD): G. JEFFREY BOUJOUKOS, LEAD ATTORNEY, MORGAN, LEWIS & BOCKIUS, MARC J. SONNENFELD, LEAD ATTORNEY, MORGAN, LEWIS & BOCKIUS LLP, PHILADELPHIA, PA.

For STEVEN R. GARFINKEL, Defendant (2:03-cv-05336-LDD, 2:03-cv-05674-LDD): MAURA E. FAY, LEAD ATTORNEY, DILWORTH PAXSON LLP, PHILADELPHIA, PA.

For THOMAS SCIBA, Movant (2:03-cv-05336-LDD): M. RICHARD KOMINS, LEAD ATTORNEY, BARRACK RODOS & BACINE, **[*2]** PHILADELPHIA, PA.

For STEPHEN BENCE, IV, Movant (2:03-cv-05336-LDD): ANDREW L. BARROWAY, DARREN J. CHECK, LEAD ATTORNEYS, SCHIFFRIN & BARROWAY LLP, BALA CYNWYD, PA.

For WOLSON GROUP, Movant (2:03-cv-05336-LDD): DEBORAH R. GROSS, LEAD ATTORNEY, LAW OFFICES BERNARD M. GROSS, PC, SUSAN R. GROSS, LEAD ATTORNEY, LAW OFFICES BERNARD GROSS, PC, PHILADELPHIA, PA.

For RICHARD MORRELL, GOTTLIEB FAMILY FOUNDATION TRUST, Movants (2:03-cv-05336-LDD): ROBERT A. KAUFFMAN, LEAD ATTORNEY, BERGER AND MONTAGUE, PHILADELPHIA, PA.

For KAREL GROUP, Movant (2:03-cv-05336-LDD): JOANNE G. NOBLE, LEAD ATTORNEY, TRUJILLO RODRIGUEZ & RICHARDS LLC, KENNETH I. TRUJILLO, LEAD ATTORNEY, TRUJILLO RODRIQUEZ & RICHARDS, PHILADELPHIA, PA.

For KAREL GROUP, Movant (2:03-cv-05336-LDD): R. BRUCE MCNEW, LEAD ATTORNEY, TAYLOR & MCNEW, GREENVILLE, DE.

For CEDAR STREET GROUP, Movant (2:03-cv-05674-LDD): STEVEN A. SCHWARTZ, LEAD ATTORNEY,

CHIMICLES & TIKELLIS LLP, HAVERFORD, PA.

**JUDGES:** Legrome Davis, J.

**OPINIONBY:** Legrome Davis

### OPINION: MEMORANDUM

Presently pending before the Court are eight securities fraud class action lawsuits against Michael A. O'Hanlon ("O'Hanlon"), former Chief Executive Officer and President of DVI and a former member of its Board of Directors, and Steven R. Garfinkel n1 ("Garfinkel"), Chief Financial Officer **[*3]** and Executive Vice President of DVI n2 and a member of its Board of Directors, and the underwriter of its securities, Merrill Lynch & Co., Inc. ("Merrill Lynch"), who was, at all relevant times, DVI's financial advisor and the lead underwriter in managing DVI's securitizations. (Garfinkel and O'Hanlon are collectively identified as the "DVI Defendants"; O'Hanlon, Garfinkel and Merrill Lynch are collectively identified as "Defendants".) These eight actions (the "DVI Actions") allege claims under Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Defendants are alleged to have violated Sections 10(b) and 20(a) of the Exchange Acts, and Rule 10b-5.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 On August 13, 2003, DVI placed Garfinkel on administrative leave.

n2 DVI is not named as a defendant in the instant action because it filed for Chapter 11 Bankruptcy protection on August 25, 2003

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Numerous plaintiffs request consolidation the DVI Actions **[*4]** pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. Multiple plaintiffs also petition to be appointed as Lead Plaintiff as well as for approval of their selection of Lead Counsel. On November 21, 2003, this Court held oral argument with respect to these motions. Based on the parties' submissions and the oral arguments presented to the Court, we grant the Cedar Street Group's Motion to Consolidate, appoint the Cedar Street Group as Lead Plaintiff, and approve Krislov & Associates, Ltd. to serve as Lead Counsel and Chimicles & Tikellis LLP to serve as Liaison Counsel.

### I. BACKGROUND

On July 25, 2003, James T. Bennett filed a class action on behalf of purchasers of DVI stock during the period of November 7, 2001 through June 27, 2003, against DVI (the "Bennett Complaint"), an independent specialty finance company for healthcare providers worldwide with $ 2.8 billions of managed assets, and O'Hanlon and Garfinkel. The Bennett Complaint alleged that DVI and the DVI Defendants violated Sections 10 (b) and 20(a) of the Exchange Acts, and Rule 10b-5. Specifically, the Bennett Complaint alleged that DVI and the DVI Defendants participated **[*5]** in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of DVI common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The Bennett Complaint alleged that the scheme did in fact: (i) deceive the investing public regarding DVI's business and operations and the intrinsic value of DVI securities; (ii) enable DVI to sell $ 25 million of its subordinated convertible notes during the class period; (iii) enable DVI to secure credit facilities for $ 175 million on favorable terms; and (iv) cause Bennett and other members of the Class to purchase DVI securities at artificially inflated prices. (Bennett Compl. P 56). On August 26, 2003, the Bennett Complaint was voluntarily dismissed.

On August 20, 2003, Jeff Janovici ("Janovici") filed a class action against DVI, O'Hanlon and Garfinkel ( DVI, O'Hanlon and Garfinkel collectively identified as the "Janovici Defendants") on behalf of purchasers of DVI

stock during the period of November 7, 2001 through June 27, 2003, alleging violations of Section 10(b) and 20(l) of the Exchange Acts, and Rule 10b-5 (the "Janovici Complaint"). n3 Specifically, the **[*6]** Janovici Complaint alleges that the Janovici Defendants participated in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of DVI securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding DVI's business and operations and the intrinsic value of DVI securities; (ii) enabled DVI to sell $ 25 million of its subordinated convertible notes during the class period; (iii) enabled DVI to secure credit facilities for $ 175 million on favorable terms; and (iv) caused plaintiff and members of the Class to purchase DVI securities at artificially inflated prices. (Janovici Compl. P 14). On September 15, 2003, the Court entered an Order, pursuant to 11 U.S.C. § 362, staying the Janovici action with respect to DVI because the company had filed for bankruptcy protection.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 The law firm of Schiffrin & Barroway filed the Janovici Complaint on behalf on Mr. Janovici. Schiffrin & Barroway also filed the Bennett Complaint on behalf of Mr. Bennett.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*7]**

On September 3, 2003, Mark B. Williams ("Williams") filed a class action against on behalf of purchasers of DVI common stock and Senior Notes during the period of November 7, 2001 through August 13, 2003 (the "Class Period"), n4 O'Hanlon and Garfinkel alleging violations of Sections 10(b) and 20(a) of the Exchange Acts, and Rule 10b-5 (the "Williams Complaint"). Specifically, the Williams Complaint alleges that the DVI Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for DVI's securities. (Williams Compl. P 73).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Three of the complaints define the class period as November 7, 2001 through June 27, 2003, and four of the complaints extend the class period through August 13, 2003. Because four of the complaints allege that false and/or materially misleading statements were made through August 13, 2003, we find that Class Period should be extended through that date.

One complaint, Civil Action No. 03-5674, however, defines the class period as September 1, 2001 through August 13, 2003. Because the complaint filed in this actions fails to allege that any false and/or materially misleading statements were made prior to November 7, 2001, we find that there is no basis for setting the Class Period prior to this date.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*8]**

In accordance with the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A)(I), Williams published a notice of pendency of the action in *Business Wire* on September 3, 2003. Since the filing of the Williams Complaint, six other complaints arising out of similar, if not identical, facts alleging parallel claims have been filed in the Eastern District of Pennsylvania. In addition to these six complaints, six plaintiff and/or plaintiff "groups" filed motions requesting: (i) consolidation of the actions; (ii) appointment as lead plaintiff; and (ii) approval of selection of lead counsel. n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -



n5 The following plaintiffs filed complaints did not move for appointment as Lead Plaintiff: (I) Mark B. Williams, (ii) Jeff Janovici, (iii) Murari P. Ojha, and (iv) Allison B. Rice.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

A. The Movants

1. Thomas Sciba

Mr. Sciba is an individual investor who allegedly suffered losses of approximately $ 30,000 as a result of purchasing DVI stock at prices inflated by the DVI Defendants' false and misleading statements. n6 **[*9]**

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 Mr. Sciba did not pursue appoint as Lead Plaintiff beyond the filing of his motion for appointment as lead plaintiff.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

2. Stephen Bence, IV

Mr. Bence is an individual investor who allegedly suffered losses of nearly $ 60,000 as a result of purchasing DVI stock at prices inflated by the DVI Defendants' false and misleading statements.

3. The Wolson Group

The Wolson Group is comprised of three individual investors, Milton Wolson, Bharat Parekh, and James Schwartz. The Wolson Group asserts losses of approximately $ 60,656.30.

4. The Gottlieb/Morrell Group

The Gottlieb/Morrell Group is comprised of the Gottlieb Family Foundation Trust and individual investor Richard W. Morrell. The Gottlieb/Morrell Group claims to have suffered losses of approximately $ 46,000.

5. The Cedar Street Group

The Cedar Street Group is comprised of two institutional investors, the Cedar Street Fund and the Cedar Street Offshore Fund, and an individual investor, Kenneth Grossman. The Cedar Street Group alleges that it suffered losses **[*10]** in excess of $ 1.6 million as result of purchasing DVI securities at prices inflated by the DVI Defendants' false and misleading statements.

6. The Karel Group

The Karel Group is comprised of seven individual investors who allege a pre-existing investment relationship. The Karel Group claims to have suffered losses of approximately $ 333,000.

II. DISCUSSION

A. Motions to Consolidate

HN1[↯]A court has broad discretion to consolidate actions involving common questions of law or fact ... if it will facilitate the administration of justice." See Smithkline Beecham Corp. v. Geneva Pharmaceuticals, Inc., 2001

U.S. Dist. LEXIS 17434, 2001 WL1249694, at *5 (E.D. Pa. Sept. 28, 2001) (citing Fed.R.Civ.P. 42(a)). Rule 42 (a) provides:

> $^{HN2}$⊤When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any of all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed.R.Civ.P. 42(a). $^{HN3}$⊤"When considering consolidation the court 'must **[*11]** balance the benefits of judicial economy and expediting the litigation against the possibility of prejudice.'" Smithkline Beecham, 2001 WL1249694, at *5 (quoting Kerley v. Great Lakes Dredge & Dock Co., 1996 U.S. Dist. LEXIS 3415, 1996 WL131136, at *1 (E.D. Pa. March 20, 1996)); see also Rosario v. SCM Group USA, Inc., 2003 U.S. Dist. LEXIS 12252, 2003 WL 21982116, at *1 (E.D. Pa. July 2, 2003) ("Consolidation is at the discretion of the trial court and "should be permitted where the consolidation of separate actions presenting common questions of law or fact will promote convenience and economy in judicial administration.") Moreover, $^{HN4}$⊤the PSLRA directs that cases should be consolidated where there is "more than one action on behalf of a class asserting substantially the same claim or claims." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

The actions at issue share significant common issues of law and fact. A review of each of the complaints reveals that each case involves claims against O'Hanlon and Garfinkel for violations of Rule 10b-5 and Sections 10(b) and 20(a) of the Exchange Act. Indeed, the factual basis supporting the claims asserted in the DVI Actions are parallel. The Plaintiffs are all investors **[*12]** who purchased common stock and/or Notes during the Class Period. Additionally, each Plaintiff, in purchasing shares of DVI stock, relied upon statements contained in the same public filings, press releases and other publications. Although the Cedar Group is unique in the claims asserted against Merrill Lynch, this difference is not determinative because the Cedar Group's claims against Merrill Lynch are premised on the same facts and statutory provisions as the claims against O'Hanlon and Garfinkel. See Skwortz v. Crayfish Co., 2001 U.S. Dist. LEXIS 15532, 2001 WL 1160745, at *2 (S.D.N.Y. Sept. 28, 2001) (granting consolidation of eleven complaints where each complaint was based on the same facts and statutory provision, despite the fact that all the complaints did not contain the same claims against the same defendants) (citations omitted). That the actions share common questions of law and fact and should be consolidation is further supported by the fact that each of the movants requested consolidation pursuant to Rule 42(a) and counsel for the moving plaintiffs expressly agreed on consolidation at oral argument. Because consolidation will facilitate the administration of justice and promote **[*13]** judicial economy without any foreseeable prejudice, the Motions to Consolidate filed by the Cedar Street Group in each of the DVI Actions are granted.

B. Appointment of Lead Plaintiff

$^{HN5}$⊤The PSLRA instructs that, "as soon as practicable" after the resolution of the motions to consolidate, the Court shall appoint the most adequate plaintiff to serve as lead plaintiff of the class. 15 U.S.C. § 78u-4(a)(3) (B)(ii).

