UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMUEL I. HYLAND and STEPHANIE SPEAKMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM B. HARRISON, JR., HANS W. BECHERER, RILEY P. BECHTEL, FRANK A. BENNACK, JR., JOHN H. BIGGS, LAWRENCE A. BOSSIDY, M. ANTHONY BURNS, ELLEN V. FUTTER, WILLIAM H. GRAY, III, HELENE L. KAPLAN, LEE R. RAYMOND, JOHN R. STAFFORD, and J.P. MORGAN CHASE & CO., and JAMES DIMON,<br><br>Defendants.<br><br>DR. STEPHEN BLAU, Individually and On Behalf of All Others Similarly Situated,<br><br>Applicants-In-Intervention | Case No. 1:05-cv-162 (JJF)<br><br>CLASS ACTION |

**AFFIDAVIT OF GREGORY MARK NESPOLE, ESQ. IN SUPPORT OF DR. BLAU'S ANSWERING BRIEF IN OPPOSITION TO THE MOTION TO DISQUALIFY WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP FILED IN THIS COURT BY SAMUEL HYLAND AND STEPHANIE SPEAKMAN**

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

I, Gregory Mark Nespole, Esq., being duly sworn, deposes and says;

1.  I am an attorney at law of the State of New York. I am a partner at the law firm of Wolf Haldenstein Adler Freeman & Herz LLP located at 270 Madison Avenue, New York, 10016, and I offer this affidavit in support of Lead Plaintiff's Opposition To The Motion to

Disqualify Wolf Haldenstein Adler Freeman & Herz LLP Filed In This Court By Samuel Hyland and Stephanie Speakman I also offer this affidavit in support of the introduction of true and correct copies of the following document:

> A copy of the *Blau* Legal Notice published in the Investor's Business Daily dated October 15, 2004, attached as Exhibit A;

2. As a threshold matter, Counsel for the Hyland Plaintiffs'[1] Motion to Disqualify my firm is based in part on former Lead Plaintiff American Growth Fund, Inc.'s election to withdraw as a court appointed Lead Plaintiff prior to the filing of the amended complaint in the Blau Action. This contention is meritless.

3. Following the filing of the Blau Action in October 2004, I directed that notice of pendency be published in the *Investors Business Daily*. See Exhibit A.

4. On or about November 23, 2004, I received in the mail an unsigned plaintiff's certificate from the American Growth Fund, Inc. concerning its shares of J.P. Morgan common stock. See Exhibit B.

5. Given that the certificate was unsigned, I called Timothy E. Taggart of AGF and left him a voicemail stating that I had received the certificate, but it was defective because it was unsigned by a person with authority to approve AGF's involvement in the litigation. Mr. Taggart's name was listed on the certificate as AGF's contact person.

6. That same day, I wrote Mr. Taggart requesting that he resubmit a signed certificate. See Exhibit C.

---

[1] Defined terms in this affidavit shall have the same meaning as they were assigned in the accompanying memoranda.

7. Within days, I received a duly executed certificate, signed by Mr. Taggart. See Exhibit D.

8. Again, I called Mr. Taggart and left him a detailed message explaining the process, and that we were planning to proffer as Lead Plaintiffs AGF and Dr. Blau, and that we were working on an amended complaint that I would send to him in draft form once it was fairly advanced.

9. On February 14, 2005, I sent Mr. Taggart a draft of the amended complaint. See Exhibit E.

10. Sometime on February 16, 2005, Mr. Taggart called me and said he had some misgivings about continuing as a Lead Plaintiff in a class action against J. P. Morgan. At no time did he state that he mistakenly executed a certificate or that AGF had not intended to serve as a lead plaintiff.

11. We spoke additional times on February 16. He stated that he was mindful and concerned that as a fiduciary, he might have an obligation to pursue the case on behalf of investors in AGF. I explained to him that he had no obligation to participate and regardless of whether he proffered AGF as a lead plaintiff, AGF was a member of the class and that I would, assuming the case was successful, make sure he received a claim form and would assist him in submitting it. During our last conversation of the day, Mr. Taggart requested that I send him a copy of the certificate he executed on behalf of AGF and that he would bring up the matter with others at AGF.

