## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMUEL I. HYLAND and STEPHANIE SPEAKMAN, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　　　　　v.<br><br>WILLIAM B. HARRISON, JR., HANS W. BECHERER, RILEY P. BECHTEL, FRANK A. BENNACK, JR., JOHN H. BIGGS, LAWRENCE A. BOSSIDY, M. ANTHONY BURNS, ELLEN V. FUTTER, WILLIAM H. GRAY, III, HELENE L. KAPLAN, LEE R. RAYMOND, JOHN R. STAFFORD, JPMORGAN CHASE & CO., and JAMES DIMON,<br><br>　　　　Defendants. | Case No.  **1:05-cv-162 (JJF)**<br><br>**CLASS ACTION** |

### REPLY BRIEF IN SUPPORT OF
### PLAINTIFFS' MOTION TO DISQUALIFY
### <u>WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP</u>

Dated: October 6, 2005

　　　　　　　　　　　　　　　　　　Joseph N. Gielata (DSB # 4338)
　　　　　　　　　　　　　　　　　　Attorney at Law
　　　　　　　　　　　　　　　　　　501 Silverside Road, Suite 90
　　　　　　　　　　　　　　　　　　Wilmington, DE 19809
　　　　　　　　　　　　　　　　　　(302) 798-1096

　　　　　　　　　　　　　　　　　　*Lead Counsel for Plaintiffs*
　　　　　　　　　　　　　　　　　　　*and the Putative Class*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.   Wolf Haldenstein's Divided Loyalties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

II.  Wolf Haldenstein's Plagiarism Potentially Violates Rule 11. . . . . . . . . . . . . . . 5

III. Wolf Haldenstein's Abusive Scheme. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.  Wolf Haldenstein's Critical Errors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.   Wolf Haldenstein's Misleading Notice. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## **TABLE OF AUTHORITIES**

**Cases:** **Page**

*Billing v. Credit Suisse First Boston Ltd.*,
    Nos. 03-9284L, 03-9288CON, 2005 WL 2381653 (2d Cir. Sept. 28, 2005) . . . . .1

*In re Cardinal Health, Inc. ERISA Litig.*,
    225 F.R.D. 552 (S.D. Ohio 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

*In re Continental Illinois Sec. Litig.*,
    750 F. Supp. 868 (N.D. Ill. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5 n.4

*de la Fuente v. DCI Telecommunications, Inc.*,
    259 F. Supp. 2d 250 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Dietrich v. Bauer*,
    192 F.R.D. 119 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Garr v. U.S. Healthcare, Inc.*,
    22 F.3d 1274 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Greenfield v. U.S. Healthcare, Inc.*,
    146 F.R.D. 118 (E.D. Pa. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Krim v. pcOrder.com, Inc.*,
    210 F.R.D. 581 (W.D. Tex. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Marsden v. Select Medical Corp.*,
    2005 WL 113128 (E.D. Pa. Jan. 18, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Mehl v. Canadian Pacific Railway Ltd.*,
    227 F.R.D. 505 (D.N.D. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

*Sullivan v. Chase Inv. Services of Boston, Inc.*,
    79 F.R.D. 246 (D.C. Cal. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3-4

**Rules:**

Fed. R. Civ. P. 4(m). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Fed. R. Civ. P. 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

This reply brief is respectfully submitted by the Delaware Plaintiffs in further support of their motion to disqualify Wolf Haldenstein.[1]

## **PRELIMINARY STATEMENT**

Wolf Haldenstein's answering brief simply avoids many of the points and authorities raised in the Delaware Plaintiffs' opening brief. Wolf Haldenstein neither explains nor even attempts to justify its various missteps in the Illinois Action. As to its conflict of interest, Wolf Haldenstein also takes refuge in evasion. However, the conflict identified in the Delaware Plaintiffs' opening brief is too great to ignore. Indeed, the conflict has deepened since the filing of the motion to disqualify.

