

Not Reported in F.Supp.2d                                                                                                         Page 1
Not Reported in F.Supp.2d, 2000 WL 1728354 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
ASTEN INC., Plaintiff,
v.
WEAVEXX CORPORATION, Defendant.
**No. 99-593 GMS.**

Feb. 11, 2000.

George H. Seitz, III, Seitz, Van Ogtrop & Green, P.A., Wilmington, for Asten Inc., plaintiffs.
Thomas C. Grimm, Morris, Nichols, Arsht & Tunnell, Wilmington, for Weavexx Corporation, defendants.

ORDER

SLEET, J.

I. INTRODUCTION

**\*1** On September 3, 1999, Plaintiff Asten, Inc. ("Asten") filed a complaint alleging patent infringement by Defendant Weavexx Corp. ("Weavexx"). The complaint was not served until September 24, 1999. In the interim, on September 10, 1999, Weavexx filed and served a "mirror image" action in the United States District Court for the Eastern District of North Carolina. In that action, Weavexx seeks a declaration that Asten's patent is invalid and/or not infringed by Weavexx.

Before the court is Weavexx's motion to transfer this case to the Eastern District of North Carolina, or in the alternative, to stay proceedings here pending resolution of the North Carolina declaratory judgment action. Weavexx argues that the case should be transferred pursuant to the "first filed" rule, or, alternatively, pursuant to 28 U.S.C. § 1404. [FN1] For the reasons that follow, the court will deny Weavexx's motion.

> FN1. Weavexx's motion requests a transfer pursuant to § 1404 or a stay pursuant to the first-filed rule. *See* Mot. to Transfer or Stay, at 1. In its briefing, however, Weavexx appears to request only a transfer, pursuant to either § 1404 or the first-filed rule. *See*

Opening Br. at 2, 5, 18. As discussed below, the court has concluded that the first-filed rule does not operate in Weavexx's favor. The rule, therefore, provides no more basis for a stay than it does for a transfer.

II. BACKGROUND

Asten and Weavexx both design and manufacture certain fabrics used on papermaking machines. Both companies are incorporated in Delaware, but neither company maintains a physical presence in this state. Asten is headquartered in Charleston, South Carolina and maintains its primary manufacturing facility in Appleton, Wisconsin. Weavexx is headquartered and maintains a major manufacturing facility in Wake Forest, North Carolina. It also has manufacturing facilities in several other southern states and in Canada, [FN2] and sells its products in the United States, Canada, and Mexico.

> FN2. In addition to its Wake Forest location, Weavexx maintains U.S. manufacturing facilities in Florida, Tennessee, Mississippi and Virginia, and Canadian facilities in Ontario (administrative offices), Nova Scotia and Quebec. *See* Opp'n Br. at Ex. B.

Asten is the assignee of U.S. Patent No. 5,025,839 ("the '839 patent"), entitled "Two-Ply Papermakers Forming Fabric with Zig-Zagging MD Yarns." Asten contends that Weavexx's "Design 2895" forming fabrics infringe the '839 patent. Weavexx states that it "principally designed" these fabrics at its Wake Forest plant, and that it markets and sells these products out of that facility. The products are manufactured, however, by a "sister-company" of Weavexx that is located in Brazil.

The inventor of the '839 patent, Walter Wright, is employed by Asten at its Appleton, Wisconsin facility. Asten manufactures its "Style 866" forming fabric, based on the '839 patent, at the Appleton plant. The documents relating to the design and development of the '839 patent are also located in Appleton.

III. DISCUSSION

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 2
Not Reported in F.Supp.2d, 2000 WL 1728354 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

As previously noted, Weavexx seeks to transfer this action pursuant to the "first-filed" rule, or, alternatively, pursuant to 28 U.S.C. § 1404(a).

