**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re JPMorgan Chase / Bank One Merger Litigation | MDL No.  _____ |

## <u>MOTION FOR CENTRALIZATION</u>

Samuel I. Hyland (the "Movant") moves the Judicial Panel on Multidistrict Litigation (the "Panel"), pursuant to 28 U.S.C. § 1407 and Rule 7.2(a) of the Panel's Rules of Procedure, for an order centralizing lawsuits brought by and on behalf of shareholders of JPMorgan Chase & Co. ("JPMC") and identified in Movant's Rule 7.2(a)(ii) Schedule (the "Related Actions") in the United States District Court for the District of Delaware.  In further support of this motion, Movant states as follows:

1.       In the aggregate, the Related Actions assert four categories of claims: (1) fraud claims arising under the Securities Exchange Act of 1934 (the "Exchange Act"); (2) strict liability and/or negligence claims arising under the Exchange Act and/or the Securities Act of 1933 (the "Securities Act"); (3) control person claims arising under the Exchange Act and/or the Securities Act; and (4) common law claims for breach of fiduciary duty, civil conspiracy, and aiding and abetting breach of fiduciary duty.

2.     While the causes of action differ among the various cases, they all arise from an entrenchment scheme and misrepresentations in connection with the merger (the "Merger") of JPMC and Bank One Corporation ("Bank One") in 2004.

3.     Because the Related Actions raise numerous common questions of fact, and involve common discovery issues, centralization of the cases is the most efficient and just approach to their prompt adjudication.

4.     The Related Actions all allege an entrenchment scheme concocted and executed by the highest-ranking officers of JPMC and Bank One, and their advisors, in connection with the Merger.  According to persons close to the Merger negotiations, Bank One's head was willing to agree to a combination with zero premium during the course of the merger negotiations so long as he could become CEO of the combined company immediately.  However, JPMC's beleaguered chairman and CEO was so obsessed with keeping his CEO title and retiring on his own terms that he rejected this opportunity and, despite his fiduciary duty to JPMC shareholders, struck a deal with a $7 billion premium, solely in exchange for two more years as CEO.

5.     The above facts were revealed in the *New York Times* on June 27, 2004, after JPMC shareholders had already voted to approve the Merger.  Within days, three shareholder lawsuits were filed in Delaware's Court of Chancery.  On October 13, 2004, a "copycat complaint" was filed in the Northern District of Illinois.  Two lead plaintiffs were later appointed, but one soon withdrew.  On March 17, 2005, a comprehensive shareholder class action was filed in the District of Delaware and two lead plaintiffs were duly appointed.  On April 6, 2006, a related shareholder class action was filed in the District of Delaware against JPMC's financial advisor in the Merger.  Additional federal lawsuits against other participants in the entrenchment scheme may be filed.

6.    The Related Actions are still at an early stage.  No discovery has been taken and no class has been certified.

7.    As set forth more fully in the accompanying memorandum, centralization of the Related Actions in the District of Delaware for coordinated pretrial proceedings under 28 U.S.C. § 1407 will eliminate duplicative discovery, avoid conflicting pretrial rulings, conserve the resources of the judiciary, and otherwise promote the just and efficient conduct of all actions.

8.    The District of Delaware is the appropriate transferee forum for centralized pretrial proceedings.  Delaware is conveniently accessible for the parties and anticipated witnesses, almost all of whom reside in New York.  Movant resides in Delaware.  Both parties to the Merger are incorporated in Delaware and have operations there.  The likely transferee judge in Delaware is extraordinarily familiar with the legal issues in this litigation.  There are state law claims unique to the District of Delaware actions that involve questions of Delaware common law.  The first-filed suits against most of the defendants were commenced in the Delaware Court of Chancery.

9.    By contrast, the litigation has no ties to Illinois.

WHEREFORE, Movant respectfully requests that the Panel centralize the Related Actions, and any potential tag-along federal actions arising out of the Merger, for coordinated proceedings in the District of Delaware pursuant to 28 U.S.C. § 1407.

DATED:      April 6, 2006                          Respectfully submitted,


Joseph N. Gielata
Attorney at Law
501 Silverside Road, No. 90
Wilmington, DE 19809
(302) 798-1096

*Attorney for Samuel Hyland*

- 3 -

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

In re JPMorgan Chase / Bank One
Merger Litigation

MDL No. _____

## SCHEDULE OF RELATED ACTIONS

| NAME OF ACTION | COURT | CIVIL ACTION NUMBER | JUDGE ASSIGNED (IF ANY) |
|---|---|---|---|
| Dr. Stephen Blau, Individually and On Behalf of All Others Similarly Situated **v.** William B. Harrison, Jr., Hans W. Becherer, Riley P. Bechtel, Frank A. Bennack, Jr., John H. Biggs, Lawrence A. Bossidy, M. Anthony Burns, Ellen V. Futter, William H. Gray, III, Helene L. Kaplan, Lee R. Raymond, John R. Stafford, and J.P. Morgan Chase & Co. | N.D. Ill. (Eastern Division) | 1:04-6592 (filed 10/13/04) | Hon. William J. Hibbler |
| Samuel I. Hyland and Stephanie Speakman, individually and on behalf of all others similarly situated **v.** William B. Harrison, Jr., Hans W. Becherer, Riley P. Bechtel, Frank A. Bennack, Jr., John H. Biggs, Lawrence A. Bossidy, M. Anthony Burns, Ellen V. Futter, William H. Gray, III, Helene L. Kaplan, Lee R. Raymond, John R. Stafford, JPMorgan Chase & Co., and James Dimon | D. Del. | 1:05-162 (filed 3/17/05) | Hon. Joseph J. Farnan, Jr. |
| Samuel I. Hyland, individually and on behalf of all others similarly situated **v.** J.P. Morgan Securities, Inc. | D. Del. | 1:06-224 (filed 4/6/06) | Not yet assigned |

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re JPMorgan Chase / Bank One Merger Litigation | MDL No. _____ |

**MEMORANDUM IN SUPPORT OF
MOTION FOR CENTRALIZATION**

Samuel I. Hyland (the "Movant") respectfully submits this memorandum in support of his motion for centralization of all cases brought by and on behalf of JPMorgan Chase & Co. ("JPMC") shareholders arising out of the merger (the "Merger") of JPMC and Bank One Corporation ("Bank One") in 2004.

