# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Dr. Stephen Blau, Individually and On Behalf of All Others Similarly Situated,<br>    Plaintiffs,<br><br>v.<br><br>William B. Harrison, Jr. Hans W. Becherer, Riley P. Bechtel, Frank A. Bennack, Jr., John H. Biggs, Lawrence A. Bossidy, M.. Anthony Burns, Laurence Fuller, Ellen V. Futter, William H. Gray, III, Helene L. Kaplan, Lee R. Raymond, John R. Stafford, and J.P. Morgan Chase & Co.,<br><br>    Defendants. | No. 04 C 6592<br><br>The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

MOTION TO STRIKE

As an initial matter, Defendants filed a motion to strike the expert report of Steven Wolfe attached to Plaintiffs' response to the motion to dismiss. Defendants' move to strike this submission because the pleadings neither referenced nor included the report. Blau argues that the report is an "affidavit" submitted with the intent of demonstrating that the materiality of a proxy omission raises issues of fact that cannot be determined on a motion to dismiss.

In reviewing a *Rule 12(b)(6)* motion to dismiss for failure to state a claim, the court is limited to the allegations contained in the pleadings themselves. The Court, however, may consider matters outside the pleadings without converting the motion to dismiss into one for summary judgment if they are referred to in the plaintiff's complaint and are central to plaintiff's claim. *Rosenblaum v.*

1

*Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). In addition, documents incorporated by reference into the pleadings and documents attached to the pleadings as exhibits are considered part of the pleadings for all purposes. *Fed. R. Civ. P. 10(c)*. As Wolfe's affidavit is neither referenced in the Complaint nor attached to the pleadings, the Court may not consider this affidavit in ruling on the Defendants' *Rule 12(b)(6)* motion. Accordingly, the Court grants Defendants' motion to strike and excludes the extraneous material.

MOTION TO DISMISS

Plaintiffs allege that Defendants negligently failed to disclose material terms of the negotiation involving the merger between Bank One Corporation ("Bank One") and J.P. Morgan Chase & Co. ("J.P. Morgan") to J.P. Morgan shareholders in its proxy statement. Specifically, Plaintiffs contend that Defendants failed to disclose Bank One's CEO's offer to "do the deal for no premium if he could become chief executive immediately." According to Plaintiffs, Defendants' actions amounted to negligence, and resulted in J.P. Morgan Shareholders approval of a 14 percent premium in favor of Bank One shares.

Defendants seek to dismiss Blau's Amended Class Action Complaint ("Complaint") for failure to state a claim upon which relief can be granted pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, for failure to plead fraud with particularity pursuant to *Federal Rule of Civil Procedure 9(b)*, and for failure to meet the pleading standards set forth in the Private Securities Litigation Reform Act of 1995, *15 U.S.C. § 78u-4(b)* (the "PSLRA"). In addition, Defendants maintain that the putative class lacks standing to bring this claim. For the reasons set forth below, Defendants' motion is DENIED in part and GRANTED in part.

2

**FACTUAL BACKGROUND**

I. The Parties

This putative class action lawsuit is brought by Dr. Stephen Blau individually and on behalf of all persons who held common stock of J.P. Morgan, either on April 2, 2004 (the record date for voting at the May 25, 2004 shareholder meeting), or at any time from April 19, 2004 (the date on which the company consummated the merger with Bank One. On January 5, 2005, this Court entered an order appointing Dr. Blau and American Growth Fund lead Plaintiffs.[1]

Prior to the merger, J.P. Morgan was a Delaware corporation with its principal place of business in New York, New York. J.P. Morgan, a financial and multi-bank holding firm, was engaged in the provision of investment banking, securities, investment management, and other financial and banking services. Defendants William B. Harrison, Jr., Hans W. Becherer, Riley P. Bechtel, Frank A. Bennack, Jr., John H. Biggs, Lawrence A. Bossidy, M. Anthony Burns, Ellen V. Futter, William H. Gray, III, Helene L. Kaplan, Lee R. Raymond, John R. Stafford (collectively "Individual Defendants") were all directors of J.P. Morgan prior to the merger.[2] William B. Harrison ("Harrison") also served as Chief Executive Officer ("CEO") and Chairman of the Board during the relevant period. Bank One was a financial holding and multi-bank holding company, incorporated in Delaware, with its headquarters in Chicago.

