BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

---------------------------------- x
                                   :
IN RE J.P. MORGAN CHASE & CO.      :   MDL No. 1783
SECURITIES LITIGATION              :
                                   :
                                   :
---------------------------------- x

**DEFENDANTS' MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S MOTION FOR TRANSFER OF ACTIONS TO THE DISTRICT OF DELAWARE FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407**

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Counsel for Defendants*

OF COUNSEL:

Nancy E. Schwarzkopf
JPMORGAN CHASE LEGAL DEPARTMENT
1 Chase Manhattan Plaza, 26th Floor
New York, New York 10081
(212) 552-3585
*Counsel for JPMorgan Chase & Co.*

Julie Lepri
JPMORGAN CHASE LEGAL DEPARTMENT
10 South Dearborn, 11th Floor
Chicago, Illinois 60603
(312) 732-7354
*Counsel for JPMorgan Chase & Co.*

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-3712
*Counsel for J.P. Morgan Securities Inc.
and Individual Defendants*

SIDLEY AUSTIN LLP
1 South Dearborn
Chicago, Illinois 60603
(312) 853-7000
*Counsel for Defendants*

Dated: May 4, 2006

## TABLE OF CONTENTS

                                                              **Page**

TABLE OF AUTHORITIES ............................................................................................ ii

BACKGROUND ............................................................................................................. 1

ARGUMENT .................................................................................................................. 3

CONCLUSION ............................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re Ace Ltd. Sec. Litig.*,
    370 F. Supp. 2d 1353 (J.P.M.L. 2005)..................................................................7

*In re Air Crash Disaster Near Chicago*,
    476 F. Supp. 445 (J.P.M.L. 1979).........................................................................7

*In re Amoxicillan Patent & Antitrust Litig.*,
    449 F. Supp. 601 (J.P.M.L. 1978).........................................................................4

*In re Ascot Oils, Inc. Sec. Litig.*,
    433 F. Supp. 1118 (J.P.M.L. 1977).......................................................................4

*In re Cessna 208 Series Aircraft Prods. Liab. Litig*,
    408 F. Supp. 2d 1349 (J.P.M.L. 2005)..................................................................6

*In re Circular Thermostat Antitrust Litig.*,
    370 F. Supp. 2d 1355 (J.P.M.L. 2005)..................................................................7

*In re Clark Oil & Refining Corp. Antitrust Litig.*,
    364 F. Supp. 458, 459 (J.P.M.L. 1973)................................................................4

*In re Comm. Money Ctr. Inc. Equip. Lease Litig.*,
    229 F. Supp. 2d 1379 (J.P.M.L. 2002)..................................................................7

*In re Compression Labs, Inc., Patent Litig.*,
    360 F. Supp. 2d 1367 (J.P.M.L. 2005)..................................................................7

*In re Delphi Corp. Sec., Deriv., & ERISA Litig.*,
    403 F. Supp. 2d 1358 (J.P.M.L. 2005)..................................................................6

*In re Doral Fin. Corp. Sec. Litig.*,
    398 F. Supp. 2d 1369 (J.P.M.L. 2005)..................................................................7

*In re ETS 7-12 Test Scoring Litig.*,
    350 F. Supp. 2d 1363 (J.P.M.L. 2004)..................................................................7

*In re First Nat'l Bank, Heavener, Okla. Sec. Litig.*,
    451 F. Supp. 995 (J.P.M.L. 1978).........................................................................4

*In re Gator Corp. Software Trademark & Copyright Litig*,
    259 F. Supp. 2d 1378 (J.P.M.L. 2003)..................................................................7

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*,
   398 F. Supp. 2d 1371 (J.P.M.L. 2005) ................................................................. 7

*In re IBM Antitrust Litig.*,
   302 F. Supp. 796 (J.P.M.L. 1969) ..................................................................... 4-5

*In re Insulin Mfg. Antitrust Litig.*,
   487 F. Supp. 1359 (J.P.M.L. 1980) ...................................................................... 5

*In re Inter-Op Hip Prosthesis Prods. Liab. Litig.*,
   149 F. Supp. 2d 931 (J.P.M.L. 2001) ................................................................... 7

