# TAB 5

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1

Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Barry PINKOWITZ, on behalf of himself and all
others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donald Geaney,
John Groom, Thomas Lynch, Shane Cooke,
William Clark, Kmpg LLP, Defendants.
Gan ISRAEL, Mercaz Chabad, individually and on
behalf of all others similarly situated, Plaintiffs,
v.
ELAN CORPORATION PLC, Donal J. Geaney,
Thomas Lynch, Shane Cooke, Defendants.
EZRA BIRNBAUM CHARITABLE TRUST, on
behalf of itself and all others similarly situated,
Plaintiff,
v.
ELAN CORPORATION PLC, Donal J. Geaney,
Shane M. Cooke, Thomas G. Lynch, Defendants.
Harold COHEN, individually and on behalf of all
others similarly situated, Plaintiff,
v.
ELAN CORPORATION PLC, Donal J. Geaney,
Thomas Lynch, Shane Cooke, Defendants.
Barbara MIRKEN, individually and on behalf of all
others similarly situated, Plaintiff,
v.
ELAN CORPORATION PLC, Donal J. Geaney,
William F. Daniel, Thomas Lynch, Defendants.
Henry HOUSMAN, on behalf of himself and all
others similarly situated, Plaintiff,
v.
ELAN CORP., PLC, Donal J. Geaney, Thomas G.
Lynch, Shane Cooke, Defendants.
Alan KAHN, on behalf of himself and all others
similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donal J. Geaney,
Thomas Lynch, Shane Cooke, Defendants.
Mark WILEN, on behalf of himself and all others
similarly situated, Plaintiff,
v.

ELAN CORPORATION, PLC, Donald Geaney,
John Groom, Thomas Lynch, Shane Cooke,
William Clark, Kmpg LLP, Defendants.
Anthony MOY, on behalf of himself and all others
similarly situated, Plaintiff,
v.
ELAN CORPORATION PLC, Donal J. Geaney,
Thomas Lynch, Shane Cooke, Defendants.
Steven C. SPRENGEL, on behalf of himself and all
others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donald Geaney,
John Groom, Thomas Lynch, Shane Cooke,
William Clark, Kmpg, LLP, Defendants.
Eliot B. GERSTEN, individually and on behalf of
all others similarly situated, Plaintiff,
v.
ELAN CORPORATION PLC, Donal J. Geaney,
Thomas Lynch, Shane Cooke, Defendants.
Jonathan SIEGEL, on behalf of himself and all
others similarly situated, Plaintiff,
v.
ELAN CORPORATION PLC, Donal J. Geaney,
Shane M. Cooke, Thomas G. Lynch, Defendants.
Michael LERNER, Dr., individually and on behalf
of all others similarly situated, Plaintiff,
v.
ELAN CORPORATION PLC, Donal J. Geaney,
Thomas Lynch, Shane Cooke, Defendants.
Mishel TEHRANI, on behalf of himself and all
others similarly situated, Plaintiff,
v.
ELAN CORPORATION PLC, Donal J. Geaney,
Shane M. Cooke, Thomas G. Lynch, Kpmg LLP,
Defendants.
Subhan LAKHANI, on behalf of himself and all
others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donald Geaney,
John Groom, Thomas Lynch, Shane Cooke,
William Clark, Kmpg LLP, Defendants.
James EISDORFER, Dr., individually and on behalf
of all others similarly situated, Plaintiff,
v.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ELAN CORPORATION, PLC, Donal J. Geaney, William F. Daniel, Thomas Lynch, Shane Cooke, Defendants.
Joseph A. NOWAK, on behalf of himself and all others similarly situated, Plaintiff,
v.
ELAN CORPORATION, Donald Geaney, John Groom, Thomas Lynch, Shane Cooke, William Clark, Kmpg L.L.P., Defendants.
ABE SIEGEL TRUSTEE U/W/O BEATRICE CLAIRE ROSENBERG, On behalf of the trust and all other similarly situated; Plaintiff,
v.
ELAN CORPORATION, PLC, Donal J. Geaney, Shane M. Cooke, Thomas G. Lynch, Defendants.
Gerald CHERNEKOFF, on behalf of himself and all others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donald Geaney, John Groom, Thomas Lynch, Shane Cooke, William Clark, Kmpg LLP, Defendants.
Jerry KRIM, on behalf of himself and all others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donal J. Geaney, Shane M. Cooke, Thomas G. Lynch, Defendants.
James C. KRAUSE, Custodian, James C. Krause Retirement Account, On behalf of Itself and all others similarly situated, Plaintiffs,
v.
ELAN CORPORATION, Donald Geaney, John Groom, Thomas Lynch, Shane Cooke, William Clark, Kmpg L.L.P., Defendants.
James GALLAI, Individually and on behalf of all others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donal J. Geaney, John Groom, Thomas Lynch, Shane Cooke, Defendants.
Lewis D. BAKER, Individually and on behalf of all others similarly situated, Plaintiff,
v.
ELAN CORPORATION, Donal J. Geaney, William F. Daniel, Thomas Lynch, Defendants.
Judith WHEELOCK, on behalf of herself and all others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donal J. Geaney, Shane M. Cooke, Thomas G. Lynch, Defendants.
Joel POMERANTZ, Individually and on behalf of himself and all others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donal J. Geaney, Thomas Lynch, Shane Cooke, Defendants.
Vanessa VAJDOS, on behalf of herself and all others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donald Geaney, John Groom, Thomas Lynch, Shane Cooke, William Clark, Kmpg LLP, Defendants.
Daniel A. KLEIN, on behalf of himself and and all others similarly situated, Plaintiff,
v.
ELAN CORP., PLC, Donal J. Geaney, Thomas G. Lynch, Shane Cooke, Defendants.
Grace T. POPE, individually and as trustee of the trust Harry H. Pope Living Trust No. 1, Elizabeth A. Mueller, and all others similarly situated, Plaintiffs,
v.
ELAN CORPORATION, PLC, Donal J. Geaney, William P. Daniel, Thomas Lynch, Defendants.
William M. CURTIS, on behalf of himself and all others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donal J. Geaney, Shane M. Cooke, Thomas G. Lynch, Defendants.
Dale M. DODD, Trustee of the Dale M. Dodd, D.O., Inc. Money Purchase Pension Plan, and all others similarly situated, Michael Pennock, Randy Spokane, Plaintiffs,
v.
ELAN CORPORATION, PLC, Donal J. Geaney, William F. Daniel, Thomas G. Lynch, Defendants.
Eli FRUCHTER, Plaintiff,
v.
ELAN CORPORATION, PLC, Donal J. Geaney, Shane M. Cooke, Thomas G. Lynch, Defendants.
Michael SHENIAK, on behalf of himself and all others similarly situated, Plaintiff,
ELAN CORPORATION, PLC, Donal J. Geaney, Shane M. Cooke, Thomas G. Lynch, Defendants.
Stanley W. HARRIS, on behalf of himself and all others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donal J. Geaney, Shane M. Cooke, Thomas G. Lynch, Defendants.
**No. 02 CIV. 865(WK), 02 CIV. 871(WK), 02**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

CIV. 892(WK), 02 CIV. 907(WK), 02 CIV.
928(WK), 02 CIV. 930(WK), 02 CIV. 943(WK),
02 CIV. 949(WK), 02 CIV 4948(WK).

July 29, 2002.

Putative class actions were brought against
corporation, certain officers and directors, and, in
some actions, against corporation's auditor and
principal accountant, alleging securities fraud
claims. Putative class members moved to
consolidate the actions. The District Court, Knapp,
Senior District Judge, held that consolidation of the
actions would be proper.

Motion granted.

West Headnotes

**Federal Civil Procedure 170A ☞8.1**

170A Federal Civil Procedure
  170AI In General
    170AI(A) In General
      170Ak8 Consolidation of Actions
        170Ak8.1 k. In General. Most Cited
Cases
Consolidation of securities fraud putative class
actions against corporation, certain of corporation's
officers and directors, and, in some actions,
corporation's auditor and principal accountant
would be proper; no putative class members
opposed consolidation, common questions of fact
suffused the actions, and common questions of
law permeated the actions, although the actions did not
agree on precise confines of class period and some
actions asserted claims in addition to those raised in
common questions of law. Fed.Rules Civ.Proc.Rule
42(a), 28 U.S.C.A.

Fred Taylor Isquith, Esq., Gregory M. Nespole, Esq.
, Gustavo Bruckner, Esq., Wolf, Haldenstein, Adler,
Freeman & Herz, L.L.P., New York, for Plaintiff
Barry Pinkowitz.
Stephen D. Oestreich, Esq., Slotnick, Shapiro &
Crocker, L.L.P., Ira M. Press, Esq., Kirby,
McInerney & Squire, L.L.P., New York, Lionel Z.
Glancy, Esq., Michael M. Goldberg, Esq., Glancy

& Binkow LLP, Los Angeles, CA, Mark C. Grady,
Esq., Nancy Kaboolian, Esq., Abbey, Gardy,
L.L.P., New York, for Plaintiffs Gan Israel and
Mercaz Chabad.
Robert J. Berg, Esq., Mel E. Lifshitz, Esq., Gregory
M. Egleston, Esq., Bernstein, Liebhard, & Lifshitz,
L.L.P., New York, for Plaintiff Ezra Birnbaum
Charitable Trust.
Nadeem Faruqi, Esq., Faruqi & Faruqi, L.L.P, New
York, Marc A. Topaz, Esq., Schiffrin & Barroway,
L.L.P., Bala Cynwyd, PA, Nancy Kaboolian, Esq.,
Mark C. Gardy, Esq., Abbey, Gardy, L.L.P., New
York, for Plaintiff Harold Cohen.
Robert N. Kaplan, Esq., Joel B. Strauss, Esq.,
Frederic S. Fox, Esq., Kaplan, Fox & Kilsheimer,
L.L.P., New York, for Plaintiff Barbara Mirken.
Neil L. Selinger, Esq., Lowey, Dannenberg,
Bemporad & Selinger, P .C., White Plains, for
Plaintiff Henry Housman.
Marian P. Rosner, Esq., Robert C. Finkel, Esq.,
Wolf, Popper, L.L.P., New York, for Plaintiff Alan
Kahn.
Joseph H. Weiss, Esq., Weiss & Yourman, New
York, for Plaintiff Mark Wilen.
Samuel P. Sporn, Esq., Joel P. Laitman, Esq., Jay P.
Saltzman, Esq., Ashley Kim, Esq., Schoengold &
Sporn, P.C., New York, for Plaintiff Anthony Moy.
Fred Taylor Isquith, Esq., Gregory M. Nespole, Esq.
, Gustavo Bruckner, Esq., Wolf, Haldenstein, Adler,
Freeman & Herz, L.L.P., New York, Marvin A.
Miller, Esq., Miller, Faucher and Cafferty, L.L.P.,
Chicago, IL, for Plaintiff Steven C. Sprengel.
Ira M. Press, Esq., Pamela E. Kulsrud, Esq., Kirby,
McInerney & Squire, L.L.P., New York, Andrew
M. Schatz, Esq., Jeffrey S. Nobel, Esq., Patrick A.
Klingman, Esq., Wayne T. Boulton, Esq., Schatz &
Nobel, P.C., Hartford, CT, for Plaintiff Eliot B.
Gersten.
Marc I. Gross, Esq., Gregory B. Linkh, Esq.,
Pomerantz, Haudek, Block, Grossman & Gross,
L.L.P., David Jaroslawicz, Esq., Jaroslawicz and
Jaros, L.L.P., New York, for Plaintiff Jonathan
Siegel.
John Halebia, Esq., Robert I. Harwood, Esq.,
Samuel K. Rosen, Esq. , Wechsler, Harwood,
Halebian & Feffer, L.L.P., New York, for Plaintiff
Dr. Michael Lerner.
Fred Taylor Isquith, Esq., Gregory M. Nespole, Esq.
, Gustavo Bruckner, Esq., Wolf, Haldenstein, Adler,

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

Freeman & Herz, L.L.P., New York, for Plaintiff Subhan Lakhani.

Jeffrey C. Zwerling, Esq., Richard A. Speirs, Esq., Zwerling, Schacter & Zwerling, L.L.P., New York, for Plaintiff Dr. James Eisdorfer.

Fred Taylor Isquith, Esq., Gregory M. Nespole, Esq. , Gustavo Bruckner, Esq., Wolf, Haldenstein, Adler, Freeman & Herz, L.L.P., New York, for Plaintiff Joseph A. Nowak.

Jules Brody, Stull, Stull & Brody, Joseph H. Weiss, Esq., Weiss & Yourman, New York, for Plaintiff Gerald Chernekoff.

Harvey Greenfield, Esq., New York, for Plaintiff Jerry Krim.

