# Exhibit C

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE JPMORGAN CHASE & CO. SECURITIES
LITIGATION

:
:  MDL Docket No. 1783
:
:
:
:

## MEMORANDUM IN OPPOSITION TO SAMUEL I. HYLAND'S
## MOTION FOR CENTRALIZATION

Dr. Stephen Blau, the Court-appointed Lead Plaintiff in *Blau v. Harrison, et al.*, Case No.

04 C 6592 (N.D. Ill.) (Hibbler, J.) (the "Illinois Action"), respectfully submits this memorandum

in opposition to the motion of Samuel I. Hyland ("Hyland") to centralize the following three

cases in the District of Delaware:

1.   the Illinois Action, filed by Dr. Blau on October 13, 2004, which was upheld by
     Judge Hibbler who denied defendants' motion to dismiss;

2.   *Hyland v. Harrison, et al.*, Case No. 1:05-cv-162 (D. Del.) (Farnan, J.), filed by
     Hyland and his co-plaintiff Stephanie I. Speakman ("Hyland Plaintiffs") on
     March 17, 2005, which Judge Farnan stayed in favor of the Illinois Action (the
     "Hyland Action") without ruling on the sufficiency of the complaint; and

3.   *Hyland v. J.P. Morgan Securities, Inc.*, 1:06-cv-224 (D. Del.) (Farnan, J.), which
     Hyland, without his co-plaintiff in the Hyland Action, filed on April 6, 2006 (the
     "Second Hyland Action") – the same day that he filed the instant motion for
     centralization – and, which, except for a few cosmetic changes, is nearly identical
     to the Hyland Action.

## PRELIMINARY STATEMENT

This motion is the latest in a series of unscrupulous tactics by the Hyland Plaintiffs to subvert the January 2005 order of Judge Hibbler appointing Dr. Blau lead plaintiff and Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") lead counsel in the first-filed Illinois Action (the "Lead Plaintiff Order"), which was properly entered in strict compliance with the procedures set forth in the Private Securities Litigation and Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b). Since the beginning, the modus operandi of the Hyland Plaintiffs – and, now, Hyland alone – has been to attempt to evade the orders of one federal court by asking a sister federal court to sit in review of those orders. Thus, the Hyland Plaintiffs, despite not having moved for lead plaintiff in the Illinois Action, filed the nearly identical Hyland Action in Delaware and, without telling Judge Farnan about the Lead Plaintiff Order, got themselves appointed lead plaintiffs in that action. They then made procedurally improper *amicus curiae* submissions in the Illinois Action accusing Dr. Blau and his counsel of being inadequate class representatives – accusations that Judge Hibbler rejected – but nonetheless continued to make the very same arguments before Judge Farnan in opposing Dr. Blau's motion to intervene and stay the Hyland Action, as well as in three additional motions they filed to enjoin the Illinois Action, to depose Dr. Blau and to disqualify Wolf Haldenstein. In other words, the Hyland Plaintiffs first did an end run around the Lead Plaintiff Order by filing the Hyland Action, then asked Judge Hibbler to vacate his own Lead Plaintiff Order, and, after Judge Hibbler refused, asked Judge Farnan to disturb Judge Hibbler's Lead Plaintiff Order by letting the Hyland Action go forward in Delaware despite having violated the PSLRA and the Lead Plaintiff Order by filing the Hyland Action.

Not surprisingly, after learning of the Hyland Plaintiffs' conduct in Dr. Blau's intervention motion, Judge Farnan granted Dr. Blau's motion to intervene and stayed the Hyland

Action in deference to the Illinois Action, and also denied the Hyland Plaintiffs' other motions, including their motion to take the deposition of Dr. Blau. Undeterred, the Hyland Plaintiffs then mounted an assault on two fronts, filing a motion before Judge Farnan to reconsider his stay order and simultaneously filing a motion before Judge Hibbler to intervene in the Illinois Action to take Dr. Blau's deposition – a motion, like the motion that had just been denied by Judge Farnan, was directed at the adequacy of Dr. Blau as lead plaintiff – even though Judge Hibbler had twice ruled that Dr. Blau was properly appointed lead plaintiff and Judge Farnan had stayed the Hyland Action because the Hyland Plaintiffs had circumvented the lead plaintiff process in the Illinois Action. Judges Farnan and Hibbler both denied the Hyland Plaintiffs' motions, agreeing that the only action that should go forward was the Illinois Action. The jig was up for the Hyland Plaintiffs and their clever ploy of bouncing between the Illinois and Delaware District Courts to evade properly entered court orders came to an abrupt end.

Literally left with no place to go to challenge both judges' steadfast refusal to depart from the requirements of the PSLRA, and their refusal to disturb each other's orders, Hyland but, tellingly, not his co-plaintiff in the stayed Hyland Action, filed the Second Hyland Action,[1] which is predicated on the same wrongdoing as the Hyland Action (and the Illinois Action), and simultaneously moved before this Panel to centralize the newly constituted "three actions" in the District of Delaware – not in Illinois where Dr. Blau's complaint has already survived a motion to dismiss and where discovery requests have been served – with the obvious goal of getting yet another shot at arguing that he should be permitted to replace Dr. Blau as lead plaintiff. The

---

[1]  Dr. Blau has moved to consolidate the Hyland Action and the Second Hyland Action, which is also assigned to Judge Farnan, and stay the Second Hyland Action in favor of the Illinois Action. *See* Section Hyland Action Docket (Ex. A) at D.I. 7 and D.I. 8.

Second Hyland Action is simply a ploy to get before the Panel, because Hyland would be hard-pressed to argue for centralization if, as was the case the day before he simultaneously filed this motion and the Second Hyland Action, there were two cases, and one was stayed in favor of the other.

Even if centralization were proper, and it is not, the two potential transferee courts have already rejected Hyland's bid to replace Dr. Blau and his counsel and, in essence, have determined that, despite the Hyland Plaintiffs' protests, Illinois is a proper venue for this case. Hyland asks this Panel to sit in review of both of those courts – and effectively reverse their orders – and transfer the Illinois Action and the "two" Delaware actions, one of which Judge Farnan has already stayed and the other of which he has been asked to stay, back to Judge Farnan. The Panel should not divest Judge Hibbler who is the judge most familiar with the factual and legal issues underlying these cases, of authority over the Illinois Action, and should deny Hyland's patently improper motion for centralization. If the Panel determines that centralization is warranted, the cases should be transferred to Judge Hibbler who presides over the Illinois Action, the only case in which a lead plaintiff has been appointed in accordance with the strictures of the PSLRA, and which two federal courts have ruled should proceed.