In 1995, in response to perceived abuses in securities fraud class actions, Congress enacted the PSLRA. See S.Rep. No. 104-98 (1995), reprinted in 1995 U.S.C.C.A.N. 679; H.R. Conf. Rep. No. 104-369 (1995), reprinted in 1995 U.S.C.C.A.N. 730. "The purpose behind the PSLRA is to prevent 'lawyer-driven' litigation, and to ensure that 'parties with significant holdings in issues, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel.'" Crayfish Co., 2001 U.S. Dist. LEXIS 15532, 2001 WL 1160745, *2 (citations omitted). "Congress believed that this could best be achieved by encouraging institutional investors to serve as lead plaintiffs. **[*14]** Id. (citations omitted). Accordingly, the PSLRA regulates the procedures for bringing class

actions under the <u>Securities Act</u>.

*HN6*☞The PSLRA requires plaintiffs filing private securities class action complaints to publish a notice of pendency of the suit in a widely circulated business publication or wire service no later than twenty days after the complaint is filed. <u>15 U.S.C. § 78u-4(a)(3)(A)(I)</u>. No later than sixty days after the publication of notice, any member of the purported class may file a motion to serve as lead plaintiff. <u>15 U.S.C. § 78u-4(a)(3)(A)(i) (II)</u>. If a motion for consolidation has been made, the court shall not appoint a lead plaintiff until after it renders a decision on the motion to consolidate. <u>15 U.S.C. § 78u-4(a)(3)(B)(ii)</u>.

*HN7*☞The PSLRA instructs the court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." <u>15 U.S.C. § 78u-4(a)(3)(B)(I)</u>. To this end, the statute creates a rebuttable presumption that the most adequate plaintiff **[*15]** is "the person or group of persons that -- (aa) has either filed the complaint or made a motion in response to a notice ...; (bb) in the determination of the court, has the largest financial interests in the relief sought by the class; (cc) otherwise satisfies the requirements of <u>Rule 23 of the Federal Rules of Civil Procedure.</u>" <u>15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)</u> (emphasis added). This presumption may only be rebutted by a member of the purported plaintiff class upon proof that the presumptively most adequate plaintiff -- "(aa) will not fairly and adequately protect the interest of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." <u>15 U.S.C. § 78u-4 (a)(3)(B)(iii)(II)</u>; see also <u>In re Cendant Corp. Lit., 264 F.3d 201, 266-8 (3d Cir. 2001)</u>. *HN8*☞The process of determining the "most adequate" plaintiff has been summarized by the Third Circuit: "The Reform Act establishes a two-step process for appointing a lead plaintiff: the court first identifies the presumptive lead plaintiff, and then determines whether any **[*16]** member of the putative class had rebutted the presumption." <u>In re Cendant Corp. Lit., 264 F.3d at 262</u> (citing <u>15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) & (II)</u>).

1. Adequacy of Notice and Filing a Timely Complaint and/or Motion

*HN9*☞The <u>PSLRA</u> instructs that, within 20 days of filing a complaint under the statute, plaintiff or plaintiffs shall "cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class ... (I) of pendency of the action, the claims asserted therein, and the purported class period; and (II) that not later than 60 days after the date on which the notice was published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." <u>15 U.S.C. § 78u-4(a)(3)(A)(I)</u>. If more than one action on behalf of the class asserting substantially the same claims or claims is filed, only the plaintiff or plaintiffs in the "first filed action shall be required to cause notice to be published." <u>15 U.S.C. § 78u-4(a)(3)(A)(ii)</u>.

*HN10*☞In deciding a motion for the appointment **[*17]** of lead plaintiff under the <u>PSLRA</u>, the Court has an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the <u>PSLRA</u>, that is, encouraging the most adequate plaintiff, the plaintiff with the largest financial stake in the outcome of the litigation, to come forward and take control of the litigation. See <u>Ravens v. Iftikar, 174 F.R.D. 651, 654-55 (N.D.Cal. 1997)</u> (quoting House Conf. Rep. No. 104-369, 104th Cong., 1st Sess., 1996 U.S.C.C.A.N. 730, 731); see also <u>Burke v. Ruttenberg, 102 F. Supp. 2d 1280, 1309 (N.D.Ala. 2000)</u> ("A district court must exercise exceptional care to insure [sic] that in applying the lead plaintiff provisions of the statute, the concerns that motivated Congress are carefully heeded, as the determination of lead plaintiff by the district court is, with probably little exception, not immediately subject to review."); <u>In re Oxford Health Plans, Inc. Securities Lit., 182 F.R.D. 42, 45 (S.D.N.Y. 1998)</u> ("The PSLRA calls for greater supervision by the Court in the selection of which plaintiffs will control the litigation."). This means that in order for **[*18]** a notice of pendency to encourage the most adequate plaintiff to come forward and control the litigation, it must contain accurate information from which an interested class member may contact the Court and readily obtain a copy of the complaint in a pending action and/or file a motion to be appointed as lead counsel in that case. See <u>California Public Employees' Retirement System v. Chubb Corp., 127 F. Supp. 2d 572, 576 (D.N.J. 2001)</u> (finding a notice inadequate where it failed to disclose the caption of the case, the docket number, the judge to whom the case was assigned, the vicinage in which the judge sits, or the address of the Court because "an interested class member would not even know to which courthouse to go to examine a copy of the complaint" or "would not know before which judge an appropriate motion should be filed."). Requiring the

provision of such information comports with the objectives of the PSLRA by ensuring that "institutional plaintiffs with expertise in the securities markets and real financial interests in the integrity of the markets and outcome of the litigation would come forward and control the litigation, rather than the lawyers and **[\*19]** their professional plaintiffs." Id. at 576. Most significantly, providing information from which a interested class member may contact the Court and readily obtain a copy of the complaint in a pending action and/or file a motion to be appointed as lead counsel in that case shields against lawyer-driven litigation because such class members are not forced to contact noticing counsel for additional information to aid in their decision of whether to move for lead plaintiff status.

On July 25, 2003, the Bennett action was filed by the law firm of Schriffrin & Barroway. On July 31, 2003, within 20 days of filing his complaint, Mr. Bennett caused a notice to be published noticing the pendency of the Bennett action. On August 20, 2003, Schriffrin & Barroway filed a substantially similar action on behalf of Mr. Janovici. On August 26, 2003, the Bennett action was voluntarily dismissed. On September 3, 2003, three notices of pendency were published in three different business-oriented publications and wire services. Two of the notices, one published by Schiffrin & Barroway in *PrimeZone Media Network,* and the other, published by the law firm of Caully Geller Bowman **[\*20]** & Rudman, LLP in *PR Newswire,* noticed the pendency of the Bennett action despite the fact that the Bennett action had not been "pending" for over one week. Both of these notices stated that September 29, 2003 was the moving deadline. The third notice published on September 3, 2003 by the law firm of Milberg Weiss Bershad Hynes & Lerach LLP in *Business Wire,* noticed the pendency of the Williams action, which was filed that very day. The Williams notice stated that November 3, 2003 was the moving deadline.

In the instant action, we find that the Janovici action was the first filed action in the DVI litigation because the Bennett was voluntarily dismissed prior to the consolidation. Consequently, for purposes of the PSLRA notice requirements, we find that the Bennett notice has no effect. More significantly, we find that the Mr. Janovici failed to comply with the notice requirements of the PSLRA because he did not notice the pendency of the Janovici action, which notice is required by the plain language of the PSLRA. Indeed, the September 3, 2003 notices filed by Schiffrin & Barroway and Caully Geller incorrectly noticed the pendency of the Bennett action, which notice was clearly **[\*21]** inaccurate because the Bennett action was, in fact, no longer pending. Purported class members could not have relied on either of these notices for sufficient information from which they could contact the Court and readily obtain a copy of the complaint for an action filed on behalf of DVI securities holders on July 25, 2003 because no such complaint existed. Additionally, purported class members could not have filed a motion for appointment as lead plaintiff in an action that was no longer pending. We find that such misinformation in a notice of pendency does not encourage the most adequate plaintiff to come forward and take control of the litigation; therefore, it contravenes the very purpose of the PSLRA.

If the Janovici action had been properly noticed on September 3, 2003, that is, if it had noticed the pendency of the Janovici action rather than the Bennett action, the PSLRA would have required that such notice inform purported class members that they may move the Court "not later than 60 days after the date on which the notice was published" to be appointed as lead plaintiff. Sixty days from September 3, 2003 was November 3, 2003. Because the plain language of the PSLRA requires **[\*22]** that purported class members be given 60 days from the publication date of the notice of pendency in the first filed action, we hold that November 3, 2003 was the moving deadline, as the Williams notice accurately informs the class.

After an independent review of the Williams notice, we find that it otherwise complies notice complies with the requirements of the PSLRA. The Williams notice states:

> The law firm of Milberg Weiss Bershad Hynes & Lerach LLP announces that a class action lawsuit was filed on September 3, 2003, on behalf of purchasers of the securities of DVI, Inc ("DVI" or the "Company") (OTC: DVIX. PK) between November 7, 2001 and August 13, 2003, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). A copy of the complaint filed in this action in available from the Court, or can be viewed on Milberg Weiss' website at: http://www.milberg.com/cases/dvi/.

> The action is pending in the United States District Court for the Eastern District of Pennsylvania, against Defendants Michael A. O'Hanlon, former President and Chief Executive Officer and Director

of DVI, and Steven R. Garfinkel, DVI's **[*23]** former Chief Financial Officer.

The Complaint alleges that defendants violated Section 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, by issuing a series of material misrepresentations to the market between November 7, 2001 and August 12, 2003. According to the complaint, throughout the Class Period, Defendants engaged in a fraudulent scheme to deceive the public as to DVI's true financial condition. Defendants allegedly issued positive statements regarding DVI's business and operations, and overall growth in publicly disseminated press releases and SEC filings and claimed that they were a fair presentation of DVI business. According to the complaint, Defendants failed to disclose material adverse facts, including, but not limited to, the Company's failure to write down the value of certain impaired assets; its failure to properly account for and report non-recurring transactions; its failure to adopt adequate internal control; and its material overstatement of its assets and earnings. As a result of Defendants' fraudulent scheme, DVI stock became artificially inflated during the Class Period, trading as high as $ 20.99 per share **[*24]** on June 17, 2002, thereby causing damages to Class Period purchasers of DVI securities.

On August 13, 2003, after the market closed, Defendants issued a press release revealing DVI's intention to file for Chapter 11 Bankruptcy protection and that the Company had not yet secured debtor-in-possession financing. The Company blamed its dire situation on the "recent discovery of apparent improprieties in its prior dealings with lenders involving misrepresentations as to the amount and nature of collateral pledged to lenders." In the same release, Defendants announced that DVI's Chief Financial Officer, Defendant Steven Garfinkel, had been placed on administrative leave. This revelation came after Defendants announced that DVI's auditor, Deloitte & Touche LLP, had resigned over a dispute concerning the Company's accounting for certain transactions; that the Company had depleted all availability on its credit facilities; that DVI failed to make interest payments on it 9 7/8 percent Senior Notes due to severe liquidity constraints; and that the SEC had rejected the Company's filing of its quarterly report for the third quarter of 2003. Immediately following the [sic] the New York Stock **[*25]** Exchange suspended trading of DVI stock and Senior Notes, pending delisting. On the same day, DVI stock closed at $ 0.30 per share, representing a one-day decline of 62.50 percent.

If you bought the securities of DVI between November 7, 2001 and August 13, 2003 and sustained damages, you may, no later than November 3, 2003, request that the Court appoint you as lead plaintiff. According to the Exchange Act, a notice must be published within 20 days after the date on which the first complaint is filed. A notice was previously published in connection with a related action against the same Defendants. That action was withdrawn and consequently the notice filed in connection with that action has no effect. Rather, the deadline for the filing of a motion for appointment as lead plaintiff is, as stated herein, on November 3, 2003, sixty days from the publication date of this notice. A lead plaintiff is a representative party that acts on behalf of other class members in directing the litigation. In order to be appointed lead plaintiff, the Court must determine that the class member's claim is typical of the claims of other class members, and that the class member will adequately represent **[*26]** the class. Under certain circumstances, one or more class members may together serve as "lead plaintiff." Your ability to share in any recovery is not, however, affected by the decision whether or not to serve as lead plaintiff. You may retain Milberg Weiss Bershad Hynes & Lerach LLP, or other counsel of your choice, to serve as your counsel in this action.

Milberg Weiss Bershad Hynes & Lerach LLP (http://www.milberg.com) is a 190-lawyer firm with offices in New York City, San Diego, San Francisco, Los Angeles, Boca Raton, Philadelphia and Seattle, and is active in major litigations pending in federal and state courts throughout the United States. Milberg Weiss has taken a leading role in many important actions on behalf of defrauded investors, consumers, and others, and has been responsible for more than $ 20 billion in aggregate recoveries. Please contact Milberg Weiss [sic] website for more information about the firm. If you wish to discuss this action with us, or have any questions concerning this notice or your rights and interests with regard to the case, please contact the following attorneys ...