12. Pursuant to his request, at the end of business on February 16, I sent Mr. Taggart via e-mail/PDF, fax, and Federal Express the information he requested along with a cover letter. See Exhibit F.

13. On February 17, Mr. Taggart called me and asked that I withdraw AGF. During our call on February 17, Mr. Taggart said that he would remain open to the possibility that AGF might be willing to serve as a proposed class representative should defendants' motion to dismiss be denied. Later in the week, I received via express mail a letter dated February 16, confirming that AGF wished to withdraw as Lead Plaintiff. See Exhibit G.

14. We submitted AGF's withdrawal on February 18, 2005, at the same time we filed the Blau Action's amended complaint. Accordingly, with respect to my dealings with AGF, I complied with the PSLRA and all other applicable ethical obligations. For Mr. Gielata to state otherwise is simply not supported by the record.

15. Mr. Gielata's litany of feckless allegations continues when he accuses my firm of jeopardizing the class' recovery of damages because of failure to serve Mr. Bechtel, who, notwithstanding Mr. Gielata's accusations, *is* a defendant in the Class Action. This allegation strains credulity to the breaking point. Indeed, Defendant Bechtel endeavored to evade service for months. Only after threatening to obtain an order permitting alternative service given that Mr. Bechtel is reportedly accompanied by a security detail and service was both impossible and dangerous, did he ultimately agree to accept service and join in defendants' motion to dismiss. Further, the decision to dismiss claims against Laurence Fuller followed discussion among the parties' counsel concerning whether Mr. Fuller was on the board of J.P. Morgan at the time of the merger. Accordingly, I thought it a prudent course to agree to dismiss that defendant instead of engaging in a time-consuming, collateral battle over one outside director.

16. Further, that Mr. Blau has elected not to name Mr. Dimon as a defendant was a conscious litigation strategy, as was the choice of Chicago as a forum, and the decision to limit the Blau Action to claims under Section 14 of the Exchange Act. Indeed, Mr. Gielata's

complaint alleges at Count I the same proxy allegations as the Blau Action, and at Count II the same control person allegations. Mr. Gielata's Count III, however, alleges claims that were dismissed by Vice Chancellor Lamb in *In re J.P. Morgan Chase & Co. Shareholder Litigation*, C.A. No. 531-N on the grounds they were derivative, not direct claims, and plaintiffs in that action were unable to allege demand futility.

17.     With respect to Mr. Gielata's fraud-based claim under Section 10(b), the Blau Action purposefully elected to pursue claims only under Section 14 because I believed that defendants conduct clearly constituted negligent conduct, while it was a close-call whether the Blau Action could allege the requisite scienter required by Section 10(b). In short, counsel in the Blau Action elected to plead and prove claims that required a showing of negligence – not scienter – as a strategic course, not because we simply forgot to do it, as Mr. Gielata implies.

18.     Finally, counsel in the Blau Action elected to forego the Securities Act claims alleged by Mr. Gielata because I conclude the only way to plead them properly would require plaintiffs to plead that they sounded in fraud. Again, I elected to pursue claims that sounded in negligence given the circumstances and facts presented at least while the PSLRA's discovery stay was in effect. This is not to say that I might not amend in the future should discovery reveal

5

that defendants' conduct was fraudulent. Accordingly, Dr. Blau's action, from its inception, has pursued Section 14 claims that require a showing of negligence, not fraud-based claims that require pleading scienter.

Affiant sayeth no more.

GREGORY MARK NESPOLE

Sworn to before me this
29th day of Sept., 2005

Y415761

JOSEPH WEISS
Notary Public, State of New York
No. 01WE5069215
Qualified in Nassau County
Commission Expires Nov. 18, ~~1998~~ 2006

6