On September 28, 2005, the Second Circuit issued an opinion reviving a massive antitrust class action concerning IPO allocation practices against defendants including the investment bank subsidiaries of JPMC. *See Billing v. Credit Suisse First Boston Ltd.*, Nos. 03-9284L, 03-9288CON, --- F.3d ----, 2005 WL 2381653 (2d Cir. Sept. 28, 2005) (attached hereto as Exhibit 1). Wolf Haldenstein is one of only five law firms representing the plaintiffs in the consolidated IPO antitrust actions (the "IPO Antitrust Litigation").[2] The Second Circuit characterized the IPO Antitrust Litigation as alleging "an epic Wall Street conspiracy," *see id.* at *1, and observed that the core allegations therein mirrored those in the IPO Securities Litigation, *see id.*, recently characterized as "the most massive securities class action in history" by one of Wolf Haldenstein's co-counsel.[3] With potentially tens of billions of dollars at stake, JPMC may not have the financial capacity to cover its maximum exposure in the various cases.

---

[1] Unless otherwise defined, capitalized terms have the meanings ascribed to them in the Delaware Plaintiffs' opening brief (D.I. 65).
[2] In fact, one Wolf Haldenstein attorney, Mary Jane Fait, is listed as counsel in the Second Circuit decision concerning the IPO Antitrust Litigation and is also listed on several of the pleadings in the Illinois Action, including the initial complaint and the lead plaintiff application.
[3] A copy of the press release containing this statement is attached hereto as Exhibit 2.

Wolf Haldenstein apparently believes that it can juggle its loyalties without shortchanging any of the class members in this litigation. However, Wolf Haldenstein has failed to explain how the IPO Securities Litigation and now, in addition, the IPO Antitrust Litigation, are not directly adverse to the interests of class members in this litigation, most of whom still own shares of JPMC. Moreover, no amount of explanation can eliminate the risk that Wolf Haldenstein will favor the IPO Securities Litigation and the IPO Antitrust Litigation in terms of resources and attention, to the detriment of class members in this litigation. Disqualification would eliminate this risk, as well as the danger that class members' recovery in this litigation could be impaired if JPMC sought a "package discount" through a global resolution of this litigation together with the IPO Securities Litigation and IPO Antitrust Litigation.

Class members in this litigation need not be exposed to the very real hazards which invariably flow from Wolf Haldenstein's divided loyalties. Further, the class deserves competent representation (as already provided by the Delaware Plaintiffs' counsel), which Wolf Haldenstein has not shown any ability or willingness to deliver. In addition to pervasive irregularities which raise serious concerns about Wolf Haldenstein's conduct, Wolf Haldenstein has endangered the interests of class members by committing basic mistakes. Accordingly, disqualification of Wolf Haldenstein is both necessary and appropriate in this litigation.

**ARGUMENT**

I.   **Wolf Haldenstein's Divided Loyalties**

Wolf Haldenstein contends that its loyalty to the class members in the IPO Securities Litigation (and now, in addition, the IPO Antitrust Litigation) is "insufficient in an [*sic*] of itself to render plaintiff's counsel inadequate to serve as lead counsel."

(D.I. 73 at 7.)  Wolf Haldenstein cites *Mehl v. Canadian Pacific Railway Ltd.*, 227 F.R.D. 505 (D.N.D. 2005) and *Dietrich v. Bauer*, 192 F.R.D. 119 (S.D.N.Y. 2000) for this contention.  (D.I. 73 at 7.)  *Mehl* is inapposite because the Court there pointed to its power to approve any proposed settlement as a sufficient procedural safeguard against any conflict— however, this purported safeguard is absent here because neither the IPO Securities Litigation nor the IPO Antitrust Litigation is pending before this Court.  Thus, this Court cannot review any proposed settlement of the latter cases.  Also, *Mehl* involved a number of personal injury suits, unlike the multi-billion dollar securities class actions at issue in this litigation.  There was no indication in *Mehl* that the various plaintiffs might have found themselves competing for limited funds.