A. The First-Filed Rule

The first-filed rule is a judicially created doctrine that is designed to avoid concurrent litigation of the same issues, between the same parties, in more than one federal court. See EEOC v. University of Pennsylvania, 850 F.2d 969, 971-72 (3d Cir.1988). As its name implies, the rule generally provides that a later filed action should be stayed pending resolution of an earlier filed action, or transferred to the court in which the earlier filed action is pending. See Peregrine Corp. v. Peregrine Indus., Inc., 769 F.Supp. 169 (E.D.Pa.1991).

*2 Since Asten filed its complaint in this court seven days before Weavexx filed its federal declaratory judgment action in North Carolina, the rule would not seem to provide a basis for transfer. Weavexx, however, claims that in the Third Circuit, the "first-filed" rule would more accurately be described as the "first-served" rule. It contends that under Third Circuit case law, "the 'first-filed' of two parallel actions is the one in which the district court first obtains jurisdiction of the parties and issues." Opening Br. at 6. Weavexx argues that in Delaware, personal jurisdiction over a defendant does not arise until a complaint is served. Consequently, Weavexx contends that the earlier-*served* North Carolina action should have priority over this earlier-*filed* Delaware action. The court disagrees.

Weavexx correctly notes that the Third Circuit Court of Appeals has at times articulated the rule as giving priority to the court "first obtaining jurisdiction of the parties and issues." *See, e .g.,* Crosley Corp. v. Westinghouse Elec. & Mfg. Co., 130 F.2d 474, 475 (3d Cir.1942). But Weavexx places too much significance on this language. In applying the rule, the Third Circuit has never focused on the dates that complaints were served, or, more generally, the dates on which personal jurisdiction was established. In this court's view, the "parties and issues" language just quoted was merely intended to signify that the first-filed rule should only apply when the competing actions involve the same parties and issues. *See* University of Pennsylvania, 850 F.2d at 971-72 (noting that the rule gives a court the power to enjoin the "subsequent prosecution of *proceedings involving the same parties and the same issues* already before another district court" (emphasis added)).

Indeed, the rule is often articulated without language that might suggest a focus on personal jurisdiction. For example, the rule has been described as giving priority to "the court which first has possession *of the subject.* " University of Pennsylvania, 850 F.2d at 971 (emphasis added) (citing Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir.1941)). In first adopting the rule, the Third Circuit explained that the party who "first *brings a controversy into a court of competent jurisdiction* for adjudication should ... be free from the vexation of subsequent litigation over the same subject matter." Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 930 (3d Cir.1941) (emphasis added). The *Hazeltine* court, therefore, concluded that the lower court had erred in refusing to enjoin later-filed patent infringement actions in the Southern District of Ohio, "when the *jurisdiction of the district court of Delaware has already been invoked* to determine the validity and infringement of all of these patents." *Id.* at 930 (emphasis added). These articulations suggest that the inquiry should focus on the date on which the jurisdiction of *the court* is invoked-i.e., through the filing of a complaint-rather than the date on which personal jurisdiction over the parties is perfected.

*3 The only case from this circuit to squarely address the issue concluded that the first-filed rule gives priority to an earlier filed complaint even if a later filed complaint is first served. *See* Peregrine Corp. v. Peregrine Indus., Inc., 769 F.Supp. 169, 171-72 (E.D.Pa.1991); *but see* Osteotech, Inc. v. Gensci Regeneration Sciences, Inc., 6 F.Supp.2d 349, 357 n. 4 (D.N.J.1998) (stating, *in dicta,* that a "persuasive argument can be made" that a later filed but first served complaint takes priority in this circuit). [FN3] This court agrees with the conclusion reached in *Peregrine,* which also appears to be the majority view in other circuits. [FN4]

> FN3. Though not addressing the "first-filed" vs. "first-served" issue, the court in Jefferson Ward Stores, Inc. v. Doody Co., 560 F.Supp. 35 (E.D.Pa.1983), also placed great emphasis on the "first obtaining jurisdiction of the parties and the issues" language quoted above. *See* id. at 36-37. That court permitted a later filed Pennsylvania action to proceed because personal jurisdiction was being contested in an earlier filed Ohio action. Because the district court in Ohio had not yet ruled on a motion to dismiss for lack of personal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00162-JJF     Document 95-2     Filed 02/17/2006     Page 3 of 6