**BACKGROUND**

This litigation involves an entrenchment scheme concocted and executed by the highest-ranking officers of JPMC and Bank One, and their advisors, in connection with the Merger. During the course of the merger negotiations, Bank One's head was willing to agree to a deal with zero premium so long as he could become chief executive officer ("CEO") of the combined company immediately. However, JPMC's beleaguered chairman and CEO was so obsessed with keeping his CEO title and retiring on his own terms that he rejected this opportunity and, despite his fiduciary duty to JPMC shareholders, struck a deal with a staggering $7 billion premium, solely in exchange for two more years as CEO – equivalent to nearly $10 million per day.

When JPMC shareholders voted in favor of the Merger, they did so based on an incomplete and materially misleading proxy-prospectus and other false and misleading statements. The allocation of Movant's equity stake in the post-Merger entity, as well as the stake of other pre-Merger JPMC shareholders, was directly harmed.

The litigation also concerns numerous undisclosed financial and personal relationships which crippled the ability of JPMC's board of directors to consider the merits of the Merger without regard for personal benefit. These undisclosed relationships help to explain why JPMC's directors stood silently by as JPMC shareholders foot the bill for a treacherous scheme to entrench JPMC's highest-ranking officer.

The entrenchment scheme was revealed on June 27, 2004, after JPMC shareholders had already voted to approve the Merger. Within days, three shareholder lawsuits were filed in Delaware's Court of Chancery. On October 13, 2004, a "copycat complaint," essentially a clone of the consolidated complaint in Delaware, was filed in the Northern District of Illinois. Two lead plaintiffs were appointed in early 2005, but one soon withdrew. On March 17, 2005, a shareholder class action arising out of the Merger was filed in the District of Delaware and two plaintiffs, including the Movant, were duly appointed lead plaintiffs. The latter action was recently stayed pending resolution of the Illinois action.[1]  On April 6, 2006, a shareholder class action against J.P. Morgan Securities, Inc. ("JPMSI"), the financial advisor to JPMC in the Merger, was filed in the District of Delaware.

Additional federal lawsuits are anticipated.

---

[1] *See Hyland v. Harrison*, No. 05-162-JJF, 2006 WL 288247 (D. Del. Feb. 7, 2006) (attached hereto as Exh. A). The District of Delaware observed that the Delaware action asserts several claims not raised in the Illinois action. *See id.* at *1 n.2. A motion for reconsideration of the stay order has been fully briefed and is *sub judice*. In any case, the stay order is not relevant to this Panel's analysis. *See In re Capital Underwriters, Inc. Sec. Litig.*, 464 F. Supp. 955, 960 (J.P.M.L. 1979) ('The fact that [actions] have been stayed…does not affect the authority of the Panel to transfer these actions").

## ARGUMENT

Centralization of the above federal actions (the "Related Actions") in one venue will promote the just and efficient conduct of the actions. Moreover, because two of the three actions are already pending in the District of Delaware, and the circumstances overwhelmingly favor Delaware over Illinois as the superior forum for this litigation, the District of Delaware is the most appropriate forum for centralization of the cases.

## I.    Section 1407 Coordination Is Appropriate For The Related Actions

As of the date of this memorandum, Movant is aware of three cases pending in federal district courts arising out of the Merger. The Panel has routinely coordinated multiple related securities and shareholder suits in one forum where, as here, the cases share common facts. *See, e.g., In re Rhodia S.A., Sec. Litig.*, 398 F. Supp. 2d 1359 (J.P.M.L. 2005) (centralizing two securities class actions); *In re Service Corp. Int'l. Sec. Litig.*, 323 F. Supp. 2d 1377 (J.P.M.L. 2004) (same); *In re Parmalat Sec. Litig.*, 350 F. Supp. 2d 1356 (J.P.M.L. 2004) (centralizing four securities actions).[2]

Because of the common nucleus of facts, defendants and witnesses in this litigation, centralization under § 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent rulings (especially with respect to questions of materiality and class certification), and conserve the resources of the parties, their counsel and the judiciary.

Here, the Related Actions are all premised on the central allegation that JPMC's former CEO wrongfully rejected a superior merger opportunity solely to entrench

---

[2] As a preliminary matter, sufficient numerosity is present here. In *In re Petroleum Products Antitrust Litigation*, the Panel consolidated two class actions brought by separate states against multiple major oil companies, on the grounds that both actions were substantially similar and raised complex factual issues involving the business practices of the petroleum industry. 393 F. Supp. 1091, 1092 (J.P.M.L. 1975). In reaching this conclusion, the Panel specifically rejected the argument that the number of actions involved was too small to result in any significant economics of scale. *Ibid. See also In re CBS Licensing Antitrust Litig.*, 328 F. Supp. 511 (J.P.M.L. 1971) (centralizing two actions).

himself.  This opportunity was then concealed from JPMC's shareholders when they decided whether or not to vote for the Merger.

Discovery in each of the Related Actions will center on issues related to: (1) whether statements by JPMSI, JPMC and others were materially false and misleading; (2) whether various JPMC and Bank One officers acted with the requisite state of mind to impose liability upon them for violations of the federal securities laws and/or for a determination of whether their actions breached fiduciary duties; (3) whether the actions and state of mind of various JPMC and Bank One officers can be attributed or imputed to JPMC and JPMSI; (4) transaction or loss causation; and (5) damages.

Discovery in the Related Actions will involve several Wall Street financial institutions and law firms and is likely to raise complex discovery controversies concerning inter alia the scope of attorney-client privilege in merger negotiations and the confidentiality of sources used by reporters in national newspapers and other media companies.  It can be reasonably anticipated that discovery to be sought from media companies will be vigorously resisted and may result in multiple appellate proceedings.