II. Merger

In resolving the motion to dismiss, the Court takes as true the following facts from Plaintiffs'

---

[1] Lead Plaintiff American Growth Fund withdrew as co-Lead Plaintiff on February 18, 2005.

[2] Defendant Laurence Fuller was dismissed from this action on June 6, 2005.

3

Complaint. In November 2003, J.P. Morgan CEO and Chairman William Harrison began discussing the possibility of a merger with James Dimon ("Dimon"), then the CEO and Chairman of Bank One. After briefing their respective boards on their conversations on November 18, 2003, both CEO's were encouraged to continue discussions regarding the potential merger. During December 2003, Dimon and Harrison continued their discussions regarding the key terms of the financial transaction and periodically updated their respective boards on these communications. In early to mid-January 2004, each company's respective board of directors convened special meetings to consider the terms of the merger. At these meetings board members reviewed the terms of Dimon's employment agreement, proposed employment arrangements for other senior management, along with the exchange ratio and related valuation information for the stock. On January 14, 2004, the Board of Directors of both J.P. Morgan and Bank One each unanimously approved a stock-for-stock merger in which 1.32 shares of J.P. Morgan common stock would be issued to Bank One shareholders for each share of Bank One common stock. On April 21, 2004, the J.P. Morgan Board of Directors disseminated its proxy statement regarding the merger to its shareholders. While the proxy statement listed the factors the board considered in approving the merger, it did not disclose Dimon's offer to transact the merger without a premium in favor of Bank One if Dimon were appointed CEO of the merged company immediately.

On May 25, 2004, J.P. Morgan shareholders approved the merger at a special meeting, with 99.18% of the shareholders voting in favor of transacting the merger. On July 1, 2004, the merger was consummated and included a premium, based on closing stock prices the trading day before the merger was agreed to and announced, of approximately 14% for Bank One shares. The merger agreement also included a provision that Harrison would remain CEO of J.P. Morgan for two years

4

after completion of the merger, Dimon would serve as President and Chief Operating Officer, and would become CEO after Harrison's tenure.

III. Newspaper Articles

Shortly after the merger was transacted, several news sources reported that during negotiations Dimon offered to conduct the transaction with no premium if he could become CEO of the merged entity immediately. According to these sources, Harrison rejected the Dimon's offer so that he could be appointed CEO of the merged company and, in response, Dimon requested a premium for Bank One shares. Specifically, on June 27, 2004, the *New York Times* published an article containing allegations regarding Harrison's refusal to accept Bank One's proposal to conduct a no premium stock exchange. The article stated:

> During the negotiations with Mr. Dimon, he [Mr. Harrison] fought hard to give himself the extra two years, to secure a smooth transition, **although he may cost J.P. Morgan shareholders extra money in doing so.** Mr. Dimon, always the tough deal maker, **offered to do the deal for no premium** if he could become chief executive immediately, **according to two people close to the deal.**
>
> **When Mr. Harrison resisted, Mr. Dimon insisted on a premium, which Mr. Harrison was able to push down to 14 percent.** The two men declined to comment on the specifics of their negotiations.

Comp. ¶ 31 (emphasis supplied in Complaint). Several days later on July 3, 2004, *The Financial Times* (London) reported on the merger negotiations and quoted an additional source, allegedly an advisor on the negotiations, who attested that Harrison refused to conduct the merger for no premium if he were named the immediate CEO. That article noted "'There was a spectrum of outcomes in terms of premium and governance,' said one advisor at the time. Translated into English, this meant Mr. Dimon was saying the sooner I get the job the less you have to pay." Id. ¶ 32. Additionally, on

5

December 29, 2004, the *Wall Street Journal* reported that "in-house bankers at J.P. Morgan endorsed the $56.9 billion price [Merger] - negotiated by their boss [Harrison] - as 'fair,'" even though "during the negotiations [Dimon] . . . suggested selling his bank [Bank One] for billions of dollars less if, among other conditions, he immediately became chief of the merged firm, according to a person familiar with the talks. The suggestion wasn't accepted by J.P. Morgan." Id. ¶ 35.