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
   No. 531-N, 2005 Del. Ch. LEXIS 51 (Del. Ch. Apr. 29, 2005)
   *aff'd*, No. 218, 2005, 2006 Del. LEXIS 124 (Del. Mar. 8, 2006) ................. 1-2, 8

*In re Laughlin Prods., Inc., Patent Litig.*,
   240 F. Supp. 2d 1358 (J.P.M.L. 2003) ................................................................. 7

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
   102 F.3d 1524 (9th Cir. 1996) .............................................................................. 6

*In re Oxycontin Antitrust Litig.*,
   314 F. Supp. 2d 1388 (J.P.M.L. 2004) ................................................................. 6

*In re Scotch Whiskey*,
   299 F. Supp. 543 (J.P.M.L. 1969) ..................................................................... 3-4

*In re Sears, Roebuck & Co.*,
   381 F. Supp. 2d 1383 (J.P.M.L. 2005) ................................................................. 6

*In re Xybernaut Corp. Sec. Litig.*,
   403 F. Supp. 2d 1354 (J.P.M.L. 2005) ................................................................. 6

**STATUTES**

28 U.S.C. § 1407 (2006) ................................................................................... 3, 5

## BACKGROUND

On January 14, 2004, JPMorgan Chase & Co. ("JPMC") and Bank One Corp. ("Bank One") announced that they had agreed to a business combination following the unanimous approval of their respective Boards of Directors. The agreement provided that Bank One shareholders would receive a premium that, based on the share price on the date of the agreement, amounted to approximately $7 billion. The companies also announced that JPMC's CEO and Chairman, William B. Harrison, Jr., would continue to hold those positions for two years following the merger and that Bank One's CEO, James Dimon, would serve as President and COO and would succeed Mr. Harrison as CEO within two years, as he did.

Shortly before the merger was scheduled to close, the *New York Times* published a feature article on the merger, which included the following two sentences:

> During the negotiations with Mr. Dimon, [Mr. Harrison] fought hard to give himself the two extra years, to secure a smooth transition, although he may have cost J.P. Morgan shareholders extra money in doing so. Mr. Dimon, always the tough deal maker, offered to do the deal for no premium if he could become chief executive immediately, according to two people close to the deal.

Landon Thomas Jr., "The Yin, the Yang[,] and the Deal," N.Y. TIMES, June 27, 2004, § C at 3-4. (A copy of the entire article is attached as Appendix A.) The *Times* did not elaborate on the claim or name its sources. Within a week, a trio of complaints were filed in the Delaware Court of Chancery accusing JPMC's Board of Directors of breaching its fiduciary duty to shareholders in declining the alleged "offer" to merge at no premium in exchange for replacing JPMC's CEO.

These complaints were dismissed for failure to state a claim. *See In re J.P. Morgan Chase & Co. S'holder Litig.*, No. 531-N, 2005 Del. Ch. LEXIS 51 (Del. Ch.

Apr. 29, 2005), *aff'd*, No. 218, 2005, 2006 Del. LEXIS 124 (Del. Mar. 8, 2006). But they found new life in two federal complaints which cut-and-pasted the key allegations of the dismissed state complaints while asserting disclosure claims under the federal securities laws instead of Delaware law. The first of these, *Blau v. Harrison*, No. 04-6592, was filed in the Northern District of Illinois on October 13, 2004 and asserted a proxy-disclosure claim under §14(a) of the Securities Exchange Act. Five months later, movant Samuel Hyland filed a complaint, *Hyland v. Harrison*, No. 05-0162 (hereinafter "*Hyland I*"), in the District of Delaware, later amending the complaint to add plaintiff Stephanie Speakman. Hyland and Speakman were conditionally appointed lead plaintiffs in *Hyland I*; plaintiff Stephen Blau received the identical designation in the Northern District of Illinois action.

Hyland and Speakman never moved for lead-plaintiff status in the Illinois case, but did contest the Northern District of Illinois's appointment of Blau. In response, Blau filed a motion to intervene in the District of Delaware for the purpose of staying *Hyland I* and continuing to litigate in Illinois. Hyland and Speakman parried with a motion asking the District of Delaware to enjoin the litigation in Illinois. The District of Delaware granted Blau's motion to intervene and stayed *Hyland I* pending adjudication of the *Blau* action. *Hyland v. Harrison*, No. 05-0162, 2006 U.S. Dist. LEXIS 5744 at *22 (D. Del. Feb. 7, 2006). *Hyland I* was then administratively closed by Order of the Court dated February 9, 2006.