Jonathan M. Plasse, Esq., Goodkind, Labaton, Rudoff & Sucharow, L .L.P., New York, for Plaintiff James C. Krause and the James C. Krause Retirement Account.

Nancy Kaboolian, Esq., Mark C. Gardy, Esq., Abbey, Gardy, L.L.P., New York, for Plaintiff James Gallai.

Joel B. Strauss, Esq., Kaplan, Fox & Kilsheimer, L.L.P., New York, for Plaintiff Lewis D. Baker.

Christopher Lovell, Esq., Lovell & Stewart, L.L.P., New York for Plaintiff Judith Wheelock.

Marc S. Hunzel, Esq., Law Office of Marc S. Hunzel, Lawrence, for Plaintiff Joel Pomerantz.

Jules Brody, Esq., Aaron Lee Brody, Esq., Tzivia Brody, Esq., Stull, Stull & Brody, Joseph H. Weiss, Esq., Weiss & Yourman, New York, for Plaintiff Vannessa Vajdos.

Joe D. Jacobson, Esq., Martin M. Green, Esq., Jonathan F. Andres, Esq., Green, Schaaf & Jacobson, Donald H. Clooney, Esq., Clooney & Anderson, St. Louis, MO, for Plaintiffs Grace T. Pope and Elizabeth Mueller.

William S. Lerach, Esq., Milberg, Weiss, Bershad, Hynes and Lerach, San Diego, CA, for Plaintiff William Curtis.

Kenneth J. Catanzarite, Esq., Catanzarite Law Corporation, Anaheim, CA, for Plaintiff Dale M. Dodd.

Tracy L. Thrower, Esq., Glancy & Binkow LLP, Los Angeles, CA, Kenneth J. Catanzarite, Esq., Catanzarite Law Corporation, Anaheim, CA, for Plaintiffs Michael Pennock and Randy Spokane.

William S. Lerach, Esq., Milberg, Weiss, Bershad, Hynes and Lerach, San Diego, CA, for Plaintiff Eli Fruchter.

William S. Lerach, Esq., Milberg, Weiss, Bershad, Hynes and Lerach, San Diego, CA, for Plaintiff Michael Sheniak.

Walter F. Spath, III, Esq., Jeffrey Krisnk, Esq., Finkelstein & Krinsk, San Diego, CA, for Plaintiff Stanley Harris.

Daniel A. Osborn, Esq., Beatie and Osborn, L.L.P., New York, for Plaintiff Mishel Tehrani.

Gregory B. Linkh, Esq., Marc I. Gross, Esq., Pomerantz Haudek Block Grossman & Gross LLP, New York, for Plaintiff Abe Siegel Trustee U/W/O BeatriceClaire Rosenberg.

William G. Caldes, Esq., Spector, Roseman & Kodroff, P.C., Philadelphia, PA, Steve G. Schulman, Esq., Samuel H. Rudman, Esq., Milberg Weiss Bershad Hynes & Lerach LLP, New York, Carol V. Gilden, Esq., Michael E. Moskovitz, Esq., Much, Shelist, Freed, Denenberg, Ament & Rubenstein, P.C., Chicago, IL, Daniel R. Karon, Esq., Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for Plaintiff Daniel A. Klein.

William S. Lerach, Esq., Helen J. Hodges, Esq., Travid E. Downs, Esq., Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, Samuel H. Rudman, Esq., Andrei Rado, Esq., Milberg Weiss Bershad Hynes & Lerach LLP, New York, for S & T Investment Company.

Frederic S. Fox, Esq., Kaplan Fox & Kilsheimer LLP, New York, for Gregory Van Kipnis.

Marc I. Gross, Esq., Murielle J. Stevens, Esq., Pomerantz Haudek Block Grossman & Gross LLP, New York, for Dr. Norman Lefkovtiz.

Rick Bemporad, Esq., Neil L. Selinger, Esq., Lowey Dannenberg Bemporad & Selinger, P.C., White Plains, Sherrie R. Savett, Esq., Barbara A. Podell, Esq., Douglas M. Risen, Esq., Berger & Montague, P.C., Philadelphia, PA, for William Browning and Christopher Tighe.

Ira M. Press, Esq., Pamela E. Kulsrud, Esq., Kirby McInerney & Squire, LLP, New York, Kenneth J. Catanzarite, Esq., Catanzarite Law Corporation, Anaheim, CA, Lionel Z. Glancy, Esq., Michael Goldberg, Esq., Glancy & Binkow, LLP, Los Angeles, CA, for The" Lipsome/Dura Plaintiffs Group".

Jules Brody, Esq., Aaron Brody, Esq., Stull, Stull & Brody, New York, for The" Schutt Lead Plaintiffs" Group.

Jaculin Aaron, Esq., Shearman & Sterling, New

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

York, for Defendant Elan Corporation.

## MEMORANDUM & ORDER

KNAPP, Senior District J.

*1 Before this Court are currently thirty-three securities fraud class actions against Elan Corporation, PLC (hereinafter "Elan") as well as certain of its officers and directors. A number of these class actions are also directed against KPMG LLP (hereinafter "KMPG"), which allegedly served as Elan's auditor and principal accountant during the relevant period addressed by the class actions.

Putative class members S & T Investment Company, First Winchester Investments Limited, Bank Gutmann, the City of Monroe Employees' Retirement System, Fox Asset Management, Gregory Van Kipnis, William Browning, Christopher Tighe, Ruth Bonholzer, Julian Davis, Judith Farah, Leonard Schutt, Vanessa Vajdos, Gary Zimmerman, and Norman Lefkovitz move this Court to consolidate these class actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. For the reasons set forth below, we GRANT their motions for consolidation.

> FN1. Putative class members S & T Investment Company, First Winchester Investments Limited, Bank Gutmann, and the City of Monroe Employees' Retirement System initially moved the United States District Court for the Southern District of California to consolidate a number of the above-captioned class actions while those actions were still pending before that court. However, as those cases have since been transferred to this district and accepted as related, we treat their motion, filed with the district court in California, as a motion to consolidate the actions before this Court.

## BACKGROUND

On February 4, 2002, Barry Pinkowitz ("Pinkowitz") filed a class action in this Court against: (a) Elan, an Irish pharmaceutical company allegedly engaged in the discovery, development, and marketing of products in diverse therapeutic areas; (b) Donald

Geaney ("Geaney"), Elan's Chairman and Chief Executive Officer; (c) John Groom ("Groom"), Elan's President and Chief Operating Officer; (d) Thomas Lynch ("Lynch"), Elan's Vice-Chairman; (e) Shane Cooke ("Cooke"), Elan's Chief Financial Officer; (f) William Clark ("Clark"), the President of Elan's pharmaceutical operations; and (g) KPMG, Elan's auditor and principal accountant during the relevant period addressed by the class action. Pinkowitz alleges that these defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), as well as Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.

> FN2. Although Pinkowitz refers to the Chairman of Elan as "Donald Geaney," the vast majority of the class actions refer to him "Donal Geaney." As Pinkowitz's lawsuit was the first-filed action in this district and would remain the Master File in the wake of any consolidation, we will continue to refer to the Chairman of Elan as "Donald Geaney" until the parties have an opportunity to provide his correct name.

After Pinkowitz filed his Complaint, the following class actions were filed in this district and accepted by this Court as related to the *Pinkowitz* action: *Birnbaum v. Elan Corp.*, No. 02 Civ. 892; *Mirken v. Elan Corp.*, No. 02 Civ. 928; *Kahn v. Elan Corp.*, No. 02 Civ. 943; *Wilen v. Elan Corp.*, No. 02 Civ. 949; *Moy v. Elan Corp.*, No. 02 Civ. 970; *Sprengel v. Elan Corp.*, No. 02 Civ. 986; *Siegel v. Elan Corp.*, No. 02 Civ. 1021; *Lerner v. Elan Corp.*, No. 02 Civ. 1042; *Lakhani v. Elan Corp.*, No. 02 Civ. 1107; *Eisdorfer v. Elan Corp.*, No. 02 Civ. 1144; *Nowak v. Elan Corp.*, No. 02 Civ. 1152; *Chernekoff v. Elan Corp.*, No. 02 Civ. 1358; *Krim v. Elan Corp.*, No. 02 Civ. 02 Civ. 1611; *Krause v. Elan Corp.*, No. 02 Civ. 1616; *Baker v. Elan Corp.*, No. 02 Civ. 1858; *Pomerantz v. Elan Corp.*, No. 02 Civ.1903; *Vajdos v. Elan Corp.*, No. 02 Civ.1911; *Pope v. Elan Corp.*, No. 02 Civ. 4231; *Dodd v. Elan Corp.*, No. 02 Civ. 4312; *Fruchter v. Elan Corp.*, No. 02 Civ. 4313; *Sheniak v. Elan Corp.*, No. 02 Civ. 4314; and *Harris v. Elan Corp.*, No. 02 Civ. 4948. The following related class actions were

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

also filed in this district, initially assigned to either Judge Buchwald, Judge Cedarbaum, Judge Kaplan, or Judge Sweet, and have, upon our consent, since been transferred to this Court as related: *Israel v. Elan Corp.,* No. 02 Civ. 871(RWS); *Cohen v. Elan Corp.,* No. 02 Civ. 907(RWS); *Housman v. Elan Corp.,* No. 02 Civ. 930(RWS); *Gersten v. Elan Corp.,* No. 02 Civ. 1005(RWS); *Tehrani v. Elan Corp.,* No. 02 Civ. 1096(NRB); *Gallai v. Elan Corp.,* 02 Civ. 1655(RWS); *Wheelock v. Elan Corp.,* No. 02 Civ. 1890(LAK); and *Curtis v. Elan Corp.,* No. 02 Civ. 4310(MGC). In addition, Judge Koeltl's chambers have informed us that Judge Koeltl intends to transfer two related class actions, *Abe Siegel Trustee v. Elan Corp.,* No. 02 Civ. 1306(JGK), and *Klein v. Elan Corp.,* No. 02 Civ. 3746(JGK), to this Court shortly.

**\*2** In the interim, putative class members S & T Investment Company, First Winchester Investments Limited, Bank Gutmann, the City of Monroe Employees' Retirement System, Fox Asset Management, Gregory Van Kipnis, William Browning, Christopher Tighe, Ruth E. Bonholzer, Julian Davis, Judith F. Farah, Leonard D. Schutt, Vanessa Vajdos, Gary Zimmerman, and Norman Lefkovitz have moved this Court to consolidate the foregoing class actions. A number of these putative class members have also sought, in accordance with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, to be appointed Lead Plaintiff and to have their chosen law firms appointed Lead Counsel. At this time, the Court addresses only the various motions for consolidation.

> FN3. Where, as here, more than one action has been filed on behalf of a class asserting substantially the same claim or claims arising under the statutory provisions at issue in the class actions at bar and any party has sought to consolidate those actions for pretrial purposes or for trial, we may not make the determination under the PSLRA with respect to who should be appointed Lead Plaintiff and Lead Counsel "until after the decision on the motion to consolidate" is rendered. 15 U.S.C. §

78u-4(a)(3)(B)(ii).

## DISCUSSION

"Rule 42(a) of the Federal Rules of Civil Procedure empowers a trial judge to consolidate actions...when there are common questions of law or fact to avoid unnecessary costs or delay." *Johnson v. Celotex Corp.* (2d Cir.1990) 899 F.2d 1281, 1284, *cert. denied* (1990) 498 U.S. 920, 111 S.Ct. 297, 112 L.Ed.2d 250. Rule 42(a) provides:
When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

FED.R.CIV.P. 42(a). Pursuant to Rule 42(a), we have broad discretion to determine whether consolidation is appropriate. *See Johnson,* 899 F.2d at 1284. *See also Primavera Familienstiftung v. Askin* (S.D.N.Y.1997) 173 F.R.D. 115, 129 ("A district court has broad discretion to consolidate actions.")

"In the exercise of discretion, courts have taken the view that considerations of judicial economy favor consolidation." *Johnson,* 899 F.2d at 1285. Hence, " so long as any confusion or prejudice does not outweigh efficiency concerns, consolidation will generally be appropriate." *Primavera Familienstiftung,* 173 F.R.D. at 129. In fact, consolidation is common in federal securities class actions. *In re Cendant Corp. Litig.* (D.N.J.1998) 182 F.R.D. 476, 478.

In this instance, the companies and individuals moving for consolidation each assert that the actions sought to be consolidated share both factual as well as legal issues in common and that consolidation will prevent unnecessary expense and delay. No one has opposed consolidation.