## BACKGROUND

**The Illinois Action.** Dr. Blau, on behalf of a class of J.P. Morgan shareholders,[2]

---

[2] The class was initially defined as all those who held common stock of J.P. Morgan on either April 2, 2004 (the record date), or at any time from April 19, 2004 (the proxy date) through July 1, 2004 (the date on which the merger was consummated). In denying defendants' motion to dismiss in the Illinois Action, Judge Hibbler limited the class to individuals who held shares on the voting date for the merger, with leave to amend. *See Blau v. Harrison*, No. 04-6592, 2006 U.S. Dist. LEXIS 19795 (N.D. Ill. Mar. 24, 2006). Dr. Blau filed a second amended complaint with a conforming class definition on April 10, 2006. *See* Ex. B.

commenced the Illinois Action on October 13, 2004 and was appointed lead plaintiff on January 5, 2005.[3]  The Illinois Action asserts claims under Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) and 78t(a), against J.P. Morgan Chase & Co. ("J.P. Morgan") and its directors for their negligent failure to disclose that William B. Harrison, the then CEO of J.P. Morgan, had rejected an offer from James Dimon, the then CEO of Bank One Corporation ("Bank One"), to merge the companies with no premium on the condition that Dimon could immediately assume the helm of the combined entity upon consummation. Harrison's rejection of that offer resulted in a 14% premium in favor of Bank One shareholders at a cost of $7 billion to J.P. Morgan shareholders. *See* Ex. B.  On April 22, 2005, defendants filed a motion to dismiss Dr. Blau's complaint, which Judge Hibbler denied on March 24, 2006. *See Blau v. Harrison*, No. 04-6592, 2006 U.S. Dist. LEXIS 19795 (N.D. Ill. Mar. 24, 2006).  On April 7, 2006, defendants filed a motion for partial reconsideration of Judge Hibbler's rulings and for certification for interlocutory appeal on the issue of materiality, which, after oral argument on April 26, 2006, was denied by Judge Hibbler from the bench. *See* Illinois Action Docket (Ex. D) at D.I. 109. Judge Hibbler ordered defendants to file their answer on May 15, 2006 and scheduled a status conference for May 31, 2006. *Id.*  On May 1, 2006, Dr. Blau served document requests on defendants as well as a proposed joint scheduling order for pretrial proceedings. *See* Ex. E.

**The Stayed Action.**  On March 17, 2005, five months after Dr. Blau filed the Illinois

---

[3]  On December 14, 2004, American Growth Fund, Inc. ("AGF") also moved to be appointed lead plaintiffs in the Illinois Action with Wolf Haldenstein as lead counsel.  On January 5, 2005, the Illinois District Court appointed both Dr. Blau and AGF as lead plaintiffs.  Subsequently, AGF elected to withdraw as lead plaintiff and, on February 18, 2005, Wolf Haldenstein filed the necessary papers with the court. *See* Ex. C.

Action and over two months after the entry of the Lead Plaintiff Order, the Hyland Plaintiffs circumvented the Illinois Action, and violating the clear provisions of the PSLRA, and in contravention of the Lead Plaintiff Order, filed the Hyland Action, which is premised on the same facts as the Illinois Action, in Delaware. *See* Hyland Action Docket (Ex. F) and (Ex. G.)

Significantly, counsel for the Hyland Plaintiffs, Joseph N. Gielata, previously represented a separate set of clients in a related class action in the Delaware Chancery Court captioned *In re J.P. Morgan Chase & Co., Shareholder Litigation*, Consolidated C.A. No. 531-N (Lamb, V.C.),[4] while he was associated with the firm of Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss"). *See* Ex. H. By March 17, 2005, Mr. Gielata's employment at Milberg Weiss had come to an end, and on that day, in addition to filing the federal action, Mr. Gielata attempted to convince the Chancery Court to *sua sponte* dismiss the state action – an action in which he represented the plaintiffs – or to stay it in favor of the newly filed federal action, in which he represented a different group of plaintiffs. *See* Ex. I. When the Chancery Court refused his request, Mr. Gielata, on behalf of the Hyland Plaintiffs, made a motion in the District Court to enjoin the prosecution of the Chancery Court action, which Judge Farnan denied. *See* Ex. F at D.I. 19. In short, Mr. Gielata attempted to "take" the state case away from his former employer, Milberg Weiss, by bringing a nearly identical case in federal court with new clients.[5]

---

[4]  The Chancery Court Action has since been dismissed on the grounds that the common law claims therein should have been brought derivatively and not directly. The dismissal therefore was not on the merits. *See In re J.P. Morgan Chase & Co. Sec. Litig.*, 2006 Del. LEXIS 124 (Del. Mar. 8, 2006).

[5]  Mr. Gielata is currently facing a felony indictment pending in the Delaware Superior Court and is the subject of disciplinary proceedings in Delaware. By order dated August 9, 2005, the Supreme Court of Delaware indefinitely discontinued the petition filed against Mr. Gielata by the Office of Disciplinary Counsel for the Supreme Court of Delaware's petition for an interim suspension of Mr. Gielata's law license, on the condition that Mr. Gielata notify his clients and "each court before which he appeared" of (continued...)

When that attempt failed, the Hyland Plaintiffs, who did not move for lead plaintiff in the Illinois Action during the statutorily mandated period, and their counsel set their sights on getting control over the Illinois Action. Thus, concurrently with the filing of their lead plaintiff motion in Delaware, the Hyland Plaintiffs made the first of their numerous improper *amicus curiae* submissions in Illinois asking the court to vacate its Lead Plaintiff Order and to *sua sponte* transfer the Illinois Action to Delaware. *See* Ex. K. The basis of the Hyland Plaintiffs' procedurally improper request was the argument that Dr. Blau was an "illusory" client supposedly because AGF, formerly one of the court-appointed lead plaintiffs in the Illinois Action, had elected to withdraw. The Hyland Plaintiffs also made the serious charge, which Hyland continues to do here, that Dr. Blau's complaint was a "copycat" of the Delaware Chancery Court complaint, which is unfounded.[6] Judge Hibbler, after inviting the parties to submit papers and holding a conference, rejected the Hyland Plaintiffs' arguments, determined that the Hyland Plaintiffs' accusations concerning the alleged inadequacy of Dr. Blau and his counsel were adequately addressed and refused to disturb the Lead Plaintiff Order:

> "I [Judge Hibbler] am not going to ...make any further order on his [Mr. Gielata's] motions regarding the propriety of lead counsel or his other assertions in his papers.... As far as this Court in concerned, lead counsel remains lead counsel ...[regarding lead plaintiff] the notices ...were proper, the lead plaintiff has indicated a willingness, and the Court has found that he is a proper lead plaintiff."

---

(...continued)

the indictment. *See* Ex. J at ¶ 104. Based on the publicly filed documents in this MDL proceeding, it appears that Mr. Gielata has not notified the Panel of his felony indictment as required by that order.

[6] The substantive allegations of the two complaints are substantially different although both quote extensively from relevant press reports. *Cf.* Ex. B *with* Ex. H.

*See* Ex. L at 10-12.

On August 26, 2005, Dr. Blau moved to intervene in the Hyland Action for the purpose of securing a stay so that he could protect the interests of the class by actively litigating the Illinois Action without interference from the Hyland Plaintiffs. *See* Ex. F at D.I. 58. In response, and while briefing on the intervention motion was underway, the Hyland Plaintiffs filed no fewer than three motions attacking the alleged inadequacy of Dr. Blau and his counsel: on September 15, 2005, they filed a motion to disqualify Wolf Haldenstein; on September 22, 2005, they filed a motion to enjoin further prosecution of the Illinois Action; and, on November 30, 2005, they filed a motion to take the deposition of Dr. Blau. *Id.,* at D.I. 64, D.I. 68 and D.I 84. All of these motions, like the patently improper *amicus curiae* submissions, were based on the very same arguments rejected by Judge Hibbler.