Unlike the first three notices, the Williams notices lists the **[\*27]** names of the defendants, providing purported class members with sufficient information from which they could contact the Court and obtain a copy of the complaint and/or file a motion for appointment as lead plaintiff. Moreover, the Williams notice advises the purported DVI Class of the pendency of the action, the claims asserted, and the purported Class Period. Significantly, the Williams notice advises the purported DVI Class that a member may move to serve as lead plaintiff, explains the significance of a lead plaintiff, and specifies the date by which such a motion must be filed - November 3, 2003. The Williams notice also advises that potential class members may retain counsel of their choice. For the above-stated reasons, the Williams notice satisfies the notice requirements of the PSLRA.

2. The Most Adequate Plaintiff

The PSLRA instructs the Court to appoint the presumptively "most adequate" plaintiff to serve as lead plaintiff. The presumptive "most adequate" plaintiff for the DVI Class is the plaintiff that satisfies the each of following: (1) has either filed a complaint or made a motion in response to a notice, (2) in the determination of the court, has the largest **[\*28]** financial interests in the relief sought by the class, and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). For the reasons that follow, the Court finds that the Cedar Street Group is the most adequate plaintiff and appoints the Cedar Street Group to serve as lead plaintiff for the Class in the DVI Action.

First, *HN11* pursuant to the PSLRA statutory framework, the "most adequate" plaintiff must have either filed a complaint in the consolidated actions or timely moved for appointment as lead plaintiff. See 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(II)(aa); see also In re Cephalon Securities Lit., 1998 U.S. Dist. LEXIS 12321, 1998 WL 4700160, at \*5 (E.D. Pa. Aug. 12, 1998) (appointing as lead plaintiff an individual who, although he did not move for appointment, was a named plaintiff in one of the consolidated class action complaints); In re Initial Public Offering Securities Lit., 214 F.R.D. 117, 120 n.4 (S.D.N.Y. 2002) (finding that where numerous complaints have been consolidated, the filing of any of the initially consolidated **[\*29]** actions will suffice for purposes of the lead plaintiff selection because the PSLRA specifically instructs courts to rule on consolidation prior to approving lead plaintiff). *HN12* A motion for appointment of lead plaintiff is timely when filed "not later than 60 days after the date on which the notice is published." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

*HN13* Generally the 60 day expiration period begins to run from the publication date on which the first notice of pendency was filed. See 15 U.S.C. § 78u-4(a)(3)(A)(i)(ii) ("If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff or plaintiff in the first filed action shall be required to cause notice to be published ...") This rule does not apply, however, where the first notice of pendency fails to provide adequate information pursuant to the terms of the PSLRA-- the statutory 60 day period beings to run from the date of the first notice that complies with the PSLRA. See In re Lucent Technologies, Inc. Securities Lit., 221 F. Supp. 2d 463, 466 (D.N.J. 2001) (calculating the 60 day period **[\*30]** for filing a motion to be appointed as lead plaintiff pursuant to the PSLRA from the date of publication of the second notice of pendency where the first notice of pendency did not contain adequate information). Additionally, where multiple notices are published informing class members of the pendency of litigation and the notices contain conflicting information regarding the expiration of the 60 day period, it would be inconsistent with basic notions of fairness and the purposes of the notification provisions of the PSLRA to mechanically enforce a strict time limit with respect to the 60 day expiration period. See Steiner v. Frankino, 1998 U.S. Dist. LEXIS 21804, 1998 WL 21804, at \*13 (N.D. Ohio July 16, 1998) (recognizing that it would be improper to enforce a strict time limit with respect to the 60 day expiration period where the publication of multiple notices could appear to expand the time period in the eyes of class members); see also Schulman v. Lumenis, Ltd., 2003 U.S. Dist. LEXIS 10348, 2003 WL 21415287, at \*4 (S.D.N.Y. June 18, 2003) (noting that courts have taken different approaches with respect to motions filed after the 60 day period has expired and citing to Steiner v. Frankino for this **[\*31]** proposition).

In the instant action, any plaintiff who either (a) filed a complaint in these consolidated actions, or (b) moved to be appointed lead plaintiff not later than November 3, 2003 satisfies the first requirement of the "most

adequate" plaintiff test. With respect to motion for appointment as lead plaintiff, we hold that November 3, 2003, not September 29, 2003, was the expiration date for the 60 day period to move for several reasons. First, as previously noted, the first notice of pendency to comply with the requirements of the PSLRA stated that November 3, 2003 was the moving deadline. Additionally, eleven notices were published with three containing the November 3, 2003 deadline and two providing no specific deadline at all. Indeed, counsel for the Gottlieb/Morrell Group published two notices, one stating that September 29, 2003 was the moving deadline, and the other stating that November 3, 2003 was the moving deadline. More significantly, the second of the two Gottlieb/Morrell notices explicitly stated that the September 29, 2003 deadline was no longer effective: "A notice was previously published in connection with a related action against the same Defendants. That **[\*32]** action was withdrawn and consequently the notice filed in connection with that action has no effect. Rather, the deadline for the filing of a motion for appointment as lead plaintiff is, as stated herein, on November 3, 2003." Based on a review of the notices in the DVI Action, the Court holds that, indeed, under these particular circumstances, multiple notices with differing deadlines certainly could have created confusion among potential class members with respect to the moving deadline. The potential for such confusion in the case further supports our conclusion that, under these circumstances, setting November 3, 2003 as moving deadline furthers the objectives of the PSLRA.

In the instant action, each of the movants meets the first requirement of the "most adequate" plaintiff test because they either filed an initially-filed complaint in the consolidated action or timely moved for appointment as lead plaintiff.

2. The Plaintiff with the Largest Financial Interest

_HN14_ The PSLRA instructs that the "most adequate," or lead plaintiff have the largest financial interest in the relief sought. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

a. Thomas Sciba

Mr. Sciba **[\*33]** is an individual investor who allegedly suffered losses of approximately $ 30,000 as a result of purchasing DVI stock at prices inflated by the DVI Defendants' false and misleading statements. At the time Mr. Sciba moved for appointment as lead plaintiff, he believed he had the largest financial interest in the relief sought by the DVI Class. Contrary to Mr. Sciba's belief, his financial interest is subordinate to the interests of others in the DVI Class. Therefore, Mr. Sciba is not the presumptive "most adequate" plaintiff.

b. Stephen Bence, IV

Mr. Bence is an individual investor who allegedly suffered losses of nearly $ 60,000 as a result of purchasing DVI stock at prices inflated by the DVI Defendants' false and misleading statements. Mr. Bence asserts that he is the movant with the largest individual financial stake in this litigation and therefore is the presumptive lead plaintiff. Contrary to Mr. Bence's assertion, he does not have the largest individual financial stake in this litigation. Therefore, Mr. Bence is not the presumptive "most adequate" plaintiff.

c. The Wolson Group

The Wolson Group is comprised of three individual investors, Milton Wolson, Bharat Parekh, and **[\*34]** James Schwartz. The Wolson Group alleges it has the largest financial interest of any movant that timely applied to the Court to be a lead plaintiff in accordance with the provisions of the PSLRA. Specifically, the Wolson Group claims to have suffered losses of approximately $ 60,656.30. Indeed, the Wolson Group is not the movant with the largest financial interest that timely applied to the Court to be a lead plaintiff in accordance with the provisions of the PSLRA. Therefore, the Wolson Group is not the presumptive "most adequate" plaintiff.

d. The Gottlieb/Morrell Group

The Gottlieb/Morrell Group is comprised of the Gottlieb Family Foundation Trust and individual investor Richard W. Morrell. Upon information and belief, the Gottlieb/Morrell Group alleges that, of all the movants, they have the largest financial interest in this matter, claiming losses of approximately $ 46,000. Moreover,

the Gottlieb/Morrell Group claims to be the only timely movant in compliance with the PSLRA's certification requirements to have sustained losses in both DVI's common stock and notes. Contrarily, the Gottlieb/Morrell Group neither suffered the largest financial losses in this matter nor is the **[*35]** only timely movant in compliance with the PSLRA's certification requirements to have sustained losses in both DVI's common stock and notes. Therefore, the Gottlieb/Morrell Group is not the presumptive "most adequate" plaintiff.

e. The Cedar Street Group

The Cedar Street Group is comprised of two institutional investors, the Cedar Street Fund and the Cedar Street Offshore Fund, and an individual investor, Kenneth Grossman. The Cedar Street Group alleges that it suffered losses in excess of $ 1.6 million as result of purchasing DVI securities at prices inflated by the DVI Defendants' false and misleading statements. It follows then, that in the instant DVI Action the Cedar Street Group clearly has the largest financial interest in the relief sought. Indeed, none of the other movants dispute this fact and, as discussed below, the Karel Group expressly concedes this point. Accordingly, it is the Cedar Street Group that satisfies the second requirement of the "most adequate" plaintiff test.

f. The Karel Group

The Karel Group is comprised of seven individual investors who allege a pre-existing investment relationship. The Karel Group acknowledges that the losses of the Cedar Group surpass **[*36]** those of Plaintiff Karel individually and the Karel Group in the aggregate, and that the Cedar Street Group should be named a lead plaintiff. Accordingly, the Karel Group requests that the Court consider appointing the Karel Group as co-lead plaintiff and counsel for the Karel Group as co-lead counsel with counsel for the Cedar Street Group. The Karel Group argues that its appointment as co-lead plaintiff would benefit the class because it would represent the unique perspective of individual investors. Although the Karel Group acknowledges that the Cedar Street Group also includes an individual investor, Kenneth Grossman, the Karel Group suggests that Mr. Grossman's position as a 50% shareholder of the General Partner of the Cedar Street Fund may undermine his capacity to represent the 'unique perspective' of the individual investor. The Karel Group, however, provides no support for this conclusory allegation. As the Karel Group concedes, it is not the presumptive "most adequate" plaintiff.

3. Adequately Represent the Interests of the Class

HN15✦In addition to having the largest financial interest in the relief sought, the presumptive "most adequate" plaintiff must also "otherwise satisfy **[*37]** the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B). Rule 23(a) provides that a party may serve as class representative if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a) is "otherwise" satisfied if the movant "makes a *prima facie* showing that it satisfies the typicality and adequacy requirements." Smith v. Suprema Specialties, 206 F. Supp. 2d 627, 632 (D.N.J. 2001) (citing Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 924 (3d Cir. 1992))

HN16✦The typicality requirement is satisfied if the plaintiff, as a result of the same course of conduct, suffered the same injuries as the absent class members, and their claims are based on the same legal issues. See Weiss v. York Hosp., 745 F.2d 786, 809 n.36 (3d Cir. 1984). **[*38]** That the claims of the class

representative be typical of claims of the class does not require that they be identical. See Gen. Tel. Co. Of the Southwest v. Falcon, 457 U.S. 147, 155, 72 L. Ed. 2d 740, 102 S. Ct. 2364, 1982 U.S. LEXIS 119 (1982).

HN17 The "fairly and adequately" representing the class requirement is satisfied "when both the class representative and its attorneys are capable of satisfying their obligations, and neither has interests conflicting with those of other class members." Suprema Specialties, 206 F. Supp. 2d at 633 (citations omitted). The Third Circuit explained, that when assessing this requirement, courts should consider whether the proposed lead plaintiff "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." In re Cendant Corp. Litig., 264 F.3d at 265 (quoting Hassine v. Jeffes, 846 F.2d 169, 179 (3d Cir. 1988)).

The Cedar Street Group satisfies both the typicality and adequacy requirements of Rule 23(a). The Cedar Street Group represents the interests of the purchasers [*39] of both DVI common stock and DVI 9.875% Senior Notes. The Cedar Street Group's interests are typical because they, as a result of the same course of conduct, suffered the same injuries as the absent class members, and their claims are based on the same legal issues. Specifically, the Cedar Street Group: (a) acquired DVI common stock and 9.875% Senior Notes during the Class Period; (b) at market prices allegedly artificially inflated as a result of the Defendants' false and/or misleading statements; (c) which statements were in violation of federal securities laws; and (d) suffered damages thereby. Additionally, the Cedar Street Group adequately represents the interests of the Class because: (a) its interests are clearly aligned with purchasers of both common stock and 9.875% Senior Notes; (b) it is comprised of both individual and institutional investors; and (c) there is no evidence of their interests conflicting with those of the other class members. Moreover, we find that the Cedar Group's selected counsel are capable of satisfying their obligations; evidence of conflict with the interests of other class members is lacking. Thus, the Cedar Street Group satisfies the last requirement [*40] of the presumptive "most adequate" plaintiff test.

4. Presumption Not Rebutted

The presumption of the "most adequate" plaintiff, however, "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptive most adequate plaintiff - (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Although some of the movants suggest that it is possible that the Cedar Street Group may not be able to adequately represent the interest of the Class, such speculation is insufficient to overcome the presumption under the PSLRA. No member of the purported plaintiff Class has submitted proof or demonstrated a reasonable basis for finding that the Cedar Street Group will not fairly and adequately protect the interest of the Class, or that it is subject to unique defenses which render it incapable of adequately representing the Class. Therefore, we find that the presumption has not been rebutted and that the Cedar Street Group remains the presumptive "most adequate" plaintiff. [*41]

Additionally, the Court finds that the interests of the Class would not be enhanced by appointing the Karel Group as co-lead plaintiff. The Karel Group has not demonstrated the necessity or efficacy for the Class' benefit for such designation as co-lead plaintiff. The Cedar Street Group is comprised of individual and institutional investors and contains holders of both DVI common stock and Senior Notes. Moreover, there is no conflict of interest that prevents the Cedar Street Group from representing the interests of the Karel Group or the rest of the Class. Thus, we conclude that the Cedar Street Group alone will fairly and adequately represent the interests of the Class.