*Dietrich* actually bolsters the need for disqualification because, there, "the Court [was] not presented with a situation in which counsel simultaneously represents classes in parallel litigations seeking to tap the same pool of finite assets."  192 F.R.D. at 126.  *Dietrich* acknowledges the conflict inherent in "common pool" situations but held that no such conflict was present where the two actions at issue involved "completely different set[s] of defendants" because "the maintenance of parallel actions against different defendants does not pit one class against the other in terms of satisfying a potential judgment."  *Id.*  Here, by contrast, it is undisputed that JPMC is a defendant in this litigation and in the IPO Securities Litigation (as well as the IPO Antitrust Litigation).

Wolf Haldenstein attempts to distinguish *In re Cardinal Health, Inc. ERISA Litigation*, 225 F.R.D. 552 (S.D. Ohio 2005) and *Sullivan v. Chase Investment Services of Boston, Inc.*, 79 F.R.D. 246 (N.D. Cal. 1978) by asserting that "the alleged conflict of interest is illusory... [because] there is no reason to believe that [JPMC], as one of the largest and most profitable banks in the world, will be unable to satisfy multiple

- 3 -

judgments if it is found liable in the cases currently pending against it." (D.I. 73 at 8.) This conclusory assertion is belied by sources suggesting that damages in the IPO Securities Litigation alone may be $25 billion, and as much as $100 billion. (D.I. 65 at 4.) Given that damages in antitrust actions can be trebled, *see* 15 U.S.C. § 15(a), it is reasonable to believe that potential damages in the IPO Antitrust Litigation are similarly massive. Moreover, in this litigation, the Delaware Plaintiffs demand no less than $10 billion in compensatory class damages and, in addition, will seek punitive damages at trial. Therefore, for Wolf Haldenstein to minimize the potential recoveries in the various actions is plainly self-serving under the circumstances.

Additionally, in *Sullivan*, the Court found a conflict due to potential competition for limited funds because the "alleged liability to the class of over $20 million is great enough to influence litigation strategy" in a case involving a subsidiary-predecessor of JPMC. 79 F.R.D. at 258. Here, with tens of *billions* of dollars at stake (two or three orders of magnitude greater than the amount in controversy in *Sullivan*), it is unclear whether JPMC has the financial capacity to satisfy judgments in the IPO Securities Litigation as well as this litigation. The extent to which this issue would influence Wolf Haldenstein's decision-making should not be underestimated.

Wolf Haldenstein attempts to distinguish *Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581 (W.D. Tex. 2002) by declaring that the conflict there "had actually materialized." (D.I. 73 at 8.) Thus, Wolf Haldenstein concedes the potential for conflict but urges that disqualification be deferred until settlement negotiations take place. Even if the conflict of interest "actually materializes" only once settlement negotiations take place,

disqualification is appropriate now. Regardless of *when* harm is inflicted on the class, a clear conflict calls for immediate disqualification.[4]

Accordingly, regardless of whether, in Wolf Haldenstein's words, its conflict of interest has "actually materialized," the Court should disqualify Wolf Haldenstein from representing any purported class member to eliminate the appearance of impropriety and protect the interests of class members in this litigation. As the putative class in the Delaware Action is more than adequately represented, and Blau has other counsel, no party will be prejudiced.

## II.    Wolf Haldenstein's Plagiarism Potentially Violates Rule 11

The extensive catalogue of plagiarized sections in the Illinois Action complaints cannot be chalked up to mere coincidence. (D.I. 65 at 15 & Ex. 13.) Without offering any proof other than a self-serving and gap-ridden affidavit (the "Affidavit") (D.I. 74), Wolf Haldenstein claims that it conducted an adequate investigation. The Court is asked to make a leap of faith. However, the plagiarism, often verbatim, suggests an investigation primarily consisting of cutting and pasting the work product of other attorneys. Neither the answering brief nor the Affidavit offers any evidence that Wolf Haldenstein attorneys personally confirmed the source materials quoted or cited in the plagiarized sections. It was precisely this form of blind reliance that was sanctioned in *Greenfield v. U.S. Healthcare, Inc.*, 146 F.R.D. 118 (E.D. Pa. 1993) and affirmed by the Third Circuit in *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274 (3d Cir. 1994).