Not Reported in F.Supp.2d                                                                                                Page 3
Not Reported in F.Supp.2d, 2000 WL 1728354 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

jurisdiction, the district court in Pennsylvania concluded that the Ohio court had not yet "obtained jurisdiction of the parties." *See id.* The Pennsylvania court did, however, note that it would reconsider the question of transfer if the Ohio court were to rule that it did have jurisdiction over the parties. *Id.*

Despite its focus on personal jurisdiction, however, *Jefferson Ward* is not helpful to Weavexx's position. In Weavexx's declaratory judgment action in North Carolina, Asten moved for dismissal based on, *inter alia,* lack of personal jurisdiction. As that motion is still outstanding, it might be said that the district court in North Carolina has not yet "obtained jurisdiction" over the parties. Because personal jurisdiction is not contested in the instant action, transfer might be inappropriate even if the court were to construe the rule as focusing on the time at which personal jurisdiction is established.

FN4. *See, e.g., Pacesetter Sys., Inc. v. Medtronic, Inc.,* 678 F.2d 93, 96 n. 3 (9th Cir.1982), *Hospah Coal Co. v. Chaco Energy Co.,* 673 F.2d 1161, 1163 (10th Cir.1982); *Barber-Greene Co. v. Blaw-Knox Co.,* 239 F.2d 774, 778 (6th Cir.1957); *Med-Tec Iowa, Inc. v. Nomos Corp.,* 1999 WL 1084253, at *6 (N.D.Iowa 1999); *Fat Possum Records Ltd. v. Capricorn Records, Inc.,* 909 F.Supp. 442, 446 (N.D.Miss.1995); *but see Northwest Airlines, Inc. v. Astraea Aviation Serv., Inc.,* 930 F.Supp. 1317, 1327 n. 9 (suggesting that first-served action may take priority).

In the present case, this conclusion is fully consistent with the concerns that gave rise to the rule. In *University of Pennsylvania,* the court noted that the rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." 850 F.2d at 971. In Weavexx's declaratory judgment action in North Carolina, the district court recently granted Asten's motion to stay proceedings pending this court's consideration of the instant motion. In so doing, the court stated: "Moreover, the Delaware complaint was filed, if not served, first. This Court sees no reason why the Delaware Court should not be allowed to determine whether to retain jurisdiction before the instant action is allowed to proceed." In light of that ruling, allowing this case to proceed in Delaware would not result in duplicative litigation, and would not undermine comity between federal courts of equal rank.

Finally, it should be noted that in response to the court's inquiry, counsel for Weavexx conceded that at the time Weavexx filed its declaratory judgment action in North Carolina, it was aware that Asten had already filed its complaint here in Delaware. Weavexx offers no explanation as to what function its declaratory judgment action could serve that a counterclaim in the instant action could not. Under these circumstances, the court concludes that the first-filed rule does not provide a basis for staying these proceedings or transferring this case to the Eastern District of North Carolina.

B. Transfer Pursuant to 28 U.S.C. § 1404

The first-filed rule does not, of course, preclude Weavexx's motion for transfer pursuant to 28 U.S.C. § 1404. That section provides as follows:
For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it may have been brought.

Although the decision to transfer a case is subject to the court's discretion, a plaintiff's choice of forum is a "paramount" consideration that is not to be "lightly disturbed." *Schutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970); *see also Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879-80 (3d Cir.1995). As such, Weavexx has a heavy burden to carry. The court should not grant a transfer unless the "balance of convenience" weighs strongly in favor of transfer. *See Schutte,* 431 F.2d at 25. [FN5]

FN5. Weavexx attempts to incorporate its position regarding the first-filed rule into its § 1404 analysis, arguing that Asten has the burden of establishing that the balance of convenience strongly favors Delaware. Opening Br. at 9. Since the court has already rejected Weavexx's position that the North Carolina action was "first-filed," it need not decide whether a contrary conclusion would have reversed the burden of persuasion in a § 1404 analysis, as Weavexx contends. The court does note, however, that the case Weavexx cites for that proposition, *Ballard Medical Products v. Concord Lab., Inc.,* 700 F.Supp. 796 (D.Del.1988), does not support Weavexx's view. Rather, the earlier filed