The Related Actions are all still at an early stage.  No discovery has been taken and no class has been certified.  Thus, centralization is appropriate at this time. Moreover, absent centralization, the courts will be needlessly burdened and the possibility of inconsistent rulings is manifest.  *See, e.g., In re Transocean Tender Offer Sec. Litig.*, 415 F. Supp. 382, 384 (J.P.M.L. 1976) ("[T]he likelihood of motions for partial dismissal and summary judgment in all three actions grounded at least in part on [a common issue] makes Section 1407 treatment additionally necessary to prevent conflicting pretrial rulings and conserve judicial effort.").

Accordingly, centralization is appropriate.

II.    **The District Of Delaware Is The Most
       <u>Appropriate Venue For The Related Actions</u>**

Section 1407 authorizes the transfer of civil proceedings "for the convenience of parties and witnesses" and when such transfer "will promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a).  The Panel has most frequently centralized securities cases in districts where cases were already pending.  Further, the Panel has shown a strong preference for assigning securities MDLs to judges before whom one or more of the pending cases is assigned.  Taking these factors and other relevant factors into consideration, the District of Delaware is by far the most appropriate transferee court.

The Related Actions are pending in the District of Delaware and the Northern District of Illinois, and the Panel should thus assign the MDL to one of these districts.  *See, e.g., In re Air Crash Disaster Near Papeete, Tahiti, on July 22, 1973*, 397 F. Supp. 886, 887 (J.P.M.L. 1975) ("Inasmuch as no actions are pending in the Middle District of Florida, we are reluctant to transfer this litigation there.").  In *In re USF Red Star Inc. Workers Notification Litigation*, the Panel ordered centralization in the district where two of three class actions were already pending.  360 F. Supp. 2d 1365, 1366 (J.P.M.L. 2005).  As in *USF Red Star*, here two of three class actions are already pending in one district, the District of Delaware, and "this district is relatively conveniently located for parties and witnesses located primarily in the Northeastern United States."  *Id.* at 1366-67.

The District of Delaware is also an appropriate forum because (1) two of the named plaintiffs in the Related Actions are Delaware residents, (2) JPMC is a Delaware corporation, (3) Bank One is incorporated in Delaware, (4) the Merger agreement provides that Delaware law governs, (5) the first-filed suits against most of the defendants were commenced in the Delaware Court of Chancery, (6) Delaware law

applies to the breach of fiduciary duty claims and pendent common law claims, (7) JPMC conducts substantial business in the District of Delaware (as did Bank One), and (8) Delaware is conveniently accessible to and from New York, where the alleged misconduct took place and where practically every witness resides.

By contrast, the Northern District of Illinois is not an appropriate or convenient forum for this litigation in any respect. All publicly-available evidence indicates that the Merger negotiations took place in New York. None of the relevant witnesses are located in or near Chicago. Both parties to the Merger are incorporated in Delaware, not Illinois. The post-Merger entity is headquartered in New York, not Chicago. The plaintiff in the Illinois lawsuit resides in New York. In sum, the litigation has no ties to Illinois. *Cf. In re Celotex Corp. "Technifoam" Products Liability Litig.*, 68 F.R.D. 502, 505 (J.P.M.L. 1975) ("[O]ther than the pendency of a single action in the Northern District of Georgia, there is little reason to select that district as the transferee forum.").

Perhaps most importantly, the convenience of the parties and witnesses overwhelmingly favors the District of Delaware. Crucial witnesses will include the investment bankers and lawyers who advised JPMC and Bank One in connection with the Merger. The anticipated testimony from these witnesses, many or all of whom were intimately involved in the negotiations leading to the Merger, will confirm the scheme at the heart of this case and related details of the Merger negotiations.

These witnesses will include, among others: (1) bankers Gary Parr, Tim Dana, and Gary Shedlin of Lazard Frères & Co. LLC (Bank One's financial advisor); (2) lawyers Edward Herlihy, Craig Wasserman, Adam Chinn, and Lawrence Makow of Wachtell, Lipton, Rosen & Katz (Bank One's legal advisor); (3) bankers Douglas Braunstein, Richard Herbst, John Chrin, and Fernando Rivas of J.P. Morgan Securities,

Inc. (JPMC's financial advisor and a defendant); (4) lawyers Richard Beattie, Lee
Meyerson, Maripat Alpuche, Christopher Lee, Kristin Johnson and Elsa Fraysse of
Simpson Thacher & Bartlett LLP (JPMC's legal advisor); and (5) lawyers Rodgin Cohen
and Mitchell Eitell with Sullivan & Cromwell LLP (legal advisor for JPMC's board).
The offices of these investment banks and law firms are all located in Manhattan, less
than 100 miles from Wilmington, Delaware, and less than two hours away by Amtrak.
*Cf. In re Practice of Naturopathy Litig.*, 434 F. Supp. 1240, 1243 (J.P.M.L. 1977)
("[S]everal parties anticipate that this litigation will involve many expert medical and
pharmaceutical witnesses and that those witnesses are likely to be found at the larger
pharmaceutical companies and major medical schools in the East.").

Accordingly, the Northeast, not the Midwest, is undoubtedly the "center of
gravity" of this litigation. *Cf. In re Washington Public Power Supply System Sec. Litig.*,
568 F. Supp. 1250 (J.P.M.L. 1983) ("[W]e are persuaded that the Pacific Northwest, and
particularly the State of Washington, is the center of gravity of this litigation and the
focal point for discovery.").

It is also in the interest of justice to have a Delaware court oversee this litigation
because both JPMC and Bank One are Delaware corporations. Indeed, "'[n]o principle
of corporation law and practice is more firmly established than a State's authority to
regulate domestic corporations, including the authority to define the voting rights of
shareholders.'" *Examen, Inc. v. VantagePoint Venture Partners 1996*, 873 A.2d 318, 323
(Del. Ch. 2005) (citing internal affairs doctrine in applying Delaware law to contested
stockholder vote concerning a Delaware corporation's merger) (quoting *CTS Corp. v.
Dynamics Corp. of Am.*, 481 U.S. 69, 89 (1987)).