## ANALYSIS

The two-count Complaint in this case is premised on the alleged negligence of J.P. Morgan with regard to an alleged omission of a material fact in its proxy statement. In count one, Plaintiffs allege that Defendants violated *Section 14(a)*[3] of the Securities and Exchange Act of 1934 ("the Exchange Act") and Rule 14a-9[4] promulgated by the SEC. Count two alleges that the Individual Defendants violated *Section 20(a) of the Exchange Act*. Defendants move to dismiss the Complaint in its entirety for failure to state a claim pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, for failure to plead fraud with particularity pursuant to *Federal Rule of Civil Procedure 9(b)*, and for failure to meet the pleading standards set forth in the PSLRA. Defendants further allege that Plaintiffs lack standing to bring this cause of action.

I. Standard of Review

---

[3] Section 14(a) of the Exchange Act provides that "It shall be unlawful for any person, by use of the mails . . . or otherwise . . . to solicit or permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of the title."

[4] Rule 14a-9 prohibits the solicitation of a shareholder's vote by means of a proxy statement that "is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . ." *17 C.F.R. § 240.14a*

6

The purpose of a motion to dismiss pursuant to *Rule12(b)(6)* is to test the legal sufficiency of a complaint, not the merits of the case. *See Triad Assocs., Inc. v. Chicago Housing Auth.*, 892 F. 2d 583, 586 (7th Cir. 1989). When considering a motion to dismiss, the Court considers "whether relief is possible under [any] set of facts that could be established consistent with [the] allegations." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). The Court views all the facts alleged in the Complaint, as well as any reasonable inferences drawn from those facts, in the light most favorable to Plaintiff. *See Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). Dismissal of a complaint is appropriate only where it appears beyond doubt that under no set of facts would the plaintiff's allegations entitle him to relief. *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999); *Kennedy v. National Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999).

II. Count I - *Section 14(a)*

A. Pleading

In order to state a claim under *Section 14(a)*, Plaintiffs must allege that (1) a proxy statement contained a material misrepresentation or omission, which (2) caused plaintiffs injury, and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was "an essential link" in the accomplishment of the transaction. *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 354-85, 90 S. Ct. 616, 621-22, 24 L.Ed. 2d 593 (1970). "The purpose of [Section] 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitations." *J. I. Case Co. v. Borak*, 377 U.S. 426, 431, 12 L. Ed. 2d 423, 84 S. Ct. 1555 (1965). *Section 14(a)* and Rule 14a-9 regulate the proxy solicitation process and "prohibit[] the solicitation of proxies by means of materially false or misleading statements."

7

*Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1087, 115 L. Ed. 2d 929, 111 S. Ct. 2749 (1991).

In enacting the Private Securities Litigation Reform Act, Congress raised the pleading standards for claims alleging private securities fraud, "to a very specific version of fact pleading -- one that exceeds even the particularity requirements of *Federal Rule of Civil Procedure 9(b)*. See *Makor Issues & Rights, Ltd., et al. v. Tellabs, Inc., et al.*, 437 F.3d 588 (7th Cir. 2006) *citing In re: Rockefeller Crt. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)(noting that the PSLRA "imposes another layer of factual particularity to allegations of securities fraud"). As such plaintiffs asserting a securities fraud claim must assert the "who, what, when, where, and how," of the claim. *DiLeo v. Ernest & Young*, 901 F.2d 624, 627 (7th Cir. 1990). The PSLRA mandates that for a securities fraud claim, the complaint must "specify each statement alleged to have been misleading, the reasons or reasons why the statement is misleading, and if an allegation regarding the state or omissions is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *15 U.S.C. § 78u-4(b)(1)*. Additionally, a plaintiff is required to demonstrate "proof that the defendant acted with a particular state of mind, the complaint with respect to each act or omission . . . must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *15 U.S.C. § 78u-4(b)(2)*.

Defendants contend that both the PLSRA's heightened pleading standards and the heightened pleading requirements of *Federal Rule of Civil Procedure 9(b)*, apply to Plaintiffs' *Section 14(a)* claims. *See e.g., Hayes v. Crown Cent. Petroleum Corp.*, 249 F. Supp. 2d 725, 728 (E.D. Va. 2002), (aff'd in part, vacated in part); *In re Harmonic Inc.*, 2002 U.S. District Lexis 26676 * 64 n. 17 (N.D. Cal. Nov. 13, 2002); *Bond Opportunity Fund v. Unilab Corp.*, 2003 U.S. Dist. LEXIS 7838 at *8

8

(S.D.N.Y. May 9, 2003). Defendants argue that Blau's *Section 14(a)* claims must plead with particularity facts that give rise to a strong inference of negligence on the part of all defendants. *See In re McKesson HBOC, Inc. Sec. Lit.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000). Defendants further argue that Plaintiffs' Complaint fails to meet the heightened standards as it fails to state with particularity facts giving a strong inference of negligence. Further, in its allegations based upon "information and belief," the Complaint fails to state with particularity all facts on which that belief is formed as required by the PSLRA. *15 U.S.C. § 78u-4(b)(1)*.