Two months later, Hyland filed another action based on the same facts as *Hyland I* and *Blau*, but this time naming as defendant J.P. Morgan Securities Inc., a subsidiary of JPMC and the investment bank that advised JPMC and provided a fairness

opinion with respect to the merger. *See Hyland v. J.P. Morgan Securities Inc.*, No. 06-0224 (D. Del.) (hereinafter "*Hyland II*"). Hyland presently seeks centralization of *Hyland I*, *Hyland II*, and *Blau* by this Panel. Blau has responded to the new action by filing a motion in the District of Delaware requesting that the Court enforce its February 7 Stay Order by finding the filing of *Hyland II* in contravention of the Stay Order or, alternatively, by consolidating *Hyland I* and *Hyland II*, effectively staying both. That motion is pending.

## ARGUMENT

Although it is unusual that a request for centralization pursuant to Section 1407 originates with a plaintiff, defendants agree that the actions should be centralized in a transferee Court designated by this Panel, given the factual complexity as well as the procedural friction between plaintiffs and attendant burden on defendants. The Southern District of New York, however, is a more appropriate transferee Court than movant's requested forum, the District of Delaware.

**I.    Centralization is Appropriate.**

Pursuant to the MDL statute, 28 U.S.C. § 1407(a) (2006), actions may be transferred for coordinated or consolidated pretrial proceedings when (i) they "involv[e] one or more common questions of fact," (ii) transfer will serve "the convenience of parties and witnesses," and (iii) transfer "will promote the just and efficient conduct of such actions." Here there are just three actions, including the stayed *Hyland I*.[1] In *In re Scotch Whiskey*, 299 F. Supp. 543 (J.P.M.L. 1969), the Panel discussed the circumstances

---

[1]   Movant's counsel has obliquely stated that "additional federal lawsuits are anticipated." (*See* Mem. in Support of Mot. for Centralization at 2.)

- 3 -

under which multidistrict treatment is warranted when only a minimal number of actions are implicated:

> If only one question of fact is common to two or three cases pending in different districts there probably will be no order for transfer, since it is doubtful the transfer would enhance the convenience of parties and witnesses or promote judicial efficiency. It is possible, however, that a few exceptional cases may share unusually complex questions of fact . . . (and that) substantial benefit may accrue to courts and litigants through consolidated or coordinated pretrial proceedings.

*Id.* at 544 (quoting S. Rep. 454 at 4-5). With this guidance, the Panel has consolidated as few as two actions based on the complexity of the factual issues and the anticipated burden of discovery. *See, e.g., In re Clark Oil & Refining Corp. Antitrust Litig.*, 364 F. Supp. 458, 459 (J.P.M.L. 1973) (consolidating two actions due to "the greater complexity of factual issues presented here" than in *Scotch Whiskey*); *In re Ascot Oils, Inc. Sec. Litig.*, 433 F. Supp. 1118, 1120 (J.P.M.L. 1977) (consolidating two actions that "raise numerous virtually identical questions of fact" and "share nine common defendants . . . with the discovery so time-consuming, as to justify transfer"); *In re Amoxicillan Patent & Antitrust Litig.*, 449 F. Supp. 601, 603 (J.P.M.L. 1978) (consolidating three actions "[b]ecause of the presence of complex factual questions and the strong likelihood that discovery concerning these questions will be both complicated and time-consuming"); *In re First Nat'l Bank, Heavener, Okla. Sec. Litig.*, 451 F. Supp. 995, 997 (J.P.M.L. 1978) (consolidating two actions that "arise from the same factual situation and share numerous complex questions of fact concerning the financial condition and the operation of the [securities issuer] and concerning the allegedly concerted activities of the various defendants in connection with the distribution and sale of the bonds" and noting that "[d]iscovery on these complex factual questions will be time-consuming"); *In re IBM Antitrust Litig.*, 302 F. Supp. 796, 798-99 (J.P.M.L. 1969) (consolidating three cases that

"require the exploration in depth of wide fields of both technical and economic data" which "will entail the production of a multitude of the same documents").