Each of the class actions here is predicated on the defendants' purported misstatements and omissions (which allegedly resulted in inflated earnings and revenue) and the effect of such conduct on the price

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

of Elan's stock when the conduct came to light. Given the substantially similar allegations in each of the complaints which are the subject of the motions for consolidation at bar, common questions of fact clearly suffuse the class actions before this Court, for, as noted in *Aronson v. McKesson HBOC, Inc.* (N.D.Cal.1999) 79 F.Supp.2d 1146, 1150, "[i]t seems obvious that...separate class actions predicated on the same set of misstatements by corporate officials, causing an artificial inflation and then a corrective drop in share prices, present common questions of fact."

**\*3** Common questions of law also permeate the above-captioned class actions. All but one of the foregoing class actions asserts that the defendants' purportedly wrongful conduct violates Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder. These claims alone will raise the same set of questions in each such case. *See Switzenbaum v. Orbital Sciences Corp.* (E.D.Va.1999) 187 F.R.D. 246, 248 ("the 10b-5 claims alone will raise the same set of questions in each case, such as (1) whether the Defendants made a false or misleading statement of material fact, or failed to disclose a material fact under circumstances giving rise to a duty to disclose; (2) whether they did so with scienter; (3) whether the Plaintiffs justifiably relied on these material omissions; and (4) whether the Defendants' acts or omissions and the Plaintiffs' reliance thereon proximately caused them harm.")

> FN4. In *Dodd v. Elan Corp.,* No. 02 Civ. 4312, the plaintiff does not assert claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 or Rule 10b-5. Rather, the plaintiff in that case brings his claims under Sections 11, 12(2), and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l(a)(2), 77o. Dodd Compl ., ¶¶ 34-48. Nonetheless, the misstatements and omissions on which the *Dodd* action is predicated implicate conduct substantially similar to that underlying the other class actions here and therefore also involve common questions

of fact. *See* FED.R.CIV.P. 42(a) (allowing for consolidation "[w]hen actions involving a common question of law *or fact* are pending before the court...") (emphasis added). Moreover, these claims (and the conduct on which they are premised) are similar to the additional claims brought by the plaintiffs in *Pope v. Elan Corp.,* No. 02 Civ. 4231, where the plaintiffs asserted, *inter alia,* causes of action under Sections 11, 12, and 15 of the Securities Act of 1933 as well as under Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934. Accordingly, we conclude that it would be proper to include the *Dodd* action among the other class actions consolidated in our order today.

Nevertheless, although common questions of fact and law bind these class actions together, the actions do diverge in a number of ways. Not every complaint agrees on the precise confines of the class period implicated by the class actions. Moreover, although almost every plaintiff in the above-captioned actions has alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the 1934 Act") as well as Rule 10b-5 promulgated thereunder, at least two plaintiffs have, in addition to such claims, alleged, *inter alia,* violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("the 1933 Act"). Finally, although each of the class actions implicates many of the same defendants, a number of the lawsuits assert claims against specific defendants who are absent from the other class actions.

> FN5. *Compare, e.g., Pinkowitz v. Elan Corp.,* No. 02 Civ. 865 (class action brought "on behalf of all persons who purchased the securities of Elan during December 21, 2000, through and including February 1, 2000"), *with Moy v. Elan Corp.,* No. 02 Civ. 970 (class action brought "on behalf of all persons who purchased the securities of Elan...on the open market during the period April 23, 2001 through and including February 3,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 8

Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

2002"), *and with Pomerantz v. Elan Corp.,* 02 Civ.1903 (class action brought on behalf of plaintiff and "all other persons who purchased the American Depository Shares...of Elan during the period from April 30, 1999 through February 4, 2002").

FN6. *See Pope v. Elan Corp.,* No. 02 Civ. 4231; *Dodd v. Elan Corp.,* No. 02 Civ. 4312.

FN7. *Compare, e.g., Pinkowitz v. Elan Corp.,* No. 02 Civ. 865 (asserting claims against Elan, Geaney, Groom, Lynch, Cooke, Clark, and KPMG), *with Israel v. Elan Corp.,* No. 02 Civ. 871 (asserting claims against Elan, Geaney, Lynch, and Cooke), *and with Eisdorfer v. Elan Corp.,* No. 02 Civ. 1144 (asserting claims against Elan, Geaney, Lynch, Cooke, and William Daniel, Elan's "Company Secretary").

However, none of these differences weigh against consolidation. "Neither Rule 42 nor the PSLRA demands that actions be identical before they may be consolidated." *In re Cendant Corp. Litig.,* 182 F.R.D. at 478. Hence, although certain class actions here name defendants not otherwise present in the other class actions, "consolidation is not barred simply because the actions to be consolidated allege claims against different parties." *Skwortz v. Crayfish Co., Ltd.* (S.D.N.Y. Sept.28, 2001) 2001 WL 1160745, *2, *reconsideration granted in part on other grounds* (S.D.N.Y. June 6, 2002) 2002 WL 1268013. *See also Werner v. Satterlee, Stephens, Burke & Burke* (S.D.N.Y.1992) 797 F.Supp. 1196, 1211 ("The fact that there are different parties in this action does not mean this case should not be consolidated.") Moreover, while particular plaintiffs may disagree on the precise confines of the relevant class period, these differences also do not preclude consolidation. *Skwortz,* 2001 WL 1160745 at *2, n. 3. *See also Mitchell v. Complete Management, Inc.* (S.D.N.Y. Sept.17, 1999) 1999 WL 728678, *2; *In re Olsten Corp. Sec. Litig.* (E.D.N.Y.1998) 3 F.Supp.2d 286, 293, *adhered to on reconsideration* (E.D.N.Y.1998) 181 F.R.D. 218. Finally, since all but one of the class actions overlap in that they

include claims under Sections 10(b) and 20(a) of 1934 Act as well as under Rule 10b-5, the mere presence of additional claims under the 1933 Act does not weigh against consolidation. *See Aronson,* 79 F.Supp.2d at 1150-1151 (consolidating various federal securities class actions despite the fact that some involved claims under the 1934 Act while others involved claims under the 1933 Act and even though certain actions were premised on transactions involving securities other than common stock); *Lax v. First Merchants Acceptance Corp.* (N.D.Ill. Aug.11, 1997) 1997 WL 461036, *1-*2 (noting that the district court had consolidated the various complaints asserting claims under the 1934 Act even though a number of them had included claims arising under the 1933 Act not found in every implicated complaint); *Werner,* 797 F.Supp. at 1210-1212 (recognizing that consolidation should not be denied merely because one complaint contains a number of different causes of action not included in another where there is at lease some measure of overlap).

FN8. We note that although the plaintiffs in *Pope v. Elan Corp.,* No. 02 Civ. 4231, have vigorously argued that the differences between their lawsuit and the other class actions should influence the choice of lead plaintiff and lead counsel, they have not argued that these differences should bar consolidation. In fact, on July 24, 2002, they submitted a proposed order which pressed for the consolidation of the *Pope* action with the other thirty-two class actions against Elan before this Court. As such, these plaintiffs themselves recognize that their additional claims under the 1933 Act do not preclude the consolidation of their action with the other class actions at bar.

*4 Accordingly, although the various class actions which are the subject of this motion for consolidation do exhibit certain differences, they involve many common questions of fact and law and the differences which do exist do not outweigh the interests of judicial economy which would be served by consolidation. As such, we agree with

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

both the movants and Elan that consolidation would
be appropriate and grant the motions for
consolidation.

### CONCLUSION

Having considered the motions for consolidation
submitted to this Court by S & T Investment
Company, First Winchester Investments Limited,
Bank Gutmann, the City of Monroe Employees'
Retirement System, Fox Asset Management,
Gregory Van Kipnis, William Browning,
Christopher Tighe, Ruth Bonholzer, Julian Davis,
Judith Farah, Leonard Schutt, Vanessa Vajdos,
Gary Zimmerman, and Norman Lefkovitz, IT IS
HEREBY ORDERED THAT:

1. The motions for consolidation are granted;

2. The following actions are hereby consolidated for
all purposes, including pretrial proceedings, trial,
and appeal, pursuant to Rule 42(a) of the Federal
Rules of Civil Procedure:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

3. The caption of these consolidated actions shall be "*In re Elan Corporation Securities Litigation* " and the files of these consolidated actions shall be maintained in one file under Master File No. 02 Civ. 865(WK). Any other actions now pending or later filed in this district which arise out of or are related to the same facts as alleged in the above-identified cases shall be consolidated for all purposes, if and when they are brought to the Court's attention.

*5 4. Every pleading in the consolidation actions, or in any separate action included herein, shall bear the following caption:

5. When a pleading is intended to be applicable to all actions governed by this Order, the words "All Actions" shall appear immediately after the words " This Document Relates To:" in the caption set out above. When a pleading is intended to be applicable to only some, but not all, of the consolidated actions, this Court's docket number for each individual action to which the pleading is intended to be applicable and the last name of the first-named plaintiff in said action shall appear immediately after the words "This Document Relates To:" in the caption described above. *E.g.,* 02 Civ. 871(WK) (Israel).

6. A Master Docket and a Master File hereby are

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

established for the above-consolidated proceedings a nd for all other related cases filed in or transferred to this Court. Separate dockets shall continue to be maintained for each of the individual actions hereby consolidated, and entries shall be made in the docket of each individual case in accordance with the regular procedures of the Clerk of this Court, except as modified by this Order.

7. When a pleading is filed and the caption shows that it is applicable to "All Actions," the Clerk of the Court shall file such pleadings on the Master File. No further copies need to be filed, and no other docket entries need be made.

8. When a pleading is filed and the caption shows that it is applicable to fewer than all of the consolidated actions, the Clerk of the Court will file such a pleading in the Master File only but shall docket such filing on the Master Docket and the docket of each applicable action.

9. When a case which properly belongs as part of *In re Elan Corporation Securities Litigation* is filed in this Court or transferred to this Court from another court and assigned to Judge Knapp, the Clerk of this Court shall:
(a) Place a copy of this Order in the separate file for such action;
(b) Mail to the attorneys for the plaintiffs in the newly-filed or transferred case a copy of this Order and direct that this Order be served upon or mailed to any new defendant(s) or their counsel in the newly-filed or transferred case; and
(c) Make an appropriate entry on the Master Docket.

This Court requests the assistance of counsel in calling o the attention of the Clerk of the Court the filing or transfer of any case which might be consolidated as part of *In re Elan Corporation Securities Litigation.*

10. A separate order will refer these consolidated actions to a Magistrate Judge for general pre-trial management as well as for reports and recommendations in accordance with 28 U.S.C. § 636(b)(1)(A) and 28 U.S.C. § 636(b)(1)(B). The various motions for the appointment of a Lead Plaintiff and a Lead Counsel will be among the

matters referred to the Magistrate Judge. However, no report and recommendation will be required for any resolution of those motions. *See generally In re First Union Corp. Sec. Litig.* (W.D.N.C.2000) 157 F.Supp.2d 638; *Chill v. Green Tree Financial Corp.* (D.Minn.1998) 181 F.R.D. 398; *In re Olsten Corp. Sec. Litig.* (E.D.N.Y.1998) 3 F.Supp.2d 286, *adhered to on reconsideration* (E.D.N.Y.1998) 181 F.R.D. 218.

**\*6** 11. The Clerk of the Court is directed to serve a copy of this Oder on all parties of record in the consolidated actions.

SO ORDERED.

S.D.N.Y.,2002.
Pinkowitz v. Elan Corp., PLC
Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:02cv00930 (Docket) (Feb. 06, 2002)
• 1:02cv00943 (Docket) (Feb. 06, 2002)
• 1:02cv00949 (Docket) (Feb. 06, 2002)
• 1:02cv00907 (Docket) (Feb. 05, 2002)
• 1:02cv00928 (Docket) (Feb. 05, 2002)
• 1:02cv00892 (Docket) (Feb. 05, 2002)
• 1:02cv00871 (Docket) (Feb. 04, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 6

Westlaw.

Not Reported in F.Supp.2d                                                Page 1

Not Reported in F.Supp.2d, 2001 WL 1160745 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

▷

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Thomas R. SKWORTZ, Individually and on behalf
of all others similarly situated, Plaintiff,
v.
CRAYFISH CO., LTD.; Isao Matsushima; Morgan
Stanley Dean Witter; Nomura Securities
International, Inc.; Merrill Lynch & Co.; and Hikari
Tsushin, Inc., Defendants.
Joshua HERSH, Individually and on behalf of all
others similarly situated, Plaintiff,
v.
CRAYFISH CO., LTD., et al., Defendants.
David MILLER, on behalf of himself and all others
similarly situated, Plaintiff,
v.
CRAYFISH CO., LTD., et al., Defendants.
Loretta GOLDSTEIN, Individually, and on Behalf
of and All Others Similarly Situated, Plaintiff,
v.
CRAYFISH CO., LTD., et al., Defendants.
Samuel COHEN, on behalf of himself and all others
similarly situated, Plaintiff,
v.
CRAYFISH CO., LTD., et al., Defendants.
Brian CHENG, On Behalf Of Himself and All
Others Similarly Situated, Plaintiff,
v.
CRAYFISH CO., LTD., et al., Defendants.
Michael A. BERNSTEIN and Manickam Ganesh,
M.D., On Behalf Of Themselves and All Others
Similarly Situated, Plaintiffs,
v.
CRAYFISH CO., LTD., et al., Defendants.
Dennis AARONS, On Behalf Of Himself and All
Others Similarly Situated, Plaintiff,
v.
CRAYFISH CO., LTD., et al., Defendants.
Jalal PASHANDI and Naveed Shams, Individually
and On Behalf of All Others Similarly Situated,
Plaintiffs,
v.