**Judge Farnan's Stay Order**. On February 7, 2006, Judge Farnan granted Dr. Blau's motion to intervene, and, having granted intervention, stayed the Hyland Action in deference to the first-filed Illinois Action. *Hyland v. Harrison*, C.A. No. 05-162, 2006 U.S. Dist. LEXIS 5744, at *22 (D. Del. Feb. 7, 2006).

In granting intervention, Judge Farnan ruled that the Hyland Plaintiffs would not be prejudiced because the Hyland Action was at a relatively early stage, noting that the only substantive order that had been entered in the case was the conditional lead plaintiff order. *Id.*, at *22. Judge Farnan also rejected the Hyland Plaintiffs' argument that Dr. Blau sought to intervene for an improper purpose, ruling instead that it appeared that "Dr. Blau's interest lies in preserving the jurisdiction of the Illinois District Court and recovering for the class of investors he represents," and that he "appears to have every intention of pressing his claims." *Id.*

The court, moreover, found that the appointment of Dr. Blau as lead plaintiff and Wolf Haldenstein as lead counsel were "consistent with the procedures of the PSLRA," and ruled that if "the Hyland Plaintiffs wished to challenge [the Illinois Court's] decision, their remedy was not to file a second action in this Court, but to follow the procedures laid out in the PSLRA and contest that decision in the Illinois District Court." 2006 U.S. Dist. LEXIS 5744, at *22. Judge Farnan found that the Hyland Plaintiffs "circumvented" these procedures by filing the Hyland Action and making the *amicus curiae* submissions in the Illinois Action. The court, noting that Judge Hibbler "considered and rejected the arguments of the Hyland Plaintiffs concerning the appointment of Dr. Blau as lead counsel," announced that it "will not second-guess the decisions of the Illinois District Court on this matter." *Id.*, at **22-23.

Judge Farnan also ruled that the Hyland Plaintiffs' interests would not be prejudiced by a stay in favor of the Illinois Action because "a stay will adequately preserve the interests of the Hyland Plaintiffs in this action, while simultaneously allowing their interests to be served in the Illinois Action to the extent their claims are being pressed there." *Id.*, at *23. The court then crafted a carefully tailored stay set to expire at the resolution of the Illinois Action, at which time "the stay can be lifted here, and this action then proceed to its end." *Id.* The court also ruled that the parties may move to lift the stay at any time. Given the stay, the Court denied as moot Plaintiffs' motion to enjoin the Illinois Action.[7]

On February 17, 2006, the Hyland Plaintiffs filed a motion to reopen and reconsider the Stay Order, which was denied in its entirety by Judge Farnan on April 27, 2006. *See* Ex. N.

---

[7] By order dated February 9, 2006, Judge Farnan also denied the Hyland Plaintiffs' motion to disqualify Wolf Haldenstein and to take the deposition of Dr. Blau concerning his adequacy as lead plaintiff. *See* Ex. M.

437764v5

**The Hyland Plaintiffs Attempt To Circumvent The Stay Order.** On February 17, 2006, concurrently with the filing of their motion for reconsideration of the Stay Order, the Hyland Plaintiffs, in flagrant disregard of the Stay Order, filed a motion to intervene in the Illinois Action. *See* Ex. D at D.I. 77. Judge Hibbler denied that motion in its entirety, writing:

> [t]his Court is not persuaded that the Hyland Plaintiff's interests are not adequately represented in the Illinois Action. Other than surreptitious filings regarding Dr. Blau's appointment as lead Plaintiff, the Hyland Plaintiffs have failed to demonstrate that Dr. Blau has failed to adequately represent their interests thus far in the proceedings. Indeed, this Court previously determined that Dr. Blau is an appropriate lead Plaintiff.

*Blau v. Harrison,* 2006 U.S. Dist. LEXIS 9822, at *10 (N.D. Ill. Mar. 8, 2006).

Significantly, the Hyland Plaintiffs' intervention motion represented a complete about-face from their prior position — which they espouse again here — that venue is improper in Illinois. Judge Hibbler made a direct reference to the Hyland Plaintiffs' self-serving tactics, noting that while they now were seeking to intervene in the Illinois Action, "the Hyland Plaintiffs [previously] strategically chose not to intervene for fear of subjecting their claims to jurisdiction in Illinois." 2006 U.S. Dist. LEXIS 9822, at *9.

On March 24, 2006, less than two weeks later, Judge Hibbler upheld Dr. Blau's complaint and denied defendants' motion to dismiss the Illinois Action, and subsequently denied defendants' motion to reconsider his rulings. *Blau v. Harrison,* No. 04-6592, 2006 U.S. Dist. LEXIS 19795 (N.D. Ill. Mar. 24, 2006). Dr. Blau has served discovery requests and document discovery is poised to begin in short order. *See* Ex. E.

**The Second Hyland Action.** On April 6, 2006, after the Stay Order and the denial of defendants' motion to dismiss in Illinois, Hyland filed the Second Hyland Action in Delaware, which he admits is "related" to the Stayed Hyland Action and the Illinois Action. *See* Ex. O. In his memorandum in support of his motion for centralization, Hyland admits the three actions

"are all premised on the central allegation that JPMC's former CEO wrongfully rejected a superior merger opportunity solely to entrench himself," which "opportunity was then concealed from JPMC's shareholders when they decided whether or not to vote for the Merger." Hyland Mem. at 3-4. Indeed, the only differences between the stayed Hyland Action and the Second Hyland Action are that the defendant in the second action is J.P. Morgan Securities Inc. ("J.P.M.S."), a wholly-owned subsidiary of J.P. Morgan, a defendant in the Stayed Action, and that the claims against J.P.M.S. derive from its role as the investment advisor to J.P. Morgan, which issued the misleading proxy statement at issue. The Hyland Plaintiffs litigated their claims against J.P. Morgan and the other defendants in Delaware for over a year without adding any new claims or defendants. It is only after Judge Farnan stayed the Hyland Action and Judge Hibbler upheld the complaint in the Illinois Action that Hyland filed a second action arising from the same exact wrongdoing, but naming only J.P.M.S. as a defendant. Prior to the Stay Order, the Hyland Plaintiffs could have moved to amend their complaint to assert these claims, but did not. The complaints in the two actions contain identical language in most of the 43 pages covering the substantive allegations.[8] Most of the changes are purely cosmetic, such as renaming a section entitled "Harrison's Secret Deal: the Merger of Jupiter and Apollo" in the first complaint as "The Entrenchment Scheme: Merging Jupiter and Apollo" in the second complaint. The New Hyland Action is simply a basis for Hyland to claim that there are "two actions" pending in Delaware so that he and his counsel can continue their vexations efforts to seize control of the Illinois Action and capitalize on the successes of Dr. Blau in that case.

---

[8]   Compare substantive allegations in the Hyland Action Complaint ("HAC") (Ex. G) with the corresponding ones in the Second Hyland Action Complaint ("SHAC") (Ex. O): ¶¶ 55 to 70 HAC with ¶¶ 53 to 75 SHAC; ¶¶ 74 to 145 HAC with ¶¶ 79 to 152 SHAC; ¶¶ 146-148 HAC with ¶¶ 153, 154, 156 SHAC; ¶ 149 HAC with ¶ 157 SHAC; and ¶¶ 150 to 161 HAC with ¶¶ 159 to 168 SHAC.