III. Approval of Selection of Lead Counsel

HN18 Under the PSLRA, "the most adequate lead plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." Suprema Specialties, 206 F. Supp. 2d at 641 (quoting § 78u-4(a) (3)(B)(v)). The Third Circuit has commented on this issue: "We stress, however, that the question at this stage is not whether the court would 'approve' that movant's choice of counsel or the terms of its retainer

agreement or whether another **[\*42]** movant may have chosen better lawyers or negotiated a better fee agreement; rather, the question is whether the choices made by the movant with the largest losses are so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class, thus disqualifying it from serving as lead plaintiff at all." In re Cendant Corp. Lit., 264 F.3d at 266. Stated differently, once the presumption is triggered, the question is "not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair and adequate' job" Id. at 268. Indeed, the Conference Committee Report and the Senate Report "indicate that the court should not interfere with lead plaintiff's choice of counsel, unless such intervention is necessary to 'protect the interest of the plaintiff class.'" Suprema Specialties, Inc., 206 F. Supp. 2d at 641 (quoting H.R. Conf. Rep. No. 104-369, at 35 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 734; S.Rep. No. 104-98 at 11-12 (1995) reprinted in **[\*43]** 1995 U.S.C.C.A.N. 679, 690).

The Court does not find such intervention necessary to "protect the plaintiff class." Therefore, Krislov & Associates, Ltd. is approved to serve as Lead Counsel and Chimicles & Tikellis LLP is approved to serve as Liaison Counsel. n7

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 To the extent that the Karel Group submitted a request for the appointment of its counsel as co-lead counsel regardless of the Karel Group being appointed as co-lead plaintiff, such request is also denied.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

CONCLUSION

For the foregoing reasons, the Court grants Cedar Street Group's Motion to Consolidate, appoints the Cedar Street Group as Lead Plaintiff, and approves Krislov & Associates, Ltd. to serve as Lead Counsel and Chimicles & Tikellis LLP to serve as Liaison Counsel. An appropriate order follows.

ORDER - ENTERED NOV 26 2003

AND NOW, this 25th day of November, 2003, it is hereby ORDERED as follows:

1. The Motions of the Cedar Street Group in Grossman et. al. v. Merrill Lynch & Co., Inc. et al., 03-CV-5336, for Consolidation, Appointment **[\*44]** as Lead Plaintiff, Approval of Selection of Lead Counsel and Liaison Counsel (Docket No. 10) are GRANTED in all respects.

2. Civil Action Nos. 03-4795, 03-4963, 03-5000, 03-5111, 03-5141, 03-5244, 03-5336, and 03-5674 are hereby CONSOLIDATED, pursuant to Federal Rule of Civil Procedure 42, for all purposes, including discovery and trial. All pleadings, motions, discovery and other matters in all cases shall be filed at Civil Action No. 03-5336 as the Lead Case.

3. A copy of this order shall be docketed at Civil Action Nos. 03-4795, 03-4963, 03-5000, 03-5111, 03-5141, 03-5244, 03-5336, and 03-5674.

4. The Clerk of Court is directed to close Civil Action Nos. 03-4795, 03-4963, 03-5000, 03-5111, 03-5141, 03-5244, and 03-5674 for statistical purposes.

5. The Clerk's Office shall transmit copies of this Order to counsel of record in the consolidated actions.

6. Every pleading filed in the consolidated action shall have the following caption: IN RE DVI INC. SECURITIES LITIGATION, Civil Action No. 03-CV-5336.

7. Counsel for the Cedar Street Group shall promptly file an amended complaint in accordance with the Court's ruling.

8. This Court requests **[*45]** that counsel notify the Clerk of Court of the filing or transfer of any case that might properly be consolidated with Civil Action No. 03-CV-5336.

9. When a case arising out of the same subject matter of the consolidated action is hereinafter filed in this Court or transferred from another Court, the Clerk of this Court shall:

a. File a copy of this Order in the separate file for such action;

b. Mail a copy of this Order to the attorneys for the plaintiff(s) in the newly-filed or transferred case to any new defendant(s) in the newly-filed or transferred case; and,

c. Make the appropriate entry in the Master Docket for the consolidated action.

10. Each new case that arises out of the subject matter of the consolidated action which is filed in this Court or transferred to this Court, shall be consolidated with Civil Action No. 03-CV-5336 and this Order shall apply thereto, unless a party objects to consolidation, as provided herein, or any provision of this Order, within ten (10) days after the date upon which a copy of this Order is served on counsel for such party, by filing an application for relief and this court deems it appropriate to grant such application. Nothing in the **[*46]** foregoing shall be construed as a waiver of the defendants' right to object to the consolidation of any subsequently-filed or transferred related action.

11. With the approval of the Court, lead counsel shall assume and exercise the following powers and responsibilities:

a. To coordinate the briefing of motions;

b. To coordinate the conduct of written discovery;

c. To coordinate the examination of witnesses in depositions;

d. To coordinate the selection of counsel to act as spokesperson at pretrial conferences;

e. To call meetings of the plaintiffs' counsel as they deem necessary and appropriate;

f. To conduct all settlement negotiations with counsel for the defendants;

g. To coordinate and direct the preparation for trial, to represent the plaintiffs at trial and to delegate work responsibilities to selected counsel as may be required;

h. To receive orders, notices, correspondences, and telephone calls from the Court on behalf of all plaintiffs, and to transmit or share said communications with plaintiffs' counsel; and,

i. To supervise any other matters concerning the prosecution or resolution of the consolidated actions;

12. With respect to scheduling and/or procedural **[*47]** matters, defendants' counsel may rely upon all agreements with lead counsel.

13. No pleadings or other papers shall be filed or discovery conducted by any plaintiff except as directed or undertaken by lead counsel.

14. Plaintiff's counsel in any action consolidated with 03-CV-5336 shall be bound by this organizational structure.

15. Service by the defendants of any documents upon lead counsel for the plaintiffs shall constitute full and complete service upon all plaintiffs in the consolidated action.

By the Court:

Legrome Davis, J.

Service: **Get by LEXSEE®**
Citation: **2003 U.S. Dist. LEXIS 22315**
View: Full
Date/Time: Thursday, September 29, 2005 - 11:07 AM EDT

\* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# Exhibit 2

Service: **Get by LEXSEE®**
Citation: **2005 U.S. Dist. LEXIS 714**

*2005 U.S. Dist. LEXIS 714, \*; Fed. Sec. L. Rep. (CCH) P93,079*

CLIFFORD C. MARSDEN and MING XU, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, v. SELECT MEDICAL CORP., MARTIN JACKSON, ROBERT A. ORTENZIO, ROCCO ORTENZIO, and PATRICIA RICE, Defendants.

CIVIL ACTION 04-4020

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2005 U.S. Dist. LEXIS 714; Fed. Sec. L. Rep. (CCH) P93,079

January 18, 2005, Decided

**DISPOSITION:** Defendants' motion to deem plaintiffs' notice inadequate denied.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff investors filed a class action complaint against defendants, a corporation and others, alleging securities fraud claims. Defendants moved to deem inadequate the investors' notice pursuant to the Private Securities Litigation Reform Act of 1995 (PSLRA).

**OVERVIEW:** The investors alleged that defendants artificially inflated the corporation's stock prices by means of material misstatements and omissions. In accordance with 15 U.S.C.S. § 78u-4(a)(3)(A)(i), the investors' counsel published a class notice. Regarding the investors' argument that defendants' motion to deem the notice inadequate was untimely under U.S. Dist. Ct., E.D. Pa., Civ. R. 7.1(c), the court determined that there was sound rationale for addressing the merits of defendants' motion because it raised significant legal questions regarding the scope of the PSLRA. The court determined that the investors' notice was adequate under the PSLRA. The notice satisfied the "pendency of the action" requirement by identifying the caption of the case, its civil action number, the court before which the action was brought, and the names of all five defendants. The notice satisfied the requirements relating to information about the claims asserted and the class period by summarizing the claims and highlighting the allegations against defendants. The notice did not need to describe the investors' holding or mention the significance of a lead plaintiff's financial stake in the litigation.

**OUTCOME:** The court denied defendants' motion to deem notice inadequate.

**CORE TERMS:** notice, investor, claims asserted, appointment, pendency, class member, omission, purported, noticing, inform, notice requirement, misstatement, financial interest, largest, instant motion, appointed, website, sufficient information, independent duty, misrepresentations, lawyer-driven, qualification, summarizes, summarily, obstacles, caption, class action, reimbursement, directing, announced

## LexisNexis(R) Headnotes ♦ Hide Headnotes

Securities Law > Bases for Liability > Private Securities Litigation 🔖
*HN1*⚖ The Private Securities Litigation Reform Act of 1995 imposes procedural protections intended to encourage investors with substantial security holdings, whose interests are likely to be strongly aligned with the interests of the shareholder class, to participate in litigation as lead plaintiffs. More Like This Headnote

Civil Procedure > Class Actions > Judicial Discretion 🔖
Securities Law > Bases for Liability > Private Securities Litigation 🔖

*HN2* The Private Securities Litigation Reform Act of 1995 (PSLRA) instructs that plaintiffs, within 20 days of filing a complaint, shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class--(I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class. 15 U.S.C.S. § 78u-4(a)(3)(A)(i). The PSLRA notice provisions are not intended, however, to replace or supersede other notice provisions provided in the Federal Rules of Civil Procedure. More Like This Headnote

Civil Procedure > Class Actions > Judicial Discretion
Securities Law > Bases for Liability > Private Securities Litigation

*HN3* In deciding a motion for the appointment of lead plaintiff under the Private Securities Litigation Reform Act of 1995 (PSLRA), courts have an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA, that is, encouraging the most adequate plaintiff, the plaintiff with the largest financial stake in the outcome of the litigation, to come forward and take control of the litigation. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Class Actions > Judicial Discretion
Securities Law > Bases for Liability > Private Securities Litigation

*HN4* For the most part, courts reviewing the sufficiency of Private Securities Litigation Reform Act of 1995 (PSLRA) notice in the context of motions for lead plaintiff status have taken the minimal requirements of 15 U.S.C.S. § 78u-4(a)(3)(A)(i) at face value, summarily finding that the notice requirement is satisfied by timely publication setting forth the 60-day period for moving the court. However, the few courts that have addressed this issue in greater detail have typically found that the full extent of a noticing plaintiff's obligations must be informed by the underlying goals of the PSLRA notice provision. More Like This Headnote

Civil Procedure > Class Actions > Judicial Discretion
Securities Law > Bases for Liability > Private Securities Litigation

*HN5* Any analysis of the sufficiency of notice under the Private Securities Litigation Reform Act of 1995 must be guided by the fundamental purpose of the notice requirement, which is to provide class members with sufficient information about the suit and the requirements for lead plaintiff appointment so that they can make an informed judgment about whether they wish to seek lead plaintiff status. Furthermore, the notice requirement is intended to give potential plaintiffs an opportunity to make this decision without being forced to contact noticing counsel for additional information, further protecting against "lawyer-driven litigation." More Like This Headnote

Civil Procedure > Class Actions > Judicial Discretion
Securities Law > Bases for Liability > Private Securities Litigation

*HN6* In the context of the Private Securities Litigation Reform Act of 1995, the United States District Court for the Northern District of Alabama requires that notice provide merely enough information to permit reasonable investors to decide whether they wish to perform further investigation and to direct them to further sources of information. Such an interpretation accords with the purposes of the notice requirement, in that it gives members of the putative class sufficient information from which to make basic decisions about deciding whether to act as lead plaintiff while not requiring the named plaintiff, who may not be chosen lead plaintiff, to expend too many of his resources in publishing a notice that is wastefully extensive. More Like This Headnote

Civil Procedure > Class Actions > Judicial Discretion
Securities Law > Bases for Liability > Private Securities Litigation

*HN7* A class member reading notice published pursuant to the Private Securities Litigation Reform Act of 1995 should be able to (1) determine whether she is eligible for lead plaintiff status based on the class period; (2) learn enough about the asserted claims to make an initial judgment as to whether to obtain a copy of the full complaint (which will in turn inform her final judgment about whether to

pursue lead plaintiff status); and (3) contact the clerk's office to obtain a copy of the complaint and discover the procedures for filing a motion. Furthermore, the reader should be able to achieve these three objectives independently, without being forced to contact noticing plaintiff's counsel for additional information or detail. More Like This Headnote

Civil Procedure > Pleading & Practice > Motion Practice Generally > Time Limitations
HN8 A court may, pursuant to U.S. Dist. Ct., E.D. Pa., Civ. R. 7.1(c), consider an untimely response where there is sound rationale for doing so, and where so doing does not unfairly prejudice the moving party. More Like This Headnote

Civil Procedure > Class Actions > Judicial Discretion
Securities Law > Bases for Liability > Private Securities Litigation
HN9 The sufficiency of notice under the Private Securities Litigation Reform Act of 1995 must be judged against the statutory requirements of 15 U.S.C.S. § 78u-4(a)(3)(A)(i), rather than any particular law firm's typical practice. More Like This Headnote