---

[4] Wolf Haldenstein contends that *In re Continental Illinois Securities Litigation*, 750 F. Supp. 868, 875 (N.D. Ill. 1990) is inapplicable because the firm "is not both attacking and representing the company in the same matter." (D.I. 73 at 8.) This contention is technically accurate, but just barely. Actually, Wolf Haldenstein is attacking JPMC in both the IPO Securities Litigation and the IPO Antitrust Litigation, and simultaneously claims to represent JPMC's *shareholders* in this litigation. Wolf Haldenstein opts to "see no evil, hear no evil" even though the interests of class members in the IPO Securities Litigation are directly adverse to the interests of JPMC's shareholders.

Wolf Haldenstein misses the point when it argues that "originality in the drafting of the complaint" is not required and that it need not re-invent the wheel. (D.I. 73 at 10.) Glaringly absent from the answering brief is any discussion of the real issue, *i.e.*, whether any Wolf Haldenstein attorney reviewed with his or her own eyes the complete source materials quoted or cited in the pleadings, whether an analyst report, a transcript, a news article, or another publicly-available document. Wolf Haldenstein has not presented any documentation of its pre-filing electronic research, if any, which might have confirmed (or refuted) its claim that it conducted an adequate investigation. Thus, one is left to conclude that Wolf Haldenstein relied on little other than allegations drafted by other attorneys as the basis for its own pleadings. Such conduct arguably merits sanctions.

Indeed, the Third Circuit affirmed in *Garr* that Rule 11 sanctions are appropriate under such circumstances, and sanctions are especially appropriate here, given that Wolf Haldenstein should have learned its lesson in light of its involvement in the fiasco at the heart of *Garr*:

> They made no effort to examine the numerous materials [another attorney] assembled, and they cannot justify their failure to have done so. They do not contend that [the other attorney] would not at their request have sent the materials to them. …We also point out that the documents on which [the other attorney] relied were all accessible to the public so that [the sanctioned attorneys] could have obtained them themselves. … At bottom, there is no escape from the conclusion that [the sanctioned attorneys] abdicated their own responsibilities and relied excessively on [the other attorney] contrary to Rule 11. … We recognize that it could be argued that it would have been pointless for [the sanctioned attorneys] to make an inquiry into the merits of the case sufficient to satisfy Rule 11 as [the other attorney] already had done so. Yet Rule 11 requires that an attorney signing a pleading must make a reasonable inquiry *personally*.

22 F.3d at 1280 (emphasis in original).

Wolf Haldenstein points to the reasoning in *de la Fuente v. DCI Telecommunications, Inc.* that verbatim copying from an SEC complaint is acceptable. 259 F. Supp. 2d 250, 260 (S.D.N.Y. 2003). There, the implicit and critical assumption was that a specialized regulatory agency, such as the SEC, could reasonably be expected to have conducted a thorough investigation prior to filing a complaint. Such an assumption does not extend to the context of attorneys blindly copying the work product of other private practitioners. Otherwise, Rule 11's reasonable inquiry requirement is meaningless, and *Garr* was wrongly decided (which it was not).

Ultimately, *Garr* remains good law in the Third Circuit. What makes Wolf Haldenstein's plagiarism sanctionable is not that it indicates a lack of diligence (which it also does), but rather that there is no evidence that any Wolf Haldenstein attorney *personally* reviewed the underlying sources quoted or cited in the original pleadings. Accordingly, Wolf Haldenstein's attorneys potentially violated Rule 11 by failing to conduct a reasonable inquiry, including personally reviewing the source materials quoted in the plagiarized allegations.[5]