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00162-JJF     Document 95-2     Filed 02/17/2006     Page 4 of 6

Not Reported in F.Supp.2d                                                                                                      Page 4
Not Reported in F.Supp.2d, 2000 WL 1728354 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

action in *Ballard* was simply considered as a factor favoring transfer-it did not reverse the burden of persuasion. *See id.* at 800-01.

**\*4** In *Jumara,* the Third Circuit Court of Appeals identified a nonexclusive list of factors that have been used to guide courts in the exercise of their discretion in ruling on requests for transfer. *See Jumara,* 55 F.3d at 879-80; *see also Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 196-97 (D.Del.1998). The factors most relevant to this case are discussed below. [FN6]

> FN6. As a threshold matter, this action could have been brought in the Eastern District of North Carolina. *See* 28 U.S.C. § § 1391(b), 1400(b). The court can, therefore, proceed to weighing the factors for and against transfer.

1. The Convenience of the Parties

Litigating this case in North Carolina would be more convenient for Weavexx. Weavexx is headquartered in Wake Forest, which is within the Eastern District of North Carolina. Weavexx has identified six employees likely to testify at trial, each of whom resides within the Eastern District. The accused product was designed in Wake Forest, and Weavexx contends that the vast majority of its documents and records relating to the accused product are maintained at its Wake Forest headquarters.

Weavexx also claims that litigating this case in North Carolina would be more convenient for Asten. The entirety of Weavexx's "proof" in this regard is the fact that Asten is headquartered in Charleston, South Carolina. Asten does not vigorously contend, however, that Delaware is more convenient. Although Asten notes that its relevant documents and at least one of its testifying employees are located in Appleton, Wisconsin, it has done little to establish that these facts make Delaware any less inconvenient than North Carolina.

The court, therefore, concludes that North Carolina would be more convenient than Delaware for Weavexx, and no more inconvenient than Delaware for Asten. While this factor therefore favors transfer, it does so only slightly. Weavexx concedes that it is financially able to shoulder the expense of litigating this case in Delaware. Further, Weavexx has not established that its business would be disrupted if the employees that are expected to testify at trial must do so in Delaware. Weavexx maintains manufacturing facilities in several southern states and in Canada. It is likely that the six employees Weavexx identifies- upper level management including the company's president and three vice-presidents-are sometimes called upon to travel for company business. Finally, Weavexx has managed to survive two previous lawsuits filed in Delaware *by Weavexx* against Asten.

2. The Convenience and Availability of the Witnesses

The convenience of witnesses is often an important factor in a transfer inquiry. *See* 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS § 3851, at 415 (2d ed.1986) [hereinafter WRIGHT & MILLER] (describing this factor as "[p]robably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer"). The convenience of witnesses is only considered, however, "to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara,* 55 F.3d at 879 (citing WRIGHT & MILLER § 3851, at 420-22). Thus, for example, the convenience of witnesses that are employees of a party carries no weight because the parties are obligated to procure their attendance at trial. *See Affymetrix,* 28 F.Supp.2d at 203.

**\*5** Weavexx claims that North Carolina is a more convenient forum than Delaware for most of both parties' witnesses. But Weavexx has failed to sufficiently identify any witnesses that "may actually be unavailable for trial" in Delaware. Indeed, the six "primary anticipated fact witnesses" that Weavexx identifies are all upper level Weavexx employees. As such, Weavexx should be able to assure their attendance at trial. [FN7]

> FN7. Weavexx appears to contend that one of its employee witnesses-the inventor of the accused product-should be treated as a non-party witness because he is scheduled to retire from Weavexx before the anticipated trial date. Opening Br. at 11. Weavexx, however, provides no information-by affidavit or otherwise-to suggest that this witness may be unavailable for trial in Delaware (or, for that matter, that he plans to remain within the subpoena power of the Eastern District of North Carolina after his retirement). The court is, therefore, not

Not Reported in F.Supp.2d                                                                                                                 Page 5
Not Reported in F.Supp.2d, 2000 WL 1728354 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

> persuaded that this employee's anticipated retirement should have a significant impact on the transfer inquiry.