Finally, the District of Delaware is ideally suited to overseeing this litigation. Last year, the Honorable Joseph J. Farnan, Jr., before whom one of the Related Actions is already pending, issued a final decision after trial in a similar case. *See Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp. 2d 362 (D. Del. 2005). In that complex securities litigation concerning a corporate merger, it was alleged that a company's CEO defrauded shareholders into accepting an inadequate merger premium by casting a takeover as a merger of equals. *See id.* at 406. The litigation involved many of the concepts and securities claims at issue in the Related Actions.[3] Thus, Judge Farnan's unparalleled experience with a similar securities fraud class action will ensure the fair and efficient adjudication of this litigation, to the benefit of all parties. *See In re Pharmastem Therapeutics, Inc., Patent Litig.*, 360 F. Supp. 2d 1362, 1364 (J.P.M.L. 2005) (noting desirability of MDL assignment to transferee judge who is already familiar with many of the legal issues posed by the actions).

Accordingly, the District of Delaware is the most appropriate transferee forum and it is further submitted that the Panel should request the consent of Judge Farnan to serve as the transferee judge for the Related Actions.

\*      \*      \*

---

[3] These concepts include remarkably similar questions of lost-opportunity damages, pleading standards under the securities laws, and materiality in the merger context. Judge Farnan considered these same issues, among others, in adjudicating numerous complex motions, including multiple motions to dismiss and summary judgment motions, certification of a class of investors, approval of a settlement for the class, administration of a bench trial on an individual lawsuit and the issuance of a final decision on April 7, 2005. *See, e.g., Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 86 (D. Del. 2002) (motion to dismiss); *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42 (D. Del. 2002) (same); *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291 (D. Del. 2003) (certifying class); *In re DaimlerChrysler AG Sec. Litig.*, 269 F. Supp. 2d 508 (D. Del. 2003) (denying defendants' motions for summary judgment); *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487 (D. Del. 2005) (ruling on post-trial evidentiary objections).

## CONCLUSION

For all the foregoing reasons, Movant requests that the Panel grant his motion for

centralization of the Related Actions in the District of Delaware.

DATED:        April 6, 2006                    Respectfully submitted,

Joseph N. Gielata
Attorney at Law
501 Silverside Road, No. 90
Wilmington, Delaware 19809
(302) 798-1096

*Attorney for Samuel Hyland*



# EXHIBIT A

Slip Copy                                                Page 1
Slip Copy, 2006 WL 288247 (D.Del.)
**(Cite as: 2006 WL 288247 (D.Del.))**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Samuel I. HYLAND and Stephanie Speakman,
individually and on behalf of all
other similarly situated, Plaintiffs,
v.
William B. HARRISON, Jr., Hans W. Becherer,
Riley P. Bechtel, Frank A. Bennack,
Jr., John H. Biggs, Lawrence A. Bossidy, M.
Anthony Burns, Ellen V. Futter,
William H. Gray, III, Helene L. Kaplan, Lee R.
Raymond, John R. Stafford,
Jpmorgan Chase & Co., and James Dimon,
Defendants.
Dr. Stephen BLAU, individually and on behalf of all
others similarly situated,
Applicant-in-Intervention
**No. Civ.A. 05-162-JJF.**

Feb. 7, 2006.
Joseph N. Gielata, of Joseph N. Gielata, Attorney at
Law, Wilmington, Delaware, for Plaintiffs.
Jesse A. Finkelstein, and Michael R. Robinson, of
Richards, Layton & Finger, P.A., Wilmington,
Delaware, for Defendants.
Michael A. Cooper, Sharon L. Nelles, and Keith
Levenberg, of Sullivan & Cromwell LLP, New
York, New York, for the Individual Defendants, of
counsel.
Nancy E. Schwarzkopf, of Jpmorgan Chase Legal
Department, New York, New York, for J.P. Morgan
Chase & Co., of counsel.
Pamela S. Tikellis, and Robert Davis, of Chimicles
& Tikellis LLP, Wilmington, Delaware, of counsel.
Gregory M. Nespole, of Wolf Haldenstein Adler
Freeman & Herz LLP, New York, New York, Adam
J. Levitt, of Wolf Haldenstein Adler Freeman & Herz
LLC, Chicago, Illinois, for Stephen Blau, of counsel.

*OPINION*

FARNAN, J.

**\*1** Pending before the Court is the Motion of Dr.
Stephen Blau To Intervene In Order To Further Move
That This Action Be Stayed (D.I.58) and a Motion To
Enjoin Further Prosecution Of *Blau v. Harrison, et
al.* (D.I.68) filed by Plaintiffs, Samuel Hyland and

Stephanie Speakman (the "Hyland Plaintiffs"). For
the reasons discussed, the Court will grant Dr.
Stephen Blau's Motion To Intervene and grant his
request for a stay. The Court will deny as moot the
Hyland Plaintiffs' Motion To Enjoin Further
Prosecution Of *Blau v. Harrison, et al.*

BACKGROUND
On October 13, 2004, Dr. Stephen Blau ("Dr.Blau")
commenced an action in the United States District
Court for the Northern District of Illinois (the
"Illinois Action") alleging that Defendants     [FN1]
violated Section 14(a) of the Securities Exchange Act
of 1934 (the "Exchange Act") in connection with the
merger of J.P. Morgan Chase & Co. and Bank One
Corporation. Dr. Blau filed the Illinois Action on
behalf of himself and all holders of common stock of
J.P. Morgan Chase on April 2, 2004 (the record date),
or any time from April 19, 2004 (the proxy date)
through July 1, 2004 (the date the merger was
consummated). Judge William J. Hibbler presides
over the Illinois Action.

> FN1. Defendants in the Illinois Action are
> William B. Harrison, Jr., Hans W. Becherer,
> Riley P. Bechtle, Frank A. Bennack, Jr.,
> John H. Biggs, Lawrence A. Bossidy, M.
> Anthony Burns, Laurence Fuller, Ellen V.
> Futter, William H. Gray, III, Helene L.
> Kaplan, Lee R. Raymond, John R. Stafford,
> and J.P. Morgan Chase & Co.

On January 5, 2005, Judge Hibbler entered an order
appointing Dr. Blau and American Grown Fund, Inc.
("AGF") lead plaintiffs in the Illinois Action and
appointing Wolf Haldenstein Adler Freeman & Herz
LLP ("Wolf Haldenstein") as lead counsel. (D.I.60,
Exh. A). On February 18, 2005, AGF withdrew as
lead plaintiff, and Dr. Blau filed an Amended
Complaint in the Illinois Action.