Plaintiffs respond that its *Section 14(a)* claims are sufficiently pled pursuant to *Federal Rule of Civil Procedure 8(a)*.[5] Plaintiffs argue that because the Complaint purports that Defendants acted with negligence, *not fraud*, the heightened pleading requirements of the PSLRA are not implicated. *See California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 145 n.9 (3d Cir. 2004)(noting that because plaintiff's *Section 14(a)* claims were grounded in fraud, the claims must meet the PSLRA particularity requirements.); *In re Cendant Corp. Litig.*, 60 F. Supp. 2d 354, 378 (D.N.J. 1999)(holding that because plaintiffs have alleged that defendants acted negligently, they need not plead fraud at all, let alone with particularity); *In re: Trump Hotels Shareholder Derivative Litig.*, 2000 U.S. Dist. LEXIS 13550, (S.D.N.Y. Sept. 21, 2000). Thus, Plaintiff contends that its Complaint is sufficiently pled in accordance with *Fed. R. Civ. Pro. 8(a)* as the Complaint neither alleges intentional conduct, nor does the Complaint "sound in fraud." *See e.g. Kennedy v. Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir. 2003).

In *Kennedy*, the Seventh Circuit considered the pleading requirements for a claim that alleged

---

[5]*Federal Rule of Civil Procedure 8(a)* requires a pleading to set forth a short and plain statement of the claim showing that the pleader is entitled to relief.

9

that the proxy statement contained material omissions and discussed the nuances between a proxy claim pleading fraud and a proxy claim pleading solely negligence. The *Kennedy* court queried "[I]n charging that the proxy statement contained material omissions and misstatements, are the plaintiffs charge fraud, and fraud alone?" *Id.* In response, the Seventh Circuit stated that a plaintiff was not required to plead fraud with regard to a proxy statement omitting material facts. *Id.* The court reasoned that if a claim failed to plead fraud, than *Rule 9(b)* was inapplicable to the plaintiffs' allegations, and, therefore did not have to be pled with particularity. *Id.* The court further explained that a plaintiff was not precluded from alleging negligence in omission of a material fact from a proxy statement because pursuant to *Section 14(a)* negligent omission of material information from a proxy statement violated federal law. *Id.* (citations omitted). While the *Kennedy* court did not set forth the applicability of the PSLRA to *Section 14(a)* claims, this Court finds its reasoning applicable to the facts of the instant case.

Viewing, as the Court must, all the facts alleged in the Complaint, as well as any reasonable inferences drawn from those facts, in the light most favorable to Plaintiff. *Stachon*, 229 F.3d 673 at 675. Plaintiffs' Complaint sets forth a *Section 14(a)* claim alleging that Defendants acted negligently; thus, they need not plead fraud at all, let alone fraud with particularity. Simply, Plaintiffs' *Section 14(a)* allegations are not required to meet the PSLRA particularity requirements because these claims are based on averments of negligence. Plaintiffs allege that the Defendants acted negligently in not revealing the "no premium" offer which resulted in shareholders voting on the proxy without benefit of the knowledge of the alternative offer. Plaintiffs charge that this material omission/misrepresentation from this proxy statement caused them injury, and that the proxy solicitation itself was an essential link in the transaction. Specifically, the Complaint alleges

10

that the Proxy Statement was materially misleading because "it failed to disclose material facts about Mr. Dimon's offer on behalf of Bank One to engage in a transaction with no premium for Bank One shareholders." Am. Comp. ¶ 86. The Complaint further alleges that Defendants were negligent in disseminating the Proxy Statement containing the materially false and misleading statements. Id. at ¶ 87. The Complaint also states that each shareholder has been damaged ". . . as a direct and proximate result of such violations because they were denied an opportunity to make an informed decision in response to the proposed transaction with respect to the Merger premium . . ." Id. at. ¶ 91. Accordingly, the Court finds that Blau's Complaint sufficiently pled violations of *Section 14(a)*.