Here, there is no question as to the commonality of the dispositive questions of fact. The complaints are literally cut-and-pasted from one another. There is also no dispute as to the complexity of the factual issues. The pertinent question is whether "the accompanying discovery will be so time consuming as to justify transfer under Section 1407," *In re Insulin Mfg. Antitrust Litig.*, 487 F. Supp. 1359, 1361 (J.P.M.L. 1980), and all indications thus are that it will be. Indeed, on May 1, the *Blau* plaintiffs served an unusually prolix 48-part *first* request for document production on defendants that seeks all documents in any way bearing on the merger and threatens to make a witness out of any employee of either bank or their financial advisors whose work contributed to the merger. Plaintiff's counsel in each litigation will undoubtedly wish to depose (i) all twelve directors of JPMC who were Board members when the merger agreement was signed and who were named as individual defendants in *Blau* and *Hyland I*, (ii) the pre-merger directors of Bank One, and (iii) the investment advisers to the merging corporations and their counsel in the acquisition.[2] In addition to being extensive, the document production and pertinent economic data will be identical in each case. Yet, without coordination or consolidation, the procedural tug-of-war between plaintiffs will, undoubtedly, lead to duplication of large scale document-production efforts and multiple depositions, as well as differing rounds of pre-trial briefing on, for example, discovery issues, that could lead to inconsistent discovery obligations for the defendants and their witnesses.

## II. The Southern District of New York Is the Most Appropriate Transferee Forum.

"[I]n multidistrict litigation cases concerns for judicial economy trump the usual deference to a plaintiff's choice of forum." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 102 F.3d 1524, 1532 (9th Cir. 1996). This Panel customarily designates an appropriate forum based on the following factors:

- The district in which a common defendant is headquartered, *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, 408 F. Supp. 2d 1349, 1350 (J.P.M.L. 2005); *In re Xybernaut Corp. Sec. Litig.*, 403 F. Supp. 2d 1354, 1355 (J.P.M.L. 2005); *In re Sears, Roebuck & Co.*, 381 F. Supp. 2d 1383, 1384 (J.P.M.L. 2005), or maintains its principal place of business. *In re Delphi Corp. Sec., Deriv., & ERISA Litig.*, 403 F. Supp. 2d 1358, ___ (J.P.M.L. 2005); *In re Oxycontin Antitrust Litig.*, 314 F. Supp. 2d 1388, 1390 (J.P.M.L. 2004). **JPMC and JPMSI are both headquartered and have their principal places of business in New York.**

- The district "likely to be the location of significant discovery," *Cessna*, 408 F. Supp. 2d at 1350, or "a likely source of relevant documents and witnesses." *Xybernaut*, 403 F. Supp. 2d at 1355; *Sears*, 381 F. Supp. 2d at 1384. Here, movant avers that "almost all" parties (Mot. ¶ 8) and "practically every witness" (Mem. at 6) reside in New York. (This is overstated; the accompanying affidavit of Anthony Horan, Secretary to JPMC's Board of Directors, identifies the six individual defendants with offices and/or residences in New York. *See* Horan Aff. ¶ 2.) All current directors of JPMC, including those who were pre-merger directors of Bank One and thus likely witnesses, travel to New York seven times annually for Board meetings. (*See* Horan Aff. ¶ 4.) Movant also concedes that all of the anticipated non-party witnesses so far identified have their respective offices "located in Manhattan." (Mem. at 6-7.) **Relevant documents are most likely to be located in New York or Chicago, where each pre-merger bank maintained their central business operations and where the respective CEOs who negotiated the merger on their banks' behalves worked and resided.**

---

2   Movant's supporting memorandum identifies as prospective witnesses seven investment bankers and twelve lawyers.

- The district favored by "most of the responding parties." *In re Doral Fin. Corp. Sec. Litig.*, 398 F. Supp. 2d 1369, 1370 (J.P.M.L. 2005). **With the instant response, the Southern District of New York is favored by fifteen of the eighteen parties to the various litigations.**

- The district convenient to counsel. *In re Air Crash Disaster Near Chicago*, 476 F. Supp. 445, 449 n.4 (J.P.M.L. 1979). **Here, all parties except Mr. Hyland and Ms. Speakman are represented by law firms or in-house lawyers with their primary offices in New York. The plaintiff's lawyer who argued a motion for reconsideration in the *Blau* action just last week (on April 26) is based in New York.**