CRAYFISH CO., LTD., et al., Defendants.
Alan LAZARUS, On behalf Of Himself and All
Others Similarly Situated, Plaintiff,
v.
CRAYFISH CO., LTD., et al., Defendants.
Boban JOSE, on behalf of himself and all others
similarly situated, Plaintiff,
v.
CRAYFISH CO., LTD., et al., Defendants.
**No. 00 CIV. 6766(DAB), 00 CIV. 6978(DAB), 00
CIV. 6998(DAB), 00 CIV. 7009(DAB), 00 CIV.
7141(DAB), 00 CIV. 7250(DAB), 00 CIV.
7263(DAB), 00 CIV. 7489(DAB), 00 CIV.
7682(DAB), 00 CIV. 7939(DAB), 00 CIV.
8214(DAB).**

Sept. 28, 2001.

Ralph M. Stone, Shalov Stone & Bonner, New
York, for Thomas R. Skwortz, Plaintiff.
Lee S. Shalov, Shalov Stone & Bonner, New York,
for Josh Hersh, Plaintiff.
Steven G. Schulman, Samuel H. Rudman, Milberg
Weiss Bershad Hynes & Lerach LLP, New York,
for David Miller, Plaintiff.
Robert I. Harwood, Frederick W. Gerkens, III,
Wechsler Harwood Halebian & Feffer LLP, New
York, for Loretta Goldstein, Plaintiff.
James P. Bonner, Shalov Stone & Bonner, New
York, for Samuel Cohen, Plaintiff.
Fred Taylor Isquith, Gregory M. Nespole, Wolf
Haldenstein Adler Freeman & Herz LLP, New
York, for Brian Cheng, Plaintiff.
Jules Brody, Howard T. Longman, Stull, Stull &
Brody, New York, for Michael A. Bernstein and
Manickam Ganesh, M.D., Plaintiffs.
Fred Taylor Isquith, Gregory M. Nespole, Wolf
Haldenstein Adler Freeman & Herz LLP, New
York, for Dennis Aarons, Plaintiff.
Brian Murray, Rabin & Peckel LLP, New York, for
Jalal Pashandi and Naveed Shams, Plaintiffs.
Ira M. Press, Kirby McInerney & Squire, LLP, New
York, for Alan Lazarus, Plaintiff.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 1160745 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Stanley M. Grossman, Marc I. Gross, Patrick V. Dahlstrom, Pomerantz Haudek Block Grossman & Gross LLP, New York, for Boban Jose, Plaintiff.
Arthur M. Handler, Handler & Goodman LLP, New York, for Crayfish Co. Ltd., Defendant.
Kenneth M. Kramer, Mark McNeill, Shearman & Sterling, New York, for Morgan Stanley Dean Witter; Nomura Securities Int'l, Inc.; Merrill Lynch & Co. Defendants.
Cyrus Benson III, White & Case, New York, for Hikari Tsushin, Inc. Defendant.

### MEMORANDUM AND ORDER
BATTS, District J.
**\*1** Pending before this Court are eleven securities fraud class action lawsuits against Crayfish Co., Ltd., ("Crayfish"), certain of its officers and directors, underwriters of its common stock, and Hikari Tsushin, Inc., an alleged corporate affiliate and control person of Crayfish within the meaning of Section 15 of the Securities Act of 1933 (the "Act "). These eleven actions (the "Crayfish Actions") allege claims under Sections 11, 12(a)(2), and 15 of the Act.

> FN1. The Court has accepted the following eleven actions as related: *Skwortz v. Crayfish Co., Ltd.,* No. 00 Civ. 6766; *Hersh v. Crayfish Co., Ltd.,* No. 00 Civ. 6978; *Miller v. Crayfish Co., Ltd.,* No. 00 Civ. 6998; *Goldstein v. Crayfish Co., Ltd.,* No. 00 Civ. 7009; *Cohen v. Crayfish Co., Ltd.,* No. 00 Civ. 7141; *Cheng v. Crayfish Co., Ltd.,* No. 00 Civ. 7250; *Bernstein v. Crayfish Co., Ltd.,* No. 00 Civ. 7263; *Aarons v. Crayfish Co., Ltd.,* No. 00 Civ. 7489; *Pashandi v. Crayfish Co., Ltd.,* No. 00 Civ. 7682; *Lazarus v. Crayfish Co., Ltd.,* No. 00 Civ. 7939; and *Jose v. Crayfish Co., Ltd.,* No. 00 Civ. 8214.

Jenny Chang, Toshinko Hagawara, Toru Nakamichi, Meng Lin Sun, Leslie Helm, Dennis A. Varga, and Esther Wilhelm (collectively "Chang Plaintiffs Group," or "Group"), move this Court to consolidate the Crayfish Actions, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. The Chang Plaintiffs Group also moves this Court to be

appointed Lead Plaintiff and to approve the Group's selection of Lead Counsel. For the following reasons, the Court GRANTS the motion to consolidate, DENIES the Chang Plaintiffs Group's motion to be appointed Lead Plaintiff, and to approve its selection for Lead Counsel. Instead, this Court appoints Alan Lazarus as Lead Plaintiff, and approves his selection of Kirby McInerney & Squire, LLP., as Lead Counsel.

### I. BACKGROUND

On September 8, 2000, Thomas R. Skwortz (" Plaintiff") filed a class action against Crayfish, a Japanese internet electronic mail services provider; Isao Matsushima, Crayfish's Chief Executive Officer, President, and Representative Director; Morgan Stanley Dean Witter, Nomura Securities International Inc., and Merrill Lynch & Co ., underwriters of the common stock offering; and Hikari Tsushin Inc., a exclusive distributor of Crayfish services (collectively the "Defendants"). (Skwortz Compl. ¶¶ 5-8.) Plaintiff alleges violations of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933. Specifically, the Complaint alleges that the Defendants provided materially false and misleading information in the Crayfish Prospectus and Registration Statement. (Chang Plaintiffs Group Mem. Law at 4.)

In accordance with the requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA" ), 15 U.S.C. § 77z-1(a)(3)(A)(i), Plaintiff published a notice of the pendency of this action over the PRNewswire on September 8, 2000. (*See* Stone Aff., Ex. 2.) Since the filing of the *Skwortz* Complaint, ten other Complaints arising out of the same facts and alleging similar, if not identical, claims were filed in the Southern District of New York. The Chang Plaintiffs Group filed its Motion for Consolidation and Appointment of Lead Plaintiff and Lead Counsel on November 8, 2000. No other class members in this or any of the related actions have filed a motion for Lead Plaintiff or Lead Counsel. The Defendants do not oppose consolidation and take no position on the appointment of Lead Plaintiff and Lead Counsel. (Defs.' Mem. Law at 2.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 1160745 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

FN2. The *Miller, Cheng, Bernstein, Aarons, Pashandi, Lazarus,* and *Jose* Complaints, also name as Defendants Atsuhiro Kumagai and Hiroshi Miyazawa, respectively the Chief Operating Officer and Chief Technology Officer of Crayfish.

## II. DISCUSSION

### A. Motion to Consolidate

The Chang Plaintiffs Group moves to consolidate the eleven related actions, and any subsequently filed related actions, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. Rule 42(a) provides:

*2 When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed.R.Civ.P. 42(a). "A district court has broad discretion to consolidate actions." *Primavera Familienstiftung v. Askin,* 173 F.R.D. 115, 129 (S.D.N.Y.1997). "[C]ourts have taken the view that considerations of judicial economy favor consolidation." *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1285 (2d Cir.1990). "In securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced." *Mitchell v. Complete Management, Inc. Sec. Litig.,* No. 99 Civ. 1454, 1999 WL 728678, at *1 (S.D.N.Y. Sept. 17, 1999); *see also Werner v. Satterlee, Stephens, Burke & Burke,* 797 F.Supp. 1196, 1211 (S.D.N.Y.1992) (same). As long as common questions of law and fact exist, consolidation is not barred simply because the actions to be consolidated allege claims against different parties. See *Werner,* 797 F.Supp. at 1211; *see, e.g., Lax v. First Merchants Acceptance Corp.,* Nos. 97 C 2715, 97 C 2716, 97 C 2737, 97 C 2791, 97 C 3767, 97 C 4237, 97 C 4013, 97 C 4236, 1997 WL 461036, at *1-2 (N.D.Ill. Aug. 11, 1997)

(mentioning that in prior proceeding complaints were consolidated despite differences in named defendants and claims alleged).

The eleven Crayfish Actions pending before this Court involve common questions of both law and fact. Indeed, the factual basis supporting the claims asserted in the Crayfish Actions are identical. The Plaintiffs are all investors who purchased shares of Crayfish common stock during the Class Period. In addition, each Plaintiff, in purchasing the shares of Crayfish stock, allegedly relied upon statements contained in the same Prospectus and Registration Statement. To be sure, not all of the Complaints contain claims against the same Defendants. However, since all the Complaints are premised on the same facts and statutory provisions consolidation is appropriate. *See, e.g., Borenstein v. Finova Group, Inc.,* No. CIV 00-619, No. CIV 00-926, No. CIV 00-978, No. CIV 00-1010, No. CIV 00-1100, 2000 U.S. Dist. LEXIS 14732, at *10, *15 (D.Ariz. Aug. 28, 2000) (consolidating securities complaints despite differences in class period and named defendants). Since the Court finds that the Crayfish Actions involve common questions of law and fact, in the interests of judicial economy, these actions are hereby consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.

FN3. Plaintiffs in the Crayfish Actions disagree on the precise confines of the Class Period. However, these differences do not prevent consolidation. *See In re Olsten Corp. Sec. Litig.,* 3 F.Supp.2d 286, 293 (E.D.N.Y.1998) (finding that differing class periods did not bar consolidation).

### B. Appointment of Lead Plaintiff

In 1995, Congress enacted the PSLRA in response to perceived abuses in securities fraud class actions. *See* S.Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679; H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730. The purpose behind the PSLRA is to prevent " lawyer-driven" litigation, and to ensure that " ' parties with significant holdings in issuers, whose

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 4

Not Reported in F.Supp.2d, 2001 WL 1160745 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs counsel." ' *In re Oxford Health Plans, Inc., Sec. Litig.,* 182 F.R.D. 42, 43-44 (S.D.N.Y.1998) (quoting H.R. Conf. Rep. No. 104-369); *see also In re Donnkenny Inc. Sec. Litig.,* 171 F.R.D. 156, 157-58 (S.D .N.Y.1997). Congress believed that this could best be achieved by encouraging institutional investors to serve as lead plaintiffs. *See In re Oxford Health Plans,* 182 F.R.D. at 46 (citing H.R. Conf. Rep. No. 104-369). Before the PSLRA was enacted, "professional plaintiffs" with securities fraud claims "tended to profit irrespective of the culpability of the defendants, most of whom chose settlement over prolonged and expensive litigation." *In re Party City Sec. Litig.,* 189 F.R.D. 91, 103 (D.N.J.1999). These professional plaintiffs tended to benefit disproportionately and at the expense of shareholders with larger stakes. *Id.*

> FN4. Although the claims in the Crayfish Actions are brought under the Securities Act of 1933, the PSLRA amended both the Securities Act of 1933 and the Securities Exchange Act of 1934. *See Lax,* 1997 WL 461036, at *2 n. 2 ("[T]he lead-plaintiff provisions of the 1933 and 1934 acts are identical"). Therefore, regarding interpretation and application of the PSLRA, cases cited herein are based on decisions under both statutes. *See, e.g., Axelrod & Co. v. Kordich, Victor & Neufeld,* 451 F.2d 838, 843 (2d Cir.1971) (stating that the Securities Act of 1933 and the Securities Exchange Act of 1934 " are *in pari materia* and should be construed together as one body of law").

*3 Accordingly, the PSLRA amended the Securities Act by altering the procedures for bringing such class actions. The PSLRA requires plaintiffs filing a private securities class action complaint to publish notice of the pendency of the suit in a widely circulated business publication or wire service no later than twenty days after the complaint is filed. 15 U.S.C. § 77z-1(a)(3)(A)(i). No later than sixty

days after the publication of notice, any member of the purported class may file a motion to serve as lead plaintiff. 15 U.S .C. § 77z-1(a)(3)(A)(i)(II). If a motion for consolidation has been made, the Court shall not appoint a lead plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 77z-1(a)(3)(B)(ii).