On April 18, 2006, Dr. Blau filed a motion to consolidate the Second Hyland Action with the stayed Hyland Action and to stay the Second Hyland Action in favor of the Illinois Action. That motion remains *sub judice*.

## ARGUMENT

### I.    CENTRALIZATION IS NOT WARRANTED

Under 28 U.S.C. § 1407, "when civil actions involving one or more common questions of fact are pending in different districts," the Judicial Panel on Multidistrict Litigation may direct that the cases be transferred to one district if it finds that coordinated or consolidated pretrial proceedings will "promote the just and efficient conduct of this litigation," as well as "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." Here, centralization is not necessary to achieve these goals, because the Delaware District Court and the Illinois District Court, in deference to each other's properly decided orders, have both agreed that the Illinois Action should proceed and the Hyland Action should be stayed pending its outcome[9] – clearly, the most efficient and effective way to proceed. The Second Hyland Action, which arises out of precisely the same facts as those two actions, may be stayed by Judge Farnan, and, even if it is not, duplicative discovery and inconsistent pretrial rulings can be avoided by consultation and cooperation among the parties, which the Panel favors where, as here, there are only a few actions at issue.

Contrary to Hyland's characterization, because the Stay Order in favor of the Illinois Action is in effect, there are not three, but effectively two actions the Panel is asked to centralize.

---

[9] "The Panel has neither the statutory authority nor the inclination to review decisions of district courts, whether they are transferor or transferee courts." *In re Data General Corporation Antitrust Litigation*, 510 F. Supp. 1220, 1226-27 (J.P.M.L. 1979).

The Panel has consistently ruled that when the MDL docket consists of a small number of actions, the movant bears a heavy burden of persuading the Panel that common questions of fact are sufficiently complex or that the accompanying discovery will be so time consuming as to justify transfer under section 1407. *See, e.g., In re Dun & Bradstreet, Inc., "Colorado Notice" Debt Collection Practices Litig.*, No. 1288, 1999 U.S. Dist. LEXIS 12571, at *2 (J.P.M.L. Aug. 12, 1999) (denying centralization because "[i]n this docket containing just three actions in two districts, movants have failed to persuade us that any common questions of fact (as opposed to law) are sufficiently complex, or that the accompanying discovery will be so time-consuming, to justify Section 1407 transfer"); *In re Credit Collection Servs. Debt Collection Practices Litig.*, 1998 U.S. Dist. LEXIS 19117, at *2 (J.P.M.L. Nov. 25, 1998); *North Star Steel Co. v. MidAmerican Energy Holdings Co.*, No. 794, 1998 U.S. Dist. LEXIS 4491, at *2 (J.P.M.L. Apr. 3, 1998); *In re "The Best of the 20th Century" Advertising Litig.*, No. 1251, 1998 U.S. Dist. LEXIS 18761, at *2 (J.P.M.L. Dec. 1, 1998); *In re McWhirter Distributing Co.*, No. 794, 1988 U.S. Dist. LEXIS 17017, at **1-2 (J.P.M.L. Nov. 23, 1988); *In re 21st Century Prod., Inc. "Thrilsphere" Contract Litig.*, 448 F. Supp. 271, at 273 (J.P.M.L. 1978); *In re Raymond Lee Org., Inc. Sec. Litig.*, 446 F. Supp. 1266 (J.P.M.L. 1978).

The Panel's reluctance to centralize a small number of cases is based on its recognition that in such circumstances it is likely that suitable alternatives to transfer can be used to minimize the possibility of duplicative discovery and inconsistent pretrial rulings. *See In re Qwest Comm'ns Int'l, Inc.*, 395 F. Supp. 2d 1360, 1361 (J.P.M.L. 2005) ("Given the more advanced stage of proceedings in [one district] and the limited number of districts involved, alternatives to transfer exist that can minimize whatever possibilities there might be of duplicative discovery and/or inconsistent pretrial rulings") (citing *In re Eli Lilly and Company*

(Cephalexin Monohydrate) Patent Litig., 446 F. Supp. 242, 244 (J.P.M.L. 1978)); In re Coal-Fired Elec. Utils. Clean Air Act Litig., 162 F. Supp. 2d 696, 697 (J.P.M.L. 2001) (centralization denied where "suitable alternatives to transfer exist in order to minimize the possibility of duplicative discovery, inconsistent pretrial rulings, or both").

Here, a "suitable alternative" is already in place – the Hyland Action has been stayed pending the resolution of the Illinois Action. Moreover, a motion for a stay is pending with respect to the Second Hyland Action. In In re Wyeth Patent Infringement Litig., 445 F. Supp. 992 (J.P.M.L. 1978) – a case involving three actions, in which a motion to stay one action pending the resolution of another action had been filed, but, unlike here, had not been granted – the Panel refused to centralize because only "a minimal number of actions" were involved and suitable alternatives to Section 1407 transfer were available in order to minimize the possibility of duplicative discovery, such as coordinating depositions so that witnesses would not need to be deposed more than once. In Wyeth, the Panel also noted that "[c]onsultation and cooperation among the three courts, if deemed appropriate by those courts, coupled with the cooperation of the parties, would be sufficient to minimize the possibility of conflicting pretrial rulings." 445 F. Supp. at 993 (citing In re Texas Instruments, Inc. Employment Practices Litig., 441 F. Supp. 928, 929 (J.P.M.L. 1977)). There is no basis to doubt that if Judge Farnan does not stay the Second Hyland Action, both Judge Farnan and Judge Hibbler will ensure that the Illinois Action and the Second Hyland Action will proceed as efficiently as possible, and will endeavor to avoid conflicting rulings.

Moreover, the Panel will not ordinarily centralize actions that are at different stages of litigation. See In re Ohmeda, Inc. Anesthesia Sys. Antitrust Litig., No. 1253, 1998 U.S. Dist. LEXIS 18653, at *2 (J.P.M.L. Nov. 25, 1998) (denying transfer where docket contains just two

actions that are at "opposite stages of pretrial readiness"). Hyland argues that all of the actions at issue are "still at an early stage," Hyland Mem. at 4, but that is simply false. Judge Farnan found that the Hyland Action was at an early stage when he stayed it in deference to the earlier-filed Illinois Action and there have been no proceedings whatsoever in the Second Hyland Action, which was filed less than a month ago. In contrast, in the Illinois Action, Judge Hibbler has already denied defendants' motions to dismiss and for reconsideration, and the discovery process has begun.

Hyland's remaining arguments against centralization fare no better. His argument that the Stay Order is "not relevant to this Panel's analysis," Hyland Mem. at 3, is absurd. In *Wyeth*, the Panel found that the *pendency* of a motion to stay one of three cases militated against centralization – here, the Stay Order is already in place, and both Judge Farnan and Judge Hibbler have refused to disturb it, despite the Hyland Plaintiffs' repeated efforts. Surprisingly, the case cited by Hyland in support of his argument is wholly inapposite. *See In re Capital Underwriters, Inc. Sec. Litig.*, 464 F. Supp. 955, 960 (J.P.M.L. 1979) (Hyland Mem. at 3) (finding that a *bankruptcy stay* in a number of actions was irrelevant because it was unrelated to the purposes to be achieved by centralization).