Civil Procedure > Class Actions > Judicial Discretion
Securities Law > Bases for Liability > Private Securities Litigation
HN10 In the context of the Private Securities Litigation Reform Act of 1995, the purpose of the "pendency of the action" requirement is to provide interested class members with accurate information from which they may contact the court and readily obtain a copy of the complaint in a pending action and/or file a motion to be appointed as lead counsel in that case. More Like This Headnote

Civil Procedure > Class Actions > Judicial Discretion
Securities Law > Bases for Liability > Private Securities Litigation
HN11 A Private Securities Litigation Reform Act of 1995 (PSLRA) notice which includes the court name, case caption, and docket number provides all the information an interested class member needs to contact the court and obtain a copy of the complaint. In so holding, the United States District Court for the Eastern District of Pennsylvania rejects the United States District Court for the District of New Jersey's requirement that PSLRA notice include the address of the court and the name of the judge to whom the case is assigned. More Like This Headnote

Civil Procedure > Class Actions > Judicial Discretion
Securities Law > Bases for Liability > Private Securities Litigation
HN12 While it might be helpful for a Private Securities Litigation Reform Act of 1995 notice to include the name of the assigned judge, a class member need not provide that information to get a copy of the complaint, and can readily discover the judge's name by contacting the clerk's office. More Like This Headnote

Civil Procedure > Class Actions > Judicial Discretion
Securities Law > Bases for Liability > Private Securities Litigation
HN13 The United States District Court for the Northern District of California has held that the adequacy of notice published under the Private Securities Litigation Reform Act of 1995 cannot be evaluated standing alone. The notice must be assessed in light of the pleading to which the notice is designed to alert investors. More Like This Headnote

Civil Procedure > Class Actions > Judicial Discretion
Securities Law > Bases for Liability > Private Securities Litigation
HN14 Requiring named plaintiffs, who may not ultimately be chosen as lead plaintiffs, to expend the resources required to publish a "wastefully extensive" notice containing the exact date, content, and individualized impact of each of 12 or more misrepresentations and omissions is beyond the contemplation of the Private Securities Litigation Reform Act of 1995. More Like This Headnote

Civil Procedure > Class Actions > Judicial Discretion 🔍

Securities Law > Bases for Liability > Private Securities Litigation 🔍

*HN15* ⊥ Where issues of standing or qualification are not obvious on the face of a complaint, the United States District Court for the Eastern District of Pennsylvania cannot imagine that the drafters of the Private Securities Litigation Reform Act of 1995 (PSLRA) expected named plaintiffs to make inquiries as to these issues and present their findings in notice form. Neither the explicit requirements of 15 U.S.C.S. § 78u-4(a)(3)(A)(i) nor the general goals of the PSLRA demand the imposition of such an obligation.  More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation 🔍

*HN16* ⊥ The Private Securities Litigation Reform Act of 1995 (PSLRA) has a rebuttable presumption that the most adequate plaintiff is the one with the "largest financial interest." 15 U.S.C.S. § 78u-4(a)(3)(B)(iii). While the PSLRA was drafted to encourage plaintiffs with the greatest financial interest to take control of the litigation, the statute by no means requires that lead plaintiffs have the largest financial interest, and explicitly allows for rebuttal of this presumption. 15 U.S.C.S. § 78u-4(a)(3)(B)(iii).  More Like This Headnote

**COUNSEL:** **[*1]**  For CLIFFORD C. MARSDEN, Plaintiff: ERIC L. YOUNG, KENNEY LENNON & EGAN, PLYMOUTH. PA; PETER E. SEIDMAN, MILBERG WEISS BERSHAD & SCHULMAN LLP, NEW YORK, NY.

For MING XU, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, Plaintiffs: ERIC L. YOUNG, KENNEY LENNON & EGAN, PLYMOUTH. PA; PETER E. SEIDMAN, MILBERG WEISS BERSHAD & SCHULMAN LLP, NEW YORK, NY; STUART T. STEINBERG, DECHERT PRICE AND RHOADS, PHILA, PA.

For SELECT MEDICAL CORP., MARTIN JACKSON, ROBERT A. ORTENZIO, ROCCO ORTENZIO, and PATRICIA RICE, Defendants: DAVID M. HOWARD, DECHERT LLP, PHILADELPHIA, PA; MICHAEL L. KICHLINE, DECHERT, PRICE & RHOADS, PHILA, PA; STUART T. STEINBERG, DECHERT PRICE AND RHOADS, PHILA, PA.

**JUDGES:** J. Curtis Joyner, J.

**OPINIONBY:** J. CURTIS JOYNER

**OPINION: MEMORANDUM AND ORDER**

**JOYNER, J.**

Via the motion now pending before this court, Defendants move to deem inadequate Plaintiffs' notice of September 10, 2004 pursuant to the Private Securities Litigation Reform Act of 1995. For the reasons which follow, this motion shall denied.

**Factual Background**

Plaintiffs Clifford C. Mardsen and Ming Xu filed this class action complaint on August 24, 2004 on behalf of all injured **[*2]** investors who purchased Select Medical stock between July 29, 2003 and May 11, 2004 (the "Class Period"). The Complaint alleges that Defendants artificially inflated Select Medical stock prices by means of material misstatements and omissions. Specifically, Plaintiffs contend that Defendants misled investors during the Class Period by emphasizing Select Medical's strong financial performance while failing to disclose the imminent possibility of changes to Medicare reimbursement regulations which would negatively impact the company's financial success.

In accordance with § 78u-4(a)(3)(A)(i) of the Private Securities Litigation Reform Act (PSLRA), Plaintiffs' counsel published the following notice (the "Milberg Notice") in the September 10, 2004 edition of Investor's Business Daily:

The law firm of Milberg Weiss Bershad & Schulman LLP announces that a class action lawsuit was filed on August 24, 2004 on behalf of purchasers of the securities of Select Medical Corp. ("Select Medical" or the "Company") (NYSE:SEM) between July 29, 2003 and May 11, 2004, inclusive, (the "Class Period") seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

The **[\*3]** action, captioned Marsden v. Select Medical Corp., No. 04cv4020, is pending in the United States District Court for the Eastern District of Pennsylvania against defendants Select Medical, Martin Jackson, Robert A. Ortenzio, Rocco Ortenzio, and Patricia Rice. The complaint alleges that Select Medical, at all relevant times, was an operator of specialty hospitals, including long-term acute care facilities, whose financial performance was heavily dependent on Medicare reimbursements.

The complaint further alleges that: (a) throughout the Class Period Select Medical touted its strong operations and financial performance, reported remarkable quarterly increases in revenues, income and earnings per share, and represented that the Company was operating pursuant to a business model that would enable it to grow organically and through acquisitions; (b) unbeknownst to investors, Select Medical at all relevant times operated under the shadow of an imminent regulatory crackdown that could have a devastating effect on the Company's operations and financial performance; (c) defendants knew of or recklessly disregarded this danger but failed to disclose it to investors; and (d) defendants engaged **[\*4]** in this conduct so that they and other Select Medical insiders could sell more than 11 million of their personally-held Select Medical shares at artificially inflated prices to unsuspecting shareholders for proceeds in excess of $ 270 million.

The truth began to emerge on May 11, 2004. On that date, defendants issued a press release in which they announced that a proposed Medicare reimbursement rate rule change, if adopted, would have a "material adverse effect on Select's results of operations for the periods after the rule becomes effective." On this news, Select Medical shares, which had opened on May 11, 2004 at $ 18.55, closed the day at $ 13.68, their low for the day. On May 12, 2004 the shares opened at $ 11.80 and fell to a low of $ 10.25 before rebounding slightly to close the dat at $ 11.20 - for a total two-day decline of 40%. Subsequently, on August 2, 2004, the Centers for Medicare and Medicaid Services announced the phase-in of reduced Medicare reimbursement rates for long-term acute care facilities accepting admissions from host hospitals, such as those operated by Select Medical, and, on August 23, 2004, Select Medical announced that it was scaling back its expansion **[\*5]** plans to compensate for the anticipated Medicare cuts.

If you bought the securities of Select Medical between July 29, 2003 and May 11, 2004, and sustained damages, you may, no later than November 9, 2004, request that the Court appoint you as lead plaintiff. A lead plaintiff is a representative party that acts on behalf of other class members in directing the litigation. In order to be appointed lead plaintiff, the Court must determine that the class member's claim is typical of the claims of other class members, and that the class member will adequately represent the class. Under certain circumstances, one or more class members may serve together as "lead plaintiff." Your ability to share in any recovery is not, however, affected by the decision of whether or not to serve as a lead plaintiff. You may retain Milberg Weiss Bershad & Schulman LLP, or other counsel of your choice, to serve as your counsel in this action.

Milberg Weiss Bershad & Schulman LLP (http://www.milbergweiss.com) is a firm with over 100 lawyers with offices in New York City, Los Angeles, Boca Raton, Delaware, Seattle and Washington, D.C. and is active in major litigations pending in federal and state courts **[\*6]** throughout the United States. Milberg Weiss has taken a leading role in many important actions on behalf of defrauded investors, consumers, and others for nearly 40 years. Please contact the Milberg Weiss website for more information about the firm. If you wish to discuss this action with

us, or have any questions concerning this notice or your rights and interests with regard to the case, please contact the following attorneys...

On November 9, 2004, class members Capital Invest, die Kapitalanlagegesellschaft der Bank Austria Creditanstalt Gruppe GmbH (for account of its funds C 43 and GF 5), James Shaver, and Frank C. Bagatta (the "Capital Group") moved to be appointed lead plaintiff. That motion is currently pending before this Court.

**Discussion**

**I. The PSLRA Notice Requirement**

The Private Securities Litigation Reform Act (PSLRA) of 1995 was enacted to empower investors so that they, not their lawyers, would retain primary control over private securities class action litigation. S. Rep. No. 104-98 at 4 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 683; H.R. Rep. No. 104-369 at 32 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 731. To this end, *HN1*PSLRA imposes **[*7]** procedural protections intended to encourage investors with substantial security holdings, whose interests are likely to be strongly aligned with the interests of the shareholder class, to participate in litigation as lead plaintiffs. S. Rep. No. 104-98 at 6 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 685; H.R. Rep. No. 104-369 at 32 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 731; see also 15 U.S.C. 78u-4(a)(3)(B)(iii) (establishing a rebuttable presumption that the most adequate plaintiff is the party who "has the largest financial interest in the relief sought by the class"). Specifically, *HN2*the PSLRA instructs that plaintiffs, within 20 days of filing a complaint, "shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class - (I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. 78u-4 **[*8]** (a)(3)(A)(i). The PSLRA notice provisions are not intended, however, to replace or supersede other notice provisions provided in the Federal Rules of Civil Procedure. H.R. Rep. No. 104-369 at 49, FN 4 (1995), reprinted in 1995 U.S.C.C.A.N. 730.

*HN3*In deciding a motion for the appointment of lead plaintiff under PSLRA, courts have an independent duty to "scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA, that is, encouraging the most adequate plaintiff, the plaintiff with the largest financial stake in the outcome of the litigation, to come forward and take control of the litigation." Janovici v. DVI, Inc., 2003 U.S. Dist. LEXIS 22315 at *17. In this action, Defendants have petitioned the Court to examine the sufficiency of Plaintiffs' notice in advance of a decision on the outstanding motion for appointment of lead plaintiff.

*HN4*For the most part, courts reviewing the sufficiency of PSLRA notice in the context of motions for lead plaintiff status have taken the minimal requirements of § 78u-4(a)(3)(A)(i) at face value, summarily finding that the notice requirement is satisfied by timely publication setting forth the 60-day period **[*9]** for moving the court. See, e.g., Bobrow v. Mobilmedia, Inc., 1997 U.S. Dist. LEXIS 23806 at *4 (D. N.J. 1997); Greater Pa. Carpenters Pension Fund v. Adolor Corp., No. 04-1728, 2004 U.S. Dist. LEXIS 26205 at *6, 2004 WL 3019235 (E.D. Pa. 2004); A.F.I.K. Holding SPRL v. Fass, 216 F.R.D. 567, 570 (D. N.J. 2003). However, the few courts that have addressed this issue in greater detail have typically found that the full extent of a noticing plaintiff's obligations must be informed by the underlying goals of the PSLRA notice provision. See Burke v. Ruttenberg, 102 F. Supp. 2d 1280, 1311 (N.D. Ala. 2000); Janovici, 2003 U.S. Dist. LEXIS 22315 at *17-18; Ravens v. Iftikar, 174 F.R.D. 651, 658 (N.D. Cal. 1997). We agree. *HN5*Any analysis of the sufficiency of notice under the PSLRA must be guided by the fundamental purpose of the notice requirement, which is to provide class members with sufficient information about the suit and the requirements for lead plaintiff appointment so that they can make an informed judgment about whether they wish to seek lead plaintiff status. California Pub. Emples. Retirement Sys. v. Chubb Corp., 127 F. Supp. 2d 572, 576 (D. N.J. 2001); **[*10]** Burke, 102 F. Supp. 2d at 1312. Furthermore, the notice requirement is intended to give potential plaintiffs an opportunity to make this decision without being forced to contact noticing counsel for additional information, further protecting against "lawyer-driven litigation." Janovici, 2003 U.S. Dist. LEXIS

22315 at *19.