### III. Wolf Haldenstein's Abusive Scheme

Wolf Haldenstein contends that the withdrawal of AGF from the Illinois action was nothing more than "the result of a combination of miscommunication and an institutional plaintiff having second-thoughts about suing a financial institution." (D.I. 73 at 11.) Wolf Haldenstein does not otherwise contest the Delaware Plaintiffs' well-substantiated assertion that AGF's brief involvement in the Illinois Action was the product of a typical scheme used by some lawyers to abuse the principles of the PSLRA. As to Wolf Haldenstein's dealings with AGF, the Affidavit raises more questions than it

---

[5] Several, but not all, of the points and authorities set forth herein were also presented in an *amici curiae* memorandum to the Northern District of Illinois, which refrained from ruling on any of the problems identified, instead stating that "the issues will be discussed and decided by" this Court. (D.I. 69 at 5-6.)

answers. The Affidavit attempts to portray a misunderstanding by AGF that led to "second thoughts." (D.I. 73 at 11.) However, it does not explain how AGF received the misleading "plaintiff's certification" form in the first place. Nor does it explain why Wolf Haldenstein failed to describe to AGF the role and obligations of a lead plaintiff in a securities class action. The Affidavit is silent as to whether Wolf Haldenstein sent or made available to AGF a copy of the complaint prior to filing the lead plaintiff application. Indeed, the Affidavit suggests that communications between Wolf Haldenstein and AGF were few and far between, perhaps by design—after all, the less AGF knew, the less likely it would ask questions. Notably, once Wolf Haldenstein received AGF's executed "plaintiff's certification" form, no further correspondence was forthcoming until the amended complaint was about to be filed. The exploitation of AGF fits all too well into the pattern described in the Delaware Plaintiffs' opening brief, which the SEC and others have denounced as an abuse of the PSLRA.[6] (D.I. 65 at 26-30.)

Moreover, the Affidavit does not demonstrate an innocent case of misunderstanding. Rather, it shows a lawyer choosing words carefully to cover up the exploitation of an unwitting investor unfamiliar with securities class actions. Wolf Haldenstein went fishing for clients, and caught an unwary mutual fund. This scheme turns the PSLRA on its head. Wolf Haldenstein's sworn claim that AGF had "second thoughts" is incredible. In reality, as AGF's own executive twice stated to the Delaware Plaintiffs' counsel, AGF's execution of the "plaintiff's certification" form was the result of a "clerical error" in the first place. (D.I. 65 at 28.) AGF's curt letter to Wolf Haldenstein, dated February 16, 2005, is consistent with the fact that an AGF employee

---

[6] If Wolf Haldenstein considers this a "highly adequate" litigation strategy, then, to paraphrase an old saying: With plaintiffs' lawyers like these, who needs defendants?

made a simple mistake, and does not square with Wolf Haldenstein's embellished and gap-ridden explanation. (D.I. 74 ¶¶ 4-14.)

IV.     **Wolf Haldenstein's Critical Errors**

Wolf Haldenstein claims that it has been "fully diligent" and that its "litigation strategy has proven highly adequate." (D.I. 73 at 13.) This characterization is not supported by the record. In fact, Wolf Haldenstein has botched even the most basic tasks in the Illinois Action. For instance, Wolf Haldenstein has yet to explain why it served the Illinois Action complaint only on a JPMC employee when, as JPMC's SEC filings indicated, several of the defendants no longer had any position with the Company. Nor has Wolf Haldenstein sought to rectify this potentially critical blunder.

Wolf Haldenstein refers to the Affidavit to address some of the issues raised in the Delaware Plaintiffs' opening brief. However, the Affidavit offers precious few answers. For instance, the Affidavit claims:

> Indeed, Defendant Bechtel endeavored to evade service for months. Only after threatening to obtain an order permitting alternative service given that Mr. Bechtel is reportedly accompanied by a security detail and service was both impossible and dangerous, did he ultimately agree to accept service and join in defendants' motion to dismiss.

(D.I. 74 ¶ 15.)