Weavexx also claims that three of the four "major domestic manufacturers of papermaking fabric" are headquartered in either North or South Carolina. Therefore, it asserts that "it is clearly more likely that witnesses having knowledge regarding relevant prior art would be within the subpoena power of the North Carolina Court." Opening Br. at 11. While this may or may not be a reasonable assumption, [FN8] such unsupported speculation about unspecified witnesses does not carry much weight in a transfer analysis. *Affymetrix,* 28 F.Supp.2d at 205. Further, two of the three "major domestic manufacturers" headquartered in the Carolinas are Asten and Weavexx themselves. As already noted, the convenience of party witnesses generally receives no weight in a transfer analysis. *Id.* at 203.

> FN8. For example, although Asten is headquartered in South Carolina, its employee that is apparently most knowledgeable about the prior art of the '839 patent is located at Asten's manufacturing facility in Appleton, Wisconsin.

As such, to the extent that the convenience and availability of witnesses weighs at all in favor of transfer, it does so only slightly.

### 3. Other Factors

Although Weavexx principally relies on the two factors discussed above, it recites several other factors that supposedly favor transfer. For example, Weavexx notes that since 1996, the average time from filing to trial for civil actions is 19.3 months in Delaware as compared to 16.5 months in North Carolina. But for the most recent period-the year ending June 30, 1999-Weavexx's statistics show that the average time to trial was one month longer in North Carolina than in Delaware. Virtually all of the other statistics provided by Weavexx (but not cited in its brief) suggest that court congestion is actually worse in the Eastern District of North Carolina than in the District of Delaware. Moreover, Magistrate Judge Thynge of this district served as a mediator in both of the prior Delaware actions between the parties. Judge Thynge will again be available in the present action. It appears, therefore, that administrative considerations and judicial economy

actually weigh against transfer. [FN9]

> FN9. As already noted, the district court in North Carolina has granted Asten's motion to stay proceedings in the declaratory judgment action pending this court's decision on Weavexx's motion to transfer. Therefore, there does not appear to be a risk of duplicative litigation if this motion is denied.

Next, Weavexx attempts to characterize this action as a "local controversy" that should be decided close to home. *See Jumara,* 55 F.3d at 879. The court fails to see how a patent infringement action involving two large companies that (1) are incorporated in Delaware; (2) are headquartered in different states; and (3) maintain manufacturing facilities in various states and Canada can be considered a "local" North Carolina controversy. Such characterization seems particularly inappropriate where, as here, the competing products at issue are manufactured in Wisconsin and Brazil.

**\*6** The court finds that the other factors referred to by Weavexx, including those not discussed herein, do not weigh significantly, if at all, in favor of transfer.

### 4. Weighing of Factors

The court recognizes that the ties between this litigation and the state of Delaware are not substantial. Nevertheless, Asten's choice of this forum is a "paramount" consideration that is not to be "lightly disturbed." *Schutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970). After weighing the factors discussed above, the court finds that Weavexx has failed to meet its heavy burden of establishing that the "balance of convenience" tips strongly in favor of transfer. As such, Weavexx has failed to establish that transfer is appropriate pursuant to 28 U.S.C. § 1404.

### IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Weavexx's motion to transfer this case to the United States District Court for the Eastern District of North Carolina is DENIED; and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                    Page 6
Not Reported in F.Supp.2d, 2000 WL 1728354 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

2. Weavexx's alternative request to stay these proceedings pending resolution of Weavexx's declaratory judgment action in the Eastern District of North Carolina is DENIED.

D.Del.,2000.
Asten Inc. v. Weavexx Corp.
Not Reported in F.Supp.2d, 2000 WL 1728354 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.