On March 17, 2005, the Hyland Plaintiffs through
their counsel Joseph N. Gielata, Esquire, filed the
instant action alleging similar claims against the same
Defendants in connection with the J.P. Morgan and
Bank One Merger.     [FN2] Shortly after filing the
Complaint, the Hyland Plaintiffs moved to enjoin an
action filed in the Delaware Chancery Court
involving the same circumstances. [FN3] Although
the Chancery Court action did not involve federal
claims, the Hyland Plaintiffs argued that the common

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

law causes of action asserted in the Chancery Court were within this Court's jurisdiction and that the prospect of parallel actions frustrated the purposes of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and the Securities Litigation Uniform Standards Act. The Court denied, without prejudice, Plaintiff's Motion For An Injunction Barring The Prosecution Of Relate State Court Actions (D.I.2) concluding that the "harm Plaintiff alleges is speculative, and the Court will not enjoin the state court litigation absent some tangible showing that the co-pending state court proceedings are being used to frustrate an important federal right." (D.I.19). On June 21, 2005, the Court entered an Order (D.I.46) appointing Joseph N. Gielata, Esquire lead counsel in this action, "subject to Defendants reservations" which include, but are not limited to, arguments against class certification. (D.I.31).

> FN2. The Court notes that this case includes an additional defendant, James Dimon, that is not named in the Illinois Action. In addition, this action includes seven claims not asserted in the Illinois Action, two based on the common law duty of loyalty and duty of disclosure, two based on Section 10(b) and Section 20 of the Exchange Act and three based on Sections 11, 12(a)(2), and 15 of the Securities Act of 1933.

> FN3. The Chancery Court action has since been dismissed on the merits, and the plaintiffs have filed an appeal to the Delaware Supreme Court. *In re J.P. Morgan Chase & Co. S'holder Litig.*, 2005 WL 1076069 (Del. Ch. Apr. 29, 2005).

**\*2** Counsel for the Hyland Plaintiffs learned of the pending Illinois Action and filed several briefs and letters styled as amici curiae submissions urging the Illinois District Court to vacate its order appointing Dr. Blau as lead plaintiff and Wolf Haldenstein as lead counsel and requesting the Illinois District Court to *sua sponte* transfer the action to Delaware. Dr. Blau then filed the instant motion to intervene and stay this action in favor of allowing the first-filed Illinois Action to proceed.

On August 29, 2005, the Illinois District Court held a status conference to discuss the impact of the Hyland Plaintiffs' amici curiae submissions on the Illinois Action. [FN4] The Illinois District Court stated:

> FN4. Mr. Gielata was not invited to

participate in that status conference.

> I received notice of the parties in this action moving to intervene or stay the ... [Hyland] matter. I think we need to resolve that issue as to whether or not we proceed here or proceed there or these matters are so similarly situated that we need to proceed in one forum as opposed to both because clearly some order issued by this Court or by that Court could affect the litigation in other arena.
> There is some indication also in the materials that I've reviewed suggesting that the matter should be more properly brought in that Court as opposed to this Court.
> None of those issues have been answered to my satisfaction.

(D.I. 69, Exh. A at 2). At the conclusion of the hearing, the Illinois District Court further stated:

> Let me say that, obviously, the Court has been receiving a great deal of material from Counsel Gielata regarding this matter in the form of an amicus curiae brief and also in the form of letters which have been forwarded to the Court through counsel.
> Those materials the Court reviewed, and they raise certain issues with the Court, some of which the Court viewed as sour grapes perhaps, others of which caused the Court to, at least, have some concern about orders entered by this Court which might somehow impact orders entered by that Court or vice versa.
> So I did believe that it was necessary for someone to become either--one lawyer to become present here and intervene so I could have that lawyer present and talk what the issues really are or the lawyer here to intervene in that action so that we have one forum where we know this case is going to go forward in and we don't have these ancillary actions all over the place.
> Now that counsel has indicated and I have seen your motion to stay the Highland matter in Delaware, that, at least, should bring to fruition a hearing as to which case is going to go forward.
> Based upon the filing that have been made by counsel for the Highland plaintiff in the Delaware matter, I will make this order: That based upon the fact that we now have a motion pending to stay that matter in which the issues will be discussed and decided by that Court, I see no need to further entertain motions or writings or materials from Mr. Gielata in this case. I am not going to ... make any further order on his motions regarding the propriety of lead counsel or his other assertions in his papers. The Court here had no information and still has no information which it can base any action on its part

to change what the Court has previously ruled. As far as this Court is concerned, lead counsel remains lead counsel.

**\*3** Certainly ... there may be other person who might suggest that have a greater interest, for instance, the Highland plaintiff, but that is of no movement [sic] to this Court in that the notices that the Court reviewed were proper, the lead plaintiff has indicated a willingness, and the Court has found that he is a proper lead plaintiff.

The Court is concerned as to the ancillary or the other action in Delaware, but ... it is the Court's belief that that Court can, after hearing these materials regarding the intervention and the movement to stay that action, can rule, and if that ruling results in that action going forward as well as this action, then, I think, the next step is to decide where the actions should go forth, the two actions should go forth simultaneously in a single court as opposed to two, but we're not there because your motion to stay [Dr. Blau's motion to stay the Delaware action] might be, in fact, granted.

(D.I. 69, Exh. A at 10-12).

Following the Illinois District Court's ruling, the Hyland Plaintiffs filed the instant motion to enjoin the Illinois Action. Defendants have refrained from taking a position with respect to "the tug-of-war" between Dr. Blau and the Hyland Plaintiffs for lead plaintiff status, except to file a Memorandum Of Law in response to the Hyland Plaintiffs' motion to enjoin the Illinois Action stating that "Defendants view the claims as wholly devoid of merit and have filed motions to dismiss both pending federal actions in their entirety. Whether the determination of those motions is made by this Court or the District Court in Illinois is of secondary importance to the desirability of having a single determination and avoiding duplicative litigation." (D.I. 75 at 1).