### B. Materiality

An omitted fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus., Inc. v. Northway*, Inc., 426 U.S. 438, 449, 96 S. Ct. 2126, 2132, 48 L. Ed. 2d 757 (1976). "The determination requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact." *Id.* at 450.

The crux of Plaintiffs' Complaint is Defendants negligently failed to disclose a material fact during the proxy solicitation regarding Harrison's rejection of an offer to conduct the merger with no premium. According to the Complaint, after Harrison rejected this offer, the negotiations resulted in Bank One shareholders receiving a 14% premium for their stock and which ultimately cost J.P. Morgan shareholders over 7 billion dollars in unnecessary merger compensation. Defendants argue that the proxy statement was not required to disclose alleged negotiating positions. *See e.g. Kaufman v. Cooper Comps., Inc.*, 719 F. Supp. 174, 183 (S.D.N.Y. 1989)(holding that defendant's efforts to

11

work out an arrangement for preferred shareholders were adequately disclosed and that defendant did not have to describe each step of negotiations); *Beaumont v. American Can Co.*, 797 F.2d 79, 85 (2d Cir. 1986).

On a motion to dismiss, the Court must assume the truth of the facts asserted by Plaintiffs and all reasonable inferences in favor of the Plaintiff. The Proxy Statement indicated that the offer was "fair, from a financial point of view." If, as Plaintiffs allege, Dimon offered to consummate the transaction for no premium and the only reason Harrison rejected the offer was to retain a position as CEO of the merged company, this may be a fact a "reasonable shareholder would consider ... important." TSC Indus., 426 U.S. at 449. While it is not necessary to disclose all factors in a negotiation, failure to offer shareholders a more profitable exchange may have been important to shareholders in considering whether or not to approve the merger. For the purposes of the instant motion to dismiss, the Court concludes that the omission regarding an alleged "no premium" stock exchange is material.

Accordingly, Defendants' motion to dismiss Plaintiffs' *Section 14(a)* claim against them in Count I of the Complaint is DENIED.

III. Count II - - *Section 20(a)*

Section 20(a) of the Exchange Act provides:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall be liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did nor directly or indirectly induce the act or acts constituting the violation of the cause of the action.

12

*15 U.S.C. §78t(a)*. Plaintiffs must allege the following in order to state a *Section 20(a)* claim: (1) a primary securities violation; (2) each of the Individual Defendants exercised general control over the operations of J.P. Morgan; (3) each of the Individual Defendants "possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised." *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992).

Plaintiffs have pled an underlying violation of *Section 14(a)* of the Exchange Act by Individual Defendants. The Complaint alleges that the Individual Defendants "By virtue of their positions as Directors . . . and, participation as directors . . . they had the power to influence and control and did influence and control the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contend are false and misleading." Am. Comp. ¶ 93. The Complaint further alleges that these Defendants were "provided with or had unlimited access to copies of the Company's proxy statements and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected." Id. ¶ 95. Lastly, it alleges that "each of the individual defendants . . . is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein." Thus, Plaintiffs have sufficiently alleged that the Individual Defendants acted as controlling persons within the meaning of *§ 20* of the Exchange Act. The ultimate determination of whether Defendants were controlling persons involves questions of fact not to be resolved at the pleading stage of this litigation. *See e.g. In re Sears, Roebuck & Co. Sec. Litig.*, 291 F. Supp. 2d 722, 727 (N.D. Ill. 2003). Accordingly, the Defendants' motion to dismiss the §20(a) claims against them in Count II is denied.

13

IV. Standing

Alternatively, Defendants argue that, as defined, the putative class lacks standing because the Proxy Statement explicitly sets forth that only "common stockholders of record at the close of business on April 2, 2004 may vote at the meeting."[6] Def. Exh. A at Notice of Annual Meeting. They allege that *Section 14(a)* and Rule 14a-9 establishes a cause of action solely for shareholders who are entitled to vote on the transaction as set forth in the proxy statement. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2004 U.S. Dist. Lexis 7917, *125 (S.D.N.Y. May 5, 2004)(holding that "Section 14(a)'s emphasis on the Proxy Statement solicitation process indicates that the stature was designed to protect only those shareholders with voting rights"). Defendants maintain that because some members of the putative class were not entitled to vote on the merger, the class is overbroad and, thus does not have standing to bring this claim. *See Shields v. Erickson*, 710 F. Supp. 686, 693 (N.D. Ill. 1989)(dismissing class action where complaint failed to indicate whether any plaintiffs had standing under the proxy statement and class as a whole was improperly defined).