- The district having an "accessible" and "metropolitan" location. *E.g., In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 398 F. Supp. 2d 1371 (J.P.M.L. 2005); *In re Circular Thermostat Antitrust Litig.*, 370 F. Supp. 2d 1355 (J.P.M.L. 2005); *In re Ace Ltd. Sec. Litig.*, 370 F. Supp. 2d 1353 (J.P.M.L. 2005); *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371 (J.P.M.L. 2005); *In re Compression Labs, Inc., Patent Litig.*, 360 F. Supp. 2d 1367 (J.P.M.L. 2005); *In re ETS 7-12 Test Scoring Litig.*, 350 F. Supp. 2d 1363 (J.P.M.L. 2004); *In re Gator Corp. Software Trademark & Copyright Litig.*, 259 F. Supp. 2d 1378 (J.P.M.L. 2003); *In re Laughlin Prods., Inc., Patent Litig.*, 240 F. Supp. 2d 1358 (J.P.M.L. 2003); *In re Comm. Money Ctr. Inc Equip. Lease Litig.*, 229 F. Supp. 2d 1379 (J.P.M.L. 2002); *In re Inter-Op Hip Prosthesis Prods. Liab. Litig.*, 149 F. Supp. 2d 931 (J.P.M.L. 2001). **New York is easily accessible from Delaware and Chicago, and metropolitan.**

Each factor favors assignment of these cases to the Southern District of New York. While movant's papers arguably make the case that the District of Delaware is a more sensible forum than the Northern District of Illinois, movant's arguments apply with even greater force to the Southern District of New York than to the District of Delaware. Moreover, the factors he cites uniquely in favor of Delaware are not pertinent to forum assignment. For example, movant avers that he himself resides in Delaware (Mot. ¶ 8), but if the location of one out of thousands of purported class members carries any weight, it is surely counterbalanced by movant's observation that "[t]he plaintiff in

- 7 -

the Illinois lawsuit resides in New York." (Mem. at 6.) Next, movant's assertion that "[t]he first-filed suits against most of the defendants were commenced in the Delaware Court of Chancery" (Mot. ¶ 8) is unavailing, for those suits no longer are pending, with the Delaware Supreme Court's having affirmed a dismissal for failure to state a claim. *See J.P. Morgan Chase*, 2006 Del. LEXIS 124. Finally, movant argues that "[t]here are state law claims unique to the District of Delaware actions that involve questions of Delaware common law." Each of these questions of Delaware common law is foreclosed by the judgments of the Delaware courts that there was no breach of fiduciary duty. *See J.P. Morgan Chase*, 2005 Del. Ch. LEXIS 51 at *40-*41. The action against JPMSI is not a backdoor around this ruling, for it is axiomatic that one cannot aid and abet a breach of fiduciary duty that never occurred.

New York is the clear choice for the convenience of the parties and the efficient prosecution of the litigation.

## CONCLUSION

For the reasons stated above, the litigations should be transferred to the Southern District of New York for centralized pretrial proceedings pursuant to Section 1407(a).

    Respectfully submitted,

*/s/ Michael R. Robinson*

Jesse A. Finkelstein (Del. Bar No. 1090)
Michael R. Robinson (Del. Bar No. 4452)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
finkelstein@rlf.com
robinson@rlf.com
(302) 651-7700
*Counsel for Defendants*

OF COUNSEL:

Nancy E. Schwarzkopf
JPMORGAN CHASE LEGAL DEPARTMENT
1 Chase Manhattan Plaza, 26th Floor
New York, New York 10081
(212) 552-3585
*Counsel for JPMorgan Chase & Co.*

Michael A. Cooper
Sharon L. Nelles
Keith Levenberg
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-3712
*Counsel for J.P. Morgan Securities Inc.
and Individual Defendants*

Julie Lepri
JPMORGAN CHASE LEGAL DEPARTMENT
10 South Dearborn, 11th Floor
Chicago, Illinois 60603
(312) 732-7354
*Counsel for JPMorgan Chase & Co.*

Kathleen L. Roach
Courtney A. Rosen
Matthew B. Kilby
SIDLEY AUSTIN LLP
1 South Dearborn
Chicago, Illinois 60603
(312) 853-7000
*Counsel for Defendants*

May 4, 2006