In addition, the PSLRA provides that:
[T]he court ... shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") ....

15 U.S.C. § 77z-1(a)(3)(B)(i).

A rebuttable presumption directs the court's inquiry when appointing lead plaintiff under the PSLRA. The PSLRA provides that the most adequate plaintiff is "the person or group of persons that-
(aa) has either filed the complaint or made a motion in response to a notice ...;
(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

This presumption, however, may be rebutted only upon proof offered by another member of the purported class "that the presumptively most adequate plaintiff-(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

The Chang Plaintiffs Group moves to be appointed Lead Plaintiff. In support of its motion, the Chang Plaintiffs Group argues that it satisfies all of the most adequate plaintiff presumption requirements, i.e., that its motion is timely, the group has the greatest financial interest of any plaintiff or plaintiff group, and that it satisfies the typicality and adequacy requirements of Rule 23. (Chang

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 1160745 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Plaintiffs Group Mem. Law at 8).

#### 1. Notification Requirement and Filing a Timely Motion

The PSLRA requires plaintiffs filing securities class actions to publish "in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class-(I) of the pendency of the action, the claims asserted therein, and the purported class period ...." 15 U.S.C. § 77z-1(a)(3)(A)(i). In addition, the notice must also advise members of the purported class that "not later than 60 days after the date on which the notice is published, any member ... may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 77z-1(a)(3)(A)(i)(II). However, if more than one action alleging " substantially the same claim or claims" is filed only the party bringing the first action "shall be required to cause notice to be published ...." 15 U.S.C. § 77z-1(a)(3)(A)(ii).

**\*4** In this case, the *Skwortz* Complaint was the first of the Crayfish Actions filed. On September 8, 2000, the Plaintiff in *Skwortz* caused to be published a notice of pendency in the PRNewswire, pursuant to 15 U.S.C. § 77z-1(a)(3)(A)(i). (Stone Aff., Ex. 2.) This notice informed members of the class that they had sixty days after publication to move for appointment as lead plaintiff. The sixty day period elapsed on Tuesday, November 7, 2000 .

On November 8, 2000, the Chang Plaintiffs Group filed its motion for the Appointment of Lead Plaintiff and Lead Counsel. Although the Chang Plaintiffs Group filed the instant motion in response to the notice published September 8, 2000, it has filed its motion later than sixty days after the date on which the notice was published.

> FN5. The PSLRA does not further define what type of publication is required by 15 U.S.C. § 77z-1(a)(3)(A)(i). However, the PRNewswire has been accepted as a proper publication. *See e.g., In re Party City,* 189 F.R.D. at 105 (publication over PRNewswire satisfies PSLRA).

> FN6. In an announcement dated September 18, 2000, one of the proposed lead counsel firms, Milberg Weiss Bershad Hynes & Lerach LLP., advised purchasers of Crayfish stock that "you may, no later than November 7, 2000, request that the Court appoint you as lead plaintiff." (Stone Aff., Ex. 2.)

The issue becomes then, whether the tardy filing of the Group's motion denies it further consideration by this Court. To be sure, courts have taken different approaches with respect to motions filed in excess of the sixty day period provided for under the PSLRA. *Compare Steiner v. Frankino,* Nos. 98 Civ. 0264, 98 Civ. 0295, 98 Civ. 0301, 98 Civ. 0356, 98 Civ. 0375, 98 Civ. 0406, 98 Civ. 0419, 98 Civ. 0431, 98 Civ. 0457, 98 Civ. 0462, 98 Civ. 0714, 1998 U.S. Dist. LEXIS 21804, at \*13 (N.D.Ohio July 16, 1998) (recognizing that "it would be improper to enforce a strict time limit" where the publication of multiple notices could appear to expand the time period in the eyes of the class members) *with In re Microstrategy Inc., Sec. Litig.,* 110 F.Supp.2d 427, 433 n. 12 (E.D.Va.2000) ("[M]otions filed after the 60 day period are untimely when made by a class member who has not filed a complaint."); *In re Telxon Corp., Sec. Litig.,* 67 F.Supp.2d 803, 818 (N.D.Ohio 1999) (" The PSLRA is unequivocal and allows for no exceptions. All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action. The plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed *after* the sixty (60) day window has closed.") (emphasis in original); *Switzenbaum v. Orbital Sciences Corp.,* 187 F.R.D. 246, 249-50 (E.D.Va.1999) (stating that to be considered for Lead Plaintiff a person must either file a complaint or make a timely motion, and concluding that since the interested plaintiff "never filed a complaint himself or moved for appointment within the time that the PSLRA requires of those who hope to become the Lead Plaintiff" he could not be considered individually or as part of a group who had filed a timely motion). However, this Court has found no case that addresses the particular timeliness issue raised here, i.e., where

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 6

Not Reported in F.Supp.2d, 2001 WL 1160745 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

the only motion for lead counsel is untimely, and thus necessitates a review of the complaints filed in order to determine the lead plaintiff. Further, this Circuit has not ruled whether the requirements of the most adequate plaintiff presumption are to be applied serially in order, or whether each requirement is applied to the motion or complaint despite its inability to satisfy all of the presumption's requirements.

**\*5** This Court reads the statute to require a complaint or a timely filed motion. The 60 day period the statute provides for the submission of lead counsel motions is mandatory. The tardiness of the Chang Plaintiffs Group motion precludes this Court from appointing the Group as Lead Plaintiff in this case. *See, e.g., In re Microstrategy,* 110 F.Supp.2d at 439 (stating that the most adequate plaintiff factors are to be considered separately, and that an untimely motion "may not, except perhaps in rare circumstances, be considered by a court" and subsequently barring further consideration of a motion for lead plaintiff where the applicant did not satisfy the first requirement of the statutory presumption).

> FN7. However, even if the 60 day requirement was not mandatory, the Chang Plaintiffs Group has provided this Court with no good cause for tolling the statutory requirement in this case.

The mandatory nature of the 60 day requirement follows from the structure of the PSLRA itself. The PSLRA explicitly provides that the court "shall adopt" the most adequate plaintiff presumption. To satisfy the presumption's first prong one must " either file[ ] the complaint or [make] a motion in response to a notice under subparagraph (A)(i)." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa). Thus, an untimely motion has the effect of preventing the proposed Group from satisfying the first requirement of the most adequate plaintiff presumption.

The fact that no other motions for lead plaintiff have been filed does not mean that the Chang Plaintiffs Group is automatically appointed lead

plaintiff. Where there is not a timely motion before the Court, the PSLRA directs this Court's attention to the plaintiffs that have "filed [a] complaint." 15 U.S.C. § 77z-1(a)(B)(iii)(I)(aa). Accordingly, the Chang Plaintiffs Group's motion is barred from further consideration by the first prong of the most adequate plaintiff presumption. The Plaintiffs who have filed the various Crayfish Actions before this Court shall now be considered for appointment as Lead Plaintiff.

### 2. Largest Financial Interest Requirement

The PSLRA does not explicitly explain how the greatest financial interest should be calculated. However, courts have considered four factors when evaluating this requirement: (1) the number of shares purchased during the class period, (2) the number of net shares purchased during the class period, (3) the total net funds expended during the class period, and (4) the approximate loss suffered during the class period. *See, e.g., In re Olsten Corp.,* 3 F.Supp.2d at 296 (citing *Lax,* 1997 WL 461036, at \*5).

Applying the above factors, this Court finds that of the Plaintiffs who filed Complaints against Crayfish, Plaintiff Lazarus possesses the largest financial interest in the relief sought by the class.

### 3. Rule 23 Requirement

The Rule 23 inquiry under § 77z-1(a)(3)(B)(iii)(I)(cc) is less stringent than the inquiry the rule otherwise requires. *See In re Party City,* 189 F.R.D. at 106 (" '[a] wide-ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification" ' (quoting *Fischler v. Amsouth Bancorporation,* No. 96-1567-Civ-T-17A, 1997 WL 118429, at \*2 (M.D.Fla. Feb. 6, 1997))); *In re Advanced Tissue Sciences Sec. Litig.,* 184 F.R.D. 346, 349 (S.D.Cal.1998) (same). At this stage in the litigation, one need only make a "preliminary showing" that the Rule's typicality and adequacy requirements have been satisfied. *In re Olsten Corp.,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

3 F.Supp.2d at 296; *see also Weltz v. Lee,* Nos. 00 Civ. 3863, 00 Civ. 4021, 00 Civ. 4117, 00 Civ. 4557, 00 Civ. 5224, 2001 WL 228412, at *5 (S.D.N.Y. March 7, 2001). Any preliminary class certification findings of adequacy and typicality made at this time, do not preclude any party from contesting the ultimate class certification. *See Weltz,* 2001 WL 228412, at *5; *see also Koppel v. 4987 Corp.,* Nos. 96 Civ. 7570, 97 Civ. 1754, 1999 WL 608783, at *8 (S.D.N.Y. Aug. 9, 1999) (appointment as lead plaintiff "does not prejudice defendants' capacity to contest plaintiff's adequacy on a motion for class certification").

i. Typicality

***6** The typicality requirement is satisfied when the claims of the proposed lead plaintiff "arise from the same conduct from which the other class members' claims and injuries arise." *In re Oxford Health Plans,* 182 F.R.D. at 50 (citing *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992)). The claims of the proposed lead plaintiff need not be identical to the claims alleged by other class members. *In re Party City,* 189 F.R.D. at 107; *see also In re Nice Systems Sec. Litig.,* 188 F.R.D. 206, 218 (D.N.J.1999) (same).

The claims in the Lazarus Complaint satisfy the Rule 23 typicality requirement as it is incorporated into the PSLRA. All of the Crayfish Actions allege substantially the same claims and these claims arise from the same factual predicate. Accordingly, the Court finds that the Lazarus claims satisfy the typicality requirement. The differences that exist between the various Crayfish Actions do not bar Lazarus from being appointed Lead Plaintiff.

ii. Adequacy

The adequacy requirement is satisfied if (1) the class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the interests of the class members are not antagonistic to one another; and (3) the lead plaintiff has a sufficient interest in the outcome to ensure vigorous advocacy. *In re Olsten Corp.,* 3 F.Supp.2d at 296 (citing *In re Drexel,* 960 F.2d at 291; *Lax,* 1997 WL 461036, at *6).

The Lazarus Action also satisfies the adequacy requirement. The Complaint filed in the Lazarus action suggests to this Court that the Counsel for Lazarus is generally able to conduct the litigation. This conclusion is supported by the firm's on-line resume. *See* Kirby McInerney & Squire, LLP., at *http:// www.kmslaw.com* (Apr. 13, 2001) (indicating the firm has significant experience in prosecuting securities class actions). Further, it does not appear that any antagonism exists between class members. To be sure, antagonism may exist where certain class members own shares and others do not. *See, e.g., In re Party City,* 189 F.R.D. 107-112 (finding that plaintiffs who continued to hold shares had a continued interested in the financial strength of the defendant company whereas plaintiffs who sold their shares did not). However, nothing in the record before this Court suggests that Lazarus seeks anything other than "the greatest recovery for the class consistent with the merits of the claims." *In re Oxford Health Plans,* 182 F.R.D. at 49. As a final matter, Lazarus also satisfies the vigorous representation requirement. While he is not an institutional investor, Lazarus did invest more money than any other of the Plaintiffs who filed actions against the Defendants.

This Court finds that Lazarus is the most adequate plaintiff.

4. Presumption of Adequacy Not Rebutted

The most adequate plaintiff presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff-(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 77z-1(a)(B)(iii)(II). Here, no member of the purported class has sought to rebut the presumption. Accordingly, Lazarus is appointed Lead Plaintiff for the consolidated Crayfish Actions currently pending before this Court.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2001 WL 1160745 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

### C. Appointment of Lead Counsel

\*7 Lazarus has selected the law firm of Kirby McInerney & Squire, LLP., to serve as Lead Counsel. The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 77z-1(a)(3)(B)(v). "Giving the Lead Plaintiff primary control for the selection of counsel was a critical part of Congress' effort to transfer control of securities class actions from lawyers to investors." *Gluck v. CellStar Corp.,* 976 F.Supp. 542, 550 (N.D.Tex.1997). Courts, however, may decline to approve Lead Plaintiff's suggested counsel "to protect the interests of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).

Lazarus has selected Kirby McInerney & Squire, LLP., to serve as Lead Counsel. As stated earlier, the Court finds Lazarus' choice of counsel is qualified to prosecute this securities class action. Accordingly, this Court approves the selection of Kirby McInerney & Squire, LLP., as Lead Counsel.