Finally, Hyland badly misrepresents the relevant caselaw when he claims that the Panel "routinely" centralizes two or three cases; centralization under those circumstances is the exception to the rule. Moreover, all of the cases Hyland cites are inapposite. None of them involved a situation where, as here, one case was already stayed in favor of another case, and a third case was brought in an obvious attempt to oust the court presiding over the most advanced case of jurisdiction over pre-trial proceedings. *See In re Rhodia S.A. Sec. Litig.*, 398 F. Supp. 2d 1359 (J.P.M.L. 2005) (the Panel ordered centralization of two cases on an unopposed motion and

none of the cases were stayed); *In re Serv. Corp. Int'l Sec. Litig.*, 323 F. Supp. 2d 1377 (J.P.M.L.

2004) (defendants supported the motion to centralize three actions, none of which were stayed);

*In re Parmalat Sec. Litig.*, 350 F. Supp. 2d 1356 (J.P.M.L. 2004) (involving four actions none of

which were stayed in favor of the other).

## II.    IF THE PANEL NONETHELESS FINDS THAT CENTRALIZATION IS PROPER, THE ACTIONS SHOULD BE CENTRALIZED IN THE NORTHERN DISTRICT OF ILLINOIS

When the Panel decides cases should be transferred – and it should not do so here – the

most important factors in deciding where they should be centralized is the level of advancement

of the cases in the potential transferee courts and the resulting level of familiarity of the potential

transferee judges with the issues in the cases.   *See In re Nos Comm'ns, Inc., Billing Practices*

*Litig.*, No. 1357, 2000 U.S. Dist. LEXIS 14840, at **4-5 (J.P.M.L. Oct. 6, 2000) (transferring

cases to the District of Nevada because the most advanced of three actions was pending in that

district and the judge was already familiar with the issues); *In re Realnetworks, Inc.*, No. 1329,

2000 U.S. Dist. LEXIS 1458, at *4 (J.P.M.L. Feb. 10, 2000) ("We are persuaded that the

Northern District of Illinois is the appropriate transferee district ...We note that [...] motion

practice is proceeding apace in the actions already pending there"); *Nabumetone Patent Litig.*,

No. 1238, 1998 U.S. Dist. LEXIS 13735, at *4 (J.P.M.L. Sept. 2, 1998) (concluding that

Massachusetts was the appropriate transferee forum because it is "where the first filed and

further advanced actions are pending; and all parties are currently litigating there"); *In re*

*Phonometrics, Inc.,* No. 1141, 1996 U.S. Dist. LEXIS 21909, at *3 (J.P.M.L. Dec. 11, 1996) (the

Southern District of Florida is the appropriate transferee forum because, among other things, "the

Florida actions are further advanced and are pending before a judge who has already developed

an extensive familiarity with the issues in this docket"); *see also In re Ephedra Products*

*Liability Litig.*, 314 F. Supp. 2d 1373, 1375 (J.P.M.L. 2004) (entrusting the centralized litigation

to the judge who is already "in the process of establishing procedures for the conduct of the actions brought against one defendant"). These factors clearly favor the Northern District of Illinois because the first-filed Illinois Action is the most advanced and Judge Hibbler, having already ruled on the sufficiency of the pleadings, unquestionably is the judge with the most in-depth knowledge of the relevant issues. Judge Farnan, on the other hand, has not ruled on the sufficiency of the complaint in the Hyland Action and, in fact, has stayed that action.

Moreover, the Illinois Action is the only action in which a lead plaintiff has been properly appointed under the PSLRA. This fact alone mandates that, if the related actions are centralized, they should be transferred to the Northern District of Illinois.

The relative caseloads of Judge Hibbler and Judge Farnan also militates in favor of the Northern District of Illinois. While the Northern District of Illinois, given its location and the larger population subject to its jurisdiction, handles more cases than the District of Delaware, in 2005, Judge Hibbler presided over 150 cases while Judge Farnan presided over 203 cases.

Hyland's argument that Delaware is the appropriate venue because the majority of witnesses and documents are in Delaware lacks merit. Initially, the Panel has consistently ruled that, for purposes of determining the proper transferee district, the location of witnesses and documents is not determinative. *See In re Nos Comm'ns*, 2000 U.S. Dist. LEXIS 14840, at **4-5 ("We note that since Section 1407 transfer is for pretrial proceedings only, there is usually no need for the parties and witnesses to travel to the transferee district for depositions or otherwise.") (citing Fed. R. Civ. P. 45(c)); *In re Visa Int'l Ass'n Internet Gambling Litig.*, No. 1322, 2000 U.S. Dist. LEXIS 2272, at *4 (J.P.M.L. Mar. 1, 2000).

Moreover, contrary to Hyland's claims, the Panel has routinely ruled that the Northern District of Illinois is a central district that is a proper forum for any defendant or witness located

in the United States. *See In re Realnetworks, Inc.,* 2000 U.S. Dist. LEXIS 1458 (finding that the Northern District of Illinois' geographic location makes it a convenient forum for parties located throughout the United States); *In re Wireless Telephone 911 Calls Litig.,* 259 F. Supp. 2d 1372, 1374 (J.P.M.L. 2003) (finding the Northern District of Illinois to be a geographically central location). Indeed, Chicago is a major city for business travel and is a hub for two major airlines, unlike Delaware, which is not as easily accessible by air. Thus, the convenience of witnesses too favors the Northern District of Illinois. Hyland's argument that Delaware is more convenient because relevant documents are located in New York fails because counsel for both Dr. Blau and the defendants have offices in New York and Chicago, and documents can be produced in either location. But the death knell to Hyland's argument is that defendants – who are the only ones with standing to challenge venue in Chicago – have never made a motion to transfer Dr. Blau's action for improper venue.

## CONCLUSION

For the foregoing reasons, Dr. Blau respectfully requests that the Panel deny Hyland's motion for centralization in its entirety, or, if the Panel determines that centralization is proper, that it transfer the cases to the Northern District of Illinois.

Dated: May 4, 2006

Jeffrey G. Smith
Demet Basar
Aya Bouchedid
WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 10016
(212) 545-4600


WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ LLP

Adam Levitt
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603

*Counsel for Plaintiff Dr. Stephen Blau*

# TABLE OF CONTENTS

Page No.