In determining the extent to which these general goals should inform our analysis of the sufficiency of the Milberg Notice, we are guided by the United States District Court for the Northern District of Alabama's thoughtful discussion in Burke v. Ruttenberg, 102 F. Supp. 2d at 1311-12. In that case, the court identified three methods of interpreting the reach of the PSLRA notice requirement. Under the first method, § 78u-4(a)(3)(A)(i) could be construed broadly, requiring "full disclosure of all of the information relevant to the pendency of the action." Id. at 1311. While most robust notice certainly satisfies the aims of the PSLRA, it imposes significant costs on the noticing plaintiffs and appears to be "more than is required by the language" of the statute. Id. At the other end of the spectrum, [*11] notice under the PSLRA could require only minimal information, namely, that the suit is pending, that it asserts securities claims, and that the class period extends between two dates. This method is inadequate because it does not provide sufficient information from which potential lead plaintiffs could evaluate the action without turning to counsel or "fruitlessly" expending time and money searching out and reviewing the complaint. Id. at 1312. The court finally settled on an intermediate method, <sup>HN6</sup>↑requiring that notice provide merely enough information to permit reasonable investors to decide whether they wish to perform further investigation and to direct them to further sources of information. Id. at 1311. The court held that such an interpretation accords with the purposes of the notice requirement, "in that it gives members of the putative class sufficient information from which to make basic decisions about deciding whether to act as lead plaintiff while not requiring the named plaintiff, who may not be chosen lead plaintiff, to expend too many of his [] resources in publishing a notice that is wastefully extensive." Id. at 1311-12. [*12]

We find the reasoning in Burke highly persuasive. <sup>HN7</sup>↑A class member reading notice published pursuant to the PSLRA should be able to (1) determine whether she is eligible for lead plaintiff status based on the class period; (2) learn enough about the asserted claims to make an initial judgment as to whether to obtain a copy of the full Complaint (which will in turn inform her final judgment about whether to pursue lead plaintiff status); and (3) contact the clerk's office to obtain a copy of the Complaint and discover the procedures for filing a motion. Furthermore, the reader should be able to achieve these three objectives independently, without being forced to contact noticing plaintiff's counsel for additional information or detail.

## II. Timeliness of the Instant Motion

Plaintiffs first object to Defendants' November 30, 2004 Motion to Deem Notice Inadequate on the grounds that, while not styled as such, it is essentially an untimely response to the Capital Group's Motion for Appointment as Lead Plaintiff. Pursuant to Local Rule of Civil Procedure 7.1(c), any response to the Capital Group's motion should have been filed with this Court by November 23, 2004.

It is unnecessary [*13] for this Court to determine whether the instant motion should be treated as a response to the Capital Group's Motion for Appointment as Lead Plaintiff. Even accepting Plaintiffs' argument to this effect, <sup>HN8</sup>↑a court may, pursuant to Rule 7.1(c), consider an untimely response where there is sound rationale for doing so, and where so doing does not unfairly prejudice the moving party. United States v. Eleven Vehicles, 200 F.3d 203, 215 (3rd Cir. 2000). As the instant motion raises significant legal questions regarding the scope of the PSLRA, and as this Court would have an independent duty, upon consideration of the Capital Group's motion, to challenge the sufficiency of the Milberg Notice, there is a sound rationale for addressing the merits of this Motion to Deem Notice Inadequate. See Avellino v. Herron, 181 F.R.D. 294, 295 n. 4 (E.D. Pa. 1998) (where motion raises important issues of public concern, court may consider merits of a motion despite lack of response); Janovici v. DVI, Inc, 2003 U.S. Dist. LEXIS 22315 at *17, 2003 WL 22849604 (E.D. Pa. 2003) (in considering motions for appointment of lead plaintiff, court has an independent [*14] duty to scrutinize the published notice for compliance with PSLRA requirements). Furthermore, Plaintiffs will not be prejudiced by our consideration of the instant motion, as they have had ample opportunity to present their concerns in both a response and surreply.

## III. Sufficiency of the Milberg Notice under the PSLRA

Defendants contend that the notice in this action was inadequate because it omitted (i) information about the

named plaintiffs and their holdings in Select Medical, (ii) the legal standards governing lead plaintiff motions, (iii) the location of the courthouse and the name of the judge to whom the case is assigned, and (iv) the specific misstatements and omissions underlying Plaintiffs' claims. Defendants further contend that the notice was an "impermissible advertisement" for Milberg Weiss which undermined the objectives of the PSLRA by focusing on self-promotion rather than empowerment of potential lead plaintiffs.

In support of their arguments, Defendants rely primarily on two cases from the United States District Court of New Jersey in which District Judges Alfred J. Lechner and Garrett E. Brown rejected PSLRA notices as inadequate for want of information **[*15]** not explicitly required by § 78u-4(a)(3)(A)(i), including the address of the court and name of the presiding judge, the release dates and content of alleged misstatements or omissions, the differing effects of each alleged misstatement or omission, the names of the plaintiffs and a description of their holdings, and an explanation of the possibility of intra-class conflicts. In re Lucent Techs. Inc. Sec. Litig., 194 F.R.D. 137 at 147-48; Calif. Pub. Employees' Ret. Sys., 127 F. Supp. 2d at 579-80. However, this Court is not bound by those decisions, and, indeed, finds much of their reasoning unpersuasive in light of the intermediate approach to PSLRA notice which this Court has adopted above.

More significantly, one case within the Eastern District of Pennsylvania has addressed the PSLRA notice requirements as applied to a notice also published by Milberg Weis and similar to the instant Milberg motion in language and level of detail, and upheld its sufficiency under the PSLRA. Janovici, 2003 U.S. Dist. LEXIS 22315 at *26-27. This Court likewise finds that the extra-statutory requirements relied on by Defendants are not necessary to satisfy the objectives **[*16]** of the PSLRA. The Milberg Notice, while lacking in some of the details considered essential in In re Lucent, satisfies both the explicit requirements of § 78u-4(a)(3)(A)(i) and the more general statutory goals. A class member reading the Milberg Notice would learn enough about the nature of the claims to determine his eligibility for lead plaintiff status and make a preliminary decision of whether to seek additional information, and would be able to obtain a copy of the Complaint from the clerk's office if he were so inclined.

## A. Timely Publication

The Milberg Notice was published in Investor's Business Daily on September 10, 2004, within 20 days of the date the Complaint in this action was filed. Defendants repeatedly suggest, in their motion and reply, that the notice was of a "stealth character" because it was published "a random 17 days after the case was filed," and was "buried" in Investor's Business Daily rather than disseminated by a national wire service. Defendants' position on this issue is utterly without merit. Investor's Business Daily is a nationally-circulated business-oriented publication catering to investors, and, as such, satisfies the publication **[*17]** requirement of § 78u-4(a)(3)(A)(i). Seamans v. Aid Auto Stores, Inc., No. 98-7395, 2000 U.S. Dist. LEXIS 1749 at *11-12, 2000 WL 33769023 (E.D. N.Y. 2000); Lax v. First Merchants Acceptance Corp., 1997 U.S. Dist. LEXIS 11866 at *15, 1996 WL 461036 (N.D. Ill. 1997). n1 Furthermore, this Court cannot conceive of any legitimate argument in support of Defendants' suggestion that a notice published "a random 17 days" after the filing of a complaint somehow fails to satisfy the requirements of § 78u-4(a)(3)(A)(i).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

N1 Defendants further suggest that publication of the Milberg Notice in Investor's Business Daily was inadequate because it was a departure from Milberg Weiss' "usual practice" of serving notice by news wire. See Defendants' Reply, p. 2. It should be beyond question, however, that $^{HN9}$ the sufficiency of notice under the PSLRA must be judged against the statutory requirements of § 78u-4(a)(3)(A)(i), rather than any particular law firm's typical practice.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## B. The "Pendency **[*18]** of the Action" Requirement

The Milberg Notice adequately informs class members of "the pendency of the action," as it identifies the

caption of the case, its civil action number, the Court before which the action was brought, and the names of all five Defendants. [HN10]The purpose of the "pendency of the action" requirement is to provide interested class members with "accurate information from which [they] may contact the Court and readily obtain a copy of the complaint in a pending action and/or file a motion to be appointed as lead counsel in that case." Janovici, 2003 U.S. Dist. LEXIS 22315 at *18. In Janovici, this Court upheld the sufficiency of a notice, also published by Milberg Weiss, which included only the names of the defendants and the Court, holding that these two identifying facts were sufficient to inform class members of the pendency of the action. 2003 U.S. Dist. LEXIS 22315 at *26-27. n2 We find that [HN11]a PSLRA notice which includes the court name, case caption, and docket number provides all the information an interested class member needs to contact the Court and obtain a copy of the complaint. In so holding, we reject the United States District Court of New Jersey's [*19] requirement that PSLRA notice include the address of the Court and the name of the judge to whom the case is assigned. See Calif. Pub. Employees' Ret. Sys., 127 F. Supp. 2d at 579; In re Lucent, 194 F.R.D. 137 at 147. Surely an investor who reads the Investor's Business Daily on a regular basis and is interested in being lead plaintiff in a class action securities suit is competent enough to consult a telephone directory to find the Court's address and phone number. This Court is not convinced that investors will be discouraged from participating if "forced ... to figure it out for themselves." See Defendants' Brief, p. 8. And [HN12]while it might be helpful for a PSLRA notice to include the name of the assigned judge, a class member need not provide that information to get a copy of the complaint, and can readily discover the judge's name by contacting the clerk's office. Because an interested class member reading the Milberg Notice would find enough information therein to contact the Court and obtain a copy of the Complaint, the notice satisfies the "pendency of the action" requirement of § 78u-4(a)(3)(A)(i).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 While Defendants make much of the fact that the notice in Janovici provided a web link to a copy of the complaint on the Milberg Weiss website, the Court's decision made no mention of that fact, explicitly holding that "listing the names of the defendants ... provided purported class members with sufficient information from which they could contact the Court and obtain a copy of the complaint and/or file a motion for appointment as lead plaintiff." Janovici, 2003 U.S. Dist. LEXIS 22315 at *26-27. Furthermore, this Court fails to see how encouraging class members to visit a law firm's website to view the complaint serves the PSLRA's purpose of protecting investors from lawyer-driven lawsuits. See, e.g., Janovici, 2003 U.S. Dist. LEXIS 22315 at *19 (providing information from which interested class members may contact the Court shields against lawyer-driven litigation because class members "are not forced to contact noticing counsel for additional information"); Calif. Pub. Employees' Ret. Sys., 127 F. Supp. 2d at 580 (where action is not identified by caption or docket number, directing class members to an attorney website to view the complaint does not cure deficiencies of notice and undermines PSLRA goals); Burke, 102 F. Supp. 2d at 1312 (notice directing class members to contact counsel for a copy of the complaint does not comport with the purposes of the PSLRA).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*20]

## C. The Claims Asserted and Class Period

The Milberg Notice satisfies the requirements of § 78u-4(a)(3)(A)(i) relating to information about the claims asserted and the class period. The notice identifies the period between July 29, 2003 and May 11, 2004 as the relevant Class Period. It summarizes the claims asserted in the Complaint, highlighting the allegations that Select Medical, throughout the Class Period, touted its strong financial performance, misrepresented the nature of its business model, and failed to disclose the danger of an imminent regulatory crackdown. The notice further describes the drop in share prices which occurred after Defendants issued a May 11, 2004 press release announcing that the proposed regulatory change would have a material adverse effect on Select Medical's operations.

In support of their contention that the Milberg Notice is deficient because it does not identify the content or

dates of the alleged misrepresentations, Defendants cite In re Lucent, 194 F.R.D. 137 at 147-48. In that case, the United States District Court for the District of New Jersey relied on Ravens v. Iftikar, 174 F.R.D. 651, to hold that **[*21]** a PSLRA notice should describe, in detail, the alleged misstatements or omissions, their release dates, and, if multiple disclosures are at issue, the differing effects of each. In re Lucent, 194 F.R.D. 137 at 148. However, it would be a misreading of Ravens to impose such strict requirements on all PSLRA notices. Ravens addressed a "skeletal" one-paragraph notice which provided no detail about the claims asserted beyond an identification of the statutory grounds ( § 10(b) and 20(a) of the Securities Exchange Act), and no information about the named plaintiffs, who appeared, even on the face of the complaint, "incapable of prosecuting" the action. Ravens, 174 F.R.D. at 658. Far from setting forth a firm rule imposing the requirements considered in In re Lucent, *HN13*⇥the United States District Court for the Northern District of California held that "the adequacy of notice published under the Reform Act cannot be evaluated standing alone. The notice must be assessed in light of the pleading to which the notice is designed to alert investors." Id. Among the reasons the court gave for finding the notice inadequate were that "the lengthy and **[*22]** detailed allegations of the complaint [were] not summarized," and that "actual and potential obstacles to plaintiff's representation of the entire class" were not disclosed. Id.