Although it is true that Mr. Bechtel joined in defendants' motion to dismiss in the Illinois Action, nowhere is it reflected on the Illinois Action docket, or in the pleadings in the Illinois Action, that Mr. Bechtel waived service of process in the Illinois Action. Further, despite Fed. R. Civ. P. 4(m)'s time limit for serving complaints, at no time did Wolf Haldenstein move for an enlargement of time in which to serve Mr. Bechtel (or any of the other defendants who are no longer directors of the Company) with the Illinois

Action complaint. It is unclear how such inaction reflects "highly adequate" litigation strategy.

Wolf Haldenstein has not adequately explained its critically-deficient attempt at service of process in the Illinois Action, and it has not even attempted to explain why it filed suit in Illinois, a forum with no connection to the litigation. These substantial errors cast enough doubt on Wolf Haldenstein's competence to merit disqualification.

## V.     Wolf Haldenstein's Misleading Notice

Wolf Haldenstein contends that its notice of the pendency of the Illinois Action need not have included the names of all defendants and need not have explicitly advised class members of their right to retain counsel of their own choice. (D.I. 73 at 12.) As one of the world's largest financial institutions, it comes as no surprise that JPMC is a defendant in thousands of lawsuits nationwide at any given time. By leaving out the names of the vast majority of defendants in the Illinois Action, Wolf Haldenstein made it that much harder to track down the complaint in the Illinois Action—especially since the case number set forth in Wolf Haldenstein's notice does not even match an acceptable input format for PACER's website interface. (D.I. 65 at 31.)

More importantly, the omission of the right of class members to retain counsel of their choice from Wolf Haldenstein's notice is misleading and is contrary to the objectives of the PSLRA-mandated notice. Indeed, Wolf Haldenstein tacitly acknowledges as much, since its other PSLRA notices *all* specifically state that: "You may retain Wolf Haldenstein, *or other counsel of your choice*, to serve as your counsel in this action." (*See* Compilation of pendency notices available on Wolf Haldenstein's website, attached hereto as Exhibit 3.)

Finally, Wolf Haldenstein contends that, in *Marsden v. Select Medical Corp.*, 2005 WL 113128 (E.D. Pa. Jan. 18, 2005), "[t]he Court upheld as adequate a notice that did not advise class members that they had the right to retain counsel of their choice…." (D.I. 73 at 13.)  This is flat-out wrong.  The notice approved in *Marsden* specifically stated: "You may retain [the law firm that published the notice], ***or other counsel of your choice***, to serve as your counsel in this action."  2005 WL 113128, at *2 (emphasis added).  The notice of the pendency of the Delaware Action included this critical phrase, (D.I. 65 at 33), without which interested persons could be misled into believing that only the law firm publishing the notice can represent the putative class, and there is simply no excuse for Wolf Haldenstein's omission.

Accordingly, Wolf Haldenstein's inadequate notice further evidences its dubious loyalty to class members in this litigation as well as its incompetence.

## CONCLUSION

For the reasons stated above and in the Delaware Plaintiffs' opening brief, the Court should disqualify Wolf Haldenstein.

DATED:   October 6, 2005                      Respectfully submitted,

/s/ Joseph N. Gielata
Joseph N. Gielata (DSB # 4338)
Attorney at Law
501 Silverside Road, Suite 90
Wilmington, DE 19809
(302) 798-1096

*Lead Counsel for Plaintiffs
    and the Putative Class*

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that, on October 6, 2005, I electronically filed the foregoing *REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP* with the Clerk of Court using CM/ECF which will send notification of such filing to:

> Michael R. Robinson, Esq.
> **RICHARDS LAYTON & FINGER, P.A.**
> One Rodney Square
> Wilmington, DE 19801
> *Counsel for Defendants*
>
> Robert R. Davis, Esq.
> **CHIMICLES & TIKELLIS LLP**
> P.O. Box 1035
> One Rodney Square
> Wilmington, DE 19899
> *Counsel for Proposed Intervenor*

                                               /s/ Joseph N. Gielata
                                              Joseph N. Gielata (DSB # 4338)
                                              Attorney at Law
                                              501 Silverside Road, Suite 90
                                              Wilmington, Delaware 19809
                                              (302) 798-1096
                                              attorney@gielatalaw.com