DISCUSSION

I. Whether Dr. Blau Should Be Permitted To Intervene In This Action

By his Motion, Dr. Blau, the lead plaintiff in the Illinois Action, moves to intervene in this action pursuant to Federal Rule of Civil Procedure 24. Dr. Blau contends that he is entitled to intervene as a matter of right under Rule 24(a). In the alternative, Dr. Blau contends that permissive intervention is warranted under Rule 24(b). In support of his Motion, Dr. Blau contends that both he and the Hyland plaintiffs have filed legal complaints premised on the same facts and circumstances,

raising similar legal issues and seeking substantially the same relief. Dr. Blau also contends that his intervention will not delay or prejudice the Hyland Plaintiffs. However, Dr. Blau contends that he will suffer undue prejudice if his Motion To Intervene is not granted, because he and his counsel have vigorously investigated the legal issues in the Illinois Action, addressed Defendants' Motion To Dismiss in the Illinois Action and are proceeding under the time frames set forth in the Pretrial Order entered by the Illinois District Court.

In response, the Hyland Plaintiffs contend that Dr. Blau's Motion To Intervene is untimely, because Motions To Dismiss have already been briefed in this Court, and Dr. Blau failed to oppose the Hyland Plaintiffs' motion for appointment as lead plaintiffs even though Dr. Blau was aware of the filing of this motion. The Hyland Plaintiffs also contend that they will be prejudiced if Dr. Blau is permitted to intervene here because (1) this action is substantially underway with briefing completed on Defendants' Motion To Dismiss, (2) Defendants have waived service of process, and (3) discovery efforts have been initiated, including the service of document preservation subpoenas on critical witnesses.

**\*4** In reply to the Hyland Plaintiffs, Dr. Blau further contends that his intervention is warranted, because Mr. Gielata is not an adequate representative to prosecute this action. Dr. Blau points out that Mr. Gielata did not move for lead plaintiff status in the first-filed Illinois Action and contends that Mr. Gielata is jeopardizing these actions by filing claims that were already dismissed by the Delaware Chancery Court. Dr. Blau also contends that Mr. Gielata has attempted to interfere in the first-filed Illinois Action, while trying to avoid subjecting himself to the jurisdiction of that court by filing amici curiae memorandum containing inflammatory accusations against himself and Wolf Haldenstein, including, among other things, that (1) Wolf Haldenstein plagiarized counts from the complaint filed in the Delaware Chancery Court, (2) provided insufficient notice of the Illinois Action, and (3) used AGF as an "illusory plaintiff" to show a larger financial stake in the action, when AGF did not want to be a party to the Illinois Action and indicated that its involvement in the action was a clerical error.

Federal Rule of Civil Procedure 24 provides:
(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action:
(1) when a statute of the United States confers an unconditional right to intervene; or (2) when the

Slip Copy                                                                                                Page 4
Slip Copy, 2006 WL 288247 (D.Del.)
**(Cite as: 2006 WL 288247 (D.Del.))**

applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

In determining whether a motion for intervention is timely, the Court should consider three factors: (1) the stage of the proceeding, (2) prejudice to the parties, and (3) the reason for the delay. *Commonwealth v. Pennsylvania v. Rizzo, 530 F.2d 501, 506 (3d Cir.1976).* The party seeking to intervene bears the burden of demonstrating that intervention is appropriate.

As a threshold matter, the Hyland Plaintiffs contend that Dr. Blau's motion is untimely, because Dr. Blau knew about this action since May 2005, but waited an unreasonable length of time, until August 2005, before filing his Motion To Intervene. In support of their contention, the Hyland Plaintiffs cite three cases: *Delaware Valley Citizens' Counsel for Clean Air v. Pennsylvania, 674 F.2d 970, 974 (3d Cir.1982), National Wildfire Fed'n v. Gorsuch, 744 F.2d 963 (3d Cir.1984)* and *In re Fine Paper Anti-Trust Litig., 695 F.2d 494 (3d Cir.1982).*

**\*5** The Court has reviewed these cases and finds them to be distinguishable from the circumstances here. For example, in *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania,* the potential intervenors moved to intervene four years after the action was commenced and twenty months after a consent decree was entered. Similarly, in both *National Wildfire Fed'n v. Gorsuch* and *In re Fine*

*Paper Anti-Trust Litig.,* intervention was sought after the court had entered a judgment in the case.

By comparison, this case has not progressed as far as the cases cited by the Hyland Plaintiffs, and although a motion to dismiss has been fully briefed, a substantive decision has not yet been issued. Indeed, no final decrees or judgments have been entered on any substantive matters, and the one order that has been entered concerning the appointment of lead plaintiffs and lead counsel was entered on a conditional basis subject to the full exposition of Defendants' reservations at a later date. Given the early stage of this proceeding, the Court is not persuaded that the Hyland Plaintiffs will be prejudiced by the intervention of Dr. Blau. The Court also finds that Dr. Blau filed his motion to intervene within a reasonable time after learning that Mr. Gielata sought to vacate the Illinois District Court's rulings on lead counsel in the Illinois Action. Accordingly, the Court concludes that Dr. Blau's Motion To Intervene is not untimely.

The Hyland Plaintiffs next contend that Dr. Blau's motion to intervene should be denied, because it is not made for a proper purpose. Citing to *Kamerman v. Steinberg, 681 F.Supp. 206 (S.D.N.Y.1988)* and *Lexington Ins. Co. v. Caleco, Inc., 2003 WL 21652163, \*6 (E.D.Pa. Jan. 25, 2003),* the Hyland Plaintiffs contend that a motion to intervene should not be granted for the purpose of seeking to stay the underlying action.

In both *Kamerman* and *Lexington,* the respective plaintiffs sought to stay the respective federal court actions during the pendency of related state court actions. The *Kamerman* and *Lexington* courts denied the respective motions to intervene concluding that the plaintiffs had not demonstrated the requirements of *Rule 24(c),* i.e. that the intervenors file pleadings setting forth the claims or defenses for which intervention is sought. In reaching this conclusion, the *Kamerman* and *Lexington* courts specifically noted that the potential intervenors had no claims to press against any defendants or any defenses to assert against any plaintiffs, and no intention of litigating the causes of action set forth in the respective federal complaints.