Plaintiffs respond alleging that because the defined class is inclusive of all individuals who were injured through dilution of their stock by Defendants' violations of *Section 14(a)* and Rule 14a-9, the class as a whole has standing. Plaintiffs further argue that several courts have certified classes, bringing private actions pursuant to Section 14(a), which included members other than those entitled

---

[6] In ruling on a *Rule 12(b)(6)* motion to dismiss for failure to state a claim, the court is limited to the allegations contained in the pleadings themselves. Documents incorporated by reference into the pleadings and documents attached to the pleadings as exhibits are considered part of the pleadings for all purposes. *Fed. R. Civ. P. 10(c)* Accordingly, the Court may consider the proxy statement.

to vote on the proxy statement. *See, e.g., Alexander v. Centrafarm Group, N.V.* 124 F.R.D. 178, 186 (N.D. Ill 1988); *Koppel v. 4987 Corp.*, 191 F.R.D. 360, 369 n.12; *Tracinda Corp v. DaimlerChrysler AG*, 216 F.R.D. 291, 301 (D. Del. 2003).

Indeed, the Proxy Statement notice entitled J.P. Morgan "common stockholders of record at the close of business on April 2, 2004" to vote on the merger. In converse to the proxy statement, Plaintiffs' Complaint defined the putative Class as:

> ... all persons ..., who held shares of the common stock of J.P. Morgan Chase, either on April 2, 2004 (the record date for voting at the May 25, 2004 shareholder meeting), or at any time from April 19, 2004 (the date of the proxy statement associated with such meeting (the "Proxy Statement")) through July 1, 2004, (the date on which the Company consummated a merger with Bank One Corporation ("Bank One")),

Comp. ¶ 1. Thus, extending the class to include members who held shares from the date the proxy statement was issued to the date the merger was consummated.

Standing to sue, even in class actions, is determined at the time the suit is filed. *See Walters v. Edgar*, 163 F.3d 430, 432-33 (7th Cir. 1998)("Certification of a class action comes after the suit is filed, so if the named plaintiffs lacked standing when they filed the suit ... there was no case when class certification was sought."). There is no issue that members who held shares on April 2, 2004 have standing to bring this claim pursuant to *Section 14(a)* and Rule 14a-9. The question remains whether *Section 14(a)* and Rule 14a-9, which mandate the proxy solicitation process and prohibit the selection of proxies by means of materially false or misleading statements, provide causes of action for shareholders with no voting rights.

*Section 14(a)* of the Exchange Act provides that:

> It shall be unlawful for any person, by use of the mails ... or otherwise ... to solicit or permit the use of his name to solicit any proxy or consent or

15

authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of the title.

15 U.S.C. § 78n(a). Rule 14a-9 prohibits the solicitation of a shareholder's vote by means of a proxy statement that "is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . ." *17 C.F.R. § 240.14a-9*. The *AOL Time Warner* court reasoned that *Section 14a's* focus on the proxy solicitation process reflects the statute's intent to protect only the shareholder's having voting rights. *In re AOL Time Warner, Inc.*, 2004 U.S. Dist. Lexis 7917 at 125 (citing *7547 Corporation v. Parker & Parsley*, 38 F.3d 211, 229-30 (4th Cir. 1994); Hazen, The Law of Securities Regulation § 11.3 (3d ed. 1995)("Since the proxy regulations are designed to protect shareholder voting rights, standing should be limited to shareholders who had the right to vote."). This Court agrees with the District Court's approach in *AOL Time Warner, Inc.* Accordingly, this Court finds that only common stockholders of record who held J.P. Morgan stock on April 2, 2004 the record date for voting on the merger, have standing to bring this private action under *Section 14(a)*.

## CONCLUSION

For the reasons set forth above, Defendant Harrison's motion to dismiss is DENIED in part and Granted in Part. Plaintiff Blau is ordered to file an Amended Complaint consistent with this opinion.

IT IS SO ORDERED.

_3/24/06_
Dated

The Honorable William J. Hibbler
United States District Court