### III. CONCLUSION

Having considered the motion for Consolidation of the Crayfish Actions Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure and for Appointment of Lead Plaintiff and Lead Counsel pursuant to the Securities Act of 1933, IT IS HEREBY ORDERED THAT:

1. The motion to Consolidate the Crayfish Actions for All Purposes is GRANTED;

2. The following actions are hereby consolidated for all purposes, including pretrial proceedings, trial and appeal, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure:
*Skwortz v. Crayfish Co., Ltd.,* No. 00 Civ. 6766(DAB)
*Hersh v. Crayfish Co., Ltd.,* No. 00 Civ. 6978(DAB)
*Miller v. Crayfish Co., Ltd.,* No. 00 Civ. 6998(DAB)
*Goldstein v. Crayfish Co., Ltd.,* No. 00 Civ. 7009(DAB)
*Cohen v. Crayfish Co., Ltd.,* No. 00 Civ. 7141(DAB)

*Cheng v. Crayfish Co., Ltd.,* No. 00 Civ. 7250(DAB)
*Bernstein, v. Crayfish Co., Ltd.,* No. 00 Civ. 7263(DAB)
*Aarons v. Crayfish Co., Ltd.,* No. 00 Civ. 7489(DAB)
*Pashandi, v. Crayfish Co., Ltd.,* No. 00 Civ. 7682(DAB)
*Lazarus v. Crayfish Co., Ltd.,* No. 00 Civ. 7939(DAB)
*Jose v. Crayfish Co., Ltd.,* No. 00 Civ. 8214(DAB)

3. The caption of these consolidated actions shall be "*In re Crayfish Company Securities Litigation* " and the files of these consolidated actions shall be maintained in one file under Master File No. 00 Civ. 6766(DAB). Any other actions now pending or later filed in this district which arise out of or are related to the same facts as alleged in the above-identified cases shall be consolidated for all purposes, if and when they are brought to the Court's attention.

4. Every pleading filed in the consolidated actions or in any separate action included herein, shall bear the following caption:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 1160745 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

\*8 5. When a pleading is intended to be applicable to all actions governed by this Order, the words " All Actions" shall appear immediately after the words "This Document Relates To:" in the caption set out above. When a pleading is intended to be applicable to only some, but not all of the consolidated actions, this Court's docket number for each individual action to which the pleading is intended to be applicable and the last name of the first-named plaintiff in said action shall appear immediately after the words "This Document Relates To:" in the caption described above.

6. When a pleading is filed and the caption shows that it is applicable to "All Actions," the clerk shall file such pleading in the Master File and note such filing on the Master Docket. No further copies need to be filed, and no other docket entries need be made.

7. When a pleading is filed and the caption shows that it is to be applicable to fewer than all of the consolidated actions, the Clerk will file such pleading in the Master File only, but shall docket such filing on the Master Docket and the docket of each applicable action.

8. This Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any case which might be consolidated as part of *In re Crayfish Company Securities Litigation.*

9. The Chang Plaintiffs Group's motion for appointment as Lead Plaintiff is DENIED.

10. The Chang Plaintiffs Group's motion for appointment of Shalov Stone & Bonner and Milberg Weiss Bershad Hynes & Lerach LLP as Co-Lead Counsel is DENIED.

11. Alan Lazarus is appointed by this Court to serve as Lead Plaintiff.

12. Kirby McInerney & Squire, LLP., is appointed Lead Counsel.

13. Plaintiffs shall file a Consolidated Complaint within 45 days of the date of this Order.

14. The Defendants shall move or answer within 30 days after filing of the Consolidated Complaint.

15. The Clerk is directed to serve a copy of this Order on all parties of record in the consolidated actions.

SO ORDERED.

S.D.N.Y.,2001.
Skwortz v. Crayfish Co., Ltd.
Not Reported in F.Supp.2d, 2001 WL 1160745 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:00cv07939 (Docket) (Oct. 18, 2000)
• 1:00cv07682 (Docket) (Oct. 11, 2000)
• 1:00cv07489 (Docket) (Oct. 04, 2000)
• 1:00cv07250 (Docket) (Sep. 26, 2000)
• 1:00cv07263 (Docket) (Sep. 26, 2000)
• 1:00cv07141 (Docket) (Sep. 21, 2000)
• 1:00cv07009 (Docket) (Sep. 19, 2000)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 1160745 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**


• 1:00cv06978 (Docket) (Sep. 18, 2000)
• 1:00cv06998 (Docket) (Sep. 18, 2000)
• 1:00CV06766 (Docket) (Sep. 08, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 7

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1

Not Reported in F.Supp.2d, 2002 WL 32818827 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Caroline WEISZ, on behalf of herself and all others
similarly situated, Plaintiffs,
v.
CALPINE CORPORATION, Peter C. Cartright,
Ann B. Curtis and Charles B. Clark, Defendants.
**No. 4:02-CV-1200.**

Aug. 19, 2002.

Lionel Z. Glancy, Peter A. Binkow, Los Angeles,
CA, Brian Murray, Gregory M. Egleston, Jeffrey
M. Haber, Joseph R. Seidman, Jr., Howard T.
Longman, Ashley Kim, Christopher Lometti, Jay P.
Salzman, Jeffrey H. Konis, Jay P. Saltzman, New
York, NY, Dennis J. Herman, Lesley E. Weaver,
Randi D. Bandman, Christopher T. Heffelfinger,
Joseph J. Tabacco, Jr., J. Thomas Bowen, Esq.,
Robert S. Green, Robert A. Jigarjian, San
Francisco, CA, Thomas E. Bilek, Houston, TX,
William S. Lerach, Francis A. Bottini, Jr., Francis
M. Gregorek, San Diego, CA, Denis F. Sheils,
Joseph C. Kohn, Philadelphia, PA, Gary S.
Graifman, Chestnut Ridge, NY, Edward Chang,
Edward W. Ciolko, Joseph H. Meltzer, Bala
Cynwyd, PA, Charles J. Piven, Baltimore, MD, for
Plaintiffs.
Paul H. Dawes, Jay L. Pomerantz, Menlo Park, CA,
Robert L. McKague, Palo Alto, CA, Christopher A.
Patz, Jordan David Eth, Melvin R. Goldman, Tracy
M. Clements, Stan G. Roman, San Francisco, CA,
for Defendants.

ORDER RE MOTIONS FOR APPOINTMENT OF
LEAD PLAINTIFF AND FOR CONSOLIDATION
ARMSTRONG, J.

>Docket Nos. 15, 22, 23, 26, and 28]

*INTRODUCTION*

**\*1** This is a securities fraud class action brought
against defendant Calpine Corporation ("Calpine")
and certain of its officers and/or directors ("the
Individual Defendants") for violations of Section
10(b) of the Securities Exchange Act of 1934 ("
1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b-5
promulgated thereunder. Presently, there are a total
of fourteen separate class action lawsuits pending in
this Court filed against Calpine and the Individual
Defendants which allege that they made false and
misleading statements to artificially inflate the price
of Calpine stock. The lawsuits were filed on behalf
of a putative class composed of purchasers of
Calpine publically-traded securities during the Class
Period from January 5, 2001, through December 13,
2001.

In addition to the above-discussed actions, there is a
separate action brought by Julius Ser on behalf of a
putative class of bondholders; namely, purchasers
of 8.5% Senior Notes issued by Calpine during the
period encompassing October 15, 2001 through
December 13, 2001. That action, now styled as *Ser
v. Calpine Corp.,* Case No. C 02-2316 SBA, was
filed on May 13, 2002. Like the other fourteen
related actions, the *Ser* complaint alleges that
Calpine made materially misleading statements
concerning its 2001 financial results. The
defendants in *Ser* are the same as in the other
actions, except that the underwriters for the initial
public offering are also included as
party-defendants. Unlike the other class actions, the
claims in *Ser* arise under Sections 11 and 15 of the
Securities Act of 1933 ("1933 Act"), 15 U.S.C. §
77K, 15 U.S.C. § 77O, respectively.

The parties are presently before the Court on a
variety of motions filed by four groups of plaintiffs:
(1) Northern Oak Capital Management, Inc. ("
Northern Oak") and Vincent H. Tomei ("Tomei"),
collectively referred to as "Northern Oak-Tomei";
(2) Andre W.L. Hickam ("Hickam") and Mansukh
B. Makadia ("Makadia"), collectively referred to as
"Hickam-Makadia"; (3) Laborers Local 1298

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 32818827 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

Pension Fund ("Local 1298"); and the (4) Policemen and Firemen Retirement System of the City of Detroit ("Detroit"). Each of the four groups seeks appointment as lead plaintiff in accordance with the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and the opportunity to select counsel of its choosing.

In addition, Northern Oak-Tomei and Hickam-Makadia seek the consolidation of the fourteen class action lawsuits pending against Calpine and the Individual defendants. All parties agree to the consolidation; however, Calpine, the Individual Defendants, and Local 1298 request that the Court include the *Ser* action in the consolidation order. Ser opposes that request. In accordance with the PSLRA, the Court first resolves the matter of consolidation, and then addresses the various requests for appointment as lead plaintiff.

> FN1. The motions specifically presented for adjudication are: (1) Motion of the Policemen and Firemen Retirement System of the City of Detroit to Appoint It as Lead Plaintiff and for Approval of Its Selection of Lead Counsel; (2) Andre W.L. Hickam and Mansukh B. Makadia's Motion to Consolidate Related Cases, Appoint Lead Plaintiffs, and for Approval of Lead Counsel; (3) Northern Oak Capital Management, Inc. and Vincent H. Tomei's Motion to Appoint Northern Oak Capital Management, Inc. and Vincent H. Tomei as Lead Plaintiff and to Approve Lead Plaintiff's Choice of Lead Counsel; (4) Northern Oak Capital Management, Inc. and Vincent H. Tomei's Motion to Consolidate Related Actions and Preserve Documents; and (5) Laborers Local 1298 Pension Fund's Motion for Consolidation, Appointment of Lead Plaintiff and Approval of Lead Counsel.

### DISCUSSION

### A. CONSOLIDATION

#### 1. Legal Standard

**\*2** Federal Rule of Civil Procedure 42(a) provides that "when actions involving common questions of law or fact are pending before the court, it ... may order all the actions consolidated...." The district court has "broad discretion under this rule to consolidate cases pending in the same district." *Investors Research Co. v. United States Dist. Ct.,* 877 F.2d 777 (9th Cir.1989). The purpose of consolidation is to avoid the unnecessary costs or delays that would ensue from proceeding separately with claims or issues sharing common aspects of law or fact. *EEOC v. HBE Corp.,* 135 F.3d 543, 550 (8th Cir.1998).

The PSLRA "directs that cases should be consolidated where ... there is 'more than one action on behalf of a class asserting substantially the same claim or claims.' " *In re Cendant Corp.Litig.,* 182 F.R.D. 476, 478 (D.N.J.1998) (citing 15 U.S.C. § 78u-4(a)(3)(B)(ii)). Where, as here, there is more than one action on behalf of the proposed class asserting substantially the same claim, Section § 78u-4(a)(3)(B)(ii) of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(ii), requires that any motions for consolidation be decided first, and that "as soon as practicable" thereafter, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *Id.*

#### 2. Scope of the Consolidation

Northern Oak-Tomei and Hickam-Makadia move for consolidation of the fourteen securities class actions filed against Calpine and others in this Court. There is no dispute by any of the parties that all of the securities class actions present substantially similar factual and legal claims against the same defendants, and as such, consolidation is appropriate. However, Calpine and the Individual Defendants request that the Court also include *Ser* in the consolidation order on the ground that allegations forming Ser's claims are virtually identical to those presented in the other securities actions.

> FN2. At the hearing, the underwriter defendants in *Ser* also concurred in the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 32818827 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

> request to consolidate the *Ser* action with
> the other Calpine actions.

Ser contends that consolidation of his complaint
with the remaining actions is inappropriate in light
of the different claims alleged. Specifically,
whereas bondholder claims are based on violations
of Sections 11 and 15 of the 1933 Act, the
stockholder claims are predicated on Rule 10b-5
and Section 10b of the 1934 Act. Since different
pleading requirements and standards of proof apply
to these claims, Ser asserts that the better course of
action is to keep these claims separate. This Court
recently considered and rejected virtually identical
arguments in another large securities fraud class
action in *Miller v. Ventro Corp.,* Case No. C
01-1287 SBA. As explained in *Miller,* the
differences inherent in bondholder versus
shareholder claims are outweighed by the fact that
the claims alleged in *Ser* and the remaining actions
are based on the same alleged course of conduct. *See
Miller v. Ventro Corp.,* Case No. C 01-1287 SBA,
slip. op. at 8-9 (N.D.Cal. Nov. 28, 2001). As such,
the Court is not convinced by Ser's contention that
differences in the pleading and evidentiary burdens
associated with the 1933 Act and 1934 Act claims
are sufficient to avoid consolidation.