PRELIMINARY STATEMENT ................................................................................... 2

BACKGROUND ........................................................................................................... 4

ARGUMENT ............................................................................................................... 12

    I.    CENTRALIZATION IS NOT WARRANTED................................................ 12

    II.    IF THE PANEL NONETHELESS FINDS THAT CENTRALIZATION IS
          PROPER, THE ACTIONS SHOULD BE CENTRALIZED IN THE NORTHERN
          DISTRICT OF ILLINOIS.................................................................................. 16

CONCLUSION............................................................................................................ 18

### TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*In re 21st Century Production, Inc. "Thrilsphere" Contract Litigation,*
    448 F. Supp. 271 (J.P.M.L. 1978)...........................................................................13

*Blau v. Harrison,*
    No. 04-6592,
    2006 U.S. Dist. LEXIS 19795 (N.D. Ill. Mar. 24, 2006)...................................4n, 5, 10

*Blau v. Harrison,*
    2006 U.S. Dist. LEXIS 9822 (N.D. Ill. Mar. 8, 2006)...........................................9, 10

*In re Capital Underwriters, Inc. Securities Litigation,*
    464 F. Supp. 955 (J.P.M.L. 1979)...........................................................................15

*In re Coal-Fired Electric Utilities Clean Air Act Litigation,*
    162 F. Supp. 2d 696 (J.P.M.L. 2001)...................................................................13, 14

*In re Credit Collection Services Debt Collection Practices Litigation,*
    1998 U.S. Dist. LEXIS 19117 (J.P.M.L. Nov. 25, 1998) ........................................13

*In re Data General Corporation Antitrust Litigation,*
    510 F. Supp. 1220 (J.P.M.L. 1979)........................................................................12n

*In re Dun & Bradstreet, Inc., "Colorado Notice"*
*Debt Collection Practices Litig.,*
    No. 1288,
    1999 U.S. Dist. LEXIS 12571 (J.P.M.L. Aug. 12, 1999) ..........................................13

*In re Ephedra Products Liability Litigation,*
    314 F. Supp. 2d 1373 (J.P.M.L. 2004).....................................................................16

*Hyland v. Harrison,*
    C.A. No. 05-162,
    2006 U.S. Dist. LEXIS 5744 (D. Del. Feb. 7, 2006)................................................8, 9

*In re J. P. Morgan Chase & Co. Shareholder Litigation,,*
    No. 218
    2006 Del. LEXIS 124 (Del. Mar. 8, 2006) ..............................................................6n

*In re McWhirter Distributing Co.,*
    No. 794,
    1988 U.S. Dist. LEXIS 17017 (J.P.M.L. Nov. 23, 1988)............................................13

*Nabumetone Patent Litigation,*
　　No. 1238,
　　1998 U.S. Dist. LEXIS 13735 (J.P.M.L. Sept. 2, 1998) ................................ 16

*North Star Steel Co. v. MidAmerican Energy Holdings Co.,*
　　No. 794,
　　1998 U.S. Dist. LEXIS 4491 (J.P.M.L. Apr. 3, 1998) ................................ 13

*In re Nos Communications, Inc., Billing Practices Litigation,*
　　No. 1357,
　　2000 U.S. Dist. LEXIS 14840 (J.P.M.L. Oct. 6, 2000) ........................ 16, 17

*In re Ohmeda, Inc. Anesthesia Systems Antitrust Litigation,*
　　No. 1253,
　　1998 U.S. Dist. LEXIS 18653 (J.P.M.L. Nov. 25, 1998) ............................ 14

*In re Phonometrics, Inc.,*
　　No. 1141,
　　1996 U.S. Dist. LEXIS 21909 (J.P.M.L. Dec. 11, 1996) ............................ 16

*In re Parmalat Securities Litigation,*
　　350 F. Supp. 2d 1356 (J.P.M.L. 2004) ........................................ 16

*In re Qwest Communications International, Inc.,*
　　395 F. Supp. 2d 1360 (J.P.M.L. 2005) ........................................ 13

*In re Raymond Lee Org., Inc. Securities Litigation,*
　　446 F. Supp. 1266 (J.P.M.L. 1978) .......................................... 13

*In re Realnetworks, Inc.,*
　　No. 1329,
　　2000 U.S. Dist. LEXIS 1458 (J.P.M.L. Feb. 10, 2000) .................. 16, 17, 18

*In re Rhodia S.A. Securities Litigation,*
　　398 F. Supp. 2d 1359 (J.P.M.L. 2005) ........................................ 15

*In re Service Corp. International Securities Litigation,*
　　323 F. Supp. 2d 1377 (J.P.M.L. 2004) ........................................ 15

*In re "The Best of the 20th Century" Advertising Litigation,*
　　No. 1251,
　　1998 U.S. Dist. LEXIS 18761 (J.P.M.L. Dec. 1, 1998) ............................ 13

*In re Visa Int'l Association Internet Gambling Litigation,*
  No. 1322,
  2000 U.S. Dist. LEXIS 2272 (J.P.M.L. Mar. 1, 2000) ...............................................17

*In re Wireless Telephone 911 Calls Litigation,*
  259 F. Supp. 2d 1372 (J.P.M.L. 2003).........................................................................18

*In re Wyeth Patent Infringement Litigation,*
  445 F. Supp. 992 (J.P.M.L. 1978).........................................................................14, 15

## STATUTES AND RULES

28 U.S.C. § 1407........................................................................................................ *passim*

Fed. R. Civ. P. 45(c) ............................................................................................................17

PSLRA
  15 U.S.C. §§ 78u........................................................................................................ *passim*

Securities Exchange Act of 1934
  15 U.S.C. § 78n(a) ...........................................................................................................5
  15 U.S.C. §78t(a) ............................................................................................................5

# Exhibit D

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE JPMORGAN CHASE & CO. SECURITIES LITIGATION | : | MDL Docket No. 1783 |
| | : | |
| | : | |
| | : | |
| | : | |

## MEMORANDUM OF DR. STEPHEN BLAU PURSUANT TO MDL RULE 7.2(f)

Dr. Stephen Blau, the Lead Plaintiff in *Blau v. Harrison, et al.*, Case No. 04 C 6592 (N.D. Ill.) (Hibbler, J.) (the "Illinois Action"), respectfully submits this memorandum pursuant to Rule 7.2(f) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation to advise the Panel of facts that could moot certain issues relating to Samuel I. Hyland's April 6, 2006 motion to centralize three cases in the District of Delaware. Specifically, if the Panel determines that centralization is warranted, the facts set forth below may moot the Panel's consideration of the Southern District of New York, where none of the cases are pending, as a potential transferee forum.

Dr. Blau opposes Hyland's motion to centralize the three cases, namely, the Illinois Action, which has survived a motion to dismiss and in which discovery requests have been served, and two actions brought by Hyland in the District of Delaware, one of which has been

stayed pending the resolution of the Illinois Action and the other of which was filed concurrently with Hyland's MDL motion.[1]  *See* Dr. Blau's Memorandum in Opposition to Samuel I. Hyland's Motion for Centralization dated May 4, 2006 ("Blau Mem.") at 4-12.  Dr. Blau contends that centralization is unwarranted because the two district judges handling these matters and most familiar with them have already acted and, in effect, chosen the Northern District of Illinois as the proper forum: (1) the Hyland Action already is stayed in favor of the Illinois Action, which is the only action in which a lead plaintiff was properly appointed; (2) the Second Hyland Action was brought to evade the stay order in the first Hyland Action[2] which was entered to preserve the Illinois District Court's lead plaintiff order; and (3) the Second Hyland Action was brought solely as a tactic so that there would be three – not two – cases that Hyland hoped would bolster his argument that the matter should be centralized in Delaware.  *See* Blau Mem. at 12-16. (Hyland's ultimate goal seems to be to get another opportunity to argue that he should replace Dr. Blau as lead plaintiff.)   Dr. Blau submits that, as Judges Hibbler and Farnan have determined, judicial efficiency can best be served by allowing the Illinois Action to proceed alone and permit Dr. Blau to develop the case.