In contrast, the Milberg Notice adequately summarizes the allegations in the Complaint, without overwhelming readers with a flood of detail. The Complaint in this action identifies twelve dates on which Defendants allegedly misrepresented the strength of their operations while failing to disclose the possibility of a financial downturn if proposed Medicare rate changes were to be adopted. We believe that *HN14*⇥requiring named Plaintiffs, who may not ultimately be chosen as lead plaintiffs, to expend the resources required to publish a "wastefully extensive" notice containing the exact date, content, and individualized impact of each of twelve or more misrepresentations and omissions is beyond the contemplation of the PSLRA. See Burke, 102 F. Supp. 2d at 1311-12. n3 The Milberg Notice provides a summary of the legal and factual basis of the claims, adequately informing investors of the nature and character of the claims asserted in accordance with the requirements of § 78u-4(a)(3)(A)(i). **[*23]** See Janovici, 2003 U.S. Dist. LEXIS 22315 at *27 (finding that a Milberg Weiss notice summarizing misrepresentations generally, but not providing dates or other details, adequately informs investors of the "claims asserted").

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 This is particularly so where, as here, it is clear from both the notice and the Complaint that there were no corrective statements made during the Class Period, and that a single disclosure event occurred at the end of the Class Period. See Wenderhold v. Cylink Corp., 188 F.R.D. 577, 582 (N.D. Ca. 1999).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Furthermore, while Defendants contend that a PSLRA notice must identify the named plaintiffs and describe their holdings, we are not persuaded that the reasoning of the two cases cited in support of that proposition is applicable in this action. In Calif. Pub. Employees' Ret. Sys., the named plaintiff clearly lacked standing to sue because he held no shares during the class period, a fact obvious on the face of the complaint. Calif. Pub. Employees' Ret. Sys., 127 F. Supp. 2d at 580-81. **[*24]** Likewise, in Ravens, there were numerous obstacles to representation by the named plaintiffs, including unique defenses, concerns regarding their qualifications, and the possibility of intra-class conflicts. Ravens, 174 F.R.D. at 657. We note, initially, that this Court is not currently in a position to investigate the sufficiency of the Complaint or the named Plaintiffs' qualifications, and Defendants have identified no conspicuous obstacles to Plaintiffs' representation. Furthermore, *HN15*⇥where issues of standing or qualification are not obvious on the face of a complaint, we cannot imagine that the drafters of the PSLRA expected named plaintiffs to make inquiries as to these issues and present their findings in notice form. Neither the explicit requirements of § 78u-4(a)(3)(A)(i) nor the general goals of the PSLRA demand the imposition of such an obligation.

## D. Moving for Lead Plaintiff Status

The Milberg Notice advises class members who have sustained damages that they may, within 60 days, move the court to be appointed lead plaintiff. The notice briefly explains the significance of the lead plaintiff, summarizes the typicality and adequacy of representation **[*25]** requirements, specifies that multiple class members may serve together as lead plaintiffs, and notes that class members who do not attain lead plaintiff status are nonetheless entitled to share in any recovery. This information clearly satisfies the § 78u-4(a)(3) (A)(i)(II) requirement that notice published pursuant to the PSLRA advise class members of their right to move for lead plaintiff status within 60 days.

Defendant's citation to In re Lucent is inapposite. In that case, the notice in question informed class members of their right to move the court within 60 days, and indicated only that they "must meet certain legal requirements" to serve as lead plaintiff. See In re Lucent, 194 F.R.D. 137 at 147. The court found such notice inadequate because it did not "even summarily describe the legal requirements" for lead plaintiff status. Id. In contrast, the Milberg Notice in this action does "summarily describe" the requirements for lead plaintiff status.

Nonetheless, Defendants object to the fact that the Milberg Notice does not mention **HN16**⊕the PSLRA's rebuttable presumption that the most adequate plaintiff is the one with the "largest financial interest." **[*26]** See 15 U.S.C. § 78u-4(a)(3)(B)(iii). We note initially that, while the PSLRA was drafted to encourage plaintiffs with the greatest financial interest to take control of the litigation, the statute by no means requires that lead plaintiffs have the largest financial interest, and explicitly allows for rebuttal of this presumption. 15 U.S.C. § 78u 4(a)(3)(B)(iii). Furthermore, this Court has upheld the adequacy of a similar notice published by Milberg Weiss which described the requirements for lead plaintiff status in language identical to the language at issue in this case. Janovici, 2003 U.S. Dist. LEXIS 22315 at *26-27 (finding that the notice was sufficient because it advised the class that a member may move to serve as lead plaintiff, explained the significance of a lead plaintiff, and specified the date by which such a motion must be filed). The Milberg Notice is not rendered inadequate by its failure to include information concerning the significance of a lead plaintiff's financial stake in the litigation.

An appropriate Order follows.

## ORDER

AND NOW, this 18th day of January, 2005, upon consideration **[*27]** of Defendants' Motion to Deem Notice Inadequate (Doc. No. 8), and all responses thereto (Docs. No. 9, 10, 11), it is hereby ORDERED that the motion is DENIED.

BY THE COURT:

s/ J. Curtis Joyner, J.


Service: **Get by LEXSEE®**
Citation: **2005 U.S. Dist. LEXIS 714**
View: Full
Date/Time: Thursday, September 29, 2005 - 11:09 AM EDT

* Signal Legend:
⊕ - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
[A] - Citing Refs. With Analysis Available
[i] - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# Exhibit 3

Not Reported in F.Supp.2d, 2004 WL 554810 (N.D.Ill.), Fed. Sec. L. Rep. P 92,715

**Motions, Pleadings and Filings**

United States District Court,
N.D. Illinois, Eastern Division.
Daniel TAUBENFELD, individually and on behalf of all others similarly situated,
Plaintiff,
v.
CAREER EDUCATION CORPORATION, John M. Larson and Patrick K. Pesch, Defendants.
No. 03 C 8884.
March 19, 2004.

Marvin Alan Miller, Anthony F. Fata, Miller Faucher and Cafferty, LLP, Chicago, IL, Steven G. Schulman, Andrei V. Rado, Peter Seidman, Milberg, Weiss, Bershad, Hynes & Lerach LLP, Joshua Lifshitz, Bull & Lifshitz, LLP, New York, NY, for Plaintiff.

Mary Ellen Hennessy, David H. Kistenbroker, Joni S. Jacobsen, Karl Richard Barnickol, Katten Muchin Zavis Rosenman, Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

LEFKOW, J.

**\*1** Currently pending in this district are six related securities fraud putative class actions (the "related cases") brought against Career Education Corporation ("CEC"), John M. Larson ("Larson") and Patrick K. Pesch ("Pesch"). [FN1] Each action alleges that the defendants violated § 10(b) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78j (b), Rule 10b-5 promulgated under § 78j(b), and § 20(a) of the Act, 15 U.S.C. § 78t(a). The court has been presented with three competing motions for appointment of lead plaintiff in these cases, brought by, respectively, (1) Thomas Schroder; (2) Phil M. Campbell and Laurence Ratnofsky; and (3) Jeffrey Koontz and Nicholas Margaritis. Each potential lead plaintiff seeks an order granting similar relief, including (a) consolidation of the related cases; (b) appointment as lead plaintiff; and (3) approval of lead counsel for the class. For the reasons stated below, Schroder's motion is granted in part and ruling is reserved in part while the other potential lead plaintiffs' motions are denied.

> FN1. The related cases are *Taubenfeld v. Career Ed. Corp., et al.*, 03 C 8884; *Stellato v. Career Ed. Corp., et al.*, 03 C 8939; *Katz v. Career Ed. Corp., et al.*, 03 C 9157; *Morris, et al. v. Career Ed. Corp., et al.*, 04 C 305; *Woo v. Career Ed. Corp., et al.*, 04 C 0339; and *Schild v. Career Ed. Corp., et al.*, 04 C 0906.

BACKGROUND

CEC is a Delaware corporation with its principal place of business in Hoffman Estates, Illinois. During the time period relevant to this action, Larson served as CEC's Chief Executive Officer, President and Chairman, and Pesch as its Chief Financial Officer, Treasurer and Secretary. CEC is a provider of private, for-profit postsecondary education with 51 campuses in countries including the United States, Canada, France, the United Kingdom and the United Arab Emirates. In each of the six cases before this court, CEC, Larson and Pesch are alleged to have made materially false and misleading statements during the proposed class period. The defendants are alleged to have falsified student records in order to increase graduation rates and enrollment, concealed problems that could have threatened the accreditation of many of its schools, graduated students who had not completed required courses and billed students for taking courses they never attended.

DISCUSSION

A. Consolidation

All of the potential lead plaintiffs argue that the six related cases should be consolidated because there are similar issues of fact and law involved in each case. Consolidation is appropriate "[w]hen actions involving a common question of law or fact are pending before the court...." Fed.R.Civ.P. 42(a). The court agrees that consolidation is appropriate for the six related cases insofar as each involves class action claims on behalf of purchasers of CEC stock and each asserts similar if not overlapping claims for relief. Moreover, given the similarity of the claims, the court believes that consolidation of these cases will result in substantial savings of judicial time and effort. Accordingly, the related cases are hereby consolidated for all purposes pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.

B. Appointment of Lead Plaintiff

The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 78u-4 et seq., establishes the procedure for appointment of a lead plaintiff in "each private action arising under [the Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). The PSLRA presents a rebuttable presumption that

*2 the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that-
(aa) has either filed the complaint or made a motion in response to a notice [published to potential class members] ...;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.
15 U.S.C. § 78u-4(a)(3)(B)(iii).

Each of the potential lead plaintiffs abided by requirement (aa) set out above. Under the PSLRA, after notice of the law suit is provided to the potential class members (which occurred in this case on December 10, 2003), within 60 days of this notice any person or group of persons who wishes to proceed as lead plaintiff must present their motion to the court. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). That 60 day period expired on February 9, 2004. The motions currently pending before the court are all made by this February 9 date.

As for the potential lead plaintiff with the largest financial interest, the parties focus on who had the most net losses during the proposed class period. Under that benchmark, there is no dispute that Schroder had the most losses, measured at $96,512. This is significantly larger than the $10,344.93 Campbell and Ratnofsky claimed to have lost and the $52,300 claimed to have been lost by Koontz and Margaritis. Thus, so long as Schroder otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, he would be the most adequate plaintiff envisioned under the PSLRA.

Rule 23(a) states that

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In selecting the lead plaintiff under the PSLRA, the court focuses on the typicality and adequacy requirements as the only relevant considerations. See, e.g., Johnson v. Tellabs, Inc., 214 F.R.D. 225, 228 (N.D.Ill.2002); Lax v. First Merchants Acceptance Corp., 1997 WL 461036, at *6 (N.D.Ill. Aug.11, 1997) (" '[a] wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification. This inquiry, therefore, focuses on ... typicality and adequacy." ') (brackets in original, citation omitted). The typicality requirement is met so long as "plaintiff's claim ... arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir.1992) (quoting Fuente v.. Stokley-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir.1983)). Under the adequacy requirement the plaintiff must demonstrate that "(1) his claims are not antagonistic or in conflict with those of the class; (2) he has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) he is represented by competent, experienced counsel who [is] able to prosecute the litigation vigorously." Johnson, 214 F.R.D. at 228-29.

*3 Koontz and Margaritis attack Schroder's ability to serve as lead counsel on both typicality and adequacy grounds. Concerning typicality, Koontz and Margaritis claim that Schroder was a day trader, thereby making him atypical from the remaining members of the class and subject to certain unique defenses. As for adequacy of representation, Koontz and Margaritis argue that Schroder's choice of counsel (the law firm of Goodkind Labaton Rudoff & Sucharow LLP ("Goodkind Labaton")) is inadequate because rather than conducting an independent investigation prior to filing its complaint, Goodkind Labaton copied the complaint prepared by counsel for Koontz and Margaritis (the law firm of Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss")). As provided for in the PSLRA, in challenging the presumptive lead plaintiff's typicality and adequacy, Koontz and Margaritis must come forward with proof that Schroder will not adequately protect the interests of the class or that he is subject to unique defenses making him incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Starting with the challenge to Schroder's typicality, at first glance it would certainly appear that Schroder meets all of the typicality requirements. He purchased shares of CEC stock during the proposed class period at prices alleged to have been inflated by false and misleading statements, which thereby caused him damage. Koontz and Margaritis nevertheless suggest that Schroder's status as an alleged "day trader" makes him atypical and subject to unique defenses. According to Koontz and Margaritis, Schroder "sold CEC common stock in the same day or, in one instance, sold it the day after purchasing it" and that he "clearly is not an investor in any true sense of the word, rather he is a trader looking to capitalize on small price fluctuations in CEC common stock that arguably have little to do with integrity of the Company's Class Period representations." Because of his pattern of trading, Koontz and Margaritis contend that Schroder is subject to unique defenses and cannot avail himself of the "fraud on the market" theory to prove reliance on CEC's false and misleading statements.