In the Court's view, neither the *Kamerman* decision nor the *Lexington* decision provide a basis to deny Dr. Blau's motion. First, this case does not involve a federal action co-existing with a state court action. Rather, this case involves two co-existing federal actions. More importantly, Dr. Blau has asserted

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

claims against Defendants, and the Court is not persuaded that Dr. Blau's Motion To Intervene is meant to delay the resolution of those claims, which he has also asserted in the Illinois District Court. Rather, it appears to the Court that Dr. Blau's interest lies in preserving the jurisdiction of the Illinois District Court and recovering for the class of investors he represents. Further, unlike the plaintiffs in *Kamerman* and *Lexington,* Dr. Blau appears to have every intention of pressing his claims, the concern is in which of the two federal district courts those claims will be litigated.

**\*6** Having concluded that Dr. Blau's Motion is not untimely and is not being pressed for the sole purpose of delay, the Court concludes that Dr. Blau has established that permissive intervention is appropriate. The Illinois Action filed by Dr. Blau is based on the same facts and circumstances as this case, seeks substantially the same relief, and raises similar legal issues. For the reasons discussed in determining the timeliness of Dr. Blau's motion, the Court further concludes that the Hyland Plaintiffs will not be prejudiced by Dr. Blau's intervention. Accordingly, the Court will grant Dr. Blau's Motion For Intervention.

II. Whether This Action Should Be Stayed In Favor Of Allowing The Illinois Action To Proceed

By his Motion To Stay, Dr. Blau contends that this action should be stayed, because it was brought at an impermissible time and in contravention of the procedures set forth in the PSLRA for appointing lead plaintiff and selecting lead counsel. Dr. Blau points out that the Illinois Action was the first filed action, and Dr. Blau contends that the Hyland Plaintiffs should have moved for appointment as lead plaintiffs in the Illinois Action within the 60 day time period provided for in Section 27(a)(3)(b)(i) of the Securities Act and Section 21D(a)(3)(B)(i) of the Exchange Act. Dr. Blau contends that by filing the instant action, the Hyland Plaintiffs are attempting to overrule the Illinois District Court's determination that Dr. Blau's appointment as lead plaintiff was proper and the notice in the Illinois Action was adequate.

In response, the Hyland Plaintiffs contend that a stay is inappropriate. Specifically, the Hyland Plaintiffs contend that staying this action would expose them, and the class they represent, to (1) reduced recovery due to (a) the absence of certain claims in the Illinois Action and (b) Wolf Haldenstein's alleged conflict of interest and lack of prosecution of the Illinois Action,

(2) the risk that claims will be released in the event that Wolf Haldenlstein settles or voluntarily dismisses the Illinois Action, (3) the harm of having claims litigated in an inconvenient venue where important witnesses cannot be summoned for trial, and (4) the risk of no recovery as a result of service of process issues. The Hyland Plaintiffs also contend that there are significant differences between this action and the Illinois Action, and that a stay of this action would effectively be a dismissal of the claims asserted here.

The Hyland Plaintiffs further contend that the existence of a lead plaintiff order in the Illinois Action is not a basis to stay this action. The Hyland Plaintiffs point out that a lead plaintiff order has also been entered in this case, and the Hyland Plaintiffs contend that the lead plaintiff order in this case does not overrule any orders entered in the Illinois Action. The Hyland Plaintiffs further point out that they have not sought to intervene in the Illinois Action, and Dr. Blau has not sought reargument under Local Rule 7.1.5 or relief under Federal Rule of Civil Procedure 60 from the lead plaintiff order entered in this case.

**\*7** In addition, the Hyland Plaintiffs contend that, by requesting a stay, Dr. Blau is trying to "sidestep" three issues. Specifically, the Hyland Plaintiffs contend that (1) Dr. Blau failed to commence the Illinois Action in a proper or convenient forum, (2) the Delaware Plaintiffs have a financial interest that exceeds Dr. Blau's financial interest, and (3) Dr. Blau failed to include valuable class claims and substantive allegations in this Illinois Action that have been asserted here.

The power of the Court to stay proceedings is incidental to its inherent power to control the disposition of the cases on its docket. *Landis v. North American Co.,* 299 U.S. 248, 254 (1936). The decision to stay a proceeding lies within the discretion of the Court. In exercising this discretion, the Court "must weigh competing interests and maintain an even balance." *Id.* at 255. The party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Id.*

In determining whether a stay is appropriate in this case, the Court also finds it necessary to consider certain provisions of the PSLRA relating to the appointment of lead plaintiff. The PSLRA was enacted to end perceived abuses in federal securities

Slip Copy                                                                                    Page 6
Slip Copy, 2006 WL 288247 (D.Del.)
(Cite as: 2006 WL 288247 (D.Del.))

actions by eliminating the "race to the courthouse" as the method for selecting lead plaintiffs, and instead requiring the court to choose the most adequate plaintiff to represent the class' interests. Procedurally, the selection of lead plaintiff requires the party who files the initial action to publish notice within 20 days of the filing to inform class members of the pendency of the action, the claims asserted, the class period and their right to file a motion for appointment of lead plaintiff. Within 60 days of the publication of that notice, any member of the putative class may move the court for appointment to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(i). When multiple actions are filed asserting substantially the same claims, only the plaintiff in the first filed action is required to provide notice. 15 U.S.C. § 78u-4(a)(3)(A)(ii).

However, courts have recognized that, in actuality,
   The PSLRA did not completely eliminate the "race to the courthouse".... [P]laintiffs who are first to file suit are obligated to provide notice to other purported class members of the asserted claims and the purported class period. Plaintiffs who are first to file, moreover, are in a better position to aggregate plaintiffs in an effort to obtain the largest financial interest in the litigation, an important aspect of the lead plaintiff status.
In re Nice Sys., Ltd. Sec. Litig., 188 F.R.D. 206, 215 n. 7 (D.N.J.1999) (citations omitted).