**\*3** Next, Ser contends that a stockholder alleging
Section 10(b) and Rule 10b-5 claims has no
standing to bring claims on behalf of a bondholder
bringing Section 11 and 15 1993 Act claims.
However, whether a stockholder has standing to
assert Section 11 and 15 claims is inapposite to the
question of whether bondholder and stockholder
actions premised on the same factual events should
be consolidated. *See In re Enron Corp. Sec. Litig.,*
206 F.R.D. 427, 445-46 (S.D.Tex.2002) (finding
that conflict between claims of preferred
shareholders and common shareholder did not
preclude consolidation, as such issues could be
addressed later in the litigation).

> FN3. During oral argument, Ser requested
> that in the event his action is consolidated
> with the others, he be appointed as co-lead
> plaintiff, or alternatively, that a subclass be
> established for the bondholders. Since

Ser's losses are negligible in comparison to
most of the proposed lead plaintiffs, the
Court finds no need to appoint Ser as a
co-lead plaintiff. The matter of a subclass
may be dealt at the time of class
certification.

The Court is also unconvinced by Ser's remaining
contentions. First, Ser asserts that the Class Period
in the *Ser* action (October 15, 2001 through
December 13, 2001) is different than the Class
Period defined for the related shareholder actions
(January 5, 2001, through December 13, 2001).
This distinction is inconsequential, as the Class
Period in the *Ser* action is subsumed by the Class
Period alleged in the related stockholder actions. *See
Miller,* Case No. C 01-1287 SBA, slip op. at 9
(finding differences in class periods inapposite
where the "class periods [in the bondholder action]
are equal to or less than that in the [stockholder]
action.").

Second, Ser complains that "the notices published
for the 10(b) Actions do not effectively notify
purchasers of the Calpine 2011 Bonds of their
claims or rights under the PSLRA." (Ser's Opp'n at
5.) Again, it is unclear how the adequacy of such
notices has any bearing on whether the *Ser* and
related actions share "common questions of law or
fact" sufficient to warrant consolidation under Rule
42(a).

Finally, Ser contends that his action includes the
bond underwriters as defendants, who are not joined
in the other actions. As above, this fact is not a
persuasive basis for preventing consolidation. *See
id.* at 8 ("the fact that other parties are included
does not preclude consolidation.") (citing cases).

At bottom, the Court concludes that the fourteen
related stockholder class actions, along with the *Ser*
action, should be consolidated. The factual
allegations underlying these lawsuits are essentially
identical with respect to the underlying alleged
misconduct. Despite some differences and unique
issues presented in the *Ser* action, the Court finds
that such distinctions are far outweighed by the
benefits of consolidation. The Court further finds
that given the common questions of law or fact, and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 32818827 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

in light of the interests of avoiding unnecessary costs or delays, consolidation is proper. Therefore, the Court GRANTS the motions for consolidation, and all related stockholder class action lawsuits and the *Ser* action shall be consolidated, pursuant to Federal Rule of Civil Procedure 42(a).

> FN4. Ser's alternative suggestion to create a subclass for the bondholders may be addressed at the time of class certification.

### 3. *Form of the Consolidation Order*

The Northern District of California has adopted a Model Stipulation and Proposed Consolidation Order ("Model Order") for use in securities class actions. While the parties do not dispute the propriety of using this Model Order, they disagree on two key issues: (1) whether the consolidation should be for "all purposes" or "for pretrial proceedings" only; and (2) whether the Order should contain language affirmatively directing the defendants to comply with their legal obligation to preserve documents. The Court discusses these issues in turn.

\*4 First, Calpine contends that the consolidation should be limited to "pretrial proceedings" consistent with the Model Order, as "[a] better assessment of the need to consolidate these actions for trial can be made at the pre-trial conference." (Calpine's Corrected Resp. at 3.) Unfortunately, Calpine neglects to explain why this is so or to cite any authority in support of its position. Moreover, given the underlying purpose of consolidation, namely, to promote efficiency and avoid delay, the Court finds that consolidating the related actions for *all purposes* best serves these goals.

Second, Calpine and the Individual Defendants oppose the inclusion of language proposed by Northern Oak-Tomei concerning the preservation of documents. As pointed out by defendants, Northern Oak-Tomei's four-page proposed order for consolidation contains a ten-page attachment which spells out the specific documents which defendants should be ordered to preserve. Defendants contend that such level of particularity is excessive and

unnecessary in light of the fact that the PSLRA already affords plaintiffs with statutory protection concerning the preservation of documents. The Court agrees.

The PSLRA requires parties to treat evidence in their custody or control as if it were the subject of a continuing discovery request during the pendency of any stay imposed by the PSLRA. 15 U.S.C. § 78u-4(b)(3)(C)(i). This obligation is automatic and self-executing. *See In re Grand Casinos, Inc. Secs. Lit.*, 988 F.Supp. 1270, 1273 (D.Minn.1997) ("the preservation of evidence in the possession of the parties is statutorily automatic"). In light of this protection, it would appear to be somewhat superfluous for this Court to order the defendants to comply with that to which they are already obligated to follow. Nevertheless, the Court is cognizant that, despite the existence of statutes designed to prevent the destruction of evidence, there are instances where such obligations are disregarded, resulting in the irreparable loss of key evidence. Therefore, the Court will employ the language of the Model Order, supplemented by the highlighted text:

Counsel for the parties shall notify their clients of their document preservation obligations pursuant to the federal securities laws and local rules, *and the possible legal consequences of their failure to comply as such. Upon completion of such notification, counsel shall certify to the Court, in writing, the date of such notification.*

(Model Order ¶ 18, as modified.)

### B. *APPOINTMENT OF LEAD PLAINTIFF*

#### 1. *Legal Standard*

The PSLRA provides that the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the 'most adequate plaintiff ') in accordance with this subparagraph." 15 U.S.C. § 78u-4(a)(3)(B)(i). The Act creates a rebuttable

Not Reported in F.Supp.2d, 2002 WL 32818827 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

presumption that the most adequate plaintiff should be the plaintiff which: (1) has brought the motion for appointment of lead counsel in response to the publication of notice; (2) has the "largest financial interest" in the relief sought by the class; and (3) otherwise satisfies the requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

> FN5. Federal Rule 23 generally requires that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative class are typical of the claims and defenses of the class, and (4) the representatives of the parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

*5 The above presumption may be rebutted only upon proof that the presumptive lead plaintiff (1) will not fairly and adequately protect the interests of the class or (2) is subject to "unique defenses" that render such plaintiff incapable of adequately representing the class. *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb). The lead plaintiff selected by the Court has the discretion to retain counsel of its choice to represent the class, subject to court approval. *Id.* § 78u-4(a)(3)(B)(v).

### 2. *Largest Financial Interest*

The PSLRA provides that the financial interest in the outcome of the litigation is reasonably representative of the ability of a party or parties to function as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This comports with the overall focus of the PSLRA to place securities litigation in the hands of investors, not lawyers. *See Armour v. Network Assocs., Inc.,* 171 F.Supp.2d 1044, 1048 (N.D.Cal.2001) ("The legislative history of the PSLRA reveals that the above provisions were motivated by Congressional concerns about the prevalence of 'lawyer-driven' securities class actions.") (citing Statement of

Managers-The "Private Securities Reform Act of 1995," H.R. Conf. Report No. 104-369, 104th Cong. 1st Ses. (1995), *reprinted in* U.S.C.C.A.N. 730). As such, institutional lead plaintiffs are preferred, though not required. *Id.*

The PSLRA does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Nonetheless, district courts, including two judges from this District, have equated "largest financial interest" with the amount of potential recovery. *See In re Critical Path, Inc. Sec. Litig.,* 156 F.Supp.2d 1102, 1107-08 (N.D.Cal.2001) (Orrick, J.); *see also In re Network Assocs., Inc., Sec. Litig.,* 76 F.Supp.2d 1017, 1030 (N.D.Cal.1999) (Alsup, J.). Under this approach, the Court considers the "number of net shares purchased during the class period" coupled with the "losses suffered by selling shares during the class period." *Critical Path,* 156 F.Supp. at 1108. Applying this framework to the record presented, the Court now assesses each of the four groups of putative lead plaintiffs.

> FN6. Other courts have employed a similar approach which advocates the consideration of four factors: (1) the number of shares purchased during the class period, (2) the number of net shares purchased during the class period, (3) the total net funds expended during the class period, and (4) the approximate loss suffered during the class period. *In re Olsten Corp. Sec. Litig.,* 3 F.Supp.2d. 286, 296 (E.D.N.Y.1998).

#### a. *Northern Oak-Tomei*

Northern Oak-Tomei allege that they collectively purchased 598,570 shares of Calpine stock during the Class Period and suffered losses in excess of $11 million. These figures far exceed the amounts proffered by any of the other proposed lead plaintiffs. At first blush, it would appear that Northern Oak-Tomei are the logical choice for the appointment of lead counsel. Upon closer examination, however, the Court is not convinced

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 6

Not Reported in F.Supp.2d, 2002 WL 32881827 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

that either Northern Oak or Tomei, collectively or individually, is the most adequate plaintiff.

The Supreme Court has held that Rule 10b-5 plaintiffs must be actual purchasers or sellers of securities. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 730-31, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Harmsen v. Smith,* 693 F.2d 932, 941 (9th Cir.1982). Northern Oak is an "investment manager" which merely makes investments on its individual clients' behalf. "While some courts have permitted 'investment managers' to serve as lead plaintiffs, those courts generally have required showings that such money managers qualify as a ' single person' under the Reform Act." *Smith v. Suprema Specialties, Inc.,*-206 F.Supp.2d 627, 634 (D.N.J.2002) (citing cases). In *Smith,* the court declined to appoint an investment manager as lead plaintiff, notwithstanding the fact that it ostensibly suffered the greatest loss. *Id.* The court reasoned that the investment manager merely provided separate account services for diverse, unaffiliated investors. *Id.* Given the absence of evidence establishing that its investors otherwise acted as a " single person", the court concluded that the investment manager was not a suitable lead plaintiff. *Id.; see also In re Bank One Shareholders Class Actions,* 96 F.Supp.2d 780, 784 (N.D.Ill.2000) (finding that an institutional investment manager was not the "most adequate" plaintiff in part because it was "not a buyer for its own account, standing instead in the place of whatever number of investors are participants in the managed fund.").

**\*6** Like the investment manager in *Smith,* Northern Oak similarly fails to present any evidence or information concerning whether its investment in Calpine was for its own account or the account of its clients. (*See* Northern Oak-Tomei Reply at 4-5.) In addition, Northern Oak provides no information concerning the nature and circumstances under which Northern Oak purchased Calpine stock during the Class Period. Nor is there any evidence demonstrating that Northern Oak coordinated and selected the investments of its clients, as opposed to merely executing its clients' requests. Although Hickam-Makadia clearly discusses the evidentiary infirmity of Northern Oak-Tomei's motion for appointment as lead plaintiff, the latter makes no attempt to present any evidence on these points.

At the hearing on the instant motions, the Court queried Northern Oak whether there was any evidence in the record to support the proposition that Northern Oak has complete discretion and control over its clients' account and that it has the authority to litigate this action. In response, Northern Oak directed the Court's attention to a document styled as the "Uniform Application for Investment Advisor Registration" which is attached as Exhibit B to the Declaration of J. Thomas Bowen. Specifically, Northern Oak points out that Item 8 of the Application specifies that "or any related person" has "discretionary authority" to select securities for purchase or sale on behalf of its clients' accounts. (Bowen Decl. Ex. B at 31/54.) The Court is not convinced. While the document states the conclusion that Northern Oak has " discretionary authority" with respect to its clients' accounts, no information is provided regarding the nature and extent of such discretion.

> FN7. This declaration was submitted by Local 1298, not Northern Oak-Tomei. Counsel for Local 1298 obtained this document from the United States Securities and Exchange Commission's Investment Advisor Public Disclosure website located at http://www.advisorinfo.sec.gov. (Bowen Decl. ¶ 2.)

The Court also has serious concerns regarding Northern Oak's authority to bring this action on behalf of its clients. An asset manager seeking appointment as lead plaintiff is generally required to provide evidence that it acts as an attorney-in-fact for its clients and is authorized to seek recovery for investment losses. *Smith,* 206 F.Supp.2d at 634. In this respect, Northern Oak contends that its authority to bring this action is implicit in the Certification of Named Plaintiff Pursuant to Federal Securities Laws. (Weaver Decl. Ex. A.) This contention lacks merit. Nothing in that document suggests that Northern Oak has been authorized by its clients to bring securities law claims on their behalf. In the absence of such evidentiary support,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 32818827 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

the Court finds that Northern Oak has not demonstrated itself to be an adequate plaintiff within the meaning of the PSLRA. *Id.* ("The clients' mere grant of authority to an investment manager to invest on its behalf does not confer authority to initiate suit on its behalf.").