If the Panel nonetheless concludes centralization is proper, Dr. Blau requests that the determination of Judge Hibbler and Farnan be given great weight and that the actions be transferred to the Northern District of Illinois, where the most advanced action is pending. Blau Mem. at 16-18. Hyland advocates the District of Delaware, where the only "live" case is the

---

[1]  As more fully set forth in Dr. Blau's opposition brief, Hyland and Stephanie I. Speakman are co-plaintiffs in the stayed "Hyland Action," whereas Hyland alone brought the "Second Hyland Action" on April 6, 2006. Blau Mem. at 1.

[2]  Dr. Blau has moved to stay the Second Hyland Action in Delaware.  Blau Mem. at 12.  As Judge Farnan has already ruled, Hyland's interests will be adequately protected by Dr. Blau in the Illinois Action.

2

Second Hyland Action filed on the same day as the centralization motion. Defendants have now

weighed in, claiming for the first time that the Southern District of New York, which has no

connection to cases, is a "more appropriate transferee Court."[3]

Defendants' eleventh hour claim that the litigation should be centralized[4] in the

Southern District of New York is a thinly veiled attempt to judge shop. Defendants ask the Panel

to take this extraordinary step[5] despite never having previously suggested New York or made a

motion to transfer venue to New York at any time since Dr. Blau first filed the Illinois Action in

October 2004. Nor did defendants make such a motion after Hyland filed a substantially similar

action in Delaware in March 2005.[6] To the contrary, defendants consistently took the position

that whichever action was to go forward – the Illinois Action or the Hyland Action – it should be

litigated in Illinois *or* Delaware, but never did they argue that it should proceed in New York. It

---

[3] *See* Defendants' Memorandum of Law in Response to Plaintiff's Motion for Transfer of Actions to the District of Delaware for Coordinated or Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407 ("Def. Mem.") at 6-8.

[4] Defendants' argument that centralization is appropriate because the factual issues in this litigation are "complex" finds no support in the cases they cite. Unlike this litigation, in which the central inquiry concerns a single offer (the no-premium offer) and its rejection and non-disclosure, the cases relied on by defendants all involve exceedingly complex factual issues. *In re Clark Oil & Refining Corp. Antitrust Litigation*, 364 F. Supp. 458 (J.P.M.L. 1973) (antitrust case including price fixing allegations); *In re Ascot Oils, Inc. Sec. Litigation*, 433 F. Supp. 1118, 1120 (J.P.M.L. 1977) (securities claims in connection with the offer and sale of fractional undivided working interests in oil and gas leases); *In re Amoxicillin Patent & Antitrust Litigation*, 449 F. Supp. 601, 603 (J.P.M.L. 1978) (separate patent infringements suits against two pharmaceutical companies seeking declaratory relief on the validity and infringement of patents); *In re First Nat'l Bank, etc.*, 451 F. Supp. 995 (J.P.M.L. 1978) (centralizing actions brought by a bank alleging that its bonds went into default because of the wrongdoing of multiple parties, including the bond issuer, the bond broker and the bond trustees)); *In re Multidistrict Private Civ. Treble Damage Antitrust Litigation*, 302 F. Supp. 796, 798 (J.P.M.L. 1969) (different electronic data processing equipment manufacturers suing IBM for violating antitrust laws).

[5] The Panel is "extremely reluctant to select a district in which no related action is pending" as a transferee forum. *In re Air Crash Disaster near Papeete*, 397 F. Supp. 886, 887 (J.P.M.L. 1975). This is so even where defendants are headquartered in the unrelated district and discovery is likely to take place there, which defendants argue here. *Id.; In re Data General Corp. Antitrust Litigation*, 470 F. Supp. 855, 859 (J.P.M.L. 1979); *In re Government Auto Fleet Sales*, 328 F. Supp. 218, 219-220 (J.P.M.L. 1971).

[6] *See* Blau Mem. at 4-8.

is only after Judge Hibbler denied their motion to dismiss that the Southern District of New York became their forum of choice.

In its opinion staying the Hyland Action in deference to the earlier-filed Illinois Action, the Delaware District Court considered the views of defendants as expressed in one of their briefs:

> Defendants view the claims as wholly devoid of merit and have filed motions to dismiss both pending federal actions in their entirety. *Whether the determination of those motions is made by this Court or the District Court in Illinois is of secondary importance to the desirability of having a single determination and avoiding duplicative litigation.*

*Hyland v. Harrison*, 2006 WL 288247, at *3 (D. Del. Feb. 7, 2006) (quoting Defendants' Memorandum in Response to Plaintiffs' Motion to Enjoin the Illinois Action (attached as Exhibit A) at 1) (emphasis added); *see also* Defendants' Memorandum of Law in Response to Plaintiffs' Motion for Reconsideration (attached as Exhibit B) at 1 (defendants noted that they "took no position on the appropriate forum, seeking only resolution of the competing motions so that this litigation could move forward at one time and in one place"). According to defendants, the issue before the Court was "whether the *Hyland* and *Blau* actions shall proceed separately or together and, if together, *whether they shall proceed in this Court or the Northern District of Illinois.*" Ex. A at 4 (emphasis added).

The first Delaware action has been stayed and there has been a determination in Illinois on the sufficiency of Dr. Blau's pleadings – which is exactly how defendants argued the litigation should proceed – but, because their motion to dismiss was denied in Illinois, defendants suddenly believe that New York is a more appropriate forum. Further, despite having previously argued that there should be one case in one forum, defendants now argue for centralization on the ground that there are three cases. Defendants acknowledge that the Hyland Action has been

4

stayed in favor of the Illinois Action and is administratively closed. Def. Mem. at 2. They acknowledge that the Second Hyland Action is premised on the same wrongdoing as the other two actions. *Id*. But, unlike Dr. Blau, defendants, like Hyland himself, seek to use the Second Hyland Action as a hook to argue for centralization knowing that without the "third" case, their chances of prevailing before the Panel would be nearly non-existent.

The inconsistencies in defendants' positions before and after the denial of their motion to dismiss by the Illinois District Court make clear that their request that the cases be centralized in the Southern District of New York is not based on prudential considerations,[7] but is an effort to transfer the Illinois Action to what defendants must perceive to be a more favorable forum. Significantly, defendants do not argue that they will be prejudiced if the litigation continues in Illinois.[8] Indeed, they have been actively litigating the Illinois Action, represented by Chicago counsel,[9] with no complaint for over a year.

Dr. Blau respectfully submits that these facts and circumstances may moot the Panel's consideration of defendants' request that the cases be transferred to the Southern District of New

---

[7] Not a single one of the cases defendants cite in support of their argument that the three cases here should be transferred to New York, involved transferring cases to a district in which none of the related cases were pending, which is what defendants ask the Panel to do here. *See* cases cited in Def. Mem. at 6. The same is true with the cases defendants cite in support of their contention that New York is the most central and accessible forum. *See id*. at 7. Indeed, one of the cases defendants cite, *In re Ace Ltd. Secs. Litig.*, 370 F. Supp. 2d 1353 (J.P.M.L. 2005), is a case in which the Panel transferred a case to a district noting that "the district is the only suggested forum where a constituent action is already pending.") *Id.* at 1355.