As Schroder points out, Koontz and Margaritis do not elaborate on what, in their view, makes someone a "day trader." [FN2] In any event, that description does not appear apt for Schroder. Schroder attaches to his certification his trading record in CEC's stock within the class period, which includes a purchase and sale of 5,000 shares on November 17, 2003 (resulting in a net loss of $20,000), a purchase and sale of 4,600 shares on December 1, 2003 (resulting in a net loss of $10,212), a purchase of 5,000 shares on December 2, 2003 for $273,750 and a sale of those 5,000 shares on December 3, 2003 for $207,450. Schroder's record certainly does not appear to be one of an individual who makes frequent trades each day or one that is attempting to make a career out of buying and selling stocks very quickly. Indeed, evidence in the record shows that Schroder serves as a manager for an environmental engineering construction company. [FN3]

> FN2. The web site *www.investorwords.com.* brought to the court's attention by Schroder, defines a "day trader" as a

> Very active stock trader who holds positions for a very short time and makes several trades each day. Day traders are individuals who are trying to make a career out of buying and selling stocks very quickly, often making dozens of trades in a single day and generally closing all positions at the end of each day. Day trading can be costly, since the commissions and the bid/ask spread add up when there are so many transactions.

> FN3. Koontz and Margaritis would apparently like to portray themselves as long term investors in CEC stock. The record, however, discloses that Koontz bought shares of CEC stock on November 18, 2003, which he then sold on December 4, 2003. He purchased more shares on December 8, 2003, which he sold on December 15, 2003. As for Margaritis, he purchased shares on November 26, 2003, most of which were then sold on November 28 and December 3, 2003.

*\*4* The case Koontz and Margaritis cite in support of their belief that status as a day trader makes Schroder atypical is *Bank One Shareholders Class Actions, 96 F.Supp.2d 780 (N.D.Ill.2000).* In that case the court noted that Thales Fund Management L.L.C. (referred to in the opinion as "Thales") was
an institutional investment manager (a hedge fund) that engaged in extensive daytrading, first shorting Bank One stock (presumably because it was regarded as overvalued at market price) and then buying to cover the short position. In addition to that trading pattern, of course Thales is not simply a buyer for its own account, standing instead in the place of whatever number of investors are participants in its managed fund. Taken all in all, this Court does not view that posture as qualifying Thales for the "most adequate plaintiffs" designation in preference to the handful of institutional investors who ... [have] greater aggregate claimed losses.
*Id.* at 784.
As Schroder points out, there are numerous portions of the *Bank One* case that are distinguishable, including that Thales had engaged in "extensive daytrading" and that its losses actually represented those of "an unknown number of investors." Moreover, Thales' status as the largest investor was certainly questionable given that the court made clear that Thales did not have a larger loss than the "handful of institutional investors who make up the Pension Group." The facts here are not similar enough to those in *Bank One* to warrant that case's application.
Koontz and Margaritis also theorize that day traders may not be able to rely on the "fraud on the market" theory of reliance. They cite no case for this proposition and, in any event, many courts have rejected this theory. *See, e.g., In re Royal Ahold N.V. Sec. and ERISA Litig., 219 F.R.D. 343, 354 (D.Md.2003)* ("It has been suggested that Generic is atypical because it is a day-trader, and day-traders allegedly do not rely on the financial statements or the fundamental value of a company as the rest of the market does. But where false information and misleading omissions pollute the market, all types of investors are injured."); *In re Sunbeam Sec. Litig.*, No. 98-8258-Civ, 2001 WL 899658, at \*1-2 (S.D.Fla. July 3, 2001)* ("I have not found, nor have defendants presented, persuasive precedent or case law establishing that day traders ... absent specific refutation of the rebuttable presumption of reliance, are not entitled to the presumption of reliance where they bought in an efficient secondary market like the NYSE."). Accordingly, seeing no proof that Schroder is subject to unique defenses making him incapable of adequately representing the class, the challenge to his typicality is rejected.
As for adequacy of representation, Koontz and Margaritis argue that Schroder has selected counsel that has not

independently investigated this case but instead simply copied the work product of counsel for Koontz and Margaritis. On the court's own review of the two complaints at issue, they are, in fact, identical. One was filed by Milberg Weiss on behalf of Daniel Taubenfeld. Thereafter, Goodkind Labaton filed the identical complaint on behalf of Stuart Katz. [FN4] Some courts have taken issue with such behavior and questioned whether it is indicative of counsel taking part in the necessary investigation required by Federal Rule of Civil Procedure 11. See, e.g., Mayo v. Apropros Tech., Inc., No. 01 C 8406, 2002 WL 193393, at *5 (N.D.Ill. Feb.7, 2002); In re Razorfish, Inc. Sec. Litig., 143 F.Supp.2d 304, 311 (S.D.N.Y.2001). Nevertheless, without commenting on the appropriateness of copying another plaintiff's complaint verbatim, for two reasons the court does not believe this reflects on Schroder's adequacy to serve as lead plaintiff.

FN4. Neither Taubenfeld nor Katz has moved for appointment to serve as lead plaintiff.

*5 Initially, this issue seems more a reflection on Schroder's choice of counsel rather than his adequacy to serve as lead plaintiff. Indeed, the court in Mayo addressed this issue in relation to the lead plaintiff's selection of lead counsel. Under the PSLRA the most adequate plaintiff may select and retain counsel subject, of course, to the court's approval. 15 U.S.C. 78u-4(a)(3)(B)(v); see also, In re Party City Sec. Litig., 189 F.R.D. 91, 114 (D.N.J.1999) ("The decision to approve counsel selected by the lead plaintiff is a matter within the discretion of the district court."). More fundamentally, however, this issue of copying another's complaint would have persuasive effect if there was evidence showing that the proposed lead counsel did not, in fact, undertake a sufficient investigation before filing a complaint. That is not the case here. In an affidavit filed in further support of Schroder's motion, an attorney at Goodkind Labaton swore that the firm conducted an internal investigation into the alleged wrongdoing at CEC six days before the initial Taubenfeld complaint was filed and that this examination included review of analyst reports and various public records such as newspaper articles and Securities and Exchange Commission filings. (Keller Aff. in further support at ¶¶ 3-4.) On December 4, 2003, Goodkind Labaton prepared an internal report examining a variety of public sources which contained many of the basic factual and legal allegations now found in the Taubenfeld and Katz complaints. (Id. at ¶ 6.) Moreover, Goodkind Labaton claims that many of its additional allegations, which were derived based on confidential sources, were not provided in the complaint it filed because it would have given the defendants more time to prepare defenses to such information. [FN5] (Id. at ¶ 11.) Accordingly, the court sees no merit to the suggestion that Goodkind Labaton conducted no pre-complaint investigation and otherwise rejects the suggestion that Schroder should not serve as lead plaintiff because his adequacy of representation can be questioned. [FN6]

FN5. In response to the suggestion of copying, Goodkind Labaton states that it is "common practice" in class action securities fraud cases

for plaintiffs to copy, in whole or in substantial part, earlier filed complaints, particularly where, as here, those complaints are based predominantly on publicly available information. Once again, the court need not and does not comment on such practices.

FN6. Koontz and Margaritis also argue that there is evidence of some sort of "eleventh-hour agreement" between lawyers," specifically between Goodkind Labaton and counsel for Campbell and Ratnofsky, the law firm of Cauley Geller. Koontz and Margaritis suggest that Cauley Geller ceded to Goodkind Labaton in this case in exchange for Goodkind Labaton ceding to Cauley Geller in a class action filed in Massachusetts. Insofar as Schroder has the largest financial interest in this case and otherwise meets the requirements of Rule 23(a), which this alleged "agreement" does not change, the court sees no merit to this argument.

Based on the above, because Schroder has the largest financial interest in the relief sought by the class and because he satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the court appoints him as lead plaintiff in this action.
C. Appointment of Lead Counsel
The PSLRA provides that the "most adequate plaintiff shall, subject to approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Nevertheless, "[t]he decision to approve counsel selected by

the lead plaintiff is a matter with[in] the discretion of the district court." *Mayo, 2002 WL 193393, at *5* (first bracket in original) (quoting *In re Party Sec. Litig., 189 F.R.D. at 114*). Schroder has chosen Goodkind Labaton to serve as lead counsel. Goodkind Labaton lists a number of securities fraud class actions in which it has participated as lead counsel. However, the firm's biography, which is claimed to be attached as exhibit 3, is not included. Moreover, Schroder's motion contains no information about important matters such as the anticipated staffing of this case and the proposed fee structure. This is significant information the court would like to review prior to making a determination on lead counsel. *See, e.g., In re Motorola Sec. Litig.,* No. 03 C 0287, 2003 WL 21673928, at *7 (N.D.Ill. July 16, 2003) (approving lead counsel with evidence of proposed fees that "do not appear unreasonable"); *Johnson, 214 F.R.D. at 229* (approving lead counsel "[b]ecause the anticipated staffing and proposed fees ... do not appear unreasonable ...,"); *Mayo, 2002 WL 193393, at *5-6* (requesting potential lead plaintiffs to "submit information as to the agreed fees, how each firm anticipates staffing this matter, and the hourly rates for attorneys and staff."). Accordingly, Goodkind Labaton is instructed to submit to the court information concerning its proposed fee structure and its anticipated staffing of this action, in addition to its firm biography. It is also instructed to bring forth its suggestion for liaison counsel, which was not contained in its motion. The court will reserve ruling on the issue of lead counsel until it has received and reviewed such information.

CONCLUSION

*\*6* For the reasons stated above, Schroder's motion for appointment of lead plaintiff and approval of proposed lead plaintiff's selection of lead counsel is granted in part and ruling reserved in part [# 10]. The motions of Koontz and Margaritis [# 12] and Campbell and Ratnofsky [# 15] are denied. The court orders the following cases consolidated for all purposes: *Taubenfeld v. Career Ed. Corp., et al.,* 03 C 8884; *Stellato v. Career Ed. Corp., et al.,* 03 C 8939; *Katz v. Career Ed. Corp., et al.,* 03 C 9157; *Morris, et al. v. Career Ed. Corp., et al.,* 04 C 305; *Woo v. Career Ed. Corp., et al.,* 04 C 0339; and *Schild v. Career Ed. Corp., et al.,* 04 C 0906. The court further appoints Thomas Schroder as lead plaintiff in this consolidated action. Schroder shall have until April 7, 2004 to file the supplemental information discussed above. Ruling is reserved on the motion for approval of Schroder's selection of lead counsel until that information has been received and reviewed.

N.D.Ill.,2004.

Taubenfeld v. Career Educ. Corp.

Not Reported in F.Supp.2d, 2004 WL 554810 (N.D.Ill.), Fed. Sec. L. Rep. P 92,715

### Motions, Pleadings and Filings (Back to top)

• 2005 WL 1403526 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Second Amended Consolidated Complaint (May. 20, 2005)

• 2005 WL 1073668 (Trial Pleading) Second Amended Consolidated Complaint for Violation of the Federal Securities Laws (Apr. 01, 2005)

• 2005 WL 1403532 (Trial Pleading) Second Amended Consolidated Complaint for Violation of the Federal Securities Laws (Apr. 01, 2005)

• 2004 WL 2175237 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion to Dismiss (Jul. 30, 2004)

• 2004 WL 2175236 (Trial Pleading) Amended Consolidated Complaint for Violation of the Federal Securities Laws (Jun. 17, 2004)

• 2004 WL 2175234 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law of Thomas Schroder in Further Support of His Motion for Lead Plaintiff and in Opposition to the Two Competing Motions for Appointment as Lead Plaintiff by Nicholas Margaritis, Jr. and Jeffrey Koontz, and by Phil M. Campbell an d Laurence Ratnofsky (Mar. 09, 2004)

• 2004 WL 2175235 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Jeffrey Koontz and Nicholas Margaritis, Jr. in Further Support of Their Motion for Consolidation and Appointment of Lead Plaintiff and Lead and Liaison Counsel (Mar. 09, 2004)

• 2004 WL 2175226 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Thomas Schroder in Opposition to Competing Motions for Appointment as Lead Plaintiff (Feb. 24, 2004)

• 2004 WL 2175229 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to the Competing Lead Plaintiff Motions and in Further Support of the Motion of Phil M. Campbell and Laurence Ratnofsky for Appointment as Lead Plaintiff and for Approval of Selection of Lead and Liaison Counsel (Feb. 24, 2004)

• 2004 WL 2175232 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Further Support of the Motion of Jeffrey Koontz and Nicholas Margaritis, Jr. for Consolidation and Appointment of Lead Plaintiff and Lead and Liaison Counsel and in Opposition to the Other Motions (Feb. 24, 2004)

• 2004 WL 2175222 (Trial Motion, Memorandum and Affidavit) Motion of Thomas Schroder for Appointment as Lead Plaintiff and Approval of Proposed Lead Plaintiff's Selection of Lead Counsel (Feb. 09, 2004)

• 2004 WL 2175223 (Trial Motion, Memorandum and Affidavit) The Motion of Jeffrey Koontz and Nicholas Margaritis, Jr. for Consolidation and Appointment of Lead Plaintiff and Lead and Liaison Counsel (Feb. 09, 2004)
• 2004 WL 2175224 (Trial Motion, Memorandum and Affidavit) Motion for Consolidation, Appointment as Lead Plaintiffs and for Approval of Selection of Lead and Liaison Counsel (Feb. 09, 2004)
• 2003 WL 23800572 (Trial Pleading) Class Action Complaint for Violations of Federal Securities Laws (Dec. 09, 2003)
• 1:03cv08884 (Docket) (Dec. 09, 2003)
END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.