Weighing the parties' interests in light of the facts and circumstances in this case, the Court concludes that this action should be stayed in deference to the first-filed Illinois Action. By the nature of the various filings in this Court, as well as in the Illinois District Court, it is apparent to the Court that the Hyland Plaintiffs and their counsel and Dr. Blau and his counsel are in a "tug of war" over who is going to serve as lead plaintiff and lead counsel. Consistent with the procedures of the PSLRA, the Illinois District Court has appointed Dr. Blau as lead plaintiff and approved Wolf Haldenstein to serve as lead counsel in that action. If the Hyland Plaintiffs wished to challenge that decision, their remedy was not to file a second action in this Court, but to follow the procedures laid out in the PSLRA and contest that decision in the Illinois District Court. Instead, the Hyland Plaintiffs, through their counsel, have circumvented this procedure by filing this action and presenting their arguments to the Illinois District Court in the form of amici curiae briefs.

*8 Nevertheless, the Illinois Court has considered and rejected the arguments of the Hyland Plaintiffs concerning the appointment of Dr. Blau as lead

counsel, including the Hyland Plaintiffs' assertion that Dr. Blau did not provide them with proper notice under the PSLRA. This Court will not second-guess the decisions of the Illinois District Court on this matter.

Although it is true that this Court has also entered a lead plaintiff order, the Court's order was entered on a conditional basis. At this juncture, it appears to the Court that neither action has progressed to a substantive review of the merits. Indeed, Motions To Dismiss are fully briefed and pending in both this Court and the Illinois District Court. However, the Illinois District Court has acknowledged that there may be questions concerning whether Illinois is the appropriate venue for the action filed there . [FN5] In light of these questions and the first-filed status of the Illinois Action, the Court is persuaded that this action should be stayed pending resolution of the Illinois Action. Once the Illinois Action is resolved, the stay can be lifted here, and this action can then proceed to its end. In addition, the Court is not persuaded that the Hyland Plaintiffs will be prejudiced by this decision, because the Illinois District Court has concluded that Dr. Blau and Wolf Haldenstein are appropriate representatives for the class. Thus, the Court concludes that a stay will adequately preserve the interests of the Hyland Plaintiffs in this action, while simultaneously allowing their interests to be served in the Illinois Action to the extent their claims are being pressed there. Accordingly, the Court will grant Dr. Blau's Motion and stay this action pending resolution of the Illinois Action.

   FN5. Although Defendants have not requested a transfer of the Illinois Action, Mr. Gielata has requested a transfer in his amici curiae papers. Dr. Blau suggests that the Illinois District Court has already rejected Mr. Gielata's request for a transfer; however, Judge Hibbler has indicated that these issues were not addressed to his satisfaction.

CONCLUSION
For the reasons discussed, the Court will grant the Motion of Dr. Stephen Blau To Intervene In Order To Further Move That This Action Be Stayed (D.I.58). The above-captioned action will be stayed pending the resolution of the Illinois Action. The Motion To Enjoin Further Prosecution Of Blau v. Harrison, et al. (D.I.68) will be denied as moot.

An appropriate Order will be entered.
END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

In re JPMorgan Chase / Bank One
    Merger Litigation

MDL No. _____

## NOTICE OF CONDITIONAL WAIVER OF ORAL ARGUMENT

To:    Clerk of the Panel
        Judicial Panel on Multidistrict Litigation
        Thurgood Marshall Federal Judiciary Building
        One Columbus Circle, N.E.
        Room G-255, North Lobby
        Washington, D.C. 20002

Pursuant to Panel Rule 16.2(a), this is to give notice that the attorney designated below, on behalf of Samuel I. Hyland, elects to waive oral argument if all other counsel in the matter, if set for a hearing, waive oral argument.

DATED:      April 6, 2006           Respectfully submitted,

                                    Joseph N. Gielata
                                    Attorney at Law
                                    501 Silverside Road, No. 90
                                    Wilmington, Delaware 19809
                                    (302) 798-1096

                                    *Attorney for Samuel Hyland*

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

In re JPMorgan Chase / Bank One
        Merger Litigation

MDL No. _____

## <u>NOTICE OF APPEARANCE</u>

Pursuant to Panel Rule 1.4, the undersigned attorney, Joseph N. Gielata, hereby

enters his appearance on behalf of Samuel I. Hyland and is designated to receive service

of all pleadings, notices, orders and other papers related to the above-captioned matter.

DATED:        April 6, 2006                     Respectfully submitted,

                                               Joseph N. Gielata
                                               Attorney at Law
                                               501 Silverside Road, No. 90
                                               Wilmington, Delaware 19809
                                               (302) 798-1096

                                               *Attorney for Samuel Hyland*

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re JPMorgan Chase / Bank One<br>        Merger Litigation | MDL No.  _____ |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that on April 6, 2006 he caused copies of

the foregoing Motion For Centralization, Schedule Of Related Actions, Memorandum In

Support Of Motion For Centralization, Notice Of Conditional Waiver Of Oral Argument,

and Notice Of Appearance to be served by first-class mail, postage prepaid, to the

following parties' attorneys or to be filed by ECF or mail with the following courts:

| | |
|---|---|
| Adam Levitt<br>Wolf Haldenstein Adler<br>        Freeman & Herz LLP<br>55 West Monroe St., Suite 1111<br>Chicago, Illinois 60603<br>*Plaintiff's Counsel in Blau v. Harrison* | Kathleen L. Roach<br>Sidley Austin LLP<br>One South Dearborn Street<br>Chicago, Illinois 60603<br><br>*Defendants' Counsel in Blau v. Harrison* |
| Robert R. Davis<br>Chimicles & Tikellis LLP<br>P.O. Box 1035<br>One Rodney Square<br>Wilmington, DE  19899<br>*Counsel for Dr. Stephen Blau<br>        in Hyland v. Harrison* | Michael R. Robinson<br>Richards Layton & Finger, P.A.<br>One Rodney Square<br>Wilmington, DE  19801<br><br>*Defendants' Counsel<br>        in Hyland v. Harrison* |

| Clerk of Court | Clerk of Court |
| United States District Court | United States District Court |
| Northern District of Illinois, Eastern | District of Delaware |
| Division (via first-class mail) | (via Electronic Case Filing) |
| Everett McKinley Dirksen Building | J. Caleb Boggs Federal Building |
| 219 South Dearborn Street | 844 North King Street |
| Chicago, Illinois 60604 | Wilmington, Delaware 19801 |

Joseph N. Gielata