Finally, Northern Oak contends that case law supports the notion that an investment manager may be appointed as a lead plaintiff, notwithstanding the lack of evidence to support such a showing. (Northern Oak-Tomei Reply at 4-5.) However, in the majority of cases cited by Northern Oak, the courts specifically relied on evidence proffered by the investment advisor. *See The Ezra Charitable Trust v. Rent-Way, Inc.,* 136 F.Supp.2d 435, 440-442 (W.D.Penn.2001) (noting that the investment advisor plaintiff had submitted undisputed declarations that it had "complete investment discretion" to purchase and sell securities for its clients and to institute a legal action to seek recovery for investment losses); *Alfaro v. Caprock Communications Corp.,* No. 00-CV-1613-R, 2000 U.S. Dist. LEXIS 21743 at *7 (N.D.Tex. Dec. 8, 2000) (noting that the money manager plaintiff "has presented a sworn affidavit ... [that it] has 'full and complete discretion and authority to manage the securities of its clients....'"); *Local 144 Nursing Home Pension Fund v. v. Honeywell Int'l Inc.,* No. 00-3605 DRD, 2000 U.S. Dist. LEXIS 16712 at *13-14 (D.N.J. Nov. 16, 2000) (citing declarations submitted by plaintiff which establish that it is a "group" within the meaning of the PSLRA). In sum, the Court concludes that Northern Oak is not an adequate plaintiff.

> FN8. In *Takeda v. Turbodyne Techs., Inc.,* 67 F.Supp. 1129 (C.D.Cal.1999), another case cited by Northern Oak-Tomei, a competing proposed lead plaintiff argued that some of the losses incurred by the investment advisor were on behalf of his clients, as opposed to his company. *Id.* at 1136 n. 18. The court rejected this contention, stating that it "fails to see how this detracts from [the investment advisor's] suitability as a lead plaintiff." *Id.*

However, the *Takeda* court provides no legal analysis nor cites any case law to support these observations. As such, the court's observations are of dubious value to the Court in analyzing the instant action.

*7 With Northern Oak now excluded from consideration, the next question is whether Tomei is an adequate plaintiff. (Weaver Decl. Ex. B.) There is no dispute that Tomei, with $8 million in claimed losses, has a larger financial stake than compared to any of the remaining plaintiffs. However, the vast majority of these losses were not incurred by Tomei personally, but rather, by "certain family trusts" of which he is the trustee. (Tomei Decl. ¶ 1; Northern Oak-Tomei Reply at 6.) While there is no dispute that a trustee has standing to bring a securities fraud action, the problem here is that Tomei is seeking appointment as lead counsel in his *individual* capacity, *not* as a "trustee" of his family trusts. (Hickam-Makadia Opp'n at 6.)) This fact is readily apparent from both the Notice of Motion and the Proposed Order submitted by Northern Oak-Tomei, which make no mention of appointing Tomei in the capacity of the trustee of his family trusts. Notably, Tomei was unable to sufficiently explain this omission at the hearing on the instant motion. Therefore, for purposes of the instant motions, the Court finds that Tomei's losses are limited to $88,629.80 for the purpose of assessing his financial interest in the litigation. In addition, for reasons discussed below, the Court does not consider Tomei to be an adequate plaintiff.

### b. *Detroit*

Aside from Northern Oak and Tomei, the plaintiff claiming the next largest financial stake is Detroit, an institutional investor, with an alleged loss of $1,447,435.00. (Sheils Decl. ¶ 2.) As an initial matter, the Court has serious concerns regarding the accuracy of this figure. In their opposition papers, Hickam-Makadia expressly argues that Detroit's claimed loss of $1,447,435.00 and the method of calculating this figure are "patently wrong." (Hickam-Makadia Opp'n at 2.) Tellingly, Detroit makes no attempt to address this issue in its Reply brief. When questioned by the Court at the hearing

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00162-JJF    Document 112-3    Filed 05/09/2006    Page 32 of 34

Not Reported in F.Supp.2d                                                                    Page 8

Not Reported in F.Supp.2d, 2002 WL 32818827 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

regarding this matter, Detroit summarily affirmed the accuracy of its stated loss and explained that it used the first-in first-out ("FIFO") method of accounting in which specific sales are matched to specific purchases. However, because such an approach encompasses purchases made outside the class period, courts have generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases. *See See In re Comdisco Secs. Litig.,* 150 F.Supp. 943, 945-46 (N.D.Ill.2001) (citing cases); *see also In re Clearly Canadian Secs. Litig.,* No. C 93-1037 VRW, 1999 WL 707737 at *4 (N.D.Cal. Sept.3, 1999) ("use of the ' first in, first out' method of pairing purchases and sales of shares will identify damages where in reality there may be none; the 'FIFO' assumption is in no way based on actual trading practices in general, let alone the trades of actual claimants.").

Aside from the infirmity of Detroit's loss calculation, the Court notes that Detroit purchased 64,100 shares of Calpine stock, *but sold almost twice that amount*-152,000 shares-during the Class Period. (*Id.* Ex. 1.) This fact undermines Detroit's contention that it has the largest financial interest in this case aside from Northern Oak-Tomei. *See Critical Path,* 156 F.Supp. at 1108 ("the number of net shares purchased during the class period is determinative" of which party has the "largest financial interest"). Indeed, it is apparent that Detroit may have actually profited, not suffered losses, as a result of the allegedly artificially inflated stock price. *See Comdisco,* 150 F.Supp. at 945-46 (finding that plaintiff which sold more shares than it purchased during the class period was "totally out of the running for designation as lead plaintiff"). Therefore, the Court removes Detroit from consideration for appointment as lead plaintiff.

c. *Hickam-Makadia*

*8 Hickam-Makadia collectively purchased 71,000 shares during the Class Period and suffered losses of $435,216.60 (Seidman Decl. Ex. B), which suggests that they are the plaintiffs with the next largest financial interest in this case. However, Hickam is disqualified from serving as a lead plaintiff by virtue of the fact that he admittedly sold

Calpine stock "short" during the Class Period. *See Critical Path,* 156 F.Supp.2d at 1111 (finding that history of short selling stock in issue disqualified investor from appointment as lead plaintiff in securities fraud class action because "[s]hort sales raise the question of whether the seller was actually relying on the market price, and the class is not served by its representative coming under such scrutiny."). Since Hickam is not a suitable lead plaintiff, the Court must consider which of the remaining plaintiffs should be appointed in this action.

d. *The Remaining Plaintiffs*

The plaintiffs remaining for consideration are Makadia and Local 1298. As an institutional entity, Local 1298 is preferable to an individual plaintiff such as Makadia. *See In re Conseco, Inc. Sec. Litig.,* 120 F.Supp.2d 729, 734 (S.D.Ind.2000) ( "Congress has expressed a preference for institutional investors to be appointed lead plaintiff" ). However, there is no evidence establishing that Local 1298 is a large institutional investor nor that it has any greater incentive to litigate this case than Makadia. In addition, Local 1298's financial interest is significantly less than compared to Makadia. Local 1298 purchased 1,100 shares during the Class Period, for a loss of $43,827.00 compared to Makadia, who purchased 16,000 shares and suffered losses of $163,108.00.

> FN9. Tomei, in his individual capacity, is also available for appointment as lead plaintiff. Between the individual plaintiffs, Makadia and Tomei, Makadia is preferable since he purchased the greater number of Calpine shares and sustained a much larger monetary loss.

Neither party, standing alone, is a particularly ideal lead plaintiff. As such, subject to the Rule 23 analysis set forth below, the Court exercises its discretion and appoints Local 1298 and Makadia as co-lead plaintiffs. The Court finds that appointing both an institutional and an individual investor to serve as co-lead plaintiffs will ensure that all class

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 32818827 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

members will adequately be represented in the prosecution of this action. *See In re Oxford Health Plans, Inc. Secs. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y.1998) (appointing individual investors with an institutional investor as co-lead plaintiffs).

### 2. *Rule 23 Qualifications*

Under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc), the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a)(3) requires that the claims or defenses of the representative parties be " typical" of those of the class. "[A] named plaintiff's claim is typical if it stems from the same event, practice, or course of conduct that forms the basis of the class claims and is based on the same legal or remedial theory." *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1321 (9th Cir.1982). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon,* 976 F.2d at 508. The test for assessing typicality is "whether other members have the *same or similar injury,* whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (emphasis added).

*\*9 The claims of Makadia and Local 1298 are typical of the unnamed plaintiff class. Both acquired securities during the Class Period, at prices allegedly inflated by the defendants' misconduct, and sustained damages as a result. Finally, as with all of the actions filed, Makadia and Local 1298 allege that the defendants violated federal securities law by publicly disseminating materially false and misleading statements about Calpine during the Class Period. Their claims can be said to be co-extensive with those of the class in that they arise from the alleged misconduct and seek relief under the same legal theories. Therefore, their claims are typical of the class.

Rule 23(a) also requires that the person representing the class be able "fairly and adequately to protect the interests" of all members of the class. *See* Fed.R.Civ.P. 23(a)(4). "The Ninth Circuit has held

that representation is 'adequate' when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive." *Takeda,* 67 F.Supp.2d at 1137 (citing *In re Northern Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig.,* 693 F.2d 847, 855 (9th Cir.1982)). "In addition, the class representative must have a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.*

Makadia and Local 1298 collectively have a significant financial stake in the action, and therefore, they may be assumed to have a strong interest in fully prosecuting this action. *See Cendant Corp.,* 182 F.R.D. at 148 (public pension fund had " significant holdings in each type of security held by the putative plaintiff class and have suffered enormous losses. It is unrealistic to assume that they would not travel every avenue that could potentially enhance their potential recovery."). They have also submitted sworn declarations confirming it is willing to serve as class representative and to assume the responsibilities which adhere. The Court is satisfied that Makadia and Local 1298 will fairly and adequately represent the best interests of the class.

For all of the foregoing reasons, the Court finds that it is appropriate to appoint Makadia and Local 1298 as co-lead plaintiffs.

### 3. *Appointment of Counsel*

The PSLRA grants the lead plaintiff the discretion to select lead counsel of its choosing. 15 U.S.C. § § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."). Makadia and Local 1298 have chosen Bernstein Liebhard & Lifshitz, LLP and Schoengold & Sporn, P.C., respectively, as their lead counsel. Based on the record presented, the Court is satisfied that both firms, serving in a co-lead counsel capacity, are sufficiently competent and experienced to warrant their appointment in this case. "This is done with the understanding that *there shall be no duplication*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 32818827 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

*of attorney's services and that the use of co-lead counsel will not in any way increase attorney's fees and expenses." In re Oxford Health Plans,* 182 F.R.D. at 50 (emphasis added). In addition, all expenses shall be financed equally by both firms. *Id.*

### CONCLUSION

**\*10** For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Laborers Local 1298 Pension Fund's Motion for Consolidation, Appointment of Lead Plaintiff and Approval of Lead Counsel [Docket No. 28] is GRANTED;

2. The Motion of the Policemen and Firemen Retirement System of the City of Detroit to Appoint It as Lead Plaintiff and for Approval of Its Selection of Lead Counsel [Docket No. 15] is DENIED;

3. Andre W.L. Hickam and Mansukh B. Makadia's Motion to Consolidate Related Cases, Appoint Lead Plaintiffs, and for Approval of Lead Counsel [Docket No. 23] is GRANTED IN PART AND DENIED IN PART;

4. Northern Oak Capital Management, Inc. and Vincent H. Tomei's Motion to Appoint Northern Oak Capital Management, Inc. and Vincent H. Tomei as Lead Plaintiff and to Approve Lead Plaintiff's Choice of Lead Counsel [Docket No. 22] is DENIED;

5. Northern Oak Capital Management, Inc. and Vincent H. Tomei's Motion to Consolidate Related Actions and Preserve Documents [Docket No. 26] is GRANTED IN PART AND DENIED IN PART;

6. Laborers Local 1298 Pension Fund and Mansukh B. Makadia are appointed as co-lead plaintiffs in this action, and Bernstein Liebhard & Lifshitz, LLP, and Schoengold & Sporn, P.C. are appointed as co-lead counsel; and

7. The Court will separately issue an Order Consolidating Related Actions concurrent with the instant Order.

IT IS SO ORDERED.

N.D.Cal.,2002.
Weisz v. Calpine Corp.
Not Reported in F.Supp.2d, 2002 WL 32818827 (N.D.Cal.)

Briefs and Other Related Documents (Back to top)

• 4:02cv01200 (Docket) (Mar. 11, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.