[8] In *In re Alodex Corp. Sec. Litigation*, 380 F. Supp. 790, 791 (J.P.M.L. 1974), the Panel denied defendants' request to transfer cases to a district court that had no jurisdiction over any of the already filed cases, noting that defendants had "concede[d] that they would not be prejudiced by transfer of the actions to the Southern District of Iowa and they do not strenuously object to that district as the transferee forum." Defendants' position here is similar.

[9] Both defendants and Dr. Blau are represented by law firms that have offices in both Chicago and New York. Defendants' lead litigation counsel is resident in Sidley Austin LLP's Chicago office. Nearly all court appearances on behalf of Dr. Blau thus far have been by his attorney resident in the Chicago office of Wolf Haldenstein Adler Freeman & Herz LLP.

York. Judge William J. Hibbler of the Northern District of Illinois, who has ruled on defendants' motion to dismiss and for reconsideration (unfavorably to defendants), is the jurist most familiar with this litigation. Dr. Blau urges the panel to defer to the two judges who have already considered how best to proceed with these cases and deny pre-trial consolidation as not needed and not in the interests of judicial efficiency under the facts and procedural posture presented here. If the Panel finds that centralization is proper, however, the cases should be centralized before Judge Hibbler, who is in the best position to shepherd this litigation through discovery to a just and expeditious conclusion.

Dated: May 15, 2006

Jeffrey G. Smith
Demet Basar
Aya Bouchedid
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 10016
(212) 545-4600

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
Adam J. Levitt
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603

*Counsel for Plaintiff Dr. Stephen Blau*

439052v6

6

# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOSEPH N. GIELATA,                    )
                                      )
      Plaintiff,                      )
                                      )
      v.                              )    Civil Action No. 05-567-GMS
                                      )
ANDREA L. ROCANELLI, AND              )
OFFICE OF DISCIPLINARY COUNSEL        )
FOR THE SUPREME COURT OF              )
DELAWARE,                             )
                                      )
      Defendants.                     )

## AFFIDAVIT OF RICHARD HUBBARD

State of Delaware        )
                         )    SS.
County of New Castle     )

Richard Hubbard, having been duly sworn, deposes and states as follows:

1.     I am a member of the Delaware Bar in good standing and a Deputy Attorney General.  I represent the defendants in the above-captioned action.

2.     I have obtained from the Criminal Division of the Attorney General's Office a copy of a plea agreement dated May 9, 2006, wherein the plaintiff in the above-captioned action, Joseph N. Gielata, pled guilty to misdemeanor theft under a "Probation Before Judgment" arrangement.  The attached plea agreement is a true, accurate and complete photocopy of the original, which is an official record of the Criminal Division of the Attorney General's Office.

3.     Also attached to this affidavit is a computer print-out of the Delaware justice system, entitled "Case Summary," showing that the same Joseph N. Gielata pled guilty to Theft Under $1000, a lesser included offense, on May 9, 2006.  This document is a true,

accurate and complete photocopy of the original electronic record.

_____
Richard Hubbard

ACKNOWLEDGED, SWORN TO AND SUBSCRIBED before me on this

13 day of June, 2006.

_____
Notary Public
Pursuant to 29 Del.C. § 4323(a)(3)

Amy Goldstein
Bar I.D. #
3735

2

Superior Court of the State of Delaware, _New Castle_ County

## PLEA AGREEMENT

State of Delaware v. _Joseph N. Cielata_

Case No(s): _0506021946_ Cr.A.#s: _IN06030874 - 0879_

☐ Title 11HAB. OFFENDER _____    ☐ BOOT CAMP ELIGIBLE    ☐ INELIGIBLE
☐ RULE 11(e)(1)(C) — If out of guideline, reason is as follows: _____
☐ Title 11, §4336, sex offender notification required    ☐ Title 11, §9019(e), forensic fine ☐ $100(F), ☐ $50(M)

**Defendant will plead guilty to:**

| Count | Cr.A.# | Charge | [LIO if applicable] |
|-------|--------|--------|---------------------|
| I | _IN06030874_ | _Theft (M. LIO 11 Del. C §841 <$1,000)_ | |

Upon the sentencing of the defendant, a **nolle prosequi** is entered on ☐ the following charges/☑ all remaining charges on this indictment/_case number._

| Count | Cr.A.# | Charge |
|-------|--------|--------|
| | | |

**Sentence Recommendation/Agreement:**    ☐ PSI    ☑ Immediate Sentencing

_1 yr LV suspended for the sentence is deferred for defendant's participation in probation before judgement pursuant to 11 Del C § 4218. Conditions are set forth below._

**State and Defendant agree to the following:**
☐ Restitution: _____
☑ No _____ contact w/ _PayPal_
☑ Other Conditions:
_• Defendant shall not seek an expungement for 5 years_
_• Defendant shall complete 300 hours of community service in a non-legal, non-financial capacity_

DAG: _SEAN P. LUGG_
PRINT NAME

SIGNATURE

Date: _5/9/2006_

DEF. COUNSEL: _N/A - pro se_
PRINT NAME

SIGNATURE

DEFENDANT: _____

XC: Attorney for Defendant, Defendant
   Attorney General, Attorney General Worksheet

Page      of

```
 05/17/06                                              12:35:35
 JAGRRWH                    Case Summary                GC911AM1
Case # 0506021946_ Court S County N Status SA  AGE OF CASE: 287    1 More >
Defendant Name JOSEPH N GIELATA              Co.Ind    SBI 00554035  HIST.
 Arraignmen 08052005 Cont 03312006      Trial     03022006 Cont 06052006
 Case Revie 09062005 Cont 11212005      Sentence          Cont
Type Issued  Returned Reason           Type Issued  Returned  Reason
 W  07262005 08032005


 Seq  CRIM ACT      Statute      \/     /\    CON/VOP    Filed    Disposition
 001 IN05071615W  110841000AFG THEFT $1000 OR>         07252005 03062006 NOLP
 002 IN05071616W  1105120001FG CONSP 2ND               07252005 03062006 NOLP
 003 IN06030874   110841000BMA THEFT < $1000           03062006 05092006 PGLI
 004 IN06030875   1105120001FG CONSP 2ND               03062006 05092006 NOLP
Docket - Motions etc. -         \/     /\    Outcome/Disp  Judge
 07252005 TRUEBL INDICTMENT, TRUE BILL FILED.NO 135
 07252005 AUTHEX AUTHORIZATION FOR EXTRADITION.
 07252005 R9WISS RULE 9 WARRANT ISSUED.
 07272005 SUMMLD SUMMONS MAILED FOR ARRAINGMENT 08/05/05
 07272005 SUMMLD SUMMONS MAILED FOR ARRAINGMENT 08/05/05
 08032005 R9W    RULE 9 WARRANT RETURNED, BAIL SET AT          REYNOLDS
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
       HELP  Retn  Sched Deft  Dspvc Disp  Bail  Dockt Wantd List  < >  menu
```

```
05/17/06                                              12:37:12
 JAGRRWH                    Case Summary                GC911AM2
Case # 0506021946  Court S County N Status SA            < 1 More
Defendant Name  JOSEPH N GIELATA            Co.Ind    SBI 00554035




Cont              To         Reason



        Date      Amount      %  Type
Bail


Conditions

Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
      HELP  Retn  Sched Deft  Dspvc Disp  Bail  Dockt Wantd List